# ANNEX A

**1979 Agreement**

N0269302

AGREEMENT FOR TRANSFER OF ASSETS

AND BILL OF SALE

THIS AGREEMENT effective as of the beginning of business the first day of January 1979, by and between JOHNSON & JOHNSON, a corporation organized under the laws of the State of New Jersey (sometimes hereinafter called "J&J"), and JOHNSON & JOHNSON BABY PRODUCTS COMPANY, a Subsidiary corporation of J&J, which is also organized under the laws of the State of New Jersey (sometimes hereinafter called the Subsidiary).

WHEREAS, J&J has a number of operating divisions conducting various lines of business; and

WHEREAS, one of these operating divisions is named the JOHNSON & JOHNSON BABY PRODUCTS COMPANY Division (sometimes hereinafter called the "BABY Division"); and

WHEREAS, the Subsidiary corporation, is wholly-owned by J&J and J&J is desirous of transferring to this Subsidiary all assets and liabilities which are now allocated to the BABY Division on the books or records of Johnson & Johnson; and

WHEREAS, such Subsidiary was organized effective as of August 27, 1970 under the laws of the State of New Jersey; and

WHEREAS, J&J wishes to transfer to the Subsidiary the above described assets in return for 188,100,000 shares of

the common stock of the Subsidiary, each of which shares has no par value per share; and

WHEREAS, any excess in value of the above described assets over $188,100,000 is to be treated as an additional capital contribution to the Subsidiary by J&J;

NOW, THEREFORE, in consideration of the following mutual promises, covenants and undertakings contained in THIS AGREEMENT FOR TRANSFER OF ASSETS AND BILL OF SALE, it is agreed between the parties that:

1. J&J in consideration of the premises and other good and valuable consideration, to it paid at or before the execution and delivery of this Agreement, the receipt and sufficiency of which are hereby acknowledged, has granted, bargained, sold, assigned, aliened, remised, released, conveyed, transferred, set over and confirmed, and by this Agreement does grant, bargain, sell, assign, alien, remise, release, convey, transfer, set over and confirm, unto the Subsidiary, its successors and assigns, forever, all the businesses, franchises, properties and assets of every nature and description, tangible and intangible, wherever located, which are now allocated on the books or records of J&J to its BABY Division, the same to include, without limiting the generality of the foregoing, those assets allocated on the books or records of J&J to its BABY Division which are more particulary described as follows:

(i) All inventories, materials, supplies, furniture, machinery, equipment, automobiles, trucks and other

tangible personal property, goods and chattels, wheresoever situate at the date of the execution and delivery hereof;

(ii) All rights, titles, and interest in, to and under all contracts (including leases) pertaining to the BABY Division (except that nothing herein contained shall be deemed to constitute the assignment of any claim against the United States of America or of any contract which is not assignable without the consent of the other party or parties thereto unless and until such consent shall have been obtained);

(iii) All right, title and interest in, to and under cash on hand and in banks, notes, bonds, inventions, improvements, discoveries and know-how, accounts and bills receivable, books of account, records, agreements, licenses, claims, demands, judgments, equities and choses in action or other intangible property of every nature and description, except trademarks;

(iv) All real estate, improvements and appurtenances thereon or thereto shall, effective January 1, 1979, be transferred to and be the property of the Subsidiary, as well as all rights and obligations appertaining thereto.

TO HAVE AND TO HOLD all said businesses, franchises, properties and assets hereby assigned, transferred and conveyed (all said franchises, properties, businesses and assets being hereinafter called the "Properties" hereby assigned, transferred and conveyed) unto the Subsidiary, its successors and assigns, to its and their own use and behalf forever.

-4-

2. For the consideration aforesaid, J&J hereby constitutes and appoints the Subsidiary, its successors and assigns, the true and lawful attorney or attorneys of J&J, with full power of substitution, for J&J and in its name and stead or otherwise, but on behalf and for the benefit of the Subsidiary, its successors and assigns, to demand and receive from time to time any and all the Properties hereby assigned, transferred and conveyed, and to give receipts and releases for and in respect of the same and any part thereof, and from time to time to institute and prosecute in the name of J&J or otherwise, but at the expense and for the benefit of the Subsidiary, its successors and assigns, any and all proceedings at law, in equity or otherwise which the Subsidiary, its successors or assigns, may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Properties hereby assigned, transferred and conveyed, and to defend or compromise any and all actions, suits or proceedings in respect of any of said Properties and to do all such acts and things in relation thereto as the Subsidiary, its successors, or assigns, shall deem desirable; J&J hereby declaring that the appointment hereby made and the powers hereby granted are coupled with an interest and are and shall be irrevocable by J&J in any manner or from any reason.

3. For the consideration aforesaid, J&J, for itself and its successors and assigns, has covenanted, and by this Agreement does covenant, with the Subsidiary, its successors and assigns, that it, J&J, and its successors and assigns,

will do, execute and deliver, or will cause to be done, executed and delivered, all such further acts, transfers, assignments and conveyances, powers of attorney, and assurances, for the better assuring, conveying and confirming unto the Subsidiary, its successors and assigns, all and singular the Properties hereby assigned, transferred and conveyed as the Subsidiary, its successors or assigns, shall reasonably require.

4.  In consideration of the assignment, transfer and conveyance to it of all the Properties above described, the Subsidiary agrees to assume and hereby does assume and agrees to pay, perform or discharge, as the case may be, all the indebtedness, liabilities and obligations of every kind and description which are allocated on the books or records of J&J as pertaining to its BABY Division and the Subsidiary hereby covenants and agrees with J&J that the Subsidiary will forever indemnify and save harmless J&J against all the indebtedness, liabilities and obligations aforesaid hereby assumed and agreed to be paid, performed or discharged, as the case may be, by the Subsidiary and to assume and complete all pending contracts of J&J which are allocated on its books or records to the BABY Division and to indemnify J&J and its officers, directors and stockholders from any liability under any such indebtedness, liabilities and obligations.

5.  This Agreement and the covenants and agreements herein contained shall inure to the benefit of and shall bind the respective parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, said JOHNSON & JOHNSON and JOHNSON & JOHNSON BABY PRODUCTS COMPANY have caused this Agreement for Transfer of Assets and Bill of Sale to be executed in their corporate names and under their corporate seals as of the 1st day of December, 1978.

ATTEST:

_____
Assistant Secretary

JOHNSON & JOHNSON

By _____
Vice President

ATTEST:

_____
Assistant Secretary

JOHNSON & JOHNSON BABY
PRODUCTS COMPANY

By _____
President

STATE OF NEW JERSEY )
                    ) ss.:
COUNTY OF MIDDLESEX )

On the 1st day of December, 1978, before me personally came R. C. STITES, to me known, who being by me duly sworn, did depose and say: that he is the ~~Vice~~-President of Johnson & Johnson Baby Products Company, a New Jersey corporation, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Johnson & Johnson Baby Products Company; and that he signed his name thereto by like authority.

_____
Notary Public
ATTORNEY-AT-LAW
STATE OF NEW JERSEY

STATE OF NEW JERSEY )
                              ) ss.:
COUNTY OF MIDDLESEX )

On the 1st day of December, 1978, before me personally came John J. Heidrich, to me known, who being by me duly sworn, did depose and say: that he is Vice-President of Johnson & Johnson, a New Jersey corporation, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Johnson & Johnson; and that he signed his name thereto by like authority.

                                          _____
                                          Notary Public
                                          Attorney at Law
                                          State of N.J.