**ANNEX C**

**Form Plan Support Agreement**

**THIS PLAN SUPPORT AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

## PLAN SUPPORT AGREEMENT

This Plan Support Agreement, dated as of _____, 2023 (including all exhibits and schedules attached hereto, this "**Agreement**"), is entered into by and among the following parties (each of the foregoing described in the following sub-clauses (1) through (3), a "**Party**" and, collectively, the "**Parties**"):

1. LTL Management LLC ("**LTL**") (hereinafter, the "**Debtor**");

2. Johnson & Johnson ("**J&J**") and Johnson & Johnson Holdco (NA) Inc. ("**Holdco**", and together with J&J, the "**J&J Entities**"); and

3. Counsel on behalf of talc-related personal injury claimants (the "**Talc Claimants**") identified by full name, date of birth, and last four digits of their social security number in **Exhibit A** (the "**Consenting Talc Claimant Counsel**").

Capitalized terms used, but not otherwise defined herein, have the meaning ascribed to them in the Term Sheet (defined below).

## RECITALS

**WHEREAS**, the Debtor is a debtor in a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**");

**WHEREAS**, on March 2, 2022, the Bankruptcy Court denied motions to dismiss the Debtor's chapter 11 case (the "**MTD Order**");

**WHEREAS**, certain parties appealed the MTD Order and, on January 30, 2023, the United States Court of Appeals for the Third Circuit (the "**Third Circuit**"), issued a decision reversing the Bankruptcy Court's MTD Order and directing the Bankruptcy Court to dismiss the chapter 11 case;

**WHEREAS**, the Debtor filed a petition for rehearing with respect to the Third Circuit's decision, which petition remains pending as of the date of this agreement;

**WHEREAS**, the Parties have engaged in good faith, arm's length negotiations on the material terms of a chapter 11 plan of reorganization for the Debtor, which are set forth in a term sheet (the "**Term Sheet**"), a copy of which is attached to this Agreement as Exhibit B (the terms described in the Term Sheet and this Agreement are referred to herein as the "**Supported Plan Terms**");

**WHEREAS**, the Debtor and the J&J Entities have agreed to pursue confirmation of a Chapter 11 Plan that includes the Supported Plan Terms in the Debtor's current bankruptcy case or, if that case is dismissed, a subsequent bankruptcy case; and

**WHEREAS**, pursuant to the Supported Plan Terms, the Parties agree to resolve all present and future talc claims (personal injury and governmental entity claims) against all Debtor-related parties for a total contribution from the Debtor not to exceed the present value of Eight Billion, Nine Hundred Million Dollars ($8,900,000,000); and

**WHEREAS**, the Parties desire to express to each other their mutual support and commitment with respect to the Supported Plan Terms and other matters set forth in the Term Sheet, in connection with the Debtor's current bankruptcy case or, if that case is dismissed, a subsequent bankruptcy case.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

**Section 1.** *Agreement Effective Date.* This Agreement will become effective and binding immediately upon all of the Parties having executed and delivered counterpart signatures to this Agreement (the "**Agreement Effective Date**").

**Section 2.** *Commitments Regarding Chapter 11 Plan.*

2.01 **Commitments of the Parties**.

(a) During the period in which this Agreement remains in effect, the Parties agree to the following, subject to any conditions or qualifications to such commitments as set forth in the Term Sheet, and the agreement of the Consenting Talc Claimant Counsel (including any amendment thereto) shall be binding on the Talc Claimants:

(i) Immediately following the execution of this Agreement, the Parties shall use commercially reasonable efforts to negotiate, finalize and file with the Bankruptcy Court a Chapter 11 plan that contains the Supported Plan Terms (the "**Chapter 11 Plan**") by May 14, 2023 or as soon thereafter as feasible;

(ii) The Debtor will use commercially reasonable efforts to obtain confirmation of the Chapter 11 Plan as soon as reasonably practicable in accordance with the Bankruptcy Code and the Bankruptcy Rules, and on terms consistent with this Agreement;

(iii) The J&J Entities and the Consenting Talc Claimant Counsel will use commercially reasonable efforts to support the actions taken by the Debtor in bankruptcy, including obtaining and maintaining injunctions to prevent tort claimants against the Debtor from pursuing their claims against

2

the J&J Entities, any affiliates thereof, or other entities that could liquidate or otherwise affect, directly or indirectly, the tort claims against the Debtor, and to seek confirmation of the Chapter 11 Plan in each case so long as such actions are not inconsistent with the Term Sheet.

(iv)   Without limiting the foregoing, the Parties agree, subject to any conditions or qualifications to such commitments as set forth in the Term Sheet, so long as the Chapter 11 Plan is not inconsistent with the Term Sheet, to:

(A)   (1) use commercially reasonable efforts to confirm and consummate the Chapter 11 Plan; (2) negotiate in good faith the terms of all documents and agreements necessary to confirm and consummate the Chapter 11 Plan; (3) use commercially reasonable efforts to execute and deliver all documents and agreements necessary to confirm and consummate the Chapter 11 Plan; and (4) use commercially reasonable efforts to obtain required regulatory and/or other approvals necessary to confirm and consummate the Chapter 11 Plan, if any;

(B)   do all things reasonably necessary and appropriate in furtherance of confirming the Chapter 11 Plan in accordance with this Agreement, including, as applicable, voting in favor of the Chapter 11 Plan, which voting shall be permitted electronically, supporting approval of a disclosure statement with respect to the Chapter 11 Plan and procedures for the Debtor's solicitation of the Chapter 11 Plan, and opting into any consensual releases thereunder;

(C)   use commercially reasonable efforts to oppose any objections to the Debtor's efforts to confirm the Chapter 11 Plan, including objections to the disclosure statement, solicitation procedures, confirmation of the Chapter 11 Plan or motions filed by the Debtor in connection with any of the foregoing;

(D)   use commercially reasonable efforts to oppose any restructuring proposal or plan of reorganization other than the Chapter 11 Plan and the transactions contemplated thereunder (an "**Alternative Transaction**"), including, without limitation, any motion, application, or request filed with the Bankruptcy Court in connection with, or in anticipation of, any Alternative Transaction;

(E)   to the extent that any legal or structural impediment arises that would prevent, hinder, or delay the confirmation or consummation of the Chapter 11 Plan, negotiate in good faith appropriate additional or alternative provisions to address any such impediment;

3

    (F) not seek to amend or modify, or file any pleading seeking authority to amend or modify, the Chapter 11 Plan or any related documents in a manner that is materially inconsistent with this Agreement;

    (G) not file any pleading materially inconsistent with the terms of this Agreement, the Chapter 11 Plan, or the Supported Plan Terms.

    (H) not object to, delay, impede, or take any other action to interfere with acceptance, confirmation, or implementation of the Chapter 11 Plan, including, without limitation, support any request to terminate the Debtors' exclusive periods to file or solicit a plan of reorganization;

    (I) not directly or indirectly solicit approval or acceptance of, encourage, propose, file, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout, or plan of reorganization for the Debtor other than the Chapter 11 Plan; and

    (J) not otherwise take any action that would interfere with, delay, impede, or postpone the solicitation of acceptances, consummation, or implementation of the Chapter 11 Plan; and

    (K) use commercially reasonable efforts to negotiate and finalize trust documents for the Talc Trust prior to the voting on the Chapter 11 Plan.

  (b) Nothing in sub-clause (a) of this Section 5.01 will prevent any Party from enforcing this Agreement or contesting whether any matter, fact, or thing is a breach of, or is inconsistent with, this Agreement.

**Section 3.** *Acknowledgement*.  Notwithstanding any other provision herein, this Agreement is not and will not be deemed to be an offer with respect to any securities or solicitation of votes for the acceptance of a plan of reorganization for purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise.  Any such offer or solicitation will be made only in compliance with all applicable securities laws and provisions of the Bankruptcy Code.

**Section 4.** *Representations and Warranties.*

 4.01 **Representations and Warranties**.  Each Party represents and warrants, severally, and not jointly, to each other Party, as of the date hereof that:

  (a) it has no actual knowledge of any event that, due to any fiduciary or similar duty to any other person or entity, would prevent it from taking any action required of it under this Agreement;

4

(b) it, to the extent applicable, is validly existing and in good standing (or equivalent) under the laws of its jurisdiction of organization, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable laws relating to, or limiting, creditors' rights generally or by equitable principles relating to enforceability;

(c) except as expressly provided in the Term Sheet, this Agreement or the Bankruptcy Code, no consent or approval is required by any other person or entity in order for it to perform its obligations under, this Agreement;

(d) except as expressly provided in this Agreement, it has (or will have at the relevant time) all requisite corporate or other power and authority to enter into, execute, and deliver this Agreement and to perform its obligations under, this Agreement, including as to the Consenting Talc Claimant Counsel with respect to binding each Talc Claimant;

(e) except as expressly set forth in this Agreement (and subject to necessary Bankruptcy Court approval and/or regulatory approvals associated with the Supported Plan Terms), the execution, delivery, and performance by it of this Agreement does not, and will not, require any registration or filing with consent or approval of, or notice to, or other action to, with or by, any federal, state, or other governmental authority or regulatory body;

(f) it is not a party to any contract, agreement, commitment, understanding, or other obligation (written or oral) with any other person or entity that is in effect with respect to any proposal inconsistent with the Supported Plan Terms or this Agreement, or with respect to an Alternative Transaction; and

(g) the execution, delivery, and performance of this Agreement does not and will not (a) violate any provision of law, rules, or regulations applicable to it; or (b) violate its certificate of incorporation, bylaws, or other organizational documents or those of any of its subsidiaries.

**Section 5.**     *Termination.*

5.01     **Termination**.  This Agreement, and the obligations of all Parties hereunder, may be terminated by mutual written agreement among each of the Parties.  In addition:

(a) This Agreement will automatically terminate upon:

(i) the issuance, promulgation, or enactment by any governmental entity, including any regulatory or licensing authority or court of competent jurisdiction (including, without limitation, an order of the Bankruptcy Court, which has not been stayed), of any statute, regulation, ruling or order declaring the Chapter 11 Plan or any material portion thereof to be unenforceable or enjoining or otherwise restricting the consummation of any material portion of the Chapter 11 Plan, and such ruling, judgment, or order has not been stayed, reversed, or vacated, within fourteen (14) calendar days after entry;

5

(ii) entry of an order appointing a trustee under section 1104 of the Bankruptcy Code or an examiner with expanded powers and such order has not been stayed, reversed, or vacated, within fourteen (14) calendar days after entry;

(iii) entry of an order for relief under chapter 7 of the Bankruptcy Code with respect to the Debtor and such order has not been stayed, reversed, or vacated, within fourteen (14) calendar days after entry; or

(iv) entry of an order in a subsequent chapter 11 case dismissing the case and such order has not been stayed, reversed, or vacated, within fourteen (14) calendar days after issuance.

(b) The Consenting Talc Claimant Counsel may terminate this Agreement, in each case, upon delivery of written notice to the Debtor and the J&J Entities at any time after the occurrence of or during the continuation of any of the following events (each, a "Claimant Termination Event"):

(i) the breach by the Debtor or the J&J Entities of any of their obligations, representations, warranties, or covenants set forth in this Agreement;

(ii) the Debtor and the J&J Entities at any time either (A) fail to take commercially reasonable steps to obtain confirmation and consummation of the Chapter 11 Plan, including entry of a confirmation order that contain the terms that are consistent with this Agreement, or (B) propose, pursue or support a plan or confirmation order inconsistent with the terms set forth in this Agreement; or

(iii) the Plan is, or is modified to be, inconsistent with this Agreement;

Notwithstanding the foregoing, the Debtor and the J&J Entities shall have ten (10) days from the receipt of any such written notice of termination from the Consenting Talc Claimant Counsel specifying the purported default or Claimant Termination Event to cure any purported default or Claimant Termination Event under this section and no termination of this Agreement shall be effective unless and until the expiration of such ten (10) day period without such purported default or Claimant Termination Event having been waived or cured.

(c) The Debtor or the J&J Entities may terminate this Agreement upon delivery of written notice to the Consenting Talc Claimant Counsel at any time after the occurrence of or during the continuation of any of the following events (each a "Proponent Termination Event"):

(i) the breach by the Consenting Talc Claimant Counsel of any of their obligations, representations, warranties, or covenants set forth in this Agreement;

6

(ii) the Consenting Talc Claimant Counsel takes any action inconsistent with its obligations under this Agreement or fails to take any action required under this Agreement; or

(iv) the Debtor or the J&J Entities determine that they will be unable timely to obtain sufficient support for this Agreement from other talc claimant counsel such that the Chapter 11 Plan is likely not confirmable; or

(v) the failure to meet any conditional terms in the Term Sheet.

Notwithstanding the foregoing, the Consenting Talc Claimant Counsel shall have ten (10) days from the receipt of any such written notice of termination from the Debtor or J&J Entities specifying the purported default or Proponent Termination Event to cure any purported default or Proponent Termination Event under this section and no termination of this Agreement shall be effective unless and until the expiration of such ten (10) day period without such purported default or Proponent Termination Event having been waived or cured.

5.02 **Automatic Stay**. The Debtor acknowledges that neither the giving of notice of termination by any Party pursuant to this Agreement nor compliance with any provision hereto will be a violation of the automatic stay of section 362 of the Bankruptcy Code

5.03 **Termination Generally**. No Party may terminate this Agreement based on an event caused by such Party's own failure to perform or comply in all material respects with the terms and conditions of this Agreement (unless such failure to perform or comply arises as a result of another Party's actions or inactions). Upon termination of this Agreement in accordance with section 5.01, all Parties shall be released from any prospective commitments, undertakings, and agreements under or related to this Agreement other than obligations under this Agreement that by their terms expressly survive termination.

**Section 6.** *Amendments.* This Agreement may not be modified, amended, or supplemented in any manner except as consented to (in writing, with email from the applicable counsel being sufficient) by (i) the Debtor, (ii) the J&J Entities, and (iii) the Consenting Talc Claimant Counsel.

**Section 7.** *Miscellaneous.*

7.01 **Further Assurances**. Subject to the other terms of this Agreement, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the

7

matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court in connection with confirmation of the Chapter 11 Plan.

7.02    **Entire Agreement**.  This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral, or written, among the Parties with respect thereto.

7.03    **Headings**.  The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

7.04    **GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM; WAIVER OF TRIAL BY JURY**.  THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES OF THE STATE OF NORTH CAROLINA OR ANY OTHER JURISDICTION.  Each Party hereto agrees that it will bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court (or court of proper appellate jurisdiction) (the "**Chosen Court**"), and solely in connection with claims arising under or related to this Agreement: (a) irrevocably submits to the exclusive jurisdiction of the Chosen Court; (b) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (c) waives any objection that the Chosen Court is an inconvenient forum or does not have jurisdiction over any Party hereto or constitutional authority to finally adjudicate the matter.

7.05    **Execution of Agreement**.  This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, will be deemed an original, and all of which together will constitute the same agreement.  Except as expressly provided in this Agreement, each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of said Party.

7.06    **Interpretation; Representation by Counsel**.  This Agreement is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, will not be effective in regard to the interpretation hereof.  The Parties were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel and, therefore, waive the application of any law, regulation, holding or rule of construction (i) providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document or (ii) any Party with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel.

7.07    **Successors and Assigns; No Third Party Beneficiaries**.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns.  There are no third party beneficiaries under this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other

8

person or entity without the consent of the other Parties to this Agreement, which consent shall not be unreasonably withheld.

      7.08   **Notices**.  All notices hereunder will be deemed given if in writing and delivered by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as will be specified by like notice):

    (a)    if to the Debtor, to the electronic mail addresses and mail addresses set forth below:

        LTL Management LLC
        501 George Street
        New Brunswick, NJ 08933
        Attention:  _____
        Email:  _____.com

        With a copy (which will not constitute notice) to:

        Jones Day (as counsel to the Debtor)
        2727 North Harwood Street
        Dallas, TX 75201
        Attention:  Gregory M. Gordon
        Email:  gmgordon@jonesday.com

    (b)    if to the J&J Entities, to the electronic mail addresses and mail addresses set forth below:

        JOHNSON & JOHNSON
        One Johnson & Johnson Plaza
        New Brunswick, NJ 08933
        Attention:  Erik Haas
        Email:  _____.com

        JOHNSON & JOHNSON HOLDCO (NA) INC.
        One Johnson & Johnson Plaza
        New Brunswick, NJ 08933
        Attention:  Erik Haas
        Email:  _____.com

        With a copy to:

        [_____]
        Attention:  _____
        Email:  _____.com

    (c)    If to a Consenting Talc Claimant Counsel, to the electronic mail addresses and mail addresses set forth in Exhibit A with respect to each **Consenting Talc Claimant Counsel**

9

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.  Any notice given by delivery, mail (electronic or otherwise), or courier will be effective when received.

   7.09 **Specific Performance**.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party will be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Chosen Court requiring any Party to comply promptly with any of its obligations hereunder.  All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity will be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party will not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party or any other Party.

   7.10 **Settlement Discussions**.  This Agreement is part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties.  Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence and any other applicable law, foreign or domestic, this Agreement and all negotiations relating thereto will not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.  If the Chapter 11 Plan is not consummated, or if this Agreement is terminated for any reason, nothing in this Agreement will be construed as a waiver by any Party of any of such Party's rights, remedies, claims, and defenses, and the Parties expressly reserve any and all of their respective rights, remedies, claims and defenses.  This Agreement will in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever.

   7.11 **Fiduciary Duty**.  Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement, the Term Sheet or the Chapter 11 Plan shall require the Debtor or the board of managers of the Debtor, after consulting with their respective legal counsel, to take any action or to refrain from taking any action to the extent taking or failing to take such action is or would be inconsistent with applicable law, or the exercise of its respective fiduciary obligations under applicable law and any such action or inaction pursuant to this Section 7.11 shall not be deemed to constitute a breach of this Agreement.

   **IN WITNESS WHEREOF**, the Parties have executed this Agreement on the day and year first above written.

*[Remainder of page intentionally left blank]*

DEBTOR

**LTL MANAGEMENT LLC**

By: _____
Name:   John K. Kim
Title:     Chief Legal Officer

Date:

11

J&J ENTITIES

**JOHNSON & JOHNSON**

By: _____
Name: Erik Haas
Title:   Chief Legal Officer, Litigation

Date:

**JOHNSON & JOHNSON HOLDCO (NA) INC.**


By: _____
Name:  Erik Haas
Title:   Chief Legal Officer, Litigation

Date:

13

**Claimants' Counsel**

Firm:


By: _____
Name:
Title:

Date:

# **EXHIBIT A**

**CONSENTING TALC CLAIMANTS**

## **EXHIBIT B**

## **TERM SHEET**