# **ANNEX F**

# **J&J Support Agreement**

# SUPPORT AGREEMENT

This SUPPORT AGREEMENT, dated April 4, 2023 (as it may be amended, restated, modified or supplemented from time to time, this "Agreement"), is by and among JOHNSON & JOHNSON, a New Jersey corporation ("J&J"), JOHNSON & JOHNSON HOLDCO (NA) INC., a New Jersey corporation formerly named Johnson & Johnson Consumer Inc. ("Holdco"), and LTL MANAGEMENT LLC, a North Carolina limited liability company ("LTL" and, together with J&J and Holdco, the "Parties").

## RECITALS

A.     The Parties have entered into that certain Termination and Substitution Agreement, dated April 4, 2023 (the "Termination and Substitution Agreement"), pursuant to which (1) the Amended and Restated Funding Agreement, dated October 12, 2021 ("2021 Funding Agreement"), among the Parties and the Amended and Restated Commitment and Loan Agreement, dated October 12, 2021, between J&J and Holdco have been terminated and (2) the Parties have agreed to execute and deliver, in substitution therefor, new agreements the terms of which will, among other things, (a) enable LTL to address the guidance provided by the United States Court of Appeals for the Third Circuit in its January 30, 2023 opinion directing dismissal of LTL's then pending chapter 11 case, (b) facilitate confirmation and consummation of a plan of reorganization for LTL with terms supported by thousands of talc claimants whose attorneys have executed and delivered plan support agreements that support confirmation and consummation of a plan of reorganization for LTL with specified terms, which terms are acceptable to the Payee, the Payor and J&J, and (c) not adversely affect talc claimants.

B.     Contemporaneously with the execution and delivery of this Agreement, pursuant to Section 2(a) of the Termination and Substitution Agreement, Holdco and LTL have executed and delivered a Funding Agreement, dated April 4, 2023 (the "New Funding Agreement"), pursuant to which, on the terms and subject to the conditions set forth therein, Holdco will provide funding to LTL both (1) when there is no proceeding under the Bankruptcy Code pending with respect to LTL and (2) during the pendency of a voluntary case under chapter 11 of the Bankruptcy Code commenced by LTL.

C.     Pursuant to Section 2(b) of the Termination and Substitution Agreement, the Parties desire to establish the terms and conditions on which (1) solely in connection with a voluntary case under chapter 11 of the Bankruptcy Code to be commenced by LTL and only if Holdco fails to make any payment to provide LTL funding for one or more trusts created pursuant to a plan reorganization for LTL that is confirmed in such case as required by the New Funding Agreement, J&J will make such payment to LTL on Holdco's behalf, (2) Holdco will be obligated to reimburse J&J for any such payment and any amount not so reimbursed by Holdco will be deemed to be financed with a loan from J&J to Holdco, and Holdco's obligation to make such reimbursement will be discharged and replaced by such loan, and (3) LTL will have the right to enforce such obligation of J&J.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the Parties agree as follows:

1.      <u>Definitions</u>.  As used in this Agreement, the following terms have the meanings herein specified unless the context otherwise requires:

"<u>2021 Funding Agreement</u>" has the meaning specified in the recitals to this Agreement.

"<u>Agreement</u>" has the meaning specified in the first paragraph hereof.

"<u>Bankruptcy Case</u>" has the meaning specified in <u>Section 2(c)</u>.

"<u>Bankruptcy Code</u>" has the meaning given to such term in the New Funding Agreement.

"<u>Bankruptcy Court</u>" has the meaning specified in <u>Section 2(c)</u>.

"<u>Board</u>" means: (a) with respect to a corporation, the board of directors of the corporation or any committee thereof; (b) with respect to a partnership, the board of directors, the managing member or members or the board of managers, as applicable, of the general partner of the partnership; (c) with respect to a limited liability company, the managing member or members or the board of managers, as applicable, of the limited liability company; and (d) with respect to any other Person, the board or committee of such Person serving a similar function.

"<u>Business Day</u>" means each day other than a Saturday, a Sunday or a day on which banking institutions in New Brunswick, New Jersey or at a place of payment are authorized by law, regulation or executive order to remain closed.

"<u>Capital Stock</u>" means: (a) in the case of a corporation, corporate stock; (b) in the case of an association or business entity, any and all shares, interests, participations, rights or other equivalents (however designated) of corporate stock; (c) in the case of a partnership or limited liability company, partnership or membership interests (whether general or limited); and (d) any other interest or participation that confers on a Person the right to receive a share of the profits and losses of, or distributions of assets of, the issuing Person; but excluding (in each case of (a) through (d) above) any debt securities convertible into such equity securities.

"<u>Contractual Obligation</u>" means, as to any Person, any obligation or similar provision of any security issued by such Person or any agreement, instrument or other undertaking (excluding this Agreement) to which such Person is a party or by which it or any of its property is bound.

"<u>District Court</u>" means the United States District Court for the District of New Jersey.

"<u>Federal Funds Effective Rate</u>" means, for any period, a fluctuating interest rate equal for each day during such period to the weighted average of the rates on overnight Federal Funds transactions with members of the Federal Reserve System arranged by Federal Funds brokers, as published for such day (or, if such day is not a Business Day, for the next preceding Business Day) by the Federal Reserve Bank of New York.

NAI-1535642684

"Final Order" means an order as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, to petition for certiorari, to reargue, to rehear or to reconsider shall have been waived in writing by the Person possessing such right, or, in the event that an appeal, writ of certiorari, or reargument, rehearing or reconsideration thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing or reconsideration was sought, and the time to take any further appeal, petition for certiorari, or move for reargument, rehearing or reconsideration shall have expired, and no such further appeal, petition for certiorari, or motion for reargument, rehearing or reconsideration shall have been filed.

"Final Support Agreement Order" means a Final Order entered by the Bankruptcy Court in form and substance reasonably satisfactory to J&J, which approves this Agreement on a final basis, as amended, restated, modified or supplemented from time to time with the prior written consent of J&J.

"Funding Account" has the meaning given to such term in the New Funding Agreement.

"Governmental Authority" means the government of the United States or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"Holdco" has the meaning specified in the first paragraph hereof.

"Holdco Event of Default" has the meaning specified in Section 3(d).

"Interest Rate" shall mean for any day, an interest rate per annum as calculated in accordance with the latest available J&J Global Methodology posted on the J&J Global Finance Portal as of the Loan Date.

"J&J" has the meaning specified in first paragraph of this Agreement.

"Loan" has the meaning specified in Section 2(b).

"Loan Date" has the meaning specified in Section 2(b).

"Loan Maturity Date", with respect to any Loan, means the date that is five years after the Loan Date of such Loan.

"Material Adverse Effect" means with respect to a Party:  (a) a material adverse change in, or a material adverse effect upon, the business, assets, liabilities (actual or contingent) or financial condition of such Party and its Subsidiaries, taken as a whole; (b) a material impairment of the rights and remedies against such Party under this Agreement, or of the ability of such Party to perform its material obligations under this Agreement; or (c) a material adverse effect upon the legality, validity or enforceability of this Agreement against such Party.

3

"New Funding Agreement" has the meaning specified in the Recitals.

"New Funding Agreement Obligations" has the meaning specified in Section 2(a).

"Organizational Documents" means: (a) with respect to any corporation, its certificate or articles of incorporation and bylaws; (b) with respect to any limited liability company, its certificate or articles of formation or organization and operating agreement; and (c) with respect to any partnership, joint venture, trust or other form of business entity, the partnership, joint venture or other applicable agreement of formation or organization and any agreement, instrument, filing or notice with respect thereto filed in connection with its formation or organization with the applicable Governmental Authority in the jurisdiction of its formation or organization and, if applicable, any certificate or articles of formation of such entity.

"Parties" has the meaning specified in the first paragraph of this Agreement.

"Payment" has the meaning given to such term in the New Funding Agreement.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, trust, unincorporated organization, or government or any agency or political subdivision thereof.

"Subsidiary" means, with respect to any Person, any other Person a majority of the outstanding Voting Stock of which is owned or controlled by such Person or by one or more other Subsidiaries of such Person and that is consolidated in such Person's accounts.

"Supported Plan" has the meaning given to such term in the New Funding Agreement.

"Talc Related Liabilities" has the meaning given to such term in the New Funding Agreement.

"Termination and Substitution Agreement" has the meaning specified in the Recitals.

"Termination Event" has the meaning specified in Section 6(b).

"Voting Stock" of any Person as of any date means the Capital Stock of such Person that is at the time entitled to vote in the election of the Board of such Person.

2. Support Obligations.

(a) J&J Obligations.

(i) From and after the effectiveness of this Agreement as set forth in Section 15, solely in connection with the Bankruptcy Case and only if Holdco fails to timely pay any Payment, the proceeds of which are to be used by LTL solely to fund one or more trusts created pursuant to a Supported Plan as specified in clause (c)(ii) of the definition of "Permitted Funding Use" contained in the New Funding Agreement, owing from Holdco to LTL under the New Funding Agreement (the "New Funding Agreement Obligations") as and when due thereunder, J&J shall promptly pay such Payment to LTL on Holdco's behalf, by disbursing the same directly to the Funding Account.

4

    (ii) J&J's obligation to make any payment pursuant to this Section 2(a) shall be subject to the condition that there shall have been no violation of any covenant set forth in Section 5(a) or Section 5(b).

    (iii) J&J's obligation to make any payment pursuant to this Section 2(a) shall not be in any way affected by a Holdco Event of Default.

  (b) Holdco Obligations.

    (i) In the event that J&J pays any of the New Funding Agreement Obligations in accordance with Section 2(a), Holdco shall promptly (and in any event within five Business Days) reimburse J&J for the full amount of any such payment. If Holdco fails to fully reimburse J&J within such five Business Day period, any amount not reimbursed shall automatically be deemed to be financed with a loan (each, a "Loan") in an equivalent amount, with a date as of the date of J&J's payment pursuant to Section 2(a) (each such date, a "Loan Date"), and Holdco's obligation to make such reimbursement shall be discharged and replaced by such Loan.

    (ii) From and after the effectiveness of this Agreement as set forth in Section 15, for each month (or portion thereof) during which J&J is obligated to make payments pursuant to Section 2(a), Holdco will pay to J&J, promptly following such month, a support fee equal to (i) the product of (A) the amount of accounts receivable in respect of the New Funding Agreement that is reported in Schedule A/B of the Schedule of Assets and Liabilities filed by LTL in the Bankruptcy Case and (B) 0.0275%, divided by (ii) 12 (which support fee will be prorated in the case of partial months).

  (c) LTL Obligations. LTL will (i) file a voluntary case under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), (ii) use its commercially reasonable efforts to obtain a Final Support Agreement Order, and (iii) so long as J&J's obligation to make payments pursuant to Section 2(a) remains in effect, use its commercially reasonable efforts to cause a Supported Plan to become effective, in each case as soon as reasonably practicable.

3. Loans.

  (a) Repayment and Prepayment. Holdco hereby unconditionally promises to pay to J&J the then-unpaid principal amount of each Loan on the applicable Loan Maturity Date. Holdco shall have the right at any time and from time to time to prepay any Loan in whole or in part.

  (b) Interest.

    (i) Each Loan shall bear interest at a rate per annum equal to the Interest Rate.

    (ii) Notwithstanding the foregoing, if any principal of or interest on any Loan hereunder is not paid when due, whether at stated maturity, upon acceleration

5

or otherwise, such overdue amount shall bear interest, after as well as before judgment, at a rate per annum equal to the Interest Rate plus 2.00%.

(iii) Accrued interest on each Loan shall be payable in arrears on the last day of each of March, June, September and December and on the applicable Loan Maturity Date; *provided* that (A) interest accrued pursuant to Section 3(b)(ii) shall be payable on demand and (B) in the event of any repayment or prepayment of any Loan, accrued interest on the principal amount repaid or prepaid shall be payable on the date of such repayment or prepayment.

(iv) All interest hereunder shall be computed on the basis of a year of 360 days and shall be payable for the actual number of days elapsed (including the first day but excluding the last day).

(c) Evidence of Debt. The records maintained by J&J shall be *prima facie* evidence of the existence and amounts of the obligations of Holdco in respect of Loans; *provided* that the failure of J&J to maintain such records or any error therein shall not in any manner affect the obligations of Holdco to pay any amounts due hereunder in accordance with the terms of this Agreement.

(d) Holdco Events of Default; Remedies. If at any time any of the following events (each such event, a "Holdco Event of Default") shall occur:

(i) Holdco shall fail to pay any principal of any Loan when and as the same shall become due and payable;

(ii) Holdco shall fail to pay any interest on any Loan, when and as the same shall become due and payable, and such failure shall continue unremedied for a period of five Business Days;

(iii) any representation or warranty made by Holdco in connection with this Agreement shall prove to have been incorrect in any material respect when so made;

(iv) Holdco shall fail to observe or perform the covenants set forth in Section 5;

(v) an involuntary proceeding shall be commenced or an involuntary petition shall be filed in a court of competent jurisdiction seeking (A) liquidation, reorganization or other relief in respect of Holdco or any of its Subsidiaries (other than LTL) or its debts, or of a substantial part of its assets, under any bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (B) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for Holdco or any of its Subsidiaries (other than LTL) or for a substantial part of its assets, and, in any such case, such proceeding or petition shall continue undismissed for 60 days or an order or decree approving or ordering any of the foregoing shall be entered;

(vi) Holdco or any of its Subsidiaries (other than LTL) shall (A) voluntarily commence any proceeding or file any petition seeking liquidation,

6

reorganization or other relief under any bankruptcy, insolvency, receivership or similar law now or hereafter in effect, (B) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in clause (v) of this Section 3(d), (C) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for Holdco or any of its Subsidiaries (other than LTL) or for a substantial part of its assets, (D) file an answer admitting the material allegations of a petition filed against it in any such proceeding or (E) make a general assignment for the benefit of creditors; or

(vii)    Holdco or any of its Subsidiaries (other than LTL) shall become unable, admit in writing its inability or fail generally to pay its debts as they become due;

then, and in every such event (other than an event with respect to Holdco described in clause (v) or (vi) of this Section 3(d)), and at any time thereafter during the continuance of such event, J&J may, by notice to Holdco, take any or all of the following actions, at the same or different times: (A) declare the Loans then outstanding to be due and payable in whole or in part, and thereupon the principal of the Loans so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of Holdco hereunder, shall become due and payable immediately and (B) subject to Section 2(a)(iv), exercise all rights and remedies available to it under applicable law, in each case without presentment, demand, protest or other notice of any kind, all of which are hereby waived by Holdco; and in the case of any event with respect to Holdco described in clause (v) or (vi) of this Section 3(d), the principal of the Loans then outstanding, together with accrued interest thereon and all fees and other obligations of Holdco hereunder, shall immediately and automatically become due and payable, in each case without presentment, demand, protest or other notice of any kind, all of which are hereby waived by Holdco.

4.    Representations and Warranties of each Party.    Each Party represents and warrants to the other Parties that:

(a)    Existence, Qualification and Power.  Such Party (i) is duly formed, validly existing and in good standing under the laws of its jurisdiction of incorporation or organization, (ii) has all requisite power and authority and all requisite governmental licenses, authorizations, consents and approvals to (A) own or lease its material assets and carry on its business and (B) execute, deliver and perform its obligations under this Agreement and (iii) is duly qualified and is licensed and, as applicable, in good standing under the laws of each jurisdiction where its ownership, lease or operation of properties or the conduct of its business requires such qualification or license; except in each case referred to in clause (ii)(A) or (iii), to the extent that failure to do so could not reasonably be expected to have a Material Adverse Effect with respect to such Party.

(b)    Authorization; No Contravention.  The execution, delivery and performance by such Party of this Agreement has been duly authorized by all necessary corporate or other organizational action, and does not and will not (i) contravene the terms of its Organizational Documents, (ii) conflict with or result in any breach or contravention of, or the creation of any lien under, or require any payment to be made under (A) any Contractual Obligation to which it is a party or affecting it or its properties or (B) any order, injunction, writ or decree of any Governmental Authority or any arbitral award to which it or its property is

7

subject, or (iii) violate any applicable law; except in each case referred to in clause (ii) or (iii), to the extent the failure to do so could not reasonably be expected to have a Material Adverse Effect with respect to such Party.

(c) <u>Governmental Authorization; Other Consents</u>. No approval, consent, exemption, authorization or other action by, or notice to, or filing with, any Governmental Authority or any other Person is necessary or required in connection with the execution, delivery or performance of this Agreement by such Party.

(d) <u>Binding Effect</u>. This Agreement has been duly executed and delivered by such Party. This Agreement constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms, except to the extent such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally and by equitable principles.

5. <u>Certain Covenants of Holdco and LTL</u>.

(a) <u>Amendments to New Funding Agreement</u>. Holdco and LTL shall not amend, restate, modify or supplement, and Holdco shall not waive any of its rights, powers, privileges or remedies under, the New Funding Agreement without the prior written consent of J&J.

(b) <u>Assignments of New Funding Agreement</u>. Neither Holdco nor LTL shall assign its rights or obligations under the New Funding Agreement without the prior written consent of J&J.

(c) <u>Notices under the New Funding Agreement</u>. Each of Holdco and LTL shall deliver to J&J any notice or other written communication delivered by it to the other under the New Funding Agreement simultaneously with the delivery of such notice or other written communication under the New Funding Agreement.

6. <u>Termination</u>

(a) <u>Automatic Termination</u>. J&J's obligation to make payments pursuant to Section 2(a) shall terminate automatically at such time as (i) a Supported Plan has become effective and any and all trusts created pursuant to such Supported Plan have been funded in accordance with the terms of such Supported Plan or (ii) a Final Order is entered converting the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code or dismissing the Bankruptcy Case.

(b) <u>Termination by J&J</u>. J&J may terminate its obligation to make payments pursuant to Section 2(a) upon delivery of written notice to LTL at any time after the occurrence or during the continuation of any of the following events (each, a "<u>Termination Event</u>"):

(i) the material breach by LTL of any of its representations, warranties, covenants or agreements set forth in this Agreement; or

8

     (ii) (A) LTL shall have applied for or consented to the appointment in the Bankruptcy Case of a trustee under chapter 7 or chapter 11 of the Bankruptcy Code, a receiver, or an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code; (B) the appointment in the Bankruptcy Case of a trustee under chapter 7 or chapter 11 of the Bankruptcy Code, a receiver, or an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code; or (C) LTL shall have taken any corporate action for the purpose of authorizing any of the foregoing.

Notwithstanding the foregoing, LTL shall have five (5) Business Days from the receipt of any such written notice of termination from J&J specifying the Termination Event to cure such Termination Event, and no termination of this Agreement shall be effective unless and until the expiration of such five (5) Business Day period without such Termination Event having been being theretofore waived by J&J or cured.

    7. <u>Notices</u>. All notices required under this Agreement shall be delivered to the applicable Party to this Agreement at the address set forth below.  Unless otherwise specified herein, delivery of any such notice by email, facsimile or other electronic transmission (including .pdf) shall be effective as delivery of a manually executed counterpart thereof.

  <u>J&J</u>:

  JOHNSON & JOHNSON
  One Johnson & Johnson Plaza
  New Brunswick, NJ 08933
  Attention:  Duane Van Arsdale, Treasurer
  Email:  DVanArs@its.jnj.com

  <u>Holdco</u>:

  JOHNSON & JOHNSON HOLDCO (NA) INC.
  One Johnson & Johnson Plaza
  New Brunswick, NJ 08933
  Attention:  Laura McFalls, President
  Email:  lmcfalls@its.jnj.com

NAI-1535642684

LTL:

LTL MANAGEMENT LLC
501 George Street
New Brunswick, NJ 08933
Attention:  Robert Wuesthoff, President
Email:  rwuestho@its.jnj.com

with a copy to:

LTL MANAGEMENT LLC
501 George Street
New Brunswick, NJ 08933
Attention:  John Kim, Chief Legal Officer
Email:  JKim8@its.jnj.com

8. Governing Law; Submission to Jurisdiction. This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey. Any legal proceeding seeking to enforce any provision of, or based on any matter arising under, this Agreement may be brought only in the Bankruptcy Court. Each Party hereby irrevocably and unconditionally submits to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such legal proceeding.

9. No Implied Waiver; Amendments. No failure or delay on the part of any Party to exercise any right, power or privilege under this Agreement, and no course of dealing between the Parties shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power or privilege. No notice to or demand on any Party in any case shall entitle such Party to any other or further notice or demand in similar or other circumstances. The remedies provided in this Agreement are cumulative and not exclusive of any remedies provided by law. No amendment or waiver of any provision of this Agreement, nor consent to any departure by any Party therefrom, shall in any event be effective unless the same shall be in writing, specifically refer to this Agreement, and be signed by each Party, and then such amendment or waiver shall be effective only in the specific instance and for the specific purpose for which given. A waiver on any such occasion shall not be construed as a bar to, or waiver of, any such right or remedy on any future occasion.

10. Counterparts; Entire Agreement; Electronic Execution. This Agreement may be executed in separate counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement constitutes the entire contract among the Parties relating to the subject matter hereof and supersedes, in its entirety, any and all previous agreements and understandings, oral or written, relating to the subject matter hereof. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns. Delivery of an executed counterpart of a signature page of this Agreement by telecopy, .pdf or any other electronic means that reproduces an image of

the actual executed signature page shall be effective as delivery of a manually executed counterpart of this Agreement.

11. <u>Severability</u>.  If any one or more of the provisions contained in this Agreement are invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of all the remaining provisions will not in any way be affected or impaired.  If any one or more provisions contained in this Agreement are deemed invalid, illegal or unenforceable because of their scope or breadth, such provisions shall be reformed and replaced with provisions whose scope and breadth are valid under applicable law.

12. <u>Transfer; Assignment</u>.  This Agreement shall be binding upon each Party and its successors and assigns, and the terms and provisions of this Agreement shall inure to the benefit of each Party and its successors and assigns.  A Party's rights and obligations under this Agreement may not be assigned or delegated without the prior written consent of the other Parties; *provided*, *however,* that J&J may assign its rights or delegate its obligations under this Agreement, in whole or in part, without such consent and upon prior written notice to LTL and Holdco, to one or more of its wholly owned Subsidiaries. No assignment or delegation, including any assignment or delegation by J&J pursuant to the proviso set forth in the immediately preceding sentence, shall relieve the assigning or delegating Party of any of its obligations hereunder unless the non-assigning or non-delegating Parties enter into a novation releasing the assigning or delegating Party of its obligation under this Agreement.  Any purported assignment of rights or delegation of obligations under this Agreement other than as permitted by this <u>Section 12</u> shall be null and void.

13. <u>Construction</u>.  The descriptive headings herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.  The word "including" means without limitation by reason of enumeration.  The words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement.  Unless specifically stated otherwise, all references to Sections are to the Sections of this Agreement.

14. <u>Rights of Parties</u>.  This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

15. <u>Conditions Precedent</u>.  This Agreement and the obligations of the Parties hereunder shall not become effective unless or until the following conditions precedent have been satisfied:

(a) this Agreement shall have been executed by each Party and each Party shall have received counterparts hereof;

(b) a Final Support Agreement Order shall have been entered by the Bankruptcy Court, and such order shall not have been appealed, stayed or modified;

(c) the New Funding Agreement shall not have been amended, restated, modified or supplemented, and Holdco shall not have waived any of its rights, powers, privileges

or remedies under the New Funding Agreement, in each case without the prior written consent of J&J; and

    (d)  neither Holdco nor LTL shall have assigned its rights or obligations under the New Funding Agreement without the prior written consent of J&J.

[*Signature Page Follows*]

12

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**JOHNSON & JOHNSON**,
a New Jersey corporation

By: _____
Name: Duane Van Arsdale
Title: Treasurer


**JOHNSON & JOHNSON HOLDCO (NA) INC.**,
a New Jersey corporation

By: _____
Name: Laura McFalls
Title: President


**LTL MANAGEMENT LLC**,
a North Carolina limited liability company

By: _____
Name: Robert Wuesthoff
Title: President

[*Signature Page to Support Agreement*]

      IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**JOHNSON & JOHNSON**,
a New Jersey corporation

By:_____
Name:  Duane Van Arsdale
Title:  Treasurer

**JOHNSON & JOHNSON HOLDCO (NA) INC.**,
a New Jersey corporation

By:_____
Name:  Laura McFalls
Title:  President

**LTL MANAGEMENT LLC**,
a North Carolina limited liability company

By:\_\_\_\_*[signature]*_____
Name:  Robert Wuesthoff
Title:  President

[*Signature Page to Support Agreement*]