**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admissions *pro hac vice* pending)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |

**DEBTOR'S MOTION FOR AN ORDER: (I) AUTHORIZING
IT TO FILE A LIST OF THE TOP LAW FIRMS WITH
TALC CLAIMS AGAINST THE DEBTOR IN LIEU OF THE LIST OF
THE 20 LARGEST UNSECURED CREDITORS; (II) APPROVING CERTAIN
NOTICE PROCEDURES FOR TALC CLAIMANTS; AND (III) APPROVING
THE FORM AND MANNER OF NOTICE OF COMMENCEMENT OF THIS CASE**

The above-captioned debtor (the "Debtor") moves the Court for the entry of an

order: (i) authorizing it to file a list of the top law firms with talc-related claims against the

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1535643770

Debtor in lieu of the list of the 20 largest unsecured creditors; (ii) approving certain notice procedures for talc claimants; and (iii) approving the form and manner of notice of commencement of this case. In support of this Motion, the Debtor respectfully represents as follows:

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.) (the "Standing Order of Reference"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

2. The statutory predicates for the relief requested herein is section 105(a) of the Bankruptcy Code and Rules 1007(d), 2002(m), 7004 and 9014(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Bankruptcy Rules").

## Background

3. On the date hereof (the "Petition Date"), the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor, a North Carolina limited liability company, is a defendant in thousands of lawsuits asserting personal injuries allegedly caused by exposure to talc-containing products. It is the direct parent of Royalty A&M LLC, a North Carolina limited liability

-2-

company, which manages a portfolio of royalty revenue streams, including some based on third party sales of certain products, and will seek opportunities to acquire or finance additional royalty revenue streams.

5. The Debtor has reached agreement on the material terms of a plan of reorganization with thousands of talc claimants. That agreement has been memorialized in a series of plan support agreements. The Debtor has commenced this chapter 11 case (the "Chapter 11 Case") to pursue confirmation of a plan of reorganization that contains the terms agreed to in the plan support agreements. A comprehensive description of the Debtor, its history, its assets and liabilities and the events leading to the commencement of the Chapter 11 Case can be found in the declaration of John K. Kim (the "First Day Declaration"), which was filed contemporaneously herewith and is incorporated herein by reference.

**Relief Requested**

6. Pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rules 1007(d), 2002(m), 7004 and 9014(b) and Local Bankruptcy Rule 9013-5, the Debtor hereby seeks the entry of an order, substantially in the form submitted herewith: (a) authorizing the Debtor to file a list of the 18 law firms with the most significant representations of parties with talc claims against the Debtor based on the volume of claims or other related factors (a "Top Talc Counsel List"), in lieu of a list of creditors that hold the 20 largest unsecured claims against the Debtor; (b) approving certain notice procedures for creditors (collectively, the "Talc Claimants") who are claimants in talc-related personal injury lawsuits or other proceedings involving the Debtor or who have similar claims asserted through counsel; and (c) approving the form and manner of notice of the commencement of the Chapter 11 Case. Substantially

similar relief was previously granted in the Debtor's prior chapter 11 case (the "2021 Chapter 11 Case").[2]

## Argument

*List of the Top Talc Plaintiff Firms*

7. Pursuant to Bankruptcy Rule 1007(d), a chapter 11 debtor must file with its voluntary petition a list setting forth the names, addresses and claim amounts of the creditors, excluding insiders, that hold the 20 largest unsecured claims in the debtor's case (a "Top 20 List"). This Top 20 List primarily is used by the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") to understand the types and amounts of unsecured claims against the debtor and thus evaluate prospective candidates to serve on the official committee of unsecured creditors appointed in the debtor's case under section 1102 of the Bankruptcy Code.[3]

8. As discussed in the First Day Declaration, the Debtor's largest creditors are talc personal injury claimants. As a result, the Debtor anticipates that, as in the 2021 Chapter 11 Case, an official committee of talc personal injury claimants (a "Talc Committee") will be appointed that consists of individuals that are (a) representative of the Debtor's overall pool of talc personal injury claimants and (b) represented by law firms with the most talc-related claims against the Debtor. Further, because the overwhelming majority of unsecured creditors

---

[2] *Order (I) Authorizing the Debtor to File a List of the Top Law Firms With Talc Cases Against the Debtor in Lieu of the List of 20 Largest Unsecured Creditors; (II) Approving Certain Notice Procedures for Talc Claimants; and (III) Approving the Form and Manner of Notice of Commencement of this Case*, In re LTL Management LLC, No. 21-30589 (JCW) (Bankr. W.D.N.C. Nov. 4, 2021), Dkt. 321 (the "2021 LTL Order").

[3] "The purpose of the separate list of 20 largest creditors required by this provision in the rules is to enable the clerk to identify members and the court to appoint immediately an unsecured creditors' committee in compliance with 11 U.S.C. § 1102(a)(1)." In re Dandy Doughboy Donuts, Inc., 66 B.R. 457, 458 (Bankr. S.D. Fla. 1986).

are Talc Claimants, as in the 2021 Chapter 11 Case, a separate general unsecured creditors' committee is not expected to be formed.

9. In light of the foregoing, the Debtor does not believe that listing the individual Talc Claimants with the largest unsecured claims against the Debtor would facilitate the U.S. Trustee's evaluation of potential members of a Talc Committee. Instead, because committees in mass tort chapter 11 cases typically consist of individual plaintiffs represented by law firms, the Debtor believes that providing the U.S. Trustee with a Top Talc Counsel List would better assist the U.S. Trustee in evaluating such a committee.

10. Accordingly, the Debtor seeks authority to file a Top Talc Counsel List in lieu of listing the Talc Claimants with the largest unsecured claims against the Debtor on a Top 20 List. The Top Talc Counsel List is comprised of the 18 law firms with the most significant representations of parties with claims against the Debtor based on the volume of claims or related factors.

11. Courts, including in the 2021 Chapter 11 Case, have granted similar relief in cases dealing with mass-tort litigation. See, e.g., 2021 LTL Order (authorizing debtors to file consolidated list of law firms representing claimants in talc lawsuits in which debtor was a defendant in lieu of a Top 20 List); In re Aldrich Pump LLC, No. 20-30608 (JCW) (Bankr. W.D.N.C. June 25, 2020) (authorizing debtors to file consolidated list of law firms representing large number of claimants in asbestos lawsuits in which debtors were defendants in lieu of a Top 20 List) (the "Aldrich Order"); In re Boy Scouts of America, No. 20-10343 (LSS) (Bankr. D. Del. Mar. 23, 2020) (authorizing debtors to file, in lieu of a Top 20 List, a consolidated list of law firms representing large numbers of abuse victims asserting claims against debtors); In re DBMP LLC, No. 20-30080 (JCW) (Bankr. W.D.N.C. Jan. 28, 2020) (authorizing debtor to file

-5-

list of law firms with most significant representations of parties with asbestos claims against debtor in lieu of a Top 20 List based on volume of filings, scope of payments or other related factors, across the major types of claims faced by the debtor) (the "DBMP Order"); In re Duro Dyne Nat'l Corp., No. 18-27963 (MBK) (Bankr. D.N.J. Sept. 11, 2018) (authorizing debtors to send notices, mailings, and other communications to counsel of record for individual asbestos claimants in lieu of notifying such claimants personally); In re Bestwall LLC, No. 17-31795 (LTB) (Bankr. W.D.N.C. Nov. 8, 2017) (same) (the "Bestwall Order"); In re Kaiser Gypsum Co., Inc., No. 16-31602 (JCW) (Bankr. W.D.N.C. Oct. 7, 2016) (authorizing debtors to file consolidated list of asbestos plaintiff firms with largest number or scope of asbestos cases in lieu of a Top 20 List) (the "Kaiser Gypsum Order").

***Notice Procedures for Talc Claimants***

12. Pursuant to section 105(a) of the Bankruptcy Code, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a). In addition, the Court may "enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by [the Bankruptcy Rules]." Fed. R. Bankr. P. 2002(m). For notice to be proper, it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (describing notice required to satisfy due process).[4]

---

[4] Pursuant to Bankruptcy Rule 9014(b), service of pleadings in a contested matter is to be accomplished in the manner provided for by Bankruptcy Rule 7004. Pursuant to Bankruptcy Rule 7004(b)(8), "in addition to the methods authorized by Rule 4(e) . . . service may be made within the United States by first class mail postage prepaid" upon "any defendant . . . [by mailing] a copy of the summons and complaint . . . to an agent of such defendant authorized by appointment or by law to receive service of process . . . ." Fed. R. Bankr. P. 7004(b)(8). Rule 4(e)(2)(C) of the Federal Rules of Civil Procedure (the "Civil Rules") states that "an individual . . . may be served in a judicial district of the United States by . . . delivering a copy of

13. In many cases, courts have found that providing notice of bankruptcy case proceedings to the attorney representing a creditor in prepetition litigation (or threatened litigation) provides adequate and appropriate notice to that creditor. See, e.g., In re Garlock Sealing Techs., LLC, 2017 WL 2539412, at *15 (W.D.N.C. June 12, 2017) (finding that all asbestos claimants had been afforded due process when debtors provided notice of their proposed plan of reorganization and the confirmation hearing to asbestos claimants' attorneys, rather than to asbestos claimants); Chanute Proc. Credit Assoc. v. Schicke (In re Schicke), 290 B.R. 792, 805-06 (B.A.P. 10th Cir. 2003) (holding that notice of chapter 7 proceedings to the attorney representing a judgment creditor in non-bankruptcy litigation was the best notice possible where the debtor did not know the creditor's contact information), aff'd, 97 F. App'x 249 (10th Cir. 2004); Cablevision Sys. Corp. v. Malandra (In re Malandra), 206 B.R. 667, 676 (Bankr. E.D.N.Y. 1997) (holding that notice to the attorney representing a creditor in prepetition litigation relating to the creditor's claim constituted adequate notice to the creditor).[5]

---

[a summons and complaint] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). The Debtor respectfully submits that the procedures described herein are consistent with such rules and reasonably calculated to apprise Talc Claimants of any notices, mailings, pleadings and communications, in a contested matter.

[5] Additionally, where counsel has represented parties in related or parallel matters, service of a summons and complaint in an adversary proceeding, and by extension a contested matter under Bankruptcy Rule 9014 and Local Rule 9014-1, is appropriate on a party's counsel of record. See, e.g., Rubin v. Pringle (In re Focus Media Inc.), 387 F.3d 1077, 1081, 1083 (9th Cir. 2004) ("Implied authorization to accept service is permitted under the Bankruptcy Rules where service is made in an adversary proceeding on a party's attorney in the underlying bankruptcy case . . . . Other courts look to the level of the attorney's involvement in the related proceeding and the extent to which the two proceedings are intertwined."); Reckling v. Okechucku, 2007 U.S. Dist. LEXIS 62874, at *14-15 (D.N.J. Aug. 27, 2007) (service of adversary proceeding complaint on creditor's attorney is proper when attorney represented creditor in separate proceeding raising same issues); The Muralo Co., Inc. v. All Defendants Listed on Exhibits A Through D to Complaint (In re The Muralo Co., Inc.), 295 B.R. 512, 521-22 (Bankr. D.N.J. 2003) (holding that counsel of record for claimants in underlying asbestos litigation were impliedly authorized as agents for initial service in adversary proceeding because, among other things, the bankruptcy case and related adversary proceeding were "substantially related" to the underlying asbestos litigation and the "[e]xtension of that representation to substantively related bankruptcy proceedings would seem to be both expected and essential given the general history of asbestos mass tort and resulting bankruptcy proceedings.").

14. In fact, providing notice to a claimant's attorney of record in matters relating to bankruptcy claims, even where the attorney does not represent the claimant in connection with the bankruptcy case, has been held to be the equivalent of giving notice to creditors directly. See, e.g., Seifert v. Rice (In re Rice), 2010 Bankr. LEXIS 639, at *7 (Bankr. E.D.N.C. Mar. 1, 2010) (following "the majority of courts addressing the issue" in holding that (a) an attorney that represented creditors with respect to a prepetition judgment against the debtor continued to serve as the creditors' agent in bankruptcy proceedings concerning that same judgment and (b) notice to that attorney regarding bankruptcy proceedings therefore constituted sufficient notice to the creditors); see also Lompa v. Price (In re Price), 871 F.2d 97, 99 (9th Cir. 1989) (holding that notice to the attorney who represented a creditor in an action affected by a bankruptcy proceeding constituted notice to the creditor); Schicke, 290 B.R. at 803 ("It is generally held that an attorney who represents the creditor in matters against a debtor prepetition . . . will be an agent of the creditor in the context of a debtor's bankruptcy case."); Linder v. Trump's Castle Assocs., 155 B.R. 102, 105 (D.N.J. 1993) (notice to a claimant's attorney is imputed to the claimant if the attorney's representation relates to a bankruptcy claim).

15. In certain cases, moreover, providing notice of bankruptcy proceedings and deadlines directly to personal injury claimants, rather than to their known attorneys, may *not* constitute adequate notice, including, for instance, where it is unlikely that such claimants would appreciate the legal significance of the notices. See In re Grand Union Co., 204 B.R. 864, 874-75 (Bankr. D. Del. 1997) (holding that providing notice of bar dates in a chapter 11 case directly to personal injury claimants where the debtor was aware the claimants were represented by counsel was not adequate to satisfy due process, and notice should have been provided to the claimants' attorneys); accord United States v. Thomas, 342 B.R. 758, 761 (S.D. Tex. 2005)

("Being in bankruptcy does not alter the responsibilities that generally apply to work through counsel.").[6]

16. Not only is it reasonable for personal injury claimants to expect that any legal notices relating to their claims would be sent to their attorneys of record, sending notice directly to the claimants may constitute a violation of applicable Rules of Professional Conduct by a debtor's attorney. See Grand Union, 204 B.R. at 873 (finding that sending a bar date notice directly to personal injury claimants, rather than their counsel, "violate[d] the spirit, if not the letter," of Rule 4.2 of the Model Rules of Professional Conduct). Rule 4.2 of the New Jersey Rules of Professional Conduct (the "Rules of Professional Conduct") provides that, with certain inapplicable exceptions:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter . . . unless the lawyer has the consent of the other lawyer, or is authorized by law or court order to do so . . . .

N.J. R. Prof. Conduct 4.2.

17. Further, as explained in the official comments to the rule, Rule 4.2 of the Rules of Professional Conduct applies to communications with any party represented by counsel, whether or not in litigation. N.J. R. Prof. Conduct 4.2.

18. In this case, the Debtor is subject to tens of thousands of pending claims asserted by the Talc Claimants. The Debtor has communicated solely with the plaintiff law firms that represent the Talc Claimants (collectively, the "Talc Firms") regarding these claims. In

---

[6] Additionally, pursuant to Civil Rule 5(b), as incorporated by Bankruptcy Rule 7005, in an adversary proceeding, "[i]f a party is represented by an attorney, service [of pleadings and other papers] must be made on the attorney, unless the court orders otherwise." Thus, service on the Talc Firms (defined below) as the authorized agents of the Talc Claimants each represents is not only proper, but required, under both the Civil Rules and the Bankruptcy Rules.

many cases, the Debtor cannot be sure that it has the current addresses for the Talc Claimants. This is especially the case for Talc Claimants who did not have filed claims as of the commencement of the 2021 Chapter 11 Case. Under these circumstances, the Debtor seeks authority to continue its past practice of providing notice to the Talc Claimants through the Talc Firms and, thereby, avoid any confusion that undoubtedly would arise from sending notices directly to the Talc Claimants.

19.    Accordingly, the Debtor seeks Court approval to: (a) serve all notices, mailings, filed documents and other communications relating to the Chapter 11 Case, including, without limitation, pleadings, in any contested matter or otherwise, seeking relief that could directly impact Talc Claimants' rights and obligations in this Chapter 11 Case, on the Talc Claimants in care of their counsel at such counsel's address, including, for the avoidance of doubt, an e-mail address; and (b) list the names, addresses and other contact information, as applicable, of the Talc Firms in any creditor or service lists, including the creditor matrix provided to the Court or filed in this case, in lieu of listing the contact information of individual Talc Claimants (collectively, the "<u>Notice Procedures</u>"). For a Talc Firm representing multiple Talc Claimants, the Debtor may serve each document only a single time on such Talc Firm (at each relevant address) on behalf of all of such counsel's clients; <u>provided</u> <u>that</u> any notice or other document relating specifically to one or more particular Talc Claimants (rather than all Talc Claimants represented by a Talc Firm) shall clearly identify the parties to whom it relates.[7]

20.    The Debtor believes that the Notice Procedures provide for an effective and appropriate noticing process for the Talc Claimants. Implementing the Notice Procedures

---

[7] In connection with providing notices under the Notice Procedures, the Debtor also may provide for each Talc Firm a list of each of the Talc Claimants that, according to the Debtor's records, are represented by such Talc Firm. Any such list shall not be deemed to be an exclusive list or to limit the effectiveness of any notice with respect to other clients of the Talc Firm not listed therein.

would alleviate the administrative burden and expense of gathering current contact information for each of the Talc Claimants, which, in many cases, is not readily available or is difficult to verify. It would be extremely burdensome, costly and time-consuming for the Debtor to attempt to obtain this information. In addition, any contact information for the individual Talc Claimants the Debtor has or is able to obtain may be outdated and unreliable. Moreover, implementing the Notice Procedures better enables counsel to the Talc Claimants to advise their clients in matters related to the Chapter 11 Case.

21. Accordingly, the Debtor respectfully submits that the Notice Procedures are warranted under the facts and circumstances of the Chapter 11 Case, and they represent a fair and appropriate process to serve the Talc Claimants with notices, pleadings and communications in the Chapter 11 Case. The Notice Procedures are reasonably calculated, under all the circumstances, to apprise the Talc Claimants of the matters before the Court and present to them an opportunity to be heard thereon. For the foregoing reasons, the Debtor requests that the Court approve the Notice Procedures, as described herein.

22. Courts, including in the 2021 Chapter 11 Case, have granted similar relief. See, e.g., 2021 LTL Order (approving notice to claimants' counsel of record in lieu of notice to individual claimants directly, and identification of claimants' counsel, rather than claimants, on creditor lists); Aldrich Order (same); DBMP Order (same); Bestwall Order (same); Kaiser Gypsum Order (same).

***Form and Manner of the Case Commencement Notice***

23. Contemporaneously herewith, the Debtor has filed a motion seeking authority to employ Epiq Corporate Restructuring, LLC (the "Agent") as, among other things, claims and noticing agent in this case. One of the Agent's responsibilities as claims and noticing agent, if its appointment is approved, will be to serve a notice of the commencement of the

Chapter 11 Case (the "Case Commencement Notice") and the initial meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "Section 341 Meeting") in lieu of the standard notice automatically entered in chapter 11 cases filed in this jurisdiction. The Case Commencement Notice will be substantially in the form attached hereto as Exhibit A, subject to any revisions agreed upon by the Debtor and U.S. Trustee.[8]

24. The Debtor proposes that the Agent serve the Case Commencement Notice by regular mail, postage prepaid, on those entities entitled to receive such notice pursuant to Bankruptcy Rule 2002 and the Notice Procedures not later than five business days after the Debtor (a) receives written notice of the time and place of the Section 341 Meeting and (b) agrees on the final form and substance of the Case Commencement Notice with the U.S. Trustee. The Debtor also will post a copy of the Case Commencement Notice on the restructuring website maintained by the Agent. The Debtor hereby requests that the Court approve the foregoing procedures as providing sufficient notice of the commencement of the Chapter 11 Case and the Section 341 Meeting.

25. Courts, including in the 2021 Chapter 11 Case, have granted similar relief. See, e.g., 2021 LTL Order (approving a similar form and manner of service of a case commencement notice); Aldrich Order (same); DBMP Order (same); Bestwall Order (same); Kaiser Gypsum Order (same).

**Waiver of Memorandum of Law**

26. The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis

---

[8] The form of Case Commencement Notice attached as Exhibit A is based on Official Bankruptcy Form 309F and is customized to the circumstances of the Chapter 11 Case. No bar date for the filing of proofs of claim in the Chapter 11 Case has been established. Accordingly, the Commencement Notice will not include a notice of the bar date.

upon which the Debtor relies on is incorporated herein and the Motion does not raise any novel issues of law.

### Notice

27.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the parties on the Top Talc Counsel List; and (c) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

### No Prior Request

28.  No prior request for the relief sought in this Motion has been made to this or any other Court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter an order substantially in the form submitted herewith, granting the relief requested herein; and (ii) grant such other and further relief to the Debtor as the Court may deem just and proper.

| | |
|---|---|
| Dated: April 4, 2023 | **WOLLMUTH MAHER & DEUTSCH LLP** |
| | */s/ Paul R. DeFilippo* |
| | Paul R. DeFilippo, Esq. |
| | James N. Lawlor, Esq. |
| | Joseph F. Pacelli, Esq. (*pro hac vice* pending) |
| | 500 Fifth Avenue |
| | New York, New York 10110 |
| | Telephone: (212) 382-3300 |
| | Facsimile: (212) 382-0050 |
| | pdefilippo@wmd-law.com |
| | jlawlor@wmd-law.com |
| | jpacelli@wmd-law.com |
| | |
| | **JONES DAY** |
| | Gregory M. Gordon, Esq. |
| | Brad B. Erens, Esq. |
| | Dan B. Prieto, Esq. |
| | Amanda Rush, Esq. |
| | 2727 N. Harwood Street |
| | Dallas, Texas 75201 |
| | Telephone: (214) 220-3939 |
| | Facsimile: (214) 969-5100 |
| | gmgordon@jonesday.com |
| | bberens@jonesday.com |
| | dbprieto@jonesday.com |
| | asrush@jonesday.com |
| | (Admissions *pro hac vice* pending) |
| | |
| | *PROPOSED ATTORNEYS FOR DEBTOR* |

NAI-1535643770