| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo, Esq.<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq.<br>Amanda Rush, Esq.<br>2727 N. Harwood Street<br>Dallas, Texas 75201<br>Telephone: (214) 220-3939<br>Facsimile: (214) 969-5100<br>gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>asrush@jonesday.com<br>(Admissions *pro hac vice* pending)<br><br>*PROPOSED ATTORNEYS FOR DEBTOR* | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>                           Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan |

**DEBTOR'S APPLICATION PURSUANT TO 28 U.S.C. § 156(c)
AND 11 U.S.C. § 105(a) FOR ENTRY OF AN ORDER AUTHORIZING
THE APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS
CLAIMS AND NOTICING AGENT *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtor (the "Debtor") moves the Court for the entry of an order authorizing the appointment of Epiq Corporate Restructuring, LLC ("Epiq") as claims and noticing agent nunc pro tunc to the date hereof (the "Petition Date"). In support of this Application, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1536444209

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.) (the "Standing Order of Reference"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

2. The statutory predicates for the relief requested herein are section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code and Rule 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Bankruptcy Rules").

**Background**

3. On the Petition Date, the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor, a North Carolina limited liability company, is a defendant in thousands of lawsuits asserting personal injuries allegedly caused by exposure to talc-containing products. It is the direct parent of Royalty A&M LLC, a North Carolina limited liability company, which manages a portfolio of royalty revenue streams, including some based on third party sales of certain products, and will seek opportunities to acquire or finance additional royalty revenue streams.

5. The Debtor has reached agreement on the material terms of a plan of reorganization with thousands of talc claimants. That agreement has been memorialized in a

series of plan support agreements. The Debtor has commenced this chapter 11 case (the "Chapter 11 Case") to pursue confirmation of a plan of reorganization that contains the terms agreed to in the plan support agreements. A comprehensive description of the Debtor, its history, its assets and liabilities and the events leading to the commencement of the Chapter 11 Case can be found in the declaration of John K. Kim (the "First Day Declaration"), which was filed contemporaneously herewith and is incorporated herein by reference.

### Relief Requested

6. The chapter 11 case will, like the Debtor's prior chapter 11 case (the "2021 Chapter 11 Case"), involve many thousands of claimants and other parties in interest and, thus, likely will impose significant administrative burdens upon the Court and the Office of the Clerk of the Court (the "Clerk's Office"). Given the anticipated number of claimants, the Debtor submits that the appointment of Epiq, as in the 2021 Chapter 11 Case: (a) will (i) relieve the Debtor, the Court and the Clerk's Office of substantial administrative burdens and related costs, (ii) expedite the service of notices and pleadings, (iii) streamline the claims administration process and (iv) otherwise promote the efficient administration of the Chapter 11 Case; and (b) is otherwise in the best interests of both the Debtor's estate and parties in interest.

7. The Debtor, therefore, seeks entry of an order, substantially in the form submitted herewith, authorizing it to appoint Epiq as claims and noticing agent ("Agent")[2] in this Chapter 11 Case nunc pro tunc to the Petition Date in accordance with the terms of the engagement letter between Epiq and Jones Day (on behalf of the Debtor), dated as of April 4, 2023 (the "Engagement Agreement"), attached hereto as Exhibit A. In support of this

---

[2] At this time, Epiq's proposed services do not include balloting and solicitation services. The Debtor reserves the right to seek to retain Epiq to provide such services.

-3-

Application, the Debtor submits the *Declaration of Kathryn Tran*, attached hereto as <u>Exhibit B</u> (the "<u>Tran Declaration</u>").

### Epiq's Qualifications

8.    Epiq is uniquely situated to serve as claims agent in this Chapter 11 Case because of its experience serving as claims agent in the 2021 Chapter 11 Case.

9.    On October 14, 2021, the Debtor commenced the 2021 Chapter 11 Case by filing a voluntary petition for relief under title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  On November 4, 2021, an order was entered in the 2021 Chapter 11 Case authorizing the Debtor to retain and employ Epiq as its claims and noticing agent.  *Order Authorizing the Retention and Employment of Epiq Corp. Restructuring, LLC as Claims, Noticing, and Ballot Agent*, <u>In re LTL Mgmt. LLC</u>, No. 21-30589, Dkt. 320 (Bankr. W.D.N.C. 2021) (the "<u>2021 Epiq Retention Order</u>").

10.    On January 30, 2023, the United States Court of Appeals for the Third Circuit issued an opinion and judgment providing that the 2021 Chapter 11 Case should be dismissed.  On March 31, 2023, the mandate was issued.  On April 4, 2023, this Court entered an order (the "<u>Dismissal Order</u>") dismissing the 2021 Chapter 11 Case.

11.    Given Epiq's retention and work in the 2021 Chapter 11 Case, it is uniquely well-positioned to provide services efficiently and economically to the Debtor.  For example, in the 2021 Chapter 11 Case, Epiq updated talc claims information, including counsel information, with respect to the Debtor's tens of thousands of pending talc claims.  Additionally, given its experience with assisting the Debtor with its schedules of assets and liabilities and statement of financial affairs (the "<u>Schedules and Statement</u>") in the 2021 Chapter 11 Case, Epiq is well-suited to assist the Debtor in preparing its Schedules and Statement in this Chapter 11 Case.  As a result, Epiq's retention will enable the Debtor to avoid the unnecessary expense that

would result from having another claims and noticing agent familiarize itself with, among other things, the tens of thousands of creditors and other parties in interest in this Chapter 11 Case.[3]

**Scope of Services**

12. The Debtor anticipates that Epiq will perform the following tasks in its role as Agent (the "Epiq Services"), as well as all quality control relating thereto:

(a) Prepare and serve required notices and documents in this Chapter 11 Case in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of New Jersey ("Local Rules") and any orders of the Court, in the form and manner directed by the Debtor and/or the Court, including: (i) notice of the commencement of this Chapter 11 Case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of any objections to claims; (iv) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan of reorganization; and (v) all other notices, orders, pleadings, publications and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Case;

(b) Assist with administrative tasks in the preparation of the Debtor's Schedules and Statement, including coordinating data from the Debtor and its advisors, creating and maintaining databases for maintenance and formatting of Schedules and Statement data and providing data entry and quality assurance assistance regarding the Schedules and Statement;

(c) Create and maintain electronic databases for creditor/party in interest information provided by the Debtor (e.g., creditor matrix and Schedules and Statement) and creditors/parties in interest (e.g., proofs of claim/interest);

(d) Maintain copies of any proofs of claim and proofs of interest filed (in hard copy and electronic form);

(e) Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, if desired;

(f) Process any proofs of claim/interest submitted;

---

[3] Additional information regarding Epiq's qualifications and experience as a claims, noticing and balloting agent can be found in Epiq's retention application filed in the 2021 Chapter 11 Case (the "2021 Epiq Retention Application"). In re LTL Management LLC, No. 21-30589, Dkt. 6 ¶¶ 7-8.

(g)     Provide access to the public for examination of copies of proofs of claim or interest without charge during regular business hours;

(h)     Maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk's Office, including, among other things, the following information for each proof of claim or proof of interest: (i) name and address of the claimant and any agent thereof if the proof of claim or proof of interest was filed by an agent; (ii) date and time received; (iii) claim number assigned and (iv) asserted amount and classification/priority of the claim;

(i)     Transmit to the Clerk's Office a copy of the Claims Register on a monthly basis, unless requested by the Clerk's Office on a more or less frequent basis or, in the alternative, make available the Claims Register online;

(j)     Create and maintain a website at https://dm.epiq11.com/LTL with general case information, key documents, claim search function and mirror of ECF case docket (the "Case Website");

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Register;

(l)     Record any transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Maintain an up-to-date mailing list of any and all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's Office;

(n)     After service of a particular notice—whether by regular mail, overnight or hand delivery, email or facsimile service—file with the Clerk's Office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was sent and the date and manner of transmission;

(o)     Update the claim database to reflect undeliverable or changed addresses;

(p)     Coordinate publication of certain notices in periodicals and other media;

(q)     Distribute Claim Acknowledgement Cards to any creditor having filed a proof of claim/interest; and

(r)     Provide state-of-the-art call center facility and services, including (as needed): (i) create frequently asked questions, call scripts, escalation procedures and call log formats; (ii) record automated messaging; (iii) train call center staff and (iv) maintain and transmit call log to the Debtor and its advisors.

-6-

13. Epiq will follow the notice and claims procedures that: (a) conform to the guidelines promulgated by the Clerk's Office and the Judicial Conference of the United States; (b) conform to the *Guidelines Establishing Case Management and Administrative Procedures for Cases Designated as Complex Chapter 11 Cases*; and (c) are established by an order of the Court.

### Professional Compensation

14. The Debtor seeks to retain and employ Epiq in accordance with the terms of the Engagement Agreement.

15. The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the Epiq Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Epiq's fees are charged at the rates set forth in the Pricing Schedule attached to the Engagement Agreement, as they may be adjusted on a yearly basis consistent with the Engagement Agreement. Epiq also will seek reimbursement of expenses at the rates set forth in the Pricing Schedule attached to the Engagement Agreement.

16. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on (a) the Debtor, (b) counsel for the Debtor and (c) the United States Trustee for the District of New Jersey (the "U.S. Trustee"). If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties will meet and confer in an attempt to resolve the dispute. If a resolution is not achieved, the parties may request a resolution from the Court.

17. Following the entry of the Dismissal Order and prior to the Petition Date, the Debtor paid to Epiq $190,000 on account of actual and estimated fees and expenses from

March 1, 2023 through the Petition Date.[4]  In addition, as of the Petition Date, Epiq held a retainer in the amount of $25,000.[5]  Epiq seeks to continue to hold a retainer up to $25,000 as contemplated under the Engagement Agreement during the Chapter 11 Case as security for payment of fees and expenses incurred.  Following the termination of the Engagement Agreement, Epiq will return to the Debtor any amount of the retainer that remains following the application of the retainer to the payment of unpaid invoices.

18. Under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend and hold harmless Epiq and its affiliates, officers, directors, agents, employees and consultants, under circumstances arising out of or relating to the Engagement Agreement or Epiq's rendering of services pursuant thereto, except in circumstances resulting solely from Epiq's gross negligence, willful misconduct, fraud or bad faith.  The Debtor believes that such an indemnification obligation is customary, reasonable and necessary to retain the services of a claims and noticing agent in the Chapter 11 Case.  Nonetheless, Epiq has agreed to a modification of the indemnification provisions in the Engagement Agreement to reflect the customary practice in this jurisdiction.

---

[4] Epiq expects to:  (a) complete its reconciliation of prepetition fees and expenses actually incurred for the period prior to the Petition Date no later than the deadline set for retained estate professionals to file their first interim fee applications in this Chapter 11 Case; (b) make any adjustment to the amount of the retainer, as described herein, on or about that date; and (c) disclose such adjustment to the Debtor.  If Epiq's actual fees and expenses for the period from March 1, 2023 through the Petition Date are less than $190,000, the balance will be added to the retainer, and amounts exceeding $25,000 will be applied to its postpetition fees and expenses consistent with any terms relating to the application of retainers in any order establishing procedures for interim compensation and reimbursement of expenses of retained professionals; provided however, that nothing herein will subject Epiq to any such order.  Epiq agrees to waive any actual fees and expenses for the period from March 1, 2023 through the Petition Date that exceed the amount paid to Epiq prior to the Petition Date.  As set forth herein, following such reconciliation, Epiq seeks to hold $25,000 as retainer during the Chapter 11 Case.

[5] Pursuant to the 2021 Epiq Retention Order, Epiq was authorized to hold $25,000 as retainer until the termination of its engagement by the Debtor in the 2021 Chapter 11 Case.  Epiq seeks to continue to hold a $25,000 retainer as set forth herein.

NAI-1536444209

**Epiq's Disinterestedness**

19. Although by this Application the Debtor does not propose to employ Epiq under section 327(a) of the Bankruptcy Code, Epiq nevertheless has reviewed its electronic database to determine whether it has any relationships with the creditors and parties-in-interest identified by the Debtor. To the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Tran Declaration, Epiq represents that it neither holds nor represents any interests that are materially adverse to the Debtor's estate in connection with any matter on which it will be employed.

20. Moreover, in connection with its appointment as Agent, Epiq represents in the Tran Declaration, among other things, that:

(a) Epiq is not a creditor of the Debtor;

(b) Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Agent in the Chapter 11 Case;

(c) By accepting employment in the Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with the Chapter 11 Case;

(d) In its capacity as the Agent in the Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

(e) Epiq will not employ any past or present employee of the Debtor for work that involves the Debtor's bankruptcy proceeding;

(f) Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g) In its capacity as Agent in the Chapter 11 Case, Epiq will not intentionally misrepresent any fact to any person;

(h) Epiq shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

  (i) Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

  (j) None of the services provided by Epiq as Agent in the Chapter 11 Case shall be at the expense of the Clerk's office.

21. Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Basis for Relief Requested

22. Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases. It states as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

23. Moreover, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Accordingly, the Court may rely on its general equitable powers to grant the relief requested herein.

24. The Debtor requests entry of an order authorizing the appointment of Epiq as its Agent, <u>nunc pro tunc</u> to the Petition Date, the duties of which include assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of the claims register. Such relief is appropriate in light of 28 U.S.C. § 156(c) and in order to relieve the Court and the Clerk's Office of the heavy administrative burdens this case stands to

-10-

impose, as noted above. In view of the number of anticipated claimants and the complexity of the Chapter 11 Case, the Debtor submits that the appointment of an Agent is in the best interests of the Debtor's estate, its creditors, and all parties-in-interest.

## Bankruptcy Rule 6003 Has Been Satisfied

25. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). As described above, the circumstances presented by the Chapter 11 Case necessitate that Epiq immediately commence work on time-sensitive matters and promptly devote resources to the Debtor's case. Accordingly, the Debtor has satisfied the requirements of Bankruptcy Rule 6003.

## Request for Bankruptcy Rule 6004 Waivers

26. To implement the foregoing successfully, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## Waiver of Memorandum of Law

27. The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies on is incorporated herein and the Application does not raise any novel issues of law.

## Notice

28. This Application has been served on: (a) the U.S. Trustee; (b) the top law firms representing talc claimants against the Debtor, as identified in the Debtor's chapter 11

petition; and (c) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

## No Prior Request

29. No prior request for the relief sought in this Application has been made to this or any other Court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter an order, substantially in the form submitted herewith, granting the relief requested herein; and (ii) grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated: April 4, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (*pro hac vice* pending)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admissions *pro hac vice* pending)

*PROPOSED ATTORNEYS FOR DEBTOR*