**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admissions *pro hac vice* pending)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br>　　　　　　　Debtor. | Chapter 11<br><br>Case No.:  23-12825 (MBK)<br><br>Judge:  Michael B. Kaplan |

### DEBTOR'S MOTION FOR AN ORDER:  (I) APPROVING THE CONTINUED USE OF ITS BANK ACCOUNT AND BUSINESS FORMS; AND (II) AUTHORIZING THE DEBTOR'S BANK TO CHARGE CERTAIN FEES AND OTHER AMOUNTS

The above-captioned debtor (the "Debtor" or "LTL") moves the Court for the

entry of an order:  (i) approving the continued use of its bank account and business forms; and

(ii) authorizing the Debtor's bank to charge certain fees and other amounts.  In support of this

Motion, the Debtor respectfully represents as follows:

---

[1]　　　The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**Jurisdiction and Venue**

1.      This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court*

*Under Title 11* of the United States District Court for the District of New Jersey, dated

September 18, 2012 (Simandle, C.J.) (the "Standing Order of Reference").  This is a core

proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409.  The Debtor is authorized to continue to manage its property and

operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of

the United States Code (the "Bankruptcy Code").

2.      The statutory predicates for the relief requested herein are

section 363(c)(1) of the Bankruptcy Code and Rule 9013-5 of the Local Rules of the United

States Bankruptcy Court for the District of New Jersey (the "Local Bankruptcy Rules").

**Background**

3.      On the date hereof (the "Petition Date"), the Debtor commenced this

reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy

Code.

4.      The Debtor, a North Carolina limited liability company, is a defendant in

thousands of lawsuits asserting personal injuries allegedly caused by exposure to talc-containing

products.  It is the direct parent of Royalty A&M LLC ("Royalty A&M"), a North Carolina

limited liability company, which manages a portfolio of royalty revenue streams, including some

based on third party sales of certain products, and will seek opportunities to acquire or finance

additional royalty revenue streams.

5.      The Debtor has reached agreement on the material terms of a plan of

reorganization with thousands of talc claimants.  That agreement has been memorialized in a

series of plan support agreements.  The Debtor has commenced this chapter 11 case

(the "Chapter 11 Case") to pursue confirmation of a plan of reorganization that contains the

terms agreed to in the plan support agreements.  A comprehensive description of the Debtor, its

history, its assets and liabilities and the events leading to the commencement of the Chapter 11

Case can be found in the declaration of John K. Kim (the "First Day Declaration"), which was

filed contemporaneously herewith and is incorporated herein by reference.

### Relief Requested

6.    Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtor hereby

seeks the entry of an order, substantially in the form submitted herewith:

(a)    approving the Debtor's continued use, with the denotation of "debtor-in-possession," of its (i) existing bank account and (ii) business forms;

(b)    authorizing the Debtor to open and close bank accounts, as necessary or appropriate, provided that (i) any new bank account opened by the Debtor is insured by the Federal Deposit Insurance Corporation (the "FDIC") or the Federal Savings & Loan Insurance Corporation (the "FSLIC") and designated as an authorized depository by the United States Trustee for the District of New Jersey (the "U.S. Trustee"), and (ii) the Debtor provides notice to the U.S. Trustee, any official committee or future claimants' representative appointed in this Chapter 11 Case; and

(c)    authorizing, but not directing, any bank of the Debtor (collectively, the "Banks") to honor certain transfers, provided that sufficient funds are available in the applicable accounts to cover such transfers, and charge Bank Fees (as defined below), provided, however, that no checks issued against the Bank Account (as defined below) prior to the commencement of the Chapter 11 Case shall be honored, except as authorized by an order of this Court and directed by the Debtor.

Substantially similar relief was previously granted in the Debtor's prior chapter 11 case
(the "2021 Chapter 11 Case").[2]

---

[2]    *Amended Order (A) Approving the Continued Use of the Debtor's Bank Account and Business Forms; and (II) Authorizing the Debtor's Bank to Charge Certain Fees and Other Amounts*, In re LTL Management LLC, No. 21-30589 (MBK) (Bankr. D.N.J. Dec. 9, 2021), Dkt. 763 (the "2021 Cash Management Order").

NAI-1535655413

## Facts Relevant to This Motion

*The Debtor's Bank Account*

7.      In the ordinary course of business, the Debtor maintains a Bank Account at Bank of America, N.A. ("Bank of America") in Charlotte, North Carolina (the "Bank Account").[3]  The Bank Account is insured by the FDIC.[4]

8.      All payments and other funds that are received by the Debtor are deposited into the Bank Account, including cash payments under the Funding Agreement (as such term is defined below).  Because the Bank Account serves as the "Funding Account" under the Funding Agreement, it is expected to maintain at least $5 million of cash at all times.  All amounts in the Bank Account are held in U.S. dollars.  The Bank Account also serves as the Debtor's disbursement account and is used to pay all of the Debtor's costs and expenses, including professional fees.

*The Funding Agreement*

9.      As further described in the First Day Declaration, the Debtor is party to a funding agreement (the "Funding Agreement")[5] with its non-debtor affiliate, Johnson & Johnson Holdco (NA) Inc., formerly named Johnson & Johnson Consumer Inc. (the "Payor").[6]  Under the Funding Agreement, the Debtor, as payee, receives cash funding from the Payor.

---

[3]      The last four digits of the Bank Account number are 3987.

[4]      The Debtor is not seeking a waiver of the requirements of section 345(b) of the Bankruptcy Code because it is the Debtor's understanding that Bank of America is an authorized depository institution approved by the U.S. Trustee.

[5]      A copy of the Funding Agreement is attached as Annex E to the First Day Declaration.  The summary of the Funding Agreement herein is provided for the convenience of the Court and parties in interest and is qualified in its entirety by the terms of the Funding Agreement.  In the event of any inconsistency between the description herein and the Funding Agreement, the Funding Agreement shall govern in all respects.

[6]      Following the dismissal of the 2021 Chapter 11 Case, the original funding agreement and a related intercompany loan were terminated and the parties, in substitution therefor, agreed to enter into two new agreements, the Funding Agreement and a separate support agreement.

NAI-1535655413

10.     The Funding Agreement is not a loan agreement.  Instead, without any corresponding repayment obligation by the Debtor, it requires the Payor to provide funding to pay for the costs and expenses of the Debtor incurred during the pendency of the Chapter 11 Case, including the costs of administering the case and any and all other costs and expenses of the Debtor incurred in the normal course of its business.[7]  Generally, under the Funding Agreement, the Payor is obligated to fund the Debtor's costs and expenses upon request to the extent cash distributions received by the Debtor from its subsidiary, Royalty A&M, are insufficient to pay these costs and expenses.  See Funding Agreement, at 4-5 (definition of "Permitted Funding Use"), § 2 (Funding Obligations and Procedures).

11.     Upon a proper funding request under the Funding Agreement, the Payor wires the requested funds into a designated "Funding Account."  See id. § 2.

## Argument

### Continued Use of the Bank Account and Business Forms Is Warranted

12.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in those transactions that make up the bulk of its day-to-day operations without incurring the excessive monitoring costs that would result from the need to provide notice of, and obtain approval for, such ordinary course activities.

---

[7]     In addition, and also without any corresponding repayment obligation to the Debtor, the Funding Agreement requires the Payor to provide the funding for a trust created pursuant to a plan of reorganization for the Debtor that contains the terms agreed to in the plan support agreements between certain plaintiff law firms, the Debtor, Holdco and Johnson & Johnson, as such terms may be amended or supplemented with the consent of the parties, to the extent that any cash distributions received by the Debtor from Royalty A&M and the Debtor's other assets are insufficient to provide that funding.  See Funding Agreement, at 4-5 (definition of "Permitted Funding Use"), § 2 (Funding Obligations and Procedures).

NAI-1535655413

See, e.g., In re Roth Am., Inc., 975 F.2d 949, 952 (3d Cir. 1992); United States ex rel. Harrison

v. Estate of Deutscher (In re H & S Transp. Co.), 115 B.R. 592, 599 (M.D. Tenn. 1990).

### *The Bank Account*

13.     Notwithstanding section 363(c) of the Bankruptcy Code, the U.S. Trustee

has established certain operating guidelines for a debtor in possession.  Pursuant to its *Operating*

*Guidelines and Reporting Requirements of the United States Trustee for Chapter 11 Debtor in*

*Possession and Chapter 11 Trustee* (the "Guidelines"), a chapter 11 debtor must, *inter alia*:

(i) close existing bank accounts and open new debtor in possession bank accounts; (ii) establish

one debtor in possession account for all estate monies required for the payment of taxes,

including payroll taxes; (iii) maintain a separate debtor in possession account for cash collateral;

and (iv) for all debtor in possession checking accounts, obtain checks bearing the designation

"debtor-in-possession," the bankruptcy case number, and the type of account.

14.     As a practical matter, it would be disruptive, administratively burdensome

and unnecessary to require the Debtor to close its existing Bank Account, which the Debtor

utilized throughout the 2021 Chapter 11 Case, and open a new debtor in possession bank

account.  The Debtor's continued use of the Bank Account constitutes an ordinary course and

appropriate business practice of the Debtor.  Moreover, authorizing the Debtor to continue to use

its Bank Account will support a smooth transition to operating as a debtor in possession in this

Chapter 11 Case.  Accordingly, the Debtor seeks authority to continue to use its Bank Account in

the ordinary course of its business.

15.     The Debtor further seeks authority to open and close bank accounts as it

deems necessary (consistent with the terms of the Funding Agreement).  The Debtor requests

that Bank of America and any other Bank be authorized to honor the Debtor's requests to open

or close any bank accounts, provided, however, that any new domestic account is established at a

NAI-1535655413

bank that is insured with the FDIC or the FSLIC and is organized under the laws of the United

States or any State therein.  Moreover, prior to opening or closing a bank account, the Debtor

will provide notice to (a) the U.S. Trustee, (b) any official committee appointed in the

Chapter 11 Case, and (c) the future claimants' representative appointed in the Chapter 11 Case.

16.     Indeed, bankruptcy courts routinely permit chapter 11 debtors to maintain

their bank accounts, generally treating requests for such relief as a relatively "simple matter."

In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); cf. Charter Co. v.

Prudential Ins. Co. of Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (holding that

allowing the debtors to use their prepetition "routine cash management system" was entirely

consistent with applicable provisions of the Bankruptcy Code).

17.     Courts in this District, including this Court in the 2021 Chapter 11 Case,

recognize that strict enforcement of the Guidelines does not always serve the purposes of

chapter 11 and have waived such requirements in lieu of alternative procedures such as the ones

proposed in this Motion.  See, e.g., 2021 Cash Management Order; In re Blockfi, Inc.,

No. 22-19361 (Bankr. D.N.J. Nov. 29, 2022) (the "Blockfi Order"); In re Modell's Sporting

Goods, Inc., No. 20-14179 (VFP) (Bankr. D.N.J. June 24, 2020) (the "Modell Order"); In re

Aceto Corporation, No. 19-13448 (Bankr. D.N.J. Feb. 21, 2019) (the "Aceto Order").

18.     To protect against the possible inadvertent payment of prepetition claims,

the Debtor will advise Bank of America and any future bank not to honor any checks issued prior

to the Petition Date, except as otherwise expressly permitted by an order of the Court and

directed by the Debtor.  The Debtor, moreover, has the capacity to draw the necessary

distinctions between prepetition and postpetition obligations and payments without closing

the Bank Account and opening a new one.

NAI-1535655413

*Business Forms*

19.     In the ordinary course of its business, the Debtor may use certain business

forms (collectively, and as they may be modified, the "Business Forms") in connection with the

Bank Account.  In the event any Business Forms are used, the Debtor will include the legend

"DIP," or some other debtor-in-possession designation and its new case number.  Furthermore,

the Debtor's Bank Account already is styled as a "Debtor-In-Possession" account, and any

post-petition check shall continue to bear either a "DIP" or "debtor-in-possession" designation

and the case number.

**The Court Should Authorize Bank of America and Any**
**Other Bank to Charge Bank Fees and Certain Other Amounts**

20.     As in the 2021 Chapter 11 Case, the Debtor requests authority for Bank of

America and any other bank to charge, and the Debtor to pay or honor, both prepetition and

postpetition service and other fees, costs, charges and expenses to which a bank may be entitled

under the terms of and in accordance with its contractual arrangements with the Debtor

(collectively, the "Bank Fees").  The Debtor also requests that the Court authorize Bank of

America and any other bank to charge back returned items to the Bank Account in the ordinary

course of business.

21.     The Debtor requires this relief to minimize disruption to its Bank Account

and to assist with a smooth transition to being a debtor in this Chapter 11 Case.  Authority for

debtors to pay bank fees and banks to charge back returned items has been routinely granted in

chapter 11 cases in this District, including in the 2021 Chapter 11 Case.  See, e.g., 2021 Cash

Management Order; Blockfi Order; Modell Order; Aceto Order.

22.     As in the 2021 Chapter 11 Case, the Debtor also requests that the Court

authorize Bank of America and any other bank to accept and honor all representations from the

NAI-1535655413

Debtor as to which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition Date and provided that sufficient funds are available in the applicable accounts to cover such checks and fund transfers.

23.     Pursuant to the relief requested in this Motion, neither Bank of America nor any other bank shall be liable to any party on account of (a) following the Debtor's instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good-faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.  Such relief is reasonable and appropriate because neither Bank of America nor any other bank is or would be in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

### Waiver of Bankruptcy Rule 6004(h)

24.     The Debtor seeks a waiver of any stay of the effectiveness of an order approving this Motion under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the extent it applies.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Any delay in granting the relief requested herein likely would be disruptive to the Debtor, thereby causing harm to the Debtor's estate.  Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Waiver of Memorandum of Law

25.     The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis

-9-

upon which the Debtor relies on is incorporated herein and the Motion does not raise any novel issues of law.

## Notice

26.     Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) the top law firms representing talc claimants against the Debtor, as identified in the Debtor's chapter 11 petition; (c) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson; and (d) Bank of America.  In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

## No Prior Request

27.     No prior request for the relief sought in this Motion has been made to this or any other Court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court:  (i) enter an order, substantially in the form submitted herewith, granting the relief requested herein; and (ii) grant such other and further relief to the Debtor as the Court may deem just and proper.

NAI-1535655413

Dated:  April 4, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (*pro hac vice* pending)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admissions *pro hac vice* pending)

*PROPOSED ATTORNEYS FOR DEBTOR*

NAI-1535655413