MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
Clayton L. Thompson, Esq.
cthompson@mrhfmlaw.com
Suzanne M. Ratcliffe, Esq.
sratcliffe@mrhfmlaw.com
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922

*Counsel for Mesothelioma Plaintiff Katherine Tollefson*
*and Certain Mesothelioma Plaintiffs*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 23-12825 |
| Debtor. | Honorable Michael B. Kaplan |

## MRHFM'S STATEMENT AGAINST LTL MANAGEMENT'S SECOND BANKRUPTCY PETITION AND JOINDER TO INFORMATIONAL BRIEF OF THE AD HOC COMMITTEE OF CERTAIN TALC CLAIMANTS

This Court has once before credited assertions made by Johnson & Johnson ("J&J")

and its catspaw, LTL Management ("LTL"). In doing so, the Court made factual findings

the Third Circuit found amounted to clear error and legal conclusions that amounted to

an abuse of this Court's discretion. *In re LTL Mgmt., LLC*, --- F.4th ----, Case No. 22-2003, Dkt. 181-2 ("Op.") (3d Cir. 2023) ("*LTL I*", attached as Exhibit 1).[1]

The result of this Court's "clearly erroneous" findings (Op. at 51) meant that for the past 18 months Johnson & Johnson—which has independent non-derivative talc liability, apart from LTL—dodged all accountability for poisoning people with asbestos and enjoyed a windfall of hundreds of millions of dollars, all because of a bad faith bankruptcy filing. That money that should have gone to victims in the tort system as they suffered and died. Victims like MRHFM clients Jan Deborah-Michelson Boyle, Robert Amron, and Carolyn Pryor.

MRHFM opposes this latest bankruptcy abuse and joins the arguments advanced in the Ad Hoc Committee's Informational Brief (Dkt. 79). Tellingly, none of the Appellants before the Third Circuit in *LTL I* (the TCC, Arnold & Itkin, Aylstock, or the Ad Hoc of Mesothelioma Claimants that includes MRHFM client Katherine Tollefson) or the Department of Justice have indicated any support for the alleged "settlement" reached between LTL and some of its claimants.

---

[1]"Because it abused its discretion in denying the motions to dismiss, we reverse the Bankruptcy Court's order denying the motions and remand this case with the instruction to dismiss LTL's Chapter 11 petition. Dismissing its case annuls the litigation stay order by the Court and makes moot the need to decide that issue." Op. at 58.

1. *Binding Precedent: the Third Circuit's Categorical Rejection of LTL I.*

Bankruptcy petitions are to be dismissed "unless filed in good faith." Op. at 35 (*citing In re 15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009) (*citing In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004)). A financially un-distressed company cannot file a Chapter 11 petition in good faith. Op. at 38 (*citing In re Integrated.*, 384 F.3d at 122 and *SGL Carbon Corp.*, 200 F.3d 154, 166 (3d Cir. 1999)). The good faith requirement is a jurisdictional one, protecting the powerful equitable weapons of bankruptcy from misuse by a debtor who lacks "clean hands." *SGL Carbon*, 200 F.3d at 161 (*quoting In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)). That financial distress "is vital to good faith is reinforced by the central role it plays in other courts' inquiries." Op. at 42.[2]

Financial distress as a predicate to bankruptcy jurisdiction is a longstanding proposition universally recognized in all federal courts[3] and the Third Circuit was indisputably correct in its holding, and its holding is indisputably binding on this Court.

---

[2] *See* Op. at Fn. 14, for a long citation to other circuit opinions.

[3] *See Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) ("One of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from *the weight of oppressive indebtedness*, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.")(emphasis); *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904) ("Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive…"); *In re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 25 (1st Cir. 2007) (pointing out that a debtor need not be insolvent before filing a bankruptcy petition, but that it must be experiencing "some sort of financial distress"); *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir. 1991) (debtor must "at least…face such financial difficulty that, if it did not file at that time, it could anticipate the need to file in the future"); *In re SGL Carbon Corp.*, 200 F.3d 154, 164–66 (3d Cir. 1999)

After the Third Circuit ruled on January 30th, Johnson & Johnson (and its *amici*)

asked for rehearing and asserted that Supreme Court review was necessary. CTA3 No.

22-2003, Dkt. 153, Feb. 13, 2023. LTL claimed "perverse incentives" resulted from the

Third Circuit's holding that would leave subsidiaries to "crash into bankruptcy,

ultimately harming claimants" (*id.* at 13), and an alleged "split" from Supreme Court

---

(reversing the district court and dismissing the debtor's bankruptcy because, *inter alia*, "[t]he mere possibility of a future need to file, without more, does not establish that a petition was filed in 'good faith,' and "Chapter 11 was designed to give those teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liabilities"); *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 280–81 (4th Cir. 2007) (dismissal upheld because debtor was not "experiencing financial difficulties;" the debtor's filings "reveal a solvent business entity," a fact that "alone may justify dismissal of [the debtor's] Chapter 11 petition"); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072–73 (5th Cir. 1986) ("The 'new debtor' syndrome, in which a one-asset entity has been created … to isolate the insolvent property and its creditors, exemplifies … bad faith cases…Neither the bankruptcy courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions."); *In re Cook*, 104 F.2d 981, 985 (7th Cir. 1939) (no valid bankruptcy purpose where "proceeding was instituted not for the purpose of obtaining benefits afforded by the Act to a corporation in financial distress, but to enable appellees to escape the jurisdiction of another court where the day of reckoning … was at hand"; "A Federal Court should not extend its jurisdiction under such circumstances."); *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 380 (8th Cir. 2000) (affirming dismissal because, *inter alia*, the bankruptcy court found the primary motivation of the debtor—a healthy company "not in dire financial straits"—was to dispose of a state court lawsuit); *In re Marsch*, 36 F.3d 825, 829 (9th Cir. 1994) (no good faith where debtor "had the financial means to pay" its obligations, which posed no "danger of disrupting business interests"); *In re Stewart*, 175 F.3d 796, 811 (10th Cir. 1999) (affirming dismissal and recognizing that relieving "oppressive indebtedness" is "[o]ne of the main purposes of bankruptcy law"); *In re Waldron*, 785 F.2d 936, 940 (11th Cir. 1986) (rejecting a debtor's bankruptcy because "[t]he bankruptcy laws are intended as a shield, not as a sword," and recognizing that the purpose of Chapter 11 is to give a fresh start to a "financially troubled debtor" rather than the "financially secure"). *See also Grogan v. Garner*, 498 U.S. 279, 286–87 (1991) ("This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which *certain insolvent* debtors can reorder their affairs … But in the same breath that we have invoked this 'fresh start' policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the 'honest *but unfortunate* debtor.'") (emphasis added).

precedent (*id.* at 12–15). The Third Circuit judges unanimously denied LTL's petition for rehearing.[4]

Then LTL urged the Circuit to stay the mandate because the Supreme Court was "likely to be persuaded that [the Circuit's dismissal] standard is a bridge too far." CTA3 No. 22-2003, Dkt. 173, 19. The "important" issues implicated required Supreme Court intervention and it was "reasonable to expect" it would grant certiorari to "bring circuits into alignment." *Id.* at 22.

But much like the Company's flip-flop on the tort system between May 2020 and October 2021, the urgent need for the Supreme Court's opinion on LTL's first bad faith bankruptcy evaporated as J&J apparently realized it wasn't going to enjoy what the Supreme Court was likely to say. Then came rumors of second bankruptcy (TCC Statement, Dkt. 3934) and reports of a "settlement."[5]

---

[4] The group of unanimous Third Circuit judges weighing and rejecting LTL's rehearing request included several involved in prior 524(g) bankruptcy rulings. *See In re Imerys Talc America, Inc.,* 38 F.4th 361 (3rd Cir. 2022) (Hon. Krause, Hon. Bibas); *In re W.R. Grace & Co.,* 13 F.4th 279 (3rd Cir. 2021) (Hon. Fuentes, Hon. Krause); *In re Energy Future Holdings Corp.,* 949 F.3d 806 (3rd Cir. 2020) (Hon. Krause, Hon. Matey); *In re W.R. Grace & Co.,* 900 F.3d 126 (3rd Cir. 2018) (Hon. Ambro, Hon. Restrepo); *In re W.R. Grace & Co.,* 729 F.3d 311 (3rd Cir. 2013) (Hon. Jordan, Hon. Ambro); *In re Federal-Mogul Global Inc.,* 684 F.3d 355 (3rd Cir. 2012) (Hon. Jordan); *In re Global Indus. Technologies, Inc.,* 645 F.3d 201 (3rd Cir. 2011) (Hon. Jordan, Hon. Fuentes, Hon. Ambro); and *In re Combustion Engineering, Inc.,* 391 F.3d 190 (3rd Cir. 2004) (Hon. Ambro, Hon. Fuentes).

[5] *See* https://news.bloomberglaw.com/bankruptcy-law/j-j-begins-audacious-return-to-failed-cancer-settlement-tactic.

### 2. Any "Settlement"—According to the Third Circuit Itself—Lies Beyond this Court's Authority to Enforce.

The existence of a plan or "plan support agreements," as referenced in LTL's most recent bad faith bankruptcy petition (Dkts. 1, 10) is irrelevant. The number of claimants allegedly willing to waive their due process rights against non-distressed non-debtor J&J and its affiliates does not bestow subject matter jurisdiction on this Court.

"What counts to access the Bankruptcy Code's safe harbor is to meet its intended purposes. Only a putative debtor in distress can do so." Op. at 18-19. Chapter 11 can "redefine fundamental rights of third parties"—like those held by Katherine Tollefson and thousands of other cancer victims—and "only those facing financial distress can call on bankruptcy's tools to do so." Op. at 57. Ultimately, financial distress is a jurisdictional "safeguard," one which ensures that plaintiffs' right to prove their case to "a jury of their peers" is "disrupted only when necessary." Op. at 58.

Bankruptcy is not a menu choice for $460 billion tortfeasors who prefer to avoid the civil justice system enshrined in the United States Constitution. Only (1) financially distressed debtors (2) overwhelmed by current and future asbestos liabilities who (3) subject their assets to the jurisdiction of the bankruptcy court can hope to satisfy the specific requirements of 524(g) to establish a trust and receive a channeling injunction.

Johnson & Johnson meets *none* of the above requirements. *See In re Combustion Eng'g,* 391 F.3d 190, 237-38 (3d Cir. 2004) (future plaintiffs "might prefer having recourse against solvent entities rather than being limited to proceed against" a trust); *In re Fed.-*

*Mogul Glob. Inc.*, 684 F.3d 355, 365 (3d Cir. 2012)(noting Congress passed 524(g) to protect the Due Process rights of future victims and recognizing that enjoining claims against of non-debtor affiliates in *Combustion* exceeded the bankruptcy court's jurisdiction).

As in LTL's first bankruptcy, this Court does not have (and cannot obtain) subject matter jurisdiction to enjoin actions against ***non***-debtor Johnson & Johnson and hundreds of other non-debtor tortfeasors. Not temporarily, not preliminarily, and not permanently. Johnson & Johnson's newly filed bad faith bankruptcy ***will*** fail. The numerous legal, factual, and equitable bases for this inevitable conclusion will only become more apparent the more sunlight shines on J&J's clandestine activities between January 30th and April 5th.

Johnson & Johnson and its affiliates claim to have reached some sort of prepackaged settlement with a large portion of the bar. Let them prove it, as is their burden. *Integrated Telecom Express*, 384 F.3d at 118. Let them defend against the straightforward application of *LTL I*, as they cannot. Until those dispositive matters are resolved, this Court should not credit a massive company that was dismissed from bankruptcy *for bad faith* and then sought to scurry back mere hours after that dismissal.

**3.**   ***Johnson & Johnson has Liability Independent of LTL: A Nationwide Injunction against Johnson & Johnson's Victims Ignores Binding Precedent and Wreaks Havoc on Both the Principles of Federalism and Victims' Due Process Rights.***

Johnson & Johnson is *not* a debtor, has not filed for Chapter 11, and has independent non-derivative liability—apart from the Debtor—for all the Company's

7

asbestos-contaminated talc products (including Johnson's Baby Powder and Shower-to-Shower) for all time.

Claims against Johnson & Johnson in the tort system for all time periods are independent and non-derivative of claims against "Old" Johnson & Johnson Consumer, Inc. and the Debtor here, and cannot be enjoined (preliminarily or permanently). The 1979 "indemnification agreement" whereby "Old" JJCI's predecessor allegedly assumed all J&J's liabilities was contested on appeal of *LTL I,* and is contested now. The Third Circuit did not reach this issue because it didn't have to.

To construe the agreement to require indemnification is contrary to New Jersey law.[6] A promise to indemnify against one's own negligence requires *very* specific language *not* found in the 1979 agreement. *See Cozzi v. Owens-Corning Fiber Glass Corp.,* 164 A.2d 69 (N.J. Super. 1960); *Mantilla v. NC Mall Assoc.,* 770 A.2d 1144 (N.J. 2001). Johnson & Johnson was found by juries to have engaged in willful, wanton, or reckless conduct warranting punitive damages. Such conduct *cannot be indemnified* —as J&J is no

---

[6]"Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally." *Ramos v. Browning Ferris Indus.,* 510 A.2d 1152, 1159 (N.J. 1986) (citing *Cozzi v. Owens Corning Fiber Glass Corp.,* 164 A.2d 69 (N.J. App. Div. 1960)). "When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." *Mantilla v. NC Mall Assocs.,* 167 N.J. 262, 272 (N.J. 2001) (citing *Ramos,* 510 A.2d at 1159); *see Carbone v. Cortlandt Realty Corp.,* 58 N.J. 366, 368 (N.J. 1971); *George M. Brewster & Son, Inc. v. Catalytic Const. Co.,* 17 N.J. 20, 33 (N.J. 1954); *Rommell v. United States Steel Corp.,* 66 N.J. Super. 30, 43, 168 A.2d 437 (N.J. App.Div.), cert. denied, 34 N.J. 580, 170 A.2d 544 (N.J. 1961); *Longi v. Raymond-Commerce Corp.,* 113 A.2d 69 (N.J. App. Div. 1955); *see also* Fletcher's Cyclopedia of the Law of Corporations § 7114 (Sept. 2021 update) (an "agreement must be clear and unambiguous in order for it to amount to an assumption").

doubt aware, having litigated this previously. *See Johnson & Johnson v. Aetna*, 667 A.2d 1087 (NJ Super. 1995). *See also Tryanowski v. Lodi Bd. Of Educ.*, 643 A.2d 1057 (N.J. Super. 1994).

Further, the 1979 "agreement" covers only liabilities "on the books or records of Johnson & Johnson" in 1979—not future liabilities. That is the only interpretation that gives this agreement's language meaning. *See Wash. Const. Co. v. Spinella*, 8 N.J. 212, 217–18 (N.J. 1951). And even if it were ambiguous, ambiguity is construed *against* indemnification by LTL.[7] Thus, LTL has no legal obligation to indemnify J&J. LTL's counterintuitive, economically destructive insistence on taking upon *itself* indemnification obligations it ***does not*** have is further evidence of bad faith and constitutes an ongoing breach of the Debtor's fiduciary duty to maximize the value of the Estate.

Section 524(g) "provides a special form of supplemental injunctive relief for an ***insolvent debtor*** facing the unique problems and complexities associated with asbestos

---

[7] As referenced in briefing filed by TCC2 in *LTL I*, J&J knows how to draft broader indemnification provisions when it wished. When J&J sold Windsor Minerals to Cyprus Mines in 1989, J&J agreed to indemnify Cyprus against "any product liability-based claim, suit, demand or cause of action directed against Cyprus, Windsor or Western or any of their affiliates arising out of the sale of talc or talc-containing products manufactured by Windsor, Western, J&J or the affiliates of Windsor, Western or J&J, prior to Closing." *See* TCC2 Opp. Prelim. Inj., Pg. 12, Fn.10 "Exhibit I to the Agreement contained an itemized list of pending product liability lawsuits specifically covered by the indemnity provision. When J&J sold the Shower to Shower business to Valeant Pharmaceuticals International, Inc., it included an assumption provision listing specific assumed liabilities for legal proceedings arising from the "manufacture, advertising, marketing, distribution, sale or use" of products. (Exhibit B to the Kupfer Decl., LTL 0000972–973.)." *Id.*

liability." *In re W.R. Grace & Co.*, 729 F.3d 311, 319–20 (3rd Cir. 2013) (emphasis added) (citing *Combustion Eng'g, Inc.*, 391 F.3d at 234; *In re Fed–Mog. Global, Inc.*, 684 F.3d 355, 362 (3rd Cir.2012)). This section "provides no specific authority to extend a channeling injunction to include third-party actions against non-debtors where the liability alleged is not derivative of the debtor," and "the general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g)." *Combustion Eng'g, Inc.*, 391 F.3d at 236-37.[8]

While section 105(a) may aid a bankruptcy court in exercising its jurisdiction, it does not furnish a separate or independent source of subject matter jurisdiction. *See W.R. Grace* 591 F.3d at 170 (quoting *Combustion Engineering* 391 F.3d at 225); *see also In re Johns-Manville Corp.*, 801 F.2d 60, 63 (2d Cir. 1986) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately").[9]

In *Combustion Eng'g*, the Third Circuit rejected permanent injunctions—issued under 11 U.S.C. §§ 105 and 524(g)—that purported to shield non-debtors with much *cleaner* hands than Johnson & Johnson's. *See* 391 F.3d at 201. And the state court actions LTL seeks to enjoin by its adversary proceeding—lawsuits by mesothelioma and ovarian

---

[8] The Circuit reasoned that even if "some asbestos claimants here may benefit from an augmented fund, equity does not permit non-debtor affiliated entities to secure the benefits of Chapter 11 in contravention of the plain language of § 524(g)." *Id.* at 237.

[9] Thus, "before considering the merits of any § 105(a) injunction, a bankruptcy court must establish that it has subject matter jurisdiction to enter the injunction." *In re W.R. Grace*, 591 F.3d at 170. Simply put, in seeking an injunction under § 105(a), a party cannot rely upon § 105(a) itself as the source of jurisdiction.

cancer plaintiffs against J&J—are not core proceedings over which this bankruptcy court has jurisdiction. *See W.R. Grace & Co.*, 591 F.3d 164, 174 (3rd Cir. 2009).[10]

Johnson & Johnson has chosen to play games with America's justice system: to seek protection from bankruptcy court without subjecting itself to bankruptcy (or even being in financial distress). *See LTL I*, 2023 WL 2760479. Despite the obvious gamesmanship and bad faith, and the equally obvious perils of relying on J&J/LTL's factual and legal assertions, this Court has already entered an *ex parte* order blocking Johnson & Johnson's victims—including victims who are lucky to be alive after having their lawsuits enjoined during J&J's first bad faith bankruptcy—from pursuing justice.

## Conclusion

The ultimate question for this Court is whether this latest bankruptcy should be countenanced at all. Under binding precedent, it should not. The short-term question is deciding who should bear the burden between now and when *LTL II* ends in dismissal? Should the burden be on Johnson & Johnson, who will give away more money in dividends this month than it paid to settle nearly 7,000 talc cases in the jury system, who has independent liability for all J&J talc products for all time, and who will never obtain

---

[10] The question isn't whether the *adversary* proceeding is a core proceeding, but whether the claims sought to be *enjoined* are core proceedings. Simply put, "[t]he existence of a bankruptcy proceeding itself," is not "an all-purpose grant of jurisdiction." *Id.*

a permanent channeling injunction under 524(g)? Or, will the burden, *again*, be thrown

onto the sick people?

Sincerely:
**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD, LLC**

_____
Clayton L. Thompson, Esq.
**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD, LLC**
150 W. 30th Street, Suite 201
New York, NY 10001
(800) 358-5922
cthompson@mrhfmlaw.com