Marc E. Wolin, Esq.
mwolin@saiber.com
John M. August, Esq.
jaugust@saiber.com
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401

-and-

Joseph D. Satterley, Esq. (Pro Hac Vice Pending)
jsatterley@kazanlaw.com
KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Tel: (510) 302-1000

*Counsel for Movant Anthony Hernandez Valadez*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LTL MANAGEMENT LLC, | : | Case No. 23-12825 (MBK) |
| | : | |
| Debtor. | : | Judge: Michael B. Kaplan |
| | : | |

**MOVANT'S REPLY TO DEBTOR'S ORAL OBJECTIONS TO HIS MOTION FOR AN ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY, THIRD AMENDED EX PARTE TEMPORARY RESTRAINING ORDER, AND ANTICIPATED PRELIMINARY INJUNCTION, AND (II) WAIVING THE FOURTEEN DAY STAY UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(a)(3)**

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

PRELIMINARY STATEMENT ..............................................................................................1

DISCUSSION ....................................................................................................................3

I.    In its Opening Remarks, Debtor Relies on Extraneous Evidence, Misrepresents the Evidence, and Invites Judicial Misconduct. .............................3

    A.    J&J improperly appeals to this Court's "common sense." .........................4

    B.    Debtor misrepresents the scientific literature by claiming there is no link between asbestos exposure and pericardial mesothelioma. .............5

    C.    Movant does not have a genetic or familial mutation that could be causing his pericardial mesothelioma. ..........................................................6

II.    The *Mid-Atlantic* Factors Weigh in Favor of Granting Movant's Motion for Relief. .................................................................................................................7

    A.    The automatic stay, TRO, and any other stay order severely harm Movant. ........................................................................................................8

    B.    Lifting the stay will not interfere with the bankruptcy case. ......................9

        1.    Movant is not putting the bankruptcy itself on trial.......................9

        2.    Movant has no intention of mentioning LTL's bankruptcy at trial. ...........................................................................................11

        3.    Debtor presents no competent evidence of a potential settlement with 60,000 cancer victims..........................................12

        4.    Movant's representations are supported. ......................................12

    C.    Lifting the stay ensures that the parties will be ready for trial..................15

    D.    Debtor concedes the remaining *Mid-Atlantic* factors. .............................16

CONCLUSION...................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Murakami*,
    54 Cal.3d 105 (1991) ...........................................................................................11

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983).............................................................................8, 9

*Landis v. North Amer. Co.*,
    299 U.S. 247 (1936).........................................................................................8, 9

*Looney v. Superior Court*,
    16 Cal.App.4th 521 (Cal. App. 2d Dist. 1993) ......................................................8

*In re Mid Atlantic Handling Sys., LLC*,
    304 B.R. 111 (Bankr. D.N.J. 2003) ........................................................... *passim*

*People v. Arnold*,
    199 Cal. 471 (1926) ..........................................................................................11

*In re Reno*,
    55 Cal.4th 428 (2012) .......................................................................................10

*In re Sonnax Indus.*,
    907 F.2d 1280 (2d Cir. 1990)..............................................................................4

*In re Telegroup, Inc.*,
    237 B.R. 87 (Bankr. D.N.J. 1999) .................................................................2, 7

**Statutes**

11 U.S.C. § 362(g)(2) ...................................................................................................2, 7

11 U.S.C. § 502(e)(2)......................................................................................................2

11 U.S.C. § 362(d)(1) ................................................................................................7, 16

Cal. Civ. Code § 3344....................................................................................................10

Cal. Civ. Code § 3344(a) ...............................................................................................10

Cal. Civ. Code § 3344(d) ...............................................................................................10

Cal. Code Civ. Proc. § 36 ...............................................................................................8

Cal. Code Civ. Proc. § 124 ..................................................................................10

Evid. Code § 352..................................................................................................11

**Other Authorities**

California Rules of Court, Rule 1.150 ....................................................................10

Federal Rule of Bankruptcy Procedure 4001(a)(3)..............................................1, 16

The law firm of Kazan, McClain, Satterley & Greenwood, A Professional Law Corporation, and local counsel Saiber LLC, on behalf of their dying mesothelioma client and personal-injury claimant Anthony Hernandez Valadez ("Movant" or "Mr. Valadez"), through his undersigned counsel, hereby submits this reply (the "Reply") to the oral objection ("Objection") of Debtor LTL Management LLC ("Debtor") to Movant's motion (the "Motion") For an Order (I) Granting Relief From the Automatic Stay, Third Amended Ex Parte Temporary Restraining Order, and Anticipated Preliminary Injunction, and (II) Waiving the Fourteen Day Stay Under Federal Rule of Bankruptcy Procedure 4001(a)(3).[1] In support of this Reply, Movant respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Nothing in Debtor's Objection warrants an order denying Movant relief from the automatic stay, Third Amended Ex Parte Temporary Restraining Order ("TRO"), and any anticipated Preliminary Injunction so that he can exercise his constitutional right to a jury trial against Debtor and the Protected Parties[2] in California while he is still alive. Indeed, Debtor's Objection (i) **concedes** that the stay irreparably harms Movant and has no adverse effect on Debtor and the Protected Parties, (ii) **concedes** that all but two other *Mid-Atlantic* factors militate in favor of granting Movant relief from any stay order, (iii) **fails** to show that the two *Mid-Atlantic* factors that it did address (interference with the bankruptcy case and trial readiness) militate in favor of keeping the stay, and (iv) **omits** any mention of the myriad of other evidence

---

[1] When Movant filed his Motion on April 10, 2023, the operative order was the Second Amended Ex Parte Temporary Restraining Order, dated April 7, 2023. [Adv. Dkt. 16.] Since the filing of the Motion, this Court filed its Third Amended Ex Parte Temporary Restraining Order. [Adv. Dkt. 20.]

[2] "Protected Parties" mean Defendants Johnson & Johnson, Albertsons Companies, Inc., Lucky Stores (Save Mart) LLC f/k/a Lucky Stores, Inc., Safeway Inc., Save Mart Supermarkets LLC, Target Corporation, and Walmart Inc.

that shows the viability of Movant's claims against Debtor and the Protected Parties. For several

reasons, an order granting the Motion is warranted.

2.      ***First***, it is undisputed that Movant has met his initial burden by showing that

"cause" exists to permit the trial of his personal-injury action against Debtor and Protected

Parties in the Superior Court of California, County of Alameda ("State Court"). *See In re Mid*

*Atlantic Handling Sys., LLC,* 304 B.R. 111, 130 (Bankr. D.N.J. 2003) ("It is well-settled that a

basis for granting relief from the automatic stay for 'cause' exists when it is necessary to permit

litigation to be concluded in another forum, particularly if the non-bankruptcy suit involves

multiple non-debtor parties or is ready for trial."). As a result, the burden of proof on all issues

has shifted to Debtor to show why relief should not be granted. *In re Telegroup, Inc.,* 237 B.R.

87, 91 (Bankr. D.N.J. 1999); 11 U.S.C. § 362(g)(2).

3.      ***Second***, Debtor concedes that the stay irreparably harms Movant and has no

adverse effect on Debtor and the Protected Parties. Indeed, Debtor's Objection does not even

address this *Mid-Atlantic* factor. This is unsurprising. Debtor fails to articulate any prejudice that

would result if the stay were lifted. Indeed, any valid indemnification between Debtor and any

Protected Party has no impact on Debtor's reorganization because the indemnification would be

treated like any pre-petition, unsecured claim. 11 U.S.C. § 502(e)(2).

4.      ***Third***, Debtor fails to show that lifting the stay would interfere with the

bankruptcy case. Contrary to Debtor's belief, Movant is not putting the bankruptcy itself on trial

and has no intention of mentioning the first bankruptcy ("*LTL I*"). And Debtor provides no

competent evidence that lifting the stay hinders its reorganization efforts. Finally, the debtor

presents no competent evidence of a potential settlement with 60,000 people living with cancer.

5.       **Fourth**, this case is ready for trial. But for the TRO, the parties would have

completed their discovery obligations before trial. Debtor's complaints about the expedited trial

schedule, which is required under California's preference statute, are of its own making,

especially when Debtor declined Movant's proposal to conduct early discovery and an expedited

discovery timeline applicable to all parties.

6.       **Fifth**, the relevant *Mid-Atlantic* factors weigh heavily in favor of granting the

Motion. Debtor concedes that lifting the automatic stay, TRO, and any anticipated Preliminary

Injunction is, among other things, (i) beneficial to Movant while it has no adverse effect on

Debtor or Protected Parties, (ii) is in the interest of judicial economy, (iii) would result in the

expeditious and economical resolution of the litigation, (iv) does not prejudice the interest of

other talc claimants, (v) would result in a complete resolution of Movant's talc-related claims

against third parties, and (vi) aids the interest of creditors because a trial on disputed issues will

assist in mediation efforts and help establish an estimation mechanism if and when a trust is

created. Rather than address these *Mid-Atlantic* factors, Debtor attacks the merits of Movant's

asbestos action. But no *Mid-Atlantic* factor addresses this issue. Thus, Debtor's arguments are

irrelevant and otherwise not grounded in evidence.

7.       Accordingly, Movant requests that this Court grant the Motion and for such other

relief to which he is entitled.

## **DISCUSSION**

**I.      In its Opening Remarks, Debtor Relies on Extraneous Evidence, Misrepresents the Evidence, and Invites Judicial Misconduct.**

8.       It is axiomatic that statements and arguments of the lawyers for the parties are not

evidence. Model Civ. Jury Instr. 3rd Cir. 1.5 (2023).

9.    Here, Debtor's counsel made opening remarks not grounded in evidence and merely appealed to this Court's "common sense." This is improper, mainly because none of Debtor's arguments are relevant to the *Mid-Atlantic* factors and are merely designed to cast doubt over the strength of Movant's claims against Debtor and the Protected Parties.

**A.    J&J improperly appeals to this Court's "common sense."**

10.    Debtor's counsel implied that there would be a mesothelioma epidemic if Johnson's Baby Powder, "one of the most commonly used products in America and in the world," causes "rare diseases" such as "Mesothelioma and ovarian cancer." [4/11/23 Transcript, Exh. 37 to Reply Satterley Decl. at 182:13-19.] As it has done in several asbestos trials, J&J improperly appeals to "common sense" rather than evidence: "And that's one of the things when these cases get before juries that have them scratching their head and returning defense verdicts, Your Honor, because it ***doesn't make sense*** that if Johnson's baby powder truly had asbestos and truly caused these diseases, that, for example, only ten to 15 people a year would be diagnosed with the disease that [Claimant] has been diagnosed with." [*Id.* at 183:6-12 (emphasis added).]

11.    This is patently improper because Debtor implores this Court to inject extraneous evidence or defense theories in the hopes that it will question the viability of Movant's claims against Debtor and the Protected Parties. *See, e.g.,* Model Civ. Jury Instr. 3rd Cir. 1.01 (2023) ("Functions of the Court and the Jury"). But none of the *Mid-Atlantic* factors considers the strength of the moving party's cause of action against the debtor to determine whether good cause exists to lift the stay to continue litigation in another forum. *Mid-Atlantic,* 304 B.R. at 130; *see also In re Sonnax Indus.,* 907 F.2d 1280, 1286 (2d Cir. 1990) (using the same factors). Given that Debtor's "common sense" or "Where's the epidemic?" argument is grounded in hyperbole rather than admissible evidence, Movant requests that this Court disregard J&J's remarks.

**B.     Debtor misrepresents the scientific literature by claiming there is no link between asbestos exposure and pericardial mesothelioma.**

12.     Debtor's counsel represented to this Court that the "scientific literature" suggests that "pericardial mesothelioma is not caused by asbestos exposure, but rather by genetic mutations, by familial hereditary cancer syndrome." [4/11/23 Transcript, Exh. 37 to Reply Satterley Decl. at 184:7-13.] Debtor is wrong.

13.     While pericardial mesothelioma is a rare disease, Debtor ignores that there *is* peer-reviewed scientific literature that pericardial mesothelioma *is* caused by asbestos. Indeed, renowned Stanford University professor Dr. Dean Felsher attested in his declaration in support of the Motion that the "medical and scientific literature demonstrates that . . . asbestos exposure is a cause of malignant pericardial mesothelioma. [Dr. Felsher Decl., Dkt. 71-13, at 6-8, ¶ 8, and Exhs. F-X thereto.] For example, Dr. Felsher cited the World Health Organization's publication, which explained "that malignant pericardial mesothelioma, like the pleural type, is caused by asbestos"). [*Id.* at 6 and Exh. F thereto.] He then cites 18 peer-reviewed articles concluding a causal link between asbestos exposure and pericardial mesotheliomas. [*Id.* at 6-8 and Exhs. G-X thereto.]

14.     In contrast, Debtor did not cite any scientific literature or competent expert testimony to rebut Dr. Felsher's opinions, which other scientists and the World Health Organization share.

15.     Claimant's treating surgeon at Stanford University, Dr. Leah Backhus, explained the fallacy of Debtor's argument: "In the literature review…there are reports of patients with pericardial mesothelioma for whom they are…unable to document prior asbestos exposure…It doesn't mean it hadn't occurred. It just means they can't document it." [Dr. Backhus Depo., Exh. 32 to Reply Satterley Decl. at 98:1-8.] And Dr. Backhus points out that "[m]any of those

studies were prior to any association or any inquiry as to cosmetic talc exposure, so they are

simply looking for asbestos but not necessarily looking specifically with regards to any prior talc

exposure because that association hadn't really been made…at the time that some of these earlier

studies were published." [*Id.* at 98:9-17.] Debtor did not attempt to negate Dr. Backhus'

opinions.

> ### C.    Movant does not have a genetic or familial mutation that could be causing his pericardial mesothelioma.

16.    Although it only had one slide devoted to it, Debtor spent an inordinate amount of

time arguing that the sole cause of Movant's pericardial mesothelioma is a genetic or familial

mutation. [4/11/23 Transcript, Exh. 37 to Reply Satterley Decl. at 184:18-186:20.] Again, this

argument merely questions the viability of Movant's case against Debtor and the Protected

Parties, which is ***not*** among the factors in *Mid-Atlantic* to determine whether cause exists to lift

the stay of the TRO and any potential Preliminary Injunction to allow Movant to try his case in

State Court.

17.    Beyond that, Debtor merely accuses, without any evidentiary support, Movant

and his counsel of nefarious motives for Movant's alleged refusal to undergo genetic testing. [*Id.*

at 195:17-196:8.] Notwithstanding its failure to satisfy its heavy burden to overcome Plaintiff's

privacy rights in his genetic information and identify any particular gene that is the sole cause of

Movant's mesothelioma,[3] Debtor's genetic-testing argument is moot. This is because Movant

recently underwent a comprehensive 86-panel genetic testing, and no pathogenic mutations,

gross deletions, or duplications were detected, including ALK, BAP1, BRCA1, and BRCA2.

---

[3] But for the TRO, Movant would have filed and served his opposition in State Court to Debtor's motion to compel genetic testing. Movant still opposes that motion and is not waiving any arguments against it if and when Movant is relieved from any stay orders and the Protected Parties and Debtor is proceeding with its motion in State Court.

[Ambry Genetics Report, Exh. 31 to Satterley Decl. at 1.] Those are the same variants Debtor believes are the sole cause of malignant mesothelioma.

18.    The only variant detected is the RAD51C gene, classified as a "Variant of Unknown Significance" or VUS. [*Id.*] "VUS by definition have ***not been proven*** to increase an individual's risk for disease ***or to be the cause of the disease within a family***." [*Id.* at 8.] Further, there is no scientific literature associating the RAD51C gene with mesothelioma. [*Id.* at 5.]

19.    Movant does not have a germline mutation that caused his mesothelioma. Thus, Debtor's argument is moot. Instead, he was exposed to asbestos and asbestiform fibers from Johnson's Baby Powder.

## II.    The *Mid-Atlantic* Factors Weigh in Favor of Granting Movant's Motion for Relief.

20.    It is undisputed that section 362(d)(1) of the Bankruptcy Code provides that Movant is entitled to relief from the TRO or any subsequent Preliminary Injunction for cause shown. "Cause" is a "broad and flexible concept," and a court is granted broad discretion to determine whether to lift the automatic stay on that basis. *In re Mid-Atlantic*, 304 B.R. at 130.

21.    Initially, Movant bears the burden to assert "cause" for relief. *In re Telegroup, Inc.,* 237 B.R. at 91. If Movant meets that burden, the ultimate burden of proof on all issues (other than the debtor's equity in property) then shifts to the debtor to show why relief should not be granted. *Id.*; 11 U.S.C. § 362(g)(2).

22.    Hence, Debtor bears the ultimate burden of proof to show that "cause" does not exist to lift the stay under the automatic stay, TRO, or any subsequent Preliminary Injunction. 11 U.S.C. § 362(g)(2). As detailed below, Debtor has failed to meet its burden of proof because the *Mid-Atlantic* factors, on balance, militate in favor of relief from the automatic stay or any other stay order and allow Movant to proceed to trial against Debtor and Protected Parties in State Court.

**A.    The automatic stay, TRO, and any other stay order severely harm Movant.**

23.    Debtor does not address the first and most crucial *Mid-Atlantic* factor: "Impact of the stay on the parties and the balance of harms." *Mid-Atlantic*, 304 B.R. at 130. Debtor's silence is effectively a concession that the stay should be lifted because it allows Movant to ensure that their claims are heard and tried within their lifetime. Conversely, an order to the contrary will irreparably harm Movant because he will be dead when the appeals in this bankruptcy case are resolved, and a trust that purportedly safeguards his constitutional right to a jury trial is established.

24.    Indeed, Movant submitted undisputed, clear, and convincing medical documentation that there is substantial medical doubt of Movant's survival. [Dr. Roy Decl., Dkt. 71-7, at ¶ 17; Dr. Backhus Decl., Dkt. No. 71-12, at ¶ 18; ] In addition to his federal and state constitutional right to a jury trial, Movant also has a statutory right under California Code of Civil Procedure section 36 to participate in his case before he dies or becomes incapacitated, and to have his case heard during his lifetime. *Looney v. Superior Court*, 16 Cal.App.4th 521, 532, fn. 12 (Cal. App. 2d Dist. 1993).

25.    "A stay of indefinite duration in the absence of pressing need is an abuse of discretion." *Landis v. North Amer. Co.*, 299 U.S. 247, 254-255 (1936). Here, the apparent damage to Movant is "the hardship of being forced to wait for an indefinite and…a lengthy time before [his] causes are heard." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983). As the Third Circuit recognized in *Gold,* "we cannot ignore the fact that plaintiffs and crucial witnesses are dying, often from the very diseases that have led to these actions. We are not persuaded that the hardship imposed on defendants by proceeding to trial without Johns-Manville or our legitimate interest in judicial economy is sufficient to force these plaintiffs to forbear until the bankrupt defendants emerge from the reorganization proceedings. The

defendants may be seriously inconvenienced by the resumption of the actions against them; under the standard announced in *Landis*, however, the balance of hardship weighs in favor of the injured plaintiffs." *Id.* The reasoning in *Gold* is equally applicable here.

26.     The automatic stay, TRO, and any anticipated Preliminary Injunction prevent Movant from trying his personal-injury action. This creates irreparable injury because of the risk of lost evidence due to the passage of time. Thus, the automatic stay and other stay orders severely harm Movant. This factor weighs in favor of lifting the stay.

**B.     Lifting the stay will not interfere with the bankruptcy case.**

27.     Debtor argues that a stay is necessary to (i) ensure that the State Court trial will not interfere with the bankruptcy case, purportedly because Movant "intends to put the bankruptcy itself on trial,"; and (ii) support reorganization efforts. [4/11/23 Transcript, Exh. 37 to Reply Satterley Decl. at 189:24-190:6.] Debtor is wrong.

**1.     Movant is not putting the bankruptcy itself on trial.**

28.     Debtor contends that Movant's response to its opposition to Trailblazer Studios' request to record trial proceedings somehow implies that Movant "fully supports the filming of this 'bankruptcy saga'" and therefore "interferes" with the bankruptcy case. [4/11/23 Transcript, Exh. 37 to Reply Satterley Decl. at 188:11- 190:1-6; *Mid-Atlantic,* 304 B.R. at 130 ("Lack of any connection with or interference with the bankruptcy case").] Debtor misunderstands the purpose of Movant's response.

29.     The opening line in Movant's response to the defendants' opposition to the media request made plain that the trial court "has the discretion to permit, refuse, or limit Trailblazer Studios' access to record this case's trial proceedings." [Movant's Response to Defendants' Opposition to Media Request, Exh. 33 to Reply Satterley Decl.] In other words, Movant defers to the trial court's discretion on allowing this media request or any other request.

30.     However, Movant had to file a response to the defendants' opposition because they are inviting the trial court to misapply California Civil Code section 3344(a), which allows a plaintiff to allege misappropriation of their name or likeness. According to the defendants, the media request violates section 3344 because Trailblazer Studios is profiting from the use and likeness of an individual absent their consent. [Exh. 33 to Reply Satterley Decl. at 2:3-9.]

31.     But the defendants failed to point out that section 3344(d) excludes matters of "public affairs" from the consent requirement of section 3344(a): "[f]or purposes of" section 3344, "a use of a name, voice, signature, photograph, or likeness in connection with any news, ***public affairs***, or sports broadcast or account, or any political campaign, ***shall not constitute a use for which consent is required under subdivision (a)***." Cal. Civ. Code § 3344(d) (emphasis added). Certainly, Debtor's bankruptcy and its infliction of further harm upon persons like Movant is a "matter of public interest," as evidenced by news organizations covering Movant's opposition to the Preliminary Injunction in *LTL I.* [Exh. 33 to Reply Satterley Decl. at 2:28-3:6.]

32.     Defendants' position is also wrong because it implies a presumption against recording or broadcasting court proceedings. But that is inconsistent with Rule 1.150 of the California Rules of Court, which states, "This rule does not create a presumption for or against granting permission to photograph, record or broadcast court proceedings." And it also contradicts California Code of Civil Procedure section 124, which provides that "the sittings of every court shall be public."

33.     Movant cannot sit idly by while the defendants misrepresent the law. Indeed, Movant's counsel, as officers of the court, "have an ethical obligation to advise the court of legal authority that is directly contrary to a claim being pressed." *In re Reno,* 55 Cal.4th 428, 510 (2012).

### 2.    Movant has no intention of mentioning LTL's bankruptcy at trial.

34.    Next Debtor argues that Plaintiff's introduction of extensive evidence of the

bankruptcy means they are putting it on trial. In support of this argument, Debtor shows a slide

from the Introduction section of Movant's opposition to Debtor's motion in limine "to exclude

references to [Debtor's] bankruptcy."

35.    But hidden in the sea of defense counsel's yellow highlights is Movant's explicit

statement that Movant will not mention LTL's bankruptcy: "To be clear and to assuage J&J's

unfounded concerns of undue prejudice under [California] Evidence Code section 352, [Movant]

will ***not*** mention LTL's bankruptcy so long as this Court's order applies mutually to all parties."

[Exh. 34 to Satterley Decl. at 2:22-24 (emphasis added).]

36.    However, Movant can reference or offer evidence to "circumstances surrounding

the LTL bankruptcy." For example, Debtor's ability to pay a punitive damages award is at issue

because the defendants are proceeding with a non-bifurcated trial. *Adams v. Murakami,* 54

Cal.3d 105, 119 (1991). Information about Debtor's financial condition is set forth in the Third

Circuit's opinion. Further, Movant may offer admissible evidence explaining Debtor's creation

and corporate history, including its ties with J&J's subsidiary Johnson & Johnson Consumer Inc.

*See, e.g., People v. Arnold,* 199 Cal. 471, 486 (1926).

37.    Movant will not mention the bankruptcy during the State Court trial. However,

there is nothing wrong with Movant saying certain aspects of the bankruptcy to provide the jury

with some context about Debtor's corporate history and financial condition. Therefore, this

factor does not weigh in Debtor's favor.

### 3. Debtor presents no competent evidence of a potential settlement with 60,000 cancer victims.

38.     Debtor argues that lifting the stay for Movant interferes with the bankruptcy case because it will "frustrate reorganization efforts" with 60,000 cancer victims who purportedly support a settlement. This is a false statement to this Court.

39.     Debtor does not show that any talc cancer victim, let alone 60,000, has submitted a signed settlement agreement to Debtor, J&J, or their attorneys. In fact, at the time of the filing of this case, no claimants had even seen the "Term Sheet" that Debtor had designated as "HIGHLY CONFIDENTIAL" on April 13, 2023. It is doubtful that any cancer victim could have reviewed and approved a complex document before filing the Chapter 11 petition in this case.

### 4. Movant's representations are supported.

40.     Debtor argues that Movant's "representations about the case…are not supported by the evidence and are inaccurate." [Exh. 37 to Satterley Decl. at 188:17-21.] Nothing is further from the truth.

41.     First, Debtor argues that product usage is at issue because a single photograph depicting a Johnson's Baby Powder bottle used on Movant was purportedly taken three years before Movant was even born. [Exh. 37 to Satterley Decl. at 193:5-13.] Debtor bases its inadmissible hearsay argument on the backprint image of the photograph, which was used as late as 1995 – three years before Movant was born. Apparently, Debtor's counsel obtained something off the Internet to create this new argument and offers no expert testimony to support it. However, the years a backprint image was used does not mean the photograph was taken during those same years. Indeed, it is possible that discontinued and excess photo paper was used in subsequent years to deplete inventory. And Debtor ignores the unrebutted testimony of Movant,

Movant's grandmother, and Movant's two aunts about how Movant's mother frequently and liberally used Johnson's Baby Powder on Movant as a baby and throughout his childhood.

42.    Second, Debtor ignores that Movant has another photograph (see below) depicting Johnson's Baby Powder in Movant's home. Movant's mother testified that the Johnson's Baby Powder shown in this other photograph was used on Movant. Debtor fails to refute this evidence. Debtor's counsel is attacking Movant's mother, grandmother, and aunts by accusing them of lying about their use of Johnson's Baby Powder. But their credibility is not relevant to any *Mid-Atlantic* factor. It is for the jury to decide.



43.    Third, Debtor claims that Movant's treating oncologist, Dr. Mohana Roy, was "not comfortable" with language in her declaration that implies "causation." [Exh. 37 to Satterley Decl. at 195:3-9.] But J&J ignores that Dr. Roy had no other issues with her declaration, including the portions in which she agrees that there is a causal relationship between asbestos exposure and pericardial mesothelioma and cases of mesothelioma have been observed in persons who have used cosmetic talc powder. [*See* Dr. Roy Decl., Dkt. 71-7 at ¶¶ 15-16.] And

Dr. Roy signed the declaration under penalty of perjury, which means that she agrees with her causation opinion: "Further, based on Mr. Valadez's social history, the only known exposure on a regular basis is his use of Johnson's Baby Powder. Therefore, in reviewing the available literature on this rare condition and Mr. Valadez's medical records, as well as my experience, education, and treatment of Mr. Valadez, it is my opinion, to a reasonable degree of medical certainty, that it is more likely than not that this exposure increased his risk of developing pericardial mesothelioma." [*Id.* at ¶ 17.] Debtor will have every opportunity to ask Dr. Roy once this Court lifts the stay. Indeed, Debtor could have deposed Dr. Roy sooner, but postponed her deposition and sought the TRO.

44.     Fourth, Debtor accuses Movant of ignoring his doctor's multiple referrals to genetic counseling. As shown above, that issue is moot because Movant did undergo germline genetic testing, and no variants, such as BAP1, BRCA1, BRCA2, or ALK, that Debtor claims cause mesothelioma were found. Beyond that, Debtor ignores that Movant has suffered greatly because of this illness. His depression, extreme agitation, and catatonia precluded him from undergoing the somatic genetic testing sooner. [*See* Horn Depo., Exh. 36 to Reply Satterley Decl. at 72:22-73:5.]

45.     Fifth, Debtor argues that the lack of asbestos in Movant's tissue means he was not exposed to asbestos from Johnson's Baby Powder. [Exh. 37 to Reply Satterley Decl. at 197:17-198:1.] But talc and mica (and other minerals) were found in the tissue near Movant's tumor, indisputably found in Johnson's Baby Powder. [Dodson Decl., Dkt. 71-5, at ¶¶ 13-15.] Debtor has not provided any evidence to the contrary.

46.     Sixth, Debtor claims that Movant's expert Dr. Barry Horn agrees that Movant has no markers of asbestos exposure. [Exh. 37 to Reply Satterley Decl. at 199:3-17.] But Debtor

ignores that Dr. Horn has repeatedly testified that a mesothelioma patient need not have pleural plaques, asbestosis, or objective markers to say that their mesothelioma is related to asbestos exposure. [*See, e.g.,* 4/15/21 Dr. Horn Depo., Exh. 35 at 137:14-138:16.]

47.     None of Debtor's arguments withstand scrutiny. And now, Movant's claims against Debtor are stronger because he has no germline cancer.

### C.     Lifting the stay ensures that the parties will be ready for trial.

48.     Debtor does not dispute that the State Court has the expertise to expeditiously oversee all aspects of Movant's claims if this Court lifts the stay. This *Mid-Atlantic* factor weighs in Movant's favor.

49.     Despite the State Court's expertise in handling asbestos cases and counsel's sophistication in managing those cases to trial, Debtor argues that this case "is not trial ready" because of outstanding medical records, deposition designations, expert motions, depositions, written discovery, and genetic testing motion practice. [Exh. 37 to Satterley Decl. at 199:18-201:21.] All those issues are of Debtor's making, not Movant's.

50.     From the onset of the case, Movant has invited Debtor and the Protected Parties to conduct discovery, including retrieval of medical records, while *LTL I* was pending. [See Dkt. 71-8, *passim*.] They refused. Regardless, Movant voluntarily provided medical records to Debtor and the Protected Parties. Therefore, this factor weighs in favor of lifting the stay.

51.     It is unclear to Movant what additional depositions Debtor intends to designate. Thus far, only the transcripts of four lay witnesses remain outstanding. And Debtor has five days to designate pages and lines upon receipt of the final. Debtor makes no showing that designating the deposition of four witnesses is somehow unduly burdensome.

52.     The parties also had a deposition schedule that ensured discovery would be completed before trial. But for the TRO, the parties would have completed all outstanding depositions.

53.     Finally, as to written discovery, Movant proposed an expedited schedule for discovery responses. However, Debtor and the Protected Parties refused. Therefore, they cannot complain that there were outstanding discovery responses when it was the defendants who chose to delay.

### D.     Debtor concedes the remaining *Mid-Atlantic* factors.

54.     Debtor did not object to the other *Mid-Atlantic* factors raised in the Motion. As a result, Debtor concedes that the following *Mid-Atlantic* factors militate in favor of relief from the automatic stay or any other stay order and allow Movant to proceed to trial against Debtor and Protected Parties in State Court:

- Lifting the stay would result in a complete resolution of Movant's talc-related claims;

- The State Court has the necessary expertise to hear Movant's claims against Debtor and the Protected Parties;

- Permitting the underlying action in State Court to go to trial would not prejudice the interests of other creditors; and

- Granting Movant relief from any stay order is in the interests of judicial economy and the expeditious and economical resolution of the litigation.

[*See* Dkt. 71-1 at 30-34.]

## CONCLUSION

55.     For the reasons and based on the authorities set forth above and in the Motion, Movant respectfully requests entry of an Order lifting the automatic stay, TRO, and any anticipated Preliminary Injunction under Section 362(d)(1), waiving the stay of Fed. R. Bankr. P.

4001(a)(3), to permit Movant to proceed to trial against Debtor and the Protected Parties in State Court, and for such other relief to which Movant is entitled.

Respectfully submitted:

KAZAN, McCLAIN, SATTERLEY & GREENWOOD, A Professional Law Corporation

- and -

SAIBER LLC
*Counsel for Movant Anthony Hernandez Valadez*

By:     /s/ John M. August
        JOHN M. AUGUST

DATED:  April 17, 2023