```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF NEW JERSEY

IN RE:                          .     Case No. 23-12825(MBK)
                                .
                                .     Clarkson S. Fisher U.S.
LTL MANAGEMENT LLC,             .        Courthouse
                                .     402 East State Street
                                .     Trenton, NJ 08608
          Debtor.               .
                                .     April 11, 2023
. . . . . . . . . . . . . . . . .     9:59 a.m.
```

TRANSCRIPT OF MOTION BY MOVANT ANTHONY HERNANDEZ VALADEZ FOR AN ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY, SECOND AMENDED EX PARTE TEMPORARY RESTRAINING ORDER, AND ANTICIPATED PRELIMINARY INJUNCTION, AND (II) WAITING THE FOURTEEN DAY STAY UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(A)(3) [71]; DEBTOR'S MOTION FOR AN ORDER EXTENDING THE TIME WITHIN WHICH IT MUST FILE ITS (I) SCHEDULES OF ASSETS AND LIABILITIES AND (II) STATEMENT OF FINANCIAL AFFAIRS [14]; DEBTOR'S MOTION FOR AN ORDER: (I) APPROVING THE CONTINUED USE OF ITS BANK ACCOUNT AND BUSINESS FORMS AND (II) AUTHORIZING THE DEBTOR'S BANK TO CHARGE CERTAIN FEES AND OTHER AMOUNTS [13]; DEBTOR'S APPLICATION PURSUANT TO 28 U.S.C. § 156(C) AND 11 U.S.C. § 105(A) FOR ENTRY OF AN ORDER AUTHORIZING THE APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION DATE [11]; DEBTOR'S APPLICATION FOR DESIGNATION AS COMPLEX CHAPTER 11 CASE [6]; DEBTOR'S MOTION FOR AN ORDER SUSPENDING ENTRY AND SERVICE OF STANDARD NOTICE OF COMMENCEMENT [5]; DEBTOR'S MOTION FOR AN ORDER: (I) AUTHORIZING IT TO FILE A LIST OF THE TOP LAW FIRMS WITH TALC CLAIMS AGAINST THE DEBTOR IN LIEU OF THE LIST OF THE 20 LARGEST UNSECURED CREDITORS; (II) APPROVING CERTAIN NOTICE PROCEDURES FOR TALC CLAIMANTS; AND (III) APPROVING THE FORM AND MANNER OF NOTICE OF COMMENCEMENT OF THIS CASE [10]; DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 1505 FOR AN ORDER AUTHORIZING IT TO ACT AS FOREIGN REPRESENTATIVE ON BEHALF OF THE DEBTOR'S ESTATE [12]
BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE

Audio Operator:              Wendy Quiles

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

───────────────────────────────────────────────────────────────

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Jones Day<br>By:  GREGORY M. GORDON, ESQ.<br>     DAN B. PRIETO, ESQ.<br>     AMANDA S. RUSH, ESQ.<br>2727 North Harwood Street, Suite 500<br>Dallas, TX  75201 |
| | Skadden Arps Slate Meagher &<br>  Flom, LLP<br>By:  ALLISON M. BROWN, ESQ.<br>One Manhattan West<br>New York, NY  10001 |
| Various Talc Personal<br>Injury Claimants: | Watts Guerra LLP<br>By:  MIKAL C. WATTS, ESQ.<br>5726 W. Hausman Road, Suite 119<br>San Antonio, TX  78249 |
| For Ad Hoc Committee<br>of Certain Talc<br>Claimants and Ad Hoc<br>Committee of Creditors: | Genova Burns LLC<br>By:  DANIEL M. STOLZ, ESQ.<br>494 Broad Street<br>Newark, NJ  07102 |
| | Brown Rudnick<br>By:  JEFFREY L. JONAS, ESQ.<br>     DAVID J. MOLTON, ESQ.<br>7 Times Square<br>New York, NY  10036 |
| | Otterbourg PC<br>By:  MELANIA CYGANOWSKI, ESQ.<br>230 Park Avenue<br>New York, NY  10169-0075 |
| For Anthony Hernandez<br>Valadez: | Kazan McClain Satterley & Greenwood<br>By:  JOSEPH SATTERLEY, ESQ.<br>55 Harrison St. Suite 400<br>Oakland, CA  94607 |
| For the Office of the<br>United States Trustee: | Office of the United States Trustee<br>By:  LINDA RICHENDERFER, ESQ.<br>     JEFF SPONDER, ESQ.<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, DE 19801 |

APPEARANCES CONT'D:

| | |
|---|---|
| For Various Talc Claimants: | Maune Raichle Hartley Frency & Mudd, LLC<br>By: CLAYTON L. THOMPSON, ESQ.<br>150 West 30th Street, Suite 201<br>New York, NY 10001<br><br>Levy Konigsberg, LLP<br>By: JEROME H. BLOCK, ESQ.<br>    MOSHE MAIMON, ESQ.<br>101 Grovers Mill Road, Suite 105<br>Lawrence Township, NJ  08648<br><br>Simon Greenstone Panatier, PC<br>By: LEAH CYLIA KAGAN, ESQ.<br>1201 Elm Street, Suite 3400<br>Dallas, TX  75720 |
| For Claimant Alishia Landrum: | Beasley Allen<br>By: ANDY BIRCHFIELD, ESQ.<br>218 Commerce Street<br>Montgomery, AL  36104 |
| For Arnold & Itkin: | Pachulski Stang Ziehl & Jones LLP<br>By: LAURA DAVIS JONES, ESQ.<br>919 North Market Street<br>17th Floor<br>Wilmington, DE 19801 |
| For Paul Crouch, individually and on behalf of Estate of Cynthia Lorraine Crouch: | Ruckdeschel Law Firm, LLC<br>By: JONATHAN RUCKDESCHEL, ESQ.<br>8357 Main Street<br>Ellicott City, MD 21043 |
| For the Ad Hoc Committee of Attorney Generals: | Womble Bond Dickinson<br>BY: ERICKA JOHNSON, ESQ.<br>1313 North Market Street<br>Suite 1200<br>Wilmington, DE, US 19801 |

- - - - -

1                    (Proceedings commenced at 9:59 a.m.)
2              THE COURT:  We have new technology here.  Everything
3  is supposed to work better, more enhanced.  Not just for you
4  all.
5              Well, okay.  Good morning, again.  This is the LTL
6  Management LLC matter and -- log in.
7              All right.  We have a full plate on for today.  A
8  number of matters.  If I may, I'd like to take the liberty of
9  making a few preliminary comments.
10             My goal today is really to listen.  Listen to
11 presentations, listen to arguments from all parties.  Because
12 that's the intent, I am going to be somewhat generous in
13 allowing the use of the PowerPoints, the presentations, the
14 hyperbole, all of it.  I want to hear from you all about this
15 case and the respective positions.
16             I've read a lot.  We hear a lot.  But this is where
17 it's important.  In that regard, I'm cognizant that there's
18 been a significant amount of vitriol, ad hominem attacks,
19 lawyer versus lawyer, lawyers versus the Court, directed at
20 Johnson and Johnson, directed at groups.  That's unfortunate.
21             I think we all need to a degree to have a bit of a
22 thin skin.  I like to think the Court has a thick -- a thin
23 skin -- a thicker skin.  Wrong analogy.  A thicker skin.  Some
24 may be familiar.  I was a mayor of a small town in North Jersey
25 and there came a point in time when I would say more than half

1  J&J Consumer, Inc., well known as old JJCI, prior to the first
2  bankruptcy filing.  So I don't plan to go over those things
3  again today.
4          But I did want to provide an update on corporate
5  structure.  And what I wanted to focus on was the fact that,
6  and Your Honor probably saw this in the papers that we filed,
7  in December of last year, the debtor's parent company, J&J
8  Consumer, Inc., which we were referring to in the old case as
9  New JJCI, changed its name to Johnson and Johnson HoldCo
10 (NA), Inc., which I'll refer to today as HoldCo.
11         And in early January 2023, HoldCo distributed its
12 consumer business, it's consumer health business, that is, to
13 its parent company.  So that is a change that's occurred with
14 respect to corporate structure.  And although that business, as
15 Your Honor knows I think, represented a substantial portion of
16 HoldCo's assets, HoldCo does continue to have significant
17 value.  And we mentioned in the papers that, among other
18 things, it holds $400 million in cash.  It also holds interest
19 in foreign subsidiaries that have a material value.  And it
20 seems, based on the papers we've seen filed in the last few
21 days, that the other parties are overlooking the fact that that
22 other value exists.
23         Then I want to address, Your Honor, why LTL has filed
24 for bankruptcy a second time.  And as with the first case, Your
25 Honor, I would say the purpose of the filing remains the same.

1            The Code conspicuously does not contain any
2   particular insolvency requirement.  LTL is financially
3   distressed.  As a result, bankruptcy is available to it.  LTL
4   is not insolvent.  As a result, there is no basis for a
5   fraudulent transfer claim.
6            So to conclude, Your Honor, the second Chapter 11
7   case, this case, has drawn substantial support.  It's supported
8   by the unprecedented $8.9 billion financial commitment by LTL
9   and J&J.  It's supported by over 60,000 claimants who have
10  signed and delivered plan support agreements, and support is
11  continuing to come in.  This claimant's support validates the
12  good faith basis of this filing.  It validates the proper
13  purpose of this proceeding.
14           The Court should not permit a group of firms who
15  represent a minority of the claimants to hijack this case
16  before it can even begin.  That is especially the case given
17  the utter absence of factual support for the inflammatory and
18  defamatory accusations this group of firms is making.
19           Thank you, Your Honor.
20           THE COURT:  Thank you, Mr. Gordon.  Before we hear
21  from the Ad Hoc group and other plaintiffs, is there anyone
22  supporting the debtor's position as far as an introductory
23  statement?
24           MR. WATTS:  Good morning, Your Honor.
25           THE COURT:  Good morning.

100

1  Trustee's Office, and we'll make sure that you can get a copy
2  of it.
3         We are moving as quickly as quickly as we can, Your
4  Honor.  With any luck, we'll have at least a Tort Claimants
5  Committee by the next hearing which is on the 18th, but I can't
6  promise that.  And I have no unsecured creditor information yet
7  from the debtor, so I don't know when that committee, if one
8  will be appointed.  It may be that there's no interest; I don't
9  know.  But I do know there were a lot of parties who never got
10 paid in the first case before it was dismissed.
11        The interviewing in fact is going to start tomorrow
12 just so people are aware of that.
13        Your Honor, I think that's leading up to my first
14 point that I did want to make before the Court was that we are
15 very concerned about their request to move forward to appoint
16 the FCR and the mediators by the April 18th hearing or I guess
17 on the April 18th hearing when we will not yet have a formal
18 committee yet formed.
19        And so I don't know whether the request is going to
20 be heard later today or not.  I didn't meant to jump ahead if
21 it is, but we would request that the FCR, the mediators, that
22 that be delayed until after we can get a committee in place who
23 can also be heard on those topics which are extremely
24 important.
25        Your Honor, I think that they are very important, and

1  I'm ad libbing here a little bit because from what I'm hearing
2  today about the timetable, there seems to have been some
3  activity during the first case that is now being carried over
4  that really benefitted the second case.  And I think that we're
5  going to have to get some clearer understanding of where the
6  first case ended and where the second case started because it
7  doesn't seem like the first case ended at 1:49 on April 4th and
8  that the second case started 2 hours and 11 minutes later.  It
9  seems like there was a large overlap, a month, two months.  To
10 me, that's still a large overlap between the two cases.

11         Your Honor, we are told that I think Mr. Gordon said
12 two-thirds of the claimants are represented by parties that
13 have signed on to plan support agreements.  I think it was two-
14 thirds, so we'll say 66 percent.  And it was 60- or 70,000
15 claimants.

16         Your Honor, I'm struggling with reconciling that
17 because I've gone back and there are 18 firms that were listed
18 in the first case as part of the top 30 firms that are not
19 listed for the second case.  And there are of the top 30 firms
20 that were listed in the first case, only five of them are
21 purported signatories to this plan or this support agreement,
22 whatever it's being called.  I'm not quite sure.

23

24         And I think that of the top 18 that were identified
25 in this case, there are 11 who purportedly are not part of any

1  plan support agreement or whatever it is that they're calling
2  it.  Your Honor, my point is this, that we heard several times
3  Mr. Gordon state that it's this large majority of the claimants
4  and that it's two-thirds of the claimants.

5       Your Honor, I don't know how the math works out.  I
6  really don't.  And I will tell you this, that Mr. Watts' firm
7  didn't appear in the first list.  Now all of a sudden, it's on
8  the second list.  Mr. Watts also made statements about being
9  involved in the Imerys case.  Your Honor may or may not know
10 that I along with one of my other trial attorneys in the
11 Delaware office have been the trial attorneys from the United
12 States Trustee's Office on that case since day one.  He did not
13 vote.  He had no claimants that voted in that case when the
14 first plan was up.

15      I don't know what positions he's playing in these
16 cases.  I did hear him identify a number of claimants which is
17 one of the concerns of the U.S. Trustee's Office.  Where are
18 these claimants coming from and who are these claimants?
19 Because we just can't reconcile them with the numbers that we
20 had that we were discussing and that were in front of us in the
21 first case.  And I can't reconcile some of the statements with
22 things that I know about from the Imerys case.

23      I know the attorneys there very well.  I know who's
24 involved in that case.  I know who voted in that case.  I
25 myself checked.  There were no votes that were made in that

1  case on the first plan, which eventually was not -- I think it
2  fell short by three percent.  But there were no votes submitted
3  on behalf of his firm, so I don't know what his role is in all
4  of this.
5         But I will say this, I don't know where the 67 or
6  60,000 or 70,000 come from.  It's certainly something that
7  we'll be looking into when we vote to form the Talc Claimants
8  Committee here.  I wonder where the numbers are.  And I was
9  very interested in the math that was just done because that's
10 presuming that all 60- or 70,000 of these claimants that we're
11 told are represented by these firms.  It's assuming that
12 they're going to get past the stage of filling out the
13 questionnaire that they'll have to get through.
14        And I don't know  because most of those claimants
15 evidently did not file a lawsuit because otherwise they would
16 have been accounted for in the first case, in the list of top
17 30 law firms.  So I don't know where these other law firms are
18 coming from.  I have asked debtors to give us a list of the
19 complete top 30 which is what we normally get.  I believe
20 they're working on it.  I don't have it yet, though.  And we're
21 marching forward.  And Your Honor will be hearing from us later
22 when we get to certain motions that are before Your Honor
23 today.
24
25        I just want to make those points and make sure that

1  this case, that we don't get off on some of the tangents and
2  that we look at who the true parties in interest here are, Your
3  Honor and that we hear from them. And as to the 60- or 70,000
4  claimants, I don't know where that number comes from. I can't
5  reconcile it with what we heard in the first case. Thank you,
6  Your Honor.
7           THE COURT: I appreciate your concerns. The Court
8  shares much of it. And we'll await.
9           Mr. Ruckdeschel, I can give you four and a half
10 minutes.
11          MR. RUCKDESCHEL: Your Honor, thank you very much.
12 Jonathan Ruckdeschel on behalf of Paul Crouch, individually,
13 and as the Executor of his mother's estate. And I will meet
14 that deadline.
15          Your Honor, the filing as we've heard and I'm going
16 to try and not repeat things that have been said before, but
17 the overall scheme here is taking state law rights of claimants
18 sickened by Johnson & Johnson's asbestos-contaminated products,
19 unrestricted state law rights that had access with respect to
20 Johnson & Johnson Consumer to at least $61 billion of assets
21 and, with respect to Johnson & Johnson, an unlimited pot of
22 assets and to transform them into restricted rights against an
23 artificially limited pot of money that will be created by this
24 plan.
25

143

1          So we would request that they list the top creditors.
2 And we would also, I think, inquire as to how did they create
3 this new list and why are the attorneys -- I mean, really, it
4 makes me think of collusion.  The folks that are on this list
5 now are the folks that have met privately over the last few
6 weeks that supposedly got their clients to agree to a deal.
7          So Mr. Maimon is going to speak more to this point,
8 but we would rely upon our papers and request that the motion
9 be denied and a list of creditors be named.
10         THE COURT:  All right.  Thank you.
11         Ms. Richenderfer, Mr. Maimon, you can go in a circle.
12         MS. RICHENDERFER:  Your Honor, to give some context
13 to the statements that were just made, in the first case, the
14 top 30, 18 of the 30 firms that were listed in the first case
15 are not part of the top 18 that were listed in the second case.
16 If I add 18 -- Your Honor, that takes me way beyond 30, I
17 guess, is what I'm trying to do here, quickly, the math in my
18 head.
19         So there were eight firms listed in the top 18 for
20 this case that appear nowhere on the list for the first case.
21 So we are rather confused as to where these names are coming
22 from.  And I think I stated before, they're talking about other
23 factors that they used to create the list.  I don't know what
24 that means.  That's why we sent it out to everyone that we
25 could find.

1              And I would suggest, Your Honor, and I know maybe
2    others may disagree with me, but if there is a judgment out
3    there that has not yet been paid by the debtor, I think that
4    goes on the unsecured creditor list.  Or maybe it's a secured
5    creditor.  I don't know.
6              To me, the list of top 30 firms are people who
7    represent claimants who may have filed lawsuits, but they don't
8    have judgments yet.  They don't have verdicts.  They don't have
9    settlements yet.
10             If there is something that is -- substantiates a
11   claim, the four corners of a claim, then I think that goes on
12   the unsecured creditors list.  So I would suggest that to Your
13   Honor as something maybe to bridge the gap here, because I
14   think somebody that's holding a judgment goes on the unsecured
15   creditors list.  Somebody who has a settlement that was never
16   paid goes on the unsecured creditors list as an individual.
17   And that the top law firms are something that's been created
18   when we have these toxic tort cases so that we can get the law
19   firms that have the, hopefully, highest number of claimants
20   involved in the case, get them involved with the matter.
21             But there is some inconsistency here, Your Honor, in
22   what got put on the top list in the first case and what's even
23   on the 18 list here for the second case.
24             But to reiterate, it's out there for the entire
25   world.  It's on the website.  And if anybody has trouble, they

1  can always call me in the Wilmington U.S. Trustee's office or
2  Mr. Sponder -- he's going to kill me -- in the Newark County
3  U.S. Trustee's office.
4       Thank you, Your Honor.
5       THE COURT:  All right.  Thank you.
6       MR. MAIMON:  Thank you, Your Honor.  May it please
7  the Court.  My name is Moshe Maimon from the law firm of Levy
8  Konigsberg, and I appreciate the opportunity that Your Honor
9  has given me to address this issue with regard to LTL's motion
10 to list top law firms with talc claims.
11      The -- as our papers make clear, the Federal Rules of
12 Bankruptcy, the statutes, the case law require the listing of
13 the 20 largest creditors.  And the U.S. Trustee's office raises
14 an interesting issue, which is the distinction between secured
15 creditors and non-secured creditors, because in this bankruptcy
16 and subject to verdicts and judgments there are both secured
17 creditors and non-secured creditors.
18      There are plaintiffs, the Johnson plaintiffs out in
19 California, a prime example of an unsecured creditor with a $20
20 million liquidated claim against Johnson & Johnson, and yet
21 that is nowhere in the debtor's papers, and they wonder why we
22 don't like their list.
23      There are secured creditors verdicts.  Mr. Satterley,
24 the heirs of Mrs. Schmitz, the heirs of Mr. Barden, the heirs
25 of Mr. Ronning (phonetic), who are secured creditors, and yet