Nos. 22-2003, 22-2004, 22-2005, 22-2006, 22-2007,
22-2008, 22-2009, 22-2010, 22-2011

IN THE

# United States Court of Appeals for the Third Circuit

IN RE: LTL MANAGEMENT, LLC,

*Debtor*

\*OFFICIAL COMMITTEE OF TALC CLAIMANTS

*Appellant*

\*(Amended per Court's Order dated 06/10/2022)

On direct appeal from the United States Bankruptcy Court
for the District of New Jersey, No. 21-30589, Adv. Proc. No. 21-3023

**BRIEF FOR DEBTOR-APPELLEE**

| | |
|---|---|
| GREGORY M. GORDON | NEAL KUMAR KATYAL |
| BRAD B. ERENS | SEAN MAROTTA |
| DAN B. PRIETO | WILLIAM E. HAVEMANN |
| JONES DAY | JO-ANN TAMILA SAGAR |
| 2727 North Harwood Street | PATRICK C. VALENCIA |
| Dallas, Texas 75201 | HOGAN LOVELLS US LLP |
| | 555 Thirteenth Street, N.W. |
| C. KEVIN MARSHALL | Washington, D.C. 20004 |
| DAVID S. TORBORG | (202) 637-5600 |
| JONES DAY | neal.katyal@hoganlovells.com |
| 51 Louisiana Avenue, N.W. | |
| Washington, D.C. 20001 | *Counsel for Debtor-Appellee* |

August 15, 2022

Of course, Old JJCI could not just saddle LTL with its talc-related debts, give New JJCI all of its assets, and call it a day. Old JJCI made sure that LTL had the same, if not a greater, ability to resolve present and future talc claims. A450. LTL, New JJCI, and J&J entered into a funding agreement whereby New JJCI would pay the administrative costs in LTL's contemplated bankruptcy case and any talc-related-liability costs after LTL exhausted its own assets, up to New JJCI's estimated $61 billion full enterprise value. A450-456, 105-127. And though the agreement sets a floor of Old JJCI's enterprise value at the time of the divisional merger, the agreement's value is expected to increase as New JJCI's value increases post-restructuring. A5-6 & n.5, 3085-87, 4232, 4235, 4316, 4319. J&J and New JJCI also agreed to advance a total of $2 billion into a qualified settlement fund for the exclusive payment of talc claims. A454-455.

### III.  PROCEDURAL HISTORY

On October 14, 2021, LTL filed for chapter 11 relief in the Western District of North Carolina. A291. LTL also commenced an adversary action against Claimants seeking confirmation that the automatic bankruptcy stay applies to talc claims asserted against LTL's affiliates—including J&J and New JJCI—as well as LTL's insurers and third-party retailers, or entry of a preliminary injunction enjoining those claims. A3798.

21

*Finally*, claimants make a host of arguments directed at the perceived injustices of bankruptcy proceedings that haven't happened yet. Claimants suggest, for example, that LTL's proposed bankruptcy plan will not pay them enough. But "[m]any statutory prerequisites designed to ensure fairness must be met before a trust is formed and a channeling injunction entered under § 524(g)." *W.R. Grace I*, 900 F.3d at 130. Chief among them is that claimants "must approve of any plan employing a § 524(g) trust by a 75% super majority." A32; *see* 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb). LTL has a strong incentive to negotiate a plan that will receive strong support from Claimants; if the bankruptcy fails, LTL will be forced to return to the tort system on future claims.

Some claimants and the U.S. Trustee vaguely suggest either that the funding agreement was a fraudulent conveyance or that some future conveyance may place assets out of LTL's creditors' reach. *See* U.S. Trustee Br. 21; TCC Br. 33. This was one of Claimants principal arguments below, but they now all but abandon it. That is likely because the funding agreement is plainly not fraudulent, because there is no question that LTL will satisfy its obligations, and, most importantly, because this is a question that can be resolved through an adversary proceeding if there are any colorable claims to be made on LTL's behalf. *See* 11 U.S.C.

---

successor in interest to Old JJCI and, consequently, Debtor substitutes for Old JJCI in all federal actions as a matter of law." A29.

72

§ 544(b); *Buncher Co. v. Official Comm. of Unsecured Creditors of Genfarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("The purpose of fraudulent conveyance law is to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away."). Claimants have had the opportunity to seek to unwind the funding agreement as a fraudulent transfer, but have conspicuously declined to do so. The same goes for any hypothetical future transfer by LTL, New JJCI, and J&J. *See* A4325 (New JJCI and J&J submitting themselves to bankruptcy court jurisdiction to enforce the funding agreement). The Bankruptcy Court will always have jurisdiction to protect against fraudulent conveyances.

Claimants object that funding will be "largely unavailable until there is a confirmed plan after appeals are exhausted." TCC Br. 22; *see also* A&I Br. 21. That is also true of tort suits: Defendants typically post a bond to secure any judgment entered against them and do not pay until appeals are exhausted. *See*, *e.g.*, Fed. R. Civ. P. 62(b). Claimants' objection to this feature of the funding agreement is an objection to a feature of tort litigation outside of the bankruptcy system.

Claimants also suggest that LTL will seek to "pressur[e] claimants to settle by threatening" to delay the bankruptcy proceedings. A&I Br. 16; *see also* TCC Br. 49. But Claimants do not cite any evidence of LTL using the bankruptcy

73