Marc E. Wolin, Esq.
mwolin@saiber.com
John M. August, Esq.
jaugust@saiber.com
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401

-and-

Joseph D. Satterley, Esq.
jsatterley@kazanlaw.com
Denyse F. Clancy, Esq.
dclancy@kazanlaw.com
KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Tel: (510) 302-1000

*Counsel for Movant Anthony Hernandez Valadez*



Order Filed on April 25, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LTL MANAGEMENT LLC, | : | Case No. 23-12825 (MBK) |
| | : | |
| Debtor. | : | |
| | : | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION BY MOVANT ANTHONY HERNANDEZ VALADEZ SEEKING RELIEF FROM THE AUTOMATIC STAY, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION ORDER**

The relief set forth on the following pages is hereby ORDERED.

DATED: April 25, 2023

Honorable Michael B. Kaplan
United States Bankruptcy Judge

The instant matter having come before the court on the motion [Dkt. 71] (the "Moiton") for relief from the automatic stay by counsel for Movant Anthony Hernandez Valadez, and for relief from the temporary restraining order, and any anticipated preliminary injunction in the adversary proceeding filed by counsel for the Debtor, at adversary proceeding no. 23-01092 (MBK), seeking among other relief, the entry of a temporary restraining order preventing the continuation of all actions against the Debtor and the Protected Parties identified in the exhibits and amended exhibits to the Debtor's adversary complaint; and this Court having entered an ex parte temporary restraining order (the "TRO") in the adversary proceeding [Dkt. 20 in Adv. Pro. No. 23-01092] restraining all parties from pursuing all claims against the Debtor and the Protected Parties (as defined in the TRO), pending the Court's consideration of the entry of a preliminary injunction; and Debtor having filed an objection to the Motion [Dkt. 208]; and Movant having filed a reply in support of the Motion [Dkt. 206]; and the Court having considered all submissions with respect to the Motion and the proposed preliminary injunction, including opposition to the TRO and the imposition of preliminary restraints filed in the adversary proceeding by an ad hoc committee of talc claimants, which opposition was subsequently adopted by the Official Committee of Talc Claimants (the "TCC") formed by the Office of the United States Trustee (the "TCC Opposition"), and oppositions to the entry of a preliminary injunction or extension of the automatic stay filed in the adversary proceeding by the Office of the United States Trustee, representatives of an ad hoc committee of state attorney generals, and a number of representatives of plaintiffs restrained under the TRO and proposed to be restrained under the preliminary injunction and extension of the automatic stay; and the Court having considered all arguments and evidence presented at hearings held on April 11, 2023 and April 18, 2023 and having rendered its ruling and rendered a bench order at a hearing held on April 20, 2023, a transcript of such ruling being attached hereto as Exhibit "A" (the "Bench Ruling"); and for the reasons set forth in the Bench Ruling, which is incorporated herein by reference,

**IT IS HEREBY ORDERED AS FOLLOWS**:

1.      The relief requested with respect to the TRO is mooted by the Court's ruling at the April

20, 2023 hearing and the Bench Ruling, which dissolved the TRO and imposed a more limited preliminary

injunction (the "Preliminary Injunction").  The relief requested with respect to the automatic stay and the

Preliminary Injunction is granted in part and denied in part, without prejudice, as set forth in the Bench

Ruling and in paragraphs 2 and 3 of this Order.

2.      Pursuant to the Bench Ruling, the Court hereby grants Movant the following relief from

the automatic stay and Preliminary Injunction under §362 of the Bankruptcy Code as set forth below:

    a.    In the case of *Anthony Hernandez Valadez v. Johnson & Johnson, et al.*, the
          Preliminary Injunction does nothing to constrain the parties in preparing the matter
          for trial.  The parties therein are permitted, and directed, to proceed with all litigation
          and all pretrial proceedings, up to the point of commencement of a trial.

    b.    Movant is granted limited stay relief for purposes of taking discovery against Debtor
          related to the underlying litigation in the case of *Anthony Hernandez Valadez v.
          Johnson & Johnson, et al.*

    c.    Movant's request for a waiver of the 14-day stay under Rule 4001(a)(3) of the Federal
          Rules of Bankruptcy Procedure is granted and this Order is effective immediately.

3.      The relief requested by the Motion is otherwise denied, without prejudice.  Pursuant to the

Bench Ruling, Movant is enjoined from conducting a trial in the case of *Anthony Hernandez Valadez v.

Johnson & Johnson, et al.*, against any of the Non-Debtors (as defined in the Motion) through and including

June 15, 2023 or further Order of this Court.

4.      The Motion is adjourned to the hearing scheduled for May 3, 2023, wherein the Court

intends to hear where the parties stand with respect to pretrial matters.  At that time, the Court will consider

whether to lift the automatic stay to permit Movant to proceed against the Debtor and/or to grant Movant

relief from the Bench Ruling, as incorporated in the Preliminary Injunction, to permit Movant to proceed

to trial against the Non-Debtors (as defined in the Motion).

5.      The Court retains jurisdiction to hear and determine all matters arising from or related to the interpretation and/or enforcement of this Order.

## EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 23-12825(MBK) |
| | . | |
| LTL MANAGEMENT LLC, | . | |
| | . | U.S. Courthouse |
| Debtor. | . | 402 East State Street |
| | . | Trenton, NJ 08608 |
| . . . . . . . . . . . . . . . | . | |
| | . | |
| LTL MANAGEMENT LLC, | . | Adv. No. 23-01092(MBK) |
| | . | |
| Plaintiff, | . | |
| | . | |
| v. | . | |
| | . | |
| THOSE PARTIES LISTED ON | . | |
| APPENDIX A TO COMPLAINT AND | . | |
| JOHN AND JANE DOES 1-1000, | . | |
| | . | |
| Defendants. | . | Thursday, April 20, 2023 |
| . . . . . . . . . . . . . . . | . | 12:02 p.m. |

TRANSCRIPT OF RULING ON
MEMORANDUM OF LAW IN SUPPORT OF MOTION BY MOVANT ANTHONY
HERNANDEZ VALADEZ FOR AN ORDER (I) GRANTING RELIEF FROM THE
AUTOMATIC STAY, SECOND AMENDED EX PARTY TEMPORARY RESTRAINING
ORDER, AND ANTICIPATED PRELIMINARY INJUNCTION, AND (II) WAIVING
THE FOURTEEN-DAY STAY UNDER FEDERAL RULE OF BANKRUPTCY
PROCEDURE 400l(a)(3) [DOCKET 7l]; AND DEBTOR'S MOTION FOR AN
ORDER (I) DECLARING THAT THE AUTOMATIC STAY APPLIES OR EXTENDS
TO CERTAIN ACTIONS AGAINST NON DEBTORS OR (II) PRELIMINARILY
ENJOINING SUCH ACTIONS AND (III) GRANTING A TEMPORARY
RESTRAINING ORDER EX PARTE PENDING A HEARING ON A PRELIMINARY
INJUNCTION [ADVERSARY DOCKET 2]; AND MOTION TO SEAL; AND
SERVICE PROCEDURES MOTION
**BEFORE THE HONORABLE MICHAEL B. KAPLAN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

Audio Operator:                    Kiya Martin

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

2

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Jones Day<br>By:  GREGORY M. GORDON, ESQ.<br>      DAN B. PRIETO, ESQ.<br>      AMANDA S. RUSH, ESQ.<br>2727 North Harwood Street, Suite 500<br>Dallas, TX  75201<br><br>Skadden Arps Slate Meagher &<br>  Flom, LLP<br>By:  ALLISON M. BROWN, ESQ.<br>One Manhattan West<br>New York, NY  10001 |
| Various Talc Personal<br>Injury Claimants: | Watts Guerra LLP<br>By:  MIKAL C. WATTS, ESQ.<br>5726 W. Hausman Road, Suite 119<br>San Antonio, TX  78249 |
| For Ad Hoc Committee<br>of Certain Talc<br>Claimants and Ad Hoc<br>Committee of Creditors: | Genova Burns LLC<br>By:  DANIEL M. STOLZ, ESQ.<br>494 Broad Street<br>Newark, NJ  07102<br><br>Brown Rudnick<br>By:  JEFFREY L. JONAS, ESQ.<br>      DAVID J. MOLTON, ESQ.<br>      MICHAEL WINOGRAD, ESQ.<br>7 Times Square<br>New York, NY  10036<br><br>Otterbourg PC<br>By:  MELANIE CYGANOWSKI, ESQ.<br>230 Park Avenue<br>New York, NY  10169-0075 |
| For Anthony Hernandez<br>Valadez: | Kazan McClain Satterley & Greenwood<br>By:  JOSEPH SATTERLEY, ESQ.<br>55 Harrison St. Suite 400<br>Oakland, CA  94607 |
| For the Office of the<br>United States Trustee: | Office of the United States Trustee<br>By:  LINDA RICHENDERFER, ESQ.<br>      JEFF SPONDER, ESQ.<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, DE 19801 |

3

APPEARANCES CONT'D:

| | |
|---|---|
| For Various Talc Claimants: | Maune Raichle Hartley Frency & Mudd, LLC<br>By:  CLAYTON L. THOMPSON, ESQ.<br>150 West 30th Street, Suite 201<br>New York, NY 10001 |
| | Levy Konigsberg, LLP<br>By:  JEROME H. BLOCK, ESQ.<br>MOSHE MAIMON, ESQ.<br>101 Grovers Mill Road, Suite 105<br>Lawrence Township, NJ  08648 |
| | Simon Greenstone Panatier, PC<br>By:  LEAH CYLIA KAGAN, ESQ.<br>1201 Elm Street, Suite 3400<br>Dallas, TX  75720 |
| For Claimant Alishia Landrum: | Beasley Allen<br>By:  ANDY BIRCHFIELD, ESQ.<br>218 Commerce Street<br>Montgomery, AL  36104 |
| For Arnold & Itkin: | Pachulski Stang Ziehl & Jones LLP<br>By:  LAURA DAVIS JONES, ESQ.<br>919 North Market Street<br>17th Floor<br>Wilmington, DE 19801 |
| For Paul Crouch, individually and on behalf of Estate of Cynthia Lorraine Crouch: | Ruckdeschel Law Firm, LLC<br>By:  JONATHAN RUCKDESCHEL, ESQ.<br>8357 Main Street<br>Ellicott City, MD 21043 |
| For the Ad Hoc Committee of Attorney Generals: | Womble Bond Dickinson<br>BY:  ERICKA JOHNSON, ESQ.<br>1313 North Market Street<br>Suite 1200<br>Wilmington, DE, US 19801 |

- - - - -

4

1          THE COURT:  Okay.  Good afternoon, everyone.

2          This is Judge Kaplan.  Getting a little feedback.

3          UNIDENTIFIED SPEAKER:  Good afternoon, Your Honor.

4          THE COURT:  Good afternoon.

5          I hope everybody's doing well.  Bear with me as I go

6  through the usual mechanics of getting us up from an IT

7  perspective.

8          All right.  Thank you.  This afternoon I intend to

9  address the pending motions with respect to the preliminary

10  injunction based on the debtor's verified complaint, as well as

11  the pending relief from automatic stay filed by Mr. Satterley

12  on behalf of Emory Valadez.

13          First, some preliminary matters, if I may.  The Court

14  is in receipt of submitted evidence and deposition designations

15  proffered, by both the debtor and the committee, TCC.  The

16  Court is also in receipt of the objection filed by the TCC to

17  certain designations of testimony with respect to Mr. Haas,

18  Mr. Murdica, and Mr. Birchfield.

19          At this point in time, the Court is accepting into

20  evidence all of the evidence and designations submitted by both

21  the debtor and the Committee.  The Court is overruling the

22  objections raised by the Committee with respect to those

23  identified depositions and testimony.  But the Court is going

24  to note that the Court in reaching its ruling this afternoon

25  has accorded zero weight to the depositions and the evidence

1    reflected in the testimony.

2            The Court is also in receipt of supplemental

3    submissions from you all.  Thank you.  We have the debtor's

4    supplemental submission dated April 19th.  We have the

5    Committee's objection to it.  We have supplemental submissions

6    on behalf of the Bergeron's, on behalf of Maune Raichle's

7    clients, Katherine Tolleson, on behalf of Paul Crouch.  We have

8    also, the Court is in receipt of an initial statement on behalf

9    of an ad hoc committee supporting talc claimants.

10            Oh, let me go back.  With respect to the evidence, I

11   have also received the U.S. Trustee's objection with respect to

12   the use of confidentiality designations.  And the Court agrees

13   that the evidence has been accepted for purposes of the PI

14   motion only and not for any other purpose in this case.  I

15   think that covers all these supplemental submissions.  And the

16   Court has had the opportunity to review these this morning.

17            I'm prepared to read my ruling into the record.  I

18   hope you all will bear with me in the time it takes.

19            I sat through yours.

20            All right.  One of the advantages of conducting the

21   hearing in a hybrid fashion, both live and remote this past

22   Tuesday, was that my wife could log in and see that I was

23   actually working and in Court for over nine hours.  And when I

24   got home, she asked me why I didn't cut off the arguments and

25   the endless PowerPoint presentations sooner.  I told her that I

1  was looking for answers, that it was repeated often that the

2  world is watching and I wanted every opportunity to understand

3  the facts and get answers to my concerns.  I believe that the

4  Court and the world is entitled to such answers.

5          Well, frankly, after Tuesday, I have more questions

6  than answers.  The fundamental question addressed by the

7  parties is whether the debtor has a realistic possibility of

8  success.  It is the linchpin of the four-prong injunction test

9  employed universally.  In Chapter 11, the inquiry is more

10 focused on whether the debtor has a reasonable possibility of

11 reorganizing, which needless to say, at a minimum, requires

12 that the debtor survive any motions to dismiss for cause,

13 including lack of good faith.

14          Our Third Circuit now has made clear that it views

15 the gateway to good faith being a determination that a debtor

16 is in financial distress.  Mr. Maimon, among others, argued

17 that this determination should be straightforward.  Did

18 anything occur in the two hours and 11 minutes between filings

19 and after the Third Circuit's ruling, which changed the

20 debtor's financial situation and created distress.

21          I'm not sure that this is the correct question.

22 Rather, I think it must be whether anything changed in the

23 debtor's financial picture.  Since October of '21, the date of

24 the first filing and the period fixed for purposes of the five-

25 day trial undertaken in February of 2022, and April 4, 2023,

7

1  the date of the second filing.

2  Well, certain things have changed. Claims against

3  the debtor have soared from approximately 41,000 to in all

4  likelihood well over a 100,000. Are these new claims

5  supportable? Tuesday provided more speculation than answers.

6  Does the increased volume of claims add to or create financial

7  distress for this debtor? Maybe. Maybe not.

8  Since the first filing, the acknowledged floor for

9  the debtor's talc liability has increased from 2 billion to 8.9

10 billion with questions remaining as to whether this sum would

11 cover the billions claim due for third-party providers, state

12 regulators, Canadian class claimants, indemnified parties, and

13 others.

14 Does this increase floor of debt add to or create

15 financial distress for this debtor? Again, maybe. Maybe not.

16 Since the first filing, the debtor's funding resources have

17 been reduced from 61 billion to possibly 30 billion plus. The

18 reduction certainly appears manufactured by the debtor, HoldCo,

19 and J&J in response to the Third Circuit's ruling. Does this

20 reduction in funding add to or create financial distress for

21 this debtor? Maybe. Maybe not.

22 Does the manner in which the transactions were

23 undertaken give rise to an independent bases for finding bad

24 faith? Possibly. Do the transactions give rise to fraudulent

25 transfer liability for the benefit of the debtor's creditors?

8

1  Well, constructive fraud generally, under the Bankruptcy Code

2  and state law, requires a determination of insolvency.  Can the

3  Court conclude after Tuesday's hearings that the debtor's

4  liabilities exceed its assets?  I don't think so since the

5  extent of the liabilities has not been anywhere close to being

6  fixed.

7        The Third Circuit specifically cautioned and

8  admonished against casual calculations and back of the envelope

9  forecasts.  Given the limited record here, this Court cannot

10 make an informed determination or comparison of the assets and

11 liabilities of this debtor in this bankruptcy, which according

12 to the Third Circuit, is where the inquiry should be focused.

13       As to actual fraud, can the Court conclude that

14 there's been an actual intent to hinder, delay, and defraud

15 creditors?  Maybe.  But proof of subjective intent may be

16 difficult to determine without knowing the extent of the

17 liabilities and whether it's reasonable for the debtor to

18 believe that its remaining assets are sufficient to cover such

19 liabilities.

20       And for the Court, there was a very concerning

21 question regarding this loss of value in the funding agreements

22 and its potential impact on the interest of present and future

23 creditors.  What happens if this case is dismissed?  I know the

24 lawyers that represent these claimants will fight zealously and

25 tirelessly for their individual clients, as they should.  But

1  who pursues the claims for the possible loss in funding value?

2  Who will fight for the other a 100,000 or so creditors or

3  claimants to pursue recovery that may be available because of

4  these transactions?  Outside of bankruptcy, who will fight to

5  protect the interest of future claimants?

6          Now, it may be that this Court determines that the

7  last series of questions, or in fact any of the other

8  questions, are not relevant.  Once the Court hears from the

9  movants with regard to the anticipated motion to dismiss,

10  undoubtedly the debtor has an uphill battle.  There are

11  unresolved issues such as the voidability of the 2021 funding

12  agreement, the potentially largest fraudulent transfer

13  undertaken in history, as the phrase has been proffered; the

14  need to acquire 75 percent approval for the plan.  But at this

15  point, with so many unanswered questions, the Court cannot

16  reach a determination that there is no possibility of a

17  successful reorganization premised upon the objections of

18  certain claimants, vehement as they may be.

19          The Court cannot at this juncture *sua sponte* dismiss

20  this case or rely on bad faith as a basis to deny the

21  preliminary injunction.  That being said, the Court is

22  skeptical and will require a well-supported and timely showing

23  by the debtor that this reorganization has a meaningful chance.

24          For purposes of today, the Court refers and

25  incorporates into this ruling its analyses and discussions

10

found in its prior published opinions at 638 B.R. 291, 640 B.R.
at 322, and 645 B.R. 59.  Specifically, these prior opinions
explicate the Court's authority to hear, decide, and enter a
final order and judgment in the adversary proceeding, which
would have the effect of extending the automatic stay and
enjoining litigation against non-debtor third parties relative
to the debtor talc claims as defined in the verified complaint.

In sum, the Court concludes that Section 362(a) and
Section 105(a), and/or the Court's inherent powers can each
serve as an independent basis to extend the stay to non-debtor
third parties.  In so concluding, the Court continues to follow
the Philadelphia newspapers approach set forth at 423 B.R. 102,
which considers whether there is jurisdiction to enter the
injunction, whether the extension of the automatic stay to non-
debtors is appropriate, and whether the Court should in its
discretion, issue the injunction.

As in the last case, the debtor has asked for a
preliminary injunction and/or an extension of the stay to
certain non-debtor parties.  The UST, the TCC, and
representatives of certain claimants, among others, oppose this
request.  At the core of all these objections is the argument
that the debtor cannot confirm a plan, that there is no
likelihood of success because the objecting claimants will not
agree to a plan proposed by the debtor.  Yet the debtor comes
before this Court with an alleged 55,000 or more claimants in

1  support of a proposed settlement.

2       This Court cannot discount those claimant's rights

3  and preferences in favor of others.  Notwithstanding, claimants

4  who have had over the past 18 months their claims and

5  litigation stalled during the pendency of the prior bankruptcy,

6  should not lose more valuable time.  Therefore, I have

7  determined that the TRO currently in place should be dissolved

8  and replaced with a far more limited preliminary injunction.

9       Needless to say, the automatic stay remains in effect

10  as to the debtor.  The more limited preliminary injunction to

11  be entered will prohibit the commencement or continuation of

12  any trial against any of the protected parties identified in

13  Appendix B to the verified complaint, as amended, through and

14  including June 15, 2023, a period of approximately 60 days.

15  This is aimed at preventing the liquidation of claims for which

16  this debtor may have liability with the liquidation occurring

17  outside of this bankruptcy.

18       But to be clear, I am neither enjoining nor

19  restraining the filing of new complaints against the protected

20  parties, nor am I enjoining or restraining any ongoing

21  discovery or other pretrial matters.  Given the very limited

22  scope of these restraints, the Court did not, and frankly could

23  not, on the factual record examine the basis of relief for each

24  of the specific protected parties.

25       The restraints included in the current amended TRO

12

1  will remain in effect as to the MDL that's currently pending

2  before Judge Michael Shipp.  I have spoken with Judge Shipp and

3  we both agree that the continuing restraints as to the MDL

4  should and will be revisited along with the continuing

5  appropriateness of the preliminary injunction itself at the

6  Court's omnibus hearing scheduled for May 22, 2023.

7          With respect to Section 108(c) tolling provisions

8  relative to the statute of limitations for unfiled claims, the

9  Court's preliminary injunction order will include language that

10 the automatic stay under Section 362(a) remains in effect for

11 unfiled claims unless the claimant, through counsel, notifies

12 the debtor in writing of his, her, or their interests and

13 intent to proceed with the filing of a complaint.

14         The purpose of this language is to ensure that such

15 claimants who wish to defer filing a complaint and paying the

16 necessary filing fees while the bankruptcy case unfolds are not

17 placed in the position of having to file and incur that

18 expense.  The Court welcomes any and all suggestions as to

19 workable language that addresses this issue.

20         Finally, the Court recognizes the debtor's concern

21 that a full throttled resumption of litigation may place

22 immediate burdens on staff and potential witnesses, such as a

23 proffered 30(b)(6) witness and sees no reason why transcripts

24 of such initial depositions can't be provided in lieu of

25 multiple repeat and duplicative depositions across the country.

13

1  If a problem arises in this regard, the Court will address this

2  and any specific problems at a future date.

3          In reaching today's ruling, that Court employs its

4  discretion and judgment to balance the interest of the tens of

5  thousands of claimants who wish to go forward outside of

6  bankruptcy, the interest of the tens of thousands of claimants

7  who wish to pursue settlement within this case, and the

8  interest of the debtor in pursuing a fair and equitable

9  resolution of these claims through a bankruptcy reorganization.

10         I wish to make one thing clear.  Contrary to some

11 suggestions, the Court is not endeavoring to make policy.  That

12 has never been the Court's aim.  Rather, the Court is engaged

13 in trying to do its best to advance the interest of creditors

14 as a whole, a task I and my bankruptcy judge colleagues

15 undertake daily.

16         With respect to the Valadez matter, I am troubled

17 with the same issue I've had to tackle in the prior case,

18 whether it is ever appropriate to start picking and choosing

19 which claimant among thousands should be permitted to go

20 forward and liquidate claims while others abide by the process.

21 From everything I have heard and read there remains

22 considerable tasks, including expert discovery and motion

23 practice, which must be completed before the matter is ready

24 for trial.

25         Mr. Satterley, I see you're on.  There are no present

14

1  restraints preventing you from moving forward in this regard

2  apart from proceeding to trial.  I will provide your client the

3  opportunity to quickly revisit this issue by carrying your

4  motion to May 3rd, and if appropriate, that's the next

5  scheduled omnibus hearing, and if appropriate to the May 22nd

6  hearing, to hear where you stand with respect to pretrial

7  matters.

8         Alternatively, you may submit a form of order

9  granting in part and denying in part your requested relief so

10  that you may pursue an immediate appeal.  You can advise

11  chambers after this hearing as to your preference.

12         Finally, as noted, on Tuesday as part of the text

13  order in the first case, which terminated mediation due to the

14  anticipated dismissal of the case, I urge the parties to

15  continue settlement discussions.  I have not altered my view

16  that mediation is important.  Indeed, considering the debtors'

17  intent to file a plan in short order I believe mediation is

18  critical and should begin as soon as possible.

19         The parties must have confidence in the mediator, and

20  the mediator must have plenary authority to conduct any

21  mediation as he, she, or they deem appropriate.  I know the

22  debtor has filed a motion to reappoint Mr. Russo and Judge

23  Schneider.  Notwithstanding, I am directing the Committee and

24  the debtor to provide me in confidence with three names of

25  proposed mediators by the close of business this coming

15

1  Wednesday.  I am away out of state until then.  My inclination

2  is to appoint a single mediator to start who will be subject to

3  the same mediation protocol employed in the prior case.  Thank

4  you.

5          I will ask the debtor to settle a form of order with

6  the Committee and others, reflecting my ruling today, of course

7  by reference.  And fearfully I will ask are there any

8  questions?

9          MR. SATTERLEY:  Yes, Your Honor.

10          THE COURT:  Well --

11          MR. SATTERLEY:  I'm sorry.

12          THE COURT:  We'll start -- Mr. Satterley?

13          MR. SATTERLEY:  Yes.  So, obviously I got -- I'm

14  going to read Your Honor's -- the transcript whenever we get it

15  today, and I need to consult with appellate counsel, but I just

16  got a little confused as you read along.

17          With regards to the granting of the -- or the

18  decision to appeal, will Your Honor allow me and certify the

19  issue to the Third Circuit?  I need to know that so I can talk

20  to appellate counsel also as I advised Your Honor on the 11th.

21  I advised Your Honor that it was my intention to take a writ --

22  emergency writ because of the pending death of my client, so I

23  just wanted to find out from Your Honor will you give me

24  permission, if my appellate counsel tells me it's appropriate,

25  to go to the Third Circuit directly?

16

1          THE COURT:  The best I can do is give you the

2   authorization to make the request to me formally.  I have to --

3          MR. SATTERLEY:  Yes, Your Honor.

4          THE COURT:  -- allow other parties to weigh in on it.

5          MR. JONAS:  Your Honor, may we have the same

6   response?  Because we would intend to do so, as well.

7          THE COURT:  The same response would be appropriate.

8          MR. JONAS:  Thank you, Your Honor.

9          MS. BROWN:  Your Honor, this is Allie Brown.  Could I

10  ask, I understand the Court's ruling.  Given the significance

11  of the discovery that will no doubt be coming our way very

12  soon, could we ask that the order not go into effect until

13  Monday at nine a.m. so that we can alert counsel throughout the

14  country who handle these matters on a local basis and have no

15  visibility into what's been going on here, so they are prepared

16  to deal with letters to the Court, and calls to the Court in

17  the individual cases they are monitoring?  I fear if we don't

18  do that it could be somewhat chaotic, as discovery requests

19  start immediately.

20         THE COURT:  Well, as a practical --

21         MR. SATTERLEY:  May I respond to that, Your Honor?

22         THE COURT:  Let me -- I'll let you respond.  Let me

23  -- as a practical matter I don't have an order.  I asked the

24  parties to settle an order.  And I leave on Saturday morning,

25  and I'll be out of the state.  So --

17

1          MS. BROWN:  Understood.

2          THE COURT:  I don't know how to respond to you.

3    Certainly --

4          MS. BROWN:  I think I understand, Your Honor.  So, it

5    will be dependent on us proposing something to the Court --

6          THE COURT:  Right.

7          MS. BROWN:  -- and there is at least a few days time

8    on that so we can get the logistics in order.

9          THE COURT:  Right.  With Mr. Satterley --

10          MS. BROWN:  Understood.

11          THE COURT:  Yes.  Thank you.

12          MR. SATTERLEY:  So, this -- counsel has been aware of

13    Your Honor's tentative since last Thursday, and Your Honor, you

14    know, while it's more formalistic and you put it all in more

15    detail, they have been aware, and just as Your Honor directed

16    me to do, I went to Judge Seabolt and asked him to do exactly

17    what Your Honor said, move the hearing until today.  And

18    counsel for J&J and all the retailers were present, and they

19    said I correctly stated what Your Honor said.  There is

20    absolutely no reason to further delay, because trial courts,

21    state courts have a docket also, and they need to manage their

22    docket.

23          So I would request, Your Honor, to allow us to advise

24    the state courts, advise the trial judges the procedure.

25    Obviously various state laws control with regards to how much

1 time they have to respond to discovery.  No state that I'm

2 aware of requires the debtor -- I mean, the non-debtor, the

3 non-debtor to respond immediately to discovery.  Usually it's

4 20 days, or 30 days, or 45 days.

5          So even if we were to tender discovery today, it's

6 not going to be tomorrow that they're going to respond to it.

7 So I object to Mrs. Brown's request to once again further delay

8 the resumption of our client's rights to go -- and because, for

9 example, Your Honor, one of the cases I filed an objection to

10 was Mr. Eagles (phonetic).  His trial, Mr. Eagles' trial was

11 already set for April the 2nd.  Because of the TRO we moved it

12 to May the 1st.  And now I was going to tell Judge Seabolt to

13 move it to June the 15th.  And what Ms. Brown is in essence

14 asking for is in Mr. Eagles' case, who is dying of

15 mesothelioma, that we would not be able to start preparing that

16 case further for trial.  So I would object to Mrs. Brown's

17 request, and allow us to begin the preparation so that these

18 individuals are not further harmed.

19          THE COURT:  I think I can --

20          MS. BROWN:  Your Honor --

21          THE COURT:  Well, Ms. Brown, I think I can address

22 this -- and I see other hands raised.  I do not have an

23 objection -- I know you all will secure a copy of this

24 transcript quickly.  I have no objection to you providing it to

25 non-bankruptcy courts with the note that a formal order has not

1  been entered.  It will speak for itself.

2      MS. BROWN:  And, Your Honor, until the formal order

3  is entered we will have at least a few days to organize the

4  local counsel and be prepared to respond?

5      THE COURT:  I can't see any court acting to prejudice

6  those interests in the days it will take.  Work hard, get me an

7  order.  I will enter it even if I am not in the state.  But --

8      MS. BROWN:  Understood, Your Honor.

9      THE COURT:  All right.  Mr. Placitella?

10     MR. PLACITELLA:  Good morning, Your Honor.  Thank you

11  very much.  In your decision you referenced Appendix B to the

12  Notice of Filing.  There was an amended Appendix B that listed

13  Janssen and Kenvue that we received with no notice and no

14  evidence offered during the hearing, and I want to understand

15  the scope of your decision if it includes Janssen and Kenvue

16  for which no evidence was submitted during the hearing, and for

17  which Mr. Kim said he had no knowledge whatsoever.

18     THE COURT:  Well, I anticipated your question, and

19  candidly, I can't see how your clients would be prejudiced with

20  no trial to occur.  That's the only limitation until June in a

21  case that where issue hasn't even been joined yet.  So, but if

22  you want to explain --

23     MR. PLACITELLA:  But the issue, Your Honor --

24     THE COURT:  If you want to address it --

25     MR. PLACITELLA:  Respectfully, Your Honor, yes,

1  because the issue is whether the standard has been met for a

2  temporary restraining order.  And with no evidence, and in

3  fact, they submitted a brief to you saying whatever happened

4  after Holdco is irrelevant, with no evidence, even with Your

5  Honor's best intent there is no basis even for a short

6  restraint to stop the case against Kenvue or Janssen.  The

7  operation of -- I'm assuming what's going to happen is they are

8  going to file a motion to dismiss, and the trial court will

9  make a determination.

10         But, you know, having them give notice, you know,

11  after five a day before the hearing, put on no evidence and say

12  oh, well, protect them too when Mr. Kim doesn't even know why

13  it was included, respectfully, I don't think it should be

14  included.

15         THE COURT:  All right.  Fair enough.  At this

16  juncture I am going to excise out those two defendants from the

17  Exhibit A.  I will preserve the debtor's rights to come back

18  before me to include them at a later date if it becomes

19  relevant.

20         MR. PLACITELLA:  Thank you, Your Honor.

21         THE COURT:  Thank you.

22         MR. JONAS:  Your Honor?

23         THE COURT:  Yes?

24         MR. JONAS:  Your Honor, it's Jeff Jonas from Brown,

25  Rudnick, and with me is Melanie Cyganowski from Otterbourg on

21

1 behalf of the Committee, TCC.  Your Honor, I would ask that you

2 sua sponte grant the Committee derivative standing to

3 investigate and bring state court causes of action and claims.

4 I think -- I hope, Your Honor, that our hearing, trial earlier

5 this week, if nothing else, demonstrated, and I think you have

6 sufficient evidence as to the futility of expecting this debtor

7 to investigate, never mind bring, those claims and causes of

8 action.  So we would ask you to do that now, Your Honor.

9        THE COURT:  All right.  Does the debtor wish to be

10 heard?  Mr. Gordon?

11        MR. GORDON:  Greg Gordon, Your Honor, Jones Day, on

12 behalf of the debtor.  I don't think it's appropriate to make

13 that request orally for a sua sponte ruling.  There are

14 standards that have to be met, including advising the Court and

15 the parties what claims we're talking about, and there's got to

16 be a showing that they are colorable claims.  And so from our

17 perspective we think, as you handled the other matter, a motion

18 should be filed and we should be given the right to respond to

19 it.

20        THE COURT:  All right.  I knew there would be a

21 danger in conducting this not in a webinar format where counsel

22 had the ability to ask questions.  I'm not prepared or inclined

23 to grant sua sponte relief at this -- or any further relief

24 today.  The purpose for today's hearing was to try to read a

25 ruling and direct the parties to come to a form of order.

22

1          MR. GORDON:  And, Your Honor, I wanted to spend one

2     minute on Mr. Placitella, if I could.  I obviously heard Your

3     Honor's ruling.  I just wanted to indicate that he did say in

4     court, as I recall, that the basis for the claims is successor

5     in interest, which would be property of the estate, and

6     therefore those claims would be barred by the automatic stay.

7     But we heard Your Honor.  We'll handle that appropriately.

8     We'll file a motion as necessary to get the relief that we

9     think would confirm that those claims are barred by the

10    automatic stay.

11         THE COURT:  In fairness to Mr. Placitella, I was

12    moving everybody along quickly --

13         MR. GORDON:  Understood.

14         THE COURT:  -- on Tuesday, and we didn't vet these

15    arguments.

16         MR. GORDON:  Sure.

17         THE COURT:  And given the stage where it's at there's

18    ample time to address it further.

19         MR. GORDON:  Understood, Your Honor.

20         THE COURT:  Ms. Cyganowski, I can't tell, is there

21    still a hand up?

22         MS. CYGANOWSKI:  Yes, there is, Your Honor.  Melanie

23    Cyganowski for the Committee.  I'm not asking for the relief

24    today, but just to advise the Court that we will be opposing

25    the debtor's request for expedited relief with respect to the

23

1 hearing on the disclosure and plan.

2      THE COURT:  The Court has received the debtor's

3 motion on shortened time, but I believe the Court did receive

4 something from your firm, or one of the firms representing the

5 TCC in opposition.  In all candor, it sits on the corner of my

6 desk, and I have not looked at it, nor will I through today and

7 probably through tomorrow.  So if other firms want to weigh in,

8 one side or the other, they may do so.

9      MS. CYGANOWSKI:  Thank you.

10      MR. SATTERLEY:  Your Honor, I have one last question.

11 Can we -- I know Your Honor said you were going to be away.  Is

12 it -- can we have a deadline for the order?  The only thing I'm

13 afraid of, we can obviously meet and confer today.  Can we

14 submit by tomorrow competing orders to the extent we can't

15 agree on the exact language?  Because I have -- not necessarily

16 with this debtor, but I have had situations where defendants in

17 litigation don't agree, and it just protracts the submission of

18 the order of the Court.  So I was going to suggest is it

19 possible we'll meet and confer this afternoon.  If we can't

20 agree to an order by 12 noon tomorrow we can submit competing

21 orders, and Your Honor decide what's appropriate?

22      THE COURT:  My thought is that if you -- let's see.

23 I'm trying to make it as expeditious, but I am not sure where I

24 am going to be during the early part of next week.  So, how

25 about this?  Do your best to meet and confer, come up with the

24

1  terms.  It shouldn't be a difficult order.  I have laid it out

2  subject to anybody's rights to take an appeal, of course, but

3  most of it should just be by reference.

4          And so, you should be able to come up with the terms

5  of the order.  You can take action as appropriate.

6          So, if by the close of business on Monday you haven't

7  all agreed on a form of order, reach out for chambers.  We'll

8  see if we can have a conference call.

9          MS. BROWN:  Thank you, Your Honor.

10          MR. STOLZ:  Your Honor, maybe an easier way to -- to

11  handle it is to have this -- Your Honor's ruling constitute a

12  bench order to be followed up by a written order so it's

13  effective immediately?

14          MS. BROWN:  Judge, we'd like the opportunity to

15  follow your instructions, and we can certainly do so by Monday,

16  and we'll reach out if there is an issue.

17          THE COURT:  I think --

18          MR. SATTERLEY:  The only problem with that, Your

19  Honor --

20          THE COURT:  Go ahead.

21          MR. SATTERLEY:  -- my clients die.  Every day is

22  important to my client.  And if I have to make a decision about

23  an emergency appeal, as I told Your Honor on the 11th, every

24  single day that goes by my client is -- is closer to being in

25  the ground, dead, and so I would request -- Your Honor made it

1  real clear what your order is today.  There's no reason why we

2  cannot agree to something this afternoon or tomorrow morning

3  and submit something to Your Honor.  What -- so, I would -- Mr.

4  Stolz makes a great point, and I would request that Your Honor

5  incorporate Mr. Stolz's request.

6          MS. BROWN:  Your Honor, there are wide implications

7  of your order, and we are prepared to follow the Court's

8  instruction to immediately meet and confer and get the Court by

9  Monday a proposed order.

10         MR. MAIMON:  Your Honor?

11         THE COURT:  Yes, Mr. Maimon?

12         MR. MAIMON:  Thank you, Your Honor.  We object to the

13  debtor stringing this out.  This is -- Your Honor noted that

14  the delay for claimants should not continue any more as to the

15  non-debtors, and it should not be that on Monday, first thing,

16  with Your Honor out of the state, and we don't know what the

17  Court's availability is, that we then have to first start

18  scheduling conferences.  The Court was very clear with its

19  decision today.  Mr. Stolz is correct.  It's standard practice

20  for courts to issue a bench order that the transcript is the

21  order of the Court to be followed up with a more formal written

22  order that can form the basis of any appeals or anything like

23  that.  But we should be able to proceed in accordance with the

24  Court's ruling immediately.

25         THE COURT:  All right.  Well, in effect I thought I

26

1  was providing Mr. Satterley and others with the authorization

2  to take this transcript.  A bench order requires the transcript

3  in the first place.  So, I anticipate that you're going to be

4  using the transcript.  If you want the magic language that this

5  is it's so ordered from the bench subject to the terms of a

6  more formal order to be entered at a later date, you have it.

7           MR. SATTERLEY:  Thank you, Your Honor.

8           UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

9           THE COURT:  All right.  And then I think I wish all

10 of you a good weekend.

11          UNIDENTIFIED ATTORNEY:  Enjoy your vacation, Your

12 Honor.

13          THE COURT:  Thank you.

14          UNIDENTIFIED ATTORNEY:  Don't tell anyone where you

15 are.

16          THE COURT:  I should be so lucky.  Thank you.

17          UNIDENTIFIED ATTORNEY:  Thank you.

18                         *  *  *  *  *

19

20

21

22

23

24

25

27

# **C E R T I F I C A T I O N**

1

2        We, KAREN K. WATSON and TAMMY DERISI, court approved

3   transcribers, certify that the foregoing is a correct

4   transcript from the official electronic sound recording of the

5   proceedings in the above-entitled matter and to the best of our

6   ability.

7

8   /s/ Karen K. Watson

9   KAREN K. WATSON

10

11  /s/ Tammy DeRisi

12  TAMMY DERISI

13  J&J Court TRANSCRIBERS, INC.        DATE:  April 20, 2023

14

15

16

17

18

19

20

21

22

23

24

25