# <u>EXHIBIT 4</u>



1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------X
In Re:


LTL MANAGEMENT, LLC,

                          Debtor.


Case No. 21-30589 (MBK)
--------------------------------------------X

             ***CONFIDENTIAL***




VIDEOTAPED DEPOSITION OF RICHARD DICKINSON




DATE:  April 17, 2023

TIME:  10:02 a.m.

PLACE:  ***REMOTE***

BEFORE:  Rebecca Schaumloffel, RPR, CCR-NJ

JOB NO:  2023-893393

2

1

2  A P P E A R A N C E S:

3

4

5   BROWN RUDNICK
          Attorneys for the Talc Claimants
6         7 Times Square
          New York, New York 10036
7         BY:  LYDELL BENSON, ESQ.
                MARK S. BALDWIN, ESQ.
8

9

10

11

       GENOVA BURNS, LLC
12         Attorneys for Creditors' Committee
           110 Allen Road, Suite 304
13         Basking Ridge, New Jersey
           BY:  DANIEL STOLZ, ESQ.
14

15

16

17   JONES DAY
          Attorneys for the Debtor
18        250 Vesey Street
          Suite 31
19        New York, New York 10281
          BY:  JAMES JONES, ESQ.
20              MARK RASMUSSEN, ESQ.

21

22

23   LEVY KONIGSBERG
          Attorneys for Talc Claimants
24        605 Third Avenue, 33rd floor
          New York, New York 10158
25        BY:  JEROME BLOCK, ESQ.

3

Appearances (continued:)


    LOWENSTEIN SANDLER
         1251 Avenue of the Americas
         New York, New York 10020
         BY:  JENN KIMBLE, ESQ.


    OFFICE OF THE UNITED STATES TRUSTEE
         Attorneys for the United States
         Department of Justice
         One Newark Center
         Suite 2100
         Newark, New Jersey 07102
         BY:  JEFF SPONDER, ESQ.


    PACHULSKI STANG ZIEHL & JONES
         Attorneys for Arnold & Itkin
         10100 Santa Monica Boulevard
         13th floor
         Los Angeles, California 90067
         BY:  KAREN DINE, ESQ.


    THE RUCKDESCHEL LAW FIRM, LLC
         Attorneys for Paul Crouch
         8357 Main Street
         Ellicott City, Maryland 21043
         BY:  JONATHAN RUCKDESCHEL, ESQ.

```
                                                                      4

1

2

3   Appearances (continued:)

4


5

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
6            Attorneys for the Debtors
             One Manhattan West
7            New York, New York 10001
             BY:  (No appearance)
8


9


10


11      WHITE & CASE
             Attorneys for Johnson & Johnson
12           767 Fifth Avenue
             New York, New York 10153
13           BY:  JOSHUA WEEDMAN, ESQ.
                  KATHYRN KUETHMAN, ESQ.
14


15


16      WOMBLE BOND DICKINSON
             Attorneys for Ad Hoc Committee of
17           States Attorney Generals
             100 Light Street
18           26th floor
             Baltimore, Maryland 21202
19           BY:  LISA TANCREDI, ESQ.


20


21


22      ALSO PRESENT:


23
             Deane Carstensen, Lexitas
24           John Kim, Esq.


25
             *          *          *
```

5

```
 1            R. DICKINSON

 2        THE VIDEOGRAPHER:  We are now on

 3   the record.  Today's date is April 14,

 4   2023, and the time right now is

 5   10:04 a.m. Eastern Daylight Time.

 6        This is the video deposition of

 7   Richard Dickinson in the matter of LTL

 8   Management, LLC, filed in the United

 9   States Bankruptcy Court, District of

10   New Jersey, case number 23-12825

11   (MBK).

12        This deposition is taking place

13   via web video conference with all

14   participants attending remotely.

15        My name is Dean Carstensen.  I'm

16   the videographer representing Lexitas.

17        Counsel will be noted on the

18   stenographic record.

19        And our court reporter today is

20   Rebecca Schaumloffel, also

21   representing Lexitas.

22        The court reporter can now swear

23   in the witness and then we may

24   proceed.

25        THE COURT REPORTER:  And just to
```

Case 23-12825-MBK   Doc 280-6   Filed 04/28/23   Entered 04/28/23 10:00:09   Desc
Exhibit 4 to Exhibit 3 Declaration of   Page 8 of 20

6

1              R. DICKINSON

2        note:  Today's date is April 17, 2023.

3

4

5   RICHARD DICKINSON, called as a witness,

6   having been first duly sworn by a Notary

7   Public of the States of New York, New

8   Jersey, and Pennsylvania was examined and

9   testified as follows:

10              MR. JONES:  Lydell, excuse me,

11         just for a second.

12              Mr. Dickinson, excuse me, as

13         well.

14              We have a standing agreement

15         with the committee in these cases

16         about provisional confidentiality of

17         the transcript.  It should be marked

18         as confidential pursuant to that

19         agreement.

20              We will be making new

21         designations of confidentiality within

22         24 hours of receiving the final

23         transcript, but anyone on the call now

24         who will not abide by provisional

25         confidentiality should sign off.  I

Case 23-12825-MBK   Doc 280-6   Filed 04/28/23   Entered 04/28/23 16:02:09   Desc
Exhibit 4 to Exhibit 3 Declaration of   Page 9 of 20

7

1           R. DICKINSON

2      know Mr. Sponder is going to make a

3      statement, and that's fine.

4           But, others, please sign off if

5      you're not willing to abide by

6      provisional confidentiality.

7           Thank you very much.

8           MR. SPONDER:  Hi.  This is Jeff

9      Sponder from the office of the United

10     States Trustee.

11          Judge Kaplan made a ruling on

12     this past Thursday carving out the

13     United States Trustee from the

14     District of New Jersey,

15     confidentiality or protective order,

16     and the United States Trustee did not

17     sign on to the prior case, LTL I one

18     Protective Order.

19          Thank you.

20          MR. BENSON:  All right.  I think

21     we can get started.

22     EXAMINATION BY

23     MR. BENSON:

24     Q.   Good morning, Mr. Dickinson.

25     A.   Good morning.

8

R. DICKINSON

Q.    Can you hear me okay?

A.    I can.

Q.    All right.  My name is Lydell
Benson.  I'm an attorney with Brown Rudnick.
Brown Rudnick, we represent the Official
Committee of Talc Claimants.

How are you doing this morning?

A.    I'm doing great.  How are you?

Q.    I'm doing well.

Are you represented by counsel
this morning?

A.    I am.

Q.    Could you please state your full
name for the record?

A.    Richard Frank Dickinson.

Q.    Mr. Dickinson, you were deposed in
connection with LTL's first bankruptcy,
correct?

A.    That is correct.

Q.    By Jeff Jonas, right?

A.    And others, correct.

Q.    And was that your first
deposition?

A.    Yes.

9

1              R. DICKINSON

2     Q.    Was that the last time you were

3  deposed?

4     A.    That is.

5     Q.    Okay.  Well, given that, let me go

6  over a few housekeeping matters for today's

7  deposition.

8          The court reporter will take down

9  my questions and your answers, so it's

10  critical that you provide verbal responses to

11  my questions.  Sometimes deponents will nod

12  their head or respond with uh-hum or mh-hmm

13  or hm-hmmm.  I will correct you if that

14  happens, but if you can try your best to give

15  verbal responses, that would be great.

16          It's also critical that only one

17  of us are speaking at a time, including your

18  counsel when we might be engaged in the back

19  and forth.  So I will do my best to allow you

20  to finish answering your question and I would

21  ask that you allow me to finish asking my

22  question before you begin.

23          Is that clear?

24     A.    Yes.  Mr. Benson, it's a little

25  muffled at times to hear you.

10

                        R. DICKINSON

 1

 2      Q.    How about now?

 3      A.    I think that's better, but...

 4      Q.    Okay, I'll try my best.

 5            THE COURT REPORTER:  I was going

 6      to say the same thing.  You were going

 7      in and out.

 8            MR. BENSON:  Okay.  How about

 9      now?

10            THE COURT REPORTER:  Now seems

11      okay.

12            MR. BENSON:  Okay, good.

13            MR. BLOCK:  If you just keep

14      your voice up, I think that will be

15      fine.

16            MR. BENSON:  Okay, I can do

17      that.

18  BY MR. BENSON:

19      Q.    Mr. Dickinson, if you do not

20  understand a question, please ask for

21  clarification.  If you cannot hear my

22  question or if I'm not speaking loud enough,

23  you know, as you just did, please let me know

24  and I will try my best to raise my voice.

25            I may ask a bad question.  If I

11

R. DICKINSON

1
2  do, just let me know; I will try to rephrase
3  it, have it read back.
4        You understand that today you are
5  giving testimony under oath?
6      A.   I do.
7      Q.   You understand that means that you
8  are legally obligated to answer these
9  questions truthfully?
10     A.   I do.
11     Q.   So we are seeking complete
12 information that encompasses all of your
13 knowledge on the subjects that we will cover
14 today.  And the purpose is for you to provide
15 complete and truthful answers.
16        Is there any reason that you're
17 aware of that you cannot testify completely
18 and honestly today?
19     A.   No.
20     Q.   You are welcome to ask for a
21 break, but I do ask that if I'm in the middle
22 of a question or if I have a pending
23 question, that you just let me finish that
24 before the break.  You don't need to give me
25 a reason why, that's totally fine.

12

1              R. DICKINSON

2              Is that understood?

3       A.    Thank you for that, Mr. Benson.

4   Yes, it's understood.

5       Q.    All right.  If during the

6   deposition, you remember something that

7   changes a previous answer, please -- so you

8   can correct your prior answer.

9              Also, you may hear objections to

10  certain questions, which is fine.  In the

11  event that that happens, you should still do

12  the best that you can to answer my question.

13  If you are instructed not to answer, it's up

14  to you to take that advice of counsel.

15             And, again, just to reorient you,

16  just because we are taking a remote

17  deposition, what we'll do is I'll call out

18  documents, for example, tab 1, and the doc

19  tech will put the document on the screen as

20  we went through earlier.

21             THE COURT REPORTER:  Excuse me,

22      whoever is not speaking, please mute

23      yourself.  Thank you.

24             I muted them.

25      Q.    Mr. Dickinson, if I say LTL I or

13

1          R. DICKINSON

2    LTL's first bankruptcy, can we agree that I'm

3    referring to the bankruptcy filed on

4    October 14, 2021?

5          A.    Yes.

6          Q.    And if I say LTL II or LTL second

7    bankruptcy, can we agree that I'm referring

8    to the LTL's bankruptcy filed on April 4,

9    2023?

10         A.    Yes.

11         Q.    Great.  Mr. Dickinson, where are

12   you located right now?

13         A.    I'm in New Brunswick, New Jersey.

14         Q.    Okay.  Is there anyone else in the

15   room with you?

16         A.    No.

17         Q.    I take it you are at your office?

18         A.    I am.

19         Q.    Okay.  So I assume you have other

20   materials in the room with you, your

21   computer, the mouse, notepads or notes, and

22   things like that?

23         A.    That is correct.

24         Q.    Do you have any other documents in

25   the room with you right now or at your ready?

Case 23-12825-MBK    Doc 280-6    Filed 04/28/23    Entered 04/28/23 10:02:09    Desc
Exhibit 4 to Exhibit 3 Declaration of Page 16 of 20

136

1              R. DICKINSON

2    So...

3         Q.    Sir, could you identify any

4    financial consequence to LTL from terminating

5    the 2021 Funding Agreement?

6         A.    I'm going to defer to Mr. Kim and

7    the legal team for that answer.

8         Q.    So you, personally, cannot

9    identify any financial consequence to LTL

10   from terminating the 2021 Funding Agreement,

11   true?

12              MR. JONES:  Object as asked and

13         answered.

14         A.    No.

15         Q.    No, you cannot?

16         A.    I already answered that question.

17         Q.    Sir, I just don't want to have a

18   double negative.  You said no.  And I was

19   just trying -- so we're going to have to do

20   that again.

21              Mr. Dickinson, can you,

22   personally, identify any financial

23   consequence to LTL from terminating the 2021

24   Funding Agreement, yes or no?

25         A.    No, I cannot.

151



1                    R. DICKINSON

2    ████████████████████.

3         ████████████████████████

4    ████████████████████.

5    BY MR. BLOCK:

6         Q.   ████████████████████

7              ████████████████████

8    ████████████████████████████████

9    ████████████████████████

10   ████████████████████████████

11   ████████████████████████████████

12       ████████████████████████████

13   ████████████████████████████████

14   ████████████████████████████████

15   ████████████████████████████████ —

16   ████████████

17       Q.   Okay.  No businessperson at JJCI

18   or J&J ever told you as a businessperson that

19   the 2021 Funding Agreement was void or

20   voidable, correct?

21       A.   That is correct.

22       Q.   No businessperson at J&J or JJCI

23   ever told you that they thought the 2021

24   Funding Agreement was unenforceable, correct?

25              MR. JONES:  Are you defining

Case 23-12825-MBK   Doc 280-6   Filed 04/28/23   Entered 04/28/23 10:08:09   Desc
Exhibit 4 to Exhibit 3 Declaration of Page 18 of 20

152

```
 1                  R. DICKINSON

 2        "businesspersons" other than lawyers?

 3             MR. BLOCK:  Let's have the

 4        question read back.

 5             Yes, of course.

 6             MR. JONES:  All right.  There

 7        are business lawyers who are

 8        credentialed with a JD, Mr. Block.

 9             MR. BLOCK:  Let's just have the

10        question read back so we can get a

11        clean answer.

12             Actually, let me it ask again.

13        I think it will be quicker.

14             Sorry, Madam reporter.

15   BY MR. BLOCK:

16        Q.    Sir, can you hear me okay?

17        A.    I can.

18        Q.    Okay.  Mr. Dickinson, no

19   businessperson at J&J or JJCI ever told you

20   that they believed that the 2021 Funding

21   Agreement was unenforceable, correct?

22        A.    Correct.

23             MR. JONES:  Object -- you may

24        share that which is not a privileged

25        communication with counsel, if there
```

162

1                    R. DICKINSON

2    its liabilities on April 3, 2023?

3         A.    Mr. Ruckdeschel, with all due

4    respect, I already answered that question.

5         Q.    You didn't, sir.  You said --

6         A.    I did answer that question.  I

7    just -- I referred you to the document that

8    you make your own conclusion, you know, from

9    the document that was within the -- imbedded

10   in the presentation and in our MOR filings.

11        Q.    On April 3 of 2023, was LPL able

12   to meet its liabilities as they came due?

13        A.    Yes.

14        Q.    All right.  On April 4, after the

15   restructuring, was LTL able to meet its

16   liabilities as they came due?

17        A.    Yes.

18        Q.    All right.  Now, sir, with respect

19   to the restructuring -- I'm sorry, strike

20   that question.

21              With respect to the dismissal of

22   the first bankruptcy, after the dismissal

23   order was entered on January 30th, I believe,

24   of 2023, did LTL perform any evaluation as to

25   how much money it would take to fund a return

Case 23-12825-MBK    Doc 280-6    Filed 04/28/23    Entered 04/28/23 10:02:09    Desc
Exhibit 4 to Exhibit 3 Declaration of Page 20 of 20

163

```
 1                  R. DICKINSON

 2   to litigating talc claims in the tort system

 3   over the following 12 months?

 4        A.    I didn't see any written

 5   estimation or nor do I know of any.

 6        Q.    All right.  And would that -- that

 7   would be the same with respect to if I

 8   expanded that period over the next -- did

 9   LTL, after the January 30 dismissal order

10   from the Third Circuit, did LTL perform any

11   evaluation of how much cash flow it would

12   require to manage its talc liabilities in the

13   tort system over the next three years?

14        A.    I didn't see anything in writing,

15   nor did I do it.

16        Q.    All right.  And you are not aware

17   of any evaluation that was performed -- you,

18   the CFO of LTL, are not aware of any

19   evaluation that was performed to ascertain

20   what the expected cash flow demands would be

21   of returning these cases to the tort system.

22              Fair?

23        A.    That is fair, Mr. Ruckdeschel.

24              MR. RUCKDESCHEL:  All right.

25        And I have no further questions.
```