| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel to the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>Eric R. Goodman, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>egoodman@brownrudnick.com<br>Seven Times Square<br>New York, NY  10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville,  Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA  02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC  20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br><br>*Proposed Special Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG P.C.**<br>Melanie L. Cyganowski, Esq.<br>Richard G. Haddad, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>David A. Castleman, Esq.<br>mcyganowski@otterbourg.com<br>rhaddad@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>dcastleman@otterbourg.com<br>230 Park Avenue<br>New York, NY  10169<br>Tel: (212) 661-9100<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for Official Committee of Talc Claimants* |

7426890.9

| | |
|---|---|
| In re:<br><br>**LTL MANAGEMENT LLC**,[1]<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |
| **LTL MANAGEMENT LLC**,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT** and **JOHN AND JANE DOES 1-1000**,<br><br>　　　　　　　Defendants. | Adv. Pro. No. 23-01092 (MBK) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS TO DEBTOR'S MOTION FOR AN ORDER (I) SCHEDULING HEARING ON APPROVAL OF DISCLOSURE STATEMENT; (II) ESTABLISHING DISCLOSURE STATEMENT OBJECTION DEADLINE; AND (III) GRANTING RELATED RELIEF [DKT. NO. 240]**

---

[1]　　The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

7426890.9　　　　　　　　　　　　　2

The Official Committee of Talc Claimants (the "**TCC**" or the "**Committee**") in the above-captioned case, of LTL Management, LLC (the "**Debtor**" or "**LTL**"), hereby submits this objection (the "**Objection**")[2] to *Debtor's Motion for an Order (I) Scheduling Hearing on Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief* [Dkt. 240] (the "**Scheduling Motion**").[3]

## PRELIMINARY STATEMENT

1. LTL's bankruptcy is a sham and should be dismissed for lack of good faith, as explained by motions to dismiss already filed by the TCC, the U.S. Trustee, the ad hoc committee of State Attorneys General, the ad hoc committee of mesothelioma claimants and various other cancer victims. LTL is admittedly not insolvent. Nor can it establish financial distress according to the standards established by the Third Circuit. LTL is not eligible for relief from this Court. And this Court, respectfully, has no role to play in determining the proper amount of J&J's talc liability.

2. Yet J&J (through its puppet, the Debtor) continues to ask for this Court's assistance in its illegal efforts to hinder and delay talc claimants. This Court's answer going forward to these requests should be no. The Debtor exists <u>only</u> to protect and serve J&J, first and always, and affording J&J all the benefits of bankruptcy with none of the burdens is not a proper bankruptcy purpose. This case, like the last one, is going to be dismissed, by the Third Circuit, if not by this Court first.

3. Indeed, this Court has already stated that it is "skeptical" LTL will succeed in its reorganization efforts. Preliminary Injunction Order of 4-27-23, No. 23-01092-MBK, Dkt. 94, at

---

[2] Contemporaneously with this objection, the Committee is filing a motion to suspend certain proceedings in this case (other than its motion to dismiss the case and related litigation) (the "**Suspension Motion**").
[3] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Scheduling Motion.

7426890.9

23. The Court stated that LTL "[u]ndoubtedly" faces an "uphill battle." *Id.* LTL's abandonment of the 2021 Funding Agreement was "the potentially 'largest intentional fraudulent transfer in United States history.'" *Id.* This Court opined that the abandonment "certainly appear[ed] to be manufactured" to create financial distress "in direct response to the Third Circuit's ruling." *Id.* at 18. This Court noted that LTL's assertion of increased support from claimants was "speculation" and that "[i]t is uncertain whether these new claims are supportable." *Id.*

4.  Moreover, the Debtor's Plan process is nowhere near ready to begin. <u>Much</u> must be done before this Court could even consider allowing a plan solicitation process to go forward, most notably extensive litigation by the Committee to uncover and correct the Debtor's fraudulent actions to its own detriment at the direction of J&J. Not to mention that no Plan or Disclosure Statement is even on file yet, which puts the cart before the horse and makes the Scheduling Motion premature for that reason alone.

5.  The Debtor's strategy is apparently to rush its plan and then seek to stuff the ballot box by opening voting to individuals who do not have cancers linked to J&J products. LTL seeks to broaden the claimant pool—inflating the voting rolls—by including unfiled, unsubstantiated claims that would ultimately recover no (or only nominal) compensation. The MDL court had limited the scientifically supported claims associated with talc exposure to "epithelial ovarian cancer" cases, rather than "gynecological cancers" or even ovarian cancer generally. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices and Prods. Litig.*, 509 F. Supp. 3d 116, 181 (D.N.J. 2020). Mr. Murdica conceded that he has never heard the MDL judge indicate that "ovarian cancer" includes "other gynecological" cancers. Murdica Dep. Tr. 4-16-23 at 52:11-16. When asked whether he was aware of any written definition of ovarian cancer that encompasses

other gynecological cancers within that term, Mr. Murdica admitted, "I have no idea." *Id.* at 54:14-18.[4]

6. Yet J&J now seeks to expand the definition of "***ovarian*** cancer" to include "***non-ovarian*** gynecological" cancers, which are listed in J&J's Term Sheet as the lowest category of claims and which would be paid through "Quickpay" an "[a]mount to be determined at the sole discretion of the Claims Administrator." (Term Sheet Exhibit A) (emphasis added). The gambit was revealed by a mass email communication sent by a plaintiff firm allied with J&J (i.e., the firm has signed a Plan Support Agreement with J&J) seeking to recruit additional clients: "Many of these claimants have gynecologic cancers ***that are not as convincingly proven by science to be related to talc; as such they will receive lesser compensation***."[5] J&J is seeking to recruit such "gynecological cancer" claimants to vote, stuff the ballot box, and then pay them trivial amounts.

7. In sum, the instant motion is just one more desperate attempt by the Debtor under J&J's ongoing control to enlist this Court in a deliberate and abusive scheme to hinder and defraud creditors. The Committee is encouraged by the Court's comments at the recent hearing on May 3, 2023, to the effect that the Debtor's Plan process will not be permitted to be a "race" against the other relief sought by the Committee. The Committee agrees wholeheartedly and respectfully submits that the relief sought in the Scheduling Motion makes no sense in the context of this case, and should be denied.

---

[4] The *Daubert* briefing in the MDL proceeding focused on ovarian cancer in particular. Plaintiffs' experts specifically limited their opinions to epithelial ovarian cancer, which added strength to their scientific conclusions. J&J did not substantively discuss gynecological cancers more generally, except to assert that talc "does not" cause "vaginal, cervical, [or] endometrial cancer." *Defendants' Memorandum of Law In Support of Motion to Exclude Plaintiffs' Experts' General Causation Opinions*, No. 3:16-md-02738-FLW, Doc. 9736, at 88 (D.N.J.). State-court appellate cases upholding talc claims have similarly addressed ovarian cancer specifically. *E.g., Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 682 (Mo. Ct. App. 2020); *Carl v. Johnson & Johnson*, 464 N.J. Super. 446, 475, 237 A.3d 308, 326 (App. Div. 2020); *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 311, 249 Cal. Rptr. 3d 642 (2019).
[5] See copy of e-mail from smckinley@onderlaw.com to cplacitella@cprlaw.com attached hereto as **Exhibit A** (emphasis added).

## FACTUAL BACKGROUND

8.  On April 19, 2023, the Debtor filed the Scheduling Motion, along with *Debtor's Application for Order Shortening Time* [Dkt. 241] (the "Application to Shorten"). By text Order of this Court, the objection deadline with respect to the Scheduling Motion is May 5, 2023.[6]

9.  By the Scheduling Motion, the Debtor proposes the following key dates and deadlines:

| May 14, 2023 | Debtor files Plan, Disclosure Statement, and Disclosure Statement Motion |
|---|---|
| June 5, 2023 | Deadline for Objections to Disclosure Statement and Disclosure Statement Motion |
| June 15, 2023 | Deadline for Responses in Support of Disclosure Statement and Disclosure Statement Motion |
| June 19, 2023 | Hearing on Disclosure Statement and Disclosure Statement Motion |

## ARGUMENT

10. The Scheduling Motion should be denied in its entirety for several reasons, as follows.

### I. No Hearing Should Be Scheduled on the Debtor's Proposed Disclosure Statement and Solicitation Procedures At This Time, and Certainly Not for June 19, 2023, Because Plan Solicitation is Inappropriate Under the Circumstances

#### A. This Case is Premised on an Actual Fraud, and the Debtor Should Not Be Granted Relief

11. As the Committee has consistently stated since the commencement of this case, this case is premised on a fraud, which cannot stand.

12. The Debtor, equally consistently, continues to double (and triple and quadruple) down on its premise that termination of the 2021 Funding Agreement was proper.

---

[6] The Application to Shorten sought to schedule a hearing with respect to the Scheduling Motion of May 3, 2023. Also, although not requested in the Application to Shorten, the Scheduling Motion references a proposed objection deadline of April 25, 2023 with respect to the Scheduling Motion. On April 20, 2023, the Committee filed an objection to the Application to Shorten. *See* Dkt. 254. On April 21, 2023, the Court entered a text Order setting the objection deadline of May 5, 2023 with respect to the Scheduling Motion, and scheduling a hearing on the Scheduling Motion on May 16, 2023 at 11:30 am, assuming a plan and disclosure statement is filed before such date.

13. The Debtor argues that the 2021 Funding Agreement was at risk of being "void or voidable" based on the doctrine of frustration of purpose, justifying its termination. *See* Letter to the Court from Greg Gordon, dated April 19, 2023 [Dkt. No. 63], pp. 2-3.[7]

14. The Debtor's position is based on a ridiculously transparent and pretextual contrivance concocted by its lawyers and is plainly untenable based on established law, as set forth in the Committee's motion to dismiss this case [Dkt. 286] and petition for writ of mandamus filed May 1, 2023 (to which the Third Circuit has now ordered a response within five days).

15. Meanwhile, the Debtor continues to obfuscate and hide the facts surrounding the termination of the 2021 Funding Agreement. The Debtor, by its Chief Legal Officer John K. Kim ("Kim"), asserts that there were "discussions" with J&J about whether the 2021 Funding Agreement was voidable.[8] All discussions purportedly were through counsel.[9] Kim testified that at some indeterminate point in time a "consensus" was reached between LTL and J&J "through their lawyers" to void the 2021 Funding Agreement.[10] Yet Erik Haas, J&J's worldwide head of litigation, testified, "I do not recall having conversations about the agreement being void or voidable."[11]

16. Kim's lawyers obstructed the Committee from learning the truth (for now) by instructing him not to answer questions about J&J's views on the 2021 Funding Agreement because of a "common interest privilege."[12] This despite the fact that the common interest privilege is plainly inapplicable to discussions regarding termination of the 2021 Funding

---

[7] The Debtor also argues, puzzlingly, that termination of the 2021 Funding Agreement (and replacement with alternative agreements) resulted in financial distress (but not insolvency) of the Debtor while somehow at the same time not affecting the value of the agreements to the Debtor. *Id*. at 1-2.
[8] Dep. Tr. of John Kim, April 14, 2023 ("**Kim Dep. Tr.**") at 188:19-190:3, 190:12-20, 191:5-8.
[9] *Id.* at 207:17-23.
[10] *Id*. at 189:13-190:3, 191:5-8.
[11] Haas Dep. Tr. 172:22-24.
[12] Kim Dep. Tr. at 83:14-25.

Agreement between the Debtor, which at the time of such discussions was still in bankruptcy and had fiduciary duties to its creditors to preserve the 2021 Funding Agreement, and J&J, the primary obligor under the agreement and, thus, the main beneficiary of such termination.

17. For his part, Kim testified that shortly after Third Circuit decision on January 30, 2023, he thought that the 2021 Funding Agreement might be "void or voidable."[13] However, despite the Committee's requests, the Debtor produced no documentary evidence whatsoever pertaining to such thought, other than Board minutes in March 2023 (which simply discuss plans to replace the 2021 Funding Agreement, and no underlying rationale). And several public statements by the Debtor (including pleadings in this Court and the Third Circuit) throughout February and March 2023 referenced the continuing effectiveness of the 2021 Funding Agreement and made no mention of even the potential for termination based on voidness or voidability.[14] In sum, the Debtor's position runs contrary to numerous public statements, and is supported by zero documentary evidence.

18. The Debtor cannot be permitted to plow ahead with an expedited Plan solicitation process based on a patently manufactured bankruptcy.

### B. The Debtor Has No Legitimate Need to Rush Toward Plan Solicitation

19. There is no reason provided in the Scheduling Motion (and none is apparent otherwise) as to why the Debtor needs to schedule a hearing now on the Disclosure Statement and Disclosure Statement Motion, before the relevant pleadings have even been filed. Indeed the Committee is unaware of any precedent for the Debtor's proposal to schedule a hearing on the Disclosure Statement before it has been filed, and the Scheduling Motion cites no such precedent.

---

[13] *Id*. at 74:23-75:10, 76:3-13; 77:2-18, 82:11-23.
[14] *See, e.g.*, LTL Motion to Stay Mandate, Third Circuit No. 22-2003, Doc. 173, at 3, 19.

20. Conveniently for the Debtor, after having wasted 18 months languishing without ever having filed a plan in chapter 11 during its prior case, it is well within its exclusivity period for filing a Plan in this case. Nothing is preventing the Debtor (from filing its proposed Plan, Disclosure Statement, and Disclosure Statement Motion on the docket and scheduling a hearing under applicable rules.

21. There is no emergency, and no basis for expedited relief with regard to Debtor's Plan. When it is ready to proceed it should do so (assuming the case remains before this Court), and the Committee will oppose on the grounds that, having filed the case in bad faith, no Plan necessarily can be filed in good faith.

22. The Debtor seems to hint at a justification for the relief sought (in paragraph 5 of the Scheduling Motion, in the Background section), where it states that it "has reached agreement on the material terms of a plan of reorganization with thousands of talc claimants" which "agreement has been memorialized in a series of plan support agreements."

23. But even this purported justification is at odds with the facts. In reality, numerous material terms of the Plan remain unresolved, and indeed at this stage it is literally impossible for all talc claimants to know (even within broad ranges) how much they could expect to receive under the Plan.

24. There is simply no reason why the Debtor cannot follow regular order, unless the purpose is an illegitimate one to outrun accountability for its fraud.

### C. Solicitation of Plan Voting Would Be Prejudicial to the Rights of Opposing Creditors by Pre-empting Available Litigation Options

25. The Committee intends to aggressively pursue all options available to it to protect talc claimant rights in light of the Debtor's brazen actions, in this Court and elsewhere as needed.

The instant relief sought by the Debtor would improperly prejudice the ability of the Committee to do so.

26. Simply put, this case is not even close to ready for the Plan solicitation stage given all the unresolved issues that need to be litigated beforehand. A nonexclusive list of Committee litigation that is expected to be consummated or brought in the near future includes:

- Motion to dismiss the chapter 11 case;
- Derivative standing action to pursue Debtor claims, including, among other things, fraudulent conveyance actions to avoid termination of the 2021 Funding Agreement;
- Appellate review of preliminary injunction, including petition for writ of mandamus filed May 1, 2023, and motion for certification of direct appeal to Third Circuit set by this Court for hearing on May 9, 2023;
- Motions to compel disclosure of claimant information and funding arrangements, among other things; and
- Discovery related to the foregoing.

27. Approval of the Debtor's requested relief may foreclose or impair much of the Committee's expected work on behalf of talc claimants, by short-circuiting judicial inquiry into these matters and precluding the relief sought by the Committee (which of course is exactly the point from the Debtor's perspective).

28. This is not a mere matter of scheduling or judicial management of the docket. The Committee's litigation cannot proceed in parallel to a Plan solicitation process without severe prejudice to talc claimant rights.

29. Among several other reasons, if the Plan solicitation process is permitted to proceed, the Debtor will, without question, use every available tactic to delay and obstruct the Committee's work, in a race to obtain Plan confirmation prior to its day of reckoning. There can be no reasonable doubt that this is true, based on the Debtor's incentives and prior conduct.

30. Moreover, if the Committee is right (which it is) that an actual fraud occurred here, the Debtor's Plan (in whatever form it is eventually filed) is unconfirmable. (The Plan necessarily will be unconfirmable because it will be filed in bad faith for other reasons, as well.) It therefore will not be possible to salvage the Debtor's Plan with language tweaks, and the entire Plan solicitation process will need to be abandoned or re-started from scratch.

31. And in the meantime, the prospect of Committee litigation while the Plan is being solicited will be hopelessly confusing to creditors.

32. In sum the Plan solicitation process simply makes no sense under the circumstances.[15]

### D. Plan Solicitation Will Be Impossible Without Vetting of Claims

33. Putting aside the Debtor's fraud, the Plan process also is not ready to proceed for the independent reason that claimant information is sorely, and fatally, lacking.

34. As the Court is aware, confirmation of the Plan will require support of 75% of talc claimants in number, and two-thirds in amount. *See* 11 U.S.C. §§ 524(g)(2)(B)(ii)(IV)(bb) and 1126(c); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 201 n4 (3d Cir. 2004), as amended (Feb. 23, 2005) ("*Combustion Eng'g*").

35. Here, the Committee submits that what constitutes a claim for voting purposes is likely to be a major issue in this case. A number of circumstances suggest that the Debtor (really J&J) may have encouraged the assertion of claims by firms supporting its Plan that are improper. For example, the Committee strongly suspects that many of the claims asserted by firms who have suddenly surfaced to support the Plan lack a medical diagnosis of a disease that has been found to

---

[15] For similar reasons, the Committee respectfully submits that the Suspension Motion should be granted. However, to the extent that Plan solicitation is permitted, the Committee intends to seek, on an expedited basis, termination of exclusivity and authority to file and solicit a competing plan.

7426890.9                                         11

be causally linked to J&J's products based on evidence admissible under *Daubert* (as previously determined by the MDL court), given the relatively small number of nationwide diagnoses of such diseases and the dramatic purported increase in claims since 2021.

36. The Committee intends to aggressively investigate these issues, which are critical to the fairness of Plan voting (when and if it becomes appropriate to proceed). The investigation should not be rushed, and may require formal proceedings, given the Committee's understanding that several of the law firms supporting the Plan do not themselves have underlying claims data.

37. For all these reasons, a proper Plan solicitation process is several months away from being ready to proceed, at a bare minimum.

### E. Any Plan Filed by the Debtor in this Case Cannot Satisfy the Requirement That it be Proposed in Good Faith

38. Section 1129(a)(3) of the Bankruptcy Code requires that, in order for a plan to be confirmed, it must have been proposed in good faith and not by any means forbidden by law.

39. Under the circumstances of this case, where a brazen fraud occurred as a necessary precursor to the development of the Plan and the filing of this case, and such filing lacks a good faith basis given the lack of financial distress (despite an attempt to manufacture distress), any Plan that is filed in the near future by the Debtor must necessarily fail to satisfy such the good faith standard under section 1129(a)(3) of the Bankruptcy Code.

40. Accordingly, solicitation of votes on such a Plan should not be permitted to proceed.

### F. Any Plan That Channels Direct (Non-Derivative) Claims Against J&J Arising From its Own Wrongful Conduct to a Trust Will Be Unconfirmable

41. Assuming that the Debtor's Plan will propose channeling of direct claims against J&J arising from its own wrongful conduct to a trust, such a Plan is patently unconfirmable under controlling Third Circuit law, making solicitation of votes on the Plan a non-starter.

42. The Third Circuit Court of Appeals has already definitively ruled that channeling of claims against third parties is only available to the extent permitted under section 524(g) of the Bankruptcy Code, and is simply unavailable under section 105(a) of the Bankruptcy Code. *See Combustion Eng'g*, 391 F.3d at 236-37 ("Because § 524(g) expressly contemplates the inclusion of third parties' liability within the scope of a channeling injunction—and sets out the specific requirements that must be met in order to permit inclusion —the general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g).").

43. And, section 524(g) of the Bankruptcy Code is clear that channeling injunctions may only bar claims against identifiable third parties for certain alleged liabilities for a debtor's conduct or obligations, to the extent that such alleged third-party liability "arises by reason of" four specified categories. 11 U.S.C. § 524(g)(4)(A)(ii); *see, e.g., Cont'l Cas. Co. v. Carr (In re W.R. Grace & Co.)*, 13 F.4th 279, 290 (3d Cir. 2022) (finding channeling injunction unavailable with respect to insurer, even though insurance relationship is one of four specified categories under section 524(g)(4)(A)(ii), because insurer's liability did not arise "by reason of" such insurance relationship).

44. Here, J&J bears its own direct liabilities to talc claimants based on its own wrongful conduct, not based on J&J's ownership interest in the Debtor or any involvement in the Debtor's management (or any of the other bases for liability identified in section 524(g)(4)(A)(ii) of the Bankruptcy Code).[16] These separate, direct liabilities of J&J cannot be channeled to a trust in this

---

[16] J&J also may (and likely does) have, in addition to its own separate direct liabilities, significant derivative talc liabilities that may arise by reason of one or more of the categories set forth in section 524(g)(4)(A)(ii) of the Bankruptcy Code.

7426890.9                                    13

case. Any Plan that purports to do so plainly violates binding precedent in this Court and must not be permitted to advance to the solicitation stage.[17]

## II. The Court Should Not Shorten the Applicable Time Periods Required Under Bankruptcy Rules 2002(b) and 3017(a)

45. Finally, for all the reasons set forth above, the Debtor has shown no cause why the Disclosure Statement Objection Deadline should be established as June 5, 2023 (shortened to 21 days assuming the relevant documents are filed by May 14, 2023). The Debtor has provided no support or explanation for why expedited relief is necessary, aside from the purported reason that it will assist a prompt resolution of this case, which is fanciful as explained above.

46. There is simply no reason why the Plan solicitation process should go forward at this time, and certainly not on any expedited track. And expedited relief would prejudice creditors further by adding additional time pressure to the distraction of challenging Debtor's Plan process.

47. The Debtor's request is inappropriate and should be denied.

---

[17] The same conclusion may apply with respect to other third parties that the Debtor might seek to including in a channeling injunction, such as, for example, the Debtor's retailers, none of which likely fall within any of the specified categories set forth in section 524(g)(4)(A)(ii) of the Bankruptcy Code. *See In re W.R. Grace & Co.*, 475 B.R. 34, 99-100 (D. Del. 2012) (channeling injunction unavailable where third party liability arose under contractual indemnity, not any of four specified categories).

## **CONCLUSION**

48. For all the reasons set forth herein, the Committee respectfully requests that the relief sought in the Scheduling Motion be denied in its entirety, and that the Court grant such further relief as it deems just and proper.

Respectfully submitted,

**GENOVA BURNS LLC**

Dated: May 4, 2023

By: */s/ Daniel M. Stolz*
    Daniel M. Stolz, Esq.
    Donald W. Clarke, Esq.
    110 Allen Road, Suite 304
    Basking Ridge, NJ 07920
    Tel: 973-467-2700
    Fax: 973-467-8126
    Email:   dstolz@genovaburns.com
                dclarke@genovaburns.com

*Proposed Local Counsel to the Official Committee of Talc Claimants*