| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Michael S. Winograd, Esq.<br>Susan Sieger-Grimm, Esq.<br>Kenneth J. Aulet, Esq.<br>dmolton@brownrudnick.com<br>mwinograd@brownrudnick.com<br>ssieger-grimm@brownrudnick.com<br>kaulet@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br>And-<br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Jennifer S. Feeney, Esq.<br>Michael R. Maizel, Esq.<br>mcyganowski@otterbourg.com<br>jfeeney@otterbourg.com<br>mmaizel@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| In re:<br><br>LTL MANAGEMENT, LLC,[1]<br><br>                 Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

# THE OFFICIAL COMMITTEE OF TALC CLAIMANTS'S CROSS-MOTION FOR ENTRY OF AN ORDER (I) TEMPORARILY SUSPENDING THE DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. §§ 105 AND 305, AND (II) GRANTING RELATED RELIEF

The Official Committee of Talc Claimants (the "TCC" or the "Committee") in the above-captioned case, of LTL Management, LLC (the "Debtor" or "LTL"), hereby submits this cross-motion (the "Cross-Motion") to *Debtor's Motion for an Order (I) Scheduling Hearing on Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief* [Dkt. 240] (the "Scheduling Motion") for entry of an Order: (a) suspending the chapter 11 case in its entirety other than: (i) permitting the prosecution of the TCC's *Motion to Dismiss* [Dkt. No. 286] to a final, non-appealable order; (ii) permitting the prosecution of the TCC's forthcoming motion for derivative standing to file a complaint directed at bringing certain estate causes of action and, if granted by the Court, permitting prosecution of that complaint; (iii) allowing for the continued compliance with the Court's direction to reevaluate the preliminary injunction entered in the adversary proceeding styled as *LTL Management LLC v. Those Parties Listed on Appendix A to the Complaint et al.*, Adv. Pro. No. 23-010902 (MBK); and (iv) allowing for the continued compliance with the "first day orders" and certain other administrative, reporting, and other matters, including for the avoidance of doubt, all matters related to the retention and reimbursement of estate and statutory committee professionals, to the extent necessary (hereinafter, the "Suspension"); and (b) granting related relief.

## PRELIMINARY STATEMENT

1. The TCC incorporates in its entirety the statements and arguments set forth in its contemporaneously filed *Objection to Debtor's Motion for an Order (I) Scheduling Hearing on Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline;*

2

*and (III) Granting Related Relief [Dkt. No. 240]* (the "DS Hearing Objection") as if set forth herein.

2. Rather than repeat the arguments contained in the preliminary statement in the DS Hearing Objection, the TCC simply reiterates that its own Motion to Dismiss this bankruptcy case, in addition to the motions to dismiss of others, is on file. Those Motions to Dismiss will be determinative over whether J&J – through its made-for-purpose shell, LTL – can access Chapter 11 at all. The TCC submits that LTL cannot, and that the movants' position will be upheld by the appellate courts, if not this Court. Considering that outcome determinative litigation, all substantive proceedings in this case (subject to the limited carve-outs in the proposed order) should be suspended and/or stayed, pending a final determination of the pending motions to dismiss, pursuant to this Court's inherent case management authority for the purposes of efficiency and equity.

3. The Debtor's rush to get to their proposed plan on file **is only an illusion of progress**. Ultimately, it is a road to nowhere. The fastest way to get talc claimants an opportunity either to resolve their claims consensually or pursue their remedies in court is to adopt the approach of the TCC, the United States Trustee, the Ad Hoc Committee of States Holding Consumer Protection Claims, the Ad Hoc Committee of Mesothelioma Claimants, and various other cancer victims and dismiss this Case.

**RELIEF REQUESTED**

4. By this Motion, the TCC seeks entry of an order, substantially in the form submitted herewith (the "Proposed Order"): (a) suspending the chapter 11 case in its entirety other than: (i) permitting the prosecution of the TCC's *Motion to Dismiss* [Dkt. No. 286], and other movants' motions to dismiss [Dkt. Nos. 333, 335, 346, 350, 352, and 358], to a final, non-appealable order;

3

(ii) permitting the prosecution of the TCC's forthcoming motion for derivative standing to file a complaint directed at bringing certain estate causes of action and, if granted by the Court, permitting prosecution of that complaint; (iii) continued compliance with the Court's direction to reevaluate the preliminary injunction entered in the adversary proceeding styled as *LTL Management LLC v. Those Parties Listed on Appendix A to the Complaint et al.*, Adv. Pro. No. 23-010902 (MBK); and (iv) the continued compliance with the "first day orders" and certain other administrative, reporting, and other matters, including for the avoidance of doubt, all matters related to the retention and reimbursement of estate and statutory committee professionals, to the extent necessary (hereinafter, the "Suspension"); and (b) granting related relief.

## JURISDICTION AND VENUE

5.  The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.  The bases for the relief requested herein are sections 105(a) and 305(a)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rule 1017, and the Court's inherent powers to control its docket.

4

**BACKGROUND**

7.  On April 19, 2023, the Debtor filed the Scheduling Motion, along with *Debtor's Application for Order Shortening Time* [Dkt. 241] (the "Application to Shorten"). By text Order of this Court, the objection deadline with respect to the Scheduling Motion is May 5, 2023.[2]

8.  By the Scheduling Motion, the Debtor proposes the following key dates and deadlines:

| | |
|---|---|
| May 14, 2023 | Debtor files Plan, Disclosure Statement, and Disclosure Statement Motion |
| June 5, 2023 | Deadline for Objections to Disclosure Statement and Disclosure Statement Motion |
| June 15, 2023 | Deadline for Responses in Support of Disclosure Statement and Disclosure Statement Motion |
| June 19, 2023 | Hearing on Disclosure Statement and Disclosure Statement Motion |

9.  On April 24, 2023, the TCC filed its *Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC* [Dkt.No. 286] (the "Motion to Dismiss").

10. Substantially contemporaneously with this Cross-Motion, the TCC filed its DS Hearing Objection.

**BASIS FOR RELIEF**

**I.    The Suspension Should Be Approved Under Bankruptcy Code Section 305 Because it is in the Best Interests of the Debtor and its Creditors.**

11. Bankruptcy Code section 305(a)(1) permits the Court, "after notice and a hearing," to "suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors

---

[2] The Application to Shorten sought to schedule a hearing with respect to the Scheduling Motion of May 3, 2023. Also, although not requested in the Application to Shorten, the Scheduling Motion references a proposed objection deadline of April 25, 2023 with respect to the Scheduling Motion. On April 20, 2023, the Committee filed an objection to the Application to Shorten. *See* Dkt. 254. On April 21, 2023, the Court entered a text Order setting the objection deadline of May 5, 2023 with respect to the Scheduling Motion, and scheduling a hearing on the Scheduling Motion on May 16, 2023 at 11:30 am, assuming a plan and disclosure statement is filed before such date.

5

and the debtor would be better served by such dismissal or suspension." Suspension is a remedy that is committed to the discretion of the bankruptcy court and determined based upon the totality of the circumstances. *In re North Shore Mainland Services, Inc.*, 547 B.R. 192, 203 (Bankr. D. Del. 2015) (internal citations omitted). Courts considering suspension, and abstention under section 305(a), primarily weigh *inter alia* the "interests of both the debtor and the creditors," consider "economy and efficiency" as key considerations. *In re Bus. Info. Co., Inc.*, 81 B.R. 382, 387 (Bankr. W.D. Pa. 1988). While courts in the Third Circuit "consider [a group of] non-exclusive factors[,]"[3] they do so in order to "'to gauge the overall best interests' of the debtor and creditors[.]" *Northshore Mainland Services, Inc.*, 537 B.R. at 203-04 (internal citations omitted).

12. "[W]hile all factors are considered, not all are given equal weight in every case." *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 465 (Bankr. S.D.N.Y. 2008); *see also In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115, 146 (Bankr. N.D. Tex. 2018) ("not all [factors] are given equal weight in every case and the court should not conduct a strict balancing") (internal citation omitted). Critically, "[a]s noted in the statute, the overriding considerations are, of course, the interests of creditors and the debtor[s]." *In re Gabriel Techs. Corp.*, Case No. 13-30341, 2013 WL 5550391, at * 4-5 (Bankr. N.D. Cal. Oct. 7, 2013). If there is disagreement over whether suspension serves the best interests of creditors and the debtor, the "court does not count votes to decide the issue but weighs the competing interests of the various creditor constituencies and the Debtor, and then appl[ies] the applicable factors to the peculiar circumstances of an[] individual case, exerc[ing] its sound discretion to make a decision for or against suspension." *Id.* at *5.

---

[3] The traditional non-exclusive factors considered in the Third Circuit are: (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought. *Northshore Mainland Services, Inc.*, 537 B.R. at 203-04 (internal citations omitted).

6

13. This Court has wide discretion to fashion appropriate relief to this fabricated bankruptcy case. *See In re Picacho Hills Util. Co., Inc.*, Case No. 13-10742 TL7, 2017 WL 1067754, *6 (Bankr. D.N.M. Mar. 21, 2017) ("Based on the case law and the purpose of § 305, . . . the contours of suspension may be fashioned by a bankruptcy court to fit the needs of the case."). Suspension is not limited to a particular fact pattern and its flexibility suits it perfectly for a serial bankruptcy case such as this, where outright dismissal based on bad faith is being sought, and the bankruptcy filing itself bears all the hallmarks of a device to extract improper leverage. *See Monitor Single Lift*, 281 B.R. at 463) (discussing the prototypical situation (mirrored here by the Debtor) referenced in the legislative history involving involuntary cases commenced by recalcitrant creditors to gain leverage in out-of-court negotiations, but noting that "nowhere in the text of § 305(a)(1) or in its legislative history did Congress specifically limit the basis for a § 305(a)(1) motion" to such cases and that "[t]he legislative history's reference to this fact-pattern only as an 'example' of a basis for abstaining under § 305(a)(1) validates this broader view of § 305(a)(1)'s application.").

14. Where a key case determinative matter must be decided, suspension under section 305(a)(1) is appropriate. For example, in *In re Duratech Industries, Inc.*, 241 B.R. 291 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999), the bankruptcy court *sua sponte* ordered suspension of bankruptcy proceedings under section 305(a)(1) pending the outcome of a district court proceeding that would determine the debtor's ability to confirm a plan of reorganization. The bankruptcy court observed that "[t]here is no legitimate point to be gained in having this Court engage in more active administration of this case pending the outcome of litigation before the District Court. In effect, all the 'action' is going on before the District Court, and until those matters

7

are decided, there can be no meaningfully informed role for this Court to play in moving the chapter 11 case along to confirmation, dismissal, or conversion." *Id.* at 299-300.

15. Here, the TCC and other movants have already moved to dismiss this bankruptcy case, and believes that there are more than credible bases for this case to be dismissed as a bad faith filing. *See In re LTL Management, LLC*, [Dkt. No. 286] Case No. 23-12825 (Bankr. D.N.J. Apr. 26, 2023); [Dkt. No. 333] (Suzanne Ratcliff); [Dkt. No. 335] (Ad Hoc Group of Mesothelioma Claimants; [Dkt. No. 346 (Paul Crouch); [Dkt. No. 350] (Ad Hoc Committee of States Holding Consumer Protection Claims); [Dkt. No. 352] (Simon Greenstone Panatier, PC on behalf of law firms representing over 1,000 Mesothelioma Claimants); [Dkt. No. 358] (Maune Raichle Hartley French & Mudd, LLC on behalf of their claimants). Continuing towards a debtor proposed Ch. 11 plan while the fundamental "dismissal" decision is extant or being pursued in the appellate courts is folly and prejudicial to creditors, especially where the broad contours of the proposed plan already identified by the Debtor and its supporters would be unlawful in this Circuit.

16. As with the Debtor's predecessor bankruptcy filing, any decision by this Court on the pending motions will be vigorously pursued on appeal. Suspension of the case during the pendency of an appeal on case critical issues is appropriate and efficient. For example, in *In re Gabriel Techs. Corp.*, 2013 WL 5550391, at *6, the bankruptcy court suspended proceedings under section 305(a)(1) pending the outcome of certain appellate proceedings that it deemed critical to the ultimate disposition of the chapter 11 cases. There, the court found that "[t]o deal with confirmation issues would also involve more briefing and arguments, and seems premature and unnecessary at present since the outcome of the Appeals is so critical to the ultimate disposition of these cases, whether they are prosecuted by Debtors as Chapter 11 debtors in possession, or by a trustee either in Chapter 7 or Chapter 11." *Id.* at *3. That case involved an appeal that if resolved

8

in favor of the debtors' counterparties would result in conversion of the case to Ch. 7 with no expectation of meaningful recovery.

17.  The situation here is even more striking. This Court has already stated that it is "skeptical" LTL will succeed in its reorganization efforts. Preliminary Injunction Order of 4-27-23, No. 23-01092-MBK, Dkt. 94, at 23. The Court stated that LTL "[u]ndoubtedly" faces an "uphill battle." *Id.* LTL's abandonment of the 2021 Funding Agreement was "the potentially 'largest intentional fraudulent transfer in United States history.'" *Id.* This Court opined that the abandonment "certainly appear[ed] to be manufactured" to create financial distress "in direct response to the Third Circuit's ruling." *Id.* at 18. This Court noted that LTL's assertion of increased support from claimants was "speculation" and that "[i]t is uncertain whether these new claims are supportable." *Id.* This Court has already acknowledged the tenuous grounds this case is based on, why not resolve the outcome-determinative issues first? Resolution of the dismissal issues on a final basis will either permit this case to move forward into the maelstrom of confirmation related litigation or cast the Debtor and J&J back out of the bankruptcy system where they belong. A Chapter 11 plan cannot exist (and this court has no jurisdiction to consider it) if the Debtor has no good faith basis to be in bankruptcy court in the first place.

18.  The circumstances of this case meet the applicable factors considered by courts in determining that section 305(a) suspension is appropriate. ***First***, the Suspension will significantly aid in the economy and efficiency of administration by minimizing unnecessary judicial involvement, costly briefing, disclosure statement, voting, and confirmation-related discovery, and substantive hearings. All parties will be focused on resolving the critical issue of whether or not this case can proceed in Chapter 11 at all. As noted by the *Gabriel Technologies* court, "consideration of debtor's [sic] Plan and Disclosure Statement in the context of a costly and

9

uncertain confirmation battle makes no sense at this time. As noted above, if the Appeals are adverse to the Debtors, then all of that unexpended and expensive time and effort is avoided and efficiency will prevail." 2013 WL 5550391, at *3.

19.     *Second*, there are other forums – state and federal civil courts – to protect the interests of the Debtor, its creditors and J&J. Until this case is dismissed, the Debtor is still afforded the benefit of Bankruptcy Code section 362(a)'s automatic stay, and solvent non-debtors are permitted to defend against claims brought against them in other state and federal court. *See In re Compania de Alimentos Fargo*, 376 B.R. 427, 440 (Bankr. S.D.N.Y. 2007) (implying in dicta that a section 305 suspension may not terminate section 362's automatic stay). Critically, talc claimants are able to advance their cases, stayed for over 18 months already, in those forums and claimants who have yet to file lawsuits (should they believe they have viable lawsuits in the tort system) will be able to advance those suits.

20.     There is also precedent for courts to tailor a section 305 suspension as the TCC proposes in the Suspension. For example, in *Gabriel Technologies*, the court held that, notwithstanding the suspension of proceedings, certain activities would continue, including an already-scheduled hearing, any request for employment of professionals under section 327 or 328 of the Bankruptcy Code, and administrative responsibilities of filing monthly operating reports and paying United States Trustee fees. 2013 WL 5550391 at *6; *see also Duratech*, 241 B.R. at 300 (abstention "in the meanwhile does not mean that the debtor in possession is relieved of its duty to continue to file monthly operating statements with this Court and the United States Trustee, nor of its duty to comply with all of the other applicable provisions of the United States Trustee's operating guidelines" and that if the United State Trustee "becomes reasonably apprehensive that the [debtor] is not fulfilling its duties under the guidelines or is incurring material and persisting

operating losses, it may simultaneously move to modify or vacate [the suspension order] and to file for whatever relief it deems appropriate under the Bankruptcy Code . . ."); *In re Modell's Sporting Goods Inc.*, Case No. 20-14179 (Bankr. D.N.J. Mar. 11, 2020) (under the suspension order, debtors were able to continue paying certain expenses, such as rent and insurance, and work through lease rejection procedures, and the bankruptcy court retained jurisdiction to hear certain matters that arose during the suspension period). Courts have also acknowledged the possibility of "some unforeseen circumstance that might require it to attend to something such as permission to file a late claim, a motion for relief from stay by someone not previously involved in the case, or some similar routine matter" and that "[i]f and when such arise, the court will decide then, on a case by case basis, whether to consider them." *Gabriel Techs.*, 2013 WL 5550391 at *6.

21.  Here, there are certain matters that must be carved-out from suspension because, unlike prosecuting a Chapter 11 plan, they fit hand-in-glove with the movants' prosecution of dismissal of this case as filed in bad faith. Specifically, the TCC should be permitted to proceed with the filing of a standing motion and complaint in order to preserve and prosecute estate causes of action against individuals and other entities related to corporate transactions and machinations preceding the petition. This Court has already recognized that the Debtor's voluntary evisceration and replacement of the 2021 Funding Agreement was potentially the "largest intentional fraudulent transfer in United States history." *See* Memorandum Opinion, *LTL Management, LLC v. Those Parties Listed on Appendix A, et al. (In re LTL Management, LLC)*, [Dkt. No. 94] at p. 23 Adv. Pro. No. 23-01092 (Bankr. D.N.J. Apr. 27, 2023). These matters must be progressed congruently with the dismissal litigation. Should this case ever be in an appropriate position to proceed towards one or more disclosure statements and plans, proponents and objectors will need to have

11

appropriately cultivated those causes of action to fairly and adequately present options available to voting creditors in connection with any Chapter 11 plan proposed by the Debtor.

II. **The Suspension Should Be Approved Under Bankruptcy Code Section 105 and the Court's Inherent Powers Under Rule 1 of the Federal Rules of Civil Procedure.**

22. Bankruptcy Code section 105(a) provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) neatly augments the authority granted under Bankruptcy Code section 305. *See In re Duratech Indus., Inc.*, 241 B.R. 283, 288 (E.D.N.Y. 1999) ("[E]ven if the bankruptcy court did err by concluding that abstention pursuant to section 305 was the appropriate remedy, this Court finds that the bankruptcy court had the authority to make such a determination pursuant to section 105 of the Code."); *see also In re Schueller*, 126 B.R. 354, 359 (D. Colo. 1991) (finding that section 105 was broad enough to permit the court "to defer consideration of a reorganization plan pending the resolution of potentially dispositive state court appeal"); *In re CraftWorks Parent, LLC*, Case No. 20-10475 (Bankr. D. Del. Mar. 30, 2020) (applying section 105 of the Bankruptcy Code to authorize temporary suspension for retain debtor affected by COVID-19).

23. This Court, and all federal courts, also have the inherent authority pursuant to Rule 1 of the Federal Rules of Civil Procedure,[4] to control their docket through staying proceedings, prevent undue delays in the disposition, and generally "control various aspects of the cases before them so that they can protect their proceedings and judgments in the course of discharging their traditional responsibilities." *In re Racing Servs., Inc.*, 635 B.R. 498, 504, 507 (B.A.P. 8th 2022)

---

[4] "[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

(internal quotations and citations omitted). The public policy underlying Rule 1 of the Federal Rules of Civil Procedure is to promote "the just, speedy, and inexpensive determination of every action[,]" provides federal courts with the authority to control its own docket in ordering the Suspension. *In re Racing Servs., Inc.*, 635 B.R. at 507.

24. Bankruptcy courts have also found that "the power to stay proceedings is incidental to the power inherent in every court to control disposition of cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re South Side House, LLC*, 470 B.R. 659, 684 (Bankr. E.D.N.Y. 2012) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Bankruptcy courts have used this power to stay bankruptcy proceedings pending arbitration or stay adversary proceedings when it will dispose of or narrow issues to be resolved in that litigation. *See In re Quigley Co., Inc.*, 361 B.R. at 742 (finding that courts have the inherent power to grant a discretionary stay of a proceeding pending arbitration when there are issues common to the arbitration and the court proceeding and those issues may be determined by the arbitration); *Kittay v. Landegger, et al. (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) (a stay is appropriate when the non-arbitrable and arbitrable claims involve common questions of law and fact or when the arbitration is likely to dispose of issues common to the claims of the arbitrating and non-arbitrating defendants).

25. Whether this Chapter 11 case can move forward under any circumstances is the fundamental question that is the subject of the *Motions to Dismiss* (and any potential appeals therefrom). The substantial, costly and time-consuming litigation leading up to a disclosure statement hearing and confirmation hearing will have been futile should this case be directed for dismissal. It is therefore all avoidable – and this Court should utilize its inherent powers to control

13

its docket and stem the necessary acrimony and expense pending the Motions to Dismiss (and all appeals therefrom).

## NOTICE

26. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) proposed counsel to the Debtor; (c) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson; and (d) all parties in interest having filed notices of appearance in this Chapter 11 Case. In light of the nature of the relief requested herein, the TCC respectfully submits that no other or further notice need be provided.

## NO PRIOR REQUEST

27. No prior request for the relief sought in this Motion has been made to this or any other Court in connection with this Chapter 11 Case

## CONCLUSION

28. WHEREFORE, the TCC respectfully requests that this Court enter the Proposed Order, substantially in the form submitted herewith, (a) authorizing the Suspension; and (b) granting related relief as the Court deems just and proper.

Dated: May 4, 2023

**GENOVA BURNS LLC**

By: */s/ Daniel M. Stolz*
    Daniel M. Stolz, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Tel:   (973) 467-2700
Fax:   (973) 467-8126
Email: DStolz@genovaburns.com

*Proposed Local Counsel for the Official Committee of Talc Claimants*