# **EXHIBIT A**

**Engagement Letter**

# Skadden, Arps, Slate, Meagher & Flom LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-3222
DIRECT FAX
(917) 777-3222
EMAIL ADDRESS
ALLSION.BROWN@SKADDEN.COM

CONFIDENTIAL

December 9, 2021

John K. Kim, Esq.
Chief Legal Officer
LTL Management LLC
501 George Street
New Brunswick, NJ 08933

Dear John:

      We are pleased that LTL Management LLC, a North Carolina limited liability company (the "Company"), has decided to engage Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps" or the "Firm") in connection with the engagement described below (the "Engagement").

**Scope of Engagement**

      As described to us, the Engagement involves providing litigation related advice and assistance with respect to the Company's administration and completion of a case under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101-1532, including but not limited to, assistance with discovery, proceedings in the Bankruptcy Court and the preparation and presentation of an estimation case.  The services to be provided by the Firm in connection with the Engagement will encompass those legal services normally and reasonably associated with this type of engagement which the Firm has been requested and is able and has agreed to provide and which are consistent with its ethical obligations.  Unless otherwise agreed, the Engagement will not encompass tax-related advice.  As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders.  However, we anticipate that in the course of the Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

John K. Kim, Esq.
December 9, 2021
Page 2

**Engagement Personnel**

I will be the primary lawyer responsible for and actively involved in the Engagement. Additional lawyers, will be added to the Engagement on an as-needed basis. Any significant additions to staffing will be discussed with you in advance.

**Fees and Expenses**

Our fees will be based on the time involved in the Engagement and our internal time charges. In this regard, my current hourly internal time charge is $1,575. As part of the Firm's ordinary business practices, hourly time charges are periodically reviewed and revised.

As to billing, we will submit statements for services rendered for payment on a monthly basis and would anticipate payment promptly after receipt. In addition, our billing statements will include charges and disbursements incurred by us in the course of performing legal services. These items will be billed in accordance with our standard practice as described in the attached summary (see Annex A-I), which may be periodically updated.

All references to fees, charges and disbursements are exclusive of any applicable VAT, GST, sales, withholding or similar tax imposed by relevant tax authorities, and such VAT, GST, sales, withholding or similar tax will be charged by us in addition to our fees, charges and disbursements, as applicable, or paid directly by the Company where applicable.

If a dispute develops about our fees, you may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than one thousand and less than fifty thousand dollars.

**Waivers and Related Matters**

The Firm represents a broad base of clients on a variety of legal matters. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of the Firm to choose the Firm as its counsel and preclude the Firm from representing you or other clients of the Firm in pending or future matters. Given that possibility, we wish to be fair not only to you, but to our other clients as well. Accordingly, this letter will confirm our mutual agreement that the Firm may represent other present or future parties on matters other than those for which it had been or then is engaged by the Company, whether or not on a basis adverse to the Company or any of its present or future affiliates, including in litigation, legal or other proceedings or matters, which are referred to as "Permitted Adverse Representation."

In furtherance of this mutual agreement, the Company agrees that it will not for itself or any other party assert the Firm's representation of the Company or any of its present or future affiliates, either in its representation in the Engagement or in any other matter in which the Company retains the Firm, as a basis for disqualifying the Firm from representing another party

John K. Kim, Esq.
December 9, 2021
Page 3

in any Permitted Adverse Representation and agrees that any Permitted Adverse Representation does not constitute a breach of any duty owed by the Firm.   The Company agrees that this paragraph and the preceding one do not expand the scope of the Engagement to encompass affiliates of the Company unless expressly agreed to by the Firm.   You should also assume that we represent a substantial number of the Company's creditors, customers and stakeholders on matters unrelated to the Engagement.  You specifically acknowledge and agree that the waiver provided for herein includes such matters.  The Company acknowledges and accepts that the Firm also represents Johnson & Johnson and certain of its subsidiaries with respect to litigation matters related to this engagement by the Company.  The Company agrees that it will not object to such representations.

   Our representation of the Company is premised on the Firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit without the Company's consent.  Such obligations are subject to certain exceptions, including the laws, rules and regulations of certain jurisdictions relating to money laundering and terrorist financing.  Under relevant circumstances, the Firm may be under a duty to disclose information to relevant governmental authorities.  The Firm may be prohibited from informing you that such a disclosure has been made or the reasons for such disclosure, and we may have to cease work for you for a period of time and not be able to inform you of the reason.  Provided that the Firm acts in the manner set forth in the first sentence of this paragraph and subject to the exceptions noted above, the Company would not for itself or any other party assert that the Firm's possession of such confidential information, even though it may relate to a matter for which the Firm is representing another client [or may be known to someone at the Firm working on the matter, (a) is a basis for disqualifying the Firm from representing another of its clients in any matter in which the Company or any other party has an interest; or (b) constitutes a breach of any duty owed by the Firm.  In addition, the Firm's failure to share with the Company any confidential information received from another client will not be asserted by the Company as constituting a breach of any duty owed to the Company by the Firm, including any duty regarding information disclosure.

   If the Firm receives from any person or entity a subpoena or request for information that is within our custody or control or the custody or control of our agents or representatives, we will, to the extent permitted by applicable law, advise the Company before responding so that the Company has the opportunity to intervene or interpose any objections.  Should the Company object to the provision of such information, the Firm may thereafter provide such information only to the extent authorized by the Company or required by a court or other governmental body of competent jurisdiction.  The Company agrees to pay the Firm for any services rendered and charges and disbursements incurred in responding to any such request at the Firm's customary billing rates and pursuant to the Firm's charges and disbursements policies.

John K. Kim, Esq.
December 9, 2021
Page 4

        The Company agrees that the Firm may disclose the fact of this Engagement and related general information to the extent that such disclosure does not convey any confidential or non-public information and it is not adverse to the Company's interests.

**Client Identification Procedures and Regulatory Compliance**

        Many jurisdictions have adopted or are in the process of changing or creating anti-money laundering, counter-terrorist financing, embargo, trade sanctions or similar policies or laws.  As part of the Firm's responsibility for compliance with such laws, rules, regulations or policies, the Firm is obliged to take detailed steps to verify the identity of our clients and sources of payment.  Accordingly, prior to commencement of work on the Engagement we will have already requested, or will be requesting shortly, that you provide us with required identification documents.  It is also necessary for us to reserve the right to request additional information believed necessary, advisable or appropriate to verify identity and/or to ensure the Firm's compliance with applicable laws, rules, regulations, best practices and anti-money laundering matters from time to time.  A delay or failure to provide information required for verification purposes may prevent us from commencing or require us to suspend work on the Engagement.

**Prevention of Criminal Facilitation of Tax Evasion**

        Many jurisdictions criminalize the evasion of tax and its facilitation.  As a condition of the Engagement, you represent to us that you will not request or otherwise have the Firm or any third party involved in the Engagement take any action, or desist from taking any action, in order to facilitate tax evasion.

**Data Protection**

        The Firm uses the information you provide for the provision of legal services to you and for related purposes, including updating client records, analysis to help the Firm manage its practice, statutory returns, legal and regulatory compliance and, subject to the Firm's ethical obligations, other legitimate business purposes.  The Firm's work for you may also involve providing information to third parties such as expert witnesses and other professional advisers in order to represent your interests most effectively.  The Firm's use of the information you provide is subject to your instructions, to the Firm's duty of confidentiality, and to applicable data protection and data privacy laws and regulations.  If and to the extent that any such law or regulation, such as the E.U. General Data Protection Regulation ("GDPR"), applies to the Engagement, the Firm will abide by those applicable laws and regulations in processing personal data in the course of the Firm's work with you, including putting in place security measures to protect personal data.  Where the work the Firm does for you involves the processing of personal data, you acknowledge that, unless the Firm agrees otherwise in particular circumstances, the Firm processes that personal data as an independent controller, not as a processor on your behalf nor as a joint controller with you, as those terms are defined in the GDPR, and that you may have a right of access to the personal data the Firm holds about you where the GDPR applies.  Subject to the Firm's duties of confidentiality and the provisions of this paragraph, the Firm may transfer

John K. Kim, Esq.
December 9, 2021
Page 5

and process personal data that you disclose to the Firm or information that the Firm generates on the basis of personal data that you disclose to the Firm, including the transfer of such personal data or information to jurisdictions where we have offices, both within and outside the United States, as set forth in the Privacy Statement available on www.skadden.com.  The Firm may from time to time send you information which the Firm thinks might be of interest to you.  If you do not wish to receive that information, please notify the Firm in writing.

**<u>Client Files and Retention</u>**

In the course of our representation of you with respect to a matter, we shall maintain a physical file relating to the matter.  In the file we may place materials received from you with respect to the matter and other materials, including correspondence, memos, filings, drafts, closing sets, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to your representation (the "Client File").  The Client File shall be and will remain your property.  We may also place in the file documents containing our attorney work product, mental impressions or notes, and drafts of documents ("Work Product").  You agree that Work Product shall be and remain our property.  In addition, electronic records (except those to be proffered to you at the conclusion of a matter as described below) such as e-mail and documents prepared on our word processing system shall not be considered part of your Client File unless it has been printed in hard copy and placed in your physical file, and does not constitute Work Product.  You agree that we may adopt and implement reasonable retention policies for such electronic records and that we may store or delete such records in our discretion.

At the conclusion of a matter (which shall be defined as the time that our work on any matter subject to this letter has been completed), you shall have the right to take possession of the original of your Client File (but not including the Work Product).  We will be entitled to make physical or electronic copies if we choose.  You also agree, upon our proffer, at the conclusion of a matter (whether or not you take possession of the Client File), to take possession of any and all original contracts, stock certificates, deeds and other such important documents or instruments that may be in the Client File, without regard to format, and we shall have no further responsibility with regard to such documents or instruments.

If you do not take possession of the Client File at the conclusion of a matter, we will store such file in accordance with our standard retention procedures for a period of at least seven (7) years (the "Retention Period").  Such retention (or maintenance of accounting or other records related to our representation) shall not constitute or be deemed to indicate the presence of a continuing attorney-client relationship.  During the time that we store the Client File, you shall have the right to take possession of it at any time that you choose.  Subject to the foregoing, we may dispose of the Client File without further notice or obligation to you.

\*    \*    \*

The provisions of this letter will continue in effect, including if the Firm's representation of the Company was ended at your election (which, of course, the Company

John K. Kim, Esq.
December 9, 2021
Page 6

would be free to do at any time) or by the Firm (which would be subject to ethical requirements). In addition, the provisions of this Engagement Letter will apply to future engagements of the Firm by the Company unless we mutually agree otherwise.

      If our engagement is limited to a specific matter, and at the time such matter is completed, we are not at such time engaged to represent you in one or more other matters, our attorney-client relationship will be deemed terminated whether or not we send you a letter to confirm such termination. If you thereafter desire to engage us for a further matter that we are able to and determine to undertake, this letter (and any applicable supplemental writing for such matter) would then become effective.

      This agreement and any claim, controversy or dispute arising under or relating to this agreement, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties shall be governed by, and construed in accordance with, the laws of the State of New York. For purposes of this letter, references to Skadden Arps or the Firm include our affiliated law practice entities.

      If this letter is satisfactory, please sign a copy and return it to me.

      Again, we very much appreciate the opportunity to work with LTL Management LLC and look forward to doing so.

      With best regards.

Sincerely,

Allison M. Brown

LTL Management LLC

By: _____
John K. Kim, Esq.
Chief Legal Officer, LTL Management LLC

Dated: As of December 9, 2021

Enclosures

**ANNEX A-I**

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES**
*Policy Statement Concerning Charges and Disbursements\**
*Effective April 1, 2010*

*Skadden Arps bills clients for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for disbursements based on the actual cost billed by the vendor or in a few cases noted below, at rates derived from internal cost analyses or at rates below or approximating comparable outside vendor charges.*

_____

**I. Research Services.** Charges for LexisNexis and Westlaw are billed at levels below that which would be charged for individual usage on a particular engagement. Clients are billed at rates calculated from an aggregate discounted amount charged to and paid by the Firm to LexisNexis and Westlaw. Thomson Research services are charged based on client usage allocated from actual vendor charges. Charges for other outside research services are billed at the actual amounts charged by vendors.

The State of Delaware Database provides computer access to a corporations database in Dover, Delaware. The charge for this service is $50 per transaction, which is the average amount charged by outside services.

**II. Travel-Related Expenses.** Out-of-town travel expenses are billed at actual cost and include air or rail travel, lodging, car rental, taxi or car service, tips and other reasonable miscellaneous costs associated with travel. Corporate and/or negotiated discounted rates are passed on to the client. Specific Firm policies for expenditures relating to out-of-town travel include:

- *Air Travel.* Coach class is the standard on most U.S. domestic flights. However, for flights with scheduled flight times longer than 5 hours and international flights business class is generally used.

- *Lodging.* We strive to book overnight accommodations at hotels with which the Firm or the Client has preferred corporate rates.

Local travel charges include commercial transportation and, when a private car is used, mileage, tolls and parking. Specific policies govern how and when a client is charged for these expenses; these include:

- Fares for commercial transportation (*e.g.*, car service, taxi, rail) are charged at the actual vendor invoice amount. The charge for private car usage is the IRS rate allowance per mile (or the equivalent outside the United States) plus the actual cost of tolls and parking.

- Round-trip transportation to the office is charged for attorneys who work weekends or holidays. Transportation home may be charged on business days when an attorney works past a certain hour (typically 8:30 p.m.) and has worked a minimum of ten hours that day.

- Local travel for support staff is charged when a staff member works past a certain hour (typically 8:30 p.m.). Charges are limited by Firm policy and depend on form of transportation and distance traveled.

**III. Word Processing, Secretarial and other Special Task-Related Services.** Routine secretarial tasks (correspondence, filing, travel and/or meeting arrangements, etc.) are not charged to clients. Word processing services associated with preparing legal documents are charged at $50 (£25/€35) per hour.

Specialized tasks (such as EDGAR filings or legal assistant services) are recorded in the appropriate billing category (for example, legal assistant services are recorded as fees in "Legal Assistant Support" on bills).

**IV.** *Reproduction and Electronic Document Management.* Photocopying services (including copying, collating, tabbing and velo binding) performed in-house are charged at 15 cents (£0.07/€0.11) per page, which represents the average internal cost per page. Color photocopies are charged at 80 cents (£0.40/€0.55) per page (based on outside vendor rates). Photocopying projects performed by outside vendors are billed at the actual invoice amount. Special arrangements can be made for unusually large projects.

Electronic Data Management services (*e.g.*, scanning, OCR processing, data and image loading/exporting, CD/DVD creation, printing from scanned files, and conversions) performed by outside vendors are billed at the actual invoice amount and those performed in-house are billed at rates comparable to those charged by outside vendors.

**V.** *Electronic Communications.* Clients are charged for communications services as follows:

- *Telephone Charges.* There is no charge for local telephone calls or internal long distance telephone calls. External telephone calls such as collect, cellular calls, credit card, hotel telephone charges and vendor-hosted conference calls are charged at the vendor rate plus applicable taxes and are assigned to the specific matter for which such charges were incurred.

- *Facsimile Charges.* There is no charge for facsimile usage.

**VI.** *Postage and Courier Services.* Outside messenger and express carrier services are charged at the actual vendor invoice amount which frequently involves discounts negotiated by the Firm. Postage is charged at actual mail rates. On certain occasions, internal staff may be required to act as messengers in which case the staff's applicable hourly rate is charged.

**VII.** *UCC Filing and Searches.* Charges for filings and searches, in most instances, are billed at the flat fee charged by the vendor. Unusual filings and searches will be charged based on vendor invoice.

**VIII.** *Meals.* Business meals are charged at actual cost. Luncheon and dinner meetings at the Firm are charged based on the costs developed by our food service vendor. Breakfast, beverage and snack services at the Firm's offices are not charged, except in unusual circumstances.

When overtime, weekend or holiday work is required, clients are charged for the actual, reasonable cost of an attorney's meal and, for non-attorneys, a standard amount determined by Firm policy.

**IX.** *Direct Payment by Clients of Other Disbursements.* Other major disbursements incurred in connection with an engagement will be paid directly by the client. (Those which are incurred and paid by the Firm will be charged to the client at the actual vendor's invoice amount.) Examples of such major disbursements that clients will pay directly include:

- *Professional Fees (including disbursements for local counsel, accountants, witnesses and other professionals)*

- *Filing/Court Fees (including disbursements for agency fees for filing documents, standard witness fees, juror fees)*

- *Transcription Fees (including disbursements for outside transcribing agencies and courtroom stenographer transcripts)*

- *Other Disbursements (including any other required out-of-pocket expenses incurred for the successful completion of a matter)*

\* \* \* \* \*

*\*   Fees incurred for attorney and Firm personnel in connection with the Engagement are not covered by this policy.*

2