**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |

**DEBTOR'S APPLICATION FOR EXPANDED RETENTION OF EPIQ**
**CORPORATE RESTRUCTURING, LLC, EFFECTIVE AS OF APRIL 4, 2023**

1. The applicant, LTL Management LLC (the "Debtor" or "LTL Management"), is the:

    ☐ Trustee:   ☐ Chap. 7   ☐ Chap. 11   ☐ Chap. 13.

    ☒ Debtor:   ☒ Chap. 11   ☐ Chap. 13

    ☐ Official Committee of _____

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1536519349

2. The Debtor seeks to retain the following professional, Epiq Corporate Restructuring, LLC ("Epiq"), to serve as:

☐ Attorney for:     ☐ Trustee     ☐ Debtor-in-Possession

☐ Official Committee of _____

☐ Accountant for:     ☐ Trustee     ☐ Debtor-in-possession

☐ Official Committee of _____

☐ Other Professional:

☐ Realtor     ☐ Appraiser     ☐ Special Counsel

☐ Auctioneer     ☒ Other (specify): Solicitation and Balloting Agent (the "Ballot Agent").

3. The employment of Epiq is necessary because:

On April 4, 2023 (the "Petition Date"), the Debtor filed this chapter 11 case (the "Chapter 11 Case") with the support of counsel representing thousands of talc claimants and an agreement on the material terms of a plan of reorganization that would permanently resolve all its current and future talc-related claims. That agreement is reflected in a series of plan support agreements among the Debtor, Johnson & Johnson ("J&J"), the Debtor's direct parent company and counsel representing thousands of talc claimants. Pursuant to those agreements, the parties have agreed to use commercially reasonable efforts to finalize and file a plan consistent with the terms of the plan support agreements (the "Plan") by May 14, 2023, or as soon thereafter as is feasible. The Debtor has also moved this Court for an order scheduling a hearing on approval of the disclosure statement for the Plan and establishing a deadline for objections to the disclosure statement to be filed on an expedited basis [Dkt. 240]. The Court set a hearing on that motion for May 16, 2023 [Dkt. 272]. Given these fast-approaching deadlines, the Debtor requires the services of a knowledgeable and experienced solicitation and balloting agent to assist with, among other things, the solicitation, balloting and tabulation of votes related to the Plan.

4. Epiq has been selected because:

Epiq is uniquely situated to serve as Ballot Agent in this case because of its experience serving as claims, noticing and balloting agent in the Debtor's previous chapter 11 case (the "2021 Chapter 11 Case"). As a result of this prior experience, on the Petition Date, the Debtor filed an application, pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 105(a), for an order authorizing the appointment of Epiq as the claims and noticing agent in this

case, nunc pro tunc to the Petition Date [Dkt. 11] (the "Claims Agent Application").[2] On April 13, 2023, the Court entered an order granting Epiq's retention as claims and noticing agent in this Chapter 11 Case [Dkt. 131] (the "Claims Agent Retention Order"). Pursuant to the Claims Agent Retention Order, the Debtor retained the right to submit a separate retention application, pursuant to section 327 of title 11 of the United States Code (the "Bankruptcy Code") and/or any applicable law, for work that Epiq may perform but that was not specifically authorized by the Court in the Claims Agent Application. Claims Agent Retention Order ¶ 19.

In order for the Debtor to move forward expeditiously with the Plan, it is imperative that the Debtor retain Epiq as its Ballot Agent.[3] Epiq's expanded retention will enable the Debtor to avoid the unnecessary expense that would result from having another agent familiarize itself with, among other things, the tens of thousands of creditors and other parties in interest in this Chapter 11 Case.

5. Epiq's services to be rendered are as follows:

The Debtor anticipates that Epiq will perform the following tasks in its role as Ballot Agent (the "Balloting and Solicitation Services"), as well as all quality control relating thereto:

(a) Provide balloting services in connection with the solicitation process for any chapter 11 plan of the Debtor for which a disclosure statement has been approved by the Court, including (as needed): (i) consult with the Debtor and its counsel regarding timing considerations, voting and tabulation procedures and documents needed for the vote; (ii) review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing considerations; (iii) assist in obtaining information regarding members of voting classes; (iv) coordinate distribution of solicitation documents; (v) respond to requests for documents from parties in interest; (vi) respond to telephone inquiries regarding the disclosure statement and the voting procedures; (vii) receive and examine all ballots and master ballots cast by voting parties; (viii) date- and time-stamp the originals of all such ballots and master ballots upon receipt and (ix) tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the Court and, if necessary, testify in support of the ballot tabulation results; and

---

[2] Additional information regarding Epiq's qualifications and experience as a claims, noticing and balloting agent can be found in the Claims Agent Application and in Epiq's retention application filed in the 2021 Chapter 11 Case (the "2021 Epiq Retention Application"). In re LTL Mgmt. LLC, No. 21-30589, Dkt. 6 ¶¶ 7-8.

[3] Prior to the filing of this application, Epiq's proposed services did not include balloting and solicitation services.

      (b)      Provide such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement (defined below), but not included in the Claims Agent Application, as may be requested from time to time by the Debtor, the Court or the Office of the Clerk of the Bankruptcy Court (the "Clerk").

Epiq will continue to follow the claims, notice, and ballot procedures that are established by an order of the Court. For the avoidance of doubt, Epiq will continue to act in its role as claims and noticing agent as provided for in the Claims Agent Application and approved by the Court in the Claims Agent Retention Order.

6.     The proposed arrangement for compensation is as follows:

The Debtor seeks to retain Epiq pursuant to the terms of the engagement letter between Epiq and the Debtor dated as of April 4, 2023, as amended on April 21, 2023, to add the Balloting and Solicitation Services (the "Engagement Agreement"), attached hereto as Exhibit A.

Epiq's compensation will be substantially on the terms set forth in the Engagement Agreement. See Ex. A. In particular, Epiq's fees are charged at the rates set forth in the pricing schedule attached to the Engagement Agreement (the "Pricing Schedule"), as they may be adjusted on a yearly basis consistent with the same. Epiq also will seek reimbursement of expenses at the rates set forth in the Pricing Schedule.

Epiq agrees to continue to maintain records of all services showing dates, categories of services, fees charged and expenses incurred. With respect to Balloting and Solicitation Services, Epiq intends to apply to the Court for allowance of compensation and reimbursement and will comply with sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the United States Bankruptcy Court District of New Jersey (the "Local Rules"), *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013* (the "Fee Guidelines"), and any orders entered in this Chapter 11 Case regarding professional compensation and reimbursement of expenses, including any interim compensation order (any such order, an "Interim Compensation Order") entered in this Chapter 11 Case.[4]

As previously disclosed in the Claims Agent Application, submitted herewith, on April 4, 2023, following the entry of the Dismissal Order and prior to the commencement of this Chapter 11 Case, Epiq received payment from the Debtor of all unpaid actual and estimated fees and expenses incurred through the commencement of this Chapter 11 Case.

---

[4]     For the avoidance of doubt, nothing herein shall subject Epiq's fees and expenses incurred in connection with the services rendered as claims and noticing agent to any interim compensation order entered in this Chapter 11 Case, and compensation and reimbursement for those fees and expenses shall be governed by the Claims Agent Retention Order.

In particular, following the entry of the Dismissal Order, on April 4, 2023, the Debtor paid Epiq $190,000 via wire transfer (the "Payment"). This amount comprises of (a) $90,000 on account of actual and estimated fees and expenses incurred but not yet paid in the 2021 Chapter 11 Case through the entry of the Dismissal Order (the "Pre-Dismissal Amounts"), and (b) $100,000 for Epiq's estimated fees and expenses incurred following dismissal of the 2021 Chapter 11 Case and prior to the commencement of this Chapter 11 Case (the "Post-Dismissal Amounts"). In addition, as of the Petition Date, Epiq held a retainer in the amount of $25,000 (the "Retainer"). Pursuant to the Claims Agent Retention Order, the Court authorized Epiq to continue to hold the Retainer during this Chapter 11 Case as security for payment of fees and expenses incurred.

This payment to Epiq was made in accordance with the terms of the Dismissal Order, which provides that Epiq "shall be entitled to payment and reimbursement of its fees and costs from LTL." Dismissal Order, ¶ 14. Epiq served the Debtor with a statement of its fees and expenses.[5]

In addition, the Debtor was solvent at the time it made this payment to Epiq. See LTL, 64 F.4th at 108 ("LTL, at the time of its filing, was highly solvent with access to cash to meet comfortably its liabilities as they came due for the foreseeable future."); see also Apr. 18, 2023 Hr'g Tr. 62:21-25 (the Debtor's chief legal officer testifying that Holdco, the party to the funding agreement with the Debtor, is valued at around $30 billion); id. at 207:3-4 (counsel for the Debtor reiterating that the value of Holdco is $30 billion).

Consistent with the Claims Agent Application,[6] and subject to ongoing reconciliation, the Payment was applied to all of Epiq's Pre-Dismissal Amounts and Post-Dismissal Amounts. Epiq's actual prepetition fees and expenses incurred for March and April 2023 total $104,370.37. After application of that amount to the Payment, Epiq now holds a retainer of $110,629.63, inclusive of the $25,000 that Epiq has authority to hold as security for payment of fees and expenses incurred in the Chapter 11 Case pursuant to the Claims Agent Retention Order. Following the termination of Epiq's retention in this Chapter 11 Case, Epiq will return to the Debtor any amount of the retainer that remains following the application of the retainer to the payment of unpaid invoices.

Under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend and hold harmless Epiq and its affiliates, officers, directors, agents, employees and consultants, under circumstances arising out of or relating to the Engagement Agreement or Epiq's rendering of services pursuant thereto, except in circumstances resulting solely from Epiq's gross negligence, willful misconduct, fraud or bad faith. Epiq has agreed to certain revisions to the indemnification and limit of liability provisions of the Engagement Agreement, consistent with the terms of the Claims Agent

---

[5] On April 26, 2023, the Debtor filed a motion for authorization to satisfy the fees and expenses of the other estate professionals involved in the 2021 Chapter 11 Case per the terms of the Dismissal Order. See Dkt. 319.

[6] See Claims Agent Application [Dkt. 11], n.4.

NAI-1536519349

Retention Order. These alterations are reflected in the proposed order attached to this Application.

The Debtor believes that such an indemnification obligation, as modified, is customary, reasonable and necessary to retain the services of a Ballot Agent in the Chapter 11 Case.

7. To the best of the Debtor's knowledge, Epiq's connection with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee (the "U.S. Trustee"), or any person employed in the office of the U.S. Trustee, is as follows:

☐ None

☒ Describe connection: See Agent Certification, attached hereto as Exhibit B.

8. To the best of LTL Management's knowledge, Epiq:

☒ Does not hold an adverse interest to the estate.

☒ Does not represent an adverse interest to the estate.

☒ Is a disinterested person under 11 U.S.C. § 101(14).

☐ Other; explain: _____

See also Agent Certification, attached hereto as Exhibit B.

9. If the professional is an auctioneer, appraiser or realtor, the location and description of the property is as follows: N/A

WHEREFORE, the Debtor respectfully requests authorization to employ Epiq, effective as of April 4, 2023, to render services in accordance with this Application, with compensation to be paid as an administrative expense in such amounts as the Court may determine and allow.

Date: May 4, 2023                           */s/ John K. Kim*
                                            John K. Kim
                                            Chief Legal Officer

NAI-1536519349