**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |

**APPLICATION FOR RETENTION OF ALIXPARTNERS, LLP**
**AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE**

1.  The applicant, LTL Management LLC, (the "Debtor" or "LTL Management"), is the:

    ☐ Trustee:    ☐ Chap. 7    ☐ Chap. 11    ☐ Chap. 13.

    ☒ Debtor:     ☒ Chap. 11   ☐ Chap. 13

    ☐ Official Committee of _____

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2. The Debtor seeks to retain the following professional, AlixPartners, LLP ("AlixPartners"), to serve as:

☐ Attorney for: ☐ Trustee ☐ Debtor-in-Possession

☐ Official Committee of _____

☐ Accountant for: ☐ Trustee ☐ Debtor-in-possession

☐ Official Committee of _____

☒ Other Professional:

    ☐ Realtor ☐ Appraiser ☐ Special Counsel

    ☐ Auctioneer ☒ Other (specify): Financial Advisor

3. The employment of AlixPartners is necessary because:

Such financial advisory services are necessary to the Debtor's restructuring efforts. The Debtor believes that AlixPartners has substantial relevant expertise in providing financial advisory services to chapter 11 debtors and, therefore, AlixPartners' services will provide valuable support to the Debtor in this chapter 11 case (the "Chapter 11 Case"). The Debtor believes that AlixPartners is well-qualified to perform these services for the Debtor.

4. AlixPartners has been selected because:

AlixPartners is an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and has an excellent reputation for its work in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

AlixPartners' professionals have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors and other entities in numerous chapter 11 cases of similar size and complexity to the Debtor's Chapter 11 Case. AlixPartners has provided financial or crisis management services in numerous large cases in various districts. See, e.g., In re Core Scientific, Inc., No. 22-90341 (DRJ) (Bankr. S.D. Tex. Feb. 8, 2023); In re Clovis Oncology, Inc., No. 22-11292 (JKS) (Bankr. D. Del. Jan. 20, 2023); In re FTX Trading Ltd., No. 22-11068 (JTD) (Bankr. D. Del. Jan. 20, 2023); In re Phoenix Services Topco, LLC, No. 22-10906 (MFW) (Bankr. D. Del. Oct. 25, 2022); In re Kabbage Inc. d/b/a KServicing, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 2022; In re Lumileds Holding B.V., No. 22-1115 (LGB) (Bankr. S.D.N.Y. Oct. 13, 2022); In re Carestream Health, Inc., No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); In re MD Helicopters, Inc., No. 22-10263 (KBO) (Bankr. D. Del. Apr. 25, 2022); In re Carlson Travel Inc., No. 21-90017 (MI) (Bankr. S.D. Tex. Jan. 12, 2022); In re LTL Management LLC, No. 21-30589 (MBK) (Bankr. D.N.J. Dec. 16, 2021); In re Basic Energy Svcs., Inc., No. 21-90002 (DRJ) (Bankr. S.D. Tex. Oct. 21, 2021); In re Alpha Latam Mgmt., LLC, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 15, 2021); In re Nine Point Energy, LLC, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); In re HighPoint Res. Corp., No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); In re Garrett Motion Inc., No. 20-12212 (MEW) (Bankr. S.D.N.Y. Oct. 26, 2020); In re Grupo Aeroméxico S.A.B. de C.V., No. 20-11563 (SCC) (Bankr. S.D.N.Y. Sept. 22, 2020); In re Jason Indus., Inc., No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); In re Bumble Bee Parent, Inc., Case No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019); and In re Purdue Pharma L.P., Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

In addition to AlixPartners' experience and reputation for providing financial advisory services in large, complex chapter 11 cases, from October 14, 2021 through April 4, 2023, AlixPartners represented LTL Management in connection with its prior chapter 11 case (the "2021 Chapter 11 Case"). See In re LTL Management LLC, No. 21-30589 (MBK) [Dkt. 862] (Bankr. D. N.J. Dec. 16, 2021) (the "Prior Retention Order").[2] As a result, AlixPartners has acquired significant knowledge of the Debtor and its businesses, and familiarity with the Debtor's financial affairs, debt structure, operations, and related matters. Likewise, in having represented LTL Management, AlixPartners' professionals have worked closely with the Debtor's management and its other advisors. Accordingly, AlixPartners has experience, expertise, and specifically relevant knowledge regarding the Debtor that will assist it in providing effective and efficient services in this Chapter 11 Case.

5. AlixPartners' services to be rendered are as follows:

The Debtor and AlixPartners have entered into the engagement letter (the "Engagement Letter"), attached hereto as Exhibit A, which governs the relationship between them. The terms and conditions of the Engagement Letter were negotiated between the Debtor and AlixPartners and reflect the parties' mutual agreement as to the efforts that will be required in this engagement. Subject to further order of the United States Bankruptcy Court for the District of New Jersey (the "Court"), AlixPartners may provide the services described in the Engagement Letter as AlixPartners and the Debtor shall deem appropriate and feasible in order to advise the Debtor in the course of this Chapter 11 Case, including, but not limited to, the following, which are substantially similar to those services provided for in the Prior Application and approved in the Prior Retention Order:[3]

a) Coordinating and providing administrative support for this Chapter 11 Case and developing the Debtor's plan of reorganization or other appropriate case resolution, if necessary.

b) Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Court as well as providing assistance in such areas as testimony before the Court on matters that are within AlixPartners' areas of expertise.

c) Assist in obtaining and responding to due diligence requests of the Debtor's professionals and other parties in interest in the Debtor's bankruptcy process including official committees appointed by the Court, and the Court itself.

---

[2] On November 24, 2021, the Debtor filed the *Application for Retention for the Entry of an Order Authorizing the Employment of AlixPartners, LLP as Financial Advisor Effective as of October 14, 2021* in the 2021 Chapter 11 Case (the "Prior Application"). See In re LTL Mgmt. LLC, No. 21-30589 (Bankr. D.N.J. Nov. 24, 2021) [Dkt. 412]. On December 16, 2021, the Prior Retention Order was entered. On January 30, 2023, the United States Court of Appeals for the Third Circuit issued an opinion and judgment providing that the 2021 Chapter 11 Case should be dismissed. See In re LTL Mgmt. LLC, 58 F.4th 738 (3d Cir. 2023) amended by 64 F.4th 84 (3d Cir. 2023). On March 31, 2023, the certified judgment issued. On April 4, 2023, this Court entered an order (the "Dismissal Order") dismissing the 2021 Chapter 11 Case. In re LTL Mgmt. LLC, No. 21-30589 (Bankr. D.N.J. Apr. 4, 2023) [Dkt. 3938]. Thereafter, the Debtor filed this Chapter 11 Case on April 4, 2023 (the "Petition Date").

[3] AlixPartners' services will include assisting the Debtor with preparing any monthly and final operating report in the 2021 Chapter 11 Case, as required by the Office of the United States Trustee.

d) Assist the Debtor and its management in developing any forecasts that may be required, including by creditor constituencies in this Chapter 11 Case or by the Debtor for other corporate purposes.

e) Assist as requested in managing any litigation that may be brought against the Debtor in the Court.

f) Assist as requested in managing any claims resolution process.

g) Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

When necessary, the individuals working on this matter (the "AlixPartners Personnel") will be assisted by or replaced by various professionals at various levels.

The financial advisory services provided by AlixPartners will complement, and not duplicate, the services to be rendered by any other professional retained in this Chapter 11 Case.

6. The proposed arrangement for compensation is as follows:

AlixPartners' decision to accept this engagement to provide services to the Debtor is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in Schedule 1 of the Engagement Letter (the "Fee and Expense Structure").

AlixPartners' current standard hourly rates, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
| --- | --- |
| Managing Director | $1,140 – $1,400 |
| Partner | $1,115 |
| Director | $880 – $1,070 |
| Senior Vice President | $735 – $860 |
| Vice President | $585 – $725 |
| Consultant | $215 – $565 |
| Paraprofessional | $360 – $380 |

AlixPartners generally reviews and revises its billing rates semi-annually. AlixPartners will provide notice of any rate increases consistent with the Prior Retention Order, as set forth in the proposed order filed with this Application.

To the extent that AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

In addition to compensation for professional services rendered by AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable, necessary, and documented out-of-pocket expenses incurred in connection with this Chapter 11 Case, including transportation costs, lodging, and meals.

To the extent AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.[4]

The Debtor understands that AlixPartners intends to apply for compensation for services rendered and reimbursement of expenses incurred in connection with this Chapter 11 Case, subject to the Court's approval and in compliance with the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (Appendix A to 28 C.F.R. § 58), applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other further orders of the Court, including any order establishing procedures for interim compensation an reimbursement of expenses of retained professionals (any such order, any "Interim Compensation Order"), both in connection with this application and the interim and final fee applications to be filed by AlixPartners in this Chapter 11 Case.

AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in this Chapter 11 Case. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtor. AlixPartners' applications for compensation of fees and reimbursement of expenses will be paid by the Debtor pursuant to the terms of the Engagement Letter and any procedures established by the Court, pursuant to an interim compensation order or otherwise.

AlixPartners often works for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving meaningful results. AlixPartners is not seeking a success fee in connection with this Chapter 11 Case.

The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtor to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "AlixPartners Party") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter, except for those finally determined or otherwise agreed by the parties to be the direct result of the gross negligence, bad faith, willful misconduct or fraud of any AlixPartners Party.

---

[4] Consistent with the Prior Retention Order, to the extent AlixPartners uses the services of independent contractors (the "Contractors") in the Chapter 11 Case, AlixPartners shall: (a) pass through the cost of such Contractors to the Debtor at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs incurred; (c) require the Contractors to file Rule 2014 affidavits indicating that the Contractors have reviewed the potential parties in interest list in this Chapter 11 Case received from the Debtor and/or its representatives (each party a "Party in Interest", and collectively the "Parties in Interest List") in this case, disclose the Contractors' relationships, if any, with Parties in Interest List and indicate that the Contractors are disinterested; (d) confirm that the Contractors remain disinterested during the time that AlixPartners is involved in providing services to the Debtor; (e) require the Contractors to represent that they will not work for the Debtor or other parties-in-interest in this case during the time AlixPartners is involved in providing services to the Debtor; and (f) attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in this case.

The Engagement Letter also contains a limitation of liability provision (the "Limitation of Liability Provision") that limits the liability of AlixPartners for direct damages to two times the amount of fees paid with respect to services performed under the Engagement Letter.

The Debtor and AlixPartners believe that the indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions") and the Limitation of Liability Provision are customary and reasonable for AlixPartners and comparable firms providing financial advisory services.

The terms and conditions of the Indemnification Provisions and the Limitation of Liability Provision were negotiated by the Debtor and AlixPartners at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtor, its estate, and all parties in interest in light of the fact that the Debtor requires AlixPartners' services to successfully reorganize. Nonetheless, AlixPartners has agreed that the Indemnification Provisions shall be subject to the same terms contained in the Prior Retention Order and that the Limitation of Liability Provisions shall have no force or effect during the pendency of this Chapter 11 Case.

As set forth in the Certification of John R. Castellano, submitted herewith as Exhibit B, on April 4, 2023, following the entry of the Dismissal Order and prior to the commencement of this Chapter 11 Case, AlixPartners received payment from the Debtor of all unpaid actual and estimated fees incurred through the commencement of this Chapter 11 Case.

In particular, following the entry of the Dismissal Order, on April 4, 2023, the Debtor paid AlixPartners $148,069.70 via wire transfer (the "Payment"). This amount comprises of (a) $118,069.70 on account of actual and estimated fees and expenses not yet paid in the 2021 Chapter 11 Case through the entry of the Dismissal Order (the "Pre-Dismissal Amounts"), and (b) $30,000.00 for AlixPartners's estimated fees and expenses incurred following dismissal of the 2021 Chapter 11 Case and prior to the commencement of this Chapter 11 Case (the "Post-Dismissal Amounts"). The Payment was applied to the Pre-Dismissal Amounts and the Post-Dismissal Amounts prior to the commencement of this Chapter 11 Case. Accordingly, as of the Petition Date, AlixPartners was not owed any amounts by the Debtor.

This payment to AlixPartners was made in accordance with the terms of the Dismissal Order, which provides that a Retained Professional (as defined therein) may "seek final allowance and payment of compensation and reimbursement of expenses" in accordance with the procedures set forth in the Dismissal Order, which procedures included serving "a statement of all of its unpaid fees and expenses incurred in [the 2021] Chapter 11 Case through the Dismissal Date" on the Debtor "no later than 45 days following the Dismissal Date." Dismissal Order, ¶ 5. AlixPartners served such a statement on the Debtor.[5]

In addition, the Debtor was solvent at the time it made this payment to AlixPartners. See LTL, 64 F.4th at 108 ("LTL, at the time of its filing, was highly solvent with access to cash to meet comfortably its liabilities as they came due for the foreseeable future."); see also Apr. 18, 2023 Hr'g Tr. 62:21-25 (the Debtor's chief legal officer testifying that Johnson & Johnson Holdco (NA) Inc. ("Holdco"), the party to the funding agreement with the Debtor, is valued at around $30 billion); id. at 207:3-4 (counsel for the Debtor reiterating that the value of Holdco is $30 billion).

After the Petition Date, AlixPartners reconciled the Payment made with respect to Pre-Dismissal Amounts and the Post-Dismissal Amounts. Following such reconciliation, AlixPartners holds a

---

[5] On April 26, 2023, the Debtor filed a motion for authorization to satisfy the fees and expenses of the other estate professionals involved in the 2021 Chapter 11 Case per the terms of the Dismissal Order. See Dkt. 319.

retainer (the "Retainer") in the total amount of $35,215.00.  AlixPartners will apply this Retainer to fees and expenses incurred from and after the Petition Date consistent with the terms of any Interim Compensation Order, but AlixPartners will not apply any portion of the Retainer unless and until authorized to do so by a further order of this Court, including any Interim Compensation Order.

7. To the best of the Debtor's knowledge, AlixPartners' connection with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, is as follows:

☐ None

☒ Describe connection: See Cert. of John R. Castellano attached hereto as Exhibit B.

8. To the best of the Debtor's knowledge, AlixPartners (check all that apply):

☒ does not hold an adverse interest to the estate.

☒ does not represent an adverse interest to the estate.

☒ is a disinterested person under 11 U.S.C. § 101(14).

☐ does not represent or hold any interest adverse to the debtor or the estate with respect to the matter for which he/she will be retained under 11 U.S.C. § 327(e).

☐ Other; explain: _____

See also Cert. of John R. Castellano attached hereto as Exhibit B.

9. If the professional is an auctioneer, appraiser or realtor, the location and description of the property is as follows: N/A

WHEREFORE, the Debtor respectfully requests authorization to employ AlixPartners to render services in accordance with this application, effective as of the Petition Date, with compensation to be paid as an administrative expense in such amounts as the Court may determine and allow.

Date:  May 4, 2023                     /s/ John K. Kim
                                       John K. Kim
                                       Chief Legal Officer