# **EXHIBIT A**

**Engagement Letter**



**Orrick, Herrington & Sutcliffe LLP**
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706

+1 202 339 8400

orrick.com

**Robert Loeb**

**E** rloeb@orrick.com
**D** +1 202 339 8475
**F** +1 202 339 8500

April 27, 2023

*Via Email*

John K. Kim, Esq.
Chief Legal Officer
LTL Management LLC
501 George Street
New Brunswick, NJ 08933

Re:    Engagement Letter re Representation of LTL Management in Talc Appeals

Dear John:

We are pleased to confirm your engagement of Orrick, Herrington & Sutcliffe LLP ("Orrick," "we" or "us") as appellate counsel to represent LTL Management LLC (the "Client," "LTL" or "you") in the talc appeals (the "Matters") that are not stayed by the commencement of LTL's chapter 11 case [Case No: 23-12825] currently pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). The purpose of this engagement letter and the attached Standard Terms of Engagement is to confirm the terms and conditions upon which Orrick will be providing legal services to you in the Matter.

Orrick's services will be limited to the representation of LTL in the Matters, including advising and representing LTL in ongoing appeals involving allegations concerning talc in various personal use powder products, including drafting and filing all briefs and appearing on behalf of LTL at hearings, meetings, and other proceedings, as appropriate. Our services will not extend to other business, personal, or legal affairs of the Client or to any other aspect of the Client's activities. Orrick's receipt or use of confidential or other information from the Client or others in the course of this representation does not mean that Orrick will render any advice or services other than those described in this letter.

This engagement letter and the attached Standard Terms of Engagement will be effective as of April 4, 2023, the date Orrick first performed services in connection with the Matters. We understand that (i) this engagement is subject to approval by the Bankruptcy Court, and (ii) LTL's bankruptcy counsel will file an application with the Bankruptcy Court seeking entry of an order approving our retention and employment as special appellate counsel effective as of April 4, 2023. This letter, when fully executed, will create an attorney-client relationship between us only during such time as we are engaged on the Matters (or as otherwise provided by applicable law).

Within Orrick, Robert Loeb will be primarily responsible for the Matters. We currently anticipate that Joshua Rosenkranz, Naomi Scotten and associates as needed and appropriate also will be working on the Matters, but we may change the staffing as the need arises. We will of course seek to staff these matters in a manner that we think will be the most effective and efficient, and as best serves your needs.

LTL Management LLC
Page 2



I will be happy to discuss with you any staffing issues or concerns you may have at any time. In that regard, please let me know promptly if you have any questions or concerns about the services provided by anyone at Orrick or about any billing statement so that we can respond appropriately. My office telephone number and e-mail address are set forth above.

LTL shall be responsible for the payment of our bills. Orrick's fees are based on the amount of time spent working on the Matters. The hourly billing rates of the attorneys who are engaged on these Matters range as follows:

| Partners/Of Counsel | $876 - $1,200 |
|---|---|
| Associates | $536 - $844 |
| Paralegals | $375 |

These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually, effective as of January 1 of each year. Orrick also charges for costs and disbursements incurred in connection with rendering its services, as described more fully in the accompanying Standard Terms of Engagement.

To the extent that Orrick represents both LTL and Johnson & Johnson ("J&J") in a matter, Orrick will allocate 50% of its fees and expenses incurred in such joint representation to LTL and 50% to J&J. In matters in which Orrick represents solely LTL or J&J, Orrick will allocate 100% of the fees and expenses to the entity represented.

Professional fees and expenses incurred by LTL during the chapter 11 case are subject to the requirements of the Bankruptcy Code and any interim compensation order entered in the chapter 11 case and are subject to review and approval by the Bankruptcy Court. While we will provide periodic statements to you of the fees and expenses incurred on your behalf, we recognize that the fees and expenses incurred during the chapter 11 case may only be paid as authorized by the Bankruptcy Court.

If the foregoing, together with our attached Standard Terms of Engagement, accurately reflects our agreement, please confirm by signing our attached Standard Terms of Engagement and returning it to me. Please do not hesitate to call me to discuss any questions you may have regarding this agreement. In addition, we encourage you to review this agreement with separate counsel to answer any questions or concerns you may have.

This agreement may be executed in counterpart, and an electronically transmitted signature shall be deemed to be the legal equivalent of an original signature.

Thank you again for this opportunity. We look forward to working with you.



LTL Management LLC
Page 3

Very truly yours,

Robert M. Loeb
Partner



# STANDARD TERMS OF ENGAGEMENT

Except as modified in writing by the accompanying engagement letter or in another agreement signed by the Client and Orrick, the following provisions shall apply to the relationship between Orrick and the Client.

### 1. Client

Our engagement is only on behalf of each person or entity identified in the engagement letter accompanying these Standard Terms of Engagement. Our representation of the Client does not encompass (i) any officer, director, employee, owner, principal, member, partner of, or any other person affiliated with the Client; or (ii) any subsidiary, parent or other affiliate of the Client. If any of these persons or entities requires the services of counsel in connection with the Matters, we would be pleased to discuss whether we might be able to represent any of them, but any such representation would (a) need its own engagement letter, (b) depend on our review and disclosure to all concerned of any conflicts of interest that may arise in connection with any such concurrent representation, and (c) depend on appropriate consents being obtained from the Client and from those seeking such additional representation.

### 2. Scope of Engagement

The scope of Orrick's representation of the Client is limited to the Matters identified in the accompanying engagement letter, and such additional matters as the Client and Orrick may in their mutual discretion agree to from time to time. In each case, Orrick's agreement to any expansion of the scope of its representation of the Client will be subject, among other things, to such additional conflict checks, waivers, retainers, approvals, and other arrangements as Orrick may in its professional judgment deem necessary or appropriate in the circumstances. Except as otherwise expressly provided in any written engagement letter (or a written amendment of a prior engagement letter) between Orrick and the Client entered into in connection with such expansion of the scope of Orrick's representation, the agreement reflected in these Standard Terms of Engagement, and in the accompanying engagement letter, applies to Orrick's current representation of the Client and to any subsequent matters that Orrick agrees to undertake on the Client's behalf.

### 3. Waiver of Future Conflicts of Interest

Our agreement to represent the Client is conditioned upon the understanding that we are free to represent any clients and to take positions adverse to the Client or an affiliate of the Client in any matters where the representation either (i) is not adverse to the Client or (ii) if adverse to the Client, does not involve the same factual and legal issues as matters for which the Client has retained us or may hereafter retain us. Such matters could involve business transactions, patent counseling, patent prosecution, and patent validity and infringement opinion work, litigation, or otherwise. The Client should be aware that we provide services on a wide variety of legal subjects to a large number of clients both in the United States and internationally, some of whom are or may in the future operate in the same area of business in which the Client is operating or may operate. (A summary of Orrick's current practice areas and the industries in which we represent clients can be found on Orrick's web site at www.orrick.com.) We will, of course,



Confidential
Page 2

hold in confidence the Client's secrets and confidences. Similarly, the Client understands that while Orrick may obtain confidential information from other clients that may be of interest to the Client, Orrick cannot share such information with the Client. The Client consents to these other representations, agrees that it will not seek to disqualify Orrick from any such present or future representations, and waives any actual or potential conflict that might arise from such current or future representations so long as those other representations do not involve the same factual and legal issues as a current active engagement for the Client.

Notwithstanding the foregoing, we understand that during our representation of LTL in the chapter 11 case, Orrick must not hold or represent an interest adverse to LTL or its estate with respect to the Matters.

### 4. Internal Communications

The occasion might arise for us, at our own expense, to consult regarding our engagement for the Client with our own counsel (e.g., our General Counsel, other firm lawyers working with our General Counsel who do not perform work for the Client on the Matter, or our own outside counsel). To the extent that we are addressing our own rights or responsibilities, a conflict of interest might be deemed to exist between Orrick and the Client as to such consultation or resulting communications, particularly if a dispute were ever to arise between Orrick and the Client regarding the Matters. A condition of this engagement is that the Client hereby consents to such consultation occurring, and waives any claim of conflict of interest based on such consultation or resulting communications that could otherwise disqualify us from continuing to represent the Client or from acting in our own behalf, even if such consultation or communications might be deemed adverse to the interests of the Client. The Client acknowledges and agrees that any such consulting and communications are protected from disclosure to the Client by Orrick's own attorney-client privilege.

### 5. Responsibilities of Attorney and Client

We will provide to the Client legal counsel and assistance in accordance with the accompanying engagement letter. The Client will not look to or rely upon Orrick for any investment, accounting, financial or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom the Client may be dealing. Although we will at times communicate with the Client by e-mail, letter, or other written form, we may provide much of our counsel and assistance in telephone conversations and meetings with the Client. If the Client ever wishes for us to confirm any oral advice in writing, please let us know.

For us to represent the Client effectively, we need the Client to provide us with complete and candid information regarding the Matters, to keep us informed of relevant developments, to make decisions necessary for us to fulfill our responsibilities in the Matters, and otherwise to provide us the Client's reasonable assistance and cooperation.

We have a duty of confidentiality to the Client and each of our other clients. We take this duty very seriously and, except to the extent permitted by the applicable rules of professional conduct, we will



Confidential
Page 3

not disclose any confidential information of the Client to any other client or person. Similarly, we cannot disclose to the Client the confidences of any other client even when such information relates to matters that might affect the Client.

**6.    Fees, Costs, and Disbursements**

LTL shall be responsible for the payment of our bills. Our fees are based on the amount of time we spend on the Matter. Each Orrick attorney, legal assistant and other timekeeper assigned to the Matters will have an hourly billing rate. These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually, effective as of January 1 of each year, to reflect, among other factors, seniority advancements. In addition to fees, we also will bill the Client for in-house services such as telephone charges, document reproduction, word processing, computerized research, out-of-town travel, and messenger services.

Professional fees and expenses incurred by LTL during the chapter 11 case are subject to the requirements of the Bankruptcy Code and any interim compensation order entered in the chapter 11 case and are subject to review and approval by the Bankruptcy Court. While we will provide periodic statements to you of the fees and expenses incurred on your behalf, we recognize that the fees and expenses incurred during the chapter 11 case may only be paid as authorized by the Bankruptcy Court.

If any claim or action is brought against Orrick or any of its personnel which alleges negligence or wrongdoing of the Client or a third party, or if Orrick or any current or former attorney or employee of Orrick is asked or required by a third party to testify or produce documents as a result of Orrick's representation of the Client, the Client agrees to pay Orrick for any resulting costs or expenses, including Orrick's time, even if Orrick's representation of the Client has ended. This paragraph is not intended to apply to any claim brought by or on behalf of the Client alleging wrongdoing by Orrick.

Although Orrick may furnish estimates of fees or costs we anticipate will be incurred, these estimates shall not be binding, are subject to unforeseen circumstances, and are by their nature inexact.

**7.    Engagement Termination**

The Client may terminate this representation at any time, with or without cause, but in the case of litigation, court approval may be necessary. Subject to court approval and applicable rules of professional responsibility, Orrick also reserves the right to withdraw, if among other things, the Client fails to make timely payments of any invoice, the Client fails to cooperate or follow Orrick's advice on a material matter, or any fact or circumstance arises that, in Orrick's view, renders our continuing representation unlawful or unethical, or we otherwise have the right to withdraw pursuant to applicable rules of professional responsibility. Any termination of our representation of the Client would be subject to such approval as may be required from any court in which we are appearing on the Client's behalf. In the event of termination by either of us, the Client agrees to pay us fees and costs for work performed prior to termination, to the extent permitted by law.



Confidential
Page 4

**8.    Date of Termination**

Orrick's representation of the Client will be considered terminated at the earliest of (i) the Client's termination of the representation, (ii) Orrick's withdrawal from the representation, (iii) the substantial completion of Orrick's substantive work for the Client, or (iv) our sending you our final statement for services rendered in the Matters.

**9.    Client Files (Cloud Storage, Retention, Use, and Disposition)**

Orrick recognizes that cloud computing services offer valuable tools to its clients and has entered into arrangements with certain providers of those services to host, process, and analyze data, including client data. Orrick's primary data management system is cloud based in all permissible jurisdictions.

Unless otherwise required by outside counsel guidelines or specific client instruction, Orrick will retain all hardcopy and electronic records for a period of years consistent with Orrick's internal records retention policy. When that time expires, Orrick's policy is to destroy all records related to the Matters in a manner that preserves confidentiality. Orrick will use its best efforts to contact you, using the most up to date contact information in our possession, 60 days prior to the destruction of any of your records, so that you may provide alternate retention instructions as necessary. You understand and agree that records related to the Matters will be destroyed in the absence of such alternate instruction or if Orrick is unable to establish contact with you. If you have a records retention policy in place with which outside counsel will need to comply, please advise us so that we may so inform our records department.

You should understand that "materials" include paper files as well as information in other forms of storage, including voicemail, e-mail, printer files, electronic document files, facsimiles, dictation recordings, video files, and other formats. We reserve the right to make copies of documents generated or received by us in the course of our representation at our expense. When you request copies of documents from us, copies that we generate will be made at your expense. We will maintain the confidentiality of all documents throughout this process.

Our own files pertaining to the Matters will be retained by us (as opposed to being sent to you) or destroyed. These files include, for example, internal communications, firm administrative records, time and expense reports, personnel and staffing materials, and credit and account records. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any of our own files within a reasonable time after the engagement has concluded.

Orrick will not retain, use, or disclose the personal information we receive in connection with our representation of the Client for any (i) purpose other than for the specific purpose of our representing the Client and for our performance under the engagement letter, or as otherwise permitted by applicable privacy laws, or (ii) other commercial purpose unless otherwise required or permitted by outside counsel guidelines or specific Client instruction.



Confidential
Page 5

**10.    Use of Artificial Intelligence Tools and Machine Learning**

Orrick strives to maximize the benefits that innovative tools and approaches can provide for the Client. Orrick recognizes that cloud-based tools that use artificial intelligence or machine learning can be used to improve the efficacy and accuracy of legal services. Use of artificial intelligence and machine learning tools can also help to reduce the cost of providing legal services. Orrick has entered into arrangements with certain providers of artificial intelligence and machine learning tools to host, process, and analyze data, including client data, and, depending on the nature of the matter, will assess whether the use of such tools would benefit the Client. Like online services or platforms, such tools are not immune from security or quality compromises, but all are subject to and approved by Orrick's cyber security vendor risk management program. Additionally, artificial intelligence or machine learning tools may not be configured to the precise parameters of the required work, as many have pre-built machine learning models that vary as the tool ingests data. Orrick may use data gathered by using these tools to improve budgeting, precedent libraries, template documents, and other data sets to improve client service. Data that is processed into artificial intelligence tools may also be used to improve machine learning algorithms at Orrick or in the tools of third-party vendors. If the Client does not consent to the use of cloud-based artificial intelligence or machine learning tools, please advise Orrick not to do so.

**11.    Arbitration**

Although we think it is unlikely, a dispute could arise between us regarding some aspect of the engagement and Orrick's representation of the Client. Any such dispute, whether a claim by the Client against Orrick or by Orrick against the Client, including claims for unpaid fees and charges, negligence, quality of services, breach of contract or fiduciary duty, fraud, or any other claims relating to any aspect of the engagement and our representation of the Client is referred to herein as a "Dispute." If we are unable to resolve a Dispute among ourselves, the Client and Orrick agree to resolve such dispute through confidential binding arbitration as set forth below.

**Please note that in the event that a Dispute arises relating to Orrick's fees, the Client may have the right to arbitration of the Dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which will be provided to the Client upon the Client's request**.

The arbitration provisions of this Section 11 shall apply to all Disputes and shall survive termination of this agreement or the engagement. The Client understands the consequences of agreeing to binding arbitration under this Section 11, including (i) relinquishing any constitutional or statutory right to have the Dispute determined by a court of law or by a jury, (ii) that discovery of information in arbitration may be limited, (iii) that the application of the rules of evidence may be relaxed, (iv) that the arbitration decision will be final and binding and there will be no right of appeal, judicial, or otherwise, and (v) that arbitration is more private than a court trial.

The party wishing to initiate arbitration hereunder (the "initiating party") will deliver to the other party (the "other party") a written demand for arbitration setting forth the basis of the initiating party's claim and the dollar amount of damages sought. Once an initiating party commences an arbitration hereunder,



Confidential
Page 6

the initiating party and the other party will engage in a good faith, one-day, non-binding mediation before one mediator selected from the panel of mediators of the JAMS (or its successor) before proceeding with the arbitration. Each party in the mediation will pay such party's own costs and fees, and the parties will split the fees of the mediator. The mediation will take place in the city in the United States where Orrick spent the most time working on the engagement. Orrick and the Client may mutually agree to extend the mediation beyond one day.

To the extent that the Dispute is not resolved through the mediation process described above, an arbitration hereunder will (i) be heard and determined by an arbitrator (who will be a retired state or federal judge with at least five years of judicial experience), selected by the parties from a list of neutral arbitrators provided by JAMS, and if the parties cannot agree, by JAMS itself, (ii) take place in the city in the United States where Orrick spent the most time working on the engagement, and (iii) be conducted in accordance with JAMS Arbitration Rules and Procedures (or any successor rules and procedures), in effect at the time the initiating party delivers to the other party the demand for arbitration required hereunder. In determining a claim, the arbitrator will apply the laws of the State of New York. The arbitration proceedings and the award of the arbitrator will be confidential. Each party in the arbitration will pay such party's own costs and fees, and the parties will split the fees of the arbitrator. The ruling of the arbitrator will be final and binding on both parties, and no appeal may be taken. The ruling of the arbitrator may be entered and enforced as a judgment by a court of competent jurisdiction. The arbitration provisions hereunder may be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees, and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.

### 12. Disclosure for Promotional Purposes

Except as you may otherwise inform us, and subject to any confidentiality arrangements or agreements of which we are made aware between you and any other party with respect to the Matters, you agree that we may include, in a list of transactions and litigations which the Firm uses for promotional (including press releases and social media posting) and internal purposes, a summary description of publicly disclosed aspects of the Matters on which we represent you.

### 13. Binding Agreement

The engagement letter and these Standard Terms of Engagement represent the entire understanding and agreement between the Client and Orrick with respect to the subject matter referred to herein. By signing below, the Client acknowledges that the engagement letter and these Standard Terms of Engagement have been carefully reviewed and their content understood, and that the Client agrees to be bound by all of the terms and conditions. Furthermore, the Client acknowledges that Orrick has made no representations or guarantees to the Client regarding the outcome of the Matters or the time necessary to complete the Matters. The provisions of this letter may be amended only in writing and if signed by both parties.



Confidential
Page 7

### 14. Acceptance of Engagement Terms

By signing below, you acknowledge and represent that you have read the engagement letter and these Standard Terms of Engagement, that you understand and agree to the terms and provisions, and that you are authorized to do so on behalf of the Client.

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
Robert M. Loeb
Partner

LTL MANAGEMENT LLC

By: _____
John K. Kim
Chief Legal Officer