UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-1(b)**

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones
Colin R. Robinson
Peter J. Keane
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
　　　　crobinson@pszjlaw.com
　　　　pkeane@pszjlaw.com

*Counsel to Arnold & Itkin LLP*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>　　　　　　　　Debtor.¹ | Chapter 11<br><br>Case No. 23-12825 (MBK)<br><br>**Re: Docket No. 240** |

## OBJECTION OF ARNOLD & ITKIN LLP TO DEBTOR'S MOTION FOR AN ORDER (I) SCHEDULING HEARING ON APPROVAL OF DISCLOSURE STATEMENT; (II) ESTABLISHING DISCLOSURE STATEMENT OBJECTION DEADLINE; AND (III) GRANTING RELATED RELIEF

Arnold & Itkin LLP ("Arnold & Itkin"), on behalf of certain talc personal injury claimants represented by Arnold & Itkin, hereby files this objection to the *Debtor's Motion for an Order (I) Scheduling Hearing on Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief* [Docket No. 240] (the "Motion").²

---

¹ The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

² Capitalized terms not otherwise defined herein shall have their meaning as set forth in the Motion.

**Objection**

1.  With seven motions to dismiss pending from different constituencies[3] and serious questions as to the legitimacy of this chapter 11 case outstanding, the Motion is premature and should be denied on its entirety on that basis alone. It is premature (and potentially quite wasteful) to go ahead with what are likely to be hotly-contested proceedings regarding the approval of a disclosure statement and of plan solicitation and vote tabulation procedures – or any other plan-related proceeding – until the threshold issue of whether the Debtor even belongs in chapter 11 is resolved. At a minimum, such plan-related proceedings should not go forward until after the Court rules on the pending motions to dismiss following the expected June hearing on those motions.

2.  Even if not premature, the Motion should be denied on the merits. The Motion seeks to reduce the time to object to the approval of a disclosure statement (the "Disclosure Statement") for the Debtor's yet-to-be-filed plan (the "Plan")—which of itself ordinarily requires a notice period of at least 28 days. But that is not all. The Motion also seeks to require that objections to the approval of unspecified procedures for the solicitation and tabulation of votes on the Plan (the "Solicitation and Vote Tabulation Procedures"), which the Debtor mislabels as mere "Solicitation Procedures" (Motion at 2) – also be filed within the same notice period. Those procedures may determine the Plan's fate; will require careful scrutiny; and are likely to engender substantial controversy: The TCC has already raised serious and substantial concerns in

---

[3] Docket Nos. 286 (TCC); 335 (Ad Hoc Group of Mesothelioma Claimants); 346 (Paul Crouch, individually and as executor as prosequendum of the Estate of Cynthia Lorraine Crouch); 350 (Ad Hoc Committee of States Holding Consumer Protection Claims); 352 (joinder of various talc mesothelioma claimants); 358 (Maune Raichle Hartley French & Mudd, LLC); 379 (U.S. Trustee); and 384 (Arnold & Itkin).

its Motion to Dismiss regarding the thousands of votes the Debtor claims to have for its Plan.[4] Meanwhile, the Debtor does not propose to shorten its time to reply to objections to the adequacy of the Disclosure Statement or to the Solicitation and Vote Tabulation Procedures.

3. In a mass tort case as large, complex and consequential as this one, there would be no "cause" to reduce the 28-day notice period for objecting to the approval of a disclosure statement prescribed by Bankruptcy Rule 2002(b) to 21 days, even if approval of the disclosure statement was the only matter at issue. There certainly is no cause to do so when objections to the approval of very consequential, and likely controversial, procedures regarding vote tabulation must also be filed within the same time period. There is "cause" to alter the objection period— not to reduce it, but to enlarge it to 45 days.

4. This is a complex mass tort chapter 11 case affecting tens of thousands of sick and, in many cases, dying personal injury claimants, in which the Debtor seeks to invoke the unique and extraordinary provisions of section 524(g) of the Bankruptcy Code (the "Code"). This is not the "run-of-the mill" chapter 11 case that the drafters of Rule 2002(b) probably had in mind when they chose the 28-day notice period for objections to the adequacy of a proposed disclosure statement. The 28-day notice period under Rule 2002(b) should be enlarged, not reduced, in light of the highly consequential, non-run-of-the- mill nature of this chapter 11 case, the complex issues it raises, and the need to address, at the same time, important plan solicitation and vote-counting issues that are unique to a large mass tort chapter 11 case.

---

[4] *See Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management LLC* (Docket 286-1) at 18-21. *See also id.* at 16 ("LTL's Attempt to Create the Illusion of Support for its Second Filing.")

A. **The Motion should be denied at this time, and the dismissal motions should be heard first, before procedures regarding a disclosure statement and related matters are established.**

5. The Third Circuit mandated that this Court dismiss LTL I, which it did. But, through some corporate sorcery, the Debtor and J&J tried to conjure up "financial distress" on the Debtor's part for a second run at chapter 11. The Debtor then filed its second chapter 11 case in less time than it takes to watch a bad movie sequel. The Debtor now claims that, in chameleon-like fashion, it succeeded in placing itself in "financial distress" and now qualifies for a new chapter 11 case.

6. Serious questions regarding both the legitimacy of this unprecedented subterfuge and whether it even succeeded in creating financial distress, among others, have prompted multiple parties to file motions to dismiss this chapter 11 case on good faith grounds. As the Court itself acknowledged, "[o]nce the Court hears from the movants with regard to the anticipated motion to dismiss, ***undoubtedly the debtor has an uphill battle***." 4/20/23 Hrg. Tr. at 9, ln. 8-10 (emphasis added). The Court has now heard from the movants with regard to their motions to dismiss, and the Debtor faces a steep and insurmountable uphill climb.

7. The dismissal motions present *threshold and case dispositive issues* the Court should address first. Given the Third Circuit's clear mandate and the fact that dismissal of LTL I occurred little more than a month ago, the Court should place the dismissal motions in LTL II front and center before undertaking any proceedings related to a disclosure statement, solicitation and vote tabulation procedures, or a plan. Such proceedings are likely to be highly contentious and involve the substantial expenditure of time and resources by the parties and the Court—all of which will be wasted if this case shares the same fate as LTL I.

8. LTL I resulted in a substantial expenditure of time, effort and, expense—all of which proved to be wasted after the Third Circuit mandated dismissal on the basis that the Debtor should not have been in chapter 11 in the first place. Given the "uphill battle" the Debtor faces, history is likely to repeat itself with respect to the dismissal of LTL II. If anything, the circumstances here bespeak even greater bad faith than those that led the Third Circuit to mandate dismissal in LTL I. But the Court should avoid a potential repeat of the waste of time and resources that LTL I engendered by, at a minimum, deferring proceedings on any disclosure statement, plan, and related matters, until at least the Court itself has resolved the dismissal motions. An expedited disclosure statement and plan process will only launch a litigation battle that distracts from the key question in LTL II: whether the Debtor is entitled to be in chapter 11 in the first place. Unlike nearly every other chapter 11 case that proceeds towards plan confirmation, serious questions about the very legitimacy of this second chapter 11 filing hang like a dark cloud over all proceedings in this case.

**B.    If the Court does consider the Motion on the merits, the Court should enlarge, not reduce, the objection period.**

9. Alternatively, if the Court elects to proceed with establishing a schedule for objections and a hearing respecting the approval of the Disclosure Statement and the Solicitation and Vote Tabulation Procedures, procedural fairness dictates that the Court enlarge, not reduce, the applicable objection period.

10. Bankruptcy Rule 2002(b) requires "not less than 28 days' notice by mail of the time fixed (1) for filing objections and the hearing to consider approval of a disclosure statement. . . ." Fed.R. Bankr. P. 2002(b). Taken together, Bankruptcy Rule 9006(b) (enlargement of time) and Bankruptcy Rule 9006(c) (reduction of time) empower the court "for cause shown" to enlarge or reduce this notice period.

11. The Debtor has shown no "cause" for reducing the period for objecting to its Disclosure Statement here, especially where the Debtor seeks, not only the approval of a disclosure statement, but also the approval of as yet unspecified procedures for the solicitation and tabulation of votes on the Plan – highly consequential procedures that themselves raise complex issues unique to a mass tort chapter 11 case involving tens of thousands of individual personal injury claimants. The Debtor's empty platitudes about "prompt resolution" and "best interest" (Motion ¶13) are insufficient to establish "cause" for reducing the time to object to a matter as important as the adequacy of a proposed disclosure statement in a case as large, complex, and consequential as this one—especially where, as here, the Debtor seeks to require that objections to plan solicitation procedures and vote tabulation procedures be filed within the same notice and objection period. To the contrary, "cause" exists for *enlarging* the 28-day period specified in Bankruptcy Rule 2002(b).

12. The 28-day notice period for objecting to the approval of a disclosure statement was likely selected with the "typical" chapter 11 case in mind – not with a mass tort chapter 11 case involving tens of thousands of individual claimants and the unique provisions and requirements of section 524(g) of the Code in mind. As but one example of the panoply of complex disclosure issues that will likely arise in connection with the adequacy of the Disclosure Statement, the $8.9 billion trust funding number touted by the Debtor and certain plaintiffs' lawyers (and any proposed allocation of that fund among different categories of talc-related claims) appears to be untethered to any reasoned, professional estimate either as to the likely number of current and unknown future talc claimants in each category, or the value of those claims, that was available to the attorneys who negotiated this number and any allocation at the time. Accordingly, assessing the information contained in the proposed Disclosure Statement to evaluate potential objections to the adequacy of disclosure on this subject alone will require

parties in interest to review and analyze carefully the disclosures regarding the derivation of the $8.9 billion figure and of any proposed allocation among various categories of talc claims, the estimated number of talc-related claims in each category, the basis for any metrics or valuations that will be used to determine plan trust distributions to individuals in each category of talc claimants, the estimated recoveries of individual present and future talc claimants in each category under the Plan, and the basis for such estimates. Parties in interest must then consider and prepare objections to the adequacy of such disclosures.

13. Add to this that the Debtor seeks to have the same 21-day objection period apply to objections to the approval of not-yet proposed solicitation and vote tabulation procedures which are of consequence and themselves raise unique and complex issues in a mass tort case involving tens of thousands of mass tort claimants. Arnold & Itkin respectfully submits that in light of these considerations, the Court should enlarge the objection period to 45 days, in order to give parties in interest a reasonable and appropriate period and opportunity to address the atypical issues raised not only by the approval of any disclosure statement filed in a case such as this one but also by the approval of solicitation and vote tabulation procedures.

### Reservation of Rights

14. Arnold & Itkin reserves all of its rights, claims, defenses, and remedies, with respect to the Motion, the Debtor's supposed Plan and Disclosure Statement, plan solicitation and vote tabulation procedures, and the validity and legitimacy of this chapter 11 case.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, Arnold & Itkin respectfully requests that the Court: (i) deny the Motion in its entirety; (ii) if the Court does not deny the Motion, enlarge the applicable objection period to 45 days; and (iii) grant such other and further relief as the Court deems appropriate.

Dated: May 5, 2023    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Laura Davis Jones
Colin R. Robinson
Peter J. Keane
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:    ljones@pszjlaw.com
    crobinson@pszjlaw.com
    pkeane@pszjlaw.com

*Counsel to Arnold & Itkin LLP*