**GIBBONS P.C.**
Robert K. Malone, Esq.
David N. Crapo, Esq.
Kyle P. McEvilly, Esq.
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
rmalone@gibbonslaw.com
dcrapo@gibbonslaw.com
kmcevilly@gibbonslaw.com

*Attorneys for the States of*
*New Mexico and Mississippi*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>LTL MANAGEMENT LLC,[1]<br>Debtor. | Chapter 11<br>Case No.: 23-12825 (MBK)<br>Judge: Michael B. Kaplan |

# MOTION OF THE STATE OF NEW MEXICO AND THE STATE OF MISSISSIPPI TO DISMISS THE SECOND BANKRUPTCY PETITION OF LTL MANAGEMENT LLC FOR CAUSE, PURSUANT TO SECTION 1112(B) OF THE UNITED STATES BANKRUPTCY CODE (11 U.S.C. §§ 101, *ET SEQ.*), AND JOINDER IN MOTIONS TO DISMISS FILED BY CERTAIN OTHER PARTIES

TO: HONORABLE MICHAEL B. KAPLAN, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

The States of New Mexico and Mississippi, parties-in-interest herein (collectively, "**States**"), by and through their counsel, Gibbons P.C., hereby submit this: (i) Motion to Dismiss the Second Bankruptcy Petition of LTL Management, LLC ("**Debtor**" or "**LTL**") for cause, pursuant to Section 1112(b) of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*)

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

and (ii) Joinder in Certain Other Motions To Dismiss ("**Motion**")[2] and, in support thereof, respectfully represent as follows:

## PRELIMINARY STATEMENT

1. On January 30, 2023, the United States Court of Appeals for the Third Circuit dismissed LTL's initial bankruptcy case (hereafter, "**LTL 1.0**") because LTL failed to demonstrate the "immediate" "financial distress" that is a necessary component of a "good faith" bankruptcy filing. *In re LTL Management, LLC*, 64 F.4th 84, 93, 100-11 (3d Cir. 2023). Based on the record before it, the Third Circuit concluded that LTL enjoyed access to funding more than adequate to address the claims of its creditors, including $61.5 billion in funding available pursuant to a funding agreement ("**2021 Funding Agreement**"), which was backed by both LTL's ultimate parent, Johnson and Johnson ("**J&J**"), and its immediate parent, then known as Johnson & Johnson Consumer, Inc. ("**New JJCI**") and which the Third Circuit characterized as an "ATM disguised as a contract." *Id.* at 109. The Third Circuit warned LTL against attempting to manufacture financial distress by terminating the 2021 Funding Agreement, opining that such a transparent maneuver would be vulnerable to avoidance as a fraudulent transfer. *LTL Management*, 64 F.4th at 109 n.18.

2. The Third Circuit considered additional factors in its finding of LTL's bad faith in filing LTL 1.0. Those factors included: (i) a lack of evidentiary support for the actual value of LTL's talc liabilities, (ii) LTL's admission that it could pay its debts as they came due; and (iii) the limited nature of LTL's business operations. As to the latter factor, LTL's business operations have consisted of serving as a debtor in bankruptcy solely to manage and defend talc-related claims (thereby insulating J&J's assets from those claims) and overseeing the operations

---

[2] Pursuant to Rule 9013-1(a)(3) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey, the States rely on the legal bases set forth in this Motion in lieu of filing a separate memorandum.

2

of its subsidiary, Royalty A&M, which owns a portfolio of royalty streams. Consequently, the Third Circuit's failure to discern any legitimate purpose for the LTL 1.0 filing should have come as a surprise to no one.

3. Following the issuance of the Third Circuit's opinion, LTL unsuccessfully sought a rehearing *en banc* and a stay of the Third Circuit's mandate to enable it to file a petition for a *writ of certiorari* to the United States Supreme Court. In reality, however, LTL's exercise of its appellate remedies merely served as a smoke screen for a transparent attempt at an end-run around the Third Circuit's decision by manufacturing the semblance of financial distress. In a blatant violation of the Third Circuit's direction against doing so (*see* 64 F.4th at 109 n.18, 110) and while still a debtor in possession prior to the dismissal of LTL 1.0 by this Court, LTL terminated the 2021 Funding Agreement and replaced it with a far less generous funding arrangement (hereafter, "**2023 Funding Agreement**"). *See* the Declaration of John K. Kim in Support of First Day Pleadings ("**Kim Decl.**), ¶ 78; Dkt. No. 4, ¶ 78. New JJCI (renamed Johnson & Johnson Holdco (NA) Inc. ("**Holdco**")) transferred its lucrative consumer products business to its corporate parent, thereby reducing its ability to provide backstop funding to LTL. Kim Decl. ¶ 76; Dkt. No. 4, ¶ 78. LTL's transparent maneuvering fails utterly. Even LTL's Chief Legal Officer, John K. Kim, is constrained to acknowledge LTL's current ability to pay its debts as they come due. *See Transcript of the Debtor's Motion for an Order . . . (I) Declaring that the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors or (II) or Preliminarily Enjoining Such Actions and (iii) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on A Preliminary Injunction [Adversary Docket 2], etc.* ("**April 18th Transcript**") at 180:20-25; Dkt. No. 286-4.

4. LTL's abusive scheme went public in early April 2023. On March 31, 2023, the Third Circuit issued its Mandate. U.S.C.A. Third Circuit Dkt. No. 181-1. On April 4, 2023, at 1:49 P.M., this Court issued its order dismissing LTL 1.0. Bankr. Case No. 21-30589 (MBK) Dkt. No. 3938. Only two hours and eleven minutes later, LTL filed its bankruptcy petition in the instant case (hereafter, "**LTL 2.0**"). Dkt. No. 1. As demonstrated in the Kim Decl., ¶ 8, LTL's goal in LTL 2.0 remains the same as in LTL 1.0—to serve as the vehicle for managing and defending talc-related liabilities, all for the benefit of J&J and Holdings. Dkt. No. 4, ¶ 8.

5. The bad faith of the LTL 2.0 filing is amply demonstrated in the pleadings in support of motions to dismiss the case filed by: (i) the Official Committee of Talc Claimants ("**Talc Committee**") [Dkt. No. 286]; (ii) the Ad Hoc Committee of States Holding Consumer Protection Claims ("**Ad Hoc Committee**") [Dkt. No. 350]; (iii) the United States Trustee for this Region (the "**U.S. Trustee**") [Dkt. No. 379]; and (iv) Arnold & Itkin (on behalf of certain talc claimants) [Dkt. No. 384] (collectively, the "**Movants**"). For that reason, the States join in the Movants' motions to dismiss the LTL 2.0 filing. That being the case, the States, while adopting many of their respective arguments, do not intend to reiterate the factual and legal discussions by the Movants in this Motion. Instead, the States will focus on the issue of state sovereignty. In that regard, the States will demonstrate that the bad faith attending the filing of LTL 2.0, on its own, would render any attempt by LTL to use LTL 2.0 to interfere with the States' enforcement of their police and regulatory powers against third parties and any claims arising therefrom (*e.g.*, by third-party releases) an affront on state sovereignty, particularly state sovereign immunity requiring, in and of itself, the dismissal of LTL 2.0.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and the *Amended Standing Order of Reference* from the United States District Court for the District of New Jersey, dated September 18, 2012. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order adjudicating this Motion consistent with Article III of the United States Constitution. The statutory basis for the relief requested herein is section 1112(b) of the Bankruptcy Code.

**BACKGROUND FACTS**

7. In support of the Motion, the States adopt and incorporate herein by reference the factual statements contained in the pleadings filed in support of their respective motions to dismiss by: (i) the Talc Committee; (ii) the Ad Hoc Committee; (iii) the U.S. Trustee; and (iv) Arnold & Itkin.

8. As of the Petition Date, the only "claims" the States assert against LTL are the "claims" manufactured by LTL by way of the divisional merger, a/k/a "Texas Two-Step." The States, on the other hand, assert no claims against LTL—only against non-debtors J&J and Holdings. The only "dealings" the States have had with LTL are in connection with its bankruptcy filings. Established only in 2021, LTL could not have engaged in the violations of the States' consumer protection statutes the States seek to enforce in their respective state court actions. In sum, J&J and Holdings remain the alleged "bad actors" against whom the States seek relief.

9. Notwithstanding that the States have no claim against LTL, they are undoubtedly parties-in-interest. At the April 18, 2023 hearing ("**April 18th Hearing**") on LTL's motion in

5

*LTL Management, LLC v. Those Parties Listed on Appendix A to Complaint, et al*. (Adv. Pro. No. 23-01092 (MBK)) for an order applying or extending the automatic stay against non-debtors and related relief, LTL, through counsel, addressed the outline of a proposed plan of reorganization in LTL 2.0. As widely reported by both J&J and various media outlets, one component of the proposed plan is a limited fund of $400 million to address the governmental claims of all states Attorneys General ("**State AG Claims**").[3] April 18th Transcript at 199:15-18 (and the referenced PowerPoint slide); 336:9-25. Dkt. No. 286-4. Apparently, the $400 million is intended as a cap on such claims. *Id*. at 336:20-22; Dkt. No. 286-4. Hence, LTL must contemplate the inclusion of channeling injunctions against State AG Claims and third-party releases of such parties as J&J.

## RELIEF REQUESTED AND REASONS THEREFOR

10. In support of the Motion, the States adopt and incorporate herein the legal arguments contained in the pleadings filed in support of their respective motions to dismiss by: (i) the Talc Committee; (ii) the Ad Hoc Committee; (iii) the U.S. Trustee; and (iv) Arnold & Itkin and join their motions to dismiss LTL's petition in this case because it has been filed in bad faith.

11. As amply demonstrated below, LTL's filing of a second chapter 11 to (a) "manufacture" claims against LTL, and (b) summarily limit and cap claims against not only itself, but solvent non-debtors, most notably J&J, constitutes, *inter alia*, an affront to the States' sovereignty, particularly their sovereign immunity, and, for this reason alone, the LTL 2.0 petition must be dismissed by this Court.

---

[3] The Debtor only refers to State AG Claims, though the $400 million would necessarily include federal governmental and local municipality claims.

6

12. The Constitution "specifically recognizes the [s]tates as sovereign entities." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 71 n.15 (1996); *accord Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991) ("[T]he States entered the federal system with their sovereignty intact"). As such, the states "maintain certain attributes of sovereignty, including sovereign immunity." *In re Venoco LLC*, 998 F.3d 94, 101 (3d Cir. 2021) (citations omitted). The Supreme Court "has consistently held that an unconsenting State is immune from suits brought in the federal courts by her own citizens as well as by the citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). "[A]s the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the states enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other [s]tates) except as altered by the plan of the Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 713 (1999).

13. Like its predecessor, LTL 2.0 implicates core aspects of state sovereign immunity, because it seeks to use the federal bankruptcy court (a forum to which the States have not consented) to resolve actions grounded in state laws and in turn claims asserted by the States against non-debtor third parties. In *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356 (2006) ("**Katz**"), the Supreme Court concluded that "[s]tates agreed in the plan of the [Constitutional] Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies'" (*id*. at 377) but that "[t]he scope of this consent was limited." *Id*. at 378. The *Katz* Court expressly did not "mean to suggest that every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge on state sovereign immunity." *Id*. at 378 n.15. The Supreme Court also recognized that

bankruptcy jurisdiction is, at its core, *in rem*. *Id.* at 362 (citing *Gardner v. New Jersey*, 329 U.S. 565, 574 (1947) ("The whole process of proof allowance and distribution is, shortly, an adjudication of interests claimed in a *res*."). By ratifying the Bankruptcy Clause, therefore, the States waived their sovereign immunity only to proceedings that further a bankruptcy court's exercise of its *in rem* jurisdiction over property of the debtor and the bankruptcy estate. *In re Venoco LLC*, 998 F.3d at 99 (citing *Katz*, 546 U.S. at 378).

14.     In determining the scope of that limited subordination of state sovereign immunity, the *Katz* Court looked to the contemporary legal context in which the Bankruptcy Clause was ratified, with which the Framers of the Constitution had to have been familiar. *Katz*, 546 U.S. at 362. The Framers would have understood the "critical features" of a bankruptcy proceeding to be: (i) the bankruptcy court's exercise of exclusive jurisdiction over the debtor's assets; (ii) the equitable distribution of those assets; and (iii) the discharge of the debtor. *Id.* at 363-64 (citations omitted); *Venoco*, 998 F.3d at 105. The Framers also would have understood that states were bound by a debtor's discharge. *Katz*, 546 U.S. at 364 (citations omitted). They would have also understood that the Bankruptcy Clause provided *in certain limited respects*, for more than simple adjudication of the rights in the *res*" (*id.* at 370 (emphasis added)), including certain orders ancillary to *in rem* adjudications, such as: (i) orders imprisoning recalcitrant third parties in possession of assets of the debtor; (ii) orders directing turnover of a debtor's assets; (iii) avoidance and recovery of fraudulent or preferential transfers; and (iv) the issuance of writs of habeas corpus releasing debtors from prison. *Id.* at 370-74 (citations omitted). In sum, the Framers' understanding of bankruptcy would have been limited to liquidation proceedings not unlike current Chapter 7 proceedings.

15. Wholly lacking from such an understanding of bankruptcy is the concept of reorganizing and restructuring a business entity. Only in 1938 did Congress amend the Bankruptcy Reform Act of 1898 to include reorganization and restructuring proceedings. Bradley Hansen, "Bankruptcy Law in the United States," *Economic History Services*, EH.net (last visited Aug. 3, 2022). The complex reorganizations of the last forty (40) years would, therefore, have been far outside the Framers' understanding of bankruptcy, as would injunctions of litigation between non-debtors, like the States' litigation of consumer protection claims against non-debtor entities like J & J. *See, e.g.*, *Village of Rosemont v. Jaffe*, 482 F.3d 926, 937 (7th Cir. 2007) (finding "nothing in either *Katz* or [*Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004) ("**Hood**")] that undermines the state's sovereign immunity" from actions to enjoin the state from exercising its regulatory authority over a gaming license).

16. The Third Circuit has distilled three (3) specific factors from *Katz* to be used in the state sovereign immunity analysis of a bankruptcy case, matter or proceeding. They are whether a proceeding involves: (i) the exercise of exclusive jurisdiction over all of the debtor's property; (ii) the equitable distribution of that property among the debtor's creditors; and (iii) the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her or it from old debts." *Venoco*, 998 F.3d at 104. In doing so, the Third Circuit rejected *dictum* in *Allen v. Cooper,* 994 S.Ct. 994, 1002 (2020) concerning the waiver of state sovereign immunity under the Bankruptcy Clause, stating that the *dictum* does not mean that "sovereign immunity can never be asserted before a bankruptcy court for [*Katz*] was clear that it was deemed waived in some but not all bankruptcy proceedings." *Venoco*, 998 F.3d at 104.[4] *See also In re Philadelphia Entm't & Dev.*

---

[4] Of even more importance, *Allen v. Cooper* considered only whether the Copyright Remedy Clarification Act of 1990 waived states' sovereign immunity. The Court addressed bankruptcy and the Bankruptcy Clause only to reject their applicability to the case before it. The Court was not required, and did not address, the scope of the limited waiver of state sovereign immunity arising out of the Bankruptcy Clause.

9

*Partners LP*, 860 Fed. App'x 25, 28 (3d Cir. 2021) (debtor's action to avoid state's pre-petition revocation of a gaming license as a fraudulent transfer was barred by sovereign immunity because the debtor could not show that it had a property interest in the license and, for that reason, the action did not further the bankruptcy court's *in rem* bankruptcy jurisdiction).

17. Any reliance on the waiver of state sovereign immunity in 11 U.S.C. § 106(a) to expand the scope of the narrow waiver of sovereign immunity under the Bankruptcy Clause would be misplaced. The Supreme Court expressly did not address the constitutionality of the application of § 106(a) to the states in *Katz*, relying instead on the Bankruptcy Clause and its historical context.[5] The Third Circuit held in *In re Sacred Heart Hospital of Norristown*, 133 F.3d 237 (3d Cir. 1998) that the waiver of the states' sovereign immunity in section 106(a) is unconstitutional, at least in actions to recover money or property from the states. *Id*. at 245. Subsequently, in *Venoco*, the Third Circuit stated that *Hood* and *Katz* had "displaced" its earlier opinion, but also acknowledged that *Sacred Heart Hospital* has never been "explicitly overturned." Having not been "explicitly overturned," *Sacred Heart Hospital's* holding remains viable and controlling on the issue of state sovereign immunity, and for that reason, *Katz* and *Venoco*, and not §106(a), govern the scope of the waiver of state sovereign immunity with respect to bankruptcy matters.

18. Ignoring the limits of the waiver of sovereign immunity arising from the Bankruptcy Clause increases the possibility of interference with states' exercise of their police powers to protect public health, welfare and safety. The Bankruptcy Code is explicit and clear that the automatic stay simply does not apply to government regulatory actions. 11 U.S.C. §

---

[5] Similarly, in *Hood,* relied on the bankruptcy court's unquestioned jurisdiction over the estate *res* to hold that sovereign immunity did not bar the bankruptcy court from discharging a student loan guaranteed by the State of Tennessee. *Id.* at 448. In *Hood*, the Court expressly declined to address the constitutionality of §106(a). *Id.* at 445.

10

362(b)(4) (excluding "an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power"); *In re Nortel Networks, Inc.*, 669 F.3d 128, 141 (3d Cir. 2011); *U.S. v. Nicolet, Inc.*, 857 F.2d 202, 208 (3d Cir. 1988) (excepting, *inter alia*, "consumer protection" actions under "the police and regulatory exemption"); *In re Halo Wireless, Inc.*, 684 F.3d 581, 587 (5th Cir. 2012) ("This exception discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare."). It is well established that "the automatic stay provision contained in subsections 362(b)(4)-(5) ***should itself be construed broadly***," and "the automatic stay provision should, whenever possible, ***be read in favor of the States***." *Penn Terra Ltd. v. Dep't of Envtl. Res., Commonwealth of Pennsylvania*, 733 F.2d 267, 273 (3d Cir. 1984) (emphases added) ("No more obvious exercise of the State's power to protect the health, safety, and welfare of the public can be imagined."). The outline of the contemplated LTL 2.0 plan as presented at the April 18th Hearing, indicates that the States, among others, will be subject to channeling injunctions and third-party releases. As such, the ability of the States to exercise their police and regulatory powers for consumer protection are very much in jeopardy if such a plan were subsequently confirmed by this Court.

19. As amply demonstrated above and in the pleadings filed by the Talc Committee, the Ad Hoc Committee, the U.S. Trustee and Arnold & Itkin, the LTL 2.0 petition is incurably tainted with bad faith. It has become clear that LTL used its pursuit of appellate rights as a smokescreen for its efforts to create the charade of the financial distress necessary for a legitimate bankruptcy filing. While still a debtor in LTL 1.0 and without notice to creditors and

11

parties in interest or the approval of this Court,[6] LTL disposed of its rights to $61.5 billion in funding by terminating the 2021 Funding Agreement and entering into the less generous 2023 Funding Agreement.  Meanwhile, Holdco, which (under the name of New JJCI) had backstopped the 2021 Funding Agreement, transferred its profitable consumer products business to its parent, thereby reducing its value as a backstop funder.  All of this was done in defiance of the Third Circuit's warning to LTL not to attempt the manufacture the semblance of a financial distress that did not, in fact, exist.  In addition to purportedly capping the value of the States' claims, LTL also proposes to subject the States, among others, to channeling injunctions and third-party releases to the detriment of their exercise of their police and regulatory powers related to consumer protection.

20.     Incurably tainted by bad faith, LTL 1.0 and now 2.0 is not the type of bankruptcy case envisioned by the Supreme Court in *Katz*, the Third Circuit in *Venoco* or even the Framers of the Constitution and the Bankruptcy Clause.  In fact, in the absence of genuine financial distress, the LTL 2.0 filing is a sham, a blatant abuse of the remedies available under the Bankruptcy Code.  The abusive nature of the LTL 2.0 filing is underscored by LTL's Chief Legal Officer, Mr. Kim concession that LTL has access to sufficient funds to pay its obligations as they become due.  ***In other words, there was no need to file LTL 2.0.***  Nevertheless, the proposed plan outlined by Mr. Kim at the April 18th Hearing provides for capping all state governmental claims at $400 million, which will require the imposition of channeling injunctions and third-party releases on the States.  Those remedies fall far outside the scope of the waiver of sovereign immunity arising out of the Bankruptcy Clause and interfere with the States' exercise of their police powers to protect public health and safety, more specifically in the area of

---

[6] The States contend that this transaction was clearly outside the ordinary course of LTL's business and, at minimum, required court approval under § 363 of the Bankruptcy Code.

12

consumer protection. The bad faith of the LTL 2.0 filing and the impropriety of the anticipated injunctions and third-party releases in an LTL 2.0 plan of reorganization also constitute an affront to state sovereignty, particularly state sovereign immunity.

21. Because they would violate the States' sovereign immunity, the inclusion of the anticipated channeling injunctions and third-party releases in any plan LTL proposes will preclude its confirmation over the States' objection. *See* 11 U.S.C. § 1129(a)(3) (conditioning the confirmation of a plan on it having been "proposed in good faith and not by any means forbidden by law"). Additionally, because a debtor's inability to effectuate the consummation of a confirmed plan constitutes cause to dismiss a bankruptcy case (11 U.S.C. § 1112(b)(4)(M)), it follows that a debtor's inability to propose a confirmable plan should also be considered cause for dismissal.

22. The States intend to object to any plan that would limit their ability to pursue governmental and regulatory claims against ***non-debtor*** third parties arising out of talc-related injuries. LTL's current proposed plan indisputably contemplates such injunctive relief. Accordingly, LTL is currently unable to propose a confirmable plan, and, for that reason, the LTL 2.0 petition must be dismissed, and any resolution of the States' claims against non-debtor third parties must be addressed outside the context of an LTL bankruptcy case.

23. In sum, the States submit that the LTL 2.0 petition was demonstrably filed in bad faith and patently was not the type of bankruptcy filing that could have been within the contemplation of the Framers of the Constitution at the time the Bankruptcy Clause was ratified. The terms of the proposed plan outlined at the April 18th Hearing amply demonstrate the affront to state sovereignty, particularly state sovereign immunity occasioned by the LTL 2.0 filing. Under the circumstances, it is submitted, this Court must dismiss the LTL 2.0 petition.

## NOTICE

24. Notice of this Motion was effectuated by serving copies of the within Motion upon the following: (i) Jones Day, 2727 N. Harwood Street, Dallas, TX 75201 (Attn: Gregory M. Gordon, Esq., Dan B. Prieto, Esq., and Amanda S. Rush); (ii) Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, 12th Floor, New York, NY 10110 and 90 Washington Valley Road, Bedminster, NJ 07921 (Attn: Paul R. DeFilippo, Esq. and James N. Lawlor, Esq.); (iii) the Office of the United States Trustee for Region, One Newark Center, Suite 2100, Newark, NJ 07102 (Attn: Jeffrey M. Sponder, Esq. and Lauren Bielskie, Esq.); (iv) Genova Burns LLC, 110 Allen Road, Suite 304, Basking Ridge, NJ 07920 (Attn: Daniel M. Stolz, Esq., Donald W. Clark, Esq., and Gregory S. Kinoian, Esq.); (v) Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: David J. Molton, Esq. and Michael S. Winograd, Esq.); and (vi) all parties having formally requested notice in these proceedings via the Court's CM/ECF System, and all other creditors via first class mail, postage pre-paid.

**WHEREFORE**, the States respectfully request that, pursuant to 11 U.S.C. § 1112(b), this Court dismiss the LTL 2.0 petition as having been filed in bad faith.

| | |
|---|---|
| Dated: May 10, 2023<br>Newark, NJ | **GIBBONS P.C.**<br><br>By: /s/ *Robert K. Malone*<br>Robert K. Malone, Esq.<br>David N. Crapo, Esq.<br>Kyle P. McEvilly, Esq.<br>One Gateway Center<br>Newark, New Jersey 07102<br>(973) 596-4500<br>rmalone@gibbonslaw.com<br>dcrapo@gibbonslaw.com<br>kmcevilly@gibbonslaw.com<br><br>*Attorneys for the States of*<br>*New Mexico and Mississippi* |