**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Kris Hansen (*admitted pro hac vice*)

PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Matthew M. Murphy (*admitted pro hac vice*)
Matthew Micheli (*admitted pro hac vice*)

COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten *(pro hac vice pending)*
Justin Alberto *(pro hac vice pending)*

PARKINS & RUBIO LLP
700 Milam, Suite 1300
Houston, Texas 77002
Lenard M. Parkins (*admitted pro hac vice*)
Charles M. Rubio (*admitted pro hac vice*)

*Counsel to Ad Hoc Committee of Supporting Counsel*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| | **Hearing Date and Time:** **May 16, 2023 at 11:30 a.m. ET** |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**OBJECTION OF THE AD HOC COMMITTEE OF SUPPORTING COUNSEL TO TCC'S CROSS-MOTION FOR ORDER TEMPORARILY SUSPENDING DEBTOR'S CHAPTER 11 CASE AND RELATED RELIEF**

The Ad Hoc Committee of Supporting Counsel (the "AHC of Supporting Counsel"), by and through its counsel, Paul Hastings LLP, Cole Schotz P.C., and Parkins & Rubio LLP, hereby submits this Objection (the "Objection") to the *Official Committee of Talc Claimants's Cross-Motion for Entry of an Order (I) Temporarily Suspending Debtor's Chapter 11 Case Pursuant to 11 U.S.C. §§ 105 and 305, and (II) Granting Related Relief* [ECF No. 414] (the "Suspension Motion"), and in support of this Objection, the AHC of Supporting Counsel respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Official Committee of Talc Claimants (the "TCC") by way of its Suspension Motion essentially asks the Court to treat TCC's *Motion to Dismiss the Second Bankruptcy Petition of LTL Management, LLC* [Dkt. No. 286] (the "Motion to Dismiss") as if it is already a foregone conclusion that it will be granted. That the TCC does so while at the same time pursuing comprehensive fact discovery from Debtor LTL Management, LLC (the "Debtor") and other constituents that it claims to be relevant to the Motions to Dismiss only serves to highlight the true nature of the TCC's request—*i.e.,* to deprive this Court and all appellate courts of a complete factual record on which to assess the Debtor's own change in circumstances. The Suspension Motion respectfully should be denied for these reasons, and the TCC's Motion to Dismiss should be heard in the normal course following the disclosure of fact and expert discovery.

2.  To subject the proceedings to a substantial delay while the Motion to Dismiss is resolved serves no one other than the TCC. Moreover, the relief sought asks the Court to impermissibly pick and choose which portions of the proceedings to advance based on what the

2

TCC finds most convenient to achieving its goal—to derail the Chapter 11 case[2] and undo the constructively negotiated settlement by and among the Debtor and its constituents, which would fairly and equitably resolve all existing and future talc-related claims.

3.      As evident from the AHC of Supporting Counsel's involvement in this proceeding, TCC's request for suspension is not what's best for both the "creditors and the debtor." 11 U.S.C. § 305(a)(1). The AHC of Supporting Counsel represents the position of tens of thousands of talc claimants, who would be harmed by the TCC's Suspension Motion. The members of the AHC of Supporting Counsel have worked hard to arrive at a proposed settlement that creates a framework to expedite the recovery for claimants in a single and fair manner—a far better result than decades of piecemeal litigation rewarding some but not all claimants (the "Proposed Settlement")—and, at the appropriate stage, are prepared to recommend that their collective 58,000 affected clients vote in favor of a plan consistent with these terms.

4.      It's time to put a stop to the TCC's scorched-earth strategy aimed at depriving the majority of claimants of the right to vote on the Debtor's Chapter 11 reorganization plan (the "Plan"), which would allow for the equitable distribution of assets and resolution of all talc claims. The AHC of Supporting Counsel supports the Proposed Settlement, because it benefits claimants by allowing them to obtain recovery with certainty and speed, as well as allowing claimants to be

---

[2] The TCC's offensive against the Chapter 11 Case and its attempt to circumvent this Court is taking place on multiple fronts. On May 2, 2023, the TCC filed its *Public Petition for Writ of Mandamus of Official Committee of Talc Claimants* with the United States Court of Appeals for the Third Circuit [ECF No. 387], which was quickly denied by the Third Circuit. In addition, the TCC filed its *Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC* [ECF No. 286] and its *Motion of the Official Committee of Talc Claimants for Entry of an Order, Pursuant to Bankruptcy Code Sections 1103(C) and 1109(B), Granting Exclusive Leave, Standing, and Authority to Commence, Prosecute and, If Appropriate, Settle Certain Causes of Action on Behalf of Debtor's Estate* [ECF No. 489].

3

treated substantially equally, rather than running the risk that no assets remain for those at the end of the line.

5. For these reasons and those that follow, the TCC has failed to show it is entitled to, and no statutory basis exists under the Bankruptcy Code for, the extraordinary, unprecedented relief it seeks in its Suspension Motion.

## BACKGROUND

6. The Debtor initiated a proceeding under chapter 11 of the Bankruptcy Code on April 4, 2023 (the "Chapter 11 Case"). The Debtor filed the Chapter 11 Case in order to fully and permanently resolve all current and future talc-related claims against the Debtor and its corporate affiliate, Johnson & Johnson ("J&J").

7. On April 24, 2023, the TCC filed its Motion to Dismiss.

8. Past and future talc claimants represent the largest creditor body in the Chapter 11 Case. Counsel for the majority of those claimants, represented by the AHC of Supporting Counsel, do not support the TCC's Motion to Dismiss, and instead support the relief sought by the Debtor in the Chapter 11 Case.

9. Counsel for those claimants intend to recommend their clients support the Plan, while certain others, such as the TCC, oppose the Debtor's requested relief and have moved to dismiss the Chapter 11 Case.

## OBJECTION

10. The TCC's Suspension Motion contends that because it has filed a dispositive motion in the proceedings, which it (wrongly) believes will succeed in dismissing the proceedings, the Court should treat such Motion to Dismiss as a foregone conclusion and prevent any proceedings that do not further the TCC's interests from occurring. However, neither of the

4

Bankruptcy Code sections that the Suspension Motion references—Sections 305 and 105—provide for that type of relief.

### I.     BAKRUPTCY CODE SECTION 305 IS AN EXTRAORDINARY REMEDY THAT DOES NOT APPLY HERE

11.     First, section 305 does not provide for this type of partial suspension of proceedings that TCC seeks, rather, it allows the Court to fully abstain from proceedings.

12.     Even if section 305 did allow the partial suspension of proceedings, the TCC has not met its burden of showing that "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).

13.     The TCC argues that relief is appropriate for the following reasons: (i) suspending proceedings aside from TCC's Motion to Dismiss would aid in efficiency; and (ii) there are other forums to protect the interests of the debtor, creditors, and J&J, as the automatic stay under section 362(a) will remain in place, and certain claimants can advance lawsuits in other forums.[3]

14.     Neither of these reasons are accurate, and they do not provide a basis for the Court to implement the extraordinary and unusual relief afforded by a suspension of proceedings under section 305.

---

[3] While the TCC focuses on these two factors as the reason to grant the Suspension Motion, courts may consider the following seven factors: "(1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought." *In re Crown Vill. Farm, LLC*, 415 B.R. 86, 96 (Bankr. D. Del. 2009).

**A.    Bankruptcy Code Section 305 Only Authorizes The Court To Either Dismiss The Bankruptcy Case Or Suspend All Proceedings In The Bankruptcy Case**

15.    As a threshold matter, the Suspension Motion should be denied because the relief sought therein is not permitted under Bankruptcy Code section 305(a)(1), which contemplates only the suspension of "*all*" proceedings. Here, by contrast, the TCC seeks to allow only that portion of the proceedings that support its position to go forward, while at the same time suspending anything else that would not further its goal of terminating the bankruptcy case overall.

16.    Namely, the Suspension Motion seeks to allow the following portions of the proceedings, which are beneficial to the TCC, to be exempted from the suspension it seeks:

"(i) permitting the prosecution of the TCC's Motion to Dismiss [Dkt. No. 286] to a final, non-appealable order;

(ii) permitting the prosecution of the TCC's forthcoming motion for derivative standing to file a complaint directed at bringing certain estate causes of action and, if granted by the Court, permitting prosecution of that complaint;

(iii) allowing for the continued compliance with the Court's direction to reevaluate the preliminary injunction entered in the adversary proceeding styled as LTL Management LLC v. Those Parties Listed on Appendix A to the Complaint et al., Adv. Pro. No. 23-010902 (MBK); and

(iv) allowing for the continued compliance with the "first day orders" and certain other administrative, reporting, and other matters, including for the avoidance of doubt, all matters related to the retention and reimbursement of estate and statutory committee professionals, to the extent necessary[.]" (The "Suspension"). Suspension Motion ¶ 4.

17.    Bankruptcy Code section 305(a)(1) permits (under circumstances not present here) the Court to "suspend *all proceedings in a case* under this title," and does not, by its plain terms,

provide for partial abstention from proceedings, which is precisely what the TCC seeks here. *Id*.; *see also In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 246 (B.A.P. 9th Cir. 2007) (section 305's "substantive provisions make clear that the bankruptcy court's prerogatives under this section are limited to dismissal of the case or suspension of *all proceedings* in the case.) (emphasis added); *In re Bellucci*, 119 B.R. 763, 771 (Bankr. E.D. Cal. 1990) ("section 305 abstention, is abstention from the entire bankruptcy. It is applicable on an all-or-nothing basis to the bankruptcy 'case,' i.e. the umbrella bankruptcy action that is created by the filing of a petition for relief under the Bankruptcy Code and that normally terminates either by dismissing or by closing the case. The court cannot rely on section 305 abstention to pick and choose proceedings within the case.") (internal citations omitted); *In re Reed*, 94 B.R. 48, 53 (E.D. Pa. 1988) (section 305 "grants to bankruptcy courts the authority to suspend or dismiss entire cases as opposed to a proceeding in a case.").

18. Indeed, the TCC does not cite to a single case where a court granted the type of relief it seeks – the suspension of *some, but not all*, proceedings under section 305(a)(1) while one party sought dismissal under section 1112(b). *See* Suspension Motion ¶¶ 11-21. This relief therefore is not available under the statute, which in any event is to be "applied very narrowly and is only proper in extraordinary circumstances." *In re Taylor Agency, Inc.*, 281 B.R. 354, 359–60 (Bankr. S.D. Ala. 2001) (suspension under Section 305 was intended as a means for the court to "refuse jurisdiction over a case" as an "exception rather than the rule.").

19. The precedent the TCC relies on in support of its concept of suspending proceedings aside from those related to TCC's Motion to Dismiss do not support the concept, and merely stand for the unremarkable position that during a suspension of proceedings, a debtor may still have administrative obligations, such as paying the United States Trustee fees, along with the obligation to continue paying certain other expenses. Suspension Motion ¶ 20 (citing *Gabriel*

*Technologies*, 2013 WL 5550391 at *6; *Duratech*, 241 B.R. at 300; *In re Modell's Sporting Goods Inc.*, Case No. 20-14179 (Bankr. D.N.J. Mar. 11, 2020).[4]

20.     The TCC cannot utilize section 305, which is intended to be a sparing and extraordinary remedy for a court to refrain from hearing a case as a vehicle to pick and choose which portions of the Chapter 11 Case the TCC would like to go forward.  Indeed, if the Court had reason to suspend its jurisdiction here, it would not be able to hear the TCC's Motion to Dismiss, nor TCC's derivative complaint.  Suspension Motion ¶ 4.

        **B.**     **The TCC Cannot Demonstrate The Relief Requested In The Suspension Motion Is In The Best Interests Of Both The Debtor And Its Creditors**

21.     Even assuming, contrary to law and fact, that the partial stay here sought were available under section 305, the TCC still would not be able to establish the additional requirement of section 305, pursuant to which it must show that "the interests of creditors and the debtor would be better served by such dismissal or suspension."  11 U.S.C. § 305(a)(1).  This section "requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of **both** the debtor and its creditors must be served by granting the requested relief."  *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008) (emphasis added).  Indeed, section 305(a) is

---

[4] For avoidance of doubt, each of these cases is readily distinguishable from the current posture in other ways.  *Gabriel Technologies*, 2013 WL 5550391 suspended proceedings because the Debtor was appealing a separate multi-million dollar judgment against it in federal court that would significantly impact the outcome of the bankruptcy proceedings, but allowed one application to compromise an existing controversy that was negotiated prior to the suspension to be heard on the basis that it would be unfair to refuse to consider it, but otherwise suspended all proceedings except requests for employment of professionals and administrative obligations to the United States Trustee.  In *Duratech*, 241 B.R. 283, the court also required administrative obligations of the Debtor to file monthly statements to the Court and the United States Trustee (among other such responsibilities such as maintaining insurance and paying taxes) to continue while the proceeding was suspended during the pendency of separate civil litigation that would allow the Debtor to make "a significant contribution to its unsecured creditors[.]"  Finally, *In re Modell's Sporting Goods Inc.*, Case No. 20-14179 involved a temporary suspension that was put in place in March 2020 motivated by the public health emergency caused by the COVID-19 pandemic.

8

"reserved for those *rare* occasions when both the creditors generally and the debtor itself are better served by…suspension." 2 Collier on Bankruptcy ¶ 305.01 (emphasis added). The TCC does not (because it cannot) meet that burden here.

22. Here, the Suspension Motion should be denied because the relief sought by the TCC would not benefit the Debtor *or* the AHC of Supporting Counsel, who support the proposed plan, which, if confirmed, would provide certainty and speed with all claimants treated fairly and equitably. Furthermore, suspension of the majority of the proceedings would not promote efficiency. Even if the TCC's Motion to Dismiss were granted, a stay of other portions of the proceedings would not result in a quicker resolution of the overall proceedings. And, critically, if the TCC's Motion to Dismiss were denied, staying all other portions of the proceedings would only lead to an unnecessary delay and prejudice to the other parties who wish to timely resolve their disputes through the bankruptcy process.

23. The TCC's claim that other forums exist "to protect the interests of the Debtor, its creditors and J&J" is likewise misplaced. Suspension Motion ¶ 19. There is no parallel state proceeding or arbitration here that is resolving the Debtor's obligations. The fact that certain claimants can advance lawsuits against the Debtor in other forums is irrelevant—those matters will not provide the Debtor with the protections it here seeks under the Bankruptcy Code. And, as noted above, such piecemeal litigation fails to provide the certainty, speed and substantial equality the Proposed Settlement would provide claimants.

24. Moreover, the Debtor filed this Chapter 11 Case, with J&J's support, to facilitate a process under section 524(g) of the Bankruptcy Code, which permits a channeling injunction in favor of J&J. Section 524(g) is a powerful tool provided by Congress that is widely used in mass tort bankruptcy cases. The entire thrust of section 524(g) is to allow for a channeling injunction

9

"to supplement the injunctive effect of a discharge" by enjoining any action "for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery" on a channeled claim. *See* 11 U.S.C. § 524(g)(1)(A)-(B). Section 524(g) exemplifies a bedrock principle of the Bankruptcy Code to ensure there are assets available to pay all creditors fairly by preventing creditors from racing to the courthouse.

25. The channeling injunction, however, does not come for free, but requires a showing of substantial consideration from J&J, and an ultimate vote in favor of the plan by a supermajority of personal injury claimants. To satisfy these requirements, the Debtor will have to establish a record to show that J&J made substantial contributions and that the Plan has the support required under section 524(g). If approved, the Plan, along with the injunction, would channel all claims (not just current claims, but also future claims) to a well-funded trust and the Debtor and its affiliates would move forward without being burdened by the legacy liabilities that sent the Debtor to bankruptcy court in the first place. That is exactly what is contemplated under the Plan.

26. This type of trust available under section 524(g) of the Bankruptcy Code is not available outside of bankruptcy. That alone should be sufficient to show why suspension is not warranted here. *See In re Crown Vill. Farm, LLC*, 415 B.R. 86, 96 (Bankr. D. Del. 2009) (noting that courts may consider: (1) whether federal proceedings are necessary to reach a just and equitable solution; (2) whether there is an alternative means of achieving an equitable distribution of assets; and (3) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case.)

## II. THE RELIEF REQUESTED BY THE TCC PURSUANT TO BANKRUPTCY CODE SECTION 105 CANNOT BE GRANTED

27. Because Section 305 does not provide the partial suspension the TCC seeks, the TCC attempts to sidestep the Bankruptcy Code by relying on Section 105(a), providing that "[t]he

10

court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). However, the Supreme Court has already determined this provision cannot be used to "override explicit mandates of other sections of the Bankruptcy Code." *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014).

28. Indeed, none of the cases the TCC relies on granted a partial suspension of proceedings during the pendency of a dispositive motion in the same proceeding.[5] The TCC cites to no precedent that Section 105 can be used to create such authority.

29. The TCC's argument for the Suspension fairs no better under Rule 1 of the Federal Rules of Civil Procedure. A partial stay of proceedings pending the outcome of the TCC's Motion to Dismiss would not "prevent undue delays in the disposition" of the proceeding as the TCC suggests. Suspension Motion ¶ 23 (citing *In re Racing Servs., Inc.*, 635 B.R. 498, 504, 507 (B.A.P. 8th 2022)). In fact, a partial stay here could only have the opposite effect—delaying proceedings needlessly if the Motion to Dismiss is denied—or having no effect on the timing of resolution if the Motion to Dismiss is granted. Indeed, an unnecessary delay in the bankruptcy proceeding does not promote "the just, speedy, and inexpensive determination" of the action, contrary to the TCC's claims. Suspension Motion ¶ 23.

30. Moreover, while bankruptcy courts have exercised their inherent power to stay cases during the pendency of proceedings in other forums, such as private arbitration,[6] the TCC

---

[5] *See* Suspension Motion ¶ 22 (citing *In re Duratech Indus., Inc.*, 241 B.R. 283, 288 (E.D.N.Y. 1999) (abstained due to separate civil litigation that would significantly impact proceedings); *In re Schueller*, 126 B.R. 354, 359 (D. Colo. 1991) (delayed proceedings due to a state court proceeding); *In re CraftWorks Parent, LLC*, Case No. 20-10475 (Bankr. D. Del. Mar. 30, 2020) (delayed proceedings due to public health emergency caused by COVID-19 pandemic); *see also* note 4, *infra*.

[6] The authority that the TCC relies on all involved staying proceedings pending arbitration of certain claims. *See* Suspension Motion ¶ 24 (citing *In re Quigley Co., Inc.*, 361 B.R. at 742; *Kittay v. Landegger, et al. (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002)).

cites to no precedent for staying portions of a bankruptcy proceeding itself while a dispositive motion is pending.

31. The TCC's Suspension Motion has no basis in law, nor is it in the best interests of anyone but the TCC and any other creditors who support dismissing the Chapter 11 Case. The proceedings should move forward.

### III. CONCLUSION

**WHEREFORE**, for the reasons stated in this Response, the AHC of Supporting Counsel respectfully requests that this Court deny the Suspension Motion and grant such other and further relief as the Court finds just and appropriate.

Dated: May 12, 2023

**COLE SCHOTZ P.C.**

_/s/ Michael D. Sirota_
Michael D. Sirota (NJ Bar No. 014321986)
Warren A. Usatine (NJ Bar No. 025881995)
Seth Van Aalten (*pro hac vice pending*)
Justin Alberto (*pro hac vice pending*)
Court Plaza North, 25 Main Street
Hackensack, NJ 07602-0800
(201) 489-3000
Email:  msirota@coleschotz.com
           wusatine@coleschotz.com
           svanaalten@coleschotz.com
           jalberto@coleschotz.com

– and –

**PAUL HASTINGS LLP**

Kris Hansen (*admitted pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Email:  krishansen@paulhastings.com

`

        Matthew M. Murphy (*admitted pro hac vice*)
        Matthew Micheli (*admitted pro hac vice*)
        71 South Wacker Drive, Suite 4500
        Chicago, IL 60606
        Telephone: (312) 499-6000
        Email:  mattmurphy@paulhastings.com
                mattmicheli@paulhastings.com

        – and –

        **PARKINS & RUBIO LLP**

        Lenard M. Parkins (*admitted pro hac vice*)
        Charles M. Rubio (*admitted pro hac vice*)
        700 Milam, Suite 1300
        Houston, TX 77002
        Telephone: (713) 715-1660
        Email:  lparkins@parkinsrubio.com
                crubio@parkinsrubio.com

*Counsel to AHC of Supporting Counsel*