**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Kris Hansen (*admitted pro hac vice*)

PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Matthew M. Murphy (*admitted pro hac vice*)
Matthew Micheli (*admitted pro hac vice*)

COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*admitted pro hac vice*)
Justin Alberto (*admitted pro hac vice*)

PARKINS & RUBIO LLP
700 Milam, Suite 1300
Houston, Texas 77002
Lenard M. Parkins (*admitted pro hac vice*)
Charles M. Rubio (*admitted pro hac vice*)

*Counsel to Ad Hoc Committee of Supporting Counsel*

In re:

LTL MANAGEMENT LLC,[1]

           Debtor.

Chapter 11

Case No.: 23-12825 (MBK)

Judge: Michael B. Kaplan

**Hearing Date and Time:**
**May 16, 2023 at 11:30 am ET**

# AD HOC COMMITTEE OF SUPPORTING COUNSEL'S REPLY AND STATEMENT IN SUPPORT OF THE SCHEDULING MOTION

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

LEGAL_US_E # 170412500.3

The Ad Hoc Committee of Supporting Counsel (the "AHC of Supporting Counsel"), by and through its counsel, Paul Hastings LLP, Cole Schotz P.C., and Parkins & Rubio LLP, hereby submits this reply and statement in support of the *Debtor's Motion for an Order (I) Scheduling Hearing on Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief* [ECF No. 240] (the "Scheduling Motion") and in support of thereof, the AHC of Supporting Counsel respectfully states as follows:

## PRELIMINARY STATEMENT[2]

Constructive engagement by the Debtor culminated in a settlement that serves as the lifeblood for a plan that will finally resolve the tens of thousands of actions facing the Debtor. Rather than capitalize on the opportunity to be constructive with the Debtor and obtain the best result for its constituents, the TCC has launched a campaign against nearly every part of this Chapter 11 Case.[3] The TCC Objection, along with the other Objections, boil down to a single overarching goal: to continue the quest to block the Debtor and the majority of claimants from putting their agreed plan to vote.

The Objections offer no significant argument as to why this Court should refuse to enter the Scheduling Order. Instead, much of the invective on display in the Objections illustrates that, absent setting a schedule, the Debtor and the claimants who support the Plan will find themselves stuck in a familiar purgatory waiting for the TCC's sprawling litigation to make its way through

---

[2] Capitalized terms used but not defined in this introductory section have the meanings given below.
[3] The TCC's offensive against this Chapter 11 Case and its attempt to circumvent this Court is taking place on multiple fronts. On May 2, 2023, the TCC filed its *Public Petition for Writ of Mandamus of Official Committee of Talc Claimants* with the United States Court of Appeals for the Third Circuit [ECF No. 387], which was quickly denied by the Third Circuit. In addition, the TCC filed its *Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC* [ECF No. 286] and its *Motion of the Official Committee of Talc Claimants for Entry of an Order, Pursuant to Bankruptcy Code Sections 1103(C) and 1109(B), Granting Exclusive Leave, Standing, and Authority to Commence, Prosecute and, If Appropriate, Settle Certain Causes of Action on Behalf of Debtor's Estate* [ECF No. 489].

2

the tort system—something that has not materialized for years. It is time to set a schedule and begin facilitating recoveries for the tens of thousands of claimants. Moving this Chapter 11 Case into the plan phase will give claimants the closure they desire by effecting the plan, something that inures to the benefit of one and all. In contrast, the failure to set a schedule will encourage the Objectors to continue their scorched-earth litigation and postpone the claimants' long-awaited recoveries.

The remainder of the Objections fall into the following categories: (a) premature confirmation objections that the yet-to-be-filed plan does not satisfy the requirements under the Bankruptcy Code and (b) claim objections that seek to litigate the thousands of contingent, unliquidated claims. Each of these is more appropriately heard in connection with confirmation of the Plan.

The Plan not only allows the claimants to obtain recovery with certainty and speed but also allows the claimants to be treated substantially equally, rather than running the risk that no assets remain to satisfy those claims at the end of the line. To jump-start the plan process, the Scheduling Motion seeks to set dates, deadlines, and related procedures in connection with plan solicitation.

## ARGUMENT

**I.    The Schedule Set Forth in the Scheduling Motion is Necessary.**

1. Shortening the time periods under the Bankruptcy Rules[4] and putting the agreed plan to a vote will benefit the claimants. Continuing to reward the Objectors[5] with additional opportunities to employ their scorched-earth strategy aimed at depriving the majority of claimants

---

[4] Capitalized terms used but not defined have the meanings given to them in the Scheduling Motion.
[5] Objections were filed by the Official Committee of Talc Claimants [ECF No. 413] (the "TCC Objection"), Arnold & Itkin LLP [ECF No. 443] (the "AI Objection"), the United States Trustee [ECF No. 448] ("UST Objection"), and Mesothelioma Plaintiff Katherine Tollefson and Certain Mesothelioma Plaintiffs [ECF No. 453] (the "Meso. Objection" and with the TCC Objection, the AI Objection, the UST Objection, the "Objections" of the objecting parties, the "Objectors").

3

of the right to vote on the Plan deprives the claimants of their true day in court. In practical terms, "the sooner the better" is an apt approach for resolving this Chapter 11 Case and making distributions to claimants.

2.  Bankruptcy Rules 2002(b) and 3017(a) contemplate 28 days' notice for filing objections to a disclosure statement. A court may, however, shorten this notice period pursuant to Bankruptcy Rule 9006(c) for cause shown. *See* Bankruptcy Rule 9006(c) (providing that "the court for cause shown may in its discretion with or without motion or notice order the [notice] period reduced"). Ample "cause" exists to grant the relief requested in the Scheduling Motion.

3.  The Debtor and the AHC of Supporting Counsel reached an agreement to permanently, equitably, and efficiently resolve the tens of thousands of actions faced by the Debtor. The breadth of support validates the plan and provides a clear path toward a prompt resolution of this Chapter 11 Case—the supporting claimants are ready to vote. That is a critical milestone that will finally get the claimants distributions for which they have spent decades fighting.

4.  The TCC is either concerned that the Plan actually has enough support to be confirmed or that the Debtor will "stuff the ballot box." The former is precisely why the Plan should be put to a vote, while the latter is a baseless scare tactic. The TCC should not be permitted to rely on scheduling to block the Plan without having to prove the merits of its concerns. The Objectors will eventually need to confront the fact that the claimants want to make a choice.

5.  The Court should set the schedule (the "Schedule") outlined in the Scheduling Motion, approve the related procedures, and grant any such other or further relief necessary to protect claimants' rights and discourage distractions that only delay the recoveries ready to be sent to the claimants.

4

## II. The Premature Objections to Plan Confirmation Lack Merit.

6. The Objections read like merit briefs for an appeal of a hypothetical plan confirmation. Citing no relevant or probative evidence, the Objections assert that the Plan (a) cannot be proposed in good faith and (b) contemplates an impermissible channeling injunction for the benefit of a non-debtor. These positions lack merit and are more appropriately heard in connection with plan confirmation. *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012) (setting forth the well-accepted principle that "confirmation issues are reserved for the confirmation hearing").

7. Disputed confirmation issues—especially those that may require an evidentiary hearing—are not sufficient to hold up this Chapter 11 Case. *See In Quigley Co., Inc.*, 377 B.R. 110, 112 (Bankr. S.D.N.Y. 2007) (allowing the plan process to progress while acknowledging that several components of the plan "implicate several confirmation issues"); *In re Hyatt*, 509 B.R. 707, 711 (Bankr. D.N.M. 2014) (allowing the plan process to progress after finding that the debtor will need "additional evidence that may be presented at a confirmation hearing"). The Objectors cannot use the hearing on the Scheduling Motion to adjudicate confirmation issues. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("The question whether a plan meets requirements for confirmation is usually answered at confirmation hearings.").

8. The Objectors' entrenched posture is not conducive to a good-faith negotiation of a resolution. In essence, the Objectors have rejected the Plan before even seeing the terms. When they see the Plan, the Objectors will have ample opportunity to prosecute their confirmation

objections in connection with the confirmation hearing. Nevertheless, to aid this Court's analysis, the AHC of Supporting Counsel will briefly address those confirmation objections here.

### a. The Objectors Fail to Show That the Plan Cannot be Proposed in Good Faith.

9. Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." "The good faith determination is made by evaluating the totality of the circumstances surrounding confirmation and requires that the Plan be proposed with honesty, good intention and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." *In re S B Bldg. Assocs.*, 621 B.R. 330, 360-61 (Bankr. D.N.J. 2020) (internal quotations omitted). The good-faith requirement "speaks more to the process of plan development than to the content of the plan." *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010).

10. Here, the Debtor will propose the Plan solely for the legitimate and beneficial purpose of resolving its talc litigation once and for all. Towards that end, the Debtor engaged extensively with the many major constituencies in this Chapter 11 Case and the Debtor was able to strike a deal that has broad support from the many claimants represented through the AHC of Supporting Counsel. The Objectors have not presented probative evidence of bad faith or failure of process. Of course, none exist, and that is why the Objections resort to facts that will be heard in the motion to dismiss proceedings. *Id.* at 608-09 (good faith requirement satisfied where the debtor reached a deal with several constituents on a plan that "in the aggregate demonstrate a good faith effort on the part of the debtor to consider the needs and concerns of all major constituencies in this case").

### b. The Channeling Injunction is Permissible.

11. The Objectors make a host of arguments directed at the perceived injustices of plan confirmation proceedings that have not happened yet. Those fairness concerns are addressed in the many statutory prerequisites to the channeling injunction. *In re W.R. Grace & Co.*, 900 F.3d 126, 130 (3d Cir. 2018) ("Many statutory prerequisites designed to ensure fairness must be met before a trust is formed and a channeling injunction entered under § 524(g)."). If the Debtor cannot satisfy those statutory prerequisites at confirmation, the Plan will fail and the Debtor will return to the tort system.

12. For starters, the entire thrust of section 524(g), which provides a useful reference in non-asbestos mass tort cases, is to allow for a channeling injunction "to supplement the injunctive effect of a discharge" by enjoining any action "for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery" on a channeled claim. *See* 11 U.S.C. § 524(g)(1)(A)-(B). To incentivize non-debtors to fund significant trusts to pay claimants, non-debtors are permitted to obtain the benefit of an injunction against direct and indirect claims. *See* 11 U.S.C. § 524(g)(4)(A)(ii). In exchange for the benefits of the section 524(g) trust, the Debtor must satisfy heightened confirmation requirements, including that claimants approve of the plan by a 75% super majority. *See* 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).

13. Section 524(g) exemplifies a bedrock principle of the Bankruptcy Code to ensure there are assets available to pay all creditors fairly by preventing creditors from racing to the courthouse.[6] The trust is the means by which to implement the streamlined claim recovery process described by this Court. *See Opinion Dissolving Temporary Restraining Order, Extending the*

---

[6] With respect to claims that have a long latency period, the holders of many claims may be unknown at the time of the bankruptcy filing. Therefore, without section 524(g), current claimants could obtain recoveries first, leaving nothing for future claimants.

LEGAL_US_E # 170412500.3

*Automatic Stay, and Granting Limited Preliminary Restraints, LTL Management, LLC, v. Those Parties Listed on Appendix A to the Complaint and John and Jane Does 1-1000*, No. 23-01092 at 27 (Bankr. D.N.J. Apr. 27, 2023) [ECF No. 94] ("A settlement trust benefits claimants—whose time is valuable and may be limited due to their illness—by streamlining the claim recovery process. Additionally, a bankruptcy trust protects the needs of future talc claimants.").

14. To detract attention from the substantial contribution by J&J in exchange for the benefits conferred by section 524(g), the TCC argues that "J&J bears its own direct liabilities based on its own wrongful conduct" and "direct liabilities of J&J cannot be channeled to a trust." *See* TCC Objection at ¶ 44. The TCC provides absolutely no factual support for its position that J&J's relationship with the Debtor does not fall within section 524(g)—a critical requirement made clear by the TCC's own authority. *Id.* at ¶ 43-44 (citing *W.R. Grace*, 13 F.4th 279, 290 (3d Cir. 2022)).

15. In any event, section 524(g) specifically provides that non-debtors that are directly liable for claims may benefit from a channeling injunction. *See In re Bestwall*, 606 B.R. 243, 250-51 (Bankr. W.D.N.C 2019) (explaining that it need not determine whether the claims would be direct or derivative because a non-debtor is entitled to protection under section 524(g)); *In re Fed.-Mogul Glob. Inc.*, 411 B.R. 148, 163 (Bankr. D. Del. 2008). The channeling injunction for the benefit of J&J simply utilizes the tools enacted by Congress.

16. To be clear, the confirmation requirements for the channeling injunction must be satisfied at the appropriate time. A factual record specific to the Plan, which has yet to be developed at this preliminary stage, is absolutely necessary for a determination of whether section 524(g) and section 1129 are satisfied. The Objectors simply cannot demonstrate that the Debtor will not be able to satisfy these requirements at a future confirmation stage, especially because material facts can and likely will change and develop between now and then.

### c. *The Schedule Provides the Framework to Validate Claims for Voting Purposes.*

17. The framework to determine the validity of claims is a critical component of the Plan. The Scheduling Motion is the first step to implement that framework. Nonetheless, the TCC argues that plan solicitation will be "impossible" because claims must be vetted prior to commencing solicitation—the TCC therefore seems to propose individual evaluations of the tens of thousands of claims. This defies practical reality and would only cause intolerable delay to the compensating claimants. The framework contemplated under the Scheduling Motion and its related procedures, on the other hand, evaluates the thousands of contingent unliquidated claims for voting purposes while protecting the sanctity of the voting process.

18. Claim objections are not required to be commenced before confirmation of a plan, nor is "vetting" of a claim a condition to solicitation. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 646 (2nd Cir. 1988) (explaining that "objections to claims need not be resolved before voting on a plan may occur"); *In re DeSardi*, 340 B.R. 790, 794 n.1 (Bankr. S.D. Tex. 2006) (finding that claim objections may be resolved after a plan is confirmed). The assignment of the right to evaluate claims to the trust is consistent with section 502(a).

19. Equally unavailing is the TCC's concern that "claimant information is sorely, and fatally, lacking." TCC Motion at ¶ 33. The value of specific unliquidated tort claims need not be determined or investigated at this time. *See In re A.H. Robins Co.*, 880 F.2d 694, 697 (4th Cir. 1989) (explaining that there is "no requirement in case law or statute that a disclosure statement estimate the value of specific unliquidated tort claims"). Likewise, there is no legal basis to permit the TCC to hold up this Chapter 11 Case while it "aggressively investigate[s]" the claims, especially where the TCC seeks to do so based on nothing more than its speculation that it "strongly suspects" that certain claims are unsupported. *See In re A.H. Robins Co., Inc.*, 88 B.R. 742, 747 (E.D. Va. 1988), aff'd, 880 F.2d 694 (4th Cir. 1989) (holding that "[a]ny attempt to

evaluate each individual claim for purposes of voting on the Debtor's Plan of Reorganization would, as a practical matter, be an act of futility, and would be so time consuming as to impose on many, many deserving claimants further intolerable delay all not only to their detriment, but to the detriment of the financial well being of the estate as well"). A claims resolution process that runs its course after plan confirmation has been approved by many bankruptcy courts. *See e.g., In re 24 Hour Fitness Worldwide, Inc.*, Case No. 20-11558 (Bankr. D. Del. 2020) [ECF No. 1487]; *In re Insys*, 19-11292 (Bankr. D. Del. 2020) [ECF No. 1115]; *In re Remington Outdoor Company*, Case No. 20-81688 (Bankr. N.D. Ala. 2020) [ECF No. 1370].

20. In any event, the Trust Distribution Procedures that will be included in the Plan employ a robust process to ensure that all claims are properly reviewed and evaluated. And, contrary to the Objectors' suggestions, the supporting claimants have valid claims, which will be supported by evidence. Indeed, sworn testimony makes clear that medical records are "coming in by the tens of thousands," and there is "an army of people that review those records on a systemic basis." Watt's Deposition, 31:17-32:21; 31:17-32:21. Further evidence will also be developed in connection with the motions to dismiss, including fact and expert witnesses. The Plan contemplates a centralized claims-evaluation process that will eliminate the material risk of inconsistent outcomes in the tort system for similarly situated creditors.

21. In bankruptcies where individual claimants hold claims that are wholly contingent, unliquidated, or disputed, including mass tort bankruptcies such as this Chapter 11 Case, it is common for courts to approve voting procedures that allocate voting rights not according to the value of the claims themselves but equally among all similarly situated claimants. *See, e.g., Matter of Johns-Manville Corp.*, 68 B.R. at 631 (approving plan that estimated tort claim values at $1 for the purposes of voting); *In re Quigley Co.*, 346 B.R. 647, 654-55 (Bankr. S.D.N.Y. 2006). The

concerns expressed by the Objectors are properly addressed by allocating voting rights equally to all similarly situated claimants.[7]

22.    This Court should not allow the Objectors' tactics to delay this Chapter 11 Case. The relief sought in the Scheduling Motion, including shortening the time periods under Bankruptcy Rules 2002(b) and 3017(a), provides a path forward and will require the Objectors to confront the choices before them.  Now is the right time to move forward.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the AHC of Supporting Counsel respectfully requests that this Court overrule the Objections and grant the Scheduling Motion and such other and further relief as this Court finds just and appropriate.

---

[7] This structure has been employed by other courts presented with numerous tort claims.  *See, e.g.*, *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [ECF No. 6340] (approving procedures temporarily allowing tort claims at $1.00 for voting purposes); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018) [ECF No. 1639] (same); *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (CSS) [ECF No. 1317] (Bankr. D. Del. May 20, 2011) (same).

Dated: May 12, 2023

**COLE SCHOTZ P.C.**

 */s/ Michael D. Sirota*
Michael D. Sirota (NJ Bar No. 014321986)
Warren A. Usatine (NJ Bar No. 025881995)
Seth Van Aalten (*admitted pro hac vice*)
Justin Alberto (*admitted pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, NJ 07602-0800
(201) 489-3000
Email:  msirota@coleschotz.com
 wusatine@coleschotz.com
 svanaalten@coleschotz.com
 jalberto@coleschotz.com

– and –

**PAUL HASTINGS LLP**

Kris Hansen (*admitted pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Email:  krishansen@paulhastings.com

Matthew M. Murphy (*admitted pro hac vice*)
Matthew Micheli (*admitted pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: (312) 499-6000
Email:  mattmurphy@paulhastings.com
 mattmicheli@paulhastings.com

– and –

**PARKINS & RUBIO LLP**

Lenard M. Parkins (*admitted pro hac vice)*
Charles M. Rubio (*admitted pro hac vice)*
700 Milam, Suite 1300
Houston, TX 77002
Telephone: (713) 715-1660
Email:  lparkins@parkinsrubio.com
 crubio@parkinsrubio.com

*Counsel to AHC of Supporting Counsel*

LEGAL_US_E # 170412500.3