| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official Committee of Talc Claimants* |
| In re:<br><br>**LTL MANAGEMENT LLC**,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**THE OFFICIAL COMMITTEE OF TALC CLAIMANTS'
OBJECTION TO DEBTOR'S CROSS-MOTION FOR
ENTRY OF PROTECTIVE ORDER**

1. The stipulated Protective Order in LTL 1.0 had no use restriction as to *non-confidential* information. For the reasons set forth in the TCC's Motion for Entry of Protective Order (Dkt 439), the Debtor's efforts to implement such an unwarranted restriction in LTL 2.0 (Dkt. 491) should be denied.

2. In its Cross-Motion, the Debtor provides no authority whatsoever for its sweeping proposed restriction on all non-confidential information. On the contrary, the cases the Debtor cites cut decidedly *against* its own untenable position here.

3. The Debtor first cites three cases for the basic principle that a court has authority "to enter orders regarding the exchange of information and documents" (Cross-Mot. ¶ 12), which may include "protecting confidential information" (Cross-Mot. ¶ 13). While that principle is unremarkable, even a cursory review of the cases the Debtor happens to have chosen to cite in support of it — all three of which arise in the unrelated context of motions to prevent discovery of, for example, privileged information, irrelevant information, or high ranking officials with no relevant knowledge or involvement — reveal just how far afield the Debtor's requested relief here is. *See Rodgers v. U.S. Steel Corp.*, 536 F.2d 1001, 1004 (3d Cir. 1976) (allowing discovery of *privileged* information necessary for court to determine whether to approve tender offer, but ordering it be treated on attorney's eyes only basis); *Allah v. Bartkowski*, 2022 WL 17730036 at *5-*6 (D.N.J. Nov. 15, 2022) (rejecting inmate's efforts in an 8th Amendment housing suit to depose former Governor Christie and other "high-ranking officials" who had no personal knowledge or involvement relevant to the claim); *A & B Ingredients, Inc. v. Hartford Fire Ins. Co.*, 2010 WL 335616, at *7 (D.N.J. Jan. 29, 2010) (allowing discovery after finding relevance, but noting that if "concerns are genuine, the *parties can agree*" to address its use in a

"confidentiality order," which "*may require that an order sealing documents* is sought from the Court" "any time" a party seeks to use it in any court filings) (emphasis added).

4. More telling, however, are the only two cases the Debtor cites in support of its proposition that "Courts also have authority to enter orders with general use restrictions such as the Debtor proposes in Section K of the 2023 Proposed Protective Order." Cross-Mot. ¶ 14. LTL tells this Court that those cases, respectively, "uphold[ ] a protective order that restricted the use of discovery material for any purpose other than the instant litigation 'irrespective of whether the Disputed Materials are confidential'" and "find[ ] good cause to issue a protective order that effectively upheld two protective orders from other courts that restricted use of discovered materials to those cases only." *Id*. But LTL's reliance on these cases is at best misleading.

5. In stark contrast to here, in both of those cases, the protective orders at issue were entered by prior courts *upon stipulation of the parties*. In *In re Reserve Fund Sec. & Derivative Litig.*, the MDL court expressly noted that the issue at hand "arises from Defendants' claim that Ameriprise violated the October 9, 2008 Protective Order *confirming the stipulation of the parties*" in the plenary court. 2009 WL 10465018, at *1, *2 n. 1 (S.D.N.Y. Aug. 26, 2009) (emphasis added). Looking back to the plenary case in which that protective order was entered confirms as much. The parties submitted a "Confidentiality Stipulation and [Proposed] Protective Order" (Ex. A), which the court entered as the "Protective Order" "Upon Stipulation for a Protective Order (Doc. No. 57) by the parties" (Ex. B). For its part, the MDL court simply found that Ameriprise had violated the stipulated order it had agreed to. 2009 WL 10465018, at *1-*2.

6. In the other case relied on by LTL, *FLOORgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, plaintiff sought discovery from a third party that was involved in "two separate litigations with Defendants." 2007 WL 1613217, at *1 (D.N.J. June 1, 2007). The court noted, without ever addressing, that, according to the defendants' brief, "[d]iscovery in those two matters

3

is governed by protective orders that restrict the use of that discovery for the purposes of those cases only. (Defs.' Mem. at 3)." *Id.* Again, however, looking at those actual orders (to the extent they had been relevant), they are both "Stipulated Protective Order[s]" that note "[t]he parties agree as follows . . . ." Ex. C, at mem. (DNJ dkt. 130-1) at 3, and exs. C & D thereto (DNJ dkts. 130-4, 130-5).

7.  It is also interesting to note that while the court in *FLOORgraphics* never addressed the *stipulated* use restriction in the protective orders, instead denying the plaintiff's requested discovery because it was beyond the scope of what the court previously ordered would be permitted, could have been sought earlier from the defendants in the case, and were untimely (*id.*, at *3 & n. 1), a separate court did consider that issue. In the context of a *contested* motion for a protective order in *Insignia Systems Inc. v. News America Mktng. In-Store, Inc.*, No. 04-cv-4213 (D. Minn.), News America, the same defendant in the *FLOORgraphics* case, argued that discovery governed by those same two protective orders referenced in *FLOORgraphics* and a related settlement agreement should not be allowed to be used in the *Insignia* case and asked for the same use restriction to be imposed in *Insignia*. Ex. D, at 2. As to the first request, the court directed the parties to the New York court in which the two prior stipulated protective orders and settlement agreement had been entered. *Id.* at 3. But as to the second request, which this time had not been agreed to by the other party, the court rejected it: "The Court will not impose a restriction on the use of non-confidential information." *Id.* at 4 (citation omitted).

8.  Moreover, the absence of any legal authority for its request whatsoever aside, the Debtor's purported reasons for its request are nonsensical. If non-confidential discovery properly obtained in this case (by creditors who are plaintiffs in the plenary tort cases from defendants who are also defendants in those cases) is relevant to a plenary tort case, then it of course should be allowed to be used there. That is, as the Debtor acknowledges (Cross. Mot. at 9 n. 3), precisely

what the court in *Cipollone v. Liggett Grp., Inc.*, 113 F.R.D. 86, 89 (D.N.J. 1986) held. *See* TCC Mot. ¶¶ 4-5. Again, "the mere fact that plaintiffs intend to use these materials outside of this litigation is not 'good cause' to support the protective order, unless defendants can establish that the discovery was not procured in good faith for the purposes of this litigation." *Cipollone* 113 F.R.D. at 93 (quotes in TCC Mot. 4).

9. The Debtor next argues that it "has turned over thousands of documents and will turn over many more that it otherwise would have kept private. . . . [And] even those that do not meet the definition of confidential information thereunder still are private documents that ordinarily would not be disclosed to the public." Cross-Mot. ¶ 19. But turning over documents that a party otherwise would prefer not to is the nature of litigation. And that includes bankruptcy proceedings like the one here that the Debtor itself chose to initiate. Moreover, a document is either confidential or not. To the extent documents are confidential, then they will remain protected.

10. Finally, the Debtor cites to purported leaks of documents to the media. But as stated at the May 3 hearing (without dispute), nothing that Reuters had received was confidential. *E.g.*, 5/3/23 Tr. 159:17-24. In fact, it is striking to think that the Debtor proposes to ban disclosure of non-confidential information to the media and public when both it and J&J have so readily and repeatedly resorted to playing this case out through a barrage of press releases, a media campaign, and even a CNN special. As this Court has acknowledged, this is a case of tremendous public import and the whole world is watching. The world should not be prevented from seeing.

11. In all events, the Debtor has failed to meet its burden for the new, sweeping use restriction on non-confidential information that it proposes. TCC Mot. 4-6. And the only authority it purports to have cited in support of such a proposal cuts against it. *Supra* ¶¶ 3-7.

5

12.     For the reasons set forth herein and in its Motion (Dkt. 439), the TCC respectfully requests that the Court deny LTL's Cross-Motion, Grant the TCC's Motion, and enter a Protective Order substantially in the form proposed in the TCC's Motion.

Dated:  May 15, 2023

                        Respectfully submitted,

                        **GENOVA BURNS, LLC**

                        By:     *Daniel M. Stolz*
                        Daniel M. Stolz, Esq.
                        Donald W. Clarke, Esq.
                        110 Allen Road, Suite 304
                        Basking Ridge, NJ 07920
                        Telephone: (973) 533-0777
                        Facsimile: (973) 467-8126
                        Email: dstolz@genovaburns.com
                        Email: dclarke@genovaburns.com

                        *Proposed Local Counsel to the Official Committee of Talc Claimants*