| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| **LOWENSTEIN SANDLER LLP**<br>Kenneth A. Rosen, Esq.<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br>Telephone: (973) 597-2500<br>Email: krosen@lowenstein.com<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria, Esq.<br>Gregory Starner, Esq.<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email:  jessica.lauria@whitecase.com<br>           gstarner@whitecase.com<br><br>**WHITE & CASE LLP**<br>Matthew E. Linder, Esq.<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Email: mlinder@whitecase.com<br><br>*Co-Counsel Johnson & Johnson and Johnson & Johnson Holdco (NA) Inc.* |

| | |
|---|---|
| In re | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No. 23-12825 (MBK) |
| Debtor. | Honorable Michael B. Kaplan |

**JOHNSON & JOHNSON'S RESPONSE AND OBJECTION TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS' MOTION TO COMPEL**

---

[1]  The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

AMERICAS 123340143

Johnson & Johnson ("J&J") submits this response and objection (the "Objection") to the *Official Committee of Talc Claimants' Motion to Compel* [Dkt. 441] (the "Motion"). In support of this Objection, J&J respectfully states as follows:

## PRELIMINARY STATEMENT

By its Motion, the Official Committee of Talc Claimants (the "TCC") seeks privileged communications between LTL Management LLC ("LTL" or "Debtor") and J&J concerning the enforceability and termination of the 2021 Funding Agreement. The TCC posits that LTL and J&J cannot share a common interest with respect to the enforceability or termination of the 2021 Funding Agreement because they were contractual counterparties. But that argument ignores that LTL & J&J are affiliated companies that had and continue to have a common interest with respect to resolving all current and future talc-related claims through a successful bankruptcy and the funding of a settlement trust. That was the intent and goal of the 2021 Funding Agreement and LTL's original bankruptcy filing, and continues to be the case with LTL's refiling and the new financing arrangements put in place to effectuate the intent of the parties' original funding agreement for the benefit of LTL's creditors.

The TCC's central premise that termination of the 2021 Funding Agreement "relieved" J&J of a more than $60 billion funding obligation and stripped LTL of that same value is simply wrong. The prior funding agreement contained commitments by J&J and Johnson & Johnson Consumer Inc., the Debtor's predecessor, to backstop the Debtor's talc liability, and the current funding agreements contain the same commitments. The value of the prior funding agreement was the amount of the liability (minus the value of the Debtor),[2] not $60 billion, and that did not change

---

[2] Under both the prior and the current funding agreements, funding of a plan was required only if the Debtor's assets were insufficient to satisfy the funding amount.

with the new agreements. The TCC's effort to twist and mischaracterize the scope of the parties' funding arrangement as a way to bypass their common interest is without merit.

As set forth below, LTL & J&J continue to share a common interest with respect to facilitating the resolution of all current and future talc claims in bankruptcy. This continuing common interest includes within its scope the parties' privileged communications regarding the termination of the 2021 Funding Agreement in furtherance of that common goal that animated the parties' original funding agreement for the benefit of LTL's creditors. Accordingly, the TCC's motion should be denied.

## ARGUMENT

The TCC broadly challenges any assertion of a common interest privilege as between LTL and J&J with respect to the termination of the 2021 Funding Agreement, but the TCC's sweeping assertion that the common interest cannot apply is without merit.

The common interest doctrine applies where, as here, two parties share otherwise privileged information in an effort to coordinate their common legal interests. Generally, the protection of the common interest will apply where: (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not otherwise been waived. *See, e.g.*, *In re Teleglobe Communications Corp.*, 493 F.3d 345, 364 (3d. Cir. 2007); *In re Leslie Controls, Inc.*, 437 B.R. 493, 496 (Bankr. D. Del. 2010); *La. Mun. Police Emples. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008). The common interest of the parties must be "at least a substantially similar legal interest." *Id.* (citing *In re Teleglobe*, 493 F.3d at 364)*; see also In re Tribune Co.*, 2011 Bankr. LEXIS 299, at *13-15 (Bankr. D. Del. Feb. 3, 2011) (common interest protection applies whenever "[a] communication is made in order to facilitate the rendition of legal services" to clients with "substantially similar legal interest[s]."). Courts routinely find the common interest

doctrine applies as between corporate affiliates. *See, e.g., In re Teleglobe*, 493 F.3d at 369; *Margulis v. Hertz Corp.*, 2019 U.S. Dist. LEXIS 96978, at *5-6 (D.N.J. Feb. 19, 2019). The common interest privilege does not require a complete unity of interests among the parties, and parties can have a common interest as to certain subjects while being adverse as to others. *In re Leslie Controls, Inc.*, 437 B.R. at 500; *La. Mun. Police Emples. Ret. Sys.*, 253 F.R.D. at 310.

Here, LTL and J&J shared a clear common legal interest to achieve the purpose of the original funding arrangements which was to facilitate the resolution of all current and future talc-related claims through a chapter 11 plan of reorganization that provides for the establishment of a settlement trust to process and liquidate talc personal injury claims. This was the intent of the 2021 Funding Agreement and LTL's first filing, and remains LTL and J&J's shared common goal. *See, e.g.*, *Informational Brief of LTL Management LLC*, [D.E. 3] (Case No. 21-30589) (recognizing the first bankruptcy was filed to resolve permanently all mass tort claims relating to cosmetic talc products in a manner that is efficient and equitable to all parties, including current and future claimants); *Debtor's Statement Regarding Refiling of Chapter 11 Case*, [D.E. 3] (recognizing that the second filing was to effectuate the intent of its initial bankruptcy filing: to permanently, equitably and efficiently resolve all current and future talc-related claims). Even after the Third Circuit found that LTL was not in financial distress primarily because of its ability to seek funding from J&J under the 2021 Funding Agreement, LTL and J&J continued to share a common legal interest to achieve the original goal of the 2021 Funding Agreement. And LTL and J&J's communications regarding the enforceability or termination of the 2021 Funding Agreement in the wake of the Third Circuit's decision were entirely consistent with and in furtherance of that common legal interest. Indeed, the whole purpose of such discussions was to assess how the Third Circuit's decision affected the parties' ability to achieve their continuing common goal. And LTL

and J&J ultimately entered into new financing arrangements to effectuate the purpose of the original financing arrangements: to facilitate the equitable and efficient resolution of all current and future talc claims in bankruptcy for the benefit of LTL's creditors.

The TCC argues that a common interest privilege cannot exist between LTL and J&J regarding the termination of the 2021 Funding Agreement because LTL and J&J were contractual counterparties to that agreement. However, the fact that parties may be on adverse sides of an agreement or a transaction does not mean the parties did not share a common legal interest. *La. Mun. Police Emples. Ret. Sys.*, 253 F.R.D. at 310; *In re Leslie Controls, Inc.*, 437 B.R. at 502; *In re Cherokee Simeon Venture I, LLC*, 2013 Bankr. LEXIS 4839, at *10 (Bankr. D. Del. May 31, 2013) (the interests of parties need not be identical, and may even be adverse in some respects). A common interest privilege may be properly sustained where otherwise adverse counterparties face the possibility of joint litigation in which they would share a common interest. *Id.*[3] Here, J&J and LTL continued to share a common interest to effectuate the fundamental purpose and intent of the parties' original funding arrangements and facilitate the resolution of all current and future talc claims in bankruptcy. It also cannot be disputed that they faced an avalanche of pending litigation and anticipated a further barrage of litigation by plaintiff firms representing a minority of claimants seeking to derail that goal.

The reasoning in *In re Leslie Controls, Inc.,* 437 B.R. 493 (Bankr. D. Del. 2010) is instructive. In *In re Leslie Controls*, the court found that communications and documents shared between the debtor, an ad hoc creditors committee, and the pre-petition FCR in hopes of

---

[3] The TCC cites *AMEC Civil v. DMJM Harris Inc.*, 2008 WL 8171059 (D.N.J. 2008), but that case only found that the tolling agreement portion of a joint defense agreement between two parties was not covered by the common interest privilege because it dealt with possible future litigation between the parties. The court otherwise recognized that the parties shared a common interest with respect to anticipated future litigation by third parties, similar to the flood of litigation LTL and J&J faced and anticipated in connection with pursuing their continued shared goal to facilitate the resolution of all current and future talc claims in bankruptcy after the Third Circuit's ruling. *Id.* at 9.

developing a consensual plan of reorganization were protected because the entities shared a common legal interest in "preserving and maximiz[ing] the insurance available to pay asbestos claims." 437 B.R. at 493, 502. The court found that the parties were working together "to maximize the size of the pie" and were sharing privileged information related to their common legal interest against their "common enemy", and accordingly the common interest privilege applied notwithstanding that the parties' separate conflict of interest regarding the ultimate distribution of the debtor's assets. *Id.*

Here, LTL and J&J were aligned in their common goal of effectuating the intent of their original financing arrangement and resolving all current and future talc-related claims in bankruptcy, and they faced both pending litigation and anticipated further litigation from stakeholders representing a minority of claimants seeking to scuttle that goal at all costs. The parties also accurately anticipated that they would face strenuous litigation in connection with entering into new financing arrangements to effectuate the purpose of the original arrangements. That LTL and J&J were contractual counterparties in the 2021 Funding Agreement does not preclude or take away from their shared common interest in finding a path to achieve their shared goal of a permanent, equitable and efficient resolution of all current and future talc-related claims in a bankruptcy consistent with the intent of that agreement. Indeed, the common-interest privilege "does not require a complete unity of interests among the participants" and "applies even where the parties' interests are adverse in substantial respects." *In re Leslie Controls, Inc.*, 437 B.R. at 497.

It is clear that J&J shared (and continues to share) a common legal interest with LTL with regard to resolving all current and future talc-related claims in bankruptcy against their "common enemy," the minority of claimants that have initiated a barrage of litigation to prevent the vast

majority of claimants from deciding for themselves whether to accept the terms of the plan. Thus, even if LTL and J&J may have been contractual counterparties that did not share a "complete unity of interests", sufficient commonality exists in connection with their overarching and unwavering shared legal interest to effect the intent of the original funding arrangement to resolve all current and future talc claims through a chapter 11 plan of reorganization that provides for the establishment of a settlement trust to process and liquidate talc personal injury claims. *See Leslie Controls*, 437 B.R. at 502 (finding that debtor's communications and sharing of documents with an ad hoc creditors committee and pre-petition FCR regarding a consensual plan of reorganization were protected by the common interest doctrine, even where the parties ultimately had a conflicting interest relating to the distribution of the debtor's assets). This common interest protection is particularly important in the bankruptcy context, where "the complexity of a bankruptcy case, the numerous moving parts, the multitude of motions on different topics" and the negotiations between the parties are central to achieving a successful bankruptcy outcome consistent with the animating goals of the Bankruptcy Code. *See Maxus Liquidating Tr. v. YPF S.A.* (*In re Maxus Energy Corp.*), 617 B.R. 806, 824 (Bankr. D. Del. 2020) (acknowledging the application of the common interest privilege in bankruptcy proceedings).

The purported premise of the TCC's motion is also wrong. The TCC contends there could have been no common interest between LTL and J&J because any termination of the 2021 Funding Agreement would "relieve" J&J of a more than $60 billion funding obligation, but that is wrong. The prior funding agreement contained commitments by J&J and Johnson & Johnson Consumer Inc., the Debtor's predecessor, to backstop the Debtor's talc liability. The current funding agreements contain the same commitments. The value of the prior funding agreement was

the amount of the liability (minus the value of the Debtor),[4] not $60 billion, and that did not change with the new agreements. That the TCC continues to make reckless claims that the termination of the 2021 Funding Agreement was a fraudulent transfer—and seeks to pursue scorched earth litigation against LTL and J&J on such a theory—only further highlights the common interest shared between LTL and J&J with respect to these proceedings and the impending litigation. *La. Mun. Police Emples. Ret. Sys.*, 253 F.R.D. at 310; *In re Maxus Energy Corp.*, 617 B.R. at 822 (recognizing parties shared a common interest in connection with anticipated litigation).

*\*\*\**

For the reasons set forth above, the TCC's Motion should be denied.

---

[4] Under the prior funding agreement, funding of a plan was only required if the Debtor's assets were insufficient to satisfy the funding amount.

Dated: May 15, 2023

Respectfully submitted,

/s/ *Kenneth A. Rosen*

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Email: krosen@lowenstein.com

*Co-Counsel for Johnson & Johnson*

**WHITE & CASE LLP**
Jessica C. Lauria, Esq.
Gregory Starner, Esq.
Joshua D. Weedman, Esq.
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email:  jessica.lauria@whitecase.com
          gstarner@whitecase.com

**WHITE & CASE LLP**
Matthew E. Linder, Esq.
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mlinder@whitecase.com

*Co-Counsel for Johnson & Johnson*