**EXHIBIT B**

**In the Matter Of:**

*IN RE LTL Management LLC Bankruptcy*

*JOHN KIM*

*April 14, 2023*



```
                                                               1
 1            UNITED STATES BANKRUPTCY COURT

 2               DISTRICT OF NEW JERSEY

 3

 4   IN RE:                          Chapter 11

 5

 6   LTL MANAGEMENT LLC,      Case No.:  23-12825 (MBK)

 7

 8             Debtor,

 9   _____/

10

11            * C O N F I D E N T I A L *

12              VIDEOTAPED DEPOSITION

13                      OF

14                  JOHN KIM

15             FRIDAY, APRIL 14, 2023

16

17

18

19

20

21

22   Reported by:

23   Bridget Lombardozzi, CSR, RMR, CRR

24   JOB NO. 2023-893116

25
```

Case 23-12825-MBK    Doc 524-3    Filed 05/15/23    Entered 05/15/23 21:28:04    Desc
IN RE LTL Management LLC Bankruptcy
Exhibit B    Page 4 of 13
Confidential
John Kim
April 14, 2023

2

1
2
3
4              Stenographic videotaped
5  deposition of JOHN KIM taken on behalf of the
6  Official Committee of Talc Claimants 1 and others
7  similarly situated, commencing at 2:23 p.m., on
8  Friday, April 14, 2023, at the offices of Skadden,
9  Arps, Slate, Meagher & Flom LLP, One Manhattan
10 West, New York, New York, before Bridget
11 Lombardozzi, Certified Shorthand Reporter,
12 Registered Merit Reporter, Certified Realtime
13 Reporter, and Notary Public of the State of New
14 York, pursuant to notice.
15
16
17
18
19
20
21
22
23
24
25

Case 23-12825-MBK    Doc 524-3    Filed 05/15/23    Entered 05/15/23 21:28:04    Desc
IN RE LTL Management LLC Bankruptcy
Exhibit B    Page 5 of 13
John Kim
Confidential
April 14, 2023

67

1   liability is that great.  And what we think is
2   that the liability of the -- you know, of the --
3   the talc liability, we could have met it with the
4   JJCI.  You know, we were not insolvent.
5           The same is true with LTL after the --
6   the revisions to the funding agreement and the,
7   you know, support agreement.  It's not insolvent,
8   but it would be, you know, in financial distress.
9       Q.   Okay.  I -- I get it, but what I want
10  to -- I don't want talk about the liabilities for
11  a second.
12      A.   Mm-hmm.
13      Q.   So let's just focus on the asset --
14  the -- the asset side.
15          What was the total amount of value that
16  could have -- that would have -- strike that --
17  that could have been available to LTL under
18  Funding Agreement One?
19      A.   I think it was the fair -- it was the
20  fair market value of the assets which would have
21  been around $60 billion.
22      Q.   Okay.  And today under Funding Agreement
23  Two, what is the total value that's available to
24  LTL under Funding Agreement Two?
25      A.   The total assets available?  Well, I

68

1  mean, one way to look at it would be the fund --
2  the fair market value of Holdco, which has the
3  principal responsibility, is, I would say, I think
4  around 30 -- $30 billion.  But, of course, there's
5  liquidity issues with that $30 billion, but it is
6  $30 billion.
7           And but, also, there is a -- a proposal
8  on the table to take care of all the talc
9  liability that J & J would fund for 8. -- $8.9
10 billion which has the support of law firms
11 representing 60,000 claimants.  So I would say
12 that's really an appropriate number.
13      Q.   Yeah.  Okay.  I don't -- I don't want to
14 talk about the claims for now.  I'm a simple
15 person.  I just want to focus on --
16      A.   Mm-hmm.
17      Q.   -- the value that's available to LTL
18 under the funding agreement.  Just -- you told
19 me -- I just want to make sure I understand -- the
20 value available to LTL under Funding Agreement One
21 was roughly $60-odd billion, correct?
22      A.   That's correct.
23      Q.   Okay.  And the value available to LTL
24 under Funding Agreement Two is roughly $30
25 billion?

Case 23-12825-MBK   Doc 524-3   Filed 05/15/23   Entered 05/15/23 21:28:04   Desc
IN RE LTL Management LLC Bankruptcy   Exhibit B    Page 7 of 13   John Kim
Confidential   April 14, 2023

83

1          The fund -- the parties to the funding
2    agreement are LTL, right?
3        A.   Yes.
4        Q.   Johnson & Johnson Consumer, Inc., right?
5        A.   Yes.  You're talking about the old --
6        Q.   Yeah, the old funding agreement.
7             And Johnson & Johnson, right?
8        A.   Yes.
9        Q.   So did you ever discuss with those
10   parties whether they thought the funding agreement
11   was void or voidable?
12       A.   There were discussions among counsel for
13   those parties.
14       Q.   Well, let me ask you.  Your -- again,
15   was it Johnson & Johnson or JJCI -- JJCI's view
16   that the agreement was void or voidable?
17                  MS. BROWN:  I think that's
18             going to implicate legal advice and
19             would cause you to speculate as well,
20             so I object.
21                  Can you answer that question
22             without divulging information of other
23             lawyers that you may also have a
24             privilege with under the common
25             interest?

84

1                THE WITNESS:  No, but --

2                MS. BROWN:  Okay.  Then I'm

3         just going to instruct you not to

4         answer.

5      Q.   You know, I'm just -- it's going to be

6   a bad question, Mr. Kim, but I'd like to just cut

7   to the chase because I know we want to take a

8   break.

9           So you're a party -- you're one of the

10  parties to an agreement, right?

11     A.   We are.

12     Q.   And it's a good agreement for you

13  because the other party's going to give you a lot

14  of money, right?

15     A.   Well, it's -- not necessarily, no.  It's

16  a bad agreement because our principal purpose for

17  getting into the -- for -- for entering into all

18  these agreements -- the divisional merger

19  agreements, the funding agreements -- the

20  principal purpose was to try to resolve these

21  lawsuits in -- these talc lawsuits in bankruptcy

22  because that's where we can get a full, fair,

23  final resolution.

24           So if there's something in those

25  agreements that actually -- not -- not enhances

Case 23-12825-MBK    Doc 524-3    Filed 05/15/23    Entered 05/15/23 21:28:04    Desc
IN RE LTL Management LLC Bankruptcy    Exhibit B    Page 9 of 13    John Kim
Confidential    April 14, 2023

85

1  our ability to -- to do this in the bank -- to --
2  to resolve these cases in the bankruptcy system
3  but affirmatively thwarts our ability to do that,
4  I would say from LTL's perspective that is not a
5  good agreement.
6         Q.   Okay.  But the funding agreement -- I
7  think we had testimony on this in LTL 1 -- was the
8  debtor's most valuable asset, was it not?
9         A.   Yes, but not for the purpose that we
10 were using it for.  So it may -- it may have a lot
11 of value associated in terms of fair market value
12 of assets, but in terms of the purpose for the
13 entire transaction, it is -- it was a detriment to
14 the company.
15        Q.   Your testimony is that the funding
16 agreement, Funding Agreement One, that LTL entered
17 into prior to the last bankruptcy was a detriment
18 to the company?
19        A.   It turned out that based upon the Third
20 Circuit decision, that, yes, it was.  It was a
21 detriment to the company.  It thwarted the very
22 purpose for entering into it.
23        Q.   So -- so coming back to my common sense
24 question, you're one of the parties to the
25 agreement.  Did it in -- did it occur to you to

Case 23-12825-MBK    Doc 524-3    Filed 05/15/23    Entered 05/15/23 21:28:04    Desc
IN RE LTL Management LLC Bankruptcy
Exhibit B    Page 10 of 13
John Kim
Confidential
April 14, 2023

86

1   maybe see if -- if the other -- your

2   counterparties thought it was void or voidable?

3        A.   I didn't say we didn't.

4        Q.   Oh, okay.  So you -- you -- did you go

5   to -- let me ask you.  Did you -- did LTL, the --

6   the debtor, go to its counterparties and say, hey,

7   are you going to void this agreement on us?

8        A.   That's not what I testified to.  What I

9   testified was that the parties had discussions

10  through their counsel which would have been the

11  appropriate thing to do since this is a legal

12  issue.

13       Q.   I understand that but LTL, old LTL or

14  LTL, was a debtor in bankruptcy.  And is it -- are

15  you telling me you're not able to tell me whether

16  that debtor in bankruptcy -- what the answer was

17  from its counterparties under the funding

18  agreement as to whether they were going to take

19  action to void the funding agreement?

20              MS. BROWN:  I object.  He's

21         testified a couple of times that these

22         were discussions amongst lawyers.  So

23         it implicates privileged

24         communications.

25              MR. JONAS:  That defense?

Case 23-12825-MBK    Doc 524-3    Filed 05/15/23    Entered 05/15/23 21:28:04    Desc
IN RE LTL Management LLC Bankruptcy
Exhibit B    Page 11 of 13
John Kim
Confidential
April 14, 2023

144

```
 1   Ellis as claims administrator.
 2        A.   I see that, yes.
 3        Q.   Okay.  And I take it your testimony
 4   would be -- or will be the -- the remaining of all
 5   of the terms in here, submission of claims to the
 6   trust, if I look at Exhibit A to the term sheet,
 7   which has gynecological cancer qualification
 8   provisions.
 9             Is it your testimony that all of these
10   terms and provisions were negotiated between
11   J & J and the plaintiffs' lawyers that settled?
12   Agreed?
13                  MS. BROWN:  Objection.
14             Objection to the form; misstates his
15             testimony.
16        A.   I mean either -- either negotiated or
17   discussed or, you know, consensus was reached, but
18   these are the -- these are the terms that were
19   agreed for this -- for this purpose.  Again, my
20   understanding is that the majority of this is
21   still under negotiation and could change.
22        Q.   And do you have any understanding of
23   what the -- the average payout will be to OC
24   claims?
25        A.   I have an understanding as to what these
```

Case 23-12825-MBK   Doc 524-3   Filed 05/15/23   Entered 05/15/23 21:28:04   Desc
IN RE LTL Management LLC Bankruptcy Exhibit B   Page 12 of 13
John Kim
Confidential
April 14, 2023

190

1       A.   I would say there was a consensus
2  that -- that there was a material risk that the --
3  that the funding agreement was void or voidable.
4       Q.   Okay.  So it's your position as the
5  chief legal officer of LTL that both LTL and J & J
6  jointly decided at some point before April 4th,
7  2023, that both parties wanted to declare the 2021
8  funding agreement void?
9                  MS. BROWN:   That misstates
10          his testimony.  I object.
11      A.   I wouldn't characterize it that way.
12      Q.   All right.  Which party wanted to
13 declare it void?
14      A.   Again, I don't -- again, I don't think
15 that's the -- the right way to -- to look at it.
16 I would -- I would -- I would say that there was a
17 consensus reached that the -- that there was a
18 material risk that the funding agreement was --
19 was unenforceable because it was void or
20 voidable.
21      Q.   And who were the parties to that
22 consensus?
23      A.   Everyone that I named.
24      Q.   The parties -- I'm not asking about law
25 firms.  Who were the parties to that consensus?

191

1               MS. BROWN:  You want him to
2          identify specific lawyers that would
3          sign on to --
4               MR. BLOCK:  No.
5      Q.   No, sir.  LTL and J & J, are you saying
6  that those two parties reached a consensus that
7  the 2021 funding agreement was void?
8      A.   I would say through their lawyers, yes.
9      Q.   Sir, let me just share the screen and I
10  want to ask you about an exhibit that you were
11  shown earlier.  I want to ask you something
12  different about it.
13          Exhibit 2 you were shown?
14      A.   Yes.
15      Q.   Okay.  And this is a list of -- "Amended
16  list of law firms with significant talc claims
17  against the debtor" filed on April 13th, 2023.
18          Do you see that?
19      A.   I do see that.
20      Q.   Okay.  And it says "The following is an
21  alphabetical list of the law firms with the most
22  significant representations of parties with talc
23  claims against LTL Management, LLC."
24          Do you see that?
25      A.   I do see that.