| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel to the Official*<br><br>*Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael Winograd, Esq.<br>Eric R. Goodman, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>egoodman@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>100 Main Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Richard G. Haddad, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>David A. Castleman, Esq.<br>mcyganowski@otterbourg.com<br>rhaddad@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>dcastleman@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |

| | |
|---|---|
| In Re:<br><br>**LTL MANAGEMENT, LLC,**<br><br>                    Debtor. | Chapter 11<br><br>Case No.:  23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

**CERTIFICATION OF MATTHEW DIAZ IN SUPPORT OF
APPLICATION FOR RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR
TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS EFFECTIVE
APRIL 15, 2023**

I, Matthew Diaz, being of full age, certify as follows:

1.      FTI Consulting, Inc. ("FTI"), is seeking authorization to be retained as financial advisor to the Official Committee of Talc Claimants of LTL Management LLC (the "TCC" or Committee") and makes this certification in support of the *Application for Retention of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Talc Claimants Effective April 15, 2023* filed by the Committee (the "Application").

2.      I am a senior managing director at FTI. FTI is a public corporation whose common stock is listed on the New York Stock Exchange and is traded under the symbol "FCN." FTI has numerous wholly-owned subsidiaries as set forth on Exhibit 21.1 to FTI Consulting, Inc.'s most recent 10-K for the fiscal year ended December 31, 2022, filed with the United States Securities and Exchange Commission on February 23, 2023, a copy of which is available here: https://ir.fticonsulting.com/node/22686/html.

3.      FTI has a wealth of experience in providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

4.      The proposed arrangement for compensation, including hourly rates, if applicable, is as follows:

Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), orders of this Court and guidelines established by the United States Trustee, FTI will seek payment for compensation on an hourly basis, plus

reimbursement of actual and necessary expenses incurred by FTI, including legal fees related to this retention application and future fee applications as approved by the Court. FTI's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement on behalf of the Committee (the "Committee Engagement") are outlined in the Application for the employment of FTI. These hourly rates are adjusted periodically[1] and are as follows:

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $950 - 1,725 |
| Directors / Senior Directors / Managing Directors | 600 - 1,300 |
| Consultants/Senior Consultants | 375 - 805 |
| Administrative / Paraprofessionals | 150 - 325 |

To the best of my knowledge, a) no commitments have been made or received by FTI with respect to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code and b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with this chapter 11 case.

5. To the best of my knowledge, after reasonable and diligent investigation, FTI's connection with the debtor(s), creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, is as follows:

☐ None

☒ Describe connection: See no. 6 below.

6. To the best of my knowledge, after reasonable and diligent investigation, FTI's connection with the debtor(s), creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, is as follows:

---

[1] FTI typically reviews and/or adjusts its hourly rates on an annual basis and FTI will provide notice of any change.

☐ None

☒ Describe Connection:

In connection with the preparation of this Certification, FTI conducted a review of its contacts with the Debtor, its affiliates, and certain entities holding large claims or interests against the Debtor that were made reasonably known to FTI. A listing of the parties reviewed is reflected on **Exhibit B** to this Certification. FTI's review, completed under my supervision, consisted of a query of the Exhibit B parties within an internal computer database containing names of individuals and entities that are present or recent former clients of FTI.[2] A listing of such relationships that FTI identified during this process is set forth on **Exhibit C** to this Certification.

    a. Based on the results of its review, except as otherwise discussed herein, FTI does not have a relationship with any of the parties on Exhibit B in matters related to the Debtor's chapter 11 case. FTI has provided and could reasonably expect to continue to provide services unrelated to the Debtor's case for the entities on Exhibit C. To the best of my knowledge, FTI does not hold or represent any interest adverse to the estate, nor does FTI's involvement in this case compromise its ability to continue such consulting services.

        i. FTI was retained as financial advisor to the Official Committee of Talc Claimants and the Official Committee of Talc Claimants II in connection with LTL Management LLC's 2021 bankruptcy proceeding ("LTL I").

        ii. FTI has a practice group which provides non-advisory trial-related services including the preparation of graphics and other exhibits and providing certain hosting and courtroom technology services. Historically, this practice group has provided these services to Johnson & Johnson and its non-Debtor affiliates ("J&J") in connection with matters involving talc and non-talc related litigation. As of the Petition Date, all matters involving talc litigation are closed. As described below, there is an ethical wall in place to preclude members of this

---

[2] For the avoidance of doubt, FTI's computer database covers FTI Consulting, Inc. and its wholly-owned subsidiaries globally. Accordingly, the connections identified on Exhibit C hereto and any connections disclosed in the Certification do not relate solely to FTI Consulting, Inc., but rather, include connections with FTI Consulting, Inc. and its wholly-owned subsidiaries globally.

    practice group from working on any matter in connection with this engagement, and vice-versa.

iii.    Compass Lexecon LLC ("Compass Lexecon") is a wholly owned subsidiary of FTI.[3] In January 2023, Yvette Austin Smith joined Compass Lexecon. Ms. Austin Smith was previously employed by The Brattle Group, Inc. ("Brattle"). Brattle was retained as claims economist for ovarian cancer claims to the Committee in LTL I. After joining Compass Lexecon, Ms. Austin Smith was asked to provide the same services for the Committee as a contractor for Brattle. As set forth in the Application, the Committee intends to utilize Ms. Austin Smith's services (and, potentially, services from other Compass Lexecon employees) in connection with the Committee Engagement through FTI. For the avoidance of doubt, FTI (a) will bill the fees associated with Ms. Austin Smith's services (and any support services) at the standard rates charged by Compass Lexecon without any additional markup from FTI and (b) will not utilize the services of any Compass Lexecon employee who (x) is involved in the Legacy Engagement (as defined below) or (y) previously provided, or currently provides, services to J&J absent further approval from the Court.

iv.    Over the past five (5) years, Compass Lexecon has been engaged by J&J in several matters. Prior to joining Compass Lexecon, a professional was engaged by J&J in talc-related product liability actions. This professional continued to be engaged in these actions after joining Compass Lexecon (the "Legacy Engagement"). This Legacy Engagement is currently stayed because of the bankruptcy[4] and has been inactive since November 2020. Except for the Legacy Engagement, none of the services provided by Compass Lexecon to J&J relate to talc. Neither the Debtor nor J&J have engaged Compass Lexecon to provide any services related to the Debtor or this Case. The Committee is not currently seeking to retain Compass Lexecon and it will not be retained absent further

---

[3]    Although Compass Lexecon is an FTI subsidiary, it operates separately from FTI, with distinct management and employees and its own computer network and servers.

[4]    For avoidance of doubt, the Legacy Engagement was also stayed during LTL I.

       approval from the Court.[5]

- v. In addition, FTI is engaged by J&J on certain matters that are unrelated to the Debtor, the Debtor's chapter 11 case, or talc, more generally. FTI maintains an ethical wall to prevent the disclosure of information from these engagements to the professionals working on the Committee Engagement (each, a "Committee Engagement Professional" and collectively, the "Committee Engagement Professionals") and vice-versa.[6]

- vi. No Committee Engagement Professionals have performed, are performing, or will perform (during the pendency of the Debtor's chapter 11 case) services for J&J on talc or non-talc matters.

- vii. During each of the past five (5) years, FTI's revenue from J&J was less than 1% of FTI's revenue.

---

[5] However, as described in point (iii) above, Ms. Austin Smith, and certain Compass Lexecon professionals, may provide services in connection with the Committee Engagement through FTI.

[6] Out of an abundance of caution, FTI will protect client information through its ethical wall procedures: (i) each Committee Engagement Professional shall acknowledge in writing that he or she may receive certain nonpublic information and that he or she is aware of the ethical wall in effect and will follow the ethical wall procedures therein; (ii) no individual who works on, or worked on, matters involving talc-related litigation for Johnson & Johnson, Johnson & Johnson Consumer Inc., or their respective subsidiaries and affiliates (the "J&J Engagements") shall (A) serve as a Committee Engagement Professional, (B) provide any advice or services relating to the Committee Engagement or (C) directly or indirectly share with Committee members or professionals any nonpublic information generated by, received in connection with, or relating to the J&J Engagements; (iii) Committee Engagement Professionals will not directly or indirectly share any nonpublic information generated by, received from or relating to Committee activities or Committee membership with other FTI colleagues not assigned to the Committee Engagement, except that a good-faith communication of publicly available information shall not be presumed to be a breach of the obligations of FTI or any Committee Engagement Professionals under such ethical wall procedures; (iv) FTI is setting up electronic internal security walls to ensure that only Committee Engagement Professionals and other employees involved with or working on the Committee Engagement may have access to the information, databases, emails, schedules or any other information relating to the Committee Engagement, and to ensure that none of the Committee Engagement Professionals or other employees involved with or working on the Committee Engagement may have access to that information, databases, emails, schedules or any other information relating to the J&J Engagements; (v) FTI will periodically monitor, consistent with its ordinary course compliance practice, communications through electronic means among Committee Engagement Professionals and other FTI professionals and employees to ensure that such exchanges are performed in a manner consistent with the ethical wall procedures; and (vi) FTI shall immediately disclose to Committee counsel and the U.S. Trustee any material breaches of the procedures described herein. If FTI ceases to act as advisor to Committee, it will continue to follow the procedures set forth above until a plan has been confirmed in the Debtor's chapter 11 case or the chapter 11 case has been converted or dismissed.

    viii.    FTI is providing certain advisory services in connection with various environmental litigation matters, which are unrelated to talc, for Cyprus Amax Minerals Company ("Cyprus Amax"). In addition, FTI's Forensic and Litigation Consulting group was hired by counsel to Cyprus Amax to provide privileged consulting services in connection with the following adversary proceeding, *Imerys Talc America, Inc., Imerys Talc Vermont, Inc. and Imerys Talc Canada, Inc. v. Cyprus Amax Minerals Company and Cyprus Mines Corporation*, Adv. Pro. No. 19-50115-LSS (Bankr. D. Del.) (the "Cyprus Insurance Litigation"). FTI professionals have not billed any time on this matter since April 2022. None of the FTI professionals who have provided services in connection with the Cyprus Insurance Litigation (the "Cyprus Insurance Litigation Professionals") have provided or will provide services to the Committee in this Case, and FTI will implement an ethical wall between the Cyprus Insurance Litigation Professionals and the Committee Engagement Professionals. Neither J&J nor the Debtor is a party to the Cyprus Insurance Litigation.

    ix.    FTI is providing strategic communication services and non-advisory data collection, processing and hosting services for Imerys S.A. in connection with the chapter 11 case of Imerys Talc America, Inc., No. 19 10289 LSS (Bankr. D. Del.). For the avoidance of doubt, Imerys Talc America, Inc. is not an FTI client.

b. As of the Court's entry of an order dismissing the LTL I bankruptcy (the "Dismissal Order") on April 4, 2023, FTI was owed $1,643,706.74 for services rendered and expenses incurred in representing the TCC as its financial advisor in LTL I (the "Pre-Petition Balance"). On April 26, 2023, the Debtor filed a motion seeking the entry of an order authorizing it to satisfy its obligations under the Dismissal Order, including the final allowance of professional fees and expenses and the payment of such allowed fees and expenses (the "Obligations Motion"). *See LTL I Docket* [Dkt. No. 319]. Pending entry of an order approving the Obligations Motion, FTI anticipates that the allowed amount of the Pre-Petition Balance (the "Allowed Pre-Petition Fee Claim") will be paid in connection with LTL I.

c. Since being retained in this case, FTI has coordinated and will continue to coordinate with the members and other advisors of the Committee in an effort to avoid duplication

of services, including establishing reasonable procedures or protocols for communication among advisors with respect to the performance of services in connection with the Case. Further, FTI recognizes that it and Houlihan Lokey Capital, Inc. ("Houlihan"), an investment bank retained by the Committee, may perform services from different perspectives relating to the same general topics set forth above. To avoid duplication of services with Houlihan or other professionals retained by the Committee, the following system shall be implemented to determine the distribution of work relating to the bankruptcy case and related proceedings. First, a small group of senior advisors from FTI and Houlihan shall confer to determine work strategy and tasks, in consultation with the Committee's counsel, the Committee members, and their designated representatives. Second, FTI and Houlihan will coordinate responsibility for completing any applicable task. Third, to the extent any work product related to a task is relevant to the other's work or advice for the Committee, such work product shall be shared with FTI or Houlihan, as applicable, so that both FTI or Houlihan have the benefit of the other's relevant analysis and work product.

d. As part of its diverse practice, FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtor's case. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys, law firms and financial institutions, some of whom may be involved in this proceeding. In addition, FTI has in the past, may currently, and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtor and this chapter 11 case. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtor's estate and none are in connection with the Debtor's chapter 11 case.

e. Except for the Pre-Petition Balance described above in this Certification, FTI is not a "creditor" within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any other Committee Engagement Professional, to the best of my knowledge, (a) is a creditor, equity security holder, or insider of the Debtor; (b) is or has been within two

years before the Petition Date, a director, officer, or employee of the Debtor; or (c) has any interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason. As such, to the best of my knowledge, FTI does not hold or represent any interest adverse to the estate, and therefore believes it is eligible to represent the Committee under Bankruptcy Code section 1103(b).

f.  It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, FTI will promptly disclose such facts or relationships in a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

7.  To the best of my knowledge, my firm, myself, and the Committee Engagement Professionals working on this engagement (check all that apply):

☒ do not hold an adverse interest to the estate.

☒ do not represent an adverse interest to the estate.

☒ are disinterested under 11 U.S.C. § 101(14).

☐ do not represent or hold any interest adverse to the debtor or the estate with respect to the matter for which I will be retained under 11 U.S.C. § 327(e).

☐ Other.  Explain: _____

8.  If the professional is an auctioneer,

The following are my qualifications and experience with the liquidation or sale of similar property: N/A

The proposed method of calculation of my compensation, including rates and formulas, is: N/A

Pursuant to D.N.J. 2014-2, I ☐ do  or  ☐ do not request a waiver of the requirements of  D. N. J. LBR 2016-1.

The following is an estimate of all costs and expenses, including labor, security, advertising, delivery, mailing, and insurance, for which I will seek reimbursement from the sale proceeds: N/A

Have you, or a principal of your firm, been convicted of a criminal offense?

☐ No         ☐ Yes (explain below)         ☒ N/A

I certify that a surety bond as described in D. N. J. LBR 2014-2(a)(6) is in effect and will remain so through the date of turnover of the auction proceeds.  N/A

9. If the professional is an auctioneer, appraiser or realtor, the location and description of the property is as follows: N/A

I certify under penalty of perjury that the above information is true.

Date: May 17, 2023.                          */s/ Matthew Diaz*
                                             Matthew Diaz