| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official*<br>*Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Michael S. Winograd, Esq.<br>Susan Sieger-Grimm, Esq.<br>Kenneth J. Aulet, Esq.<br>dmolton@brownrudnick.com<br>mwinograd@brownrudnick.com<br>ssieger-grimm@brownrudnick.com<br>kaulet@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>And-<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the*<br>*Official Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Jennifer S. Feeney, Esq.<br>Michael R. Maizel, Esq.<br>mcyganowski@otterbourg.com<br>jfeeney@otterbourg.com<br>mmaizel@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Co-Counsel for the Official Committee*<br>*of Talc Claimants* |

| | |
|---|---|
| In re:<br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

**CERTIFICATION OF PROFESSIONAL IN
SUPPORT OF APPLICATION FOR RETENTION
OF PROFESSIONAL**

I, Jeffrey Carhart, being of full age, certify as follows:

1. I am a Partner of or associated with the firm of Miller Thomson LLP ("**MT**"). MT is seeking authorization to be retained as Canadian counsel to the Official Committee of Talc Claimants (the "**Committee**").

2. My professional credentials include: I have been practicing law for over 37 years. Myself and members of my team have significant insolvency and cross border experience, including representing official committees of a similar nature. Examples of cases our team has been involved in include, *In re Muscletech Research & Development* (mass-tort claim cross-border insolvency case in Southern District of New York); *In re Quadriga Fintech Solutions Inc.* (Estate No. 31-2560986) (the first cryptocurrency insolvency proceeding in Canada; and *In re ENTREC Corporation et. al.* (Case No. 20-32643, Southern District of Texas). MT has also acted as special (Canadian) counsel to the Official Committee of Talc Claimants in the Debtors' first Chapter 11 Case, which was dismissed by the Third Circuit, as well as Canadian counsel to an Ad Hoc Committee of Talc Claimants in this Chapter 11 Case. I am a member in good standing of the Bar of the Province of Ontario (Law Society of Ontario 23645M) and am admitted to practice before the Ontario Superior Court of Justice, the Court of Appeal of Ontario, and the Supreme Court of Canada.

3. MT, along with each of the other firms the Committee has proposed to retain, serves a distinct purpose from the others:

    a. Brown Rudnick serves as lead bankruptcy counsel, providing a deep bench of attorneys with core bankruptcy, bankruptcy litigation and mass tort bankruptcy experience.
    b. Otterbourg serves as lead mass tort/litigation counsel and special bankruptcy counsel, providing the unique perspective of a former bankruptcy chief judge and expertise in preliminary injunction and district court litigation.
    c. Massey & Gail serves as special counsel, providing unparalleled mass tort and other complex case experience before trial and appellate courts, including the Supreme Court.
    d. Genova Burns serves as local counsel, one of few New Jersey firms with appropriate experience that is without conflicts in this case.

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

  e. Miller Thomson will serve as Canadian counsel to the Committee.

4. As part of the allocation of responsibilities of each of the firms referenced in paragraph 3 of this certification, an efficient multi-step system has been developed and implemented by each of these firms to determine allocations of work relating to the bankruptcy case and related proceedings and matters. First, a small group of senior partners confer to determine strategy in consultation with Committee members and their designated representatives. Next, one firm is assigned primary responsibility for a task. Once a task has been preliminarily completed, it is reviewed by the other firms, allowing the firm to which the task was assigned to benefit from the extensive knowledge and varying perspectives of co-counsel. Once the co-counsel have signed off on a particular task, it is circulated to the Committee for review and comment. MT intends to participate in this process to ensure legal services are provided to the Committee cost-effectively. MT believes that the above protocol is consistent with effective management of assignments in a mega bankruptcy case as well as how such matters are handled by large law firms such as those sought to be retained by the Debtor and their affiliates in other bankruptcy cases.

5. MT has reviewed the Known Parties in Interest List (as defined below). As of this filing, MT did not discover any connections that would render MT ineligible for retention and will continue to monitor, investigate and update its retention documents.

6. The proposed arrangement for compensation, including hourly rates, if applicable, is as follows: MT will be compensated at its standard hourly rates for matters of this nature, which are based on the professional's level of experience. At present, the standard hourly rates charged by MT are as follows:

| Biller | Rate/Hour (CAD) |
|---|---|
| Partners | $700 -$1100 |
| Associates | $400 - $600 |
| Paralegals | $300 - $400 |

MT adjusts its billing rates on a semi-annual basis and will provide notice to the Committee, the Debtor, and all parties requesting notice of any adjusted hourly rates during the case. Based on our experience in the Debtor's first Chapter 11 Case, we anticipate the team working on this case will comprise the following lawyers:

(1) **Jeffrey Carhart** is a senior partner in the insolvency group at MT. He has extensive experience in cross-border, mass-tort restructuring proceedings. Mr. Carhart functions as the top-level strategic decision maker on behalf of MT in this case.

(2) **Gavin Finlayson** is a senior partner in MT's litigation group. Mr. Finlayson's attendance at meetings and role on the various aspects of this case focuses on litigation issues within the restructuring proceedings. He also advises on issues related to class action litigation in Canada, as the system is materially different than in the United States. This case involves many specific and nuanced litigation-related issues which implicate various statutes including provincial class proceeding statutes.

(3) **Asim Iqbal** is a junior partner in the insolvency group at Miller Thomson and has significant experience in Canada-US cross border matters. Mr. Iqbal is responsible for the day-to-day implementation of strategic decisions of the Official Committee as they relate to the Canadian proceeding or Canadian legal issues. This case involves a high volume of meetings, liaison with counsel and other stakeholders and reporting. Mr. Iqbal acts as the liaison between the strategic partners and the associates and other team members who assist with specific case-related tasks.

(4) **Monica Faheim** is a junior associate in the insolvency and restructuring group at Miller Thomson. She takes instruction directly from the partners in the Core Group, primarily from Mr. Iqbal, and assists each of Mr. Carhart, Mr. Finlayson and Mr. Iqbal with various day-to-day case tasks including research, drafting of correspondence, summaries, and other tasks on an on-going basis. Where additional members outside of the Core Group are asked to participate on a distinct task in the case, Mrs. Faheim acts as a liaison and provides the necessary background and information efficiently for the purpose of assisting with the completion of the relevant task(s).

7. MT acted as Special (Canadian) Counsel to the Committee in the Debtor's first Chapter 11 Case. In that case, MT filed supplemental certifications in order to provide, among other things, additional disclosures with respect to conflict checks. For the purpose of this retention application, I hereby affirm the following that was included in such supplemental certifications:

   a) MT used its customary procedures to comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules regarding the retention of professionals by the Committee under the Bankruptcy Code (the "**Disclosure Procedures**"). Attached at Exhibit 2 to this Certification is a complete list of its connections based on the results of the Disclosure Procedures, including all existing client relationships (the "**Connections List**").
   b) The results of the Disclosure Procedures indicated that MT represents Imerys Talc Canada Inc. ("**Imery's Canada**") in certain unrelated matters.
   c) MT represents Imery's Canada in two matters. One matter is subject to a non-disclosure agreement, and one is not public. In order to provide further clarity as part of this Application, MT provides Imery's Canada with advisory services in connection with non-litigious, contractual matters in Canada. MT does not, and will not, represent Imery's Canada in any way related to the Debtor, Johnson & Johnson (and its affiliates), any insolvency proceeding to which Imery's Canada or its affiliates are subject, nor any talc-related liabilities or litigation in Canada or the USA.
   d) I am advised that while Imery's Canada has been a client since 2013, MT has no current open matters for Imery's Canada. All of the relationship partners at Miller Thomson for Imery's Canada have been made aware that they may not act on any matter related to LTL Management, J&J or its affiliated entities.
   e) MT's Restructuring and Insolvency Group has national coverage across Canada with a significant presence the Canadian Provinces of Ontario, Alberta and British Columbia. On or about

        November 17, 2022, a new lawyer, James Reid, joined MT's Restructuring and Insolvency Group in the Calgary office. Prior to joining Miller Thomson, Mr. Reid was a lawyer at Blake, Cassels and Graydon LLP ("**Blakes**"), which is Canadian Counsel to the Debtor in this Chapter 11 case.

   f) As part of MT onboarding process, MT conflict team identified all potential conflicts, including with respect to this Chapter 11 Case, and established appropriate walls to maintain confidentiality. In particular, as a result of the establishment of an ethical wall: (i) Mr. Reid has no access to any electronic files stored on MT's electronic document management system; (ii) stored physical files (if any) are isolated from Mr. Reid, so he is unable to have access to them; (iii) Mr. Reid has no access this file on MT's docketing system to record or review any dockets in connection with this matter; and (iv) a communication memorandum was sent to all of the other lawyers advising of the creation of the ethical wall with respect to Mr. Reid and to advise MT lawyers to not communicate with Mr. Reid about file-related matters.

   g) With respect to this Chapter 11 Case, no member of the MT team working on the case has had any substantive discussions about the case with Mr. Reid. In one introductory conversation with Mr. Reid, I mentioned our role acting for the Committee in this Chapter 11 Case; but, after becoming aware that he was employed at Blakes, no further or substantive discussion occurred. Moreover, as described above, an ethical wall has been established and all firm members have been made aware of the establishment of such wall.

☐ Pursuant to D.N.J. LBR 2014-3, I request a waiver of the requirements of D.N.J. LBR 2016-1.

8. MT incurred fees in connection with its role as Special (Canadian) Counsel to the Committee in the Debtor's first Chapter 11 Case. However, at this time, there are no amounts owing to MT. This is because for a period of time during its retention in the Debtor's first Chapter 11 Case, MT charged Canadian Harmonized Sales Tax (HST) on bills rendered. It was later brought our attention that HST was not required to be charged. After further consultation and review, MT agreed with the Fee Examiner appointed in the Debtor's first Chapter 11 case to provide the Debtor with a credit for the HST charged on its final bills issued in the first Chapter 11 Case. After applying such credit, MT is not owed any fees from the Debtor in connection with its first Chapter 11 Case and currently holds CAD $16,283.69, which MT will to apply against future fees incurred in this Chapter 11 Case, should this court approve MT's retention.

9. To the best of my knowledge, after reasonable and diligent investigation, my connectionwith the debtor(s), creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of theUnited States trustee, is as follows:

      a.    None

   X    Describe connection: See <u>Exhibit 2</u>

10.    To the best of my knowledge, after reasonable and diligent investigation, the connection of my firm, its members, shareholders, partners, associates, officers and/or employees with the debtor(s), creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, is as follows:

      a.    None

   X    Describe Connection: See <u>Exhibit 2</u>

11.    To the best of my knowledge, my firm, its members, shareholders, partners, associates, officers and/or employees and I (check all that apply):

   X    do not hold an adverse interest to the estate.

   X    do not represent an adverse interest to the estate.

   X    are disinterested under 11 U.S.C. § 101(14).

   X    do not represent or hold any interest adverse to the debtor or the estate with respect to the matter for which I will be retained under 11 U.S.C. § 327(e).

   ☐    Other. Explain:

12.    If the professional is an auctioneer,

      a.    The following are my qualifications and experience with the liquidation or sale of similar property: N/A

      b.    The proposed method of calculation of my compensation, including rates and formulas, is: N/A

☐ Pursuant to D.N.J. 2014-2, I ☐ do or ☐ do not request a waiver of the requirements of D. N.J. LBR 2016-1.

      c.    The following is an estimate of all costs and expenses, including labor, security, advertising, delivery, mailing, and insurance, for which I will seek reimbursement from the sale proceeds:

      d.    Have you, or a principal of your firm, been convicted of a criminal offense?

          ☐ No ☐ Yes (explain below)

      e.    I certify that a surety bond as described in D. N. J. LBR 2014-2(a)(6) is in effect and will remain so through the date of turnover of the auction

       proceeds.

13. If the professional is an auctioneer, appraiser or realtor, the location and description of the property is as follows: N/A

I certify under penalty of perjury that the above information is true.

Date May 8, 2023                              */s/ Jeffrey Carhart*
                                                                                   Signature of Professional