**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

In re:

LTL MANAGEMENT LLC,[1]

Debtor.

Chapter 11

Case No.: 23-12825 (MBK)

Judge: Michael B. Kaplan

**Hearing Date and Time**:
June 13, 2023 at 10:00 a.m.

**DEBTOR'S MOTION FOR AN ORDER AUTHORIZING
IT TO ENTER INTO AN EXPENSE REIMBURSEMENT
AGREEMENT WITH AD HOC COMMITTEE OF SUPPORTING COUNSEL**

The above-captioned debtor (the "Debtor") moves the Court, pursuant to

section 363(b) of the Bankruptcy Code, for the entry of an order authorizing it to enter into a

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1536599821

post-petition expense reimbursement agreement (the "Reimbursement Agreement")[2] to pay certain fees and expenses of the Ad Hoc Committee of Supporting Counsel (the "AHC of Supporting Counsel").[3] In support of this Motion, the Debtor respectfully represents as follows:

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.) (the "Standing Order of Reference"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

2. The statutory predicate for the relief requested herein is section 363(b) of the Bankruptcy Code.

**Background**

3. On April 4, 2023 (the "Petition Date"), the Debtor commenced this reorganization case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[2] A copy of the Reimbursement Agreement is attached as Exhibit A to the *Declaration of Dan B. Prieto* filed contemporaneously herewith.

[3] On May 9, 2023, the AHC of Supporting Counsel filed its *Verified Statement of Paul Hastings LLP, Cole Schotz P.C. and Parkins & Rubio LLP Pursuant to Bankruptcy Rule 2019* [Dkt. 470]. The current members of the AHC of Supporting Counsel are Andres Pereira Law Firm; Andrews & Thornton; Heninger Garrison Davis, LLC; Johnson Law Group; Linville Law Group; McDonald Worley PC; Nachawati Law Firm; OnderLaw, LLC; Paul LLP; Pulaski Kherkher, PLLC; Rueb Stoller Daniel (f/k/a Dalimonte Rueb, LLP); Singleton Schreiber; Slater Slater Schulman LLP; Trammell PC; and Watts Guerra LLP.

4. The Debtor commenced the Chapter 11 Case after reaching agreement with members of the AHC of Supporting Counsel – who represent approximately 58,000 talc claimants in the aggregate – on the material terms of a plan of reorganization that, if confirmed and consummated, would fully resolve all of the Debtor's liability for talc-related claims.[4] That agreement has been memorialized in a series of plan support agreements that have been executed and delivered by members of the AHC of Supporting Counsel.[5] The plan support agreements provide, among other things, that the Debtor, Johnson & Johnson, Johnson & Johnson Holdco (NA) Inc., a New Jersey Corporation ("Holdco") and the claimants will work together to finalize, file and seek confirmation of a plan of reorganization that provides for the establishment of a trust funded in the amount of $8.9 billion on a net present value basis.[6]

5. On April 14, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed the Official Committee of Talc Claimants (the "TCC"),[7] which has thus far purported to advance the interests of only claimants that oppose the Chapter 11 Case and the terms of the plan of reorganization set forth in the plan support agreements.

6. On May 8, 2023, the Court entered an order [Dkt. 459] appointing Eric Green and Gary Russo to serve as co-mediators to mediate a comprehensive resolution of issues in the Chapter 11 Case, including the terms of a plan of reorganization.

7. On May 18, 2023, the Court entered an order [Dkt. 551] appointing Randi S. Ellis as the legal representative for future talc claimants.

---

[4]    See Decl. of John K. Kim in Support of First Day Pleadings [Dkt. 4] (the "Kim Decl."), ¶ 72.
[5]    See id.
[6]    See id. ¶ 73.
[7]    Notice of Appointment of Official Committee of Talc Claimants [Dkt. 162].

***The AHC of Supporting Counsel***

8. On April 18, 2023, certain counsel organized the AHC of Supporting Counsel comprised of counsel for approximately 58,000 talc claimants to advance the common interests of the law firms that have entered into plan support agreements with the Debtor. The law firms on the AHC of Supporting Counsel contain preeminent members of the mass tort plaintiffs' bar who have led the talc litigation for over a decade, including two former members of the Official Committee of Talc Claimants in the first bankruptcy case filed by the Debtor. The clients of the law firms on the AHC of Supporting Counsel include the vast majority of existing talc claims; approximately 50% of those talc claimants have filed lawsuits in federal and state courts. Thus, the AHC of Supporting Counsel holds a unique position in this Chapter 11 Case as a counterweight to the vocal minority represented by the TCC.

9. The members of the AHC of Supporting Counsel have worked diligently to arrive at a settlement that creates a framework to expedite the recovery for claimants in an equitable manner—a far better result than decades of piecemeal litigation rewarding some but not all claimants. The AHC of Supporting Counsel is supportive of the Debtor's proposed plan of reorganization, and each member of the AHC of Supporting Counsel intends to recommend that its respective clients vote in favor of the plan. To that end, the members of the AHC of Supporting Counsel entered into plan support agreements pursuant to which the parties have agreed to resolve all present and future talc claims against the Debtor for a total contribution from the Debtor of $8.9 billion, over 25 years, on a net present value basis.

***The Reimbursement Agreement***

10. To facilitate a successful resolution of this Chapter 11 Case and ensure that all parties are adequately represented in this case, including claimants who represent a majority of the Debtor's claimants and whose counsel support the Chapter 11 Case and the

proposed plan of reorganization, the Debtor negotiated the terms of the Reimbursement Agreement.

11. The Reimbursement Agreement provides that the Debtor will pay (a) the reasonable and documented out-of-pocket expenses of members of the AHC of Supporting Counsel and (b) the reasonable and documented fees and out-of-pocket expenses of professionals that are currently or will be retained by the AHC of Supporting Counsel, including, without limitation, Paul Hastings LLP, Cole Schotz P.C. and Parkins & Rubio LLP (collectively, the "Professionals"), for the period of April 18, 2023 through the termination of the Reimbursement Agreement (together, the "Fees and Expenses").

12. The Reimbursement Agreement provides that the Professionals will file monthly fee statements and interim and final fee applications in accordance with the Court's *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [Dkt. 562] (the "Interim Compensation Order").

13. Either party can terminate the Reimbursement Agreement at any time and for any reason by providing written notice to the other party, and such termination will be effective ten business days following the delivery of the written notice.

## Relief Requested

14. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor requests that the Court enter an order, substantially in the form submitted herewith, authorizing the Debtor to enter into the Reimbursement Agreement with the AHC of Supporting Counsel.

### The Debtor May Enter Into the Reimbursement Agreement Pursuant to Section 363(b) of the Bankruptcy Code

15. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

-5-

business, property of the estate." 11 U.S.C. § 363(b)(1).  Under applicable case law in this and other circuits, the reasonable business judgment standard applies to the approval of non-ordinary course transactions under section 363(b) of the Bankruptcy Code.  See, e.g., In re Del. & Hudson R.R., 124 B.R. 169, 176 (D. Del. 1991) (recognizing that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (same); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) (same).

16. This Court previously approved the Debtor's request to pay the fees and expenses of the ad hoc committee of state attorneys general pursuant to section 363 of the Bankruptcy Code in the Debtor's prior chapter 11 case.  In re LTL Mgmt. LLC, No. 21-30589 (MBK) (Bankr. D.N.J. June 24, 2022) [Dkt. 2585] (approving agreement that authorized the payment of fees and expense for an ad hoc committee of state attorneys general and concluding that agreement was a reasonable exercise of the debtor's business judgment).  Moreover, courts in this Circuit, and others, have regularly approved agreements providing for the payment of unsecured creditors' professional fees as a proper exercise of the debtor's business judgment.  In re Purdue Pharma L.P., No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019) [Dkt. 553] (authorizing debtors to "perform the Reimbursement Agreement pursuant to section 363 of the Bankruptcy Code"); In re Hercules Offshore, Inc., No. 15-11685 (KJC) (Bankr. D. Del. Aug. 24, 2015) [Dkt. 95] (approving payment of unsecured creditors' professional fees in connection with a restructuring support agreement); In re Dendreon Corp., No. 14-12515 (PJW) (Bankr. D. Del. Dec. 23, 2014) [Dkt. 215] (approving, over the objection of the United States Trustee, agreement that provided for payment of unsecured debt holders' fees, finding that it was a proper exercise of the debtors' business judgment); In re Genco Shipping & Trading Ltd., 509 B.R. 455, 463-64

NAI-1536599821

(Bankr. S.D.N.Y. 2014) (approving payment of counsel to an ad hoc group of unsecured noteholders' professional fees in accordance with the debtors' business judgment); In re Rural/Metro Corp., No. 13-11952 (KJC) (Bankr. D. Del. Sept. 5, 2013) [Dkt. 217] (approving payment of unsecured noteholders' professional fees as an exercise of the debtors' business judgment); In re AMR Corp., No 11-15463 (SHL) (Bankr. S.D.N.Y. Sept. 21, 2012) [Dkt. 4652] (approving payment of ad hoc group of unsecured creditors' professional fees pursuant to fee letter approved under section 363(b)).

17.     Approval of the Fees and Expenses at a later date under section 503(b) of the Bankruptcy Code would be an inadequate substitute for the pre-authorization sought in this Motion.  While the AHC of Supporting Counsel is comprised of numerous law firms, the fees and expenses of its bankruptcy professionals in this Chapter 11 Case could ultimately be passed onto (and ultimately borne by) their clients – the individual talc claimants.  Unlike corporate litigants, the AHC of Supporting Counsel and the individual talc claimants are ill-equipped to bear the costs of the Professionals, and absent the relief requested in this Motion, the AHC of Supporting Counsel's ability to engage and meaningfully participate in this Chapter 11 Case may be significantly impaired, if not wholly undermined.  As Judge Walrath noted in authorizing payment of unsecured creditors' professional fees under a similar "benefit to the estate" standard in RCS Capital:

> I disagree with the United States Trustee that I need to wait and see if the plan is confirmed before I can approve such fees.  Getting the Debtor stabilized and on track to an exit; whether it is ultimately approved in that form is not necessary.

In re RCS Cap. Corp., No. 16-10223-MFW (Bankr. D. Del. Mar. 16, 2016), Hr'g Tr. 40:24-41:9. Similarly, in authorizing payment of professional fees and expenses of an unsecured noteholder ad hoc group and indenture trustee in Extraction Oil & Gas, Judge Sontchi recognized the

-7-

importance of debtors retaining flexibility to pay such amounts if doing so serves their business or reorganization interests:

> I would generally agree with this concept that 363 allows you to do anything unless it's controverted by the code in another provision. The whole point, of course, of having a debtor-in-possession with the authority to operate a business is for the Court to limit its interference in the operation of that business to points where it matters.

In re Extraction Oil & Gas, Inc., No. 20-11548 (CSS) (Bankr. D. Del. Dec. 22, 2020), Hr'g Tr. 84:7-25.

18.    These cases make clear that fees incurred by unsecured creditors' professionals may be authorized on a prospective basis to the extent payment of such fees would benefit the debtor's estate by, among other things, facilitating progress in the case. Such prospective relief is particularly appropriate (and important) here given the constituency comprising the AHC of Supporting Counsel and their support of the Chapter 11 Case and proposed plan of reorganization.

### Entry Into the Reimbursement Agreement Is a Proper Exercise of the Debtor's Business Judgment

19.    The Debtor's entry into the Reimbursement Agreement is an exercise of its business judgment and should be approved under section 363(b) of the Bankruptcy Code. The Debtor has stated since the inception of this Chapter 11 Case its desire to engage in good faith negotiations to reach a consensual resolution of this case as soon as possible. To that end, the Debtor has already formulated a proposed plan of reorganization and obtained support from counsel for a majority of the talc claimants as set forth in the plan support agreements, including the members of the AHC of Supporting Counsel. In addition, the Court recently referred the Debtor and certain other parties to mediation, including J&J, the TCC, the legal representative for future talc claimants, the ad hoc committee of states holding consumer protection claims,

certain insurers, certain representative plaintiffs in pending litigation and the AHC of Supporting Counsel. Notably, funding under the Reimbursement Agreement will permit the AHC of Supporting Counsel to devote the necessary resources to (a) finalize the plan of reorganization and related disclosure statement, (b) address other matters in the Chapter 11 Case and (c) participate in the Court-ordered mediation.

20. The prospects of obtaining a consensual resolution of this Chapter 11 Case are enhanced by the involvement of the AHC of Supporting Counsel. It can serve as an intermediary between the Debtor and other claimants, and assist with explaining the benefits of the current plan to other claimants and productively convey to the Debtor concerns that other claimants may have with the plan. The AHC of Supporting Counsel already has worked in good faith with the Debtor to assist it in filing its chapter 11 plan on May 15, 2023. The Debtor expects that the AHC of Supporting Counsel will continue to advance this Chapter 11 Case by pursuing further negotiations with the Debtor regarding the plan, ultimately assisting in confirmation and consummation of the plan.

21. While the Debtor has agreed to pay certain fees and expenses of the AHC of Supporting Counsel in connection with this Chapter 11 Case, the Debtor believes that these costs represent a significant savings over the fees and expenses that could be incurred if the Debtor were required to negotiate with the members of the AHC of Supporting Counsel on an individual basis.

22. The Debtor's business judgment in entering into the Reimbursement Agreement is further supported by certain provisions that safeguard estate resources and ensure that the payment of the Fees and Expenses is in the best interest of the Debtor's estate. These include a provision that allows the Debtor to terminate the Reimbursement Agreement and halt

the accrual of future Fees and Expenses upon ten business days' written notice. This right to terminate ensures that the Debtor will not risk paying Fees and Expenses if there is no longer utility in doing so. The Reimbursement Agreement also requires the Professionals to submit invoices for payment in accordance with the Interim Compensation Order. This provides the Debtor and other parties in interest an opportunity to review and, if appropriate, object to the Fees and Expenses.

23.     For all these reasons, the Debtor respectfully submits that its entry into the Reimbursement Agreement should be approved as a sound exercise of its business judgment.

**Waiver of Rule 6004(h) of the Federal Rules of the Bankruptcy Procedure**

24.     The Debtors seek a waiver, to the extent it is applicable, of the 14-day stay of an order authorizing the use, sale or lease of property under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

**Waiver of Memorandum of Law**

25.     The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies on is incorporated herein and the Motion does not raise any novel issues of law.

**Notice**

26.     Consistent with the *Order Establishing Case Management and Administrative Procedures* [Dkt. 554] (the "Case Management Order"), notice of this Motion has been provided to: (a) the U.S. Trustee; (b) proposed counsel to the TCC; (c) the legal representative for future talc claimants and her proposed counsel; (d) counsel to the AHC of Supporting Counsel; (e) counsel to the Debtor's non-debtor affiliates, Holdco and J&J; and (f) the other parties on the Master Service List established by the Case Management Order. In

light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.

## No Prior Request

27. No prior request for the relief sought in this Motion has been made to this or any other court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter an order, substantially in the form submitted herewith; and (ii) grant such other and further relief as the Court may deem proper.

Dated: May 23, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

NAI-1536599821