# EXHIBIT 1





**OUR COMPANY**

# Johnson & Johnson Announces Plans to Accelerate Innovation, Serve Patients and Consumers, and Unlock Value through Intent to Separate Consumer Health Business

*New Consumer Health Company would be a Global Leader with Iconic Brands and Products that Touch Over One Billion Lives Every Day*

*Johnson & Johnson would Remain a Global Leader in Healthcare, Focused on Major Unmet Medical Needs and Materially Advancing Standard of Care through Biopharmaceutical and Medical Device Innovation and Technology*

*Separation Designed to Enhance Operational Performance and Strategic Flexibility, Benefiting Patients and Consumers and Unlocking Value for All Stakeholders*

*New Consumer Health Company Expected to Complete Separation in 18 to 24 Months*

*Johnson & Johnson to Host Investor Conference Call Today at 8:30 a.m. ET*

**NEW BRUNSWICK, N.J. November 12, 2021** – Johnson & Johnson (the "Company") (NYSE: JNJ) today announced its intent to separate the Company's Consumer Health business, creating a new publicly traded company. The planned separation would create two global leaders that are better positioned to deliver improved health outcomes for patients and consumers through innovation, pursue more targeted business strategies and accelerate growth.

Following the planned separation, the new Johnson & Johnson would remain the world's largest and most diverse healthcare company and continue its commitment to lead in global healthcare R&D and innovation, with a portfolio that blends its strong Pharmaceutical and Medical Device capabilities focused on advancing the standard of care through innovation and technology. As previously announced, Mr. Alex Gorsky will serve as Executive Chairman of Johnson & Johnson and transition the Chief Executive Officer role to Mr. Joaquin Duato, currently Vice Chairman of the Company's Executive Committee, effective January 3, 2022. Mr. Duato would continue to lead the new Johnson & Johnson following completion of the planned separation.

The New Consumer Health Company would be a leading global consumer health company, touching the lives of over one billion consumers around the world every day through iconic brands such as Neutrogena, AVEENO®, Tylenol®, Listerine®, JOHNSON's®, and BAND-AID® and continuing its legacy of innovation. The New Consumer Health Company's Board of Directors and executive leadership would be determined and announced in due course as the planned separation process progresses.

Mr. Gorsky said, "Throughout our storied history, Johnson & Johnson has demonstrated that we can deliver results that benefit all our stakeholders, and we must continually be evolving our business to provide value today, tomorrow and in the decades ahead. Following

a comprehensive review, the Board and management team believe that the planned separation of the Consumer Health business is the best way to accelerate our efforts to serve patients, consumers, and healthcare professionals, create opportunities for our talented global team, drive profitable growth, and – most importantly – improve healthcare outcomes for people around the world."

Mr. Gorsky continued, "For the new Johnson & Johnson, this planned separation underscores our focus on delivering industry-leading biopharmaceutical and medical device innovation and technology with the goal of bringing new solutions to market for patients and healthcare systems, while creating sustainable value for shareholders. We believe that the New Consumer Health Company would be a global leader across attractive and growing consumer health categories, and a streamlined and targeted corporate structure would provide it with the agility and flexibility to grow its iconic portfolio of brands and innovate new products. We are committed to the success of each organization, as well as our company's more than 136,000 employees around the globe, who will remain the backbone of these businesses."

Mr. Duato commented, "This planned transaction would create two businesses that are each financially strong and leaders in their respective industries. We believe that the new Johnson & Johnson and the New Consumer Health Company would each be able to more effectively allocate resources to deliver for patients and consumers, drive growth and unlock significant value. Importantly, the new Johnson & Johnson and the New Consumer Health Company would remain mission driven companies with exceptional brands, commitments to innovation, and remarkable talent. Each company would carry on the Johnson & Johnson legacy of putting the needs and well-being of the people we serve first."

The planned separation is expected to create value for all stakeholders by aiming to achieve the following key goals:

- Increase management focus, resources, agility and speed to effectively address differing industry trends and to better meet the needs of the new Johnson & Johnson and the New Consumer Health Company patients and consumers;
- Further focus capital allocation based on the objectives of each independent company;
- Provide each company with a compelling financial profile that more accurately reflects the strengths and opportunities of each business and, as a result, offers investors a more targeted investment opportunity; and
- Align corporate and operational structures so each company is better able to drive growth and value creation.

### New Johnson & Johnson: An Innovative Pharmaceuticals and Medical Devices Leader with Sharpened Focus on Major Unmet Medical Needs and Advancing Standard of Care for Patients Around the World

Following the planned separation, the new Johnson & Johnson would remain the world's largest and most diverse healthcare company and maintain a portfolio that blends its strong Pharmaceutical and Medical Device capabilities focused on materially advancing the standard of care through biopharmaceutical and medical device innovation and technology. Leveraging its long-standing strength in core areas of science, technology, regulatory, supply chain and global commercial reach, the new Johnson & Johnson would continue to build on its offering of life-saving treatments, including DARZALEX, ERLEADA, IMBRUVICA, STELARA and TREMFYA, as well as medical device solutions across interventional solutions, orthopaedics, surgery and vision.

The new Johnson & Johnson would remain committed to changing the trajectory of human health. The Pharmaceutical and Medical Devices segments, which are expected to generate revenue of approximately $77 billion in Full-Year 2021[1], are united by their shared and complementary focus on scientific research and development to serve similar end users – patients and healthcare providers – and operate in similar regulatory and competitive environments. The new Johnson & Johnson is expected to be better positioned to combine skills, expertise and approaches to bring integrated, comprehensive and more impactful care to patients, addressing diseases in areas such as oncology and eye health that require a combination of surgical, interventional and pharmaceutical treatments. The new Johnson & Johnson would continue to play a leading role in advancing the industry forward by creating novel solutions, bringing together treatments spanning therapeutics, robotics, artificial intelligence and more, to change the way diseases are prevented, intercepted and eventually cured.

The Pharmaceutical business would continue to generate sustained above market growth by advancing its strong portfolio and pipeline of products, accelerating key therapeutic areas, such as oncology and immunology, while also advancing new therapeutic modalities such as cell and gene therapies. At the same time, the Medical Devices business would plan to accelerate its momentum across orthopaedics, interventional solutions, surgery and vision, with an increased cadence of meaningful innovation enabled by a strong digital surgery pipeline and focus on execution across all geographies.

The new Johnson & Johnson would remain committed to maintaining a strong balance sheet and to its stated capital allocation priorities of R&D investment, competitive dividends and value-creating acquisitions.

### New Consumer Health Company Post-Separation: A Leading Global Consumer Health Company with Iconic Brands and Commitment to Continued Innovation

The New Consumer Health Company would be a global leader with a powerful portfolio of iconic brands — comprising four $1 billion megabrands and 20 brands over $150 million — and leading positions in Self Care (OTC), Skin Health and Essential Health, which includes baby care, feminine care, wound care and oral health. The Consumer Health segment is expected to generate revenue of approximately $15 billion in Full-Year 2021[2] and, following the planned separation, the New Consumer Health Company would generate sales in over 100 countries, driven by world-class innovation capabilities and demonstrated business momentum.

In recent years, Johnson & Johnson has focused the Consumer Health business and advanced its innovation, enabling it to reach more consumers with products that truly make a difference in peoples' lives, while simultaneously expanding margins and delivering healthy financial results. These actions have bolstered positions in Self Care, Skin Health and Essential Health.

The New Consumer Health Company would be expected to benefit from a strong investment grade profile and balance sheet that would allow it to build on its long history of innovation and maintain and extend its leadership position across important and growing categories.

The planned organizational design for the New Consumer Health Company is expected to be completed by the end of 2022 and will be subject to legal requirements including consultation with works councils and employee representatives, as required. Planned New Consumer Health Company employees are expected to continue participating in their current Johnson & Johnson pay, benefits and retirement programs through the end of 2022.

### Transaction Details

The Board of Directors' intent is to effect the planned separation through the capital markets, creating two independent, market-leading companies. The transaction is intended to qualify as a tax-free separation for U.S. federal income tax purposes.

In addition, it is expected that the overall shareholder dividend will remain at least at the same level following the completion of the transaction.

The Company is targeting completion of the planned separation in 18 to 24 months, subject to the satisfaction of certain conditions including, among others, consultations with works councils and other employee representative bodies, as required, final approval of Johnson & Johnson's Board of Directors, receipt of a favorable opinion and Internal Revenue Service ruling with respect to the tax-free nature of the transaction, and the receipt of other regulatory approvals. There can be no assurance regarding the ultimate timing of the proposed transaction or that the transaction will be completed.

### Advisors

Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC are acting as financial advisors to Johnson & Johnson, and Cravath, Swaine & Moore LLP and Baker & McKenzie LLP are acting as legal counsel.

**Investor Conference Call**

The Company plans to hold an investor webcast to discuss this announcement and provide opportunity for Q&A today at 8:30 a.m. ET. The call will be hosted by Mr. Joseph Wolk, Chief Financial Officer, Mr. Alex Gorsky, Chairman and CEO, and Mr. Joaquin Duato, Vice Chairman of the Executive Committee. The webcast is accessible at www.investor.jnj.com and telephone, for both "listen-only" participants and financial analysts who wish to take part in the question and answer portion of the call. Please dial (877) 869-3847 in the U.S. and (201) 689-8261 outside of the U.S.

**About Johnson & Johnson**

At Johnson & Johnson, we believe good health is the foundation of vibrant lives, thriving communities and forward progress. That's why for more than 130 years, we have aimed to keep people well at every age and every stage of life. Today, as the world's largest and most broadly-based healthcare company, we are committed to using our reach and size for good. We strive to improve access and affordability, create healthier communities, and put a healthy mind, body and environment within reach of everyone, everywhere. We are blending our heart, science and ingenuity to profoundly change the trajectory of health for humanity. Learn more at www.jnj.com. Follow us at @JNJNews.

**Cautions Concerning Forward-Looking Statements**

This presentation contains "forward-looking statements" as defined in the Private Securities Litigation Reform Act of 1995 regarding, among other things: the anticipated separation of Johnson & Johnson's Consumer Health business; future operating and financial performance, product development, market position and business strategy. The viewer is cautioned not to rely on these forward-looking statements. These statements are based on current expectations of future events. If underlying assumptions prove inaccurate or known or unknown risks or uncertainties materialize, actual results could vary materially from the expectations and projections of Johnson & Johnson. Risks and uncertainties include, but are not limited to: Johnson & Johnson's ability to satisfy the necessary conditions to consummate the separation of Johnson & Johnson's Consumer Health business on a timely basis or at all, Johnson & Johnson's ability to successfully separate Johnson & Johnson's Consumer Health business and realize the anticipated benefits from the separation, the New Consumer Health Company's ability to succeed as a standalone publicly traded company, economic factors, such as interest rate and currency exchange rate fluctuations; competition, including technological advances, new products and patents attained by competitors; challenges inherent in new product research and development, including unexpected clinical trial results, additional analysis of existing clinical data, uncertainty of clinical success and obtaining regulatory approvals; uncertainty of commercial success for new and existing products; the impact of business combinations and divestitures; challenges to patents; the impact of patent expirations; the ability of Johnson & Johnson to successfully execute strategic plans, including restructuring plans; manufacturing difficulties or delays, internally or within the supply chain; product efficacy or safety concerns resulting in product recalls or regulatory action; significant adverse litigation or government action, including related to product liability claims; changes to applicable laws and regulations, including tax laws, global health care reforms and import/export and trade laws; trends toward health care cost containment; changes in behavior and spending patterns of purchasers of health care products and services; financial instability of international economies and legal systems and sovereign risk; increased scrutiny of the health care industry by government agencies. A further list and descriptions of these risks, uncertainties and other factors can be found in Johnson & Johnson's Annual Report on Form 10-K for the fiscal year ended January 3, 2021, including in the sections captioned "Cautionary Note Regarding Forward-Looking Statements" and "Item 1A. Risk Factors," in Johnson & Johnson's most recently filed Quarterly Report on Form 10-Q and in Johnson & Johnson's subsequent filings with the Securities and Exchange Commission. Copies of these filings are available online at www.sec.gov, www.jnj.com or on request from Johnson & Johnson. Any forward-looking statement made in this presentation speaks only as of the date of this presentation. Johnson & Johnson does not undertake to update any forward-looking statement as a result of new information or future events or developments.

[1] Figures represent Total Reported Sales from the 2021 Midpoint of October Sales Dollar Guidance excluding Vaccine. Sales dollars are allocated to segments based on September 2021 YTD Actuals sales mix.

[2] Figures represent Total Reported Sales from the 2021 Midpoint of October Sales Dollar Guidance excluding Vaccine. Sales dollars are allocated to segments based on September 2021 YTD Actuals sales mix.

**Media Contacts:**

Jake Sargent

+1 732-524-1090

JSargen3@its.jnj.com

**Investor Relations:**

Jennifer McIntyre

+1 732-524-3922

JMcInty3@its.jnj.com

All contents © Copyright Johnson & Johnson
Services, Inc. 1997-2023. All Rights Reserved.

# EXHIBIT 2

## FILED UNDER SEAL

# <u>EXHIBIT 3</u>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>Leonard S. Spinelli, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>lspinelli@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official*<br>*Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official*<br>*Committee of Talc Claimants* |

In re:

**LTL MANAGEMENT LLC,**[1]

Debtor.

Chapter 11

Case No.: 23-12825 (MBK)

Honorable Michael B. Kaplan

### THE OFFICIAL COMMITTEE OF TALC CLAIMANTS'
### NOTICE OF DEPOSITION OF JOHNSON & JOHNSON

**TO:**    Johnson & Johnson Holdco (NA) Inc. (f/k/a Johnson & Johnson Consumer Inc.)
c/o Gregory Starner, Esq.
White & Case LLP
1221 Avenue of the Americas
New York, New York 10020

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules

of Civil Procedure (the "Civil Rules"), as made applicable to these proceedings by Rules 7026,

7030, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), counsel

for the Official Committee of Talc Claimants (the "TCC") will take the deposition of **Johnson &**

**Johnson Holdco (NA) Inc. (f/k/a Johnson & Johnson Consumer Inc.)** in the above-captioned

chapter 11 case.

The deposition will commence on **May 25, 2023 at 10:00 a.m.** (Prevailing Eastern Time)

at the offices of Brown Rudnick LLP, Seven Times Square, New York, New York 10036, or at

such other time and place as may be agreed upon by counsel.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 30(b)(6) of the Civil

Rules, Johnson & Johnson Holdco (NA) Inc. (f/k/a Johnson & Johnson Consumer Inc.) is

required to designate one or more officers, directors, managing agents, or other persons who will

testify on its behalf with respect to each of the topics listed below.  The TCC reserves all rights,

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's
address is 501 George Street, New Brunswick, New Jersey 08933.

2

including, but not limited to, the rights to take additional depositions of Johnson & Johnson

Holdco (NA) Inc. (f/k/a Johnson & Johnson Consumer Inc.) in and others and to expand the

deposition topics listed below.

The deposition shall be taken upon oral examination before an officer authorized by law

to administer oaths, by remote video conference, and may be recorded by videographer and/or by

stenographic means.

## **<u>DEFINITIONS</u>**

1.      Unless otherwise defined herein, capitalized terms shall have the meanings

ascribed to them in the First Day Declaration, except that any capitalized term referring to an

entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates,

directors, officers, members, managers, employees, agents, attorneys and representatives, and

every other person acting on its or their behalf.

2.      The "First Day Declaration" shall refer to the *Declaration of John K. Kim in

Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4.

3.      "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK)

and/or affiliated adversary proceedings.

4.      "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK)

and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

5.      "J&J" means Johnson & Johnson and its present and former parents, subsidiaries,

and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, and New JJCI,

each as defined in the First Day Declaration, and any affiliates thereof), and its directors,

officers, members, managers, employees, agents, attorneys and representatives, and every other

person acting on its or their behalf.

3

6.      "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, and New JJCI, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

7.      "New JJCI" means Johnson & Johnson Consumer Inc.

8.      "Holdco" means Johnson & Johnson Holdco (NA) Inc. (f/k/a Johnson & Johnson Consumer Inc.).

9.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

10.     The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

11.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

4

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

12.    Plural words include the singular equivalent, and singular words include the plural equivalent.

13.    The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## RULE 30(b)(6) DEPOSITION TOPICS

1.    The changing of New JJCI's name to Holdco in December 2022  (referenced in paragraph 26 of the First Day Declaration), including without limitation the reasons for, any other terms associated or agreed to in connection with, and the details of the name change.

2.    The early January 2023 transfer by Holdco of its Consumer Business assets to its parent entity (referenced in paragraph 26 of the First Day Declaration), including without limitation:

(a) the details and nature of the Holdco's "Consumer Business" (referenced in paragraph 26 of the First Day Declaration);

(b) the details and nature of the transferred "Consumer Business assets" (referenced in paragraph 26 of the First Day Declaration);

(c) the reason for the transfer;

(d) the negotiation of the transfer;

(e) the terms upon which the assets were transferred and to whom;

(f) the value of the transferred assets at the time of the transfer;

(g) the details concerning, and value of, the consideration received by Holdco in exchange for the transferred assets; and

(h) the ability to sell, transfer, monetize, loan, liquidate, raise capital in connection with, borrow against, collateralize, receive dividends in connection with, or otherwise obtain funds and, as necessary, repatriate such funds, in connection with the consideration received in the transfer.

3. The actual or potential termination of the 2021 Funding Agreement and entry into the 2023 Funding Agreement, including, without limitation:

(a) the decision to terminate, and the reason for the termination of, the 2021 Funding Agreement, and any communications with J&J and/or LTL in connection therewith;

(b) the enforceability, voidness or voidability of the 2021 Funding Agreement, including, without limitation, any purported frustration of purpose of the 2021 Funding Agreement;

(c) the value of the 2021 Funding Agreement at the time of its termination;

(d) the negotiation of 2023 Funding Agreement; and

(e) the value of the 2023 Funding Agreement at the time it was entered into

4. Holdco's assets and liabilities from December 2022 to present, including without limitation:

(a) New JJCI's assets and liabilities (including any contingent liabilities) at the time in December 2022 when it changed its name to HoldCo;

(b) Holdco's assets and liabilities since December 2022

(c) the value of Holdco's assets and liabilities since December 2022

5. Holdco's liquidity and ability to meet its obligations under the 2023 Funding Agreement and Support Agreement, including without limitation:

6

   i.   its ability to sell, transfer, monetize, loan, liquidate, raise capital in connection with, borrow against, collateralize, receive dividends in connection with, or otherwise obtain funds and, as necessary, repatriate such funds, in connection with the consideration received in the transfer; and

  ii.  Any tax, regulatory or other impediments or constraints to obtaining funds to meet its obligations under the 2023 Funding Agreement.

Dated:  May 19, 2023

*/s/ Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Matthew I.W. Baker, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 467-2700
Fax: (973) 467-8126
Email:  dstolz@genovaburns.com
      dclarke@genovaburns.com
      mbaker@genovaburns.com

*Proposed Local Counsel for the Official Committee of Talc Claimants*

## **EXHIBIT 4**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>Leonard S. Spinelli, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>lspinelli@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official*<br>*Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official*<br>*Committee of Talc Claimants* |

| In re: | Chapter 11 |
|---|---|
| **LTL MANAGEMENT LLC**,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Honorable Michael B. Kaplan |

## THE OFFICIAL COMMITTEE OF TALC CLAIMANTS' INITIAL REQUESTS FOR PRODUCTION OF DOCUMENTS AND INFORMATION FOR MOTION TO DISMISS

TO:    Johnson & Johnson
       c/o Gregory Starner, Esq.
       White & Case LLP
       1221 Avenue of the Americas
       New York, New York 10020

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed undersigned counsel, hereby requests that **Johnson & Johnson** produce the documents specified below by electronic means to Brown Rudnick LLP, Seven Times Square, New York, NY 10036 attention: Michael Reining, mreining@brownrudnick.com, in accordance with the schedule agreed upon by the parties, on a rolling basis to be completed on or before **May 12, 2023, at 5:00 p.m.**

## DEFINITIONS

1.      "ESI" has the meaning ascribed to it in Federal Rules of Civil Procedure 16, 26, and 34(a).

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an

---

[1]      The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2

entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.     The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4.

4.     "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

5.     "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

6.     The "PI Complaint" shall mean *Debtor's Verified Complaint for Declaratory and Injunctive Relief (I) Declaring That the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors, (II) Preliminarily Enjoining Such Actions, and (III) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction*, filed in Adv. Proc. No. 23-01092 as Dkt. No. 1.

7.     The "PI Motion" shall mean *Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors, (II) Preliminarily Enjoining Such Actions, and (III) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction*, filed in Adv. Proc. No. 23-01092 as Dkt. No. 2.

8.     "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, and New JJCI, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

9.      "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, and New JJCI, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

10.     "Plaintiffs' Lawyer" or "Plaintiffs' Law Firm" means any lawyer or law firm, or representative or agent thereof, actually or potentially representing an actual or potential talc claimant.

11.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

4

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which you have access or of which you are aware and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in your possession, custody or control, and/or in the possession, custody or control of your former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

12.    The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

13.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

14.    The term "electronic data," "electronic database," "database" and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD-ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape,

6

computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

15.    The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

16.    The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

17.    The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

18.    The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal

computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

19.    The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

20.    The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

21.    Plural words include the singular equivalent, and singular words include the plural equivalent.

22.    The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## **INSTRUCTIONS**

1.    If a claim of privilege, including but not limited to any claim of attorney-client privilege or the work product doctrine, is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

a.      the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

b.      (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.      A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.      A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.      The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.      Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.      These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney,

servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert, other representative of you, and any other person or entity from which you may obtain documents.

8.     If the parties agree, then production of documents shall be governed by the procedures set forth in the Discovery Plan governing the production of paper documents ("hardcopy") and electronically stored information ("ESI"), which shall apply to all discovery of ESI and hardcopy documents in this case.

## REQUESTS FOR PRODUCTION

1.     All communications between or amongst, and other documents shared between or amongst, any of (a) LTL, (b) J&J, and (c) any Plaintiffs' Lawyer or Plaintiffs' Law Firm, concerning (i) the enforceability, voidness or voidability of the 2021 Funding Agreement (including without limitation any purported frustration of purpose of the 2021 Funding Agreement), (ii) the actual or potential termination of the 2021 Funding Agreement, (iii) the substitution of the 2021 Funding Agreement with the 2023 Funding Agreement, (iv) the comparative value of the 2021 Funding Agreement versus the 2023 Funding Agreement; (v) the Term Sheet, or (vi) the PSA.

2.     With respect to each unfiled talc claimant as to whom it is purported that they will support a plan as outlined in the Term Sheet, including without limitation those represented by lawyers who signed a PSA:  (i) the engagement letter between the claimant and their counsel (including all drafts); (ii) the claimant's pathology reports and medical history, and all other documents reflecting the claimant's specific and sub-type of type of cancer; (iii) all documents concerning the claimant's history of J&J talc product usage; and (iv) documents sufficient to show confirmation as to the existence or non-existence potential statute of limitation issues concerning the claimant's claims.

10

3.      Unredacted copies of all claimant lists attached to PSAs that were produced.

4.      All non-disclosure agreements entered into by LTL and/or J&J, on the one hand, and any Plaintiffs' Lawyer, Plaintiffs' Law Firm, and/or any other entity, on the other hand, concerning the Plan Support Agreement, the Term Sheet, or the potential or actual filing of In re LTL 2.0.

5.      All LTL and J&J Board minutes and materials since January 1, 2023.

6.      To the extent not covered below, all documents on which Alyson Lawrence intends to rely in connection with her anticipated testimony at the Motion to Dismiss hearing.

7.      All documents you intend to rely on at the Motion to Dismiss hearing.

**Additional Financial Diligence Requests**

8.      <u>HoldCo and Its Subsidiaries</u>

(a) For Johnson & Johnson Holdco ("<u>Holdco</u>") [formerly known as Johnson & Johnson Consumer Inc.("<u>New JJCI</u>")] and each of its subsidiaries that have an estimated fair market value above $100mm, please provide:

(i)   Historical financial information for the past three financial years (including balance sheets, income statements and cash flows)

(ii)  Financial projections showing forecasted P&L and cashflows for each subsidiary for the next 5 years or more

(iii) Any internal or external valuation materials

(iv)  Summary of operations and the role of each subsidiary within Johnson & Johnson, including but not limited to:

1.   A summary of business operations and role within Johnson & Johnson

2.   Products and services manufactured, designed, or distributed

3.   General information related to the supply chain, key customers, marketing, sales, distribution, management team, directors, employees, intellectual property, important assets, relevant regulation, etc.

4.   Regions of incorporation

5. Intercompany relationships with Johnson & Johnson or any of its affiliates

6. Cash balances and any estimated minimum cash requirements

7. Dividend policies and dividend history

8. Expected dividends on annual basis

9. Borrowing capacity

(v) Board presentations / marketing materials / and any other relevant documents (including indications of interest) regarding any attempts of Holdco or any of its subsidiaries to raise external capital, explore asset sale opportunities and other strategic transactions

(vi) Please provide a detailed explanation of any issues regarding repatriation of dividends to Holdco from any of its subsidiaries

1. In connection with GH Biotech, please provide a detailed explanation of:

   a. The "multi-year efforts" that prevented the repatriation of dividends from GH Biotech in previous years

   b. The "capacity" constraints that prevent Apsis from upstreaming the $1.8bn dividends

2. Please include a detailed explanation of any other issues regarding the receipt of dividends by, or other repatriation of cash to, Holdco from any entities, including all tax planning memoranda and internal correspondence specifically related to such issues or the global tax structure more generally as it may relate to such issues.

(vii)     Please provide detailed documentation showing how the $6bn of value (per LTLMGMT-00000256) from interests in subsidiaries other than GH Biotech was derived. Please include any materials prepared by Johnson & Johnson, any of its affiliates, or any third parties

(b) For each subsidiary in which Holdco has an equity stake, please provide:

(i) A list of all equity holders/ capital table

(ii) A list of officers and the board of directors

(iii) A list of all key members of management

12

(c) Please provide shareholder agreements for each subsidiary in which Holdco has an equity stake

    (i) Please provide detail on any impediments on minority interests that would prevent monetization of these interests (i.e transfer restrictions)

(d) KMPG's valuation of Janssen Irish Unlimited Company (LTLMGMT-000000198 and LTLMGMT-000000199) shows ~$26.5bn of intercompany assets on its balance sheet. Which J&J entity (or entities) is the counterparty and from what did the balance arise?

    (i) Please provide a full breakdown of the intercompany assets (including detail on both the value and type of each asset that contribute to the total)

(e) Please provide a detailed overview of the source and projected amount of any dividends Holdco is expected to receive in the future from any subsidiaries and detail any issues with the ability of Holdco to receive those dividends

(f) Please provide a detailed explanation of Holdco's rights to "access" the cash balance of $400mm through J&J's cash management system (as detailed in the declaration of John K. Kim in the "LTL 2" bankruptcy proceedings)

9. <u>December 2022 Restructuring Transaction</u>

(a) All documents concerning the transfer of the HoldCo "Consumer Business" assets to its parent company in January 2023, including without limitation valuations concerning the transferred assets, intercompany accounting, consideration received in exchange, and all planning memoranda or internal correspondence relating to taxes, including without limitation, opinions, memoranda and work papers addressing the tax consequences related to such transfer.

(b) Please provide a detailed explanation of exactly which assets (operating businesses, royalties, equity stakes, subsidiaries, etc.) were transferred out of Holdco in January 2023

(c) Please provide any documents or communications related to the December 2022 Restructuring Transaction, including but not limited to any fairness or solvency opinions

10.    <u>LTL and RAM</u>

(a) All documents reflecting LTL's assets and liabilities as of the LTL 2.0 petition date.

(b) All documents concerning LTL's liquidity at the time of filing on April 4, including without limitation its liquid assets and its ability to liquidate its assets, obtain financing, or obtain other funding.

(c) Please confirm no royalties have been purchased or sold by Royalty Acquisition Management ("RAM") since the Aseptix acquisition

(i) If any royalty acquisitions have occurred, please provide details of the transaction

(d) RAM forecasted income statement, balance sheet, and cash flow for the next 5 years

(e) Please confirm there have been no other changes to the operations to LTL Management LLC ("LTL") since the "LTL 1" filing date

(f) In light of the asset transfers in January 2023 and the terms of the 2021 Funding Agreement, what is the estimate of "JJCI Value" (as defined in the 2021 Funding Agreement) following the asset transfer out of "HoldCo" in January 2023.

11.    <u>Tax Returns</u>.  With respect to J&J, HoldCo (including its predecessors), and each subsidiary of HoldCo, please provide U.S. federal, state, and non-U.S. income tax returns and any other tax filings (with attachments thereto) for the past three (3) years, as well as copies of any tax elections currently in effect with respect to such entities.

Dated:  May 5, 2023

/s/ Michael S. Winograd
**BROWN RUDNICK LLP**
David J. Molton, Esq.
Michael S. Winograd, Esq.
Jeffrey L. Jonas, Esq.
dmolton@brownrudnick.com
rstark@brownrudnick.com
mwinograd@brownrudnick.com
jjonas@brownrudnick.com
Seven Times Square

New York, NY 10036
Tel: (212) 209-4800
Fax: (212) 209-4801

and

Sunni P. Beville, Esq.
Eric R. Goodman, Esq.
sbeville@brownrudnick.com
egoodman@brownrudnick.com
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201

*Proposed Co-Counsel for the Official*
*Committee of Talc Claimants*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Matthew I.W. Baker, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 467-2700
Fax: (973) 467-8126
Email:  dstolz@genovaburns.com
            dclarke@genovaburns.com
            mbaker@genovaburns.com

*Proposed Local Counsel for the Official*
*Committee of Talc Claimants*

# **EXHIBIT 5**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>Leonard S. Spinelli, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>lspinelli@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official*<br>*Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC  20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official*<br>*Committee of Talc Claimants* |

<table>
<tr><td>

In re:

**LTL MANAGEMENT LLC,**[1]

           Debtor.

</td><td>

Chapter 11

Case No.: 23-12825 (MBK)

Honorable Michael B. Kaplan

</td></tr>
</table>

## THE OFFICIAL COMMITTEE OF TALC CLAIMANTS'
## INITIAL REQUESTS FOR PRODUCTION OF DOCUMENTS AND
## INFORMATION FOR MOTION TO DISMISS

TO:    LTL Management LLC
        c/o Gregory M. Gordon, Esq.
        Jones Day
        2727 N. Harwood Street
        Dallas, Texas 75201

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed undersigned counsel, hereby requests that **LTL Management LLC** produce the documents specified below by electronic means to Brown Rudnick LLP, Seven Times Square, New York, NY 10036 attention: Michael Reining, mreining@brownrudnick.com, in accordance with the schedule agreed upon by the parties, on a rolling basis to be completed on or before **May 12, 2023, at 5:00 p.m.**

## <u>DEFINITIONS</u>

1.    "ESI" has the meaning ascribed to it in Federal Rules of Civil Procedure 16, 26, and 34(a).

2.    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.      The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4.

4.      "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

5.      "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

6.      The "PI Complaint" shall mean *Debtor's Verified Complaint for Declaratory and Injunctive Relief (I) Declaring That the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors, (II) Preliminarily Enjoining Such Actions, and (III) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction*, filed in Adv. Proc. No. 23-01092 as Dkt. No. 1.

7.      The "PI Motion" shall mean *Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors, (II) Preliminarily Enjoining Such Actions, and (III) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction*, filed in Adv. Proc. No. 23-01092 as Dkt. No. 2.

8.      "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, and New JJCI, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

9.      "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, and New JJCI, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

10.     "Plaintiffs' Lawyer" or "Plaintiffs' Law Firm" means any lawyer or law firm, or representative or agent thereof, actually or potentially representing an actual or potential talc claimant.

11.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

4

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which you have access or of which you are aware and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in your possession, custody or control, and/or in the possession, custody or control of your former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

12.     The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

13.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

14.    The term "electronic data," "electronic database," "database" and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD-ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape,

6

computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any
other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder
tabs and/or containers and labels appended to, or associated with, any physical storage device
associated with each original and/or copy.

15.     The term "electronic media" means any magnetic or other storage media device
used to record electronic data. Electronic media devices may include computer memories, hard
disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent,
magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,
but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital
data storage and /or transmittal.

16.     The term "native electronic format" shall mean and refer the state of an electronic
file as it presently exists on any and all computers, electronic media devices and networks or any
other location where data may be stored (including back-up servers, deleted folders, hidden
folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have
not been altered, deleted, updated or modified in any way.

17.     The term "network" means any hardware and /or software combination that
connects two or more computers together and which allows the computers to share and/or
transfer data between them. For the purposes of this definition, the connection between or among
the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or
transferring data via indirect routs utilizing modems and phone company facilities. In addition,
there need not be a central file or data server nor a central network operating system in place, i.e.
peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

18.     The term "computer" means all devices utilizing microchips to facilitate
processing, analysis or storage of data, including microcomputers (as known as personal

computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

19.     The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

20.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

21.     Plural words include the singular equivalent, and singular words include the plural equivalent.

22.     The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

### **INSTRUCTIONS**

1.     If a claim of privilege, including but not limited to any claim of attorney-client privilege or the work product doctrine, is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

8

a.    the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

b.    (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.    A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.    A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.    The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.    The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.    Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.    These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney,

servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert, other representative of you, and any other person or entity from which you may obtain documents.

8.    If the parties agree, then production of documents shall be governed by the procedures set forth in the Discovery Plan governing the production of paper documents ("hardcopy") and electronically stored information ("ESI"), which shall apply to all discovery of ESI and hardcopy documents in this case.

## **REQUESTS FOR PRODUCTION**

1.    All communications between or amongst, and other documents shared between or amongst, any of (a) LTL, (b) J&J, and (c) any Plaintiffs' Lawyer or Plaintiffs' Law Firm, concerning (i) the enforceability, voidness or voidability of the 2021 Funding Agreement (including without limitation any purported frustration of purpose of the 2021 Funding Agreement), (ii) the actual or potential termination of the 2021 Funding Agreement, (iii) the substitution of the 2021 Funding Agreement with the 2023 Funding Agreement, (iv) the comparative value of the 2021 Funding Agreement versus the 2023 Funding Agreement; (v) the Term Sheet, or (vi) the PSA.

2.    With respect to each unfiled talc claimant as to whom it is purported that they will support a plan as outlined in the Term Sheet, including without limitation those represented by lawyers who signed a PSA:  (i) the engagement letter between the claimant and their counsel (including all drafts); (ii) the claimant's pathology reports and medical history, and all other documents reflecting the claimant's specific and sub-type of type of cancer; (iii) all documents concerning the claimant's history of J&J talc product usage; and (iv) documents sufficient to show confirmation as to the existence or non-existence potential statute of limitation issues concerning the claimant's claims.

10

3.      Unredacted copies of all claimant lists attached to PSAs that were produced.

4.      All non-disclosure agreements entered into by LTL and/or J&J, on the one hand, and any Plaintiffs' Lawyer, Plaintiffs' Law Firm, and/or any other entity, on the other hand, concerning the Plan Support Agreement, the Term Sheet, or the potential or actual filing of In re LTL 2.0.

5.      All LTL and J&J Board minutes and materials since January 1, 2023.

6.      To the extent not covered below, all documents on which Alyson Lawrence intends to rely in connection with her anticipated testimony at the Motion to Dismiss hearing.

7.      All documents you intend to rely on at the Motion to Dismiss hearing.

**Additional Financial Diligence Requests**

8.      <u>HoldCo and Its Subsidiaries</u>

(a) For Johnson & Johnson Holdco ("<u>Holdco</u>") [formerly known as Johnson & Johnson Consumer Inc.("<u>New JJCI</u>")] and each of its subsidiaries that have an estimated fair market value above $100mm, please provide:

(i)  Historical financial information for the past three financial years (including balance sheets, income statements and cash flows)

(ii) Financial projections showing forecasted P&L and cashflows for each subsidiary for the next 5 years or more

(iii)Any internal or external valuation materials

(iv)Summary of operations and the role of each subsidiary within Johnson & Johnson, including but not limited to:

1.  A summary of business operations and role within Johnson & Johnson

2.  Products and services manufactured, designed, or distributed

3.  General information related to the supply chain, key customers, marketing, sales, distribution, management team, directors, employees, intellectual property, important assets, relevant regulation, etc.

4.  Regions of incorporation

11

     5.   Intercompany relationships with Johnson & Johnson or any of its affiliates

     6.   Cash balances and any estimated minimum cash requirements

     7.   Dividend policies and dividend history

     8.   Expected dividends on annual basis

     9.   Borrowing capacity

(v) Board presentations / marketing materials / and any other relevant documents (including indications of interest) regarding any attempts of Holdco or any of its subsidiaries to raise external capital, explore asset sale opportunities and other strategic transactions

(vi) Please provide a detailed explanation of any issues regarding repatriation of dividends to Holdco from any of its subsidiaries

     1.   In connection with GH Biotech, please provide a detailed explanation of:

        a.   The "multi-year efforts" that prevented the repatriation of dividends from GH Biotech in previous years

        b.   The "capacity" constraints that prevent Apsis from upstreaming the $1.8bn dividends

     2.   Please include a detailed explanation of any other issues regarding the receipt of dividends by, or other repatriation of cash to, Holdco from any entities, including all tax planning memoranda and internal correspondence specifically related to such issues or the global tax structure more generally as it may relate to such issues.

(vii)     Please provide detailed documentation showing how the $6bn of value (per LTLMGMT-00000256) from interests in subsidiaries other than GH Biotech was derived. Please include any materials prepared by Johnson & Johnson, any of its affiliates, or any third parties

(b) For each subsidiary in which Holdco has an equity stake, please provide:

(i) A list of all equity holders/ capital table

(ii) A list of officers and the board of directors

(iii) A list of all key members of management

(c) Please provide shareholder agreements for each subsidiary in which Holdco
has an equity stake

    (i) Please provide detail on any impediments on minority interests that would
prevent monetization of these interests (i.e transfer restrictions)

(d) KMPG's valuation of Janssen Irish Unlimited Company (LTLMGMT-
000000198 and LTLMGMT-000000199) shows ~$26.5bn of intercompany
assets on its balance sheet. Which J&J entity (or entities) is the counterparty
and from what did the balance arise?

    (i) Please provide a full breakdown of the intercompany assets (including
detail on both the value and type of each asset that contribute to the total)

(e) Please provide a detailed overview of the source and projected amount of any
dividends Holdco is expected to receive in the future from any subsidiaries
and detail any issues with the ability of Holdco to receive those dividends

(f) Please provide a detailed explanation of Holdco's rights to "access" the cash
balance of $400mm through J&J's cash management system (as detailed in
the declaration of John K. Kim in the "LTL 2" bankruptcy proceedings)

9. <u>December 2022 Restructuring Transaction</u>

(a) All documents concerning the transfer of the HoldCo "Consumer Business"
assets to its parent company in January 2023, including without limitation
valuations concerning the transferred assets, intercompany accounting,
consideration received in exchange, and all planning memoranda or internal
correspondence relating to taxes, including without limitation, opinions,
memoranda and work papers addressing the tax consequences related to such
transfer.

(b) Please provide a detailed explanation of exactly which assets (operating
businesses, royalties, equity stakes, subsidiaries, etc.) were transferred out of
Holdco in January 2023

(c) Please provide any documents or communications related to the December
2022 Restructuring Transaction, including but not limited to any fairness or
solvency opinions

10.     <u>LTL and RAM</u>

(a)  All documents reflecting LTL's assets and liabilities as of the LTL 2.0 petition date.

(b)  All documents concerning LTL's liquidity at the time of filing on April 4, including without limitation its liquid assets and its ability to liquidate its assets, obtain financing, or obtain other funding.

(c)  Please confirm no royalties have been purchased or sold by Royalty Acquisition Management ("RAM") since the Aseptix acquisition

(i)  If any royalty acquisitions have occurred, please provide details of the transaction

(d)  RAM forecasted income statement, balance sheet, and cash flow for the next 5 years

(e)  Please confirm there have been no other changes to the operations to LTL Management LLC ("LTL") since the "LTL 1" filing date

(f)  In light of the asset transfers in January 2023 and the terms of the 2021 Funding Agreement, what is the estimate of "JJCI Value" (as defined in the 2021 Funding Agreement) following the asset transfer out of "HoldCo" in January 2023.

11.     <u>Tax Returns</u>.  With respect to J&J, HoldCo (including its predecessors), and each subsidiary of HoldCo, please provide U.S. federal, state, and non-U.S. income tax returns and any other tax filings (with attachments thereto) for the past three (3) years, as well as copies of any tax elections currently in effect with respect to such entities.

Dated:  May 5, 2023

*/s/ Michael S. Winograd*

**BROWN RUDNICK LLP**
David J. Molton, Esq.
Michael S. Winograd, Esq.
Jeffrey L. Jonas, Esq.
dmolton@brownrudnick.com
rstark@brownrudnick.com
mwinograd@brownrudnick.com
jjonas@brownrudnick.com
Seven Times Square

New York, NY 10036
Tel: (212) 209-4800
Fax: (212) 209-4801

and

Sunni P. Beville, Esq.
Eric R. Goodman, Esq.
sbeville@brownrudnick.com
egoodman@brownrudnick.com
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201

*Proposed Co-Counsel for the Official
Committee of Talc Claimants*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Matthew I.W. Baker, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 467-2700
Fax: (973) 467-8126
Email:  dstolz@genovaburns.com
        dclarke@genovaburns.com
        mbaker@genovaburns.com

*Proposed Local Counsel for the Official
Committee of Talc Claimants*

# **EXHIBIT 6**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of __New Jersey__

In re __LTL Management LLC__
Debtor

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff
v.
_____
Defendant

Case No. __23-12825 (MBK)__

Chapter __11__

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __S&P Global Inc., c/o Corporation Service Company, 80 State Street, Albany, NY 12207__
(Name of person to whom the subpoena is directed)

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE Brown Rudnick LLP<br>Seven Times Square<br>New York, NY 10036 | Attn: Michael Reining<br>mreining@brownrudnick.com | DATE AND TIME<br>May 19, 2023 at 5:00 p.m. ET |
|---|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __5/12/23__

CLERK OF COURT

OR

_____       /s/ Daniel M. Stolz
Signature of Clerk or Deputy Clerk        Attorney's signature

The name, address, email address, and telephone number of the attorney representing *(name of party)* __Official Committee of Talc Claimants for LTL__ , who issues or requests this subpoena, are:

Daniel M. Stolz, Esq., Genova Burns LLC, 110 Allen Road, Suite 304, Basking Ridge, NJ 07920, (973) 230-2095

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _5/12/23_____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____5/12/23_____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
                                        *Server's signature*

Daniel M. Stolz, Esq., proposed local counsel for the
Official Committee of Talc Claimants for LTL Management LLC
_____
                                        *Printed name and title*

Genova Burns LLC
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
_____
                                        *Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed counsel, hereby requests the production of the specified documents below by electronic means to Brown Rudnick LLP, Seven Times Square, New York, NY 10036, attention: Michael Reining, mreining@brownrudnick.com, on or before **May 19, 2023 at 5:00 p.m. ET** or in accordance with a schedule agreed upon by the parties.

All documents produced in response to this subpoena should be produced in native file format. If You determine that You cannot comply with the production of documents in a native file format, You shall promptly inform the requesting party why compliance is impracticable and meet and confer to establish a reasonably useable format for production.

## **DEFINITIONS**

1.     The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4, and attached hereto as **Exhibit B**.

2.     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.     "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

4.     "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

5.      "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

6.      "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

7.      The "Healthcare Spinoff" means J&J's transfer of its consumer health business to Kenvue.

8.      "Kenvue" means Kenvue Inc., a Delaware Corporation.

9.      The "Kenvue IPO" means Kenvue's initial public offering, completed May 8, 2023.

10.      The "Separation Agreement" means the May 3, 2023 agreement entered into between J&J and Kenvue in connection with the Kenvue IPO.

11.      "Decision Maker" means each officer, director, member, or manager of an entity and includes any agent, employee, or representative of such officer, director, member, or manager of an entity, or any other person acting on their behalf.

12.      "You," "Your," and "Yours" shall refer to the entity to whom this subpoena is directed as well as the entity's present and former parents, subsidiaries, affiliates, directors,

officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

13.     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

14.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the Debtor has access or of which the Debtor is aware .and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of Debtor, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on Debtor behalf.

15.     The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your

custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

16.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

17.     The term "all communications" shall mean each and every communication, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

18.     The term "electronic data," "electronic database," "database" and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or

transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD- ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

19.    The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

20.    The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

21.     The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

22.     The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information:

(a)     the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

23.     The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

24.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

25.     Plural words include the singular equivalent, and singular words include the plural equivalent.

26.     The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## **INSTRUCTIONS**

1.     If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

(a)     the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

(b)     (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.     A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.      A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.      The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.      Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.      These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert and other representative of yours, and any other person or entity from which you may obtain documents.

8.      Unless otherwise indicated, the time frame for the document requests is from **January 20, 2022** to the present.

## <u>REQUESTS FOR PRODUCTION</u>

1.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) LTL; (ii) the resolution of J&J's talc claims; (iii) the dismissal or potential dismissal of In re LTL 1.0; (iv) LTL's filing or potential filing of a second bankruptcy petition; (v) In re LTL 2.0; (vi) any potential or actual plan of reorganization for LTL and any support therefor, including plan support agreements; (vii) the 2021 Funding Agreement and the actual or potential termination

thereof; (viii) the 2023 Funding Agreement; and (ix) J&J's support for In re LTL 2.0, including but not limited to the J&J Support Agreement.

2.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) the Healthcare Spinoff; (ii) Kenvue; (iii) the Kenvue IPO; and (iv) the Separation Agreement.

3.      All documents and communications concerning the credit rating of J&J, any J&J subsidiary, LTL, and Kenvue.

4.      All documents concerning any valuation, whether formal or informal, external or internal, performed with respect to the assets and liabilities of J&J, any J&J subsidiary, LTL, and Kenvue, including but not limited to the valuation itself and any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

5.      Any valuations or assessments of liabilities, reserves, or accruals, for talcum powder related claims, costs, or liabilities, prepared in connection with J&J's and Kenvue's consolidated financial reporting, and all communications concerning any such valuations, assessments, reserves, or accruals.

6.      All documents concerning any valuation, whether formal or informal, external or internal, of any royalties assigned to or acquired by Royalty A&M, including, without limitation, any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

7.      Documents sufficient to identify any royalty rights assigned to or acquired by Royalty A&M, including, but not limited to, copies of any such assignment, purchase, or acquisition documents.

8.     All communications between You and LTL, J&J, Janssen Pharmaceuticals, Inc., Old JJCI, New JJCI, or any other subsidiary of J&J containing any of "bankruptcy", "bankrupt", "bk", "talc", "talcum powder", "ovarian cancer", "meso", "mesothelioma", "gynecological", "cancer", "baby powder", "Project Plato", "Project Plato 2", "Plato", "stock performance", "stock price", "market", "reaction", "fraud", "fraudulent", "two-step", "plan support agreement", "PSA", "term sheet", "plan", "termination", "substitution", "T&S", "divisive merger", "automatic stay", "funding agreement", "J&J support agreement", "LTL", "liability management", "injunction", "circuit", "appellate", "appeal", "dismissal", "void", "voidable", and "new filing".

9.     All documents, generated by or received from LTL, J&J, or any J&J entity after January 20, 2022, discussing or describing any alternative means of resolving talcum powder-related liabilities, expenses and fees other than In re LTL 1.0.

10.     All documents concerning the proposed reorganization and rehabilitation of LTL, including, without limitation, any draft Chapter 11 plans, outlines of Chapter 11 plans, projections, and analyses of feasibility.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re _____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. _____

Chapter _____

_____
Plaintiff

v.

_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: _____
*(Name of person to whom the subpoena is directed)*

☐ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE   Genova Burns, LLC, Attn: Donald Clarke (dclarke@genovaburns.com) | DATE AND TIME 5/30/23 5:00pm |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  ___5/16/23_____

CLERK OF COURT

OR

_____          ___*/s/ Donald Clarke*_____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* _Official Committe of Talc Claimants_,  who issues or requests this subpoena, are:

dclarke@genovaburns.com

---

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT A**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed counsel, hereby requests the production of the specified documents below by electronic means to Donald Clarke, Genova Burns, LLC, 110 Allen Rd., Suite 304, Basking Ridge, NJ, 07920, dclarke@genovaburns.com on or before **May 19, 2023 at 5:00 p.m. ET** or in accordance with a schedule agreed upon by the parties.

All documents produced in response to this subpoena should be produced in native file format. If You determine that You cannot comply with the production of documents in a native file format, You shall promptly inform the requesting party why compliance is impracticable and meet and confer to establish a reasonably useable format for production.

## <u>DEFINITIONS</u>

1.      The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4, and attached hereto as **Exhibit B**.

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.      "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

4.      "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

5.      "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

6.      "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

7.      The "Healthcare Spinoff" means J&J's transfer of its consumer health business to Kenvue.

8.      "Kenvue" means Kenvue Inc., a Delaware Corporation.

9.      The "Kenvue IPO" means Kenvue's initial public offering, completed May 8, 2023.

10.     The "Separation Agreement" means the May 3, 2023 agreement entered into between J&J and Kenvue in connection with the Kenvue IPO.

11.     "Decision Maker" means each officer, director, member, or manager of an entity and includes any agent, employee, or representative of such officer, director, member, or manager of an entity, or any other person acting on their behalf.

12.     "You," "Your," and "Yours" shall refer to the entity to whom this subpoena is directed as well as the entity's present and former parents, subsidiaries, affiliates, directors,

officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

13.    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

14.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the Debtor has access or of which the Debtor is aware .and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of Debtor, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on Debtor behalf.

15.    The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your

custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

16.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

17.     The term "all communications" shall mean each and every communication, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

18.     The term "electronic data," "electronic database," "database" and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or

transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD- ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

19.    The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

20.    The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

6

21.     The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

22.     The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information:

        (a)     the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

23.     The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

24.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

25.     Plural words include the singular equivalent, and singular words include the plural equivalent.

26.     The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## **INSTRUCTIONS**

1.     If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

(a)     the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

(b)     (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.     A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.      A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.      The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.      Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.      These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert and other representative of yours, and any other person or entity from which you may obtain documents.

8.      Unless otherwise indicated, the time frame for the document requests is from **January 30, 2023** to the present.

## <u>REQUESTS FOR PRODUCTION</u>

1.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) LTL; (ii) the resolution of J&J's talc claims; (iii) the dismissal or potential dismissal of In re LTL 1.0; (iv) LTL's filing or potential filing of a second bankruptcy petition; (v) In re LTL 2.0; (vi) any potential or actual plan of reorganization for LTL and any support therefor, including plan support agreements; (vii) the 2021 Funding Agreement and the actual or potential termination

thereof; (viii) the 2023 Funding Agreement; and (ix) J&J's support for In re LTL 2.0, including but not limited to the J&J Support Agreement.

2.        All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) the Healthcare Spinoff; (ii) Kenvue; (iii) the Kenvue IPO; and (iv) the Separation Agreement.

3.        All documents and communications concerning the credit rating of J&J, any J&J subsidiary, LTL, and Kenvue.

4.        All documents concerning any valuation, whether formal or informal, external or internal, performed with respect to the assets and liabilities of J&J, any J&J subsidiary, LTL, and Kenvue, including but not limited to the valuation itself and any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

5.        Any valuations or assessments of liabilities, reserves, or accruals, for talcum powder related claims, costs, or liabilities, prepared in connection with J&J's and Kenvue's consolidated financial reporting, and all communications concerning any such valuations, assessments, reserves, or accruals.

6.        All documents concerning any valuation, whether formal or informal, external or internal, of any royalties assigned to or acquired by Royalty A&M, including, without limitation, any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

7.        Documents sufficient to identify any royalty rights assigned to or acquired by Royalty A&M, including, but not limited to, copies of any such assignment, purchase, or acquisition documents.

8.     All communications between You and LTL, J&J, Janssen Pharmaceuticals, Inc., Old JJCI, New JJCI, or any other subsidiary of J&J containing any of "bankruptcy", "bankrupt", "bk", "talc", "talcum powder", "ovarian cancer", "meso", "mesothelioma", "gynecological", "cancer", "baby powder", "Project Plato", "Project Plato 2", "Plato", "stock performance", "stock price", "market", "reaction", "fraud", "fraudulent", "two-step", "plan support agreement", "PSA", "term sheet", "plan", "termination", "substitution", "T&S", "divisive merger", "automatic stay", "funding agreement", "J&J support agreement", "LTL", "liability management", "injunction", "circuit", "appellate", "appeal", "dismissal", "void", "voidable", and "new filing".

9.     All documents, generated by or received from LTL, J&J, or any J&J entity on or after January 30, 2023, discussing or describing any alternative means of resolving talcum powder-related liabilities, expenses and fees other than In re LTL 1.0.

10.     All documents concerning the proposed reorganization and rehabilitation of LTL, including, without limitation, any draft Chapter 11 plans, outlines of Chapter 11 plans, projections, and analyses of feasibility.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re _____

_____

_Debtor_

_(Complete if issued in an adversary proceeding)_

_____

_Plaintiff_

v.

_____

_Defendant_

Case No. _____

Chapter _____

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: _____

_(Name of person to whom the subpoena is directed)_

☐ _Production_:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE  Genova Burns, LLC, Attn: Donald Clarke (dclarke@genovaburns.com) | DATE AND TIME  5/30/23 5:00pm |
|---|---|

☐ _Inspection of Premises_:  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ___5/16/23_____

CLERK OF COURT

OR

_____        ___/s/ Donald Clarke_____
_Signature of Clerk or Deputy Clerk_                _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_ _Official Committe of Talc Claimants_,  who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena    dclarke@genovaburns.com

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

**PROOF OF SERVICE**

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

  My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed counsel, hereby requests the production of the specified documents below by electronic means to Donald Clarke, Genova Burns, LLC, 110 Allen Rd., Suite 304, Basking Ridge, NJ, 07920, dclarke@genovaburns.com on or before **May 19, 2023 at 5:00 p.m. ET** or in accordance with a schedule agreed upon by the parties.

All documents produced in response to this subpoena should be produced in native file format. If You determine that You cannot comply with the production of documents in a native file format, You shall promptly inform the requesting party why compliance is impracticable and meet and confer to establish a reasonably useable format for production.

## DEFINITIONS

1.      The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4, and attached hereto as **Exhibit B**.

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.      "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

4.      "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

5.      "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

6.      "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

7.      The "Healthcare Spinoff" means J&J's transfer of its consumer health business to Kenvue.

8.      "Kenvue" means Kenvue Inc., a Delaware Corporation.

9.      The "Kenvue IPO" means Kenvue's initial public offering, completed May 8, 2023.

10.      The "Separation Agreement" means the May 3, 2023 agreement entered into between J&J and Kenvue in connection with the Kenvue IPO.

11.      "Decision Maker" means each officer, director, member, or manager of an entity and includes any agent, employee, or representative of such officer, director, member, or manager of an entity, or any other person acting on their behalf.

12.      "You," "Your," and "Yours" shall refer to the entity to whom this subpoena is directed as well as the entity's present and former parents, subsidiaries, affiliates, directors,

officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

13.    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

14.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the Debtor has access or of which the Debtor is aware .and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of Debtor, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on Debtor behalf.

15.     The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your

custody, possession or control, or the custody, possession or control of your present or former

attorneys, accountants, insurance carriers, representatives, employees and/or agents.

16.     The term "communication" means the transmittal of information (in the form of

facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal

and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation,

meetings, conversations in person, telephone conversations, records of conversations or

messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters,

reports, memoranda, formal statements and press releases, and newspaper stories. References to

communications with business entities shall be deemed to include all officers, directors,

employees, agents, attorneys, accountants, consultants, independent contractors, or other

representatives of such entities.

17.     The term "all communications" shall mean each and every communication,

whether an original or copy, known to you or which you can locate or discover by reasonably

diligent effort, within your custody, possession or control, or the custody, possession or control

of your present or former attorneys, accountants, insurance carriers, representatives, employees

and/or agents.

18.     The term "electronic data," "electronic database," "database" and "data" mean the

original (native electronic format) and any non-identical copies (whether non-identical because

of notes made on copies or attached comments, annotations, marks, transmission notations, or

highlighting of any kind) of writings of every kind and description whether inscribed by

mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way

of example only, computer programs (whether private, commercial or works-in-progress),

programming notes or instructions, activity listings or electronic mail receipts and /or

5

transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD- ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

19.    The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

20.    The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

21.     The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

22.     The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information:

(a)     the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

23.     The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

24.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

25.     Plural words include the singular equivalent, and singular words include the plural equivalent.

26.     The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## <u>INSTRUCTIONS</u>

1.     If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

(a)     the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

(b)     (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.     A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.      A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.      The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.      Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.      These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert and other representative of yours, and any other person or entity from which you may obtain documents.

8.      Unless otherwise indicated, the time frame for the document requests is from **January 30, 2023** to the present.

## REQUESTS FOR PRODUCTION

1.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) LTL; (ii) the resolution of J&J's talc claims; (iii) the dismissal or potential dismissal of In re LTL 1.0; (iv) LTL's filing or potential filing of a second bankruptcy petition; (v) In re LTL 2.0; (vi) any potential or actual plan of reorganization for LTL and any support therefor, including plan support agreements; (vii) the 2021 Funding Agreement and the actual or potential termination

thereof; (viii) the 2023 Funding Agreement; and (ix) J&J's support for In re LTL 2.0, including but not limited to the J&J Support Agreement.

2.　　All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) the Healthcare Spinoff; (ii) Kenvue; (iii) the Kenvue IPO; and (iv) the Separation Agreement.

3.　　All documents and communications concerning the credit rating of J&J, any J&J subsidiary, LTL, and Kenvue.

4.　　All documents concerning any valuation, whether formal or informal, external or internal, performed with respect to the assets and liabilities of J&J, any J&J subsidiary, LTL, and Kenvue, including but not limited to the valuation itself and any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

5.　　Any valuations or assessments of liabilities, reserves, or accruals, for talcum powder related claims, costs, or liabilities, prepared in connection with J&J's and Kenvue's consolidated financial reporting, and all communications concerning any such valuations, assessments, reserves, or accruals.

6.　　All documents concerning any valuation, whether formal or informal, external or internal, of any royalties assigned to or acquired by Royalty A&M, including, without limitation, any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

7.　　Documents sufficient to identify any royalty rights assigned to or acquired by Royalty A&M, including, but not limited to, copies of any such assignment, purchase, or acquisition documents.

8.      All communications between You and LTL, J&J, Janssen Pharmaceuticals, Inc., Old JJCI, New JJCI, or any other subsidiary of J&J containing any of "bankruptcy", "bankrupt", "bk", "talc", "talcum powder", "ovarian cancer", "meso", "mesothelioma", "gynecological", "cancer", "baby powder", "Project Plato", "Project Plato 2", "Plato", "stock performance", "stock price", "market", "reaction", "fraud", "fraudulent", "two-step", "plan support agreement", "PSA", "term sheet", "plan", "termination", "substitution", "T&S", "divisive merger", "automatic stay", "funding agreement", "J&J support agreement", "LTL", "liability management", "injunction", "circuit", "appellate", "appeal", "dismissal", "void", "voidable", and "new filing".

9.      All documents, generated by or received from LTL, J&J, or any J&J entity on or after January 30, 2023, discussing or describing any alternative means of resolving talcum powder-related liabilities, expenses and fees other than In re LTL 1.0.

10.     All documents concerning the proposed reorganization and rehabilitation of LTL, including, without limitation, any draft Chapter 11 plans, outlines of Chapter 11 plans, projections, and analyses of feasibility.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re _____
                            Debtor

_(Complete if issued in an adversary proceeding)_

_____
                            Plaintiff

                            v.

_____
                            Defendant

Case No. _____

Chapter _____

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: _____
                            _(Name of person to whom the subpoena is directed)_

☐ _Production_:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE Genova Burns, LLC, Attn: Donald Clarke (dclarke@genovaburns.com) | DATE AND TIME 5/30/23 5:00pm |
|---|---|

☐ _Inspection of Premises_:  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  ___5/16/23_____

CLERK OF COURT

OR

_____          ___/s/ Donald Clarke_____
_Signature of Clerk or Deputy Clerk_                        _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
_Official Committe of Talc Claimants_,  who issues or requests this subpoena, are:

dclarke@genovaburns.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed counsel, hereby requests the production of the specified documents below by electronic means to Donald Clarke, Genova Burns, LLC, 110 Allen Rd., Suite 304, Basking Ridge, NJ, 07920, dclarke@genovaburns.com on or before **May 19, 2023 at 5:00 p.m. ET** or in accordance with a schedule agreed upon by the parties.

All documents produced in response to this subpoena should be produced in native file format. If You determine that You cannot comply with the production of documents in a native file format, You shall promptly inform the requesting party why compliance is impracticable and meet and confer to establish a reasonably useable format for production.

### <u>DEFINITIONS</u>

1.    The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4, and attached hereto as **Exhibit B**.

2.    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.    "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

4.    "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

5.      "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

6.      "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

7.      The "Healthcare Spinoff" means J&J's transfer of its consumer health business to Kenvue.

8.      "Kenvue" means Kenvue Inc., a Delaware Corporation.

9.      The "Kenvue IPO" means Kenvue's initial public offering, completed May 8, 2023.

10.      The "Separation Agreement" means the May 3, 2023 agreement entered into between J&J and Kenvue in connection with the Kenvue IPO.

11.      "Decision Maker" means each officer, director, member, or manager of an entity and includes any agent, employee, or representative of such officer, director, member, or manager of an entity, or any other person acting on their behalf.

12.      "You," "Your," and "Yours" shall refer to the entity to whom this subpoena is directed as well as the entity's present and former parents, subsidiaries, affiliates, directors,

officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

13.     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

14.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the Debtor has access or of which the Debtor is aware .and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of Debtor, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on Debtor behalf.

15.    The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your

custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

16.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

17.     The term "all communications" shall mean each and every communication, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

18.     The term "electronic data," "electronic database," "database" and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or

transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD- ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

19.    The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

20.    The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

21.    The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

22.    The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information:

(a)    the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

23.    The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

24.    The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

25.    Plural words include the singular equivalent, and singular words include the plural equivalent.

26.    The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## **INSTRUCTIONS**

1.    If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

(a)    the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

(b)    (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.    A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.     A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.     The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.     The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.     Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.     These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert and other representative of yours, and any other person or entity from which you may obtain documents.

8.     Unless otherwise indicated, the time frame for the document requests is from **January 30, 2023** to the present.

## REQUESTS FOR PRODUCTION

1.     All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) LTL; (ii) the resolution of J&J's talc claims; (iii) the dismissal or potential dismissal of In re LTL 1.0; (iv) LTL's filing or potential filing of a second bankruptcy petition; (v) In re LTL 2.0; (vi) any potential or actual plan of reorganization for LTL and any support therefor, including plan support agreements; (vii) the 2021 Funding Agreement and the actual or potential termination

thereof; (viii) the 2023 Funding Agreement; and (ix) J&J's support for In re LTL 2.0, including but not limited to the J&J Support Agreement.

2.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) the Healthcare Spinoff; (ii) Kenvue; (iii) the Kenvue IPO; and (iv) the Separation Agreement.

3.      All documents and communications concerning the credit rating of J&J, any J&J subsidiary, LTL, and Kenvue.

4.      All documents concerning any valuation, whether formal or informal, external or internal, performed with respect to the assets and liabilities of J&J, any J&J subsidiary, LTL, and Kenvue, including but not limited to the valuation itself and any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

5.      Any valuations or assessments of liabilities, reserves, or accruals, for talcum powder related claims, costs, or liabilities, prepared in connection with J&J's and Kenvue's consolidated financial reporting, and all communications concerning any such valuations, assessments, reserves, or accruals.

6.      All documents concerning any valuation, whether formal or informal, external or internal, of any royalties assigned to or acquired by Royalty A&M, including, without limitation, any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

7.      Documents sufficient to identify any royalty rights assigned to or acquired by Royalty A&M, including, but not limited to, copies of any such assignment, purchase, or acquisition documents.

8.      All communications between You and LTL, J&J, Janssen Pharmaceuticals, Inc., Old JJCI, New JJCI, or any other subsidiary of J&J containing any of "bankruptcy", "bankrupt", "bk", "talc", "talcum powder", "ovarian cancer", "meso", "mesothelioma", "gynecological", "cancer", "baby powder", "Project Plato", "Project Plato 2", "Plato", "stock performance", "stock price", "market", "reaction", "fraud", "fraudulent", "two-step", "plan support agreement", "PSA", "term sheet", "plan", "termination", "substitution", "T&S", "divisive merger", "automatic stay", "funding agreement", "J&J support agreement", "LTL", "liability management", "injunction", "circuit", "appellate", "appeal", "dismissal", "void", "voidable", and "new filing".

9.      All documents, generated by or received from LTL, J&J, or any J&J entity on or after January 30, 2023, discussing or describing any alternative means of resolving talcum powder-related liabilities, expenses and fees other than In re LTL 1.0.

10.     All documents concerning the proposed reorganization and rehabilitation of LTL, including, without limitation, any draft Chapter 11 plans, outlines of Chapter 11 plans, projections, and analyses of feasibility.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re _____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. _____

Chapter _____

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: _____
*(Name of person to whom the subpoena is directed)*

☐ *Production*:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE  Genova Burns, LLC, Attn: Donald Clarke (dclarke@genovaburns.com) | DATE AND TIME  5/30/23 5:00pm |
|---|---|

☐ *Inspection of Premises*:  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  ___5/16/23_____

CLERK OF COURT

OR

_____        ___/s/ Donald Clarke_____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
_Official Committe of Talc Claimants_,  who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**   dclarke@genovaburns.com

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


     I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed counsel, hereby requests the production of the specified documents below by electronic means to Donald Clarke, Genova Burns, LLC, 110 Allen Rd., Suite 304, Basking Ridge, NJ, 07920, dclarke@genovaburns.com on or before **May 19, 2023 at 5:00 p.m. ET** or in accordance with a schedule agreed upon by the parties.

All documents produced in response to this subpoena should be produced in native file format. If You determine that You cannot comply with the production of documents in a native file format, You shall promptly inform the requesting party why compliance is impracticable and meet and confer to establish a reasonably useable format for production.

## **<u>DEFINITIONS</u>**

1.      The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4, and attached hereto as **Exhibit B**.

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.      "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

4.      "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

5.      "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

6.      "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

7.      The "Healthcare Spinoff" means J&J's transfer of its consumer health business to Kenvue.

8.      "Kenvue" means Kenvue Inc., a Delaware Corporation.

9.      The "Kenvue IPO" means Kenvue's initial public offering, completed May 8, 2023.

10.      The "Separation Agreement" means the May 3, 2023 agreement entered into between J&J and Kenvue in connection with the Kenvue IPO.

11.      "Decision Maker" means each officer, director, member, or manager of an entity and includes any agent, employee, or representative of such officer, director, member, or manager of an entity, or any other person acting on their behalf.

12.      "You," "Your," and "Yours" shall refer to the entity to whom this subpoena is directed as well as the entity's present and former parents, subsidiaries, affiliates, directors,

officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

13.     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

14.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the Debtor has access or of which the Debtor is aware .and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of Debtor, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on Debtor behalf.

15.     The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your

custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

16.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

17.    The term "all communications" shall mean each and every communication, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

18.    The term "electronic data," "electronic database," "database" and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or

transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD- ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

19.     The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

20.     The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

21.    The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

22.    The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information:

(a)    the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

23.    The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

24.    The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

25.     Plural words include the singular equivalent, and singular words include the plural equivalent.

26.     The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## **INSTRUCTIONS**

1.     If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

(a)     the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

(b)     (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.     A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.      A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.      The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.      Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.      These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert and other representative of yours, and any other person or entity from which you may obtain documents.

8.      Unless otherwise indicated, the time frame for the document requests is from **January 30, 2023** to the present.

## <u>REQUESTS FOR PRODUCTION</u>

1.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) LTL; (ii) the resolution of J&J's talc claims; (iii) the dismissal or potential dismissal of In re LTL 1.0; (iv) LTL's filing or potential filing of a second bankruptcy petition; (v) In re LTL 2.0; (vi) any potential or actual plan of reorganization for LTL and any support therefor, including plan support agreements; (vii) the 2021 Funding Agreement and the actual or potential termination

thereof; (viii) the 2023 Funding Agreement; and (ix) J&J's support for In re LTL 2.0, including but not limited to the J&J Support Agreement.

2.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) the Healthcare Spinoff; (ii) Kenvue; (iii) the Kenvue IPO; and (iv) the Separation Agreement.

3.      All documents and communications concerning the credit rating of J&J, any J&J subsidiary, LTL, and Kenvue.

4.      All documents concerning any valuation, whether formal or informal, external or internal, performed with respect to the assets and liabilities of J&J, any J&J subsidiary, LTL, and Kenvue, including but not limited to the valuation itself and any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

5.      Any valuations or assessments of liabilities, reserves, or accruals, for talcum powder related claims, costs, or liabilities, prepared in connection with J&J's and Kenvue's consolidated financial reporting, and all communications concerning any such valuations, assessments, reserves, or accruals.

6.      All documents concerning any valuation, whether formal or informal, external or internal, of any royalties assigned to or acquired by Royalty A&M, including, without limitation, any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

7.      Documents sufficient to identify any royalty rights assigned to or acquired by Royalty A&M, including, but not limited to, copies of any such assignment, purchase, or acquisition documents.

8.      All communications between You and LTL, J&J, Janssen Pharmaceuticals, Inc., Old JJCI, New JJCI, or any other subsidiary of J&J containing any of "bankruptcy", "bankrupt", "bk", "talc", "talcum powder", "ovarian cancer", "meso", "mesothelioma", "gynecological", "cancer", "baby powder", "Project Plato", "Project Plato 2", "Plato", "stock performance", "stock price", "market", "reaction", "fraud", "fraudulent", "two-step", "plan support agreement", "PSA", "term sheet", "plan", "termination", "substitution", "T&S", "divisive merger", "automatic stay", "funding agreement", "J&J support agreement", "LTL", "liability management", "injunction", "circuit", "appellate", "appeal", "dismissal", "void", "voidable", and "new filing".

9.      All documents, generated by or received from LTL, J&J, or any J&J entity on or after January 30, 2023, discussing or describing any alternative means of resolving talcum powder-related liabilities, expenses and fees other than In re LTL 1.0.

10.      All documents concerning the proposed reorganization and rehabilitation of LTL, including, without limitation, any draft Chapter 11 plans, outlines of Chapter 11 plans, projections, and analyses of feasibility.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of ___New Jersey_____

In re ___LTL Management LLC_____
                    **Debtor**

_(Complete if issued in an adversary proceeding)_

_____
                    **Plaintiff**
                         v.
_____
                    **Defendant**

Case No. __23-12825 (MBK)____

Chapter __11_____

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Moody's Investors Service, Inc., c/o The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801__
                    _(Name of person to whom the subpoena is directed)_

☒ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE  Brown Rudnick LLP  Seven Times Square  New York, NY 10036 | Attn: Michael Reining  mreining@brownrudnick.com | DATE AND TIME  May 19, 2023 at 5:00 p.m. ET |
|---|---|---|

☐ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __5/12/23_____

                    CLERK OF COURT

                                        OR

_____            ___/s/ Daniel M. Stolz_____
_Signature of Clerk or Deputy Clerk_            _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
__Official Committee of Talc Claimants for LTL__ , who issues or requests this subpoena, are:

__Daniel M. Stolz, Esq., Genova Burns LLC, 110 Allen Road, Suite 304, Basking Ridge, NJ 07920, (973) 230-2095__

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _5/12/23_____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____5/12/23_____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

Daniel M. Stolz, Esq., proposed local counsel for the
Official Committee of Talc Claimants for LTL Management LLC
_____
*Printed name and title*

Genova Burns LLC
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
_____
*Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed counsel, hereby requests the production of the specified documents below by electronic means to Brown Rudnick LLP, Seven Times Square, New York, NY 10036, attention: Michael Reining, mreining@brownrudnick.com, on or before **May 19, 2023 at 5:00 p.m. ET** or in accordance with a schedule agreed upon by the parties.

All documents produced in response to this subpoena should be produced in native file format. If You determine that You cannot comply with the production of documents in a native file format, You shall promptly inform the requesting party why compliance is impracticable and meet and confer to establish a reasonably useable format for production.

## <u>DEFINITIONS</u>

1.      The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4, and attached hereto as **Exhibit B**.

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.      "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

4.      "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

5. "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

6. "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

7. The "Healthcare Spinoff" means J&J's transfer of its consumer health business to Kenvue.

8. "Kenvue" means Kenvue Inc., a Delaware Corporation.

9. The "Kenvue IPO" means Kenvue's initial public offering, completed May 8, 2023.

10. The "Separation Agreement" means the May 3, 2023 agreement entered into between J&J and Kenvue in connection with the Kenvue IPO.

11. "Decision Maker" means each officer, director, member, or manager of an entity and includes any agent, employee, or representative of such officer, director, member, or manager of an entity, or any other person acting on their behalf.

12. "You," "Your," and "Yours" shall refer to the entity to whom this subpoena is directed as well as the entity's present and former parents, subsidiaries, affiliates, directors,

officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

13.     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

14.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the Debtor has access or of which the Debtor is aware .and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of Debtor, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on Debtor behalf.

15.    The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your

custody, possession or control, or the custody, possession or control of your present or former

attorneys, accountants, insurance carriers, representatives, employees and/or agents.

16.     The term "communication" means the transmittal of information (in the form of

facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal

and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation,

meetings, conversations in person, telephone conversations, records of conversations or

messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters,

reports, memoranda, formal statements and press releases, and newspaper stories. References to

communications with business entities shall be deemed to include all officers, directors,

employees, agents, attorneys, accountants, consultants, independent contractors, or other

representatives of such entities.

17.     The term "all communications" shall mean each and every communication,

whether an original or copy, known to you or which you can locate or discover by reasonably

diligent effort, within your custody, possession or control, or the custody, possession or control

of your present or former attorneys, accountants, insurance carriers, representatives, employees

and/or agents.

18.     The term "electronic data," "electronic database," "database" and "data" mean the

original (native electronic format) and any non-identical copies (whether non-identical because

of notes made on copies or attached comments, annotations, marks, transmission notations, or

highlighting of any kind) of writings of every kind and description whether inscribed by

mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way

of example only, computer programs (whether private, commercial or works-in-progress),

programming notes or instructions, activity listings or electronic mail receipts and /or

transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD- ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

19.    The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

20.    The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

21.    The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

22.    The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information:

(a)    the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

23.    The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

24.    The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

25.    Plural words include the singular equivalent, and singular words include the plural equivalent.

26.    The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## **INSTRUCTIONS**

1.    If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

(a)    the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

(b)    (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.    A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.      A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.      The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.      Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.      These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert and other representative of yours, and any other person or entity from which you may obtain documents.

8.      Unless otherwise indicated, the time frame for the document requests is from **January 20, 2022** to the present.

<u>**REQUESTS FOR PRODUCTION**</u>

1.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) LTL; (ii) the resolution of J&J's talc claims; (iii) the dismissal or potential dismissal of In re LTL 1.0; (iv) LTL's filing or potential filing of a second bankruptcy petition; (v) In re LTL 2.0; (vi) any potential or actual plan of reorganization for LTL and any support therefor, including plan support agreements; (vii) the 2021 Funding Agreement and the actual or potential termination

thereof; (viii) the 2023 Funding Agreement; and (ix) J&J's support for In re LTL 2.0, including but not limited to the J&J Support Agreement.

2.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) the Healthcare Spinoff; (ii) Kenvue; (iii) the Kenvue IPO; and (iv) the Separation Agreement.

3.      All documents and communications concerning the credit rating of J&J, any J&J subsidiary, LTL, and Kenvue.

4.      All documents concerning any valuation, whether formal or informal, external or internal, performed with respect to the assets and liabilities of J&J, any J&J subsidiary, LTL, and Kenvue, including but not limited to the valuation itself and any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

5.      Any valuations or assessments of liabilities, reserves, or accruals, for talcum powder related claims, costs, or liabilities, prepared in connection with J&J's and Kenvue's consolidated financial reporting, and all communications concerning any such valuations, assessments, reserves, or accruals.

6.      All documents concerning any valuation, whether formal or informal, external or internal, of any royalties assigned to or acquired by Royalty A&M, including, without limitation, any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

7.      Documents sufficient to identify any royalty rights assigned to or acquired by Royalty A&M, including, but not limited to, copies of any such assignment, purchase, or acquisition documents.

8.      All communications between You and LTL, J&J, Janssen Pharmaceuticals, Inc.,
Old JJCI, New JJCI, or any other subsidiary of J&J containing any of "bankruptcy", "bankrupt",
"bk", "talc", "talcum powder", "ovarian cancer", "meso", "mesothelioma", "gynecological",
"cancer", "baby powder", "Project Plato", "Project Plato 2", "Plato", "stock performance",
"stock price", "market", "reaction", "fraud", "fraudulent", "two-step", "plan support agreement",
"PSA", "term sheet", "plan", "termination", "substitution", "T&S", "divisive merger",
"automatic stay", "funding agreement", "J&J support agreement", "LTL", "liability
management", "injunction", "circuit", "appellate", "appeal", "dismissal", "void", "voidable", and
"new filing".

9.      All documents, generated by or received from LTL, J&J, or any J&J entity after
January 20, 2022, discussing or describing any alternative means of resolving talcum powder-
related liabilities, expenses and fees other than In re LTL 1.0.

10.      All documents concerning the proposed reorganization and rehabilitation of LTL,
including, without limitation, any draft Chapter 11 plans, outlines of Chapter 11 plans,
projections, and analyses of feasibility.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of __New Jersey_____

In re __LTL Management LLC_____

Debtor

_(Complete if issued in an adversary proceeding)_

Case No. __23-12825 (MBK)____

Chapter __11_____

_____

Plaintiff

v.

_____

Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:    __S&P Global Inc., c/o Douglas L. Peterson, 55 Water Street, New York, NY 10041_____
_(Name of person to whom the subpoena is directed)_

☒ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE | Brown Rudnick LLP<br>Seven Times Square<br>New York, NY 10036 | Attn: Michael Reining<br>mreining@brownrudnick.com | DATE AND TIME<br>May 19, 2023 at 5:00 p.m. ET |
|---|---|---|---|

☐ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __5/12/23_____

CLERK OF COURT

OR

_____        __/s/ Daniel M. Stolz_____
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
__Official Committee of Talc Claimants for LTL__ , who issues or requests this subpoena, are:

Daniel M. Stolz, Esq., Genova Burns LLC, 110 Allen Road, Suite 304, Basking Ridge, NJ 07920, (973) 230-2095

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* 5/12/23_____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

Daniel M. Stolz, Esq., proposed local counsel for the
Official Committee of Talc Claimants for LTL Management LLC
_____
*Printed name and title*

Genova Burns LLC
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed counsel, hereby requests the production of the specified documents below by electronic means to Brown Rudnick LLP, Seven Times Square, New York, NY 10036, attention: Michael Reining, mreining@brownrudnick.com, on or before **May 19, 2023 at 5:00 p.m. ET** or in accordance with a schedule agreed upon by the parties.

All documents produced in response to this subpoena should be produced in native file format. If You determine that You cannot comply with the production of documents in a native file format, You shall promptly inform the requesting party why compliance is impracticable and meet and confer to establish a reasonably useable format for production.

## DEFINITIONS

1.      The "First Day Declaration" shall refer to the *Declaration of John K. Kim in Support of First Day Pleadings*, dated April 4, 2023, filed in In re LTL 2.0 as Dkt. No. 4, and attached hereto as **Exhibit B**.

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

3.      "In re LTL 1.0" means *In re LTL Management LLC*, Case No. 21-30589 (MBK) and/or affiliated adversary proceedings.

4.      "In re LTL 2.0" means *In re LTL Management LLC*, Case No. 23-12825 (MBK) and/or affiliated adversary proceedings, including Adv. Proc. No. 23-01092.

5.     "J&J" means Johnson & Johnson and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

6.     "LTL" means LTL Management LLC and its present and former parents, subsidiaries, and affiliates (including but not limited to the Debtor, J&J Services, Old JJCI, New JJCI, and Holdco, each as defined in the First Day Declaration, and any affiliates thereof), and its directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalf.

7.     The "Healthcare Spinoff" means J&J's transfer of its consumer health business to Kenvue.

8.     "Kenvue" means Kenvue Inc., a Delaware Corporation.

9.     The "Kenvue IPO" means Kenvue's initial public offering, completed May 8, 2023.

10.     The "Separation Agreement" means the May 3, 2023 agreement entered into between J&J and Kenvue in connection with the Kenvue IPO.

11.     "Decision Maker" means each officer, director, member, or manager of an entity and includes any agent, employee, or representative of such officer, director, member, or manager of an entity, or any other person acting on their behalf.

12.     "You," "Your," and "Yours" shall refer to the entity to whom this subpoena is directed as well as the entity's present and former parents, subsidiaries, affiliates, directors,

officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

13.     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on their behalf.

14.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the Debtor has access or of which the Debtor is aware .and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of Debtor, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on Debtor behalf.

15.    The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your

custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

16.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

17.     The term "all communications" shall mean each and every communication, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

18.     The term "electronic data," "electronic database," "database" and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or

transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD- ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

19.    The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

20.    The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

21.    The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

22.    The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information:

(a)    the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

23.    The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

24.    The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

25.      Plural words include the singular equivalent, and singular words include the plural equivalent.

26.      The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## <u>INSTRUCTIONS</u>

1.      If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

(a)      the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

(b)      (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2.      A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3.      A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5.      The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

6.      Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7.      These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in your possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert and other representative of yours, and any other person or entity from which you may obtain documents.

8.      Unless otherwise indicated, the time frame for the document requests is from **January 20, 2022** to the present.

## <u>REQUESTS FOR PRODUCTION</u>

1.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) LTL; (ii) the resolution of J&J's talc claims; (iii) the dismissal or potential dismissal of In re LTL 1.0; (iv) LTL's filing or potential filing of a second bankruptcy petition; (v) In re LTL 2.0; (vi) any potential or actual plan of reorganization for LTL and any support therefor, including plan support agreements; (vii) the 2021 Funding Agreement and the actual or potential termination

thereof; (viii) the 2023 Funding Agreement; and (ix) J&J's support for In re LTL 2.0, including but not limited to the J&J Support Agreement.

2.      All documents and communications, including Your internal communications and communications between You and LTL, J&J, or any J&J entity, concerning (i) the Healthcare Spinoff; (ii) Kenvue; (iii) the Kenvue IPO; and (iv) the Separation Agreement.

3.      All documents and communications concerning the credit rating of J&J, any J&J subsidiary, LTL, and Kenvue.

4.      All documents concerning any valuation, whether formal or informal, external or internal, performed with respect to the assets and liabilities of J&J, any J&J subsidiary, LTL, and Kenvue, including but not limited to the valuation itself and any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

5.      Any valuations or assessments of liabilities, reserves, or accruals, for talcum powder related claims, costs, or liabilities, prepared in connection with J&J's and Kenvue's consolidated financial reporting, and all communications concerning any such valuations, assessments, reserves, or accruals.

6.      All documents concerning any valuation, whether formal or informal, external or internal, of any royalties assigned to or acquired by Royalty A&M, including, without limitation, any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

7.      Documents sufficient to identify any royalty rights assigned to or acquired by Royalty A&M, including, but not limited to, copies of any such assignment, purchase, or acquisition documents.

8.      All communications between You and LTL, J&J, Janssen Pharmaceuticals, Inc., Old JJCI, New JJCI, or any other subsidiary of J&J containing any of "bankruptcy", "bankrupt", "bk", "talc", "talcum powder", "ovarian cancer", "meso", "mesothelioma", "gynecological", "cancer", "baby powder", "Project Plato", "Project Plato 2", "Plato", "stock performance", "stock price", "market", "reaction", "fraud", "fraudulent", "two-step", "plan support agreement", "PSA", "term sheet", "plan", "termination", "substitution", "T&S", "divisive merger", "automatic stay", "funding agreement", "J&J support agreement", "LTL", "liability management", "injunction", "circuit", "appellate", "appeal", "dismissal", "void", "voidable", and "new filing".

9.      All documents, generated by or received from LTL, J&J, or any J&J entity after January 20, 2022, discussing or describing any alternative means of resolving talcum powder-related liabilities, expenses and fees other than In re LTL 1.0.

10.     All documents concerning the proposed reorganization and rehabilitation of LTL, including, without limitation, any draft Chapter 11 plans, outlines of Chapter 11 plans, projections, and analyses of feasibility.