**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC,<br><br>               Plaintiff,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>               Defendants. | Adv. No.: 23-01092 (MBK) |

## DEBTOR'S FIRST SET OF INTERROGATORIES
## TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1536701608v7

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, made applicable to this contested matter[2] by Rules 7033 and 9014 of the Federal Rules of Bankruptcy Procedure, LTL Management LLC, the above-captioned debtor ("the Debtor"), by its proposed undersigned counsel, hereby requests that the Official Committee of Talc Claimants answer under oath the interrogatories specified below on or before the date agreed upon by the parties or as ordered by the Court.

**DEFINITIONS**

1.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

2.  The term "all communications" shall mean each and every communication, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

---

[2] The contested matter is the *Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC*, Dkt. 286, and all other motions to dismiss this bankruptcy.

3. The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

4. The term "Ad Hoc Comm. Info. Brief" means the *Information Brief of the Ad Hoc Committee of Certain Talc Claimants Regarding Second Bankruptcy Filing by LTL Management, LLC*, Dkt. 79.

5. The term "FCR" shall mean the Future Claimants' Representative appointed in LTL 1.0 and any proposed Future Claimants' Representative for LTL 2.0.

6. The term LTL 1.0 means Case No. 21-30589 (Bankr. D.N.J.) and Case No. 21-30589 (Bankr. W.D.N.C.), including all proceedings and contested matters.

7. The term LTL 2.0 means Case No. 23-12825 (Bankr. D.N.J.), including all proceedings and contested matters.

8. The term "MDL *Daubert* Decision" shall mean Judge Freda Wolfson's April 27, 2020 in *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Litigation*, MDL No. 2738, Civ. No. 16-2738 (FLW) (D.N.J.).

9. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

10. The term "Proposed $8.9 Billion Settlement" shall mean the Debtor's proposal, as set forth in the Term Sheet attached to the Plan Support Agreements, to resolve all current and future Talc Claims for a $8.9 billion net present value, payable over 25 years.

11. The term "Talc Claims" shall mean current and future talc-related claims or other proceedings involving the Debtor or any of its affiliates, including without limitation personal injury claims filed by individual claimants, claims asserted by governmental units, claims asserted by third-party payors, and claims for indemnification against the Debtor or any its affiliates.

12. The term "TCC" means the Official Committee of Talc Claimants, the Ad Hoc Committee of Certain Talc Claimants, each of the TCC's counsel and advisors, the members of the TCC, and any person authorized to act on of the behalf of the TCC.

13. The term "TCC Mot. Dismiss" means the *Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC*, Dkt. 286.

14. The term "TCC PI Obj." means the *Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies or Extends to Certain Actions Against-Non Debtors, (II) Preliminary Enjoying Such Actions, and (III) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction*, Adv. Dkt. 39.

15. The term "United States Trustee" shall mean the Office of the United States Trustee and any person authorized to act on its behalf.

16. Plural words include the singular equivalent, and singular words include the plural equivalent.

17.     The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## INSTRUCTIONS

1.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

2.      The past tense of any verb shall embrace and be applied as the present tense, or as the context requires or as applicable, and vice versa.

3.      Each interrogatories is to be construed and considered to act independently, and is not to be referenced to any other interrogatories for purposes of limitation.

## INTERROGATORIES

**INTERROGATORY NO. 1**: If the TCC contends that the amounts proposed in the Proposed $8.9 Billion Settlement to resolve either the mesothelioma Talc Claims or the ovarian cancer Talc Claims are inadequate to provide fair compensation, identify the amount of trust funding that would be adequate to provide fair compensation for the mesothelioma Talc Claims, as well as the amount of trust funding that would be adequate to provide fair compensation for the ovarian cancer Talc Claims.

**ANSWER:**

**INTERROGATORY NO. 2**: Identify any estimates the TCC has developed, shared, or discussed concerning the dollar-value of the aggregate liability attributable to all or any subset of the Talc Claims.

**ANSWER:**

**INTERROGATORY NO. 3**: Identify any estimates the TCC has developed, shared, or discussed concerning the dollar amount required to defend all or any subset of the Talc Claims in the tort system.

**ANSWER:**

**INTERROGATORY NO. 4**:  Identify any estimates the TCC has developed, shared, or discussed concerning the dollar amount required to resolve all or any subset of the Talc claims in the tort system.

**ANSWER:**

**INTERROGATORY NO. 5**:  Identify the basis for the TCC's contention that a trust established in the LTL bankruptcy would have to cover "billions of dollars of claims asserted by third-party payors and government units, and likely billions of dollars for claims for indemnification and other damages asserted by talc suppliers such as bankruptcy Imerys and Cyprus companies, distributors, and hundreds of retailers."  Ad Hoc Comm. Info. Br. ¶ 30; *see also* TCC Obj. at 21.

**ANSWER:**

**INTERROGATORY NO. 6**:  Identify any estimates the TCC has developed, shared, or discussed concerning the dollar-value attributable to Talc Claims asserted by government units, including support for the TCC's statement that "claims by governmental units against J&J alleging false advertising, unfair competition, and deceptive trade practices … could be massive."  TCC PI Obj. at 21.

**ANSWER:**

**INTERROGATORY NO. 7**:  Identify any estimates the TCC has developed, shared, or discussed concerning the dollar-value attributable to Talc Claims asserted by third-party payors.

**ANSWER:**

**INTERROGATORY NO. 8**: Identify the basis for the TCC's contentions that "[g]iven the scope of talc claims that J&J wants channeled to resolve 'all talc claims for all time,' it is

possible, if not likely, that only a small percentage of the $8.9 billion will be available to pay individuals holding current talc claims, both ovarian and mesothelioma," Ad Hoc Comm. Info. Br. ¶ 63, and that "[i]f the amounts asserted by governmental claims are allowed, such claims will substantially dilute the funds available to pay individual claimants."  TCC PI Obj. at 22.

**ANSWER:**

**INTERROGATORY NO. 9**:  Identify the basis for the TCC's contention that the Proposed $8.9 Billion Settlement will "prove[] inadequate to pay present and future tort claims in full …." Ad Hoc Comm. Info. Br. ¶ 72.

**ANSWER:**

**INTERROGATORY NO. 10**:  Identify the basis for the TCC's contention that amendments to the financing arrangements between LTL, J&J, and New JJCI/Holdco constituted a "clear breach of the LTL's directors' fiduciary duties," TCC PI Obj. at 4, including the basis for any contention that the claims of LTL's creditors were prejudiced by the amendments.

**ANSWER:**

**INTERROGATORY NO. 11**:  Identify the names of the more than 100 law firms that currently oppose J&J's proposal, and state how each of those firms has "vehemently oppose[d] the Debtor's plan."  TCC Mot. Dismiss, at 21; Ad Hoc Comm. Info Br. ¶ 27; TCC PI Obj. at 10, 20, and 31.

**ANSWER:**

**INTERROGATORY NO. 12**:  Identify the basis for the TCC's contention that the Plan Support Agreements were "fraudulently and collusively constructed."  Ad Hoc. Comm. Info. Br. ¶ 18.

**ANSWER:**

**INTERROGATORY NO. 13**: Identify any estimates the TCC has developed, shared, or discussed concerning the number of Talc Claims held by counsel who have signed Plan Support Agreements that "could never be proven" under the MDL *Daubert* Decision. TCC Mot. to Dismiss at 19-20.

**ANSWER:**

**INTERROGATORY NO. 14**: Provide the TCC's definition of "ovarian cancer." *See* Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Scheduling Hearing o Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief, Dkt. 413, ¶¶ 5-6.

**ANSWER:**

**INTERROGATORY NO. 15**: Identify all cancer types or sub-types the TCC contends may be caused by talc under the MDL *Daubert* Decision. See TCC Mot. to Dismiss at 19-20.

**ANSWER:**

**INTERROGATORY NO. 16**: Identify all cancer types or sub-types the TCC contends are caused by talc. See TCC Mot. to Dismiss at 19-20.

**ANSWER:**

**INTERROGATORY NO. 17**: Identify all efforts made by the TCC to collect lists of unfiled claimants with Talc Claims represented by counsel.

**ANSWER:**

**INTERROGATORY NO. 18**: Provide a list of all unfiled claimants represented by lawyers representing members of the TCC.

**ANSWER:**

**INTERROGATORY NO. 19**:  Identify all efforts made by the TCC to collect engagement letters pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**ANSWER:**

**INTERROGATORY NO. 20**:  Identify all efforts made by the TCC to collect pathology reports pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**ANSWER:**

**INTERROGATORY NO. 21**:  Identify all efforts made by the TCC to collect talc exposure/usage information pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**ANSWER:**

**INTERROGATORY NO. 22**:  Identify all efforts made by the TCC to collect statue of limitations pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**ANSWER:**

**INTERROGATORY NO. 23**:  Identify all efforts made by the TCC to de-duplicate filed and unfiled Talc Claims.

**ANSWER:**

**INTERROGATORY NO. 24**:  Identify the basis for the assertion of common-interest protection for communications between the TCC and the United States Trustee.

**ANSWER:**

Dated: May 6, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*