**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC, | |
| Plaintiff, | |
| v. | Adv. No.: 23-01092 (MBK) |
| THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000, | |
| Defendants. | |

**DEBTOR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO
THE OFFICIAL COMMITTEE OF TALC CLAIMANTS**

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, made applicable to this contested matter[2] by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, LTL Management LLC, the above-captioned debtor, ("the Debtor"), by its proposed undersigned counsel, hereby requests that the Official Committee of Talc Claimants produce the documents specified below by electronic means to Jones Day, 2727 N. Harwood Street, Dallas, Texas 75201, attention Mark W. Rasmussen, Esq., mrasmussen@jonesday.com, on a rolling basis to be completed in accordance with a schedule agreed upon by the parties or ordered by the Court.

## DEFINITIONS

1. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails,

---

[2] The contested matter is the *Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC*, Dkt. 286, and all other motions to dismiss this bankruptcy.

voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the TCC has access or of which the TCC is aware and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of the TCC or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of the TCC, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on the TCC's behalf.

2. The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, representatives, employees and/or agents.

3. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

4. The term "all communications" shall mean each and every communication, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

5. The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information:

(a) the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

6. The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

7. The term "Ad Hoc Comm. Info. Brief" means the *Information Brief of the Ad Hoc Committee of Certain Talc Claimants Regarding Second Bankruptcy Filing by LTL Management, LLC*, Dkt. 79.

8. The term "FCR" shall mean the Future Claimants' Representative appointed in LTL 1.0 and any proposed Future Claimants' Representative for LTL 2.0.

9. The term LTL 1.0 means Case No. 21-30589 (Bankr. D.N.J.) and Case No. 21-30589 (Bankr. W.D.N.C.), including all proceedings and contested matters.

10. The term LTL 2.0 means Case No. 23-12825 (Bankr. D.N.J.), including all proceedings and contested matters.

11. The term "MDL *Daubert* Decision" shall mean Judge Freda Wolfson's April 27, 2020 in *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Litigation*, MDL No. 2738, Civ. No. 16-2738 (FLW) (D.N.J.).

12. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture

corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

13. The term "Proposed $8.9 Billion Settlement" shall mean the Debtor's proposal, as set forth in the Term Sheet attached to the Plan Support Agreements, to resolve all current and future Talc Claims for a $8.9 billion net present value, payable over 25 years.

14. The term "Talc Claims" shall mean current and future talc-related claims or other proceedings involving the Debtor or any of its affiliates, including without limitation personal injury claims filed by individual claimants, claims asserted by governmental units, claims asserted by third-party payors, and claims for indemnification against the Debtor or any its affiliates.

15. The term "TCC" means the Official Committee of Talc Claimants, the Ad Hoc Committee of Certain Talc Claimants, each of the TCC counsel and advisors, the members of the TCC, and any person authorized to act on of the behalf of the TCC.

16. The term "TCC Mot. Dismiss" means the *Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC*, Dkt. 286.

17. The term "TCC PI Obj." means the *Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies or Extends to Certain Actions Against-Non Debtors, (II) Preliminary Enjoying Such Actions, and (III) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction*, Adv. Dkt. 39.

18. The term "United States Trustee" shall mean the Office of the United States Trustee and any person authorized to act on its behalf.

19. Plural words include the singular equivalent, and singular words include the plural equivalent.

20. The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## INSTRUCTIONS

1. If a claim of privilege, including but not limited to any claim of attorney-client privilege or the work product doctrine, is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

   a. the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

   b. (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

2. A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

3. A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

4. The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

5. The past tense of any verb shall embrace and be applied as the present tense, or as the context requires or as applicable, and vice versa.

6. Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

7. These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in the TCC's possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, employee, officer, director, affiliate, subsidiary, expert and other representative of the TCC, and any other person or entity from which the TCC may obtain documents.

8. Documents produced in response to these requests shall be clearly organized and labeled to correspond to the categories in these requests so as to indicate which documents are being produced in response to which numbered request.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Documents sufficient to show the total number of Talc Claims, filed or unfiled, for which each counsel representing a member of the TCC serves as lead counsel.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 2:** All Documents and Communications concerning any analysis, evaluation, estimation, prediction, projection, or other assessment of the dollar-value of the Debtor's or any of its Affiliates' actual or potential aggregate liability on Talc Claims, or any subset or category of Talc Claims.

-8-

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** All Documents and Communications concerning any analysis, evaluation, prediction, projection, or other assessment of the aggregate or periodic costs to defend the Talc Claims, or any subset or category of Talc Claims, in the tort system.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:** All Documents and Communications concerning any analysis, evaluation, prediction, projection, or other assessment of the aggregate or periodic costs to resolve the Talc Claims, or any subset or category of Talc Claims, in the tort system.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:** All Documents and Communications concerning the number of new Talc Claims that have manifested, arisen, surfaced, or come into existence since the Petition Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:** All Documents and Communications concerning any projection of the number of Talc Claims that will be filed in the future.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:** All Documents and Communications concerning any settlement offers or proposals to resolve any, all, or any subset of the Talc Claims, whether the settlement offers or proposals were made in the tort system or when LTL was in bankruptcy.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:** All Documents and Communications with any law firm or claimant concerning the proposed Plan Support Agreement or the Proposed $8.9 Billion Settlement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:** All Communications with the FCR concerning the Talc Claims, LTL 1.0, LTL 2.0, or any proposals to settle or otherwise resolve any, all, or any subset of the Talc Claims.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:** All Communications with the United States Trustee concerning the Talc Claims, LTL 2.0, or any proposals to settle or otherwise resolve any, all, or any subset of the Talc Claims.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:** All Documents and Communications that support, undermine, or otherwise concern the TCC's contention that there are "billions of dollars of claims asserted by third-party payors and government units, and likely billions of dollars for

claims for indemnification and other damages asserted by talc suppliers such as bankruptcy Imerys and Cyprus companies, distributors, and hundreds of retailers." Ad Hoc Comm. Info. Br. ¶ 30; *see also* TCC Obj. at 21.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:** All Documents and Communications concerning the estimated dollar-value of all or any portion of Talc Claims asserted by government units or third-party payors.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:** All Documents and Communications that support, undermine, or otherwise concern the TCC's contentions that "[g]iven the scope of talc claims that J&J wants channeled to resolve 'all talc claims for all time,' it is possible, if not likely, that only a small percentage of the $8.9 billion will be available to pay individuals holding current talc claims, both ovarian and mesothelioma," Ad Hoc Comm. Info. Br. ¶ 63, and that "[i]f the amounts asserted by governmental claims are allowed, such claims will substantially dilute the funds available to pay individual claimants." TCC PI Obj. at 22.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:** All Documents and Communications that support, undermine, or otherwise concern the TCC's contention that the Proposed $8.9 Billion Settlement will "prove[] inadequate to pay present and future tort claims in full …." Ad Hoc Comm. Info. Br. ¶ 72.

**RESPONSE:**

-11-

**REQUEST FOR PRODUCTION NO. 15:** All Documents and Communications that support, undermine, or otherwise concern the TCC's contention that "more than 100 law firms representing [over 40,000] ovarian cancer and mesothelioma claimants oppose J&J's proposal as currently described." TCC Mot. Dismiss, at 21; Ad Hoc Comm. Info. Br. ¶ 27; TCC PI Obj. at 10, 20, 31.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:** All Documents and Communications that support, undermine, or otherwise concern the TCC's contention that the Plan Support Agreements were "fraudulently and collusively constructed." Ad Hoc. Comm. Info. Br. ¶ 18.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:** All Documents and Communications that support, undermine, or otherwise concern the TCC's contention that "Mr. Murdica sought to stack the voting deck by expanding the definition of ovarian cancer to include non-ovarian 'gynecological cancers,' resulting in potential inclusion of thousands of claims that could never be proven." TCC Mot. to Dismiss at 19.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:** All Documents and Communications that support, undermine, or otherwise concern the TCC's contention that there is a common-interest protection for communications between the TCC and the United States Trustee.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**  All Documents and Communications concerning any ligation funding or financing arrangement relating to the Talc Claims.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**  All Documents or Communications considered in preparing the TCC's responses to the Debtor's First Set of Interrogatories to the Official Committee of Talc Claimants, served contemporaneously herewith.

**RESPONSE:**

Dated: May 6, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

NAI-1536697622v6

-14-