## EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official Committee of Talc Claimants* |
| In re:<br><br>**LTL MANAGEMENT LLC**,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**RESPONSES AND OBJECTIONS
TO THE DEBTOR'S FIRST SET OF INTERROGATORIES
TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Civil Rules"), as made applicable herein by Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Talc Claimants ("TCC") hereby responds and objects (the "Responses and Objections") to Debtor's First Set of Interrogatories to the Official Committee of Talc Claimants (the "Interrogatories"), dated May 6, 2023, as follows:

**GENERAL OBJECTIONS**

The TCC incorporates into its specific Responses the following general and continuing objections (the "General Objections") as if they were set forth in full in specific response to each interrogatory (each an "Interrogatory").  Although the General Objections may be specifically referred to in a Response, failure to mention a General Objection specifically should not be construed as a waiver of any such objection.  Moreover, the assertion of the same, similar, or additional objections in response to an Interrogatory does not waive any of the General Objections set forth below.

1.    The TCC objects to the Interrogatories as unduly burdensome and beyond the scope of discovery permitted under Civil Rule 26(b)(1).

2.    The TCC objects to the Interrogatories to the extent that they seek to impose obligations on the TCC that are inconsistent with or greater than the obligations imposed by the Civil Rules, the Bankruptcy Rules, or other applicable law or rule.

3.    The TCC objects to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, work product doctrine, joint defense or common interest doctrine, mediation privilege, or other applicable privilege or protection.

2

4.      The TCC's discovery efforts are ongoing, and the TCC reserves its right to amend or supplement these Responses and Objections as additional discovery and information becomes available, or in the event of error, inadvertent mistake, or omission.

5.      By making these responses and objections to the Interrogatories, the TCC does not waive, but hereby expressly reserves, its right to assert any and all objections as to the admissibility of such response into evidence in this action, or in any proceedings, on any and all grounds including but not limited to competency, relevancy, materiality, and privilege.  The TCC makes these Responses and Objections to the Interrogatories without in any way implying that it considers the Interrogatories to be relevant or material to this action.

6.      The TCC objects to the Interrogatories to the extent they seek information already in the Debtor's possession, custody, or control.

7.      The TCC objects to the Interrogatories to the extent they seek information more easily obtained from other parties or third parties.

8.      The TCC makes these Responses and Objections to the Interrogatories based on its present knowledge and without prejudice to its rights to produce or object to evidence of any kind and to amend or supplement its Responses and Objections as necessary at a later date.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      The TCC objects to the definition of "TCC" on the grounds that it is overbroad and unduly burdensome and purports to require the TCC to produce information not within the TCC's possession, custody, or control.

2.      The TCC objects to the Instructions on the grounds and to the extent they are overbroad, unduly burdensome, and seek to impose obligations on the TCC that are inconsistent

with or greater than the obligations imposed by the Civil Rules, the Bankruptcy Rules, the Local

Rules, or any other applicable agreement or rule.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory No. 1

If the TCC contends that the amounts proposed in the Proposed $8.9 Billion Settlement to

resolve either the mesothelioma Talc Claims or the ovarian cancer Talc Claims are inadequate to

provide fair compensation, identify the amount of trust funding that would be adequate to provide

fair compensation for the mesothelioma Talc Claims, as well as the amount of trust funding that

would be adequate to provide fair compensation for the ovarian cancer Talc Claims.

### Response to Interrogatory No. 1

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further

objects to this Interrogatory on the grounds that it seeks privileged information protected from

disclosure insofar as, at this early stage in the bankruptcy case, any "amount of trust funding" that

the TCC may have determined "would be adequate to provide fair compensation" to talc claimants

necessarily would arise solely in the context of attorney-client privileged and/or attorney work

product-protected analysis.  Additionally, because this chapter 11 case was not filed in good faith,

a plan cannot be confirmed and, thus, the premise of the interrogatory that a bankruptcy trust will

be the vehicle through which talc claimants are compensated is incorrect; the TCC objects to this

Interrogatory on that basis, as well.  The TCC also objects to this Interrogatory on the grounds that

it is premature, insofar as the TCC was appointed only a month ago and continues to develop its

contentions based on information discovered through the bankruptcy process and the ongoing

analyses of its professionals and experts.  Subject to the foregoing general and specific objections,

the TCC states that the amount(s) that will fairly compensate talc claimants are appropriately

determined only outside this bankruptcy through the jury system and/or use of well-known tools available through the court system for consensual resolution of mass tort claims. Even if a bankruptcy trust in this case could be used to compensate talc claimants (and it cannot), the TCC states that "the amount of trust funding that would be adequate to provide fair compensation" to talc claimants is the combination of the 2023 Funding Agreement plus the value of the 2021 Funding Agreement that was fraudulently transferred prior to the commencement of this chapter 11 case, *i.e.*, the total value previously available under the 2021 Funding Agreement.

**Interrogatory No. 2**

Identify any estimates the TCC has developed, shared, or discussed concerning the dollar-value of the aggregate liability attributable to all or any subset of the Talc Claims.

**Response to Interrogatory No. 2**

The TCC incorporates its General Objections as if set forth fully herein. The TCC further objects to this Interrogatory on the grounds that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "estimates . . . concerning the dollar-value of the aggregate liability attributable" to Talc Claims that the TCC may have "developed, shared or discussed" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis. The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts. Subject to the foregoing general and specific objections, the TCC states that it has not developed, shared or discussed any nonprivileged estimate concerning the dollar-value of the aggregate liability attributable to all or any subset of the Talc Claims.

5

**Interrogatory No. 3**

Identify any estimates the TCC has developed, shared, or discussed concerning the dollar amount required to defend all or any subset of the Talc Claims in the tort system.

**Response to Interrogatory No. 3**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the grounds that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "estimates . . . concerning the dollar amount required to defend all or any subset of the Talc Claims in the tort system" that the TCC may have "developed, shared or discussed" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis.  The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.  Subject to the foregoing general and specific objections, the TCC states that it has not developed, shared or discussed any nonprivileged estimate concerning the dollar amount required to defend all or any subset of the Talc Claims in the tort system.

**Interrogatory No. 4**

Identify any estimates the TCC has developed, shared, or discussed concerning the dollar amount required to resolve all or any subset of the Talc claims in the tort system.

**Response to Interrogatory No. 4**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "estimates . . . concerning the

6

dollar amount required to resolve all or any subset of the Talc Claims in the tort system" that the TCC may have "developed, shared, or discussed" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis.  The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.  Subject to the foregoing general and specific objections, the TCC states that it has not developed, shared or discussed any nonprivileged estimate concerning the dollar amount required to resolve all or any subset of the Talc Claims in the tort system.

**Interrogatory No. 5**

Identify the basis for the TCC's contention that a trust established in the LTL bankruptcy would have to cover "billions of dollars of claims asserted by third-party payors and government units, and likely billions of dollars for claims for indemnification and other damages asserted by talc suppliers such as bankruptcy Imerys and Cyprus companies, distributors, and hundreds of retailers." Ad Hoc Comm. Info. Br. ¶ 30; *see also* TCC Obj. at 21.

**Response to Interrogatory No. 5**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory to the extent it conflates the Ad Hoc Committee of Certain Talc Claimants with the TCC.  Additionally, the TCC objects to this Interrogatory on the grounds that it seeks privileged information protected from disclosure insofar as the full bases for contentions set out in legal pleadings filed by the TCC reflect the mental impressions and attorney work product of, and attorney-client communications provided to, its counsel.  The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a

month ago and continues to develop its contentions based on information discovered through the
bankruptcy process and the ongoing analyses of its professionals and experts.    Subject to the
foregoing general and specific objections, the TCC refers to:

(i)     the statements by counsel to Imerys Talc America, Imerys Talc Vermont, and
        Imerys Talc Canada on the record during the first day hearing on October 20, 2021
        in LTL 1.0, in which counsel stated on the record the "Imerys debtors" are "likely
        the largest or one of the largest creditors of this estate" "pursuant to a variety of
        agreements [in which] J&J and JJCI agreed on multiple occasions to indemnify the
        Imerys debtors, their affiliates, and their predecessors for all liabilities resulting
        from the Imerys debtors' supply of talc to J&J over certain periods of time"; and

(ii)    the Limited Objection and Reservation of Rights of the Blue Cross and Blue Shield
        Association to the Debtor's Motion for an Order: (I) Authorizing It to File a List of
        the Top 20 Law Firms with Talc Cases Against the Debtor in Lieu of the Top 20
        Largest Unsecured Creditors; (II) Approving Certain Notice Procedures for Talc
        Claimants; and (III)   the Limited Objection of the Blue Cross and Blue Shield
        Association to Debtor's Motion for an Order Authorizing Establishment of a
        Qualified Settlement Fund for Payment of Talc Claims, filed as Dkt. No. 755 in
        LTL 1.0, in which the Blue Cross and Blue Shield Association stated "BCBSA is a
        creditor in this case because it has incurred significant costs as a direct result of the
        actions of the Debtor's affiliates and predecessors with respect to certain talc
        products manufactured and marketed by those companies," that "BCBSA
        preliminarily estimates that it has an unsecured claim of between $100 million and
        $110 million against the Debtor in connection with the Federal Employee

Program," that such amount "does *not* include the unsecured claims held by the thirty-five independent Blue Cross Blue Shield companies that comprise the BCBSA member plans," and that, "the healthcare system will incur over $5.4 billion to treat the Debtor's customers, and private plans – third-party payors --will pick up over $4 billion of that cost."

The TCC further states that it continues to develop its contentions and the bases therefor through the bankruptcy process and the ongoing analyses of its professionals and experts.

**Interrogatory No. 6**

Identify any estimates the TCC has developed, shared, or discussed concerning the dollar-value attributable to Talc Claims asserted by government units, including support for the TCC's statement that "claims by governmental units against J&J alleging false advertising, unfair competition, and deceptive trade practices … could be massive." TCC PI Obj. at 21.

**Response to Interrogatory No. 6**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "estimates . . . concerning the dollar-value attributable to Talc Claims asserted by government units" that the TCC may have "developed, shared or discussed" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis.   The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.

**Interrogatory No. 7**

Identify any estimates the TCC has developed, shared, or discussed concerning the dollar-value attributable to Talc Claims asserted by third-party payors.

**Response to Interrogatory No. 7**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "estimates . . . concerning the dollar-value attributable to Talc Claims asserted by third-party payors" that the TCC may have "developed, shared or discussed" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis.   The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.   Subject to the foregoing general and specific objections, the TCC refers to its Response to Interrogatory No. 5.

**Interrogatory No. 8**

Identify the basis for the TCC's contentions that "[g]iven the scope of talc claims that J&J wants channeled to resolve 'all talc claims for all time,' it is possible, if not likely, that only a small percentage of the $8.9 billion will be available to pay individuals holding current talc claims, both ovarian and mesothelioma," Ad Hoc Comm. Info. Br. ¶ 63, and that "[i]f the amounts asserted by governmental claims are allowed, such claims will substantially dilute the funds available to pay individual claimants."  TCC PI Obj. at 22.

## Response to Interrogatory No. 8

The TCC incorporates its General Objections as if set forth fully herein.   The TCC further objects to this Interrogatory to the extent it conflates the Ad Hoc Committee of Certain Talc Claimants with the TCC.  Additionally, the TCC objects to this Interrogatory on the grounds that it seeks privileged information protected from disclosure insofar as the full bases for contentions set out in legal pleadings filed by the TCC reflect the mental impressions and attorney work product of, and attorney-client communications provided to, its counsel.  The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.   Subject to the foregoing general and specific objections, the TCC refers to its Response to Interrogatory No. 5, and states that it continues to develop its contentions and the bases therefor through the bankruptcy process and the ongoing analyses of its professionals and experts.

## Interrogatory No. 9

Identify the basis for the TCC's contention that the Proposed $8.9 Billion Settlement will "prove[] inadequate to pay present and future tort claims in full . . . ."  Ad Hoc Comm. Info. Br. ¶ 72.

## Response to Interrogatory No. 9

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory to the extent it conflates the Ad Hoc Committee of Certain Talc Claimants with the TCC.  Additionally, the TCC objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as the full bases for contentions set out in legal pleadings filed by the TCC reflect the mental impressions and attorney work product

of, and attorney-client communications provided to, its counsel. Subject to the foregoing general and specific objections, the TCC refers to its Response to Interrogatory No. 5 and states that it continues to develop its contentions and the bases therefor through the bankruptcy process and the ongoing analyses of its professionals and experts.

**Interrogatory No. 10**

Identify the basis for the TCC's contention that amendments to the financing arrangements between LTL, J&J, and New JJCI/Holdco constituted a "clear breach of the LTL's directors' fiduciary duties," TCC PI Obj. at 4, including the basis for any contention that the claims of LTL's creditors were prejudiced by the amendments.

**Response to Interrogatory No. 10**

The TCC incorporates its General Objections as if set forth fully herein. The TCC further objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as the full bases for contentions set out in legal pleadings filed by the TCC reflect the mental impressions and attorney work product of, and attorney-client communications provided to, its counsel. Subject to the foregoing general and specific objections, the TCC states that bases for the contention in the Preliminary Statement of the TCC PI Obj. that the attempted stripping of LTL's most significant asset, the 2021 Funding Agreement, during the two hours between the dismissal of LTL 1.0 and commencement of LTL 2.0 constituted a "clear breach of the LTL's directors' fiduciary duties" are more fully described in the Factual Background and Argument of the TCC PI Obj., to which the TCC refers. The TCC further refers to the Motion of the Official Committee of Talc Claimants for Entry of an Order, Pursuant to Bankruptcy Code Sections 1103(c) and 1109(b), Granting Exclusive Leave, Standing and Authority to Commence, Prosecute and, If Appropriate, Settle Certain Causes of Action on Behalf of Debtor's Estate and

Draft Complaint attached thereto, filed as Dkt. No. 489 in LTL 2.0 (collectively, the "Standing Motion"). The TCC states that it continues to develop its contentions and the bases therefor through the bankruptcy process and the ongoing analyses of its professionals and experts.

**Interrogatory No. 11**

Identify the names of the more than 100 law firms that currently oppose J&J's proposal, and state how each of those firms has "vehemently oppose[d] the Debtor's plan." TCC Mot. Dismiss, at 21; Ad Hoc Comm. Info Br. ¶ 27; TCC PI Obj. at 10, 20, and 31.

**Response to Interrogatory No. 11**

The TCC incorporates its General Objections as if set forth fully herein. The TCC further objects to this Interrogatory to the extent it conflates the Ad Hoc Committee of Certain Talc Claimants with the TCC. The TCC also objects to this Interrogatory on the grounds that it is vague and ambiguous in purporting to require the TCC to describe "how each of [100] firms has 'vehemently oppose[d] the Debtor's plan.'" Subject to the foregoing general and specific objections, the TCC states that it is willing to continue to meet and confer on this Interrogatory.

**Interrogatory No. 12**

Identify the basis for the TCC's contention that the Plan Support Agreements were "fraudulently and collusively constructed." Ad Hoc. Comm. Info. Br. ¶ 18.

**Response to Interrogatory No. 12**

The TCC incorporates its General Objections as if set forth fully herein. The TCC further objects to this Interrogatory to the extent it conflates the Ad Hoc Committee of Certain Talc Claimants with the TCC. Additionally, the TCC objects to this Interrogatory on the grounds that it seeks privileged information protected from disclosure insofar as the full bases for contentions set out in legal pleadings filed by the TCC reflect the mental impressions and attorney work

product of, and attorney-client communications provided to, its counsel. Subject to the foregoing general and specific objections, the TCC refers to the full contents of the TCC PI Obj., the Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC and attachments thereto, filed as Dkt No. 286 in LTL 2.0 (the "Motion to Dismiss"), and the Standing Motion, and states that it continues to develop its contentions and the bases therefor through the bankruptcy process and the ongoing analyses of its professionals and experts.

**Interrogatory No. 13**

Identify any estimates the TCC has developed, shared, or discussed concerning the number of Talc Claims held by counsel who have signed Plan Support Agreements that "could never be proven" under the MDL *Daubert* Decision. TCC Mot. to Dismiss at 19-20.

**Response to Interrogatory No. 13**

The TCC incorporates its General Objections as if set forth fully herein. The TCC further objects to this Interrogatory on the grounds that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "estimates . . . concerning the number of Talc Claims held by counsel who have signed Plan Support Agreements" that the TCC may have "developed, shared or discussed" necessarily would arise solely in the context of attorney-client privileged communication and/or attorney work product-protected analysis. The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts. Subject to the foregoing general and specific objections, the TCC states it has not developed, shared, or discussed any nonprivileged estimates concerning the number of Talc

Claims held by counsel who have signed Plan Support Agreements that "could never be proven" under the MDL *Daubert* Decision.

**Interrogatory No. 14**

Provide the TCC's definition of "ovarian cancer." *See* Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Scheduling Hearing of Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief, Dkt. 413, ¶¶ 5-6.

**Response to Interrogatory No. 14**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the ground that it assumes facts without any basis:  The TCC does not have its own "definition of 'ovarian cancer.'"  Subject to the foregoing general and specific objections, the TCC states that its reference to "ovarian cancer generally" in the context of paragraph 5 of the Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Scheduling Hearing of Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief, Dkt. 413 (the "Disclosure Statement Objection"), was to the common medically-accepted usage of the term "ovarian cancer" other than "epithelial ovarian cancer."  The TCC further states that the reference to the "definition of 'ovarian cancer'" in the context of paragraph 6 of the Disclosure Statement Objection was to Johnson & Johnson's apparent inclusion of non-ovarian gynecological cancers in the category of compensable ovarian cancer cases for purposes of a proposed plan of reorganization by the Debtor.

**Interrogatory No. 15**

Identify all cancer types or sub-types the TCC contends may be caused by talc under the MDL *Daubert* Decision. See TCC Mot. to Dismiss at 19-20.

### Response to Interrogatory No. 15

The TCC incorporates its General Objections as if set forth fully herein.  The TCC objects to this Interrogatory on the grounds that it misstates the TCC's contentions on pages 19 to 20 of the Motion to Dismiss.  The TCC does not contend on those pages that the MDL *Daubert* Decision identified "all cancer types or sub-types the TCC contends may be caused by talc."  The TCC further objects to this Interrogatory to the extent that it is misleading, especially given that the MDL Daubert decision did not analyze the causal link between asbestos-containing talcum powder and mesothelioma.   Subject to the foregoing general and specific objections, the TCC states that, in context of pages 19 to 20 of the Motion to Dismiss, the TCC contends that the link between talc use and cancer (as found by plaintiffs' experts) which MDL *Daubert* Decision found "rest[ed] on good grounds and considered scientific evidence" was "epithelial ovarian cancer."   The TCC further states that it continues to develops its contentions and the bases therefor through the bankruptcy process and the ongoing analyses of its professionals and experts.

### Interrogatory No. 16

 Identify all cancer types or sub-types the TCC contends are caused by talc. See TCC Mot. to Dismiss at 19-20.

### Response to Interrogatory No. 16

The TCC incorporates its General Objections as if set forth fully herein.  The TCC objects to this Interrogatory on the grounds that it misstates the TCC's contentions on pages 19 to 20 of the Motion to Dismiss.  The TCC does not contend on those pages that the MDL *Daubert* Decision identified "all cancer types or sub-types the TCC contends may be caused by talc."  Subject to the foregoing general and specific objections, the TCC states that, in context of pages 19 to 20 of the Motion to Dismiss, the TCC contends that the link between talc use and cancer (as found by

plaintiffs' experts) which the MDL *Daubert* Decision found "rest[ed] on good grounds and considered scientific evidence" was "epithelial ovarian cancer."   The TCC further states other courts have found a causal connection between mesothelioma and asbestos-containing talcum powder.  The TCC further states that it continues to develops its contentions and the bases therefor through the bankruptcy process and the ongoing analyses of its professionals and experts.

**Interrogatory No. 17**

Identify all efforts made by the TCC to collect lists of unfiled claimants with Talc Claims represented by counsel.

**Response to Interrogatory No. 17**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the grounds that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "efforts made by the TCC to collect lists of unfiled claimants with Talc Claims represented by counsel" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis. The TCC also objects to this Interrogatory on the grounds that it is premature,  insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.  Subject to the foregoing general and specific objections, the TCC states that it has not made any nonprivileged efforts to collect lists of unfiled claimants with Talc Claims represented by counsel.

**Interrogatory No. 18**

Provide a list of all unfiled claimants represented by lawyers representing members of the TCC.

### Response to Interrogatory No. 18

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this interrogatory on the grounds that the TCC does not have possession, custody or control of information within the knowledge of any law firm that represents an individual member of the TCC. The TCC also objects to this Interrogatory on the grounds that it is unduly burdensome and beyond the scope of discovery permitted under Civil Rule 26(b)(1).  Subject to the foregoing general and specific objections, the TCC states that it does not know the identities, and is not capable of providing a list of, all unfiled claimants represented by lawyers representing members of the TCC.

### Interrogatory No. 19

 Identify all efforts made by the TCC to collect engagement letters pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

### Response to Interrogatory No. 19

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the grounds that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "efforts made by the TCC to collect engagement letters pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis.  The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.  Subject to the foregoing general and specific objections, the TCC states that it has not made any nonprivileged efforts to collect engagement

18

letters pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**Interrogatory No. 20**

Identify all efforts made by the TCC to collect pathology reports pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**Response to Interrogatory No. 20**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "efforts made by the TCC to collect pathology reports pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis.  The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.  Subject to the foregoing general and specific objections, the TCC states that it has not made any nonprivileged efforts to collect pathology reports pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**Interrogatory No. 21**

Identify all efforts made by the TCC to collect talc exposure/usage information pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**<u>Response to Interrogatory No. 21</u>**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "efforts made by the TCC to collect talc exposure/usage information pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants" necessarily would arise solely in the context of attorney-client privileged analysis and/or attorney work product-protected analysis.  The TCC also objects to this Interrogatory on the grounds that it is premature,  insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.  Subject to the foregoing general and specific objections, the TCC states that it has not made any nonprivileged efforts to collect talc exposure/usage information pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**<u>Interrogatory No. 22</u>**

Identify all efforts made by the TCC to collect statute of limitations pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**<u>Response to Interrogatory No. 22</u>**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC further objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "efforts made by the TCC to collect statute of limitations pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants" necessarily would arise solely in the context of attorney-client privileged analysis and/or attorney work product-protected analysis.   The TCC also objects to this

Interrogatory on the grounds that is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.  Subject to the foregoing general and specific objections, the TCC states that it has not made any nonprivileged efforts to collect statute of limitations pertinent to any Talc Claim, filed or unfiled, from claimants or lawyers representing claimants.

**Interrogatory No. 23**

Identify all efforts made by the TCC to de-duplicate filed and unfiled Talc Claims.

**Response to Interrogatory No. 23**

The TCC incorporates its General Objections as if set forth fully herein.   The TCC further objects to this Interrogatory on the ground that it seeks privileged information protected from disclosure insofar as, at this early stage in the bankruptcy case, any "efforts made by the TCC to de-duplicate filed and unfiled Talc Claims" necessarily would arise solely in the context of attorney-client privileged and/or attorney work product-protected analysis.  The TCC also objects to this Interrogatory on the grounds that it is premature, insofar as the TCC was appointed only a month ago and continues to develop its contentions based on information discovered through the bankruptcy process and the ongoing analyses of its professionals and experts.  Subject to the foregoing general and specific objections, the TCC states that it has not made any nonprivileged efforts to de-duplicate filed and unfiled Talc Claims.

**Interrogatory No. 24**

Identify the basis for the assertion of common-interest protection for communications between the TCC and the United States Trustee.

**<u>Response to Interrogatory No. 24</u>**

The TCC incorporates its General Objections as if set forth fully herein.  The TCC objects to this Interrogatory on the grounds that it calls for a legal conclusion and beyond the scope of discovery permitted under Civil Rule 26(b)(1).  Subject to and without waiving the foregoing general and specific objections, the TCC directs LTL to the public filings made by the TCC and United States Trustee in this case and states that, as it has previously several times, there is no common interest agreement between the TCC and the United States Trustee.

Dated:  May 18, 2023

                    Respectfully submitted,

                    **GENOVA BURNS, LLC**

                    By:___*Daniel M. Stolz*_____
                    Daniel M. Stolz, Esq.
                    Donald W. Clarke, Esq.
                    110 Allen Road, Suite 304
                    Basking Ridge, NJ 07920
                    Telephone: (973) 533-0777
                    Facsimile: (973) 467-8126
                    Email: dstolz@genovaburns.com
                    Email: dclarke@genovaburns.com

                    *Proposed Local Counsel to the Official Committee
of Talc Claimants*