UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

PAUL HASTINGS LLP
Kristopher M. Hansen (*admitted pro hac vice*)
200 Park Avenue
New York, New York 10166
(212) 318-6400

-and-

Matthew M. Murphy (*admitted pro hac vice*)
Matthew Micheli (*admitted pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
(312) 499-6018

COLE SCHOTZ P.C.
Court Plaza North
25 Main Street, P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota (NJ Bar No. 014321986)
Warren A. Usatine (NJ Bar No. 025881985)
Seth Van Aalten *(admitted pro hac vice)*
Justin Alberto (*admitted pro hac vice*)
(201) 489-3000

PARKINS & RUBIO LLP
Lenard M. Parkins (*admitted pro hac vice*)
Charles M. Rubio (*admitted pro hac vice*)
700 Milam, Suite 1300
Houston, Texas 77002
(713) 715-1666

*Counsel to Ad Hoc Committee of Supporting Counsel*

In re:

LTL Management, LLC,[1]

                Debtor.

Case No. 23-12825 (MBK)

Chapter 11

Judge Michael B. Kaplan

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**DECLARATION OF MIKAL C. WATTS
IN SUPPORT OF OMNIBUS OBJECTION OF THE AD HOC COMMITTEE OF
SUPPORTING COUNSEL TO MOTIONS TO DISMISS**

I, Mikal C. Watts, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Named Partner and Founder of the law firm Watts Guerra, LLC ("Watts Guerra"). Watts Guerra is a member of the Ad Hoc Committee of Supporting Counsel (the "AHC of Supporting Counsel") pursuant to the *Verified Statement of Paul Hastings LLP, Cole Schotz P.C. and Parkins & Rubio LLP Pursuant to Bankruptcy Rule 2019* [ECF No. 470] filed in the above-captioned bankruptcy case (the "Chapter 11 Case") of the Debtor.

2. I submit this declaration (the "Declaration") in support of the *Omnibus Objection of the Ad Hoc Committee of Supporting Counsel to Motions to Dismiss*, filed contemporaneously herewith (the "Motion"). The statements in this Declaration are true to the best of my knowledge, information and belief after a reasonable inquiry under the circumstances. Neither Watts Guerra nor I am being compensated specifically for this testimony. If I were called upon to testify, I could and would competently testify to the facts and opinions set forth herein. I am authorized to submit this Declaration on behalf of the AHC of Supporting Counsel.

3. I have a Juris Doctor degree from the University of Texas School of Law. I am a licensed attorney admitted to practice in the states of Texas, Arkansas, and Oregon, the U.S. District Courts for the Southern, Eastern, Northern, and Western Districts of Texas, the Fifth Circuit Court of Appeals and the United States Supreme Court.

4. Since 1990, I have been in private practice and started my own law firm in April 1997. I have thirty-three years' experience representing clients across the country in complex and high profile mass tort litigation, as enumerated below:

    (a) Co-Lead Counsel in the Acetaminophen-ASD/ADHD Products Liability Litigation (MDL 3043), In re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation (MDL 2385) and in In Re: Stand 'N Seal (MDL 1804).

  (b) Counsel for over 16,000 victims of the 2017-18 northern California wildfires started by utility equipment of Pacific Gas & Electric; negotiated a global settlement via its bankruptcy plan of reorganization resulting in $13.5 billion paid to fire survivors via the Fire Victims Trust.

  (c) Lead trial counsel in the first Plaintiff bellwether verdicts in first Ford/Firestone tire lawsuit (see MDL 1373); the first Rezulin plaintiffs' verdict (see MDL 1348); the only plaintiffs' verdict in Sulzer hip implants (see MDL 1401); trial of first Baycol case (see MDL 1431); trial of first welding rods case during MDL 1525; trial of two bellwether cases during In re Vioxx (see MDL 1657); and the only Plaintiffs' verdict during In Re: Levaquin (see MDL 1943).

  (d) Lead settlement counsel for Texas' political subdivisions, working with the federal MDL in In re: National Prescription Opiate Litigation, MDL 2804 (S.D.N.Y.), which resulted in billions of dollars in settlements to help communities abate the opioid crisis

5. My law firm represents approximately 16,935 individuals who claim to suffer from mesothelioma, ovarian cancer, and other forms of gynecologic cancer as a result of their use of Johnson & Johnson talc products.

6. As experienced counsel in mass tort litigation, the constituent members of the AHC of Supporting Counsel and I appreciate and have witnessed first-hand the delay and inconsistency inherent in attempting to take thousands of such lawsuits to trial. Many clients of the AHC of Supporting Counsel members have already waited years to recover.

7. On behalf of those claimants, at or around the time the 2021 Chapter 11 Case was dismissed, I began discussions with Jim Murdica of Barnes & Thornburg LLP, counsel for Johnson & Johnson, regarding a potential bankruptcy settlement of the outstanding talc claims.

8. Specifically, together with other members of the AHC of Supporting Counsel, I conferred with the Debtor and other constituents to assess whether it would be possible to reach a fair and equitable resolution of *all* current and future talc exposure matters.

9. After a period of intense negotiation, the Debtor, Johnson & Johnson and all members of the AHC of Supporting Counsel, including myself, entered into Plan Support

Agreements ("PSA") pursuant to which such parties agreed to work together to finalize and seek confirmation of a plan of reorganization that would fund at least $8.9 billion net present value to a trust for the benefit of all talc-related claims.

10. If confirmed, such a plan would constitute the largest settlement in any asbestos bankruptcy case and one of the largest settlements of personal injury claims in U.S. history.

11. Through this process, the parties reached material terms on a settlement that I and the AHC of Supporting Counsel believe would not only compensate the AHC of Supporting Counsel's clients fairly given the harm they have suffered, but would do so on a timeline that will, contrary to the prospect of a decades-long litigation in the tort system, result in the swift payment to all talc claimants.

12. To that end, when negotiating the PSA's and proposed plan's terms, I, along with other members of the AHC of Supporting Counsel, insisted on terms that would require the Debtor to file a proposed plan by May 14, 2023, or as soon as thereafter was feasible. Consistent with its commitments in this regard, the Debtor submitted its proposed plan on May 15, 2023 with terms that were largely consistent with what we negotiated.

13. When appropriate to do so under the circumstances, and subject to reaching agreement on the final terms of the Proposed Plan, I intend to confer with my clients and recommend that they vote in favor of the Proposed Plan once final.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 26, 2023

/s/ *Mikal C. Watts*
Mikal C. Watts