**EXHIBIT 15**

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                       FOR THE DISTRICT OF NEW JERSEY

IN RE:                              .    Case No. 23-12825(MBK)
                                    .
                                    .    Clarkson S. Fisher U.S.
LTL MANAGEMENT LLC,                 .       Courthouse
                                    .    402 East State Street
                                    .    Trenton, NJ 08608
            Debtor.                 .
. . . . . . . . . . . . . . . . .   .
LTL MANAGEMENT LLC,                 .    Adv. No. 23-01092 (MBK)
                                    .
            Plaintiff,              .
                                    .
      v.                            .
                                    .
THOSE PARTIES LISTED ON             .
APPENDIX A TO COMPLAINT and         .
JOHN AND JANE DOES 1-1000,          .
                                    .    Tuesday, May 16, 2023
            Defendants.             .    10:01 a.m.
. . . . . . . . . . . . . . . . .
```

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE AND MOTION HEARING

BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES ON NEXT PAGE.

Audio Operator:                     Kiya Martin

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

Case 23-12825-MBK    Doc 614-16    Filed 05/26/23    Entered 05/26/23 23:11:45    Desc
Exhibit 15 to Declaration of Daniel J. Merrett    Page 3 of 5

41

1    I'm not aware of any other conflicts after that, but
2  I do know that there's a serious conflict with a witness during
3  that week.
4       THE COURT:  All right.  That's fair enough.  I would
5  hope you would meet and confer.  I will tell you that I could
6  block out time -- I know everybody wants to get to this sooner
7  than later, but there's a July 4th holiday, so I can't put that
8  the following week.  I can block out July -- the week of July
9  10th as well.
10       But given that there is no race between the plan and
11 disclosure statement as of yet, they are both proceeding in a
12 reasonable course, I did not see the need to jam in four dates
13 among two weeks in a scattered approach, which would still
14 impose time constraints and time pressures on the parties and
15 the Court.
16       So I'll wait to hear, but as of now, I'm prepared to
17 block out the 27th, that time period.  I can also block out the
18 week of the 10th.
19       MR. WINOGRAD:  Thank you, Your Honor.
20       THE COURT:  Mr. Sponder?
21       MR. SPONDER:  Good morning, Your Honor.  Jeff Sponder
22 from the Office of the United States Trustee.
23       Your Honor, the week of the 27th is a problem for the
24 United States Trustee.  Several of our attorneys, including
25 myself, have planned vacations that week, and I just wanted the

44

1  -- all of the arguments that will be presented as to whether or
2  not the debtor has pursued and filed the case in good faith, I
3  do want the parties to address one other issue briefing-wise.
4  And I'd rather give it to you now than to surprise you.
5       It was addressed in my opinion, it was addressed by
6  Judge Ambro toward the end of his opinion, but I'd like to
7  revisit it.  And it is whether or not -- because there are
8  different factual scenarios in this case -- whether or not
9  dismissal of a case -- well, strike that.  Whether or not under
10 1112(b)(2) this case should not be dismissed in the interest of
11 the bankruptcy estate and creditors, notwithstanding a
12 determination that there is cause under 1112(b)(1).
13      If this court -- and I understand Judge Ambro read
14 into or referenced the financial distress as a gating
15 requirement even for 1112(b)(2).  I read 1112(b)(2), and it
16 only comes about -- and there are certain criteria that have to
17 be met in 1112(b)(2), but there are -- I read it and it comes
18 about notwithstanding a finding of cause to dismiss under
19 1112(b)(1), cause being lack of good faith.
20      So I'm not sure how financial distress can be the
21 gating factor for 1112(b)(2).  I welcome the opportunity to be
22 educated by you all.  But rather than address it without the
23 benefit of your briefing, and under the facts scenario, I
24 brought it up even in my initial determination of -- my
25 decision with respect to the preliminary injunction.

Case 23-12825-MBK    Doc 614-16    Filed 05/26/23    Entered 05/26/23 23:11:45    Desc
Exhibit 15 to Declaration of Daniel J. Merrett    Page 5 of 5

74

1  filed late yesterday or last night.
2           First, I'd like to make sure parts of the record here
3  are very clear.  Johnson & Johnson, at least twice in its
4  reply, states, quote, The value of the prior funding agreement
5  was the amount of the liability minus the value of the debtor,
6  not $60 billion, and that did not change with the new
7  agreements.
8           Your Honor, this -- this also shows up in the
9  debtor's reply or objection.  This is tortured and misleading.
10 At the preliminary injunction trial on the 18th of April, and
11 among other places, page 66, line 18, through page 67, line 15,
12 Mr. Kim confirmed that J&J's total funding agreement exposure
13 went from $60 billion to $8.9 billion.
14          Also, both J&J and the debtor have refused to answer
15 questions about termination of the funding agreement.  For
16 example, Mr. Kim, at his deposition on April 14th, page 83,
17 line 1, through page 84, line 4 -- I'd just like to read this
18 into the record, Your Honor.  It will be brief.
19          "The parties to the funding agreement are LTL, right?
20          "Answer:  Yes.
21          "Question:  Johnson & Johnson Consumer, Inc., right?
22          "Answer:  Yes.  You're talking about the old --
23          "Question:  Yeah, the old funding agreement and
24 Johnson & Johnson, right?
25          "Answer:  Yes.