| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>Eric R. Goodman, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>egoodman@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>jmassey@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br><br>*Proposed Special Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG P.C.**<br>Melanie L. Cyganowski, Esq.<br>Richard G. Haddad, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>David A. Castleman, Esq.<br>mcyganowski@otterbourg.com<br>rhaddad@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>dcastleman@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 661-9100<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |

| | |
|---|---|
| In re:<br><br>**LTL MANAGEMENT LLC,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

**OFFICIAL COMMITTEE OF TALC CLAIMANTS' OBJECTION TO
J&J PARTIES' MOTION FOR ENTRY OF PROTECTIVE ORDER**

The Official Committee of Talc Claimants ("TCC") appointed in the above-captioned chapter 11 case, by and through its undersigned counsel, hereby submits this objection ("Objection") to the *J&J Parties' Motion for Entry of a Protective Order* (the "Motion") [Docket No. 597]. In support of this Objection, the TCC respectfully states as follows:

1. Despite being aware of this issue for some time now, on May 25, 2023, the Debtor first moved for a protective order seeking to bar discovery concerning the restructuring whereby New JJCI changed its name to Holdco in December 2022 and then transferred Holdco's "Consumer Business" — a cash generating asset that accounted for approximately half of Holdco's approximately $60 billion of value — in January 2023. That transfer apparently was in exchange for no consideration and left Holdco with only approximately $30 billion remaining in assets, all of which were in the form of minority foreign equity interests.

2. Of course, just two hours after this Court dismissed LTL 1.0, Holdco was named the sole obligor under the substitute 2023 Funding Agreement, which took the additional step of eliminating J&J's "ATM" backstop. And now, predictably, LTL argues that while $30 billion is

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2

still more than enough to enable LTL to meet its obligations under the 2023 Funding Agreement, for Holdco to meet its funding obligations, Holdco (not the Debtor) may need to sell foreign equity interests (which purportedly may have to be sold at a discount), borrow against its equity assets (which purportedly may be "uneconomic"), or access the billions in dividends (which are purportedly subject to "risks"). MTD Obj. at 37-39.

3.   In other words, while the 2021 Funding Agreement boasted a $60 billion cap backstopped by both New JJCI and J&J, the 2023 Funding Agreement provides only a $30 billion cap, payable only by Holdco, whose cash generating asset was just given away and, LTL asserts, may potentially have to take steps to generate cash to meet its obligations to the Debtor. Even assuming, *arguendo*, that were true (and on its face that still would not cause financial distress to the Debtor), that precise circumstance was orchestrated by J&J through the transfer of the Consumer Business, which therefore is directly relevant to good faith.

4.   Thus, in discussing good faith in its Preliminary Injunction Motion, the Court itself discussed this Consumer Business transfer. It recited the facts. Dkt. 94 at 6 ("While the appeals were pending, New JJCI-which had continued operations-changed its name to Johnson & Johnson Holdco (NA) Inc. ('Holdco') in December 2022. Kim Decl. 26, ECF No. 4 in Case No. 23-12825. Holdco is the direct parent of the Debtor. Id. at 27. In early January 2023, Holdco transferred its Consumer Business assets to its parent entity. Id. at 26."). And it went on, under the heading of "Good Faith" to state that "since the first filing, the Debtor's funding resources have been reduced from approximately $61 billion to potentially upwards of $30 billion. The Court acknowledges that the reduction certainly appears to be manufactured by the Debtor, Holdco, and J&J in direct response to the Third Circuit's ruling" (Dkt. 94 at 18). That reduction is directly due to the transfer of the Consumer Business.

3

5. The Debtor likewise has acknowledged its relevance. Time and time again, it has told this Court and the Third Circuit that its intent has been to provide creditors in "LTL's bankruptcy case" with access "up to the full value of New JJCI, ensuring that claimants were not separated from any value that would have been available absent the [Texas Two Step] restructuring. *In re LTL Mgmt. LLC*, Case No. 22-2003/22-2004 (3d Cir.), LTL Opp. (App. Dkt 104) at 3; *accord*, *e.g.*, *id*. at 28-29, LTL 1.0 MTD Obj. (Dkt. 956) at 12 ("the Debtor's ability to pay claims is supported by a Funding Agreement with both New JJCI and J&J, as joint obligors, for the full amount of the value of New JJCI"), 30 ("J&J is also a Payor under the Funding Agreement—up to the full JJCI Value—providing protection against any theoretical future diminishment of New JJCI's ability to pay Talc Claims"). That full value was, as LTL told the Courts, an "estimated $61 billion." App. Dkt. 104, at 3; *accord* 9/19/22 App.. Arg. Tr. 68:15-19 ("because of the funding agreement . . . because you get all of the good without the bad, ***you get the full value of the company*** not subject to any creditors or anything like that. ***It's free and clear up to $61 billion***, and then you get a backstop from J&J.). That has now changed substantially, apparently by design, due to the transfer of the Consumer Business. The TCC is entitled to learn (or confirm) how and why, including at this week's deposition of Adam Lissman of J&J.

6. The Debtor's and J&J's efforts to manufacture LTL financial distress fail on their face. But the TCC nonetheless is entitled to discovery on whether the renaming and transfer of Holdco's assets just weeks before the Third Circuit decision and less than three months before the dismissal of LTL 1.0 was intentionally orchestrated as part of that scheme to deprive creditors of access to $30 billion in value. The circumstances certainly suggest it was.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Respectfully submitted,

**GENOVA BURNS LLC**

Dated: May 28, 2023

By: */s/ Daniel M. Stolz*
    Daniel M. Stolz, Esq.
    Donald W. Clarke, Esq.
    110 Allen Road, Suite 304
    Basking Ridge, NJ 07920
    Tel: 973-467-2700
    Fax: 973-467-8126
    Email:   dstolz@genovaburns.com
               dclarke@genovaburns.com

*Proposed Local Counsel for the*
*Official Committee of Talc Claimants*