|  |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **LOWENSTEIN SANDLER LLP**<br>Kenneth A. Rosen, Esq.<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br>Telephone: (973) 597-2500<br>Email: krosen@lowenstein.com<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria, Esq.<br>Gregory Starner, Esq.<br>Joshua D. Weedman, Esq.<br>Samuel P. Hershey, Esq.<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email:  jessica.lauria@whitecase.com<br>          gstarner@whitecase.com<br>          jweedman@whitecase.com<br>          sam.hershey@whitecase.com<br><br>**WHITE & CASE LLP**<br>Matthew E. Linder, Esq.<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Email: mlinder@whitecase.com<br><br>*Co-Counsel to Johnson & Johnson and Johnson & Johnson Holdco (NA) Inc.* | |
| In re<br><br>LTL MANAGEMENT LLC,[1]<br><br>            Debtor. | Chapter 11<br><br>Case No. 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## J&J PARTIES' REPLY IN SUPPORT OF MOTION FOR ENTRY OF A PROTECTIVE ORDER

Johnson & Johnson ("J&J"), and Johnson & Johnson Holdco (NA) Inc. ("Holdco") (together, the "J&J Parties") hereby submit this reply in further support of its *Motion for Entry of a Protective Order* [Dkt. No. 597] (the "Motion") seeking entry of a protective order and in response to the Official Committee of Talc Claimants Objection to J&J Parties' Motion for Entry of Protective Order [Dkt. No. 624] (the "Objection"). In support of this Reply, the J&J Parties respectfully state as follows:

### REPLY

1. The Official Committee of Talc Claimants (the "TCC") contends it should be entitled to broad discovery regarding the Consumer Health Transactions[2] to determine if the transactions were undertaken to "deprive" creditors of access to billions in value. Objection at 4. But the TCC misconstrues the relevant standard and its arguments are legally and factually without merit. The dispositive inquiry involves the terms of the funding agreements which dictate LTL's recourse to any funding from the J&J Parties. The TCC has that information, and should not be permitted to engage in a harassing fishing expedition based on unsupported speculation seeking irrelevant documents and information from the J&J Parties and multiple third parties.

2. <u>First</u>, the TCC's reckless allegation that the J&J Parties engaged in a fraudulent conveyance to "manufacture" financial distress is not a basis for wide-ranging discovery regarding derivative fraudulent transfer claims the TCC has no basis or standing to assert. It is also factually without merit. The terms of the funding agreements have always dictated LTL's recourse to pay talc-related claims, both before and after the pending bankruptcy case was filed. The intent, purpose, and plain terms of those agreements were to resolve all current and future talc-related

---

[2] Capitalized terms shall have the meaning ascribed to them in the Motion unless otherwise defined.

claims through a successful bankruptcy and the J&J Parties' funding of a settlement trust. The TCC's contention that the substitution of the 2023 Funding Agreement after the purpose of the original financing arrangements was frustrated somehow stripped tens of billions of dollars in value from LTL is simply wrong. The TCC's allegation that LTL's creditors were previously entitled to receive $61 billion and were left with "only" $30 billion after LTL filed its second bankruptcy completely ignores that LTL's recourse under the funding agreements has an express cap of the amount of its aggregate liability for talc-related claims, which under any rational analysis is less than either amount. There can be no dispute that the terms of the funding agreements ultimately dictate LTL's recourse to any funding from the J&J Parties. And there is no dispute that the 2023 Funding Agreement replaced the 2021 Funding Agreement. The terms of the agreements are clear in terms of determining what (and when) assets are or were available to LTL to fund talc liabilities, and there is no basis or need for discovery regarding the assets of the consumer business that are now part of an independent company.

3.      <u>Second</u>, the TCC does not (and cannot) dispute the evidence demonstrating that the Consumer Health Transactions are completely separate from—and were planned long before—LTL's bankruptcy filings. Motion at 7-8. Indeed, the uncontroverted evidence was that Consumer Health Transaction was being considered for years before LTL's first bankruptcy and was entirely separate and distinct from LTL's bankruptcy. Motion at 6-7. Nor does the TCC dispute that the consumer business assets previously held by Holdco were transferred at a point in time when the 2021 Funding Agreement was in place months before LTL's second bankruptcy filing and before the Third Circuit even issued its decision dismissing LTL's first bankruptcy case on January 30, 2023.

4. <u>Third</u>, the TCC's attempt to ignore or twist the proper inquiry is also without merit. The relevant question on the pending motions to dismiss is whether LTL filed its bankruptcy petition in good faith, and more specifically, whether LTL was in financial distress when it filed its chapter 11 petition. Motion at 9-10. Thus, as a matter of law, the only issue that is pertinent for determining "bad faith" is the debtor's status at the time of the filing. *Id*. at 10-11 (citing *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC),* 64 F.4th 84, 106 (3d Cir. 2023)). Accordingly, the only Holdco assets that have any bearing on the applicable Third Circuit test under the terms of the applicable financing agreements are those that Holdco held at the time LTL filed for bankruptcy. The TCC does not dispute it has been provided discovery regarding the 2023 Funding Agreement and Holdco's assets as of the filing date of this case. The Consumer Health Transactions—which involved a long-planned transfer of the consumer health business from Holdco months before LTL commenced this bankruptcy case—simply have no relevance to the Debtor's financial distress at the time it filed for bankruptcy.

5. <u>Fourth</u>, the TCC's argument is also internally inconsistent. The TCC cannot credibly argue that the Debtor was not in financial distress, but at the same time assert that the transactions undertaken in connection with the Debtor's filing this Chapter 11 case somehow constituted a fraudulent transfer. As explained in the *Debtor's Omnibus Objection to Motions to Dismiss Chapter 11 Cases* [Dkt. No. 614] and as will be further demonstrated at the hearing, the Debtor was not insolvent at the time of the filing and the transactions were effectuated to achieve the purpose of the original financing arrangements, which was to pursue an equitable and efficient bankruptcy resolution of all current and future talc claims for the benefit of LTL's creditors.

## CONCLUSION

6.      This Court should enter the requested protective order and bar the TCC from seeking wide-ranging discovery regarding corporate transactions that are not relevant to the motions to dismiss and intended only to improperly adjudicate putative fraudulent transfer claims the TCC has no basis or standing to assert.

[*Remainder of page intentionally left blank.*]

Dated: May 29, 2023

Respectfully submitted,

/s/ *Kenneth A. Rosen*

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Email: krosen@lowenstein.com

*Co-Counsel to Johnson & Johnson and Johnson & Johnson Holdco (NA) Inc.*

**WHITE & CASE LLP**
Jessica C. Lauria, Esq.
Gregory Starner, Esq.
Joshua D. Weedman, Esq.
Samuel P. Hershey, Esq.
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email:  jessica.lauria@whitecase.com
        gstarner@whitecase.com
        jweedman@whitecase.com
        sam.hershey@whitecase.com

**WHITE & CASE LLP**
Matthew E. Linder, Esq.
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mlinder@whitecase.com

*Co-Counsel to Johnson & Johnson and Johnson & Johnson Holdco (NA) Inc.*