**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920trustee<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official Committee of Talc Claimants* |
| In re:<br><br>**LTL MANAGEMENT LLC**,[1]<br><br>                    Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**TCC'S OPPOSITION TO THE DEBTOR'S OMNIBUS MOTION TO COMPEL
IDENTIFIED PLAINTIFF FIRMS TO SUPPLEMENT CERTAIN RESPONSES TO
DEBTOR'S INTERROGATORIES AND REQUESTS FOR PRODUCTION AND
OBJECTION TO THE DEBTOR'S RELATED APPLICATION TO SHORTEN TIME**

The Official Committee of Talc Claimants ("TCC") in the above-captioned case, by and through its proposed counsel, respectfully submits this opposition to the *Debtor's Omnibus Motion to Compel Identified Plaintiff Firms to Supplement Certain Responses to Debtor's Interrogatories and Requests for Production* ("Motion to Compel") (Dkt. 638) and *Application to Shorten Time* (Dkt. 639) ("Motion to Shorten Time", and, collectively, the "Motion"). In support of this Opposition and Objection, the TCC respectfully states as follows:

1.      Without prejudice to any objections that might be filed by the target law firms, the TCC independently requests that the Motion be summarily denied.

2.      At 11:20 p.m. on the night of May 30, 2023, the Debtor filed a new Motion to Compel and requested a hearing on it for just two days later. Yet the Motion could have been filed weeks ago. The Motion seeks discovery from nine plaintiffs' law firms. Under the agreed upon pre-hearing schedule, adherence to which is critical given the expedited nature of the Motions to Dismiss, initial discovery requests were to be served by May 8. The Debtor received responses and objections to the requests at issue between May 15 and May 17. Yet it waited two weeks until the night of May 30 to file this Motion. Given the expedited circumstances of the Motions to Dismiss, that alone warrants denial. But it gets worse.

3.      The timing the Debtor chose to make its belated Motion just happens to be dead smack in the middle of the week of depositions, which have been double and sometimes even triple tracked (there were three depositions and a hearing yesterday alone) and as to which nearly all of the witnesses are LTL's or J&J's. Thus, while the TCC and other counsel are knee deep in

preparing to take and taking depositions, the Debtor filed its Motion late at night and requested that the hearing take place just two days later.  And still there is more.

4.      Further emblematic of the continual gamesmanship being employed by the Debtor, counsel conspicuously failed to mention this Motion at yesterday's Hearing, despite the fact that it indisputably knew at the time that it would be filing it hours later (and almost certainly had it largely drafted already).  Specifically, when counsel for the TCC raised the Debtor's first pending motion to compel as an agenda item during yesterday's Hearing, the Debtor responded that — despite the Debtor having rushed to complete briefing on the motion by filing a reply the day before — it was not prepared to go forward with that motion yesterday.  5/30/23 Hr'g Tr. 58:24-59:2.  It did not so much as even mention its impending new Motion to Compel.  Counsel for TCC agreed to hearing the first motion on June 2.  But what became apparent hours later, is that the actual reason for the delay was to enable the Debtor to get its next Motion on file before a ruling on the pending one was rendered.  The lack of transparency is astounding.

5.      Finally, the very first swath of discovery the Debtor seeks to compel — discovery of unfiled claims held by clients of non-AHC law firms (Mot. at 3) — is discovery that the Court declined to order just hours before the Motion was filed and instead, after questioning its relevance, suggested should be addressed *after* the Motion to Dismiss, if the case survives.  5/30/23 Hr'g Tr. 18:22-25 (questioning relevance), 39:11-25 (" . . . it's going to be done without prejudice to the ad hoc, the debtor, or any other party in interest requesting, *if the case goes forward, beyond the motion to dismiss, as part of the plan process*, that there be an undertaking similar with respect to any claimants for which there are joint representation.") (emphasis added).

6.      This type of (ongoing) gamesmanship, arguably sanctionable, should not be countenanced.  For all the reasons stated above, the Motion should be summarily denied and sanctions should be imposed.

7.      The Motion likewise fails on its merits.  The Debtor first requests a list of unfiled claims from only certain plaintiffs law firms.  As noted above, the Court has questioned the relevance of this information and suggested it should be addressed *after* the Motion to Dismiss, if the case survives.  5/30/23 Hr'g Tr. 18:22-25, 39:11-25.  Again revisiting a prior ruling, the Debtor makes this request under the guise of seeking information on the total claim pool to enable calculation of total talc liability.  Mot. at 3.  But there are well over a hundred law firms representing talc claimants.  Yet LTL chose to focus only on ten (in addition to the 15 on the AHC).  Mot. at 2, 3 n.3.  The Debtor's actions alone betray its purported relevance argument.  The Court should reject that argument (again).

8.      Moreover, the AHC apparently itself has not even disclosed all of its unfiled claims.  According to Mr. Nachawati, he does not believe he included mesothelioma claims on his list for the 2019 Statement or the PSAs.  Nachawati Dep. Tr. 221:23-222:16, 224:14-19.  That is because he believes the PSA is just "an agreement to agree" (*id*. 154:21-155:9) — a vehicle to facilitate "coming to a plan that [firms] could support and recommend to the appropriate clients that they represent" (*id*. 153:15-21).  But the "Devil is in the details" (*id*. 154:21-155:9) and there are still "issues to work through" (*id.* 153:15-154:2).  Indeed, an agreement may never be reached because there are so many details to work through in this "complex" case, and "anything can happen."  *Id*. 158:7-11, 172:23-173:14.  Counsel for the Law Firm AHC confirmed as much at the Hearing yesterday:  "Sure, the debtor has a plan on file.  As I said at the last hearing, we don't necessarily agree with everything that's in it, and we're hard at work with the debtors to try to have an amended

4

plan filed that we do agree with." 5/30/23 Hr'g Tr. 25:14-18.  Among the issues is that a proposed

plan may not be "appropriate" for all clients of a particular firm.  Nachawati Dep. Tr. 153:15-21,

212:4-8, 213:15-18.  Thus, what may be right for ovarian cancer claimants may not be right for

mesothelioma claimants.  *Id*. 221:23-222:16.  As a result, Mr. Nachawati's firm did not include

mesothelioma claimants on their claimant lists (filed or unfiled).  *Id*. 221:23-222:16, 224:14-19.

9.      In addition, until the point at which a claim is filed, a lawyer's view of whether

allegations by his client constitute a claim and constitute a claim worthy of filing are plainly

privileged and otherwise protected.  Indeed, those considerations may not even have been made

yet, and they certainly have not been subjected yet to the safeguards of Rule 11.  The fact that the

Law Firm AHC and PSA signatories decided affirmatively and voluntarily to provide such lists

for filing with the court (for their own self-interests) has no bearing on the obligations of other

lawyers to disclose any such information.  The same is true as to any firms that chose to respond

to the question in response to discovery.  As an initial matter, those law firms did not sign PSAs

with, and provide claimant lists to, J&J.  Nor did they engage separate counsel to move to intervene

on *their* behalf.  In any event, their decisions have no bearing the privilege, work product or

determinations of any other firm.  Even the heading in the Motion — requesting "disclosure of the

number of unfiled talc claims that *could be* asserted" — on its face leaves no room for doubt that

the information sought is privileged.

10.     The remaining two requests are likewise meritless.  The Debtor already has

received non-privileged answers (to interrogatories and in depositions) as to the factual basis for

statements that the $8.9 billion proposed distribution is inadequate to compensate victims.  It just

does not like the answers.  It is not entitled to any more.  As for documents concerning the Debtor's

financial distress, the Debtor appears to have been provided with any responsive non-privileged

documents that may exist.  Its request again amounts to an apparent request for a privilege log, which is both ironic and unwarranted.  *See* Obj. to Motion to Compel I (Dkt. 625) ¶¶ 3-4.

## CONCLUSION

For foregoing reasons, the Motion should be denied and appropriate sanctions imposed.

Dated:  June 1, 2023

Respectfully submitted,

**GENOVA BURNS, LLC**

By:___*Daniel M. Stolz*_____
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Facsimile: (973) 467-8126
Email: dstolz@genovaburns.com
Email: dclarke@genovaburns.com

*Proposed Local Counsel to the Official Committee of Talc Claimants*