| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** | |
| **GENOVA BURNS LLC** <br> Daniel M. Stolz, Esq. <br> Donald W. Clarke, Esq. <br> Gregory S. Kinoian, Esq. <br> dstolz@genovaburns.com <br> dclarke@genovaburns.com <br> gkinoian@genovaburns.com <br> 110 Allen Road, Suite 304 <br> Basking Ridge, NJ 07920 <br> Tel: (973) 467-2700 <br> Fax: (973) 467-8126 <br> *Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP** <br> David J. Molton, Esq. <br> Michael S. Winograd, Esq. <br> dmolton@brownrudnick.com <br> mwinograd@brownrudnick.com <br> Seven Times Square <br> New York, NY 10036 <br> Tel: (212) 209-4800 <br> Fax: (212) 209-4801 <br> <br> Jeffrey L. Jonas, Esq. <br> Sunni P. Beville, Esq. <br> Eric R. Goodman, Esq. <br> jjonas@brownrudnick.com <br> sbeville@brownrudnick.com <br> egoodman@brownrudnick.com <br> One Financial Center <br> Boston, MA 02111 <br> Tel: (617) 856-8200 <br> Fax: (617) 856-8201 <br> *Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **MASSEY & GAIL LLP** <br> Jonathan S. Massey, Esq. <br> Rachel S. Morse, Esq. <br> jmassey@masseygail.com <br> rmorse@masseygail.com <br> 1000 Maine Ave. SW, Suite 450 <br> Washington, DC 20024 <br> Tel: (202) 652-4511 <br> Fax: (312) 379-0467 <br> *Proposed Special Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG PC** <br> Melanie L. Cyganowski, Esq. <br> Richard G. Haddad, Esq. <br> Adam C. Silverstein, Esq. <br> Jennifer S. Feeney, Esq. <br> David A. Castleman, Esq. <br> mcyganowski@otterbourg.com <br> rhaddad@otterbourg.com <br> asilverstein@otterbourg.com <br> jfeeney@otterbourg.com <br> dcastleman@otterbourg.com <br> 230 Park Avenue <br> New York, NY 10169 <br> Tel: (212) 905-3628 <br> Fax: (212) 682-6104 <br> *Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| In re: <br> <br> **LTL MANAGEMENT LLC,**[1] <br> <br>                 Debtor. | Chapter 11 <br> <br> Case No.: 23-12825 (MBK) <br> <br> Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**APPLICATION IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS TO (A) COMPEL DEPOSITION TESTIMONY OF ADAM PULASKI, (B) AUTHORIZE SUBSTITUTED SERVICE OF A SUBPOENA ON MR. PULASKI, AND (C) GRANT OTHER RELATED RELIEF**

The Official Committee of Talc Claimants (the "TCC"), by and through its proposed undersigned counsel, hereby moves, on an expedited basis, pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rules 7026 and 9014(c) of the Federal Rules of Bankruptcy Procedure, for the entry of an order, substantially in the form submitted herewith, (a) directing Adam Pulaski to sit and be deposed on or before June 14, 2023 and provide testimony under oath regarding the matters raised in the application in support of this motion and related matters, (b) authorizing substituted service of a subpoena on Mr. Pulaski, and (c) granting such other relief that is just and proper (the "Motion"). In support hereof, the TCC respectfully states as follows:

1. Adam Pulaski is an attorney at Pulaski Kherkher, PLLC ("Pulaski Kherkher") located in Houston Texas. Pulaski Kherkher is a member of the Ad Hoc Committee of Supporting Law Firms (the "AHC"), the fees and expenses of which LTL Management LLC ("LTL" or the "Debtor") has requested authority to pay in this Action [Dkt. 575-1]. Pulaski Kherkher purports to represent several thousand individuals with "talc claims" against Johnson & Johnson ("J&J") and the Debtor, and has pledged—without any fiduciary exception of which the TCC is aware—to recommend to its clients that they support the Debtor's proposed Plan. The Debtor and J&J have repeatedly touted the purported support of alleged claimants like those represented by Mr. Pulaski as evidence of the confirmability of its proposed Plan—solely on the basis of signed statements of counsel (like Mr. Pulaski) promising to recommend such support.

2. Yet, when counsel for the TCC asked Mr. Pulaski basic and straightforward questions to establish the actual circumstances of that support and the nature and quality of the

2

purported claims underlying it, Mr. Pulaski hid behind the attorney-client privilege. Mr. Pulaski was deposed for two hours on the morning of Saturday April 15, 2023 (a limit of his insistence) in connection with the preliminary injunction in the adversary proceeding related to this bankruptcy case (the "April 15 Deposition"). A redacted version of that transcript of that deposition is attached as Exhibit 1. As can be seen from that transcript, Mr. Pulaski was instructed over 70 times not to answer questions, in just the two hours to which he limited the deposition.

3. And now Mr. Pulaski refuses to sit for any additional deposition, even as he apparently expects the Ad Hoc Committee purporting to represent his interests be reimbursed by the Debtor in this Case [Dkt. 575-1, at 5]. On May 23, counsel for the TCC first asked Mr. Pulaski's counsel (who insisted that all communications go through him) for a deposition date, and his counsel refused to provide one.[2] On May 28, counsel for the TCC then asked Mr. Pulaski's counsel to accept service of a subpoena[3] under Bankruptcy Rule 9016 (incorporating Fed. R. Civ. P. 45), and on May 30 his counsel refused.[4] The TCC then attempted to serve Mr. Pulaski personally on May 30, May 31, and June 1, but repeated attempts failed, due, seemingly, to Mr. Pulaski's evasion.[5] On May 31, Mr. Pulaski's counsel confirmed that Mr. Pulaski was in fact refusing to sit for a deposition.[6]

4. At this point, the Court's assistance is necessary. Mr. Pulaski is an attorney and an officer of the court who appeared as counsel in at least one deposition taken in this case (the deposition of Mr. Murdica on April 16, 2013). He has counsel who has notice of the subpoena. The TCC respectfully requests that the Court (a) authorize the TCC to employ substituted service,

---

[2] See Ex. 2 attached hereto (email from J. Black dated May 23, 2023).
[3] See Ex. 3 attached hereto (deposition subpoena to Mr. Pulaski).
[4] See Ex. 4 attached hereto (email from J. Black dated May 30, 2023).
[5] See Ex. 5 attached hereto (Affidavit of Attempted Service).
[6] See Ex. 6 attached hereto (email from J. Black dated May 31, 2023).

3

to serve Mr. Pulaski at his last known office and home addresses via Federal Express, with an email copy to him and his attorney, and (b) compel Mr. Pulaski to appear for a remote deposition on or before June 14, 2023. Courts in this district have allowed substituted service, so long as the subpoenaed party receives actual notice. *See New Jersey Bldg. Laborers Statewide Ben. Funds & Trustees Thereof v. Torchio Bros.*, No. CIV A 08-552, 2009 WL 368364, at *2 (D.N.J. Feb. 11, 2009) ("Certified mail serves the same purpose as Rule 45(b) which is to 'mandate effective notice to the subpoenaed party, rather than slavishly adhere to one particular type of service.'"). If granted, the relief sought in this application would provide Mr. Pulaski with actual notice.

5.  Courts in this Circuit are clear that the attorney-client privilege cannot be used as a sword and a shield. As one court explained: "A party cannot make factual assertions based on a supposedly privileged document, and then deny its adversary an opportunity to uncover the foundation for those assertions in order to contradict them." *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303, 311 (E.D. Pa. 2007); *see also EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 50 (D.N.J. 2021) ("The attorney-client privilege, however, cannot be used as a shield and a sword to the detriment of another party.").

6.  During the short April 15 Deposition, Mr. Pulaski refused to answer questions more than seventy times on the basis of privilege, so much so that the Court reporter needed four pages just to index the instructions not to answer (Pulaski Tr. at 8:3-11:8). For example, Mr. Pulaski refused to answer several questions concerning the Plan Support Agreement *that he signed*, including what he intended to convey with that signature:

| Plan Support Agreement Questions ||
| Page/Line | Question |
| --- | --- |
| 57:7-8 | Is the Plan Support Agreement binding or illusory? |
| 57:12-13 | Do you consider the Plan Support Agreement to be binding? |
| 57:17-19 | When you signed your name to the Plan Support Agreement, what were you intending to convey? |

4

7.  Mr. Pulaski refused to answer basic, largely yes or no, questions on the compensation that would be paid to his clients under the term sheet attached to the Plan Support Agreement:

| Plan Support Agreement Questions | |
|---|---|
| **Page/Line** | **Question** |
| 44:21-23 | And what did you do to conclude that the women with ovarian cancer are going to get fair compensation? |
| 45:11-13 | Do you know how much money any of your clients will get from the proposed settlement? |
| 71:1-3 | Have you made a calculation of what your clients, nay of your clients, potentially get under the term sheet? |

8.  Mr. Pulaski refused to answer yes or no questions regarding the medical conditions that his 6,000 current talc claimants purportedly have:

| Plan Support Agreement Questions | |
|---|---|
| **Page/Line** | **Question** |
| 19:19-21 | Does your firm have medical records with respect to all 6,000 of your clients? |
| 22:6-8 | Prior to April 4, 2023, did you personally take any steps to verify the medical condition of your 6,000 talc clients? |
| 100:20-22 | Mr. Pulaski, do you have a definition of what you would call a talc claimant for a case against J&J or LTL? |
| 105:13-16 | Do you know whether or not there's a difference between different types of ovarian cancer and the relationship to talc use? |

9.  Mr. Pulaski refused to answer even yes or no questions as to whether his 6,000 clients even support global resolution on the terms dictated by J&J and LTL, or even if those clients are aware of those terms:

| Plan Support Agreement Questions | |
|---|---|
| **Page/Line** | **Question** |
| 40:17-18 | Did you send the term sheet to your clients? |
| 42:9-11 | Between mid-March 2023 and April 4, 2023, did you speak with any of your talc clients, yes or no? |

5

10. The questions he refused to answer are not subject to privilege, yet go to the heart of the Debtor's principal argument on the motions to dismiss that LTL's proposed plan has overwhelming support.

11. The TCC did not sign the Plan Support Agreement; and the TCC did not use the Plan Support Agreements as its central argument to avoid dismissal. It is Mr. Pulaski who signed the Plan Support Agreement, it is Mr. Pulaski who is a member of the Ad Hoc Committee the participation of which in this case is being sought to be paid for by the Debtor; and it is the Debtor who intends to use Mr. Pulaski's support as evidence in its case to avoid dismissal. The Debtor and Mr. Pulaski have put the Plan Support Agreement and the value and circumstances of Mr. Pulaski's clients' claims at issue in this case, and they cannot now hide behind privilege on matters they put at issue.

## **CONCLUSION**

12. The TCC therefore respectfully requests that the Court grant the Motion, authorize the use of substituted service, and order the deposition testimony of Adam Pulaski on the terms set forth herein, and grant such other and further relief as is just and equitable under the circumstances.

Dated: June 2, 2023

Respectfully submitted,

**GENOVA BURNS, LLC**

By: /s/ *Daniel M. Stolz*
    Daniel M. Stolz, Esq.
    Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Facsimile: (973) 467-8126
Email: dstolz@genovaburns.com
Email: dclarke@genovaburns.com

*Proposed Local Counsel to the Official Committee of Talc Claimants*