| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br><br>*Proposed Local Counsel for the*<br>*Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Jeffrey L. Jonas, Esq.<br>Michael S. Winograd, Esq.<br>Eric R. Goodman, Esq.<br>Susan Sieger-Grimm, Esq.<br>dmolton@brownrudnick.com<br>jjonas@brownrudnick.com<br>mwinograd@brownrudnick.com<br>egoodman@brownrudnick.com<br>ssieger-grimm@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Sunni P. Beville, Esq.<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>*Proposed Co-Counsel for the*<br>*Official Committee of Talc Claimants* |
| **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br><br>*Proposed Special Counsel for the*<br>*Official Committee of Talc Claimants* | **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br><br>*Proposed Co-Counsel for the*<br>*Official Committee of Talc Claimants* |

| | |
|---|---|
| In Re:<br><br>**LTL MANAGEMENT, LLC,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

**OBJECTION OF THE OFFICIAL COMMITTEE
OF TALC CLAIMANTS TO DEBTOR'S MOTION FOR
AUTHORITY TO ENTER INTO AN EXPENSE REIMBURSEMENT
AGREEMENT WITH AD HOC COMMITTEE OF SUPPORTING COUNSEL**

The Official Committee of Talc Claimants (the "TCC"), by and through its undersigned proposed counsel, submits its Objection (the "Objection") to the *Debtor's Motion for an Order Authorizing It to Enter into an Expense Reimbursement Agreement with Ad Hoc Committee of Supporting Counsel* [Dkt. 575] (the "Motion"). In support of the Objection, the TCC respectfully states as follows:

**INTRODUCTION**

1. Foremost, the Motion is premature. There are currently multiple motions to dismiss this case pending, which, if granted by this Court or on appeal, will render the stated rationale for the Debtor to pay the fees and expenses of the Ad Hoc Committee of Supporting Counsel (the "AHC of Supporting Counsel") moot. The Motion should be denied without prejudice until it is clear that this case will continue.

2. Moreover, the Motion own purported rationale undermines its logic and compels its denial. The Debtor states in the Motion that it negotiated a post-petition expense reimbursement agreement to pay certain fees and expenses (the "Reimbursement Agreement") of the AHC of Supporting Counsel "to facilitate a successful resolution of this Chapter 11 Case and ensure that

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2

all parties are adequately represented in this case, including claimants who represent a majority of the Debtor's claimants and whose counsel support the Chapter 11 Case and the Adversary Proceeding." Motion at ¶ 10.

3. In other words, the Debtor proposed an agreement to pay the expenses and attorneys' fees of law firms willing to recommend that their clients support the Debtor's plan over any other plan. But such payment of the AHC of Supporting Counsel's expenses and fees was and remains unnecessary to secure the support of the AHC of Supporting Counsel. Nor is the payment of such expenses and fees necessary to secure the support of any actual talc claimants.

4. The Debtor apparently does not believe it is necessary to pay the fees and expenses of the Ad Hoc Group of Mesothelioma Claimants, the Ad Hoc Committee of States Holding Consumer Protection Claims, or any of the non-supporting constituents in order to "ensure that all parties are adequately represented in this case."

5. In accordance with the terms of the plan support agreement ("PSA"), the members of the AHC of Supporting Counsel have already bound themselves, *inter alia*, to (i) oppose any effort to terminate the Debtor's exclusive right to file and solicit votes in favor of its plan, (ii) oppose any non-Debtor plan, and (iii) recommend that their clients vote in favor of a Debtor Chapter 11 plan (the "LTL Plan") that includes terms set forth in the term sheet attached to the PSA as Exhibit B (the "Term Sheet"). Of note is the fact that the PSA, by its terms, does not provide a "fiduciary out" for any of the supporting law firms to urge their clients to support a competing plan of reorganization which offers a greater recovery for their clients and similarly situated creditors of the Debtor's estate.

6. Neither the PSA nor the Term Sheet obligates the Debtor to pay the fees and expenses of signatories to the PSA. Simply put, the Reimbursement Agreement is not necessary

3

to secure the support of the AHC of Supporting Counsel.  If a law firm that signed a PSA fails to recommend that their clients vote in favor of the LTL Plan on the grounds that the Debtor is not reimbursing that firm for its expenses or attorneys' fees and expenses, that firm would be in breach of the PSA.  Neither the PSA nor the Term Sheet makes the Debtor's payment of such fees a condition to their support of the LTL Plan.

7.     Further, none of the members of the AHC of Supporting Counsel are claimants. All of the members of the AHC of Supporting Counsel are law firms that are well-versed in representing their clients' interests and are already representing what the Debtor and the AHC of Supporting Counsel claim to be a "majority" of talc claimants (which the TCC disputes).  Contrary to the Debtor's assertion, payment of the member firms' expenses, as well as payment of the fees and out-of-pocket expenses of professionals that are currently retained or will be retained by the AHC of Supporting Counsel, is not necessary to ensure that "all parties in this case are adequately represented."  Motion at ¶ 10.

8.     Further, the type of talc claims that the AHC of Supporting Counsel purports to represent remains unknown.  The vast majority of the talc claimants that the AHC of Supporting Counsel represents may hold talc claims for gynecological cancers that would be non-compensable based on Judge Wolfson's Daubert decision regarding the scientific bases for linking ovarian cancer with talcum powder.  *See In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Litigation*, 509 F. Supp. 3d 116, 181 (D. N.J. Apr. 27, 2020).[2]

9.     J&J asserts that its talc products do not cause cancer.  This is the reason why the

---

[2] The *Daubert* briefing in the MDL proceeding focused on ovarian cancer in particular.  Plaintiffs' experts specifically limited their opinions to epithelial ovarian cancer, which added strength to their scientific conclusions. J&J did not substantively discuss non-ovarian gynecological cancers, except to assert that talc "does not" cause "vaginal, cervical, [or] endometrial cancer."  *Defendants' Memorandum of Law in Support of Motion to Exclude Plaintiffs' Experts' General Causation Opinions*, No. 3:16-md-02738-FLW, Doc. 9736, at 88 (D.N.J.).

LTL Plan essentially pays all talc claimants nuisance value. The LTL Plan uses a classic "bait and switch" scheme whereby talc claimants are awarded "points"—not dollars—for their talc claims. The value of each "point" will depend on, among other things, the total universe of talc claims, which is presently unknown. Neither J&J nor LTL has provided any guarantee that a "point" will be worth a dollar, a quarter, or even a nickel. Under the LTL Plan, each point may be worth a dime, meaning that most talc claimants will recover less than $10,000 over the next 25 years—an amount that perfectly accords with J&J's view that none of its talc products cause cancer.

10. Serious questions remain as to how non-ovarian gynecological claims should be classified, whether the holders of such claims should be entitled to vote, and, if they are entitled to vote, how much weight should be accorded to their votes relative to holders of mesothelioma claims and ovarian cancer claims that are scientifically linked to J&J's toxic products.

11. The claimants represented by the members of the AHC of Supporting Counsel may constitute a "majority" of gynecological talc claims—*i.e.*, non-ovarian cancer and non-Mesothelioma. But such a "majority"—if such a term is appropriate—could not deliver the confirmation of LTL's plan since such claims could not deliver the "two-thirds in amount" required under section 1126(c). The AHC of Supporting Counsel's inability to deliver the votes needed to confirm the LTL Plan would be the antithesis of a "substantial contribution." The possibility of this occurring is reason enough to defer consideration of the Motion until later in this case.

12. Unlike the members of the TCC, each of whom was duly appointed by the United States Trustee and has a fiduciary duty to represent the interests of *all* talc claimants, the members of the AHC of Supporting Counsel are law firms that represent an undefined universe of claimants and that have already contractually bound themselves to support the LTL Plan no matter how

5

poorly their clients will be treated under such plan. Such circumstances hardly warrant the reimbursement of professional fees and expenses sought by the Motion.

## BACKGROUND

13. On October 14, 2021, the Debtor first filed a voluntary petition for Chapter 11 relief in the Western District of North Carolina (the "First Chapter 11 Case"). On November 16, 2021, the North Carolina Bankruptcy Court transferred venue of the first case to the District of New Jersey. On January 30, 2023, a panel of the Third Circuit, in a precedential opinion, found that LTL's bankruptcy was not filed in good faith. *In re LTL Mgmt. LLC*, 64 F.4th 84 (3d Cir. 2023).

14. On March 22, 2023, with no reported dissents, the Third Circuit rejected a petition for *en banc* review, and on March 31, 2023, the Third Circuit issued an order that incorporated its January 30 opinion and certified the opinion as the mandate to this Court. On April 4, 2023, in compliance with the Third Circuit's directive, this Court dismissed the First Chapter 11 Case.

15. After the appeal of this Court's denial of the motions to dismiss the First Chapter 11 Case was argued before the Court of Appeals for the Third Circuit, but prior to the filing of the current case, most members of the AHC of Supporting Counsel entered into the PSA, which obligated them to support the LTL Plan "in connection with the [First Chapter 11 Case] or, if that case is dismissed, a subsequent bankruptcy case."

16. Just over two hours after its first Chapter 11 case was dismissed, LTL filed a second voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the District of New Jersey. The Debtor's professed intent is to use the protections of the Bankruptcy Code to fully and permanently resolve all current and future talc-related claims against LTL and its non-debtor corporate affiliates, including Johnson & Johnson.

6

17. However, as the AHC of Supporting Counsel stated in its *Motion of Ad Hoc Committee of Supporting Counsel to Intervene* [AP Docket No. 104] (the "Motion to Intervene"), the Debtor's primary interest is to reach a resolution through bankruptcy while "***paying as little as possible to do so***." Motion to Intervene at 11 (emphasis supplied).

18. On April 14, 2023, the United States Trustee for Region 3 filed the Notice of Appointment of Official Committee of Talc Claimants [Dkt. 162]. The TCC represents the interests of ***all*** talc claimants in this case, a duty that all of the appointed members of the TCC have taken very seriously at all times throughout this case and the First Chapter 11 Case.

## OBJECTION

19. The proposed expense reimbursement of the AHC of Supporting Counsel is not justified at this time under any legal standard. Parties-in-interest in bankruptcy cases, such as the members of the AHC of Supporting Counsel, generally bear their own fees. *See, e.g., Katchen v. Neumann*, No. 3:20-CV-06333-FLW, 2021 WL 1625100, at *3 (D.N.J. Apr. 27, 2021), *aff'd sub nom. In re Am. Ctr. for Civ. Just., Inc.*, No. 22-1016, 2022 WL 17884119 (3d Cir. Dec. 23, 2022).

20. LTL relies on section 363(b) to override this rule. Under LTL's logic, reimbursing the AHC of Supporting Counsel so that they will continue to support the LTL Plan is an appropriate use of estate property outside of the ordinary course of business. *See* Motion at ¶¶ 14-22.

21. This issue recently arose in *In re Boy Scouts of America & Delaware BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del.). In the Boy Scouts' case, the debtors moved for approval of a restructuring support agreement with, among other parties, an ad hoc group of creditors holding sexual abuse claims against the debtors. *See* BSA Dkt. No. 5466. This ad hoc group was comprised of actual claimants who filed proofs of claim asserting abuse claims against the Boy

7

Scouts. The law firms associated with this ad hoc group represented approximately 75% of the tort claimants who ultimately voted in favor of the debtors' chapter 11 plan of reorganization.

22. In support of the motion, the ad hoc group argued that section 363(b), and not section 503(b), supplied the applicable legal standard since the debtors in *Boy Scouts* were seeking authority to pay the ad hoc group's restructuring expenses. *See Boy Scouts*, Dkt. No. 5680. On this issue, the ad hoc group cited to, among other cases, Judge Drain's decision in *In re Purdue Pharma L.P.,* No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019) [Dkt. 553], which is among the cases cited by LTL in its Motion. *See* Motion at ¶ 16.

23. Judge Silverstein, however, rejected the ad hoc group's argument that the business judgment standard under section 363(b) applied, and held that "the standard to apply is a 503 standard, the requirement to find a substantial contribution." *See Boy Scouts*, Aug. 19, 2021 Hr'g Tr. 19:21-20:1 (attached as **Exhibit A**). Judge Silverstein required the ad hoc group of abuse survivors to seek reimbursement for its professional fees and expenses at the end of the case under section 503(b)'s substantial contribution standard. Judge Silverstein reached this conclusion even though the debtor sought authority to pay such fees and expenses under a restructuring support agreement.

24. Here, LTL's request to reimburse the AHC of Supporting Counsel for its professional fees and expenses is far less compelling than the request made by the debtors in *Boy Scouts*, which request was ***denied*** by the Delaware Bankruptcy Court in connection with a post-petition restructuring support agreement.

25. ***First***, unlike the debtors in *Boy Scouts*, LTL faces multiple motions to dismiss. At this point in the LTL's current case, with nine motions to dismiss pending and the LTL Plan—a plan with which the AHC of Supporting Counsel has "issues" according to its counsel—only

recently filed, it is premature to seek the payment of the AHC of Supporting Counsel's fees and expenses by the Debtor. *See* May 16, 2023 Hr'g Tr. 21:13. This case must be allowed to proceed to its conclusion, whether that is dismissal or a confirmed plan, before this Court can determine whether the efforts of the AHC of Supporting Counsel "substantially contributed" to the case.

26. ***Second***, unlike in *Boy Scouts*, where the professional fee and expense reimbursement was included the restructuring support agreement, the PSA here contains no similar provision. The members of the AHC of Supporting Counsel cannot withdraw their support for the LTL Plan if the Motion is denied. The payment of their professional fees and expenses was simply not part of the deal they made.

27. ***Third***, AHC of Supporting Counsel, unlike the ad hoc group in *Boy Scouts*, is not comprised of any "creditors." Thus, it is doubtful that the AHC of Supporting Counsel could satisfy the substantial contribution standard under section 503(b)(3) or (b)(4).

28. Further, as the District Court for the District of New Jersey has recognized, "[t]he benefit to the debtor's estate must not be merely incidental to actions taken in the creditor's own interest. *Katchen v. Neumann*, No. 3:20-CV-06333-FLW, 2021 WL 1625100, at *4 (D.N.J. Apr. 27, 2021), *aff'd sub nom. In re Am. Ctr. for Civ. Just., Inc.*, No. 22-1016, 2022 WL 17884119 (3d Cir. Dec. 23, 2022) (citing *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994)). Based on the AHC members' obligations under the PSA, it is impossible to determine that the fees and expenses incurred and to be incurred by the AHC of Supporting Counsel are not a result of actions taken in the members' own interests (let alone in the interests of their talc claimant clients who have not yet voted on any plan let alone agreed to support the Debtor's proposed plan).

29. ***Fourth***, none of the talc claimants that the AHC of Supporting Counsel claim to represent have done anything to substantiate that they hold claims—*i.e.*, a right to payment—

9

against LTL. *See* 11 U.S.C. § 1126(a) (a holder of "a claim or interest allowed under section 502 of this title may accept or reject a plan."); 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under 501 of this title, is deemed allowed, unless a part in interest … objects."); 11 U.S.C. § 101(5) (the term "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

30. Several of the settling law firms that have pledged their allegiance to J&J are strangers to the pre-bankruptcy history of this tort, the MDL, or any other consolidated litigation, and have never filed a single talc-related lawsuit against LTL or J&J. In fact, J&J, in negotiating with these firms, never asked if the attorneys had reviewed a pathology report or verified that the disease in question is recognized by scientific studies or by the *Daubert* ruling in the MDL that J&J procured. Unlike in *Boy Scouts*, where the ad hoc group could deliver (and in fact did deliver) a majority vote of tort claimants who filed proofs of claim in favor of a chapter 11 plan, there is no indication here that the AHC of Supporting Counsel here represents a similar constituency.

31. The LTL Plan, on its face, illustrates the issue. The only talc claimants that could view the LTL Plan as a "good deal" are ones whose talc claims face significant hurdles in the tort system due to the lack of scientific evidence showing a link between talc exposure and certain forms of gynecological cancers. It would, therefore, make sense for law firms representing tens of thousands of such claims to support a deal that pays these—and all talc claims—nuisance value, which is exactly what the LTL Plan does. And, again, a nuisance value plan is the only plan that J&J would ever permit LTL to file given its views of all talc claims.

32. **Finally,** the Debtor cites this Court's decision in LTL 1.0 where it permitted the payment of the fees and expenses of an ad hoc group of state attorneys general. *In re LTL*

*Management LLC*, No. 21-30589 (MBK) (Bankr. D.N.J. June 24, 2022) [Dkt. 2585]. Its next most recent case was *In re Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019) [Dkt. 553]. Other than former Judge Sontchi's 2020 decision in *Extraction Oil & Gas*, the remainder of LTL's case support is over seven years old, and, in any event, each precedes Judge Silverstein's opinion in *Boy Scouts*.

33. Here, the most prudent course of action would be to deny the Motion without prejudice to the Debtor's and the AHC of Supporting Counsel's right to seek reimbursement at the end of the chapter 11 case – and only if this case survives dismissal – when this Court will have before it a better understanding of the AHC of Supporting Counsel's constituency and its role, if any, in confirming a chapter 11 plan that provides talc claimants with fair and equitable compensation. This record does not exist at this time, which is why the Debtor's request for this Court to approve the Reimbursement Agreement is simply premature.

## CONCLUSION

34. For the reasons set forth hereinabove, the TCC respectfully requests that the Court deny the Motion.

Respectfully submitted,

**GENOVA BURNS, LLC**

By: */s/ Daniel M. Stolz, Esq.*
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Facsimile: (973) 467-8126
Email: dstolz@genovaburns.com
Email: dclarke@genovaburns.com

*Proposed Local Counsel to the Official Committee of Tort Claimants*