UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 and 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:     jeffrey.m.sponder@usdoj.gov
            lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Case No. 23-12825 (MBK) |
|  | Chapter 11 |
| LTL Management LLC,[1] |  |
|  | The Honorable Michael B. Kaplan, Chief Judge |
| Debtor. |  |
|  | Hearing Date:  June 13, 2023 @ 10:00 a.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR
AN ORDER AUTHORIZING IT TO ENTER INTO AN EXPENSE
REIMBURSEMENT AGREEMENT WITH AD HOC COMMITTEE
<u>OF SUPPORTING COUNSEL</u>**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), by his undersigned counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), hereby files this objection (the "Objection") to the Debtor's Motion for an Order Authorizing it to Enter into an Expense Reimbursement Agreement with Ad Hoc Committee of Supporting Counsel (the "Motion").  *See* Dkt. 575.  In support thereof, the U.S. Trustee states as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## JURISDICTION

1.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of New Jersey issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Objection.

2.      Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the "U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the "U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

3.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this Objection.

## PRELIMINARY STATEMENT

4.      The U.S. Trustee objects to the Debtor's request for authority to pay the fees and expenses of an ad hoc committee pursuant to Bankruptcy Code Section 363. Through the Motion, the Debtor seeks authority to enter into a post-petition expense reimbursement agreement (the "Reimbursement Agreement") and to pay not only the fees and expenses of the AHC's (as defined below) bankruptcy and local counsel, but also the out of pocket expenses of the fifteen law firms that are the members of the AHC. (*See* Motion, ¶12).

5.      Section 503(b) of the Bankruptcy Code is the "exclusive avenue for payment of administrative expenses," *In re Lehman Bros. Holdings, Inc.*, 508 B.R. 283, 289 (S.D.N.Y. 2014), and Section 503(b)(3) is the specific and sole authority for an estate to pay the legal fees and expenses of an unsecured creditor. That section requires the court to find that the creditor

2

made a substantial contribution to the case and that the fees and expenses are reasonable and to do so only after notice and a hearing. By definition, one cannot have a prospective claim for having made a substantial contribution. Because it is impossible to know now if the AHC will make a substantial contribution in this case, the Court should deny the Motion as legally improper and premature.

6. Although the Motion relies on Section 363 as authority to pay the legal and other professional fees, the general provisions of Section 363 of the Bankruptcy Code cannot be used to evade the specific provisions of Sections 503(b)(3) and (4). Simply put, a debtor cannot enter into an agreement that ignores or modifies the Code's requirements for payment of substantial contribution claims and then ask a Court to approve the agreement modifying the Code. Accordingly, the Court should deny the Motion.

## BACKGROUND AND RELEVANT FACTS

7. On April 4, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). *See* Dkt. 1.

8. The Debtor continues to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

9. No trustee or examiner has been appointed in this chapter 11 case.

10. On April 14, 2023, the U.S. Trustee appointed an Official Committee of Talc Claimant Creditors (the "TCC"). *See* Dkt. 162.

11. On May 9, 2023, law firms Paul Hastings LLP ("Paul Hastings"), Cole Schotz P.C. ("Cole Schotz") and Parkins & Rubio LLP ("Parkins & Rubio", and together with Paul Hastings and Cole Schotz, "AHC Counsel") filed the *Verified Statement of Paul Hastings LLP, Cole Schotz*

3

*P.C. and Parkins & Rubio LLP Pursuant to Bankruptcy Rule 2019* (the "Verified Statement") in connection with their representation of the AHC.  *See* Dkt. 470.  As alleged therein, "the AHC …was formed to advance the common interests of the law firms, each of which has entered into a plan support agreement (each, a "PSA") with the Debtor, Johnson & Johnson ("J&J") and Johnson & Johnson Holdco (NA) Inc. ("Holdco", and with the Debtor and J&J, the "J&J Parties")." *Id*. at ¶1.

12. At the time the Verified Statement was filed, fifteen law firms made up the members of the AHC (the "AHC Law Firms").[2]  *Id.* at Exhibit A.  AHC Counsel represents the AHC as a group – it does not represent the individual law firms who are members of the AHC nor does it represent their clients.  *Id*. at  ¶2.

13. The PSAs required that a plan containing the attached terms had to be filed by May 14, 2023, or as soon thereafter as was feasible.  *See* Declaration of John K. Kim in Support of First Day Pleadings, ¶73, Dkt. 4.  On May 15, 2023, the Debtor filed its proposed Plan of Reorganization and Disclosure Statement (the "Proposed Plan").  *See* Dkts. 525 and 526.

14. The Debtor claims that pursuant to the terms of the PSAs, the AHC "is supportive of the Debtor's proposed plan of reorganization, and each member of the AHC…intends to recommend that its respective clients vote in favor of the plan." *See* Motion, ¶9.  AHC Counsel,

---

[2] Debtor claims the AHC members include "two former members of the Official Committee of Talc Claimants in the first bankruptcy case filed by the Debtor." Motion, ¶8. This statement is not correct and reflects a misunderstanding regarding the identity of the actual creditors of Debtor's estate.  The TCC members in both the first LTL bankruptcy case and in this bankruptcy case are actual talc claimants who allege damages based on exposure to talc.  While law firms are members of the AHC, they are NOT members of the TCC in this case, nor were they members of the TCC in LTL's first bankruptcy case.  They law firms are not LTL creditors.  What is true is that two of the fifteen law firms each had a client who was appointed as a member of the TCC by the U.S. Bankruptcy Court for the Western District of North Carolina during Debtor's first bankruptcy case.

however, has advised the Court that the AHC has "issues" with the Proposed Plan. *See* May 16, 2023 Hr'g Tr. 21:13.

15. By its Motion, Debtor seeks approval of the Reimbursement Agreement attached thereto pursuant to Bankruptcy Code Section 363. In summary, the Reimbursement Agreement provides:

  a. The Debtor will pay (a) the reasonable and documented out-of-pocket expenses of the AHC Law Firms) (the "AHC Law Firm Expenses") and (b) the reasonable and documented fees and out-of-pocket expenses of AHC Counsel that are currently or will be retained by the AHC, including, without limitation, Paul Hastings, Cole Schotz, and Parkins & Rubio (the "AHC Counsel Fees and Expenses") for the period of April 18, 2023 through the termination of the Reimbursement Agreement. *See* Motion, ¶ 11.

  b. AHC Counsel will file monthly fee statements and interim and final fee applications in accordance with the Court's Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals [Dkt. 562] (the "Interim Compensation Order").[3]

  c. Either party can terminate the Reimbursement Agreement at any time and for any reason by providing written notice to the other party, and such termination will be effective ten business days following the delivery of the written notice. *Id.* at ¶ 15.

## ARGUMENT

**A. Section 503(b) is the Only Code Section Governing the Payment of an Ad Hoc Committee's Fees and Expenses and Any Request for Substantial Contribution is Legally Premature Before the Case Concludes.**

16. The proposed payments to the AHC Law Firms and AHC Counsel constitute compensation that is specifically governed by Sections 503(b)(3)(D) and (4) of the Bankruptcy Code. These sections govern payments to the professionals of ad hoc committees and individual creditors. *See* 11 U.S.C. § 503(b)(3)(D).[4]

---

[3] Neither the Motion nor the Reimbursement Agreement address the mechanism for payment of the AHC Law Firm Expenses.

[4] In the Third Circuit, a creditor makes a substantial contribution if, and only if, its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem*

17. By enacting Section 503(b) of the Bankruptcy Code, Congress provided a specific procedure and standard for the allowance and approval of fees and expenses incurred by ad hoc committees and others in making a substantial contribution to a case. *See* 4 Collier on Bankruptcy at ¶ 503.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Administrative expenses, except ordinary course expenses paid pursuant to Sections 363 and 364 of the Code, are allowed only after notice and a hearing and are not 'deemed allowed' but rather must be actually allowed by court order."). Section 503 imposes detailed requirements that must be met before approval and payment, including the timely filing of a request for payment by the professional, *see* 11 U.S.C. § 503(a); notice and a hearing before the court, *see* 11 U.S.C. § 503(b); a showing that such expenses were "actual" and "necessary," *see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial committee, or indenture trustee has made a "substantial contribution" to the bankruptcy case, *see* 11 U.S.C. § 503(b)(3)(D); and a finding by the court that any compensation paid to an attorney or accountant is "reasonable," s*ee* 11 U.S.C. § 503(b)(4). Moreover, a party's right to payment under Section 503(b) is not automatic but "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir.1999).

18. The fact that the payment of professional fees are proposed as part of the Reimbursement Agreement does not relieve the third-party professionals of their obligation to comply with the requirements of Section 503, which is the "sole source" of authority to pay post-

---

*Financial Inc.*, 27 F.3d 937, 943-44 (3d Cir. 1994) (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). Furthermore, to be compensable under Section 503(b)(3)(D), the creditor's activity must have "benefit[ed] the estate as a whole." *See Lebron*, 27 F.3d at 944. Activities "which were designed primarily to serve [the applicants'] own interests" are **not** compensable, because they "would have been undertaken absent an expectation of reimbursement from the estate." *Id.*

6

petition professional fees on an administrative basis. *Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings Inc.*), 508 B.R. 283, 290 (S.D.N.Y. 2014).

19. In *Lehman,* the court roundly rejected an attempt by certain committee members to circumvent Section 503(b)(4) by seeking payment under a "permissive" plan provision that purported to pay third-party professional fees without regard to whether they could be authorized under Section 503. As the court explained, plans pay only claims and administrative expenses:

> Although the Bankruptcy Code does not explicitly forbid payments [of] professional fees that are not administrative expenses, no such explicit prohibition is necessary. Reorganization plans exist to pay claims and expenses . . . Therefore, the Individual Members' professional fee expenses are either administrative expenses or not, and if the latter, they cannot be paid under a plan.

*Id.* at 293. Indeed, the court recognized that any contrary result "could lead to serious mischief," because it would allow plan proponents to distribute the estate's assets without regard to the Bankruptcy Code's priority scheme. *Id.*

20. The allowance of attorney's fees is an exception to "the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (internal quotation marks omitted). The Supreme Court has recognized departures from the American Rule "only in specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Id*. (internal quotation marks omitted). "Section 503(b)(3)(D) represents an accommodation between the twin objectives of encouraging meaningful creditor participation in the reorganization process and keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (internal quotation marks and citation omitted).

21. Substantial contribution awards are granted only in "rare and extraordinary circumstances." *Leidos Rng'g, LLC v. KiOR, Inc*. *(In re KiOR Inc.),* 567 B.R. 451, 459 (internal quotation marks omitted). *Accord RS Legacy*, No. 15-10197, 2016 WL 1084400, at *4 (Bankr. D. Del. March 17, 2016). "[T]he benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Lebron*, 27 F.3d at 944. Under Third Circuit precedent, there must be a "demonstrable benefit to the debtor's estate and the creditors," *id*. (internal quotation omitted), because of "the concern that administrative claims deplete the bankruptcy estate's assets." *In re Energy Future HLDGS. Corp.,* No. 19-3492, 2021 WL 957301 at *10 (3d Cir. March 15, 2021). The benefit "must be *actual*, not hypothetical," *id*. (emphasis in original), thus "a hindsight-based analysis of the benefit to the estate requirement is appropriate," *id*. at *12. *See also KiOR*, 567 B.R. at 458 ("The substantial contribution test is applied in hindsight and scrutinizes the actual benefit to the case."). In determining whether a creditor has made a substantial contribution, "the court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions."[5] *Hall Fin. Grp., Inc. v. DP Partners Ltd. (In re DP Partners, Ltd.)*, 106 F.3d 667, 673 (5th Cir. 1997).

22. By its nature, a substantial contribution claim is retrospective only, not prospective. There is no way to approve a substantial contribution claim before a bankruptcy case is largely concluded because no substantial contribution has been made and no claim exists. Moreover, the award of fees and expenses for making a substantial contribution must be reasonable, and that determination cannot be made prospectively either. Even if reasonableness could be determined

---

[5] An additional issue is presented here because the payments do not relate to creditor action. As noted in the Verified Statement, the AHC Law Firms are not estate creditors and AHC Counsel does not represent any creditors.

8

in advance, the Debtor failed to explain why it would be reasonable for the estate to pay the AHC Law Firms and AHC's Counsel.

23. At this stage of the case, it is a legal impossibility that anyone could have and prove a substantial contribution claim for reasonable fees and expenses, and the AHC should not be awarded one. The Bankruptcy Code contains no provision for interim payment of substantial contribution fees and expenses. Even if it were proper to award fees for a substantial contribution on a prospective basis, payment of the AHC Law Firms' expenses may not be permissible. Section 503(b)(4) only allows for the reimbursement of fees of attorneys and accountants. 11 U.S.C. § 503(b)(4). "[T]he language of § 503(b)(4) (unlike § 330(a)(1)), limits compensation to attorneys and accountants only, rather than any professional. Accordingly, reimbursement for Seidman's [the financial advisor's] services must be disallowed." *Matter of Baldwin-United Corp.*, 79 B.R. 321, 341 (Bankr. S.D. Ohio 1987). Thus, AHC Law Firm expenses for anything other than attorneys' or accountants' fees can never be awarded under Section 503(b)(4) as a matter of law.

**B. The General Provisions of Section 363 Cannot Be Used to Circumvent the Specific Provisions of Section 503(b).**

24. The United States Supreme Court has held that "in all matters of statutory construction, the court must begin with 'the language itself [and] the specific context in which that language is used.'" *McNeill v. United States*, 131 S.Ct. 2218 (2011) (*quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Lamie v. United States*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.").

25. The Supreme Court also has ruled, including when applying the Bankruptcy Code, that a specific statutory provision governs a general one. *E.G., RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). In *RadLAX,* the Supreme Court recited the well-

9

reasoned rule that:

> We find the debtors' reading of § 1129(b)(2)(A)—under which clause (iii) permits precisely what clause (ii) proscribes—to be hyperliteral and contrary to common sense. A well established canon of statutory interpretation succinctly captures the problem: "[I]t is a commonplace of statutory construction that the specific governs the general." (citation omitted). That is particularly true where, as in § 1129(b)(2)(A), "**Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions**."

*Id.* (citation omitted) (emphasis added).[6]

26. The Third Circuit adheres to this approach. *See Kannikal v. Attorney General US*, 776 F.3d 146, 1355 (2d Cir. 1996) (citing both *Morales* and *RadLAX* with respect to the specificity of Title VII's limitations scheme over a more general section of Title VII stating "[I]t is a commonplace of statutory construction that the specific governs the general . . ." *Morales,* 504 U.S. at 384.

27. As in *RadLAX*, so, too, here. Congress targeted a specific problem— payment of reasonable fees and expenses for ad hoc committees making a substantial contribution—with a specific solution—Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code. An ad hoc committee can have its fees and expenses paid but only after giving notice to creditors and after proving to a court that it made a substantial contribution to a case and that its fees and expenses are reasonable. The parties cannot evade the mandatory statutory scheme by agreement: "the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each

---

[6] *See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (specific statutory provision normally controls one of more general application); *Bloate v. United States*, 130 S.Ct. 1345, 1353-1354 (2010) (same)); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment.") (*quoting Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)).

case are free to tweak the law to fit their preferences." *Lehman*, 508 B.R. at 294.

28.     Further, the Supreme Court has articulated that a statutory provision should not be construed to render any other provision of the statute superfluous. *See Turner v. Rogers*, 131 S. Ct. 2507, 2522 (2011) ("The fact that one constitutional provision expressly provides a right to appointed counsel in specific circumstances indicates that the Constitution does not also sub silentio provide that right far more broadly in another, more general, provision.").

29.     When these traditional principles of statutory construction are applied to the issues before this Court, the resulting conclusion is that Section 503(b) is the only Bankruptcy Code section to directly address the issue of the payment of professionals for an ad hoc committee and is the only appropriate statutory provision under which this Court should consider the Motion. *See Lehman*, 508 B.R. at 294 (committee members seeking repayment of legal fees must seek reimbursement under Sections 503(b)(3)(D) and 503(b)(4)).

30.     Lastly, a request for compensation under Section 503(b)(4) is akin to a professional fee application and thus is governed by similar requirements. *See In re Worldwide Direct, Inc.*, 334 B.R. 112, 120 (Bankr. D. Del. 2005). Once it has been found that the particular creditor and/or professionals provided a substantial benefit or contribution to the estate, the next step is to determine if the fees and expenses are reasonable. The measured standards for reasonableness under Section 503(b)(4) are "the time, the nature, the extent, and the value of such services, and the cost of comparable services under this title." These factors mirror the factors considered to determine reasonable compensation under Section 330(a)(3), and courts generally apply the same analysis and approach to fee requests under Section 503(b)(4) that are used for fee applications under Section 330.[7] A party making an application for fees under Section 330 bears the burden of

---

[7] Another issue may be presented by the identity of one of the firms representing the AHC. In this case Cole Schotz seeks to pursue the interests of talc claimants through its representation of the

11

establishing the reasonableness of the fees and to meet that burden, the party must, among other things, submit sufficiently detailed time records such that the court can determine whether the fees and expenses requested are reasonable. While the Motion and Reimbursement Agreement provide that Professionals will file monthly fee applications, there is no provision regarding the manner of payment of the Law Firm Members' expenses.

31. The Debtor and the AHC must comply with Section 503(b) at the conclusion of the case when the Court can determine for itself whether a substantial contribution has been made and whether the compensation sought is reasonable.

**C. The Motion Cannot be Approved Pursuant to Section 363.**

32. Section 363(b) cannot override other specific provisions of the Bankruptcy Code. For example, debtors cannot retain and pay their chosen professionals under Section 363 unless those professionals have been retained under Section 327 and have filed fee applications that have been approved. Section 363(b) allows a debtor-in-possession (subject to court approval) to use, sell or lease, other than in the ordinary course of business, property of the estate, but not at the point that such activity is governed by another section of the Code.[8]

---

AHC. In the bankruptcy case of *Whittaker, Clark & Daniels, Inc., et al.,* Case No. 23- 13575 (MBK), also pending before this Court, the Debtors have filed an application seeking to retain Cole Schotz as its co-counsel. *See* Case No. 23-13575, Dkt. 159. Upon information and belief, there is an overlap between claimants alleging talc related injuries against Whittaker and claimants alleging talc related injuries against the J&J Parties.

[8] As part of its duty of candor to the Court, the U.S. Trustee notes that in a recent opinion the District of Delaware upheld a bankruptcy court ruling that authorized debtors to assume prepetition restructuring support agreements, pursuant to Section 365, and to enter into additional restructuring support agreements post-petition pursuant to Section 363. *In re Mallinckrodt PLC,* No. 21-167, 2022 WL 906459 (D. Del. March 28, 2022). The agreements obligated the debtors to pay ad hoc committee fees and the ad hoc committees to support the debtors' proposed plan. *Id.* at 2022 WL 906459 *2 - *4. Debtors' motions were supported by declarations and hearing testimony from its financial advisor AlixPartners. *Id.* The opinion of course is not binding on this Court. Further, it is also distinguishable in many ways, including the fact that the Mallinckrodt

33. As courts have recognized, Section 363(b) is not a blank check for debtors to merely do whatever they want to do as there are statutory checks on that power that are designed to protect creditors and other parties' rights. *See, In re Lionel Corp.,* 722 F.2d 1063, 1069 (2d Cir. 1983) (holding that Section 363(b) does not grant judges carte blanche to use Section 363(b) to justify any action and to rule otherwise would have Section 363 swallow up other provisions of chapter 11.)

34. Notably, the only support offered by the Debtor for the relief sought is a copy of the Reimbursement Agreement. *See* Motion, Ex. A. However, under Section 363(b) the Debtor must articulate and prove a sound business judgment to gain approval of a non-ordinary course transaction. The Debtor has not met this burden and it has not provided, nor can it provide, evidence supporting its claim that entry into the Reimbursement Agreement is a sound exercise of its business judgment.

35. There are numerous reasons why the Debtor fails to meet its burden. First, the Debtor provides no certification of an officer or director supporting its business judgment claim. There is no evidence of who participated in making the relevant decisions nor the basis of the analysis. Second, neither the Motion or the Reimbursement Agreement outline the manner in which AHC Law Firms' costs will be reimbursed, nor how parties in interest will be advised of the amounts.

36. The Reimbursement Agreement may be terminated by either the Debtor or the AHC for any reason (or no reason) upon notice to the other party. The Debtor's ability to terminate the Reimbursement Agreement must be carefully considered in the context of the fiduciary duties the AHC Law Firms owe their clients. Also, at any point the AHC can walk away with no

---

debtors offered evidence to support their business judgment and in return for the payment of fees received plan support.

settlement having been reached and no plan approved. The Debtor's payment of fees and costs may be of little to no benefit to the estate. Congress set forth in Section 503(b) the standard to be applied in such settings - payment of such fees should be limited to instances where a creditor can prove after the fact that a substantial contribution was made to the estate.

37. In any event, this perversion of the substantial contribution process through post-petition contracts is not what Congress envisioned or specified when it enacted the substantial contribution requirement for ad hoc committees in Section 503(b). The Debtor and the AHC must comply with Section 503(b) at the conclusion of the case when the Court can judicially determine for itself whether a substantial contribution has been made and whether the compensation sought is reasonable. Any other result undermines and countermands the Bankruptcy Code's comprehensive statutory scheme.

38. The U.S. Trustee reserves any and all rights, duties and obligations found at law, equity or otherwise.

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the Motion and grant such other and further relief that is deemed just and equitable.

Dated: June 6, 2023    Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By:    /s/ Jeffrey M. Sponder
Jeffrey M. Sponder
Trial Attorney
Lauren Bielskie
Trial Attorney
United States Department of Justice
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, NJ 07102

-and-

Linda Richenderfer
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
linda.richenderfer@usdoj.gov