| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel to the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>Eric R. Goodman, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>egoodman@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>jmassey@masseygail.com<br>100 Main Ave. SW, Suite 450<br>Washington, DC  20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br><br>*Proposed Special Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG P.C.**<br>Melanie L. Cyganowski, Esq.<br>Richard G. Haddad, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>David A. Castleman, Esq.<br>mcyganowski@otterbourg.com<br>rhaddad@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>dcastleman@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 661-9100<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |

|  |  |
|---|---|
| In re:<br><br>**LTL MANAGEMENT, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825(MBK)<br><br>Honorable Michael B. Kaplan |

**AMENDED DECLARATION OF SAUL E. BURIAN IN SUPPORT OF
APPLICATION FOR RETENTION OF HOULIHAN LOKEY CAPITAL, INC. AS
INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS**

I, Saul E. Burian, certify as follows:

1. I am familiar with the matters set forth herein and, if called as a witness, I could and would testify thereto. Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Application.

2. I am a Managing Director of Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), and am duly authorized to execute this declaration (the "Declaration") on behalf of Houlihan Lokey.

3. I make this Declaration in support of the Application of the Official Committee of Talc Claimants (the "Committee"), appointed in the above-captioned Chapter 11 case, pursuant to 11 U.S.C. §§ 328 (a) and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Entry of an Order Authorizing the Retention of Houlihan Lokey Capital, Inc. as Investment Banker to the Committee, effective as of April 14, 2023 (the "Application"). This Declaration is also submitted as the statement required pursuant to §§ 328(a), 504 and 1103(a) of the Bankruptcy Code and Rules 2014(a), 2016 and 5002 the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. The Houlihan Lokey Group (as defined below) is an internationally recognized investment banking and financial advisory firm, with offices worldwide and more than 2,200 professionals. Houlihan Lokey's Financial Restructuring Group, which has more than 250 professionals, is a leader in providing such services to unsecured and secured creditors, debtors, acquirers, and other parties in interest involved with financially troubled companies both in and outside of bankruptcy. Houlihan Lokey has been, and is,

        involved in some of the largest restructurings in the United States, both out of court and in Chapter 11 cases.

5.      In addition to me, the principal professionals who are expected to render services to the Committee are as follows: Tom Hedus (Director), Timothy Petersen (Associate), Temitope Odusanya (Associate), Danny Gendler (Financial Analyst), and Charlie Vrattos (Financial Analyst). A summary of the qualifications of the principal professionals is attached hereto as **Exhibit B** and is incorporated herein by this reference (the "Principal Professionals").

6.      Houlihan Lokey has agreed to provide investment banking and financial advisory services to the Committee in the above-captioned Chapter 11 case pursuant to the terms and conditions of the engagement agreement between the Committee and Houlihan Lokey (the "Agreement"), a copy of which is attached hereto as **Exhibit A**. As detailed further in the Agreement, Houlihan Lokey's compensation includes: (i) a monthly fee of $400,000 for each of the first four months; (ii) a monthly fee of $175,000 for each month thereafter; (iii) a $3,000,000 deferred fee earned and payable upon the consummation of a Chapter 11 plan of reorganization, and; (iv) a discretionary fee based upon the Committee's business judgement[1]. Under the Agreement, Houlihan Lokey is to earn a Minimum Fee of $1,200,000. In addition, compensation will include the reimbursement of reasonable out-of-pocket expenses incurred from time to time and indemnity.

7.      Given the numerous issues that Houlihan Lokey may be required to address in the performance of its services pursuant to the Agreement, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan Lokey's services for both in court and out of court engagements of this nature, Houlihan Lokey believes that the fee structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

8.      To avoid the potential duplication of services with those services performed by FTI Consulting, Inc. ("FTI") as the proposed financial consulting firm retained by the

---

[1] In the event that a Discretionary Fee is paid, 50% of the Monthly Fees received by Houlihan Lokey and approved by the final order of the Bankruptcy Court shall be credited against the Discretionary Fee (as defined in the Agreement) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Discretionary Fee be reduced below zero

Committee, the following system shall be implemented to determine the distribution of work relating to the bankruptcy case and related proceedings. First, a small group of senior professionals at Houlihan Lokey and FTI shall confer to determine work strategy and tasks, in consultation with the Committee's counsel, the Committee members, and their designated representatives. Second, Houlihan Lokey and FTI will coordinate responsibility for completing any applicable task. Third, to the extent any work product related to a task is relevant to the other's work or advice for the Committee, such work product shall be shared with Houlihan Lokey or FTI, as applicable, so that both Houlihan Lokey and FTI have the benefit of the other's relevant analysis and work product.

9.  To determine its connections with parties in interest in this chapter 11 case, Houlihan Lokey relied upon a list of entities that were identified to the Committee by the Debtor and its representatives (each individually, an "Interested Party", and collectively, the "Interested Parties"). The Interested Parties are set forth on **Exhibit C** attached hereto and incorporated herein by reference. I, or one or more of my designees, reviewed a report that was based on a comparison of the list of Interested Parties against certain internal databases of Houlihan Lokey, including Houlihan Lokey's client management information system. To the extent this report revealed that certain Interested Parties (or their apparent affiliates or entities that Houlihan Lokey believes to be affiliates, as the case may be) were current or former Houlihan Lokey clients that engaged a member of the Houlihan Lokey Group in the past three years (as of the date such report was generated) pursuant to a written engagement letter to provide services for which the Houlihan Lokey has received, or is expected to receive, fees, such parties are identified on **Exhibit D** attached hereto and incorporated herein by reference. To the extent that the aforementioned report revealed certain other connections with Interested Parties (or their apparent affiliates or entities that Houlihan Lokey believes to be affiliates, as the case may be), such parties may also be identified on **Exhibit D** or otherwise described or referenced (whether generally or specifically by name) elsewhere in this Declaration. **Exhibit D** is based upon the information contained in the aforementioned report and may not include information to the extent not included in, or not reflected in the results of Houlihan Lokey's review of, such report, or not otherwise identified by Houlihan Lokey.

10. Neither the term "connection," as used in Bankruptcy Rule 2014, nor the proper scope of a professional's search for a "connection", has been defined. I have therefore instructed that our search and disclosure of "connections" be conducted in a manner consistent with

our past practice in other bankruptcy cases in which we are retained.

11. Given the large number of Interested Parties, despite the efforts described herein, I am unable to state with certainty that every connection has been disclosed in this Declaration. In particular, among other things, members or certain employees of the Houlihan Lokey Group may have connections with Interested Parties or persons who are beneficial owners, affiliates, equity holders and/or sponsors of certain Interested Parties; persons whose beneficial owners, affiliates, equity holders and/or sponsors are Interested Parties; and persons who otherwise have connections with certain Interested Parties. Furthermore, the Debtor may have had, or currently has, customers, creditors, lenders, equity owners, competitors, and other parties with whom they maintain business interest relationships that are parties in interest (but are not listed as Interested Parties), and with whom the Houlihan Lokey Group may have had, or may currently or in the future have, connections. In addition, new parties may become parties in interest and the Houlihan Lokey Group may have had, or may currently or in the future have, connections with such new parties in interest.

12. By way of further disclosure:

    a. From time to time, Houlihan Lokey's Financial Restructuring Group, which is providing the services in this case, may have represented, may currently be representing, or may in the future represent, certain parties in interest in matters unrelated to this chapter 11 case, either individually or as part of a representation of a committee or group of creditors, lenders, equity owners or other interest holders.

    b. In addition to its Financial Restructuring Group, Houlihan Lokey and the other subsidiaries of its direct parent company, Houlihan Lokey, Inc., that are engaged in providing investment banking and financial advisory services globally (collectively, and together with Houlihan Lokey, Inc., the "Houlihan Lokey Group") provide services to a wide range of institutions and individuals and may have had, or may currently or in the future have, investment banking or financial advisory relationships with certain parties in interest.

    c. One member of Houlihan Lokey's Financial Restructuring Group has a spouse that is employed by Johnson & Johnson. The spouse is not employed by the Debtor in this case, and his/her role at Johnson & Johnson is unrelated to this case. Moreover, the relevant Houlihan Lokey employee will not be involved in this engagement in any way, and all materials related to this engagement will be maintained on locked electronic drives only available to the team of professionals advising the Committee.

    d. In the ordinary course of business, members or certain employees (or relatives of such employees) of the Houlihan Lokey Group, as well as investment funds in which any of them may have financial interests or with which they may co-invest, but over whose investment decisions such members or employees have no control, may (i)

    acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtor or certain other parties in interest or have other relationships with such parties, and/or (ii) have mortgages, consumer loans, investment, brokerage accounts, or other banking, brokerage, or other customer relationships with institutions that are parties in interest or with funds sponsored by or affiliated with such parties.  With respect to any such securities, financial instruments, investments, and/or customer relationships, all rights in respect of such securities, financial instruments, investments, and/or customer relationships, including any voting rights, will be exercised by the holder of the rights, in its sole discretion.  Moreover, the Principal Professionals are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

e. Members or certain employees (or relatives of such employees) of the Houlihan Lokey Group may own, directly or indirectly, through retirement accounts or other personal investment accounts, publicly traded shares of Johnson & Johnson.

f. HL Finance, LLC, a direct subsidiary of Houlihan Lokey, Inc., acts as an arranger of syndicated loans for corporate entities and, in connection with such activities, may contract with third-party investors that may provide commitments with respect to certain syndicated loans arranged by HL Finance, LLC. The third-party investors are unrelated to and are not affiliates of the Houlihan Lokey Group; the Houlihan Lokey Group does not engage in asset management activities. HL Finance and certain employees of the Houlihan Lokey Group may have arranged, may currently be arranging or may in the future arrange, syndicated loans for entities that may be or become parties in interest in matters unrelated to these chapter 11 cases, and third-party investors that provided commitments with respect to such syndicated loans may be or become parties in interest.

g. Houlihan Lokey Financial Advisors, Inc., a direct subsidiary of Houlihan Lokey, Inc., among other things, provides valuation opinions on the securities, derivatives, and other financial instruments (which may have included, or may currently or in the future include, securities, derivatives, or other financial instruments of the Debtors) held by various business development companies, private equity funds, hedge funds, and other investment funds, primarily for financial reporting purposes, through its Portfolio Valuation and Fund Advisory Group.  This work is unrelated to the financial advisory and investment banking services that Houlihan Lokey intends to provide in these chapter 11 cases.  Moreover, there is an "Information Wall" between Houlihan Lokey Financial Advisors, Inc.'s Portfolio Valuation and Fund Advisory Group and Houlihan Lokey's Financial Restructuring Group, including the Principal Professionals. This "Information Wall" includes technological barriers and policies and procedures designed to prevent confidential, non-public information and work product from being improperly shared.

h. In the ordinary course of their business, members of the Houlihan Lokey Group from time to time discuss issues concerning stressed and distressed companies with such companies, their creditors and their prospective creditors that are clients of the firm, that are referred to the firm in light of Houlihan Lokey's reputation for covering such companies and/or relevant industry expertise, or with which the firm may otherwise be in contact. At the time of those contacts, typically it is not known whether any of

these companies will actually file for bankruptcy, or if any of these creditors and/or prospective creditors will serve on any future official committee appointed in any such future bankruptcy case, or even be a creditor of the relevant estate in the event of a future bankruptcy. It is also Houlihan Lokey's customary practice to communicate with and, when appropriate or requested, send materials to one or more of the 50 largest unsecured creditors identified by a debtor and who are, therefore, potential members of a creditors' committee.

i. Members or certain employees of the Houlihan Lokey Group may have business associations with certain parties in interest, including attorneys, accountants, investment bankers, financial advisors, financial consultants and other professional advisors, some of whom may represent certain of the parties in interest or be parties in interest. Members of the Houlihan Lokey Group may have appeared, or may currently or in the future appear, in numerous cases, proceedings or transactions involving, had or have mutual clients with, or had or have referral relationships with, these professionals. Furthermore, members of the Houlihan Lokey Group have been, and may currently or in the future be, represented or advised by accountants, auditors, attorneys, law firms and other professionals, some of whom may be involved in these chapter 11 cases. In addition, members of the Houlihan Lokey Group may have worked, or may currently or in the future work, with, for or opposite other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases.

j. Certain employees of the Houlihan Lokey Group may have been formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, certain of the parties in interest. While employed by other firms, certain professionals presently employed by the Houlihan Lokey Group may have represented certain parties in interest.

k. Members of the Houlihan Lokey Group may be involved in litigation from time to time that may have involved, or may currently or in the future involve, entities that may be parties in interest. Also, certain of the parties in interest may have been, or may currently or in the future be, vendors or insurers of members of the Houlihan Lokey Group and/or have corporate or other business relationships with members of the Houlihan Lokey Group.

l. Houlihan Lokey represented the official committee of talc claimants (the "Original TCC") in the Debtor's prior chapter 11 case that was pending before this Court (Case No. 21-30589) and represented the Ad Hoc Committee of Certain Talc Claimants (the "AHC") in this chapter 11 case before the Committee was formed. The AHC consisted of nine members of the Original TCC—Alishia Landrum, Rebecca Love, Blue Cross Blue Shields of Massachusetts, Tonya Whetsel, Kristie Doyle, William A. Henry, Randy Derouen, April Fair and Patricia Cook—each of whom are also members appointed to the Committee in this case.

m. As of the Court's entry of the Dismissal Order on April 4, 2023, Houlihan Lokey was owed $513,419.38 for services rendered and expenses incurred in representing the TCC as its investment banker in LTL I (the "Pre-Petition Balance"). On April 26, 2023, the Debtor filed a motion seeking the entry of an order authorizing it to satisfy its obligations under the Dismissal Order, including the final allowance of professional fees and expenses and the payment of such allowed fees and expenses

      (the "Obligations Motion").  [Dkt. No. 319].  Pending entry of an order approving the Obligations Motion, Houlihan Lokey anticipates that the allowed amount of the Pre-Petition Balance (the "Allowed Pre-Petition Fee Claim") will be paid in connection with LTL I.

    n. Of the parties listed on **Exhibit D** as current clients, none represented more than 2.0% of gross consolidated annual revenues (for Houlihan Lokey, Inc. NYSE:HLI) in either of the last two years[2,3].

13. To the best of my knowledge and belief, other than as disclosed in this Declaration, neither Houlihan Lokey, nor I, nor any other Principal Professionals, represents any other entity having a material adverse interest in connection with this chapter 11 case.

14. To the best of my knowledge and belief, other than as disclosed in this Declaration, Houlihan Lokey has not been retained to assist any Interested Party other than the Committee on matters relating to, or in direct connection with, this chapter 11 case.

15. In addition, other than as disclosed in this Declaration, I do not believe that any connection that the Houlihan Lokey Group may have with any Interested Party in connection with any unrelated matters, including those involving the parties identified on **Exhibit D**, or any of the matters set forth in paragraph 11 of this Declaration, constitutes an interest materially adverse to the interest of the estate or of any class of creditors or equity holders in these chapter 11 cases.

16. Other than as disclosed in this Declaration, I am not related to and, to the best of my knowledge and belief, no other Principal Professional is related to, any United States Bankruptcy Judge for this District or known employee in the United States Trustee's Office for this District.

17. Based on all of the foregoing, I believe that Houlihan Lokey is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

18. To the extent Houlihan Lokey discovers any material facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey

---

[2] Houlihan Lokey does not allocate revenue at the party level in situations where there are multiple clients in a single engagement. However, based on engagements where parties in **Exhibit D** are included as clients, none were part of engagements which, in the aggregate exceeded 2.0% of Houlihan Lokey's aggregated revenues for fiscal years 2021 and 2022.

[3] This paragraph represents the only change to the Declaration of Saul E. Burian filed in Support of the Application [Dkt No. 538] and annexed thereto.

    undertakes to amend and supplement the information contained in the Application and this Declaration to disclose such facts.

19. Houlihan Lokey has not shared or agreed to share any of its compensation from the Debtor with any other person, other than as permitted by section 504 of the Bankruptcy Code. If any such agreement is entered into, Houlihan Lokey has undertaken to amend and supplement the information contained in this Application and this Declaration to disclose the terms of any such agreement.

20. No promises have been received by Houlihan Lokey, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Date: June 6, 2023          */s/ Saul E. Burian*
                  Saul E. Burian, Managing Director