| |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>PAUL HASTINGS LLP<br>200 Park Avenue<br>New York, New York 10166<br>Kristopher M. Hansen (*admitted pro hac vice*)<br><br>PAUL HASTINGS LLP<br>71 South Wacker Drive, Suite 4500<br>Chicago, Illinois 60606<br>Matthew M. Murphy (*admitted pro hac vice*)<br>Matthew Micheli (*admitted pro hac vice*)<br><br>COLE SCHOTZ P.C.<br>Court Plaza North<br>25 Main Street<br>P.O. Box 800<br>Hackensack, New Jersey 07602-0800<br>Michael D. Sirota<br>Warren A. Usatine<br>Seth Van Aalten (*admitted pro hac vice*)<br>Justin Alberto (*admitted pro hac vice*)<br><br>PARKINS & RUBIO LLP<br>700 Milam, Suite 1300<br>Houston, Texas 77002<br>Lenard M. Parkins (*admitted pro hac vice*)<br>Charles M. Rubio (*admitted pro hac vice*)<br><br>*Counsel to Ad Hoc Committee of Supporting Counsel* | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan |

**RESPONSE OF THE AD HOC COMMITTEE OF SUPPORTING COUNSEL TO OBJECTIONS TO DEBTOR'S MOTION FOR AN ORDER AUTHORIZING IT TO <u>ENTER INTO EXPENSE REIMBURSEMENT AGREEMENT</u>**

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

The Ad Hoc Committee of Supporting Counsel (the "AHC of Supporting Counsel"), by and through its counsel, Paul Hastings LLP, Cole Schotz P.C., and Parkins & Rubio LLP, hereby submits this response (the "Response") to the *Objection of the Official Committee of Talc Claimants to Debtor's Motion for Authority to Enter Into an Expense Reimbursement Agreement with Ad Hoc Committee of Supporting Counsel* [ECF No. 707] (the "TCC Objection"); *MRHFM's Objection to Debtor's Motion for an Order Authorizing it to Enter Into an Expense Reimbursement Agreement with Ad Hoc Committee of Supporting Counsel* [ECF No. 711] (the "MRHFM Objection"); and the *United States Trustee's Objection to Debtor's Motion for an Order Authorizing It to Enter Into an Expense Reimbursement Agreement with Ad Hoc Committee of Supporting Counsel* [ECF No. 713] (the "UST Objection" and together with the TCC Objection and the MRHFM Objection, collectively, the "Objections" of the "Objectors"). In support of the Response and the Debtor's *Motion for an Order Authorizing it to Enter Into an Expense Reimbursement Agreement with Ad Hoc Committee of Supporting Counsel* [ECF No. 575] (the "Motion"), the AHC of Supporting Counsel respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1. The Debtor filed this Chapter 11 Case in order to achieve a full and fair resolution of all present and future talc liabilities, the material terms of which are embodied in the plan support agreements entered into by and among members of the AHC of Supporting Counsel, the Debtor, Johnson & Johnson, and Johnson & Johnson Holdco (each a "PSA" and collectively, the "PSAs"). The PSAs were the product of good faith, arm's length negotiations, and the parties agreed to resolve all present and future talc claims pursuant to a chapter 11 plan of reorganization. While the members of the AHC of Supporting Counsel have a wealth of experience in mass tort

---

[2] Capitalized terms used but not defined in this preliminary statement have the meanings provided in the remainder of the Response and the Motion, as applicable.

litigation, they are not as familiar with the intricacies of the bankruptcy process. Given the complex nature of this proceeding, the Debtor determined, in its business judgment, that entry into the Reimbursement Agreement would maximize the likelihood of achieving its goals in the Chapter 11 Case.

2. The Reimbursement Agreement allows the AHC of Supporting Counsel to play a crucial role in the Chapter 11 Case, providing stability, structure, and opportunities for consensus building, each of which are critical to a successful resolution of the Chapter 11 Case for the Debtor and the claimants. Absent the Reimbursement Agreement, and the stability and structure stemming therefrom, the Debtor would be forced to build consensus on difficult bankruptcy issues with numerous mass tort lawyers making up the AHC of Supporting Counsel–rather than experienced restructuring counsel. Not only would that be incredibly inefficient, but it risks undermining the progress made to date.

3. Further, from the Debtor's perspective, it is important that the members of the AHC of Supporting Counsel have sophisticated bankruptcy counsel that can act as a counter-balance to the Official Committee of Talc Claimants (the "TCC") and the innumerable pleadings filed in this case. The TCC asserts that it is an estate fiduciary representing the interests of all talc claimants, including the interests of the vast majority of talc claimants represented by the members the AHC of Supporting Counsel that support the Plan. However, the positions taken by the TCC throughout this case belie that fact given the TCC's positions are consistently diametrically opposed to those claimants who may support the Plan, including those represented by members of the AHC of Supporting Counsel. In fact, the TCC Objection exposes the TCC's two-pronged strategy of attempting to both silence the majority of its constituents and, though not relevant at this juncture, attack the validity of that majority's claims. The TCC has offered no evidence (none exists) that it

2

has even considered the views of claimants that support the Plan and the path to expedited recoveries contemplated therein. Rather, it has made clear by its attacks on the validity of certain claims and such claimants' right to participate in the Chapter 11 Case, that it is unmoved by its failure to adequately represent its constituents that are opposed to the position of the TCC's loud minority. All of the foregoing facts plainly establish that entry into the Reimbursement Agreement is a reasonable exercise of the Debtor's business judgment that will advance the Chapter 11 Case to a full and final resolution for the benefit of all stakeholders.

4. The law in the Third Circuit is clear that the relief sought in the Motion is authorized under section 363(b) and routinely approved under circumstances such as these. The UST Objection is particularly telling, acknowledging just one of numerous examples where courts authorize the relief sought here. UST Objection at ¶ 32 n.8. Faced with substantial authority within and outside of the Third Circuit that supports authorizing the proposed exercise of the Debtor's business judgment, the TCC and MRHFM Objections turn to straw man attacks regarding the claims resolution process and/or plan issues—neither of which is germane to the Debtor's exercise of its reasonable business judgment.

5. At bottom, entry into the Reimbursement Agreement is integral to the Debtor's desire to have a counterparty through which it can effectively negotiate with and build consensus for the Plan, ultimately assisting the Debtor in accomplishing its goal of reaching a full and final resolution of all talc claims. To achieve those ends, the Debtor has determined that to effectively reach confirmation of a consensual plan of reorganization in this bitterly contested Chapter 11 Case, it is necessary for the AHC of Supporting Counsel to retain experienced bankruptcy counsel. Absent the relief requested in the Motion, the AHC of Supporting Counsel, and the majority of claimants that it represents, will not be able to participate meaningfully in this Chapter 11 Case.

6. The Debtor is entirely justified in exercising its business judgment under section 363(b) to compensate the AHC of Supporting Counsel. Approval of the Motion is critical to ensure meaningful progress towards confirmation of the Plan, and the Motion should be granted.

## BACKGROUND

7. The Debtor filed a voluntary petition to commence this chapter 11 bankruptcy case (the "Chapter 11 Case") on April 4, 2023 for the purpose of resolving all current and future talc-related claims against LTL and its corporate affiliates, including Johnson & Johnson.

8. The Debtor, Johnson & Johnson and each member of the AHC of Supporting Counsel[3] entered into a PSA that includes material terms for a chapter 11 plan through which all claimants would be fairly and equitably compensated for their talc-related claims.

9. On May 15, 2023, the Debtor filed its plan of reorganization[4] (the "Plan") that would fund $8.9 billion net present value to a trust to satisfy all talc-related claims, which the AHC of Supporting Counsel have agreed in principle to support. *See generally* Form PSA [ECF No. 4-3, Annex C]. Following entry into the PSAs and in furtherance of resolving the Chapter 11 Case through a confirmed plan to be voted on by the talc claimants, the Debtor, in the exercise of its business judgment and consistent with legal precedent, reached agreement with the AHC of Supporting Counsel on the Reimbursement Agreement, so that the majority of talc claimants can effectively be heard and participate in this case and work towards confirmation of the Plan, which

---

[3] The AHC of Supporting Counsel is comprised of law firms, including two former representative firms of members of the Official Committee of Talc Claimants in the first bankruptcy case filed by the Debtor, representing more than 58,000 talc claimants in the Chapter 11 Case, thousands of whom commenced lawsuits against the predecessor of the Debtor and its affiliates, including Johnson & Johnson, prior to the commencement of the 2021 Chapter 11 Case. *Verified Statement of Paul Hastings LLP, Cole Schotz P.C. and Parkins & Rubio LLP Pursuant to Bankruptcy Rule 2019* [ECF No. 470] (the "Rule 2019 Statement").

[4] *Chapter 11 Plan of Reorganization of LTL Management LLC* [ECF No. 525].

4

provides recoveries to talc victims and brings final resolution and closure to this saga for the benefit of all stakeholders.

## LEGAL STANDARD

10. A debtor-in-possession need only demonstrate that "a sound business purpose justifies" its use of estate property outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code.[5] *Chamberlain v. Stanziale (In re Chamberlain)*, 545 B.R. 827, 844 (D. Del. 2016*), aff'd sub nom. In re Culp,* 681 Fed. Appx. 140 (3d Cir. March 15, 2017). "If a valid business justification exists, then a strong presumption follows that the agreement was negotiated in good faith and is in the best interests of the estate." *Id.* (citation omitted). Indeed, "[w]here the [debtor-in-possession] articulates a reasonable basis for the business decision, courts will generally not entertain objections." *Id.* Further, in determining if a request to reimburse expenses pursuant to section 363(b) should be approved, whether a reimbursement agreement was executed postpetition (or is a prepetition agreement assumed under section 365) does not affect the Court's analysis. *In re Mallinckrodt,* No. 20-12522, 2022 WL 906458, at *6 (D. Del. 2022 Mar. 28, 2022) ("The legal standard applicable to both [sections] 363(b) and 365(a) is the business judgment test").

## ARGUMENT

### I. SECTION 363(b) AUTHORIZES PERFORMANCE UNDER THE REIMBURSEMENT AGREEMENT

11. The business judgment standard is easily satisfied by the Debtor's decision[6] to enter into the Reimbursement Agreement based on its experience in its first chapter 11 case before this

---

[5] References to the "Bankruptcy Code" refer to title 11 of the United States Code (11 U.S.C. § 101, et seq.). Unless otherwise indicated, references to "section" or "§" mean sections of the Bankruptcy Code.

[6] The Debtor provides ample support for its decision to enter into the Reimbursement Agreement, which arguments and facts are expressly incorporated by reference, but are not repeated, herein.

5

Court, the circumstances of the present reorganization, and how debtors in similarly complex mass tort restructurings have compensated uniquely situated (and critically important) ad hoc groups of unsecured creditors.

12. Authorities permitting debtors to enter into agreements providing for reasonable compensation of unsecured creditors pursuant to section 363 of the Bankruptcy Code, in particular as to ad hoc groups, are plentiful. *See, e.g., In re Mallinckrodt,* 2022 WL 906458 at *6 (affirming authorization of payment of ad hoc group of unsecured creditors' professional fees under section 363(b)); *In re Purdue Pharma L.P., et al.*, No. 19-23649-rdd, Nov. 19, 2019 Hr'g. Tr. at 153:1-167:23 (Bankr. S.D.N.Y. Nov. 19, 2019) (same) [ECF No. 550]; *In re Bethlehem Steel Corp.,* No. 02 Civ. 2854, 2003 WL 21738964, at *13 (S.D.N.Y. July 28, 2003) (affirming reimbursement under section 363(b) of creditor's professional fees "to help evaluate and negotiate the terms of a plan"); *In re Hercules Offshore, Inc.,* Case No. 15-11685 (Bankr. D. Del. Aug. 24, 2015) (approving, under sections 363 and 365, payment of unsecured creditors' professional fees as part of RSA assumption) [ECF No. 95]; *In re Dendreon Corp.,* Case No. 14-12515 (Bankr. D. Del. Dec. 23, 2014) (same) [ECF No. 215]; *In re AMR Corp.,* Case No. 11-15463 (Bankr. S.D.N.Y. Sept. 21, 2012) (same) [ECF No. 4652].

13. *Purdue Pharma* and *Mallinckrodt* are particularly instructive, as each of those cases also involved debtors executing prospective expense reimbursement agreements with ad hoc group members that included compensation for experienced practitioners in mass tort bankruptcies.

14. In *Mallinckrodt*, the debtors and three ad hoc committees entered into an RSA under which the ad hoc committees committed to either voting in favor of, or recommending to their members that they vote in favor of, the debtors' proposed plan. *See Mallinckrodt*, 2022 WL 906458, at *1-2. In exchange, the debtors agreed to pay "all reasonable and documented fees and out-of-pocket

6

expenses" of certain professionals retained by the ad hoc committees. *Id.* at *2. The bankruptcy court granted the debtors' motion under section 363(b) seeking authorization to enter into post-petition reimbursement agreements with certain of the ad hoc committees to pay professional fees and expenses that benefited the estate. *Id.* at *6.[7]

15.     In turn, the United States District Court for the District of Delaware affirmed the bankruptcy court's ruling and held that section 503(b) of the Bankruptcy Code did not apply or otherwise override section 363(b), unequivocally holding that "§ 503(b)'s substantial contribution standard has no role in assessing compliance with §§ 363(b) or 365(b)" and the "business judgment standard" is, as a matter of law, the correct legal standard when a debtor is seeking authority to pay the reasonable fees and expenses of an ad hoc group of tort claimants. *Id.* at *11-13. The district court noted that section 363(b) should be used by debtors to take actions on a prospective basis in accordance with their business judgment. *Id.* In contrast, section 503(b) is used by creditors applying for allowance of administrative expenses for past contributions to the estate. *Id.* at *10.

16.     Similarly, in *Purdue*, the debtors moved to assume a reimbursement agreement and pay reasonable and documented fees pursuant to section 363(b). *See Order Authorizing Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals, In re Purdue Pharma L.P.,* No. 19-23649 (RDD) at 2-3 (Bankr. S.D.N.Y. Dec. 2, 2019) [ECF. No. 553]. The UST, similarly to the UST Objection here, objected and argued that "the code has a more specific standard to pay the fees of an ad hoc committee and that would be under 503(b)(3)(D) and (4) which require the ad hoc committee to show a substantial contribution before their fees can be paid." *In re Purdue Pharma,* Nov. 19, 2019 Hr'g. Tr. At 126:25-127:4. In applying the same reasoning as the bankruptcy court and the district court in *Mallinckrodt*, the bankruptcy court

---

[7] The debtors in *Mallinckrodt* also moved under section 365(a), seeking court approval to assume certain prepetition reimbursement agreements with the remaining ad hoc committees. *Id.*

approved the payments of ongoing fees and expenses of an ad hoc committee pursuant to section 363(b). *Id.* at 153:1-167:23.

17. Similar to both *Mallinckrodt* and *Purdue,* the Debtor, not the AHC of Supporting Counsel, has moved for reimbursement of reasonable professional fees and expenses pursuant to section 363(b). The requests for reimbursement in *Mallinckrodt* and *Purdue* were prospective, just as the request is here. Specifically, the Debtor is requesting reimbursement of fees and expenses at the outset of the Chapter 11 Case, in advance of intensive Court-ordered mediation and negotiations between the AHC of Supporting Counsel, the Debtor, and other stakeholders in order to finalize a consensual plan that benefits all talc claimants. The Debtor expects that the AHC of Supporting Counsel will act as an intermediary between the Debtor and other stakeholders in the case and to assist in confirmation of the Plan.

18. The TCC relies on *In re Boy Scouts of America and Delaware BSA, LLC,* No. 20-10343 (LSS), Aug. 20, 2021 Hr'g. Tr. (Bankr. D. Del Aug. 20, 2021) in arguing that the Motion should be denied. TCC Motion at ¶¶ 21-27. Ironically, just over five months ago, the TCC's counsel filed a motion to approve its expenses—as counsel to an ad hoc group of tort creditors—in *Boy Scouts,* relying heavily on the decisions in both *Mallinckrodt* and *Purdue* and requesting relief under section 363(b), or, **in the alternative**, section 503(b). *Motion of the Coalition of Abused Scouts for Justice for Entry of an Order Approving the Debtors' Proposed Payment of the Coalition Restructuring Expenses, In re Boy Scouts of America and Delaware BSA, LLC,* No. 20-10343 (LSS) at 29-36 (Bankr. D. Del. Dec. 29, 2022) [ECF No. 10808] (the "Boy Scouts Motion"). It is disingenuous and self-serving for the TCC to argue that the Debtor is not entitled to reimburse the AHC of Supporting Counsel for their participation in this case when counsel to the TCC requested substantially similar relief in *Boy Scouts*. *Id.*

8

19. Nonetheless, *Boy Scouts* is inapposite for numerous reasons. Each of the following elements was highlighted by the court in *Boy Scouts* in making its decision to deny the reimbursement of fees sought by the movants. *In re Boy Scouts of America and Delaware BSA, LLC,* No. 20-10343 (LSS), Aug. 20, 2021 Hr'g. Tr. at 20:2-21:22 (Bankr. D. Del Aug. 20, 2021). First, the ad hoc group represented by Brown Rudnick in *Boy Scouts* filed a 2019 statement, which in bold print stated "Coalition counsel are being paid by State Court Counsel." *Id.* at 20:12-19; *see also Second Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019,* No. 20-10343 (LSS) at ¶ 11 (Bankr. D. Del. Oct. 7, 2020) [ECF. No. 1429]. The AHC of Supporting Counsel made no such representations in this case but rather has been negotiating the Reimbursement Agreement with the Debtor since it retained bankruptcy counsel. Second, the court in *Boy Scouts* expressed concerns with duplication of services between the TCC and the Coalition. *See In re Boy Scouts,* Aug. 20, 2021 Hr'g. Tr. at 20:2-7. The same cannot be said for the services provided by the AHC of Supporting Counsel and the TCC in this case. As previously mentioned, the TCC has made clear through its actions that it does not represent the interests of the talc claimants represented by the AHC of Supporting Counsel. Furthermore, the TCC is in no way working with the Debtor, like the AHC of Supporting Counsel is, to create a plan that would provide for a fair settlement of all talc claims. Third, and the most importantly, the fees and expenses requested to be paid to the Coalition in *Boy Scouts* "comes directly or indirectly out of their clients pockets and, indeed, the pockets of all abuse victims." *Id.* at 20:20-21:3. This is absolutely not the case here. The fees and expenses paid by the Debtor to the AHC of Supporting Counsel's counsel and members would be paid separately from the funds used to pay talc claimants and thus would not in any way take money away from talc claimants' recoveries.

20. The Objectors' arguments that the Motion is premature also lack merit. In *Purdue Pharma*, the bankruptcy court disposed of a similar position put forward by "the creditors' committee and its allies" in connection with their objection to the debtors' expense reimbursement motion. Nov. 19, 2019 Hr'g. Tr. at 163:8-164:17. There, the debtors were not yet "at the stage where – let alone there is a plan [of reorganization] but there's not even a restructuring support agreement." *Id.* at 163:8-13 (Drain, J.). The court nonetheless recognized the value of the debtors compensating a uniquely positioned committee of unsecured creditors who would "bring[] structure to this case[,]"[8] provide "clear lines of communication and clearly defined roles[,]"[9] and "be constructive; continue to try to achieve consensus and, most importantly . . . will see the need to continue to contribute in these cases in a way that brings the parties together in an efficient and fair way."[10] Because of the AHC of Supporting Counsel's position in this case, it is uniquely suited to assist the Debtor and its stakeholders in advancing resolution in both mediation and plan negotiations moving forward. The assistance of experienced bankruptcy counsel representing the AHC of Supporting Counsel is critical to continue the momentum in the Chapter 11 Case.

21. In addition, assertions that any "contractual hook" of sorts—in a PSA or otherwise—is a predicate for expense reimbursement under section 363(b) is equally unavailing. In *Mallinckrodt*, the debtors sought to assume certain (prepetition) reimbursement agreements under section 365 of the Bankruptcy Code and sought to enter into another reimbursement agreement (postpetition) under section 363(b) of the Bankruptcy Code. Notably, neither set of reimbursement agreements in *Mallinckrodt* was tied to a restructuring support agreement. With respect to the postpetition reimbursement agreement at issue in *Mallinckrodt*, the debtors simply sought authority to reimburse

---

[8] *Id.* at 163:15-20.
[9] *Id.*
[10] *Id.* at 167:7-20.

10

an ad hoc group's prospective restructuring fees and expenses under section 363(b). The Debtor seeks the same relief under section 363(b), and for the same reasons, the Court should grant the Motion.

## II.   MECHANISM FOR PAYMENT OF AHC LAW FIRM EXPENSES

22.    In its objection, the UST claims that neither the Motion nor the Reimbursement Agreement addresses the mechanism for payment of the AHC Law Firm Expenses.[11] The AHC of Supporting Counsel intends to file the AHC Law Firm Expenses in accordance with the Interim Compensation Procedures but believes that it would be productive to discuss with the UST's office the most efficient mechanism for addressing the filing and payment of the such expenses. Absent an agreement with the UST's office, the AHC of Supporting Counsel proposes that any such expenses will be filed in accordance with the Interim Compensation Procedures as part of combined monthly and interim fee applications for all AHC Law Firm Expenses.

## CONCLUSION

For all the reasons set forth herein, the AHC of Supporting Counsel respectfully requests that this Court grant the Motion and authorize the Debtor to enter into the Reimbursement Agreement.

Dated: June 9, 2023                                                         **COLE SCHOTZ P.C.**

                                                    /s/ *Michael D. Sirota*
                                                  Michael D. Sirota (NJ Bar No. 014321986)
                                                  Warren A. Usatine (NJ Bar No. 025881995)

---

[11]    The UST also suggests that a conflict exists with respect to Cole Schotz's representation of the AHC of Supporting Counsel and the firm's representation of the debtors in *Whittaker, Clark & Daniels, Inc., et al.*, Case No. 23-13575 (MBK) ("WCD"). UST Objection at n. 7. No such conflict exists. Based on Cole Schotz's information and belief following reasonable inquiry, Johnson & Johnson and the WCD debtors are co-defendants in certain talc litigations, but manufactured and/or distributed separate talc products and the talc claims asserted against them are unrelated. Members of the AHC of Supporting Counsel were advised of Cole Schotz's retention by WCD prior to the firm's retention in this case. Cole Schotz's representation of the AHC of Supporting Counsel was disclosed in the firm's retention application filed in the WCD cases. *See Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Cole Schotz P.C. as Bankruptcy Co-Counsel to the Debtors Nunc Pro Tunc to the Petition Date*, Case No. 23-13575 (MBK) [ECF No. 159].

Seth Van Aalten (*admitted pro hac vice*)
Justin Alberto (*admitted pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, NJ 07602-0800
(201) 489-3000
Email:  msirota@coleschotz.com
        wusatine@coleschotz.com
        svanaalten@coleschotz.com
        jalberto@coleschotz.com

– and –

**PAUL HASTINGS LLP**

Kristopher M. Hansen (*admitted pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Email:  krishansen@paulhastings.com

Matthew M. Murphy (*admitted pro hac vice*)
Matthew Micheli (*admitted pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: (312) 499-6000
Email:  mattmurphy@paulhastings.com
        mattmicheli@paulhastings.com

– and –

**PARKINS & RUBIO LLP**

Lenard M. Parkins (*admitted pro hac vice*)
Charles M. Rubio (*admitted pro hac vice*)
700 Milam, Suite 1300
Houston, TX 77002
Telephone: (713) 715-1660
Email:  lparkins@parkinsrubio.com
        crubio@parkinsrubio.com

*Counsel to AHC of Supporting Counsel*