**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |

**DEBTOR'S REPLY IN SUPPORT OF MOTION FOR AN ORDER**
**AUTHORIZING IT TO ENTER INTO EXPENSE REIMBURSEMENT**
**AGREEMENT WITH AD HOC COMMITTEE OF SUPPORTING COUNSEL**

The above-captioned debtor (the "Debtor") files this reply and the declaration of

John K. Kim (the "Kim Declaration"), attached hereto as Exhibit A, in support of the *Debtor's*

*Motion for an Order Authorizing It to Enter Into Expense Reimbursement Agreement with*

*Ad Hoc Committee of Supporting Counsel* [Dkt. 575] (the "Motion")[2] and in response to the

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is
501 George Street, New Brunswick, New Jersey 08933.

[2]     Capitalized terms used herein but not otherwise defined have the meanings given to them in the Motion.

objections filed by the Official Committee of Talc Claimants (the "<u>TCC</u>") [Dkt. 707]

(the "<u>TCC Objection</u>"), Maune Raichle Hartley French & Mudd, LLC ("<u>MRHFM</u>") [Dkt. 711]

(the "<u>MRHFM Objection</u>"), and the United States Trustee (the "<u>U.S. Trustee</u>" and, collectively

with MRHFM and the TCC, the "<u>Objectors</u>") [Dkt. 713] (the "<u>U.S. Trustee Objection</u>, and,

collectively with the TCC Objection and the MRHFM Objection, the "<u>Objections</u>").

## **<u>PRELIMINARY STATEMENT</u>**

The Reimbursement Agreement provides multiple important benefits to

the Debtor's estate.  Critically, it enables the Ad Hoc Committee of Supporting Counsel

(the "<u>AHC of Supporting Counsel</u>"), which consists of counsel who represent the vast majority

of the talc claimants, to retain experienced professionals and work with those professionals and

the Debtor to finalize the Debtor's proposed plan of reorganization and to fully participate in the

bankruptcy case, including the confirmation process.  Without it, there is no assurance that the

AHC of Supporting Counsel would continue to engage to the extent necessary to move the plan

process and this case forward.  Additionally, approval of the Reimbursement Agreement will

ensure that the Court and all parties in interest will hear the perspective of plaintiff firms

representing the substantial majority of talc claimants in this case.  Absent approval, there may

be no claimant counter-balance to the views of the TCC, which is comprised of plaintiff firms

representing a minority of claimants, many of which firms have conflicts of interest, whose sole

aim is to prevent a bankruptcy reorganization and even a claimant vote.

The Objectors, all of which oppose the Debtor's plan, all of which seek to dismiss

this Chapter 11 Case and all of which vehemently disagree with the contrary views of the AHC

of Supporting Counsel, not surprisingly object to the Reimbursement Agreement.  Their

opposition is yet another attempt to disrupt and undermine the Debtor's efforts to confirm a plan

supported by plaintiff firms representing approximately 60,000 claimants.  The Objections

should be overruled.

       As an initial matter, the Debtor's request to enter into the Reimbursement

Agreement is not premature.  In point of fact, the Court already has ruled that this Chapter 11

Case may proceed while the Objectors' motions to dismiss are pending, and that it would permit

the plan process to move forward on a "dual track".  <u>See</u> May 16, 2023 Hr'g Tr. 39:8-15.  In

addition, although the Reimbursement Agreement is not necessary to secure the support of the

AHC of Supporting Counsel for a plan of reorganization that contains the terms set forth in the

plan support agreements, the Objectors ignore the substantial work that is required to draft and

finalize a plan of reorganization, a disclosure statement and all related documents.  The Debtor's

entry into the Reimbursement Agreement will ensure that the AHC of Supporting Counsel will

actively participate in finalizing the Debtor's plan, disclosure statement and related documents,

plus all other aspects of the confirmation process, including all hearings related thereto.  Absent

the Reimbursement Agreement, the Debtor would be required to negotiate with each member

counsel individually, resulting in added cost and delay, to the detriment of the Debtor's estate.

       In addition, the Debtor has properly sought authority to enter into the agreement

pursuant to section 363 of the Bankruptcy Code.  The U.S. Trustee and the TCC dispute that this

Court has the authority to approve the agreement based on an impractical and misguided reading

of the Bankruptcy Code that has been rejected by this and other courts.  The U.S. Trustee repeats

the same arguments that this Court rejected in the Debtor's prior chapter 11 case (the "<u>2021</u>

<u>Chapter 11 Case</u>").[3]  For its part, the TCC relies on a ruling by the Delaware bankruptcy court in

the <u>Boy Scouts of America</u> case that is distinguishable and inconsistent with this Court's prior

---

[3]    <u>See</u> <u>In re LTL Mgmt. LLC</u>, No. 21-30589 (MBK) (Bankr. D.N.J. June 24, 2022) [Dkt. 2585].

ruling. As this Court previously found, section 503(b) is not the exclusive means to pay creditor professional fees and expenses. Courts routinely authorize payment of such fees and expenses under other sections of the Bankruptcy Code, including section 363. Nor are sections 503(b) and 363 in conflict such that the Court must apply the more specific provision over the more general one, as the U.S. Trustee argues. Rather, they simply apply in different circumstances. Section 503(b) addresses requests for allowance of administrative expenses, which are typically made by a creditor or committee and are retrospective. By contrast, only a debtor or trustee can seek authority to make payments pursuant to section 363(b), and such requests can be made for prospective fees and expenses.

Approval of the Reimbursement Agreement will assist the Debtor in moving this case forward and ensure that the voices of the majority of claimants will be heard. The Objectors have offered no legitimate basis to deny the requested relief. The Debtor respectfully requests that the Court overrule the Objections and grant the Motion.

## **REPLY**

### I.    **The Motion Is Not Premature.**

1.    The TCC and MRHFM object to the Motion as premature because of the pending motions to dismiss. See TCC Obj. ¶¶ 25, 33; MRHFM Obj., 1-3. But the Court already has denied the TCC's request to stay the case pending a ruling on those motions.[4] And the Court has indicated that it is "still pursuing and allowing a dual track" of dismissal litigation and a plan process. See May 16, 2023 Hr'g Tr. 39:8-15.

---

[4]    See *Order Denying Cross Motion of Official Committee of Talc Claimants for Entry of Order and Other Related Relief*, Dkt. 543.

NAI-1537142631

2.        Consistent with that, the Debtor and the AHC of Supporting Counsel are continuing to work to finalize the details of the Debtor's proposed plan of reorganization and related documents.  This process takes time and substantial effort.  The Debtor's entry into the Reimbursement Agreement will permit the AHC of Supporting Counsel to continue to engage experienced professionals and devote the time and resources necessary to finalize the plan of reorganization and related documents, address other matters in the Chapter 11 Case and participate in the Court-ordered mediation.  See Mot. ¶ 19.

## II.    The Reimbursement Agreement Benefits the Debtor's Estate and Represents a Sound Exercise of the Debtor's Business Judgment.

3.        The Objectors oppose the Motion notwithstanding the obvious benefits of the Reimbursement Agreement to the Debtor's estate.  These benefits include that (a) it enables the AHC of Supporting Counsel to work on the proposed plan as needed and otherwise participate in all aspects of this case, including the mediation, ensuring that the voices of the majority of claimants will be heard, and (b) the AHC of Supporting Counsel may serve as an intermediary between the Debtor and other claimants, facilitating communications to and from claimants regarding the plan and other issues that may arise in the case.  The Debtor also has the ability to terminate the Reimbursement Agreement if it determines the agreement is no longer beneficial to the estate.  See Mot. ¶¶ 20-22; see also Kim Decl. ¶¶ 3-4.  In sum, the Reimbursement Agreement will provide substantial benefits to the Debtor's estate.  See In re Mallinckrodt PLC, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 19, 2021), Hr'g Tr. 11:5-7, Dkt. 1189 ("I'm convinced that good faith participation of the ad hoc groups in the mediation process is, in and of itself, beneficial to the debtors' estates as a whole.").

4.        The U.S. Trustee asserts that "neither the Motion or the Reimbursement Agreement outline the manner in which AHC Law Firms' costs will be reimbursed, nor how

-5-

parties in interest will be advised of the amounts."  U.S. Trustee Obj. ¶ 35.  To clarify, the

Reimbursement Agreement provides that Professionals will file monthly fee statements pursuant

to the Interim Compensation Order with respect to the Fees and Expenses.  See Mot. ¶ 12.

Accordingly, any statements of member expenses would be collected and submitted by counsel

to the AHC of Supporting Counsel consistent with paragraph 6 of the Interim Compensation

Order.[5]

5.      In addition, the U.S. Trustee argues that the termination provision in the

Reimbursement Agreement is detrimental because the Debtor would be required to reimburse

Fees and Expenses payable through the date of the termination, even if the plan of reorganization

is not finalized or confirmed.  U.S. Trustee Obj. ¶ 36.  But the Reimbursement Agreement is

beneficial even if a plan of reorganization supported by the AHC of Supporting Counsel is

ultimately not confirmed.  The applicable standard is whether the Reimbursement Agreement

will facilitate progress in this Chapter 11 Case, not whether the efforts of the Debtor and the

AHC of Supporting Counsel ultimately are successful.  In addition, the Debtor's right to

terminate the agreement and, thus, avoid additional costs if it determines that the agreement is no

---

[5]      The U.S. Trustee suggests that payment of AHC of Supporting Counsel members' expenses "may not be permissible" because "[s]ection 503(b)(4) only allows for reimbursement of fees of attorneys and accountants."  U.S. Trustee Obj. ¶ 23.  But the Debtor is seeking approval under section 363(b), not authority to reimburse professional fees and expenses pursuant to section 503(b)(4).  Thus, any limitation applicable to section 503(b)(4) is inapplicable here.  Further, the U.S. Trustee's position is at odds with decisions of other courts.  In both Purdue Pharma and Mallinckrodt, the courts expressly prohibited the reimbursement of ad hoc committee **members' attorney's fees** (rather than the ad hoc committees themselves) or similar professional fees, but permitted members to be reimbursed for their out of pocket expenses, to the extent such expenses were incurred consistent with the scopes of the respective reimbursement agreements (i.e., were in furtherance of benefiting the estate as a whole rather than the committee member).  In re Purdue Pharma L.P., No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019), Dkt. 553 ¶ 4 (ad hoc committee members' requests for payment included reasonable and documented expenses incurred in furtherance of their service on the ad hoc committee, but excluded fees and expenses of any professional retained by any member); Mallinckrodt, Dkt. 1250 ¶ 5 (debtors authorized to pay reasonable and documented expenses incurred by ad hoc committees' members in furtherance of their service on the committees, but excluded fees for services rendered by any professional employed by any member).

-6-

longer beneficial to the estate is a valuable contractual right that should fully address the U.S.

Trustee's concern.  See Kim Decl. ¶ 4.

6.      Finally, the U.S. Trustee criticizes the Debtor for not including a

declaration with the Motion even though the benefits of the Reimbursement Agreement are

apparent.  U.S. Trustee Obj. ¶ 35.  Nevertheless, to address the U.S. Trustee's concern, the

Debtor has submitted the Kim Declaration with this reply to provide evidentiary support for the

relief requested by the Motion.

7.      As demonstrated by the Motion and the Kim Declaration, the Debtor's

entry into the Reimbursement Agreement is a reasonable exercise of its business judgment and is

in the best interests of the estate.

## III.   The Debtor's Entry Into the Reimbursement Agreement
## Is Subject to Approval Under Section 363(b) of the Bankruptcy Code

8.      The U.S. Trustee argues that the Motion cannot be approved pursuant to

section 363(b) of the Bankruptcy Code.  See, e.g., U.S. Trustee Obj. ¶¶ 32-37.  As in the

2021 Chapter 11 Case, the U.S. Trustee argues that the Debtor may seek to reimburse the AHC

of Supporting Counsel's professionals' fees and expenses **only** pursuant to section 503(b) of the

Bankruptcy Code and only at the conclusion of this case.[6]  Id. ¶¶ 16-31; see also In re LTL

Mgmt. LLC, No. 21-30589 (MBK) (Bankr. D.N.J. June 7, 2022) [Dkt. 2427] (the "2022 U.S.

Trustee Objection") ¶¶ 18-33 (asserting the same arguments and relying on the same cases as it

---

[6]      The U.S. Trustee's reliance on In re Lehman Bros. Holdings, Inc., 508 B.R. 283 (S.D.N.Y. 2014), is
misplaced.  In that case, the district court held that a **plan provision** that awarded an administrative
expense claim for professional fees to a member of an official committee was inconsistent with
section 503(b) because that section does not authorize administrative expense claims on account of
"professional fee expenses for official committee members."  Id. at 290; see also Purdue Pharma, Nov.
19, 2019 Hr'g Tr. 153:21-154:13, Dkt. 550 (distinguishing Lehman on basis that it only addressed whether
professional fees for an individual committee member could be paid pursuant to a plan of reorganization).
Here, the Debtor is neither seeking to award the AHC of Supporting Counsel an administrative expense
claim under a plan of reorganization nor is it seeking to compensate individual members of an official
committee for their independent legal counsel.

NAI-1537142631

does in the U.S. Trustee Objection, at times verbatim).  But section 503(b) is not the exclusive means to pay creditor professional fees.  Courts routinely authorize payment of creditors' professional fees under other sections of the Bankruptcy Code, including section 363.  In point of fact, as the U.S. Trustee concedes, U.S. Trustee Obj. ¶ 32 n. 8, in circumstances similar to those here, the Mallinckrodt court authorized payment of future professional fees and expenses of various parties, including an ad hoc committee, pursuant to section 363 of the Bankruptcy Code. See also 2022 U.S. Trustee Obj. ¶ 34 n. 8.

9.    The U.S. Trustee's argument that section 503(b) exclusively applies because "a specific statutory provision governs a general one," U.S. Trustee Obj. ¶ 25, is misguided.  This rule of statutory construction applies only where there is conflict between the statutory provisions, and there is no conflict here, as this Court previously determined.  In re LTL Mgmt. LLC, No. 21-30589 (MBK) (Bankr. D.N.J. June 14, 2022) [Dkt. 2512] (the "2022 June Hearing Transcript") June 14, 2022 Hr'g Tr. 54:1-17 ("This Court is of the opinion that 363 and 503 can work hand and hand and work together to achieve this result.").[7]

10.    Section 503(b) of the Bankruptcy Code addresses requests for allowance of a broad array of administrative expenses—including taxes, wages and salaries—in addition to requests of creditors for reimbursement of professional fees under section 503(b)(4).  See 2022 June Hr'g Tr. 54:3-9 ("503(b) reads, after notice and a hearing, there shall be allowed administrative expenses other than claims allowed under Section 502(f) of this title, including, and then you go to (1)(a), the actual necessary costs and expenses of preserving the estate including.  In other words, use of the term 'including' is by the very terms of Section 102, not

---

[7]    See In re Udell, 454 F.3d 180, 186 (3d Cir. 2006); Greene v. United States, 79 F.3d 1348, 1355 (2d Cir. 1996).

NAI-1537142631

meant to be limiting.").  Typically, applications for allowance of administrative expenses and, in particular, requests pursuant to section 503(b)(4) are made by a **creditor** or **committee**, and such requests are retrospective.[8]  11 U.S.C. § 503(b).  By contrast, only a debtor or trustee can seek to make payment pursuant to section 363(b), and requests for payment under that section can be made for prospective payment.  Debtors frequently seek and obtain authority to pay currently taxes, wages and other administrative expenses pursuant to section 363(b).  If those amounts were not currently paid, requests for payment could later be brought pursuant to section 503(b).  Thus, the two Bankruptcy Code provisions apply, as recognized by Judge Drain in the Purdue Pharma case and Judge Dorsey in the Mallinckrodt case,[9] in different circumstances.  As the courts in Purdue Pharma and Mallinckrodt also recognized, section 363, not section 503(b), is the appropriate mechanism to seek the relief requested here.  See id.; see also 2022 June Hr'g Tr. 53:25-56:1 ("With respect to whether the relief sought would be limited to relief available under Section 503(b), I do not share the U.S. Trustee's more limited view of that statute of that section. . . .  The Court agrees with the rulings and holdings in Mallinckrodt and Purdue [that] the Court retains the authority under 363(b).").

---

[8]     Section 503(b) typically applies to requests for retrospective reimbursement.  However, at least one court has applied section 503(b) to approve prospective payment of professional and other fees so long as the agreement benefited the estate.  See In re RCS Capital Corp., No. 16-10223 (MFW) (Bankr. D. Del. Mar. 16, 2016), Hr'g Tr. at 40:11-41:12, Dkt. 334 (approving fees requested in restructuring support agreement pursuant to the legal standard in section 503 and overruling an objection by the U.S. Trustee that such fees could only be approved retroactively upon confirmation of the plan contemplated by the restructuring support agreement in that case); see Mot. ¶ 17.

[9]     Purdue Pharma, Nov. 19, 2019 Hr'g Tr. 155:22-24, 157:13-16, Dkt. 550 ("Those provisions continue to serve a purpose, a separate purpose.  I agree with that analysis. . . . So I conclude that the proper standard to review this motion under is, in fact, the standard applicable which I believe is applicable to both sections, 363(b) and Section 365 of the Bankruptcy Code."); Mallinckrodt, Dec. 14, 2020 Hr'g Tr. 34:1-5, Dkt. 852 ("I agree with the debtors that Section 363 provides the procedural mechanism for a debtor to seek the authority to make payments to unsecured creditor groups that if the group, itself, sought payment it would need to be made pursuant to Section 503.").

NAI-1537142631

11.     And <u>Purdue Pharma</u> and <u>Mallinckrodt</u> are not the only cases that have so found.  In <u>Bethlehem Steel</u>, the district court directly addressed whether a bankruptcy court properly authorized, pursuant to section 363(b), the debtors' prospective payment of professional fees of a union representing the debtors' employees.  <u>See</u> <u>In re Bethlehem Steel Corp.</u>, 2003 WL 21738964, at *1 (S.D.N.Y. July 28, 2003).  In that case, the debtors entered into reimbursement letters with the union, post-petition, to permit the union to undertake due diligence and analysis to enable it to participate in discussions regarding a restructuring of the debtors.  <u>Id.</u>  The district court disagreed with the U.S. Trustee (the sole objector), and found that sections 363(b) and 503(b) "serve different purposes in bankruptcy proceedings" and that the "authorization of certain types of payments under § 363(b) is not prohibited simply because there is another section of the Bankruptcy Code related to the same type of payment."  <u>Id.</u> at *10-11.  The district court affirmed the bankruptcy court's application of section 363(b) to approve the reimbursement arrangement and the court's finding that the arrangement was "in the best interests of the Debtors and all parties in interest."  <u>Id.</u> at *12.

12.     The TCC's reliance on the Delaware bankruptcy court's decision in <u>In re Boy Scouts of America</u>, No. 20-10343 (LSS) (Bankr. D. Del. Aug. 19, 2021) is misplaced.  In that case, Judge Silverstein **<u>agreed</u>** that section 363 was a proper "vehicle to bring a request to pay fees of a creditor" but then stated that the "standard to apply is a 503 standard" and, contrary to this Court's holding in the 2021 Chapter 11 Case, did not approve prospective reimbursement of an ad hoc group's fees and expenses.  <u>Boy Scouts</u>, Aug. 19, 2021 Hr'g Tr. 19:22-20:1 (attached as Ex. A to TCC Obj.).  In so ruling, Judge Silverstein focused on (a) the fact that the ad hoc group represented the same constituency as the official committee of tort claimants in that case and thus, services were likely being duplicated, <u>id.</u> at 20:3-11, and (b) that funds, in an

NAI-1537142631

expressly insolvent case, would be diverted from abuse victims.  Id. at 20:22-21:3; see also id. at 20:2-3 ("Here, I have several concerns that cause me to deny the request **at this point in time**.") (emphasis added).  Under those circumstances, Judge Silverstein emphasized that the ad hoc group needed to make clear that it was making a substantial contribution.  Id. at 21:4-22; see also id. at 21:18-19 ("In the **circumstances of this case**, I think it is necessary to see the outcome of the coalition's efforts.") (emphasis added).

13.    The circumstances here are vastly different.  There will likely be no duplication of services between the TCC and the AHC of Supporting Counsel.  As noted above, no claimant whose counsel supports this Chapter 11 Case or the Debtor's proposed plan was appointed to the TCC.  In contrast, the AHC of Supporting Counsel comprises counsel who entered into plan support agreements and support this bankruptcy case.  Thus, far from duplication, the AHC of Supporting Counsel, whose members represent the vast majority of claimants, has been and will likely continue to be expressing views and engaging in activities that are completely different from the views and actions of the TCC.[10]  Further, unlike in the Boy Scouts case, the Debtor's proposed plan of reorganization will fully satisfy its talc liability, and the Debtor has sufficient resources to provide the necessary trust funding called for by the plan plus pay its obligations under the Reimbursement Agreement and the expenses of this Chapter 11 Case.

---

[10]    MRHFM repeats its disdain for this Chapter 11 Case and complains that the Debtor did not support the appointment of a separate official committee of mesothelioma claimants (and future claimants' representative with respect to mesothelioma claims).  But the Debtor's bases for disputing the appointment of multiple official committees and future claimants' representatives were different.  See In re LTL Mgmt. LLC, No. 21-30589 (MBK) (Bankr. D.N.J. January 3, 2022) [Dkt. 1047] ¶¶ 24-31 (highlighting (a) lack of precedent for multiple committees representing different disease categories, (b) the substantially higher number of ovarian cancer claims as compared to mesothelioma claims, and (c) the confusion, potential delay, costs and duplication that would result from two committees); see In re LTL Mgmt. LLC, No. 21-30589 (MBK) (Bankr. D.N.J. March 23, 2022) [Dkt. 1834] ¶¶ 18-29 (raising similar arguments).  Key to the Debtor's opposition was that appointment of two committees would have substantially duplicated efforts, which is not the case here, and provided no benefit.

-11-

14.     In any event, although the Debtor is not seeking approval of the Motion pursuant to section 503(b) of the Bankruptcy Code as set forth above, the relief requested by the Debtor is consistent with the underlying policies of that section—that is, that payments are made for "work that benefit[s] the estate as a whole, not individual creditors."[11] Mallinckrodt, Dec. 14, 2020, Hr'g Tr. 36:4-5, Dkt. 852; see also Purdue Pharma, Nov. 19, 2019 Hr'g Tr. 163:24-164:1, Dkt. 550 ("the work that would be compensated here would be appropriately compensated and be to the benefit of all the parties in this case."); Bethlehem Steel, 2003 WL 21738964, at *10 ("Section 363(b) does not permit the debtor in possession to use funds solely to benefit a creditor.  If the payment of a creditor's fees were simply aimed at helping the creditor promote its own self-interest, the payment would not be permitted under § 363(b).  The bankruptcy court may not authorize the use of funds under § 363(b) unless it finds 'a good business reason' for the expenditure.").  That is "in fact, the standard under 503(b)." Mallinckrodt, Dec. 14, 2020, Hr'g Tr. 36:5-6, Dkt. 852.  Here, as set forth above and in the Motion, the Debtor's entry into the Reimbursement Agreement will provide substantial benefits to the estate as a whole.  Accordingly, the Debtor respectfully submits that the Objections should be overruled and the Motion should be approved.

---

[11]     The TCC and the U.S. Trustee question whether the AHC of Supporting Counsel could satisfy the substantial contribution standards under section 503 of the Bankruptcy Code because the group is composed of counsel to claimants, rather than the claimants themselves.  See TCC Obj. ¶ 27; U.S. Trustee Obj. ¶ 21 n.5.  However, the AHC of Supporting Counsel has represented and the Court previously accepted (although in a different context) that the members of the AHC of Supporting Counsel "do represent the interests of thousands of creditors for whose identity they have supplied, at least in limited fashion."  See May 9, 2023 Hr'g Tr. 68:9-13.

NAI-1537142631

## CONCLUSION

For all of the reasons set forth above, the Debtor respectfully requests that the

Court overrule the Objections, authorize the Debtor to enter into the Reimbursement Agreement

and grant such further relief to the Debtor as the Court may deem proper.

Dated:  June 9, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

NAI-1537142631