**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| | **Hearing Date and Time:**<br>June 13, 2023 at 10:00 a.m. |

### DEBTOR'S OBJECTION TO MOTION
### TO TERMINATE THE DEBTOR'S EXCLUSIVE PERIODS TO
### FILE A PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES THEREOF

LTL Management LLC, the above-captioned debtor (the "Debtor") files this

objection to the motion to terminate the Debtor's exclusive periods to file a plan of

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1536929421

reorganization and solicit acceptances thereof filed by the Official Committee of Talc Claimants (the "TCC") [Dkt. 702] (the "Motion").

## Preliminary Statement

By the Motion, the TCC seeks extraordinary relief: to terminate the Debtor's exclusive periods to file and solicit acceptances of a plan of reorganization a mere *two months* after the filing of this chapter 11 case and less than *one month* after the Debtor did what it said it would under the plan support agreements—file a disclosure statement and a plan of reorganization reflecting the terms supported by counsel representing tens of thousands of claimants. Even more extraordinarily, the TCC seeks this relief without even submitting an alternative plan or describing it in anything more than vague and generic terms. But the governing statute and case law make plain that, in complex chapter 11 cases such as this one, exclusivity should be maintained during the early stages of the cases, especially where, as here, the debtor has made, and is continuing to make, progress toward a successful reorganization. Indeed, case law is clear that progress toward confirmation of a plan alone is sufficient to warrant an *extension* of the exclusive periods.

Although it has not filed or disclosed the terms of its alternative plan, the TCC requests termination of exclusivity so that it can file a plan at some indeterminate point in the future that will purportedly be "better" and "vastly superior to LTL's plan" and will provide claimants "with a superior recovery." According to the TCC, this will be beneficial because once the undisclosed plan is filed it will provide claimants with a choice. But courts have expressly rejected requests to terminate exclusivity based on a creditor's unhappiness with the terms of a debtor's plan and the creditor's desire to propose its own purportedly better plan. The reason is that Congress intended for the debtor to have the first opportunity to propose and seek to confirm a plan without the distractions of a competing plan.

2

Further, the TCC does not explain how its undisclosed plan could be "better" for talc claimants than the Debtor's proposed plan, which contains a commitment by the Debtor to pay the unprecedented sum of $8.9 billion on a net present value basis to fund a trust that would timely, equitably and efficiently pay all current and future talc claims. The proposed treatment of claimants under the Debtor's proposed plan stands in stark contrast to their experience in the tort system where the vast majority of claims received no recovery. If ultimately approved by the Court, the Debtor's plan would represent the largest settlement ever reached in an asbestos bankruptcy case, even cases where (unlike here) the manufacturer conceded that its products contained asbestos. And it would constitute the largest resolution in any mass tort product liability bankruptcy case. Further, the TCC does not explain how its alternative plan would fund any payments to talc claimants, much less in amounts higher than under the Debtor's unprecedented plan. Under the funding arrangements between and among the Debtor, Johnson & Johnson (NA) Inc. and Johnson & Johnson, no funding is available for the TCC's undisclosed plan.

Finally, the TCC ignores that a competing plan process would impede progress on the Debtor's plan. Among other things, it would disincentivize parties from engaging meaningfully in the Court-ordered mediation and remaining plan negotiations, potentially derailing altogether the Debtor's efforts to reorganize.

The TCC bears the heavy burden of establishing cause for terminating the Debtor's exclusivity under section 1121(d) only two months into the case, and it falls woefully short. While the Motion makes clear that the TCC, which is comprised of plaintiff firms representing a minority of claims that vehemently oppose this case and the Debtor's proposed plan, it offers no legitimate basis to cut short the Debtor's exclusive opportunity to pursue

3

confirmation of a plan, particularly one supported by the vast majority of claimants. Now is not the time to embroil this case in even more litigation, distracting the Debtor, representatives of the majority of claimants and other parties from finalizing and pursuing confirmation of the Debtor's proposed plan that would timely, equitably and efficiently provide compensation to talc claimants and needlessly injecting uncertainty and delay into the plan process. The Court should deny the TCC's requested relief, which is yet another scorched earth attempt to disrupt this case and halt the plan process.

## Objection

**I.     The TCC Has Not Met Its Heavy Burden of Establishing Cause to Terminate the Debtor's Exclusive Periods at This Early Stage of the Chapter 11 Case.**

1.     Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a plan of reorganization during the first 120 days after the commencement of a chapter 11 case. If a debtor files a plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code grants the debtor an additional 60 days during which the debtor may solicit acceptances of that plan, and no other party in interest may file a competing plan.

2.     Section 1121(d) of the Bankruptcy Code provides that the Court may, "for cause," extend or reduce these periods: "[o]n request of a party in interest . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). Although the Bankruptcy Code does not define "cause," a number of courts have construed the term based on an examination of the Bankruptcy Code's underlying legislative history. See, e.g., Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003); Cont'l Cas. Co. v. Burns & Roe Enters., Inc. (In re Burns & Roe Enters., Inc.), No. 00-41610, 2005 WL 6289213, at *3-4

4

(D.N.J. Nov. 2, 2005); In re Newark Airport/Hotel Ltd. P'ship, 156 B.R. 444, 451 (Bankr. D.N.J. 1993); In re All Seasons Indus., Inc., 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990). In determining whether cause exists, courts have relied on a variety of factors. See In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (finding that "granting or denial of [extension] request is within the discretion of the bankruptcy court" and listing various factors considered in determining whether debtor has shown cause to justify the grant of an extension); Hoffinger, 292 B.R. at 644 ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); In re Homestead Partners Ltd., 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (applying only those factors relevant to the case at hand); Geriatrics Nursing Home, Inc. v. First Fid. Bank, N.A. (In re Geriatrics Nursing Home, Inc.), 187 B.R. 128, 132 (D.N.J. 1995) ("[Section 1121(d)] grants great latitude to the Bankruptcy Judge in deciding, on a case-specific basis whether to modify the exclusivity period on a showing of cause").[2]

        3.      The movant bears the burden of establishing cause to terminate the exclusivity periods. See In re Texaco Inc., 81 B.R. 806, 813 (Bankr. S.D.N.Y. 1988) ("The [moving party] has not sustained their burden of establishing cause within the meaning of 11 U.S.C. § 1121(d) for modifying or terminating Texaco's exclusive right to proceed with its plan of reorganization"). This burden is particularly heavy where the movant seeks to terminate the initial statutory periods in section 1121(b) of the Bankruptcy Code. Geriatrics

---

[2] The following factors, among others, have been identified by courts as being relevant in determining whether "cause" exists to extend (or terminate) exclusivity: "1.) the size and complexity of the case, 2.) the necessity of sufficient time to negotiate and prepare adequate information, 3.) the existence of good faith progress, 4.) whether the debtor is paying its debts as it becomes due, 5.) whether the debtor has demonstrated reasonable prospects for filing a viable plan, 6.) whether the debtor has made progress negotiating with creditors, 7.) the length of time a case has been pending, 8.) whether the debtor is seeking an extension to pressure creditors, and 9.) whether or not unresolved contingencies." Cent. Jersey Airport Servs., 282 B.R. at 184.

NAI-1536929421

Nursing Home, 187 B.R. at 132 ("A party in interest which seeks to establish cause to terminate the exclusivity period bears a heavy burden") (internal quotations omitted); In re Lehigh Valley Prof'l Sports Clubs, Inc., No. 00-11296 DWS, 2000 WL 290187, at *2 (Bankr. E.D. Pa. Mar. 14, 2000) ("when th[e] change [to the exclusive period] is a reduction in the statutory period, the burden is especially heavy").

4. Courts have stated that "cause to reduce the exclusivity period should only be found in extraordinary circumstances." In re Energy Conversion Devices, Inc., 474 B.R. 503, 508 (Bankr. E.D. Mich. 2012); Lehigh Valley, 2000 WL 290187, at *4 ("In the 22 years since the exclusivity provision was promulgated in the Bankruptcy Reform Act of 1978, there have only been two reported cases that permitted shortening the exclusivity period").[3] This is because Congress intended that a debtor would have the first, meaningful opportunity in a case to propose a plan. As explained in Lehigh Valley, "[i]n electing to change the pre-Code scheme of unlimited exclusivity for the debtor, Congress could have allowed any party to file a plan from the inception of the case. It chose not to, rather retaining debtor exclusivity for 120 days." Lehigh Valley, 2000 WL 290187, at *2 (citing H.R. Rep. No. 595, 95th Cong., 1st sess. 402 (1977), at 406). As the Lehigh Valley court further explained, "[g]iven bankruptcy's overarching goal of consensual reorganization, it not surprising that Congress would have elected to preclude competing plans in the formative period of the Chapter 11 case." Id. at *3 (citing In re Grand Traverse Dev. Co. Ltd. P'ship, 147 B.R. 418, 419 (Bankr. W.D. Mich 1992)).

---

[3] See In re Crescent Beach Inn, Inc, 22 B.R. 155, 161 (Bankr. D. Me. 1982) (finding cause to shorten the debtor's exclusivity period where principals of the debtor had an "acrimonious" relationship that the court found presented a "major obstacle" to a plan of reorganization); Pickens Indus. Inc., v. Palmer, Palmer and Coffee (In re Texas Extrusion Corp.), 68 B.R. 712 (N.D. Tex. 1986), aff'd 844 F.2d 1142 (5th Cir. 1988) (finding that terminating exclusive period was appropriate where there was an acrimonious relationship between the parties and the individual debtor, whose case was filed significantly after the other related corporate and individual cases and did not have any individual property or creditors that were not already being addressed in other related bankruptcies).

6

5. In complex mass tort chapter 11 cases like this case, courts have not terminated exclusivity but instead routinely extend a debtor's exclusive periods, often for the full time period provided under the Bankruptcy Code.[4]

**A. The TCC's Desire To File An Alternative Plan Is Not a Basis For Terminating Exclusivity.**

6. The TCC's primary argument is that the Debtor should be stripped of its statutory right to exclusively file and solicit acceptances of a plan for at least the first 180 days

---

[4] See In re Mallinckrodt plc, No. 20-12522 (JTD) (Bankr. D. Del. Mar. 25, 2022), Dkt. 6941 (order extending the debtors' exclusive period to file a plan to Apr. 12, 2022 and exclusive period to solicit the plan to June 13, 2022, 18 and 20 months after the petition date of Oct. 12, 2020, respectively); In re The Diocese of Camden, N.J., No. 20-21257 (JNP) (Bankr. D.N.J. Feb. 25, 2022), Dkt. 1215 (order extending the debtors' exclusive period to file a plan to Apr. 1, 2022 and exclusive period to solicit the plan to June 1, 2022, 18 and 20 months after the petition date of Oct. 1, 2020, respectively); In re Aldrich Pump LLC, No. 20-30608 (JCW) (Bankr. W.D.N.C. Sept. 9, 2021), Dkt. 826 (order extending the debtors' exclusive period to file a plan to Dec. 18, 2021 and exclusive period to solicit the plan to Feb. 16, 2022, approximately 18 and 20 months after the petition date of June 18, 2020, respectively); In re Boy Scouts of Am., No. 20-10343 (LSS) (Bankr. D. Del. Aug. 18, 2021), Dkt. 6076 (order extending the debtors' exclusive period to file a plan to Aug. 18, 2021 and exclusive period to solicit the plan to Oct. 18, 2021, 18 and 20 months after the petition date of Feb. 18, 2020, respectively); In re Paddock Enters., LLC, No. 20-10028 (LSS) (Bankr. D. Del. May 24, 2021), Dkt. 866 (order extending the debtors' exclusive period to file a plan to July 6, 2021 and exclusive period to solicit the plan to Sept. 6, 2021, 18 and 20 months after the petition date of Jan. 6, 2020, respectively); In re DBMP LLC, No. 20-30080 (JCW) (Bankr. W.D.N.C. May 12, 2021), Dkt. 827 (order extending the debtors' exclusive period to file a plan to July 23, 2021 and exclusive period to solicit the plan to Sept. 21, 2021, approximately 18 and 20 months after the petition date of Jan. 23, 2020, respectively); In re Purdue Pharma L.P., No. 19-23649 (RDD) (Bankr. S.D.N.Y. Mar. 1, 2021), Dkt. 2433 (order extending the debtors' exclusive period to file a plan to Mar. 15, 2021, 18 months after the petition date of Sept. 15, 2019); In re Imerys Talc Am., Inc., No. 19-10289 (LSS) (Bankr. D. Del. June 26, 2020), Dkt. 1942 (order extending the debtors' exclusive period to file a plan to Aug. 13, 2020 and exclusive period to solicit the plan to Oct. 13, 2020, 18 and 20 months after the petition date of Feb. 13, 2019, respectively); In re Bestwall LLC, No. 17-31795 (LTB) (Bankr. W.D.N.C. Mar. 26, 2019), Dkt. 799 (order extending the debtor's exclusive period to file a plan to May 2, 2019 and exclusive period to solicit the plan to July 2, 2019, 18 and 20 months after the petition date of Nov. 2, 2017, respectively); In re Kaiser Gypsum Co., Inc., No. 16-31602 (JCW) (Bankr. W.D.N.C. Jan. 3, 2018), Dkt. 738 (order extending the debtors' exclusive period to file a plan to Mar. 30, 2018 and exclusive period to solicit the plan to May 30, 2018, 18 and 20 months after the petition date of Sept. 30, 2016, respectively); In re Yarway Corp., No. 13-11025 (BLS) (Bankr. D. Del. July 28, 2014), Dkt. 546 (order extending the debtors' exclusive period to file a plan to Oct. 22, 2014 and exclusive period to solicit the plan to Dec. 22, 2014, 18 and 20 months after the petition date of Apr. 22, 2013, respectively); In re Specialty Products Holding Corp., No. 10-11780 (JKF) (Bankr. D. Del. Nov. 15, 2011), Dkt. 1802 (order extending the debtors' exclusive period to file a plan to Nov. 30, 2011 and exclusive period to solicit the plan to Jan. 30, 2012, 18 and 20 months after the petition date of May 31, 2010, respectively); In re Garlock Sealing Techs. LLC, No. 10-31607 (GRH) (Bankr. W.D.N.C. May 31, 2011), Dkt. 1361 (order extending the debtors' exclusive period to file a plan to Nov. 28, 2011 and exclusive period to solicit the plan to Jan. 26, 2012, approximately 18 and 20 months after the petition date of June 5, 2010, respectively).

7

of this chapter 11 case because the TCC wants to "file a competing plan of reorganization and disclosure statement to give claimants a choice". Mot. ¶ 10. It is well established, however, that a creditor's unhappiness with a debtor's plan and desire to propose its own plan, even a plan that it believes is more favorable to creditors, is not a basis for shortening a debtor's exclusive period. Geriatrics Nursing Home, 187 B.R. at 134 (finding that statements that creditor or party in interest is not happy with the debtor's proposed plan and prepared to offer a more favorable plan if the court were to terminate the exclusive period does not constitute "sufficient cause to cut short the debtor's window of opportunity opened by Congress"); see also Matter of Excel Mar. Carriers Ltd., No. 13-23060-RDD, 2013 WL 5155040, at *1 (Bankr. S.D.N.Y. Sep. 13, 2013) ("The mere fact that key players want to file a competing plan is not sufficient cause to terminate a debtor's exclusive periods."); In re Express One Int'l, Inc., 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) ("The issue to be determined, however, is not whether some other plan may exist which provides greater recovery; the issue is whether debtor has been diligent in its attempts to reorganize."); In re Eagle-Picher Indus., Inc., 176 B.R. 143, 147 (Bankr. S.D. Ohio 1994) (holding no cause to terminate exclusivity where the only ground for doing so was to enable movant to file alternate plan).

7.  Indeed, in a case the TCC cites, the United States District Court for the District of New Jersey found that the bankruptcy court abused its discretion in terminating exclusivity to permit an allegedly more favorable plan to be filed by creditors. See Geriatrics Nursing Home, 187 B.R. at 133 (rejecting bankruptcy court's view that "[p]ermitting the filing of alternative plans would . . . create a discourse among the various parties in interest which would weed out unfavorable plans and lead to the best possible result for all concerned"). The District Court explained that:

8

NAI-1536929421

> This Court is not satisfied that statements made by creditors and parties in interest that they were prepared to offer more favorable plans if the court were to terminate the exclusivity period constitutes sufficient cause to cut short the debtor's window of opportunity opened by Congress 11 U.S.C. § 1121(b) and (c). Likewise, the Court is not satisfied that the Bankruptcy Court's view that creditors' interests are paramount in Chapter 11 – at least during the exclusivity period – comports with Congressional intent. See discussion, supra. Further, the Court cannot conclude, based on reasoning of the Bankruptcy cases treating of "cause" under 11 U.S.C. § 1121(d) (discussed supra) that the fact that one creditor constituency is not happy with the debtor's plan constitutes cause to undermine the debtor's chances of winning final confirmation of its plan during the exclusivity period.
>
> ***While the aim of expediting the process of reorganization is commendable, and the prospect of not getting confirmation of debtor's plan might make the potential for other plans appear inviting, this Court is not satisfied that such justifications rise to the level of "cause" for terminating the debtor's exclusivity period.*** Congress did indeed contemplate the discourse among debtors, creditor constituencies, and parties in interest which the existence of multiple plans can generate. But early termination of the statutorily prescribed period during which the debtor has the sole right to file a plan of reorganization is not the proper manner, absent a showing of sufficient cause, to facilitate such discourse.

Id. at 134 (emphasis added).  The court in Eagle-Picher Indus. reached a similar conclusion:

> Where the only grounds suggested by a movant for termination of the exclusivity period in order that it may file an alternative plan, are, first, that it has been treated unfairly because it has been excluded from negotiations being conducted under the aegis of a mediator, and, second, that the filing of a competing plan will expedite the prompt resolution of these bankruptcy cases, this court is unable to find the cause required by § 1121(d).

176 B.R. at 147.

        8.      The TCC's potential plan cannot constitute "cause" for the additional reason that the Motion fails to describe its material terms even though the TCC states that the plan has been drafted and could be filed soon.  Mot. ¶ 3 ("The TCC devoted substantial time to formulating and drafting [its] plan and related documents" and was "standing by" to "unveil its

9

competing plan" in the prior case), id. ¶ 37 ("The TCC's plan and plan documents can be filed in very short order."). The TCC could have summarized the plan's material terms but chose to omit any meaningful discussion of them, including how and in what amount the trust would be funded and what talc claimants would be expected to receive under the plan. See Century Glove, Inc. v. First Am. Bank, 860 F.2d 94, 102 (3d Cir. 1988) ("a party does not solicit acceptances when it presents a draft plan for the consideration of another creditor, but does not request that creditor's vote"). Instead, the TCC makes conclusory assertions about its potential plan and its alleged superiority to the Debtor's plan. See Mot. ¶¶ 5-6, 11. It is thus impossible for this Court or other parties to assess whether the actual terms of the TCC's plan would support an early termination of the Debtor's exclusivity period. Moreover, given the terms of the funding agreement and the scant information about the TCC's plan provided in the Motion, the Debtor is highly skeptical that it would be confirmable or resolve the Debtor's talc-related claims.

9. Finally, the TCC asserts that permitting it to file a competing plan will not prejudice the Debtor because it has already filed a plan and can continue to pursue confirmation of it. But this is contrary to Congress's intent to permit the Debtor the first opportunity to pursue confirmation of a plan. It is also contrary to the District Court's ruling in Geriatrics Nursing Home—there, too, the debtors had a plan on file and "were in the process of negotiating with their creditors and soliciting support for their plan." 187 B.R. at 133. Further, it ignores the complexity and added expense, confusion and distraction that a competing plan would introduce at a time when the Debtor is seeking to finalize and pursue confirmation of its own plan. And just the specter of a competing plan will dissuade parties from fully engaging in the mediation and plan negotiations thereby impeding, if not halting altogether, progress on the Debtor's plan.

10. Each of the cases on which the TCC relies do not support its position. See In re R.G. Pharmacy, Inc., 374 B.R. 484 (Bankr.D. Conn. 2007) (declining to extend exclusivity period where debtor's case was relatively small and not complex and negotiations with its few major creditors had broken down); In re All Seasons Indus., Inc., 121 B.R. 1002 (Bankr. N.D. Ind. 1990) (declining to extend exclusivity period where desire to conclude pre- and post-petition litigation and to wait for the debtor's business performance to turn around were the asserted bases for extending exclusivity).

11. The Court undoubtedly will be given the opportunity to revisit the TCC's request to end (or decline to extend) exclusivity less than four months from now—on October 1, 2023, when the 180-day exclusive period ends. Now is not the time to embroil this case in even more litigation, and distract the Debtor and other parties from finalizing and pursuing confirmation of the Debtor's proposed plan.

**B.    The Debtor's Progress in This Chapter 11 Case Warrants Maintaining the Exclusive Periods.**

12. Notwithstanding the TCC's scorched-earth litigation tactics in this case, the Debtor has made substantial progress in pursuing confirmation of a plan supported by counsel representing the substantial majority of talc claimants. This alone warrants denial of the TCC's motion. See In re Burns & Roe Enters., No. 00-41610, 2005 WL 6289213, at *3 (D.N.J. Nov. 2, 2005) (explaining that courts may extend exclusivity based solely on a finding that progress is being made toward acceptance of the plan); In re Pine Run Tr., Inc., 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (granting an extension of exclusivity because the debtor demonstrated substantial progress in negotiations). In particular, on May 15, 2023, the Debtor filed a proposed plan of reorganization [Dkt. 525] and a related disclosure statement [Dkt. 526] in accordance with its commitment under the plan support agreements with counsel representing approximately

11

60,000 talc claimants.  The Debtor also has filed a motion seeking to promptly schedule a hearing on the adequacy of its proposed disclosure statement, and the Court has scheduled a hearing to consider that motion on June 13, 2023.  Further, at the Court's direction, the Debtor is engaged in discussions with the co-mediators, whom the Court appointed to address all issues in this case, including the Debtor's proposed plan.  And, the Debtor has obtained Court approval of the appointment of a future claimants' representative, as required by section 524(g) of the Bankruptcy Code.

        13.        The TCC attempts to minimize this significant progress by arguing that the Debtor's plan is "an illusion." Mot. ¶ 22.  It asserts that because a few issues remain on the Debtor's proposed plan, no meaningful progress has been made.  But in a complex case of this magnitude, it is hardly surprising, and certainly not indicative of an absence of progress, that the Debtor and the Ad Hoc Committee of Supporting Counsel are continuing to work together in good faith to finalize the Debtor's plan.  The TCC also claims that the plan is unlikely to be confirmed because claimants will receive "little" under it.  Mot. ¶ 23.  This assertion is absurd. The plan reflects a commitment by the Debtor to fund a trust with $8.9 billion in cash on a net present value basis.  If ultimately approved, the plan would represent the largest settlement in any mass tort bankruptcy case ever and the largest settlement in any asbestos bankruptcy case ever, including cases where—unlike here—the debtor admitted that its products contain asbestos (e.g., insulation, roofing, piping).  In addition, the TCC's skepticism about the support the plan will receive is belied by the fact that counsel representing approximately 60,000 claimants have committed to recommend that their clients vote in favor of the Debtor's plan. Finally, the TCC points out that the Debtor has not reached agreement with it and alleges that that the Debtor has negotiated "in the shadows with a minority group". Mot. ¶ 26.  But the

12

TCC is comprised of plaintiff firms representing a minority of claimants, many of which firms have conflicts of interest and many of which have steadfastly proclaimed they will not settle on any basis. Failure to reach an agreement with the TCC is not indicative of an absence of progress.

14. The progress that the Debtor has made in the first two months of this case compels denial of the Motion. The Debtor should be permitted to finalize its plan and pursue confirmation of it, as Congress intended, without the distractions of an unknown, competing plan from the TCC.

### C. The TCC's Opposition to This Chapter 11 Case and the Debtor's Plan Does Not Support Termination of the Debtor's Exclusive Periods.

15. The TCC argues that "the acrimonious relations" in this case and its lack of confidence in the Debtor are reasons to terminate exclusivity. Mot. ¶¶ 21, 33-34. To the contrary, the TCC's relentless efforts to frustrate, if not prevent altogether, the Debtor and the plan supporters from moving forward with a plan process establish the absence of cause. See Grand Traverse, 147 B.R. at 421 ("To the extent there is acrimony in this case, its source appears to be [the movant's] rather than some internal rift among the debtors. [The movant's] aggressive litigation stance cannot constitute cause. To hold otherwise would permit litigious creditors to manufacture cause . . . through their own unilateral actions").[5] The TCC should not be permitted to use its litigious behavior in this case to manufacture "cause."

---

5     In contrast, courts have found that acrimonious relations among the *debtor's* principals constitute cause to shorten the exclusive period. Crescent Beach, 22 B.R. at 160-61 ("[I]t appears that the major obstacle in the path to a successful reorganization in this case is the principal parties' acrimonious relations. They continue their bitter feuding not only at their expense, but at the expense of all creditors of the debtor"); Texas Extrusion, 68 B.R. at 725 ("The Court [in Crescent Beach] noted that a major obstacle in the path to a successful reorganization was the principal parties' acrimonious relations. This fact . . . is amply matched in the instant case"). That is not the situation here.

13

16. The TCC argues that terminating exclusivity is necessary now to level the playing field between the Debtor and the talc claimants. See Mot. ¶ 14. But the reality is that the TCC is attempting to elevate the position of a minority of claimants to deprive the majority of claimants from proceeding with the plan they support. Moreover, the concept of exclusivity "contradicts the notion that parties in a Chapter 11 bankruptcy case be given an equal opportunity to seek confirmation of a plan." Eagle-Picher Indus., 176 B.R. at 148 (denying unsecured creditors' committee argument that "a level playing field was what was contemplated by the Bankruptcy Code" and stating the "concept of an exclusivity period in favor of a debtor, a consideration at the heart of the Bankruptcy Code, on its face contradicts the notion that parties in a Chapter 11 bankruptcy case be given an equal opportunity to seek confirmation of a plan.").

### D. The Size and Complexity of this Chapter 11 Case Weigh in Favor of Maintaining the Exclusive Periods.

17. Both Congress and courts have recognized that the size or complexity of a debtor's case are relevant to whether to terminate or extend a debtor's exclusive periods. See, e.g., H.R. Rep. No. 95-595, at 231, 232, 406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362; In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization . . . are important factors which generally constitute cause for extending the exclusivity periods."); Burns & Roe Enters., 2005 WL 6289213, at *3 (quoting Texaco and recognizing that a large, complex case can constitute cause for extension).

18. This chapter 11 case is not only large but highly complex. As of the Petition Date, there were tens of thousands of talc related personal injury lawsuits pending against the Debtor in courts across the country. The process of reaching an equitable resolution

of the Debtor's liability for talc claims, and addressing the various other talc-related issues that must be resolved in formulating a consensual plan of reorganization, are necessarily complicated. There is no legitimate basis to terminate the exclusive periods a mere two months into a case of this size and complexity.

**E.    Little Time Has Elapsed in the Debtor's Chapter 11 Case.**

19.    Not only has the Debtor made significant progress in this case, it is notable that the Debtor filed this case only about two months ago.  The TCC contends that the Court has to consider the time elapsed in the Debtor's prior case when evaluating its request to terminate exclusivity just two months into this case.  Mot. ¶¶ 17, 32.  But the TCC fails to cite any authority for this argument, and nothing in section 1121(d) suggests that a debtor's prior chapter 11 case should be considered in connection with a request to terminate exclusivity. Finally, no agreement on a plan of reorganization had been reached in the prior case.  Here, there is an agreement and it was reached with law firms representing the substantial majority of claimants.  Allowing a competing plan would significantly delay the vote on the Debtor's plan, which was filed early in the exclusivity period.  The Court should maintain exclusivity so that the Debtor and the majority of claimants can move forward with the Debtor's plan.

## Conclusion

For the reasons set forth herein, the Debtor respectfully requests that the Court deny the Motion and grant such further relief to the Debtor as the Court may deem proper.

NAI-1536929421

Dated: June 12, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

16