**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |

**JOHN K. KIM DECLARATION IN SUPPORT OF**
**APPLICATION FOR RETENTION OF SKADDEN, ARPS,**
**SLATE, MEAGHER & FLOM LLP, EFFECTIVE AS OF APRIL 4, 2023**

Pursuant to Section D of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, I, John K. Kim, hereby declare, under penalty of perjury, as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1537190011

1. I am the Chief Legal Officer of LTL Management LLC (the "Debtor") and have served in this position since October 12, 2021. I am employed by Johnson & Johnson Services, Inc., a non-debtor affiliate of the Debtor and a subsidiary of the Debtor's ultimate non-debtor parent company, Johnson & Johnson ("J&J").

2. I make this Declaration in support of the Debtor's *Application for Retention of Skadden, Arps, Slate, Meagher & Flom LLP, Effective as of April 4, 2023* [Dkt. 424]. I previously submitted an omnibus declaration in support of the Debtor's application to retain various professionals [Dkt. 757] (the "Omnibus Declaration"). I incorporate by reference the statements made in my Omnibus Declaration, including my statements regarding Budget and Staffing Plans (¶¶ 26-28) and Supervision of Fees and Expenses (¶¶ 29-30), and affirm that they remain true and correct.

3. In my role as Chief Legal Officer, I assisted the Debtor with the retention and employment of the professionals in the Chapter 11 Case, including the retention of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"). In addition, I am responsible for, among other things, supervising the professionals for the Debtor and monitoring and controlling their costs.

4. Except as otherwise indicated, all facts and statements set forth in this Declaration are based upon: (a) my personal knowledge; (b) information supplied to me by other members of the Debtor's management or professionals; (c) my review of relevant documents; and/or (d) my opinion based upon my experience and knowledge of the Debtor and its professionals. If called upon to testify, I could and would testify to the facts and opinion set forth herein.

5. The Debtor selected Skadden because of its expertise and familiarity with the claims and defenses asserted and national discovery in the mesothelioma and ovarian cancer

talc-related litigation across the country pending against J&J and the Debtor, including claims against Old JJCI.  See Dkt. 424 ¶¶ 3-4.  In addition to this expertise, Skadden served as special counsel to the Debtor throughout the 2021 Chapter 11 case.  See In re LTL Mgmt. LLC, No. 21-30589 (MBK) (Bankr. D.N.J.) [Dkt. 1736].

6. The Debtor and Skadden have agreed that Skadden's standard fees it charges J&J, which are discounted, would apply to this engagement as detailed in the application to retain Skadden, with one exception discussed below.  See Dkt. 424 ¶ 6.  Further, given that Skadden continues to represent J&J in certain matters, see id. ¶ 4 n.4, to the extent that Skadden represents both the Debtor and J&J in a matter, Skadden will allocate 50% of its fees and expenses incurred in such joint representation to the Debtor and 50% to J&J.  In matters in which Skadden represents solely the Debtor or J&J, Skadden will allocate 100% of the fees and expenses to the entity represented.

7. In the 2021 Chapter 11 Case, the Court initially lifted the automatic stay and preliminary injunction order entered in that case to allow claims against J&J and certain retailers to proceed in Anthony Hernandez Valadez v. Johnson & Johnson, et al., pending in the Superior Court of California, County of Alameda (the "Valadez Action").[2]  In connection with the Valadez Action, J&J negotiated a flat fee arrangement with Skadden.  Following the filing of this Chapter 11 Case and the lifting of the automatic stay and preliminary injunction as to the Valadez Action [Dkt. 595] in this Chapter 11 Case, the Debtor similarly negotiated a flat fee arrangement with Skadden, which it believes is beneficial to and will result in cost-savings for

---

[2] Subsequently, the Court in the 2021 Chapter 11 Case also lifted the automatic stay and preliminary injunction to permit claims to proceed against the Debtor in the Valadez Matter.

NAI-1537190011

the estate.³  The flat-fee structure was implemented in an effort to control costs, given that in the Debtor's experience, similar flat-fee arrangements, entered into with both Skadden and other law firms, frequently have resulted in cost-savings in talc trial defense engagements.

8. Specifically, for Skadden's services to the Debtor in connection with the Valadez Action, Skadden will be compensated on the same flat fee basis that has been agreed to with J&J, pursuant to section 328 of the Bankruptcy Code, with the Debtor responsible for 50% of the flat fee, consistent with the allocation of joint services otherwise employed in this Chapter 11 Case.  The flat fee arrangement for J&J and the Debtor is structured as follows: a total flat fee of $4.5 million, comprised of $2 million for pretrial work and $2.5 million for trial (consisting of 30 days of trial, with the amount prorated if the period is less or greater than 30 days).  In addition, Skadden will earn a success fee if a defense verdict is achieved, which success fee is 20% of the total flat fee.  J&J will pay in full the amount of any such success fee earned by Skadden, but reserves the right to seek indemnity from the Debtor as to any such payment.  For the Valadez Action, Skadden will maintain contemporaneous time records that reflect activities undertaken and the total time spent per day by each timekeeper, and, notwithstanding the flat-fee arrangement pursuant to section 328 for the Valadez Action, will apply to the Court, with respect to all services performed for the Debtor including the Valadez Action, for payment of compensation and reimbursement of expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rule, the U.S. Trustee Guidelines and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [Dkt. 562] entered by the Court in

---

³ At the time the application to retain Skadden was filed on May 4, 2023, the Debtor had not yet negotiated a flat fee arrangement with Skadden.

NAI-1537190011

this case. I understand the Court and the U.S. Trustee retain all rights to review and object to Skadden's monthly, interim and final fee applications (including expense reimbursement) based on the reasonableness standard in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code.

9. Additionally, I understand that Skadden's hourly rates for bankruptcy representations are comparable to (a) the hourly rates charged for non-bankruptcy representations and (b) the rates of other comparably skilled professionals in the national marketplace for legal services. Further, I understand that the flat-fee structure for the Valadez Action is comparable to other flat-fee structures in place for non-bankruptcy related representations, including other litigation representations undertaken for J&J. Having previously reviewed invoices from other large law firms and invoices submitted from Skadden, I can verify that the rates and flat-fee being charged by Skadden in connection with this representation are reasonable and within the range typically charged by similar firms.

## **Budget and Staffing Plan**

10. The Debtor has a budgeting process for matters in the ordinary course, including this Chapter 11 Case. Jones Day, as lead counsel and consistent with standard practice, prepares, subject to my approval, an annual aggregate budget for all amounts to be incurred in the Chapter 11 Case.[4] The annual budget is updated on a quarterly basis. For 2023, the Debtor's initial budget for this Chapter 11 Case was based on historical spend in the 2021 Chapter 11 Case during 2022. The budget is subject to being updated in accordance with the Debtor's procedures.

---

[4] Jones Day also prepares an independent detailed budget with respect to the Chapter 11 Case that includes estimated amounts to be incurred by proposed timekeepers, as well as aggregate proposed amounts to be incurred by local counsel (in this case WMD) and potential experts.

-5-

11. The Debtor and Skadden expect to develop a prospective individualized budget and staffing plan for this Chapter 11 Case and to provide such budget and staffing plan in connection with the filing of Skadden's interim fee applications.

12. The Debtor further recognizes that it is responsible for monitoring closely the billing practices of Skadden to ensure the fees and expenses paid by the estate remain consistent with the Debtor's expectations and the exigencies of the Chapter 11 Case. The Debtor will continue to review the invoices that Skadden regularly submits and, together with the other professionals, periodically amend the budget and staffing plans as the Chapter 11 Case develops.

## Supervision of Fees and Expenses

13. The Debtor recognizes the importance of selecting and managing chapter 11 professionals to ensure that they are subject to the same market forces, scrutiny and accountability as professionals in non-bankruptcy engagements.

14. The Debtor will continue to supervise Skadden's fees and expenses, including in connection with the budgeting process described above. The fees and expenses of Skadden also will be subject to review, comment and objection (if warranted), and Court approval pursuant to orders entered in this Chapter 11 Case, including the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [Dkt. 562].

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 16, 2023            */s/ John K. Kim*
                                 John K. Kim