**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>                      Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan<br><br>**Objection Deadline**: July 3, 2023<br><br>**Hearing Date and Time**:<br>July 11, 2023 at 10:00 a.m. |

**DEBTOR'S MOTION FOR AN ORDER AUTHORIZING**
**THE RETENTION AND COMPENSATION OF PROFESSIONALS**
**UTILIZED BY THE DEBTOR IN THE ORDINARY COURSE OF BUSINESS**

The above-captioned debtor (the "Debtor") moves the Court for the entry of an

order authorizing the retention and compensation of professionals utilized by the Debtor in the

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

ordinary course of business.  In support of this Motion, the Debtor respectfully represents as follows:

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.) (the "Standing Order of Reference").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

2. The statutory predicates for the relief requested herein are sections 105(a), 327 and 330 of the Bankruptcy Code and Rules 2014 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3. On April 4, 2023 (the "Petition Date"), the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor, a North Carolina limited liability company, is a defendant in thousands of lawsuits asserting personal injuries allegedly caused by exposure to talc-containing products.  It is the direct parent of Royalty A&M LLC, a North Carolina limited liability company, which manages a portfolio of royalty revenue streams, including some based on third party sales of certain products, and will seek opportunities to acquire or finance additional royalty revenue streams.

5. The Debtor has reached agreement on the material terms of a plan of reorganization with counsel to thousands of talc claimants. That agreement has been memorialized in a series of plan support agreements. The Debtor has commenced this chapter 11 case (the "Chapter 11 Case") to pursue confirmation of a plan of reorganization that contains the terms agreed to in the plan support agreements. A comprehensive description of the Debtor, its history, its assets and liabilities and the events leading to the commencement of the Chapter 11 Case can be found in the declaration of John K. Kim [Dkt. 4], which was filed on the Petition Date and is incorporated herein by reference.

6. On April 14, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") filed the *Notice of Appointment of Official Committee of Talc Claimants* [Dkt. 162] (the "Committee").

7. On May 18, 2023, the Court entered an order [Dkt. 551] appointing Randi S. Ellis as the legal representative for future talc claimants in the Chapter 11 Case (the "Future Claimants' Representative").[2]

## Relief Requested

8. Pursuant to sections 105(a), 327 and 330 of the Bankruptcy Code and Rules 2014 and 6004(h) of the Bankruptcy Rules, the Debtor seeks the entry of an order, substantially in the form submitted herewith: (a) authorizing it to retain, employ and pay certain professionals (each, an "Ordinary Course Professional") in the ordinary course of the Debtor's business on the terms and conditions set forth herein, without the submission of separate retention applications and the issuance of separate retention orders for each Ordinary Course Professional, and (b) approving such retention and employment as of the Petition Date or the

---

[2] On May 26, 2023, the Committee appealed entry of this order [Dkt. 608].

date the Ordinary Course Professional commences work (each, the "Retention Date").

Substantially similar relief was granted in the Debtor's prior chapter 11 case (the "2021

Chapter 11 Case").[3]

## Basis for Relief Requested

*Cause Exists for Authorization to Retain,*
*Employ and Pay Ordinary Course Professionals*

9. The Debtor will call upon certain Ordinary Course Professionals to provide professional services to assist the Debtor's management in the performance of their duties and responsibilities in the ordinary course of the Debtor's business. These Ordinary Course Professionals provide valuable assistance in addressing issues of importance to the Debtor and its business in connection with the management of the Debtor's talc litigation. A nonexclusive list of the Ordinary Course Professionals identified by the Debtor as of the date hereof (the "OCP List") is attached hereto as Exhibit A and incorporated herein by reference.[4]

10. The Debtor desires to employ the Ordinary Course Professionals, as and when requested by the Debtor, to render professional services to its estate in the same manner and for the same general purposes as such services were provided to the Debtor during the 2021 Chapter 11 Case. To avoid potential disruptions, it is important that the Debtor has the ability to employ the Ordinary Course Professionals (e.g., to permit defense counsel to provide

---

[3] *Order Authorizing the Retention and Compensation of Professionals Utilized by the Debtor in the Ordinary Course of Business*, In re LTL Mgmt. LLC, No. 21-30589 (MBK) (Bankr. D.N.J. Dec. 16, 2021), Dkt. 849 (the "2021 OCP Order").

[4] The Debtor has prepared the OCP List based on a review of the professionals employed regularly in the past with respect to the talc litigation. The attached list is comprised solely of law firms. The Debtor has not determined which of the parties identified on the OCP List in fact will provide services to the Debtor on a postpetition basis. As such, the OCP List is not intended to constitute a representation that each firm listed will be retained, employed and paid by the Debtor during the course of this Chapter 11 Case. Likewise, the Debtor believes that there may be additional professionals that will provide services as Ordinary Course Professionals in this Chapter 11 Case, but that were not identified by the Debtor's preliminary review and thus are not included on the attached OCP List.

services related to the cases they had been defending), many of whom are familiar with the Debtor's history, business and affairs, including the thousands of pending litigation matters.

11. Although the Ordinary Course Professionals identified to date are counsel in talc litigation expected to remain stayed under section 362 of the Bankruptcy Code, the Debtor believes that services from these professionals may be needed from time to time. For example, the Debtor may require services in talc litigation relating to filing stay notices, addressing potential stay violations, monitoring dockets and providing information about these cases that is not available from any other source.

12. It would be costly, time-consuming and administratively cumbersome for the Debtor and this Court to require each Ordinary Course Professional to apply separately for approval of its employment and compensation through the filing of multiple pleadings in this case. Requiring separate applications also is simply unnecessary under applicable law and would be burdensome to the estate, particularly for professionals providing minimal or sporadic services. Moreover, without assurance that the Debtor is authorized to use and pay these parties, many Ordinary Course Professionals may be reluctant to assist the Debtor when needed.

13. Accordingly, the Debtor requests the authority to retain, employ and pay the Ordinary Course Professionals on the terms set forth herein without further order of the Court. The relief requested will save the Debtor's estate the substantial expense associated with applying separately for the retention of each professional, as well as the incurrence of additional fees related to the preparation and prosecution of interim fee applications. The procedures outlined below also will relieve the Court and other parties—including the U.S. Trustee, the Committee and the Future Claimants' Representative—of the burden of reviewing numerous applications involving relatively small amounts of fees and expenses.

*The Ordinary Course Professionals Are Not
Professionals Under Section 327(a) of the Bankruptcy Code*

14. Where a person is not considered a "professional" under section 327(a) of the Bankruptcy Code,[5] a debtor may hire that person in the ordinary course of business pursuant to section 1108 of the Bankruptcy Code[6] without prior court approval.  In re Sieling Assocs. Ltd. P'ship, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991).  To determine whether an entity to be employed in a bankruptcy case is a "professional" within the meaning of section 327(a) of the Bankruptcy Code, many courts have applied either a "quantitative" or a "qualitative" test. See In re Seven Counties Servs., Inc., 496 B.R. 852, 855 (Bankr. W.D. Ky. 2013) (citing In re First Merchants Acceptance Corp., No. 97-1500, 1997 WL 873551, at *2 (D. Del. Dec. 15, 1997)).

15. Under the quantitative test, courts have required that an entity providing professional services must play a "central role" in the administration of the estate before it is considered a professional under section 327 of the Bankruptcy Code.  First Merchants, 1997 WL 873551, at *2; accord In re Action Video, Inc., 2003 WL 21350081, at *4 (Bankr. M.D.N.C. June 9, 2003) (finding that a hired party was a professional under section 327(a) because, among other things, his services "directly related to the administration and operation of the [d]ebtor"); Sieling Assocs., 128 B.R. at 723 (defining "professional person" under section 327 of the Bankruptcy Code as a person whose role is "central to the administration of

---

[5] Section 327(a) of the Bankruptcy Code provides that, with certain exceptions, "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a).

[6] Section 1108 of the Bankruptcy Code provides, in relevant part, that, "[u]nless the court … orders otherwise, the trustee may operate the debtor's business."  11 U.S.C. § 1108.

NAI-1535870282

the estate," rather than someone who serves mechanical functions necessary for a debtor's operations).[7]

16.    By contrast, under the qualitative test, an entity is considered a professional if it is permitted to exercise discretion and autonomy in addressing the administration of the estate. First Merchants, 1997 WL 873551, at *2.[8] Thus, "[w]hile the quantitative test focuses on the significance of the individual's role to the debtor proceeding and the qualitative test focuses on the amount of discretion the individual has in accomplishing that role, the bottom line of both tests involves an examination of the types of duties to be undertaken by the individual." Id.; accord Sieling Assocs., 128 B.R. at 723 (determining whether a professional is central to the administration of the estate by examining its responsibilities).

17.    Seeking to synthesize the two approaches, the First Merchants court developed a nonexclusive list of factors to be considered when determining whether an entity to be employed by a debtor is a professional within the meaning of section 327(a) of the Bankruptcy Code. These factors include:

---

[7]  See also U.S. Tr. v. Bloom (In re Palm Coast, Matanza Shores L.P.), 101 F.3d 253, 257 (2d Cir. 1996) (stating that "professional persons" are "limited to persons in those occupations which play a central role in the administration of the debtor proceeding"); That's Entm't Mktg. Grp., 168 B.R. 226, 230 (N.D. Cal. 1994) (defining "professional person" under section 327 of the Bankruptcy Code as a person whose role is "central to the administration of the estate" (internal citation omitted)); In re Fortune Nat. Res. Corp., 366 B.R. 558, 563 (Bankr. E.D. La. 2007) (same); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (finding that "the phrase 'professional persons' … is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate").

[8]  See also In re Smith, 524 B.R. 689, 694 (Bankr. S.D. Tex. 2015) (discussing both qualitative and quantitative factors, but stating that "[g]enerally, to qualify as a 'professional person' under § 327(a), a person must be a professional in the ordinary sense of the word – that is, a person must perform high-level, specialized services requiring 'discretion or autonomy'" (internal citation omitted)); In re Neidig Corp., 117 B.R. 625, 629 (Bankr. D. Colo. 1990) (most common factor in determining whether person is a professional is the amount of autonomy or discretion person is given by the debtor or trustee in performing its services); In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (applying a qualitative test and stating that "it must be determined whether an employee is to be given discretion or autonomy in some part of the administration of the debtor's estate").

NAI-1535870282

(a) whether the entity controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization;

(b) whether the entity is involved in negotiating the terms of a plan of reorganization;

(c) whether the entity's employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

(d) whether the entity is given discretion or autonomy to exercise its own professional judgment in some part of the administration of the debtor's estate;

(e) the extent of the entity's involvement in the administration of the debtor's estate; and

(f) whether the entity's services involve some degree of special knowledge or skill, such that the entity can be considered a professional within the ordinary meaning of the term.

First Merchants, 1997 WL 873551, at *3.

18. Similarly, in Sieling Associates, the bankruptcy court identified certain tasks as central to the administration of the estate, including "assisting in the negotiation of the debtor's plan, assisting in the adjustment of the debtor/creditor relationship, disposing of assets of the estate and acquiring assets on behalf of the estate." Sieling Assocs., 128 B.R. at 723. These factors must be considered in their totality; no single factor is dispositive. First Merchants, 1997 WL 873551, at *3. Nevertheless, professionals assisting in the routine operation of a debtor's business and affairs, rather than the administration of its bankruptcy estate, are not professionals that must be retained under section 327 of the Bankruptcy Code. Id. at *4.

19. Considering all of the First Merchants and Sieling Associates factors, the Debtor believes that the Ordinary Course Professionals are not "professionals" within

the meaning of section 327(a) of the Bankruptcy Code.[9] In particular, the Ordinary Course Professionals generally will not be involved in the administration of the Chapter 11 Case and will not be involved in counseling and advising the Debtor in respect thereof. Instead, the Ordinary Course Professionals will provide services in connection with the ongoing management of the Debtor's day-to-day affairs, including ordinary course advice and assistance relating to talc litigation. To the extent that services provided by the Ordinary Course Professionals involve some element of administration of the Debtor's estate, that involvement will be minimal or tangential.

20. As a result, the Debtor does not believe that the retention and compensation of the Ordinary Course Professionals must be approved by the Court. Out of an abundance of caution, however, the Debtor seeks the relief requested in this Motion to avoid any subsequent controversy regarding the Debtor's employment and payment of the Ordinary Course Professionals during the pendency of the Chapter 11 Case.

## Proposed Procedures

*Ordinary Course Professional Fee Limit*

21. The Debtor does not believe that any Ordinary Course Professional generally will have monthly fees of more than $25,000 or total fees of more than $187,500 during the pendency of the Chapter 11 Case (such amounts, collectively, and subject to increase

---

[9] Trial experts are not included as Ordinary Course Professionals for the purposes of this Motion because courts have recognized that retention of trial experts as professionals is not required and would subject a debtor's litigation strategy to unwarranted disclosure and scrutiny. See, e.g., Surrey Inv. Servs., Inc. v. Smith, 418 B.R. 140, 154 (M.D.N.C. 2009) (holding that an expert witness that was hired for litigation purposes, including to provide trial testimony, was not a "professional" under section 327); In re Cyrus II P'ship, 2008 WL 3003824, at *6 (Bankr. S.D. Tex. July 31, 2008) (holding that expert witnesses testifying to matters that are "non-central" to the administration of the estate are not "professionals" that must be retained under section 327 of the Bankruptcy Code); In re Napoleon, 233 B.R. 910, 913-14 (Bankr. D.N.J. 1999) (holding that an expert witness is not a "professional person" within the meaning of section 327 of the Bankruptcy Code where the witness does not "play an integral role in the administration of the bankruptcy case").

by agreement of the Notice Parties, as defined below, or order of the Court, the "OCP Fee Limits").[10]  As described below, however, if the monthly fees of any Ordinary Course Professional exceed the monthly OCP Fee Limit, or if the total postpetition fees of any Ordinary Course Professional exceed the OCP Fee Limit for the pendency of the Chapter 11 Case, such fees will be subject to a further review and approval process, as set forth below.[11]  Moreover, as also described below, any Ordinary Course Professional that becomes materially involved in the administration of the Chapter 11 Case such that it is a "professional" under section 327 of the Bankruptcy Code—even if its fees are below the OCP Fee Limits—will be retained by separate application to and order of the Court.

***OCP Payment Procedures***

22.     The Debtor proposes that it be permitted to pay each Ordinary Course Professional, without prior application to the Court, subject to the following procedures (the "OCP Payment Procedures"):

> (a)     Each Ordinary Course Professional shall provide the Debtor with: (i) a declaration (an "OCP Declaration") substantially in the form attached hereto as Exhibit B, certifying that such Ordinary Course Professional does not represent or hold any interest adverse to the Debtor or its estate with respect to the matter or matters on which such Ordinary Course Professional is to be employed; and (ii) a completed retention questionnaire (the "Retention Questionnaire"), substantially in the form attached hereto as Exhibit C, which, among other things, will detail the type and scope of services to be provided and the compensation to be paid for such services.  The OCP Declaration and Retention Questionnaire shall be provided to the Debtor at the following addresses:  (i) LTL Management LLC, 501 George Street, New Brunswick, New Jersey 08933 (Attn:  John K. Kim, Esq., JKim8@its.jnj.com); (ii) Jones Day, 2727 North Harwood Street, Dallas, Texas 75201 (Attn:  Dan B.

---

[10]     The Debtor reserves the right to seek modifications to the OCP Fee Limits in the future as it deems necessary or appropriate.

[11]     The OCP Fee Limits are intended only to limit the amount of **fees** paid to Ordinary Course Professionals without further Court review and not to limit the reimbursement of expenses incurred by Ordinary Course Professionals, to which such professionals may be entitled pursuant to the terms of their engagement.

-10-

|     |     |
| --- | --- |
|     | Prieto, Esq., dbprieto@jonesday.com, Amanda Rush, Esq., asrush@jonesday.com and Melina N. Bales, Esq., mbales@jonesday.com); and (iii) Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York 10110 (Attn: James N. Lawlor, Esq., jlawlor@wmd-law.com). |
| (b) | Each Ordinary Course Professional shall periodically update its OCP Declaration to the extent necessary to reflect new facts or circumstances relevant to its retention, including, without limitation, any changes in the type or scope of services to be provided. |
| (c) | Counsel to the Debtor shall promptly file any OCP Declaration and Retention Questionnaire that they receive with the Court and shall serve such OCP Declaration and Retention Questionnaire on: (i) the Committee; (ii) the Future Claimants' Representative; (iii) the U.S. Trustee, One Newark Center, Suite 2100, Newark, New Jersey 07102 (Attn: Jeffrey M. Sponder, Esq., jeffrey.m.sponder@usdoj.gov; and Lauren Bielskie, Esq., lauren.bielskie@usdoj.gov); and (iv) those parties who have filed a notice of appearance and request for service of pleadings in this Chapter 11 Case pursuant to Bankruptcy Rule 2002 (each, a "Notice Party" and, collectively with the Debtor and its counsel, the "Notice Parties"). |
| (d) | The Notice Parties shall have 14 days after the filing and service of an OCP Declaration and Retention Questionnaire to object to the retention and employment of the applicable Ordinary Course Professional on the terms, and pursuant to the procedures, described herein (the "Objection Deadline"). Any objecting party shall serve its objection upon the Notice Parties and the applicable Ordinary Course Professional on or before the Objection Deadline. If an objection cannot be resolved within 10 days after the Objection Deadline, then the retention, employment or payment of the Ordinary Course Professional that is the subject of the objection shall be scheduled for hearing by the Debtor at the next regularly scheduled omnibus hearing date that is no less than 20 days from that date or on a date otherwise agreed to by the parties. The Debtor shall not be authorized to retain, employ or pay such Ordinary Course Professional until all outstanding objections have been withdrawn, resolved or overruled by order of the Court. |
| (e) | If no objection is received from any of the Notice Parties by the Objection Deadline with respect to an Ordinary Course Professional, the Debtor shall be authorized to retain and employ |

-11-

    that Ordinary Course Professional in accordance with the OCP Procedures, effective as of the Retention Date.

(f)  Once an Ordinary Course Professional is retained in accordance with the OCP Procedures above, the Debtor may pay 100% of the fees and expenses incurred by an Ordinary Course Professional (without formal application to the Court by such Ordinary Course Professional) upon the submission to, and approval by, the Debtor of a monthly invoice, a copy of which shall be promptly provided to the U.S. Trustee, counsel to the Committee and counsel to the Future Claimants' Representative setting forth in reasonable detail the nature of the services rendered and expenses actually incurred during the month (without prejudice and subject to (i) the Debtor's right to dispute any such invoices in the ordinary course and (ii) the rights of the Notice Parties to file an Ordinary Course Professional Fee Objection (as defined below) in accordance with paragraph (j) hereof; provided, however, that (i) all payments of fees to Ordinary Course Professionals shall be subject to the monthly OCP Limit (the "Monthly OCP Fee Limit") and the aggregate OCP Limit (the "Aggregate OCP Fee Limit"); (ii) if an Ordinary Course Professional is an expert witness it must disclose in its applicable monthly invoices the separate compensation received in its capacity as an expert witness and (iii) an Ordinary Course Professional shall not hire or compensate any expert witness.  For the avoidance of doubt, each Ordinary Course Professional shall submit monthly invoices described herein (including detail regarding the nature of the services rendered and expenses actually incurred during the month) as soon as practicable following each month for which services have been rendered.

(g)  To the extent that the fees sought by any Ordinary Course Professional for a month exceed the Monthly OCP Fee Limit, then such Ordinary Course Professional shall file a fee application, to be heard on notice, for the full amount of its fees and expenses for any month where such Ordinary Course Professional's fees exceeded the Monthly OCP Fee Limit in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the District of New Jersey (the "Local Bankruptcy Rules"), all orders of this Court, and the U.S. Trustee Fee Guidelines (defined below); provided that the Debtor may make an interim payment to the Ordinary Course Professional prior to a hearing on the application of up to the amount of the Monthly OCP Fee Limit for each month so long as the Ordinary Course Professional has been retained, either automatically through expiration of the Objection Deadline, or by approval of the Court.  Each Ordinary Course Professional that is a

    law firm shall agree to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "U.S. Trustee Fee Guidelines").

(h) If an Ordinary Course Professional seeks payment of fees in excess of the Aggregate OCP Fee Limit, such Ordinary Course Professional shall (i) be required to (a) file a separate retention application to be retained as a professional person pursuant to section 327 of the Bankruptcy Code; and (b) apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Case in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the U.S. Trustee Fee Guidelines and any and all applicable orders of the Court. The rights of all parties in interest with respect to any such applications are fully preserved.

(i) At three-month intervals during the pendency of the Chapter 11 Case (each such interval, a "Quarter"), except for the partial Quarter ending on June 30, 2023, the Debtor shall file with the Court and serve on the Notice Parties, no later than 30 days after the end of such Quarter, a statement certifying the Debtor's compliance with the OCP Procedures defined herein and including the following information for each Ordinary Course Professional: (i) the name of the Ordinary Course Professional; (ii) the aggregate amounts of fees and expenses incurred by such Ordinary Course Professional and paid by the Debtor during the reported Quarter; (iii) the aggregate amount of postpetition payments made to the Ordinary Course Professional through the end of the reported Quarter; and (iv) a reasonably detailed description of the services rendered by each Ordinary Course Professional during the Quarter. The statement related to the partial Quarter ending on June 30, 2023 shall be filed no later than 30 days after entry of an order governing the relief requested herein.

(j) On the date that is established in the Chapter 11 Case for professionals to file final fee applications and pursuant to D.N.J. LBR 2016-4, the Debtor shall file a statement (the "Final Statement") for each of the Ordinary Course Professionals. The Final Statement shall include the following information for each Ordinary Course Professional: (i) the name of such Ordinary Course Professional; (ii) the aggregate amount paid to the Ordinary Course Professional during the previous ninety (90) days; (iii) the

-13-

        total amount paid postpetition to each Ordinary Course Professional; and (iv) a reasonably detailed description of the services rendered by the Ordinary Course Professional during such period.  The Final Statement shall be served upon the Notice Parties, who shall have twenty (20) days to file an objection with the Court pursuant to section 330 of the Bankruptcy Code (an "<u>Ordinary Course Professional Fee Objection</u>").

(k)    The Debtor reserves the right to retain additional Ordinary Course Professionals from time to time during the Chapter 11 Case by having each such Ordinary Course Professional comply with the OCP Procedures.

(l)    Notwithstanding any of the foregoing, the Notice Parties shall have the right to object to the Debtor's retention of any Ordinary Course Professional <u>nunc pro tunc</u> to the applicable Retention Date.

23.    Relief similar to that requested herein routinely has been granted by this Court and courts in this District.  <u>See</u>, <u>e.g.</u>, 2021 OCP Order; <u>In re BlockFi Inc.</u>, No. 22-19361 (MBK) (Bankr. D.N.J. Jan 17, 2023) (approving the retention of professionals in the ordinary course and imposing professional-specific caps on fees with the highest set at a $328,000 monthly cap on fees and $985,000 cap on fees over the course of the case); <u>In re Nat'l Realty Inv. Advisors, LLC</u>, No. 22-14539 (JKS) (Bankr. D.N.J. Sept. 16, 2022) (approving retention of professionals in the ordinary course and imposing a $25,000 monthly cap on fees and $187,500 cap on fees over the course of the case); <u>In re Diocese of Camden, N.J.</u>, No. 20-21257 (JNP) (Bankr. D.N.J. Oct. 29, 2020) (approving retention of professionals in ordinary course, authorizing $35,000 per month per ordinary course professional on average over a rolling three month period and imposing $300,000 cap on fees for each ordinary course professional over the course of the case); <u>In re SLT Holdco, Inc.</u>, No. 20-18368 (MBK) (Bankr. D.N.J. Aug. 31, 2020) (authorizing $40,000 per month per ordinary course professional on a rolling basis and imposing $200,000 cap on fees for each professional over the course of the case); <u>In re Mountain Creek</u>

Resort, Inc., No. 17-19899 (SLM) (Bankr. D.N.J. June 27, 2017) (authorizing $25,000 per month per ordinary course professional on average over a rolling three month basis).

### Waiver of Bankruptcy Rule 6004(h)

24.     The Debtor seeks a waiver of any stay of the effectiveness of an order approving this Motion under Bankruptcy Rule 6004(h), to the extent it applies.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Any delay in granting the relief requested herein likely would be disruptive to the Debtor and any pending talc-related litigation involving it, thereby causing harm to the Debtor's estate.  Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Waiver of Memorandum of Law

25.     The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies on is incorporated herein and the Motion does not raise any novel issues of law.

### Notice

26.     Consistent with the *Order Establishing Case Management and Administrative Procedures* [Dkt. 554] (the "Case Management Order"), this Motion has been served on:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson; (d) the Future Claimants' Representative and her counsel; (d) counsel to the Ad Hoc Group of Supporting Counsel; and (g) the other parties on the Master Service List established by the Case

Management Order. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

## No Prior Request

27. No prior request for the relief sought in this Motion has been made to this or any other Court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court: (a) enter an order, substantially in the form submitted herewith, granting the relief requested herein; and (b) grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated: June 20, 2023          **WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (Admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

-17-