# **EXHIBIT 7**

**In the Matter Of:**

*In Re - LTL Management LLC*

*JOHN KIM*

*June 01, 2023*



17

1            J. KIM

2       Q.   Okay.  Just to -- so we can move

3   on, would you agree that the value could have

4   been up to $61 billion of the money?

5       A.   No, I would say that the value

6   reasonably would have been, you know, at that

7   time, probably -- you know, the best

8   calculation would be somewhere -- what we

9   know is at that time, there was a settlement

10  offer for these entities for $4.2 billion.

11           The value of that asset -- again,

12  the value of the Funding Agreement is equal

13  to the liability minus the assets of LTL.  We

14  know there is no possible way that we would

15  think that the value of the liability

16  approached $60 billion.

17           There was a cap on the liability,

18  on the Funding Agreement, but the value of

19  that Funding Agreement, of course, would be

20  what the liability was, and there -- no where

21  approached $60 billion.  In fact, as you know

22  what our position is, you know where -- it

23  doesn't approach $30 billion.

24           So, you know, I think the best way

25  to think about the value of that asset was --

Case 23-12825-MBK    Doc 856-7    Filed 06/22/23    Entered 06/22/23 15:24:33    Desc
In Re - LTL Management LLC         Exhibit 7    Page 4 of 6                       John Kim
                                       Confidential                            June 01, 2023

88

1               J. KIM

2      what the position -- and as evidenced -- as

3      laid out in the omnibus objection is -- you

4      know, the position of Johnson & Johnson was

5      that the agreement was unenforceable.  That

6      was the position they took.

7               So, again, I refer to the

8      objection and -- about what the positions of

9      the parties were.

10          Q.   Mr. Kim, it's the case, is it not,

11     that LTL wanted to be in financial distress

12     after it signed the second Funding Agreement?

13               MR. JONES:  Object to the form

14          of the question.

15          A.   Yeah, I would say LTL was clearly

16     in financial distress.  And, frankly, it was

17     clearly in financial distress after the Third

18     Circuit's decision made the -- made the J&J

19     backstop unenforceable.  That's what caused

20     the financial distress.

21               The second funding agreements are

22     a way to try to deal with that

23     unenforceability issue, but it's still

24     remained in financial distress.  But the

25     financial distress was caused by the talc

Case 23-12825-MBK    Doc 856-7    Filed 06/22/23    Entered 06/22/23 15:24:33    Desc
In Re - LTL Management LLC    Exhibit 7    Page 5 of 6    John Kim
Confidential    June 01, 2023

109

1                J. KIM

2                The summary would be that after

3    the Third Circuit's decision and rendered the

4    2021 Funding Agreement unenforceable, when we

5    entered into the new agreements, the primary

6    obligor under the Funding Agreement was

7    HoldCo.

8                And while HoldCo has sufficient

9    assets so that the LTL is not rendered

10   insolvent by the talc liabilities, in order

11   to deal with the talc liabilities, well, we

12   believe that HoldCo would be financially

13   distressed, and, therefore, LTL would be

14   financially distressed because HoldCo's

15   assets are not as liquid.

16               And that because of the liquidity

17   issues, it would have to sell the assets and

18   substantially impair its business in order to

19   pay, under the Funding Agreement, the

20   obligations related to the talc liabilities.

21               So that, in a nutshell, renders

22   LTL and HoldCo financially distressed.

23         Q.    Okay.  So let me just try and

24   break that down a little bit.

25               Under the second Funding

214

1              J. KIM

2   does LTL have sufficient funding to manage

3   its talc liabilities in the tort system for

4   the next ten years?

5        A.    Again, I'm not sure.  Putting

6   these -- so as you go out in time, because of

7   the volatility and the variability of the

8   costs, aberrant verdicts settlements, I think

9   you would come closer and closer to reaching

10  the limit, but we believe that LTL and

11  HoldCo's assets are sufficient to fund the

12  talc liability period.

13       Q.    In the tort system?

14       A.    Yeah, in the tort -- outside of

15  bankruptcy.

16             But, again, there are liquidity

17  issues with respect to -- with respect to

18  that.

19       Q.    And those liquidity issues are

20  created by the Funding Agreement reached

21  between LTL and HoldCo, correct?

22       A.    I disagree with that.  Liquidity

23  issues are created by the talc litigation and

24  whatever assets HoldCo, which was the

25  original old JJCI, of course, have.