# **EXHIBIT 9**

# In the Matter Of:

*In Re - LTL Management LLC*

*JAMES ONDER*

*June 08, 2023*



Case 23-12825-MBK    Doc 856-9    Filed 06/22/23    Entered 06/22/23 15:24:33    Desc
In Re - LTL Management LLC    Exhibit 9    Page 3 of 7
James Onder
June 08, 2023

85

1                  J. ONDER

2 has been represented in open court, there

3 are, you know, there are still things you

4 have details to work out, things we disagree

5 on. You know, things that we want everybody

6 to be on board with. And that's why I've

7 repeatedly asked the TCC, please come to the

8 table. Let's talk. Let's work it out.

9          Likewise, I have encouraged J&J,

10 hey, let's set up a mediation where we all

11 sit down and work out these final details,

12 you know, these final issues, because I think

13 we can get a resolution that everybody could

14 agree to.

15          I think we have an agreement. Are

16 there details to work out like there always

17 are in any deal, of course.

18      Q. You are aware, of course, that a

19 plan has been filed by the Debtor in this

20 case now, correct?

21      A. Yes.

22      Q. Okay. Have you reviewed that

23 plan?

24      A. Yes. It's been awhile, but yes.

25      Q. Is it your view that that plan

158

1                  J. ONDER
2      Q.   So, Mr. Onder, I've put on the
3  screen what's been marked as Exhibit 8.
4           And you see, sir, that this is the
5  plan that has now been filed by the Debtor,
6  correct?
7      A.   Yes.
8      Q.   And you've reviewed the plan?
9      A.   Yes.
10     Q.   Is it fair to say, Mr. Onder, that
11 you were somewhat discouraged by the plan?
12          MR. HOFMEISTER:  Objection to
13     the form of the question.
14     A.   I don't know what you mean.  I --
15 we knew through the PSA that this was a path
16 towards resolution.  When they filed the
17 plan, the plan was not consistent in some
18 ways with the PSA.  I can go through a lot of
19 speculation that I've gone through with the
20 mediators and so forth about why I think it
21 was filed the way it was filed and so forth.
22 But I think the issues of that plan can be
23 resolved if we all work together.
24     Q.   You were disappointed in the plan,
25 were you not?

159

1              J. ONDER

2              MR. HOFMEISTER:  Objection to

3     the form of the question.

4     A.    I don't know if "disappointment"

5  is the word.  It wasn't consistent but, by

6  the same token, I understand potential

7  litigation strategies of why things may be

8  done the way they are done, you know, for

9  negotiation purposes.

10              And therefore, I understand -- was

11  I happy with the fact that it did not

12  identically follow the PSA, it incorporated a

13  lot of -- incorporated a lot of the things

14  that we may have discussed and agreed on.

15  Yeah, I would have liked to see that.  But

16  the same token, I understood with the plan,

17  why it was done the way it was done, and I

18  suspect that was part of a negotiating

19  strategy.

20              And I can't blame J&J for engaging

21  in a negotiating strategy that they believe

22  will be -- you know, lead to the -- what --

23  everybody, ultimately, getting on board and

24  resolving things.

25              MR. MOXLEY:  Let's mark, Deane

```
                                                            242
 1                    J. ONDER
 2
 3
 4        Q.    Okay.  But to be clear, the plan
 5   that was rolled out on May 15, 2023, if that
 6   was voted on tomorrow, that is not a vote --
 7   that is not a plan that you would support; is
 8   that correct?
 9             MR. RASMUSSEN:  Objection to the
10        form of the question.
11        A.    Richard, that calls for
12   speculation and asking me to assume facts I
13   know are going to be untrue.
14        Q.    So you're not -- you're not going
15   to answer -- you won't answer that question.
16   If the plan that is currently rolled out,
17   that is not -- that is not a plan that you
18   could support and recommend to your clients;
19   is that correct?
20             MR. HOFMEISTER:  Objection.
21             MR. RASMUSSEN:  Object to the
22        form of the question.
23        A.    If I had to consider my options
24   right now and say which way I would go on
25   that, knowing everything, I mean, at this
```

243

1  J. ONDER

2  point, I don't know which way I would go.  I

3  see so many benefits to it, but I do see some

4  downsides -- downsides.  I don't know which

5  way I would go right now.

6  Ultimately, I know my clients

7  would overwhelmingly support the current

8  plan.  They would overwhelmingly support

9  anything because they already accomplished

10  their goal of having pulled off the market

11  and saving hundreds of thousands of lives in

12  the future and accomplished the goal of

13  taking care of their kids and grandkids and

14  great-great-grandkids.

15  I think I'd really give it some

16  long, hard thought on which way I would go,

17  and probably what I would do is, I would

18  leave it -- I would set out the pros and the

19  cons and leave it to my clients to decide.

20  You know, that's what I would do at this

21  point.  Because I -- you know, there are

22  things I don't like about it.  There are

23  things I like about it.  And -- but, again,

24  you are asking me to engage in a hypothetical

25  and speculate because that is not the plan