Monday, April 17, 2023 at 15:41:05 Central Daylight Time

**Subject:** RSA-Talc
**Date:** Sunday, February 26, 2023 at 2:55:18 AM Central Standard Time
**From:** Mikal Watts
**To:** JMurdica@btlaw.com, Jason Aron Itkin
**Attachments:** RESTRUCTURING SUPPORT AGREEMENT-LTL (20230226-MCW).docx

Exhibit 6
04/17/2023
Watts

Jim/Jason:

Here is a Restructuring Support Agreement, modeled off of what we did in PG&E.

As we add law firms, we just get them to sign on page 18 with the number of claimants they profess to represent.

The Term Sheet is referenced on Page 19.

Working on that document now.

Mikal

# RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, together with all exhibits and schedules attached hereto or incorporated herein, this "Agreement") dated February __, 2023 is made among:

(a)     LTL Management LLC ("LTL") (hereinafter, the "Debtor");

(b)     Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc. ("JJCI") (herein collectively "Funding Agreement Payors"), as payors to that certain Amended and Restated Funding Agreement, dated as of October 12, 2021 (the "Funding Agreement"), which Funding Agreement is available to provide the Company with funding for, among other things, the funding of one or more trusts established under the Bankruptcy Code for the benefit of current and future talc claimants as provided in a plan of reorganization for the Company to the extent the Company's other assets are insufficient to satisfy the Company's liabilities in connection with such plan and subject to the limitations set forth therein

(c)     the attorneys and other advisors and agents for holders of Talc Claims (as defined in the Term Sheet) that are signatories to this Agreement (each a "Consenting Talc Claimant Professional").

Each of the Debtors, the Funding Agreement Payors, the Consenting Talc Claimant Professionals, and any subsequent person or entity that becomes a party hereto in accordance with the terms hereof are referred to herein collectively as the "Parties" and each individually as a "Party". Underlined terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan (as defined below) or on the plan modifications term sheet attached hereto as **Exhibit A** (the "Term Sheet").

## RECITALS

**WHEREAS**, on October 14, 2021, the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in theUnited States Bankruptcy Court for the Western District of North Carolina, which proceeding was transferred for venue reasons to the United States Bankruptcy Court for the District of New Jersey, (the "Bankruptcy Court");

**WHEREAS**, the Bankruptcy Court has administered *LTL Management LLC*, 21-30589 (MBK) ("the Bankruptcy Case") since that transfer and has denied on March 2, 2022 a Motion to Dismiss the Bankruptcy Case (the "MTD Order")

**WHEREAS**, appeals of the MTD Order have been taken by different parties to the United States Court of Appeals for the Third Circuit, 22-8015, 22-8016, 22-8020 & 22-8021 (the "MTD Appeals"), and which appeals resulted in a ruling on January 30, 2023 by the United States Court of Appeals for the Third Circuit (the "Third Circuit") reversing the Bankrupty Court's MTD Order (the "MTD Appeals Order").

1

**WHEREAS**, Debtors moved for reconsideration of the MTD Appeals Order, and whereas the Third Circuit has since requested briefing from the Plaintiffs on the Debtors' Motion for Reconsideration.

**WHEREAS**, the Parties have engaged in good faith, arm's length negotiations on the material terms of certain restructuring transactions with respect to the Bankruptcy Case.

**WHEREAS**, the Debtor and the Funding Agreement Payors have agreed to propose a Plan as provided for in the Term Sheet dated February __, 2023 ("The Term Sheet") to include the terms and conditions set forth in this Agreement and with the modifications set forth in the Term Sheet (the "Plan"), and a related disclosure statement (the "Disclosure Statement");

**WHEREAS**, in light of the aforementioned agreement, the Consenting Talc Claimant Professionals who signed the Term Sheet will agree to support the Plan if not inconsistent with the Term Sheet;

and

**WHEREAS**, the Parties desire to express to each other their mutual support and commitment in respect of this Agreement and the Plan as it will not be inconsistent with the Term Sheet.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1. **Certain Definitions.** As used in this Agreement, the following terms have the following meanings:

    (a) "Agreement Effective Date" means the date on which counterpart signature pages to this Agreement shall have been executed and delivered by (i) the Debtor, (ii) the Funding Agreement Payors, and (iii) the following Consenting Talc Claimant Professionals:
    (1) Watts Guerra LLC;
    (2) Arnold & Itkin LLP;
    (3) __;
    (4) __;
    (5) __;
    (6) __;
    (7) __;
    (8) __.

    (b) "Approval Orders" means, collectively, the RSA Approval Order and the Estimation Approval Order.

    (c) "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

2

(d) "Consenting Talc Claimants Threshold" means the date on which a sufficient number of Talc Injury Claims vote to accept the Amended Plan such that the class of Talc Injury Claims in the Plan votes to accept the Plan under 11 U.S.C. § 1126(c) as determined by the Bankruptcy Court.

(e) "Consenting Talc Claimant Professional Group" means the group of ____ (__) law firms, the membership of which shall be subject to addition upon the vote of a simple majority of the members of such group at the time. The initial members of the Consenting Talc Claimant Professional Group, to the extent that they become Consenting Talc Claimant Professionals, are: (i) Watts Guerra LLC; (ii) Arnold & Itkin LLP; (iii) ___; (iv) __; (v) __; (vi) __; (vii) __; (viii) __; and (ix) ___ (who for the avoidance of doubt collectively shall each have one vote).

(f) "Definitive Documents" means the documents (including any related agreements, instruments, schedules, or exhibits) that are necessary or desirable to implement, or otherwise relate to this Agreement, the Plan (including any plan supplements), the Disclosure Statement, any order approving the Disclosure Statement, and any order confirming the Plan, in each case on terms and conditions consistent with the Plan.

(g) "Effective Date" has the meaning set forth in the Plan.

(h) "Estimation Approval Motion" means the motion seeking entry of the Estimation Approval Order.

(i) "Estimation Approval Order" means the order, in form and substance reasonably acceptable to the Parties and subject to and conditioned upon the satisfaction of the Consenting Talc Claimant Threshold, approving settlement of the Estimation Matters, pursuant to Federal Rule of Bankruptcy Procedure 9019 and Section 502(c) of the Bankruptcy Code, which shall provide for the aggregate estimation and aggregate allocation of the Talc Injury Claims in the amount of the Aggregate Talc Injury Claimant Consideration for all purposes in these Chapter 11 Cases (including, without limitation, for distribution to the Talc Claims Trust under the Plan).

(j) "Estimation Matters" means the (i) Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Talc Claims Estimation Procedures (ECF No. ____) in Case No. 21-30589 (MBK) pending in the United States District Court for the District of New Jersey.

(k) "Financing Motion" means the Motion of Debtor and Funding Agreement Payors for Entry of Orders (I) Approving Terms of, and Debtors' Entry into and Performance under the Funding Agreement and (II) Authorizing Incurrence, Payment, and Allowance of Fee and/or Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims (ECF No. _____) as amended or modified.

(l) "Interests" has the meaning set forth in the Amended Plan.

(m) "Requisite Consenting Talc Claimant Professionals" means the Consenting Talc Claimant Professional Group, acting by vote of a simple majority of its members.

(n) "RSA Approval Motion" means a motion seeking approval of this Agreement in form and substance reasonably satisfactory to the Debtor, the Funding Agreement

3

Payors, a majority of the Requisite Consenting Talc Claimant Professionals.

(o) "RSA Approval Order" means an order, in form and substance reasonably acceptable to the Debtor, the Funding Agreement Payors, and the Requisite Consenting Talc Claimant Professionals, approving this Agreement.

(p) "SEC" means the United States Securities and Exchange Commission.

(q) "Securities Act" means the Securities Act of 1933, as amended.

(r) "Support Period" means the period commencing on the Agreement Effective Date and ending on the earlier of the (i) date on which this Agreement is terminated in accordance with Section 3 hereof and (ii) the Effective Date of the Plan.

2. **Agreement Among the Parties to Implement the Term Sheet.** Subject to the terms and conditions hereof, for the duration of the Support Period, the Parties, as applicable, and each of their respective attorneys, advisors and agents, agree that:

(a) the Debtor shall (i) file the Plan with the Bankruptcy Court by March __, 2023, (ii) seek approval by the Bankruptcy Court of procedures to allow distribution of solicitation materials and casting of ballots for holders of Talc Injury Claims by digital means, (iii) (v) use commercially reasonable efforts to obtain confirmation of the Plan as soon as reasonably practicable in accordance with the Bankruptcy Code and the Bankruptcy Rules and on terms consistent with this Agreement;

(b) the Debtor shall file the RSA Approval Motion within three (3) days of Agreement Effective Date and seek entry of the RSA Approval Order;

(c) upon the filing of the RSA Approval Motion, the Parties agree to seek a stay of the Estimation Matters until such time as the Bankruptcy Court has entered the Estimation Approval Order, or a termination under Section 3 hereof;

(d) the Debtors shall file the Estimation Approval Motion within three (3) days of the entry of an order by the Bankruptcy Court approving the Disclosure Statement and the Estimation Approval Motion shall be heard at or before the beginning of the Confirmation Hearing;

(e) each Party shall support entry of the Approval Orders by the Bankruptcy Court and the United States District Court for the District of New Jersey (Case No. 21-30589 (MBK)), as applicable;

(f) each Consenting Talc Claimant Professional shall use all reasonable efforts to advise and recommend to its existing and future clients' (who hold Talc Injury Claims) to (i) support and vote to accept the Plan, and (ii) to opt-in to consensual releases under Section 10.9(b) of the Plan;

(i) the Requisite Consenting Talc Claimant Professionals shall provide the Debtors and the Shareholder Proponents with all terms for the Talc Claims Trust not specified in the Term Sheet no later than March __, 2023;

(j) each Party shall use commercially reasonable efforts to support and

cooperate with the Debtors to obtain confirmation of the Plan and any regulatory or other approvals necessary for confirmation or effectiveness of the Plan;

    (k)    the Consenting Talc Claimant Professionals shall provide the Debtor a letter, in form and substance agreed toby the Debtor, the Funding Agreement Payors, and the Requisite Consenting Talc Claimant Professionals, from the Consenting Talc Claimant Professionals that the Debtors may distribute to holders of Talc Claims along with the solicitation materials in respect of the Plan in which the Consenting Talc Claimant Professionals advise and recommend holders of Talc Claims to vote to accept the Plan;

    (l)    the Requisite Consenting Talc Claimant Professionals shall provide to counsel, who are not Consenting Talc Claimant Professionals, written information to facilitate the holders of Talc Injury Claims not represented by a Consenting Talc Claimant Professional and their counsel making a meaningful and informed participation and voting decision on the Plan, and each holder of a Talc Injury Claim shall have the right to make his or her own decision regarding the Plan;

    (m)    each Funding Agreement Payor (i) shall, subject to the receipt of the Disclosure Statement and other solicitation materials in respect of the Plan, vote or cause to be voted all of its Interests to accept the Plan; and (ii) shall not change or withdraw (or cause to be changed or withdrawn) any vote cast to accept the Plan;

    (n)    each Party shall oppose efforts and procedures to (i) solicit acceptances by any creditors of, and (ii) seek confirmation, consummation or implementation of the Alternative Plan;

    (o)    each Party shall not:

        i.    object to, delay, impede, or take any other action to interfere with acceptance, confirmation, or implementation of the Plan, including, without limitation, support any request to terminate the Debtors' exclusive periods to file or solicit a plan of reorganization;

        ii.    directly or indirectly solicit approval or acceptance of, encourage, propose, file, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout, or plan of reorganization for the Debtor other than the Plan, including, without limitation, the Plan or any other plan of reorganization proposed by any Ad Hoc Committee; or

        iii.    otherwise take any action that would interfere with, delay, impede, or postpone (i) the solicitation of acceptances, consummation, or implementation of the Plan, or (ii) the entry or effectiveness of the Approval Orders (other than as a result of the failure of the Consenting Talc Claimant Threshold to occur).

    (p)    This Agreement shall not result in the termination of the Bankruptcy Appeal, and each party agrees to take no action to terminate the appeal.

    **3.**    **Termination.**

    (a)    <u>Automatic Termination.</u>  This Agreement will terminate automatically if:

5

          i.    the Consenting Talc Claimants Threshold is not satisfied by the voting deadline for the Plan;

          ii.    any of the following occur: (A) the RSA Approval Motion is not filed in the Bankruptcy Court within three (3) days of the Agreement Effective Date, (B) the RSA Approval Order is not entered by April __, 2023; (C) the Disclosure Statement is not approved by April __, 2023 and the Estimation Approval Motion is not filed by April __, 2023, (D) the Plan is not confirmed by April __, 2023, or (E) the Effective Date of the Plan does not occur prior to June __, 2023; <u>provided</u>, the deadlines set forth in items (A) through (E) of the foregoing may be extended by mutual written consent of the Debtor, and the Funding Agreement Payors, Requisite Consenting Talc Claimant Professionals;

          iii.    the issuance, promulgation, or enactment by any governmental entity, including any regulatory or licensing authority or court of competent jurisdiction (including, without limitation, an order of the Bankruptcy Court, which has not been stayed), of any statute, regulation, ruling or order declaring the Plan or any material portion thereof (in each case, to the extent it relates to the terms hereof) to be unenforceable or enjoining or otherwise restricting the consummation of any material portion of the Plan, and such ruling, judgment, or order has not been stayed, reversed, or vacated, within fourteen (14) calendar days after issuance;

          iv.    a trustee under section 1104 of the Bankruptcy Code or an examiner with expanded powers shall have been appointed in the Chapter 11 Cases; or

          v.    an order for relief under chapter 7 of the Bankruptcy Code shall have been entered in the Chapter 11 Cases, or the Chapter 11 Cases shall have been dismissed, in each case by order of the Bankruptcy Court.

    (b)    <u>Requisite Consenting Talc Claimant Professional Termination Events.</u>  The Requisite Consenting Talc Claimant Professionals may terminate this Agreement, in each case, upon delivery of written notice to the Debtors and the Funding Agreement Payors at anytime after the occurrence of or during the continuation of any of the following events (each, a "<u>Creditor Termination Event</u>"):

          i.    the breach by the Debtor or the Funding Agreement Payors of any of their obligations, representations, warranties, or covenants set forth in this Agreement;

          ii.    the Debtors and the Funding Agreement Payors at any time either (A) fail to prosecute the Plan and seek entry of the Confirmation Order that contain the terms set forth in the Term Sheet, and are otherwise consistent with the terms hereof, or (B) propose, pursue or support a Plan or Confirmation Order inconsistent with the terms set forth in the Term Sheet or the Plan; or

          iii.    the Plan is, or is modified to be, inconsistent with the Term Sheet or this Agreement;

Notwithstanding the foregoing, the Debtor and the Funding Agreement Payors shall have ten (10) days from the receipt of any such written notice of termination from the Requisite Consenting Talc

Claimant Professionals specifying the purported default or Creditor Termination Event to cure any purported default or Creditor Termination Event under this section and no termination of this Agreement shall be effective unless and until the expiration of such ten (10) day period without such purported default or Creditor Termination Event being waived or cured.

        (c)    Debtor/Funding Agreement Payors Termination. The Debtor or either Funding Agreement Payor may terminate this Agreement upon delivery of written notice to the the Consenting Talc Claimant Professionals at any time after the occurrence of or during the continuation of any of the following events (each a "Proponent Termination Event"):

        i.    the breach by either the Consenting Talc Claimant Professionals that represent, in the aggregate, more than 8,000 holders of Talc Injury Claims of any of their obligations, representations, warranties, or covenants set forth in this Agreement; or

        ii.    the Consenting Talc Claimant Professionals take any action inconsistent with its obligations under thisAgreement or fails to take any action required under this Agreement, in either case in reliance on the provisions of Section 19 of this Agreement.

Notwithstanding the foregoing, the Consenting Talc Claimant Professionals shall have ten (10) days from the receipt of any such written notice of termination from the Debtors or the Funding Agreement Payors specifying the purported default or Proponent Termination Event to cure any purported default or Proponent Termination Event under this section and no termination of this Agreement shall be effective unless and until the expiration of such ten (10) day period without such purported default or Proponent Termination Event being waived or cured.

        (d)    Termination Generally.

        i.    No Party may terminate this Agreement based on an event caused by such Party's own failure to perform or comply in all material respects with the terms and conditions of this Agreement (unless such failure to perform or comply arises as a result of another Party's actions or inactions).

        ii.    Upon termination of this Agreement in accordance with this Section 3, (A) all Parties shall be released from any prospective commitments, undertakings, and agreements under or related to this Agreement other than obligations under this Agreement that by their terms expressly survive termination; (B) the Estimation Matters shall immediately recommence; and (C) all litigation shall be determined by the United States District Court for the District of New Jersey without any reference to any state court proceeding until permitted by the Bankruptcy Court.

        iii.    Upon termination of this Agreement pursuant to Section 3, all prior agreements among the Parties shall become null and void, the Parties will be excused from any future performance, and the Approval Orders shall be immediately and automatically vacated and be of no further force and effect, other than to the extent that the RSA

Approval Order approves this Agreement, and shall not be admissible as evidence in any case or proceeding for any purpose.

iv. Notwithstanding anything to the contrary herein, if the Consenting Talc Claimant Professionals terminate this Agreement in reliance of the provisions of Section 19 herein, suchtermination shall only terminate the Consenting Talc Claimant Professionals as a party to this Agreement and shall not terminate this Agreement for any other Party.

**4. Definitive Documents; Good Faith Cooperation; Further Assurances.**

Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to, the pursuit, approval, implementation, and consummation of the transactions contemplated by this Agreement and the Amended Plan as well as the negotiation, drafting, execution, and delivery of the Definitive Documents. Furthermore, subject to the terms hereof, each of the Parties shall take such action as may be reasonably necessary or reasonably requested by the other Parties to carry out the purposes and intent of this Agreement, and shall refrain from taking any action that would frustrate the purposes and intent of this Agreement.

**5. Mutual Representations and Warranties.**

Each of the Parties, severally and not jointly, represents and warrants to each other Party that the following statements are true, correct, and complete as of the date hereof (or, if later, the date that such Party first became or becomes a Party) but, solely with respect to the Debtor and the Consenting Talc Claimant Professionals, subject to any limitations or approvals arising from, or required by, the commencement of the Chapter 11 Cases:

(a) it is validly existing and in good standing under the laws of the state of its organization, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability;

(b) except as expressly provided in this Agreement or as may be required for disclosure by the SEC, no material consent or approval of, or any registration or filing with, any governmental authority or regulatory body is required for it to carry out and perform its obligations under this Agreement and the Plan;

(c) except as expressly provided in this Agreement, it has all requisite organizational power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement and the Plan;

(d) the execution and delivery by it of this Agreement, and the performance of its obligations hereunder, have been duly authorized by all necessary organizational action on its part;

(e) it has been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement; and

8

(f) the execution, delivery, and performance by such Party of this Agreement does not and will not (i) violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries, (ii) conflict with, result in a breach of, or constitute (with or without notice or lapse of time or both) a default under any material debt for borrowed money to which it or any of its subsidiaries is a party, or (iii) violate any order, writ, injunction, decree, statute, rule, or regulation.

6. **Cooperation.** Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to the pursuit, approval, negotiation, execution, delivery, and implementation of the Plan. The Debtors shall use commercially reasonable efforts to provide counsel for the Consenting Talc Claimant Professionals, and the Funding Agreement Payors drafts of all motions, applications, and other substantive pleadings (including the Amended Plan and/or Disclosure Statement, and any amendments thereto) the Debtors intend to file with the Bankruptcy Court to implement the Plan (or that could reasonably be expected to affect implementation of the modifications in the Term Sheet) at least three (3) calendar days before the date when the Debtors intend to file such pleading, unless such advance notice is impossible or impracticable under the circumstances, in which case the Debtors shall use commercially reasonable efforts to notify telephonically or by electronic mail counsel to the Consenting Talc Claimant Professionals, and the Funding Agreement Payors to advise them as such and, in any event, shall provide such drafts as soon as reasonably practicable.

7. **Amendments.** Except as otherwise expressly set forth herein, this Agreement (including any exhibits or schedules hereto and thereto) may not be waived, modified, amended, or supplemented except in a writing signed by the Debtors, the Shareholder Proponents, and the Requisite Consenting Talc Claimant Professionals, provided, that any waiver, change, modification, or amendment to this Agreement or the Amended Plan that adversely affects the economic recoveries or treatment of the holders of Talc Injury Claims compared to the economic recoveries or treatment set forth in the Term Sheet attached hereto may not be made without the written consent of the Consenting Talc Claimant Professional representing such holder. In the event that a waiver, change, modification, or amendment to this Agreement materially adversely affects a client of a Consenting Talc Claimant Professional and that Consenting Talc Claimant Professional does not consent ("Non-Consenting Claimant Professional"), and such waiver, change, modification, or amendment receives the consent of the Requisite Consenting Talc Claimant Professionals, this Agreement shall be deemed to have been terminated only as to such Non-Consenting Claimant Professional, and this Agreement shall continue in full force and effect in respect to all other Consenting Talc Claimant Professionals. Notwithstanding the foregoing, the Debtors may amend, modify, or supplement the Amended Plan from time to time without the consent of any Consenting Talc Claimant Professional to cure any ambiguity, defect (including any technical defect), or inconsistency, provided, that any such amendments, modifications, or supplements do not materially adversely affect the rights, interests, or treatment of the Consenting Talc Claimant Professional under the Plan.

8. **Governing Law; Jurisdiction; Waiver of Jury Trial.**

(a) This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the law of the State of California and applicable

9

federal law, without regard to any conflict of law provisions that would require the application of the law of any other jurisdiction.

(b) Each Party irrevocably agrees that any legal action, suit or proceeding arising out of or relating to this Agreement brought by any party or its successors or assigns shall be brought and determined in the Bankruptcy Court and each Party hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, Courts of the New Jersey and of the United States District Court for the District of New Jersey, and any appellate court from any thereof, for itself and with respect to its property, generally and unconditionally. Each Party further agrees that notice as provided herein shall constitute sufficient service of process and the Parties further waive any argument that such service is insufficient. Each Party hereby irrevocably and unconditionally waives, and agrees not to assert, by way of motion or as a defense, counterclaim or otherwise, in any proceeding arising out of or relating to this Agreement, (i) any claim that it is not personally subject to the jurisdiction of the Bankruptcy Court as described herein for any reason, (ii) that it or its property is exempt or immune from jurisdiction of such court or from any legal process commenced in such court (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise) and (iii) that (A) the proceeding in such court is brought in an inconvenient forum, (B) the venue of such proceeding is improper or (C) this Agreement, or the subject matter hereof, may not be enforced in or by such court.

(c) EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION. **NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, NOTHING IN THIS AGREEMENT, INCLUDING THIS SECTION 8(c), SHALL AFFECT ANY CONSENTING TALC CLAIMANT'S RIGHT TO A JURY TRIAL WITH RESPECT TO ITS APPLICABLE TALC INJURY CLAIM.**

9. **Specific Performance/Remedies.** The Parties understand and agree that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (including attorneys' fees and costs) as a remedy of any such breach, without the necessity of proving the inadequacy of money damages as a remedy. Each Party hereby waives any requirement for the security or posting of any bond in connection with such remedies.

10. **Survival.** Notwithstanding the termination of this Agreement pursuant to Section 3, Sections 2(h) and 3(d)(ii) and (iv) shall survive such termination and shall continue in full force and effect in accordance with the terms hereof; *provided*, that any liability of a Party for failure to comply with the terms of this Agreement shall survive such termination.

10

11. **Headings.** The headings of the sections, paragraphs, and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this Agreement.

12. **Successors and Assigns.** This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators, and representatives, provided that nothing contained in this Section 12 shall be deemed to permit sales, assignments, or transfers of Claims subject to transfer restrictions under this Agreement.

13. **Several, Not Joint, Obligations.** The agreements, representations, warranties, and obligations of the Parties under this Agreement are, in all respects, several and not joint.

14. **Relationship Among Parties.** Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties and no other person or entity shall be a third-party beneficiary hereof. No Party shall have any responsibility for any trading by any other entity by virtue of this Agreement. No prior history, pattern, or practice of sharing confidences among or between the Parties shall in any way affect or negate this understanding and agreement. The Parties, other than the Funding Agreement Payors, have no agreement, arrangement, or understanding with respect to acting together for the purpose of acquiring, holding, voting, or disposing of any equity securities of the Debtor and do not constitute a "group" within the meaning of Rule 13d-5 under the Securities Act, as amended.

15. **Prior Negotiations; Entire Agreement.** This Agreement, including the exhibits and schedules hereto, constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof and thereof.

16. **Counterparts.** This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement. Execution copies of this Agreement delivered by facsimile or PDF shall be deemed to be an original for the purposes of this paragraph.

17. **Notices.** All notices hereunder shall be deemed given if in writing and delivered, if contemporaneously sent by electronic mail, facsimile, courier or by registered or certified mail (return receipt requested) to the following addresses and facsimile numbers:

(a) If to the Debtor, to:

LTL Management LLC
501 George Street
New Brunswick, NJ 08933
Attention: _____ (_____.com)

With a copy to:

JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Attention: Gregory M. Gordon
(gmgordon@jonesday.com)

- and -

(b)    If to the Funding Agreement Payors, to:

JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933
Attention: Erik Haas (███████.com)

JOHNSON AND JOHNSON CONSUMER INC.
199 Grandview Road
Skillman, NJ 08558
Attention: Erik Haas (███████.com)

- and -

BARNES & THORNBURG LLP


Attention: Jim Murdica (jmurdica@btlaw.com)

(c)    If to a Consenting Talc Claimant, to the address listed on the signaturepage for the applicable Consenting Talc Claimant Professional.

Any notice given by delivery, mail, or courier shall be effective when received. Any notice given by facsimile or electronic mail shall be effective upon oral, machine, or electronic mail (as applicable) confirmation of transmission.

**18.    Settlement and Mediation Discussions.** This Agreement and all statements and information contained herein (a) are settlement communications made in a court ordered mediation, (b) are made without prejudice to any party's legal position, (c) are subject to Federal Rule of Evidence 408, the mediation privileges, and any applicable bankruptcy or state law covering the same subject matter, (d) shall not constitute an admission of liability by any person or entity, and (e) are not discoverable or admissible for any purpose in any legal or administrative proceeding whatsoever.

**19.    Fiduciary Duty.** Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement, the Term Sheet or the Plan shall require the Consenting Talc Claimant Professionals to take or refrain from taking any action that it determines ingood faith would be inconsistent with its fiduciary duties under applicable law. Notwithstanding the

foregoing, the Consenting Talc Claimant Professionals acknowledge that its entry into this Agreement is consistent with its fiduciary duties.

20. **Good-Faith Cooperation; Further Assurances.** Subject to the terms and conditions hereof, the Parties shall take such action as may be reasonably necessary or reasonably requested by the other Party to carry out the purposes and intent of this Agreement.

21. **No Solicitation; Adequate Information.** This Agreement is not and shall not be deemed to be a solicitation for consents to the Plan. The votes of the holders of Claims against the Debtors will not be solicited until such holders who are entitled to vote on the Plan have received the Plan, the Disclosure Statement and related ballots, and other required solicitation materials. In addition, this Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

22. **Publicity.** The Debtors shall use commercially reasonable efforts to submit drafts to ▓▓▓▓▓▓▓▓▓▓, counsel to the Consenting Talc Claimant Professionals, and to JONES DAY, counsel to the Debtor, and to BARNES & THORBROUGH, counsel to the Funding Agreement Payors, any press releases and public documents that constitute disclosure of the existence or terms of this Agreement or any amendment to the terms of this Agreement before making any such disclosure, and shall afford them a reasonable opportunity under the circumstances to comment on such documents and disclosures and shall incorporate any such reasonable comments in good faith.

23. **Severability.** If any provision of this Agreement, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party. Further, it is the intention of the parties that nothing in this Agreement shall obligate any party to make a filing with the Securities and Exchange Commission pursuant to Section 13 or Section 16 of the Securities Exchange Act of 1934, as amended. Upon any such determination of invalidity or a requirement to file, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

24. **Additional Consenting Talc Claimants Professionals.** Counsel for holders of a Talc Injury Claim may at any time become a party to this Agreement as a Consenting Talc Claimant Professional by executing a Joinder Agreement in the form attached hereto as Exhibit B, pursuant to which such Joining Party represents and warrants to the Debtor, the Funding Agreement Payor, and the Consenting Talc Claimant Professionals, that it agrees to be bound by the terms of this Agreement as a Consenting Talc Claimant Professional hereunder.

25. **Interpretation; Rules of Construction; Representation by Counsel.** When a reference is made in this Agreement to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this Agreement unless otherwise indicated. Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement, (c) the

words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement orother document shall be construed against the party drafting such agreement or document.

        **26.**    **Effectiveness.** Except as set forth in the immediately succeeding sentence, this Agreement shall be effective and binding on all Parties upon the Agreement Effective Date. Upon the Agreement Effective Date and until the earlier of entry of the Approval Orders, the Debtors, the Funding Agreement Payors, and the Consenting Talc Claimant Professionals, shall proceed in good faith during the Support Period to seek Bankruptcy Court approval of this Agreement and the Parties shall not, directly or indirectly, propose, file, support, solicit, encourage or participate in any chapter 11 plan or settlement of Talc Injury Claims other than as set forth herein.

[*Signature pages follow*.]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacities as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**DEBTOR**

**LTL MANAGEMENT LLC**

By: _____
Name: John K. Kim
Title: Chief Legal Officer

**FUNDING AGREEMENT PAYORS**

**JOHNSON & JOHNSON**

By: _____
Name: Erik Haas
Title: Chief Legal Officer, Litigation

**JOHNSON & JOHNSON CONSUMER INC.**

By: _____
Name: 
Title: 

15

CONSENTING TALC CLAIMANT PROFESSIONAL

By: _____

Name: <u>Mikal C. Watts</u>

Firm: <u>WATTS GUERRA LLC</u>
Attorneys for \_\_\_\_\_ <u>Talc Claimants</u>

CONSENTING TALC CLAIMANT PROFESSIONAL

By: _____

Name: Jason Itkin

Firm: ARNOLD & ITKIN LLP
Attorneys for _____ Talc Claimants

17

CONSENTING TALC CLAIMANT PROFESSIONAL

By: _____

Name: _____

Firm:  [LAW FIRM NAME]
       Attorneys for \_\_\_\_\_ Talc Claimants

# **EXHIBIT A**

## **TERM SHEET**