**In the Matter Of:**

*In Re: LTL Management, LLC*

*ERIK HAAS*

*June 07, 2023*



### Page 1

```
 2  UNITED STATES BANKRUPTCY COURT
    DISTRICT OF NEW JERSEY
 3  ------------------------------------------X
    In Re:
 4
 5  LTL MANAGEMENT, LLC,
 6                        Debtor.
 7
    Case No. 23-12825 (MBK)
 8  ------------------------------------------X
 9
10     VIDEOTAPED DEPOSITION OF ERIK HAAS
11
12
13
14  DATE:  June 7, 2023
15  TIME:  9:30 a.m.
16  PLACE: ***REMOTE***
17  BEFORE: Rebecca Schaumloffel, RPR, CCR-NJ
18  JOB NO:  2023-898653
```

### Page 2

```
 2   A P P E A R A N C E S:
 3
 4
 5    BARNES & THORNBERG
          Attorneys for J&J
 6        2029 Century Park East
          Suite 300
 7        Los Angeles, CA 90067
          BY:  KENDRA LOUNSBERRY, ESQ.
 8
 9
10
      BEASLEY ALLEN LAW FIRM
11        Attorneys for Alishia Landrom,
          et al.
12        218 Commerce Street
          Montgomery, Alabama 36104
13        BY:  LEIGH O'DELL, ESQ.
               ANDY BIRCHFIELD, ESQ.
14
15
16
      BROWN RUDNICK
17        Attorneys for the Talc Claimants
          7 Times Square
18        New York, New York 10036
          BY:  JEFF JONAS, ESQ.
19             LYDELL BENSON, ESQ.
               JENNIFER SCHEIN, ESQ.
20             BENNETT SILVERBERG, ESQ.
21
22    COLE SCHOTZ
          1325 Avenue of the Americas
23        19th Floor
          New York, NY 10019
24        BY:  SETH VAN AALTEN, ESQ.
```

### Page 3

```
 2  Appearances (continued:)
 3
 4    GENOVA BURNS, LLC
          494 Broad Street
 5        Newark, New Jersey 07102
          BY:  DANIEL M. STOLZ, ESQ.
 6
 7
 8
      GOLOMB SPIRT GRUNFELD, PC
 9        1835 Market Street
          Suite 2900
10        Philadelphia, PA 19103
          BY:  RICHARD GOLOMB, ESQ.
11
12
13
      JONES DAY
14        Attorneys for the Debtor
          250 Vesey Street
15        Suite 31
          New York, New York 10281
16        BY:  GEOFFREY GOTTBRECHT, ESQ.
               DAVID TORBORG, ESQ.
17             SAYURI SHIMODA, ESQ
               MARK RASMUSSEN, ESQ.
18
19
20    LEVIN PAPANTONIO RAFFERTY
          Attorneys for TCC - William Henry
21        316 South Baylen St.
          Pensacola, FL 32502
22        BY:  CHRIS TISI, ESQ.
```

### Page 4

```
 2  Appearances (continued:)
 3
 4    MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
          Attorneys for Katherine Tolleson,
 5        et al.
          777 S Harbour Island Blvd.
 6        Suite 310
          Tampa, Florida 33602
 7        BY:  CLAY THOMPSON, ESQ.
 8
 9
10    MILLER THOMSON LLP
          10155 102 Street
11        Edmonton, Alberta, Canada
          T5J 4G8
12        BY:  JEFF CARHART, ESQ.
13
14
15    OFFICE OF THE UNITED STATES TRUSTEE
          Attorneys for the United States
16        Department of Justice
          One Newark Center
17        Suite 2100
          Newark, New Jersey 07102
18        BY:  LAUREN BIELSKIE, ESQ.
               LINDA RICHENDERFER, ESQ.
19             JEFF SPONDER, ESQ.
20
21
      OTTERBOURG
22        Attorneys for TCC I
          230 Park Avenue
23        30th floor
          New York, New York 10169
24        BY:  (No appearance)
```

Page 9

1              E. HAAS
2      Is that okay with you?
3      A.   Mr. Jonas, you can ask your
4  questions.  I'll provide the answers.  If I
5  have issues, I will seek to clarify them.
6      Q.   Great.  And we want to make sure
7  you are comfortable today.  If at any point
8  you need a break, just let me know.
9           And with that, let me ask you, is
10 there any reason you can't testify truthfully
11 and completely today?
12     A.   There is no reason.
13     Q.   Great.  Where are you sitting
14 today, sir?
15     A.   I'm sitting in my office.
16     Q.   And that is in New Jersey?
17     A.   It is.
18     Q.   Excellent.  And when you say your
19 office, that's in an -- that's in the J&J
20 offices; is that right?
21     A.   That is correct.
22     Q.   Okay.  What did you do to prepare
23 for today's deposition?
24     A.   Nothing.
25     Q.   Okay.  What is the position of

Page 10

1              E. HAAS
2  Johnson & Johnson concerning the
3  unenforceability of the 2021 Funding
4  Agreement on and after January 30, 2023?
5           MR. STARNER:  Objection.  Vague.
6      And also caution the witness not
7      to disclose any information that he
8      may have obtained as litigation
9      counsel for Johnson & Johnson.
10          MR. JONAS:  Just so the record
11     is clear, Greg, I'm looking at a
12     letter from Mr. Rasmussen of Jones Day
13     dated May 26, 2023, in which he
14     indicates that Mr. Haas will be
15     testifying at our motion to dismiss
16     trial and he states that Mr. Haas will
17     be testifying about the position of
18     Johnson & Johnson concerning the
19     unenforceability of the 2021 Funding
20     Agreement on and after January 30,
21     2023.
22          I just want the record to be
23     clear that I think it's appropriate
24     for me to inquire with that -- in that
25     regard.  But, in any event, you can

Page 11

1              E. HAAS
2  instruct, et cetera.
3  BY MR. JONAS:
4      A.   Let me just add a couple of points
5  there, then, Mr. Jonas.  One, I object to
6  foundation.  I have never seen the letter
7  that you're talking about, number one.
8           Number two, that letter, based
9  upon your representation, was sent on behalf
10 of LTL.
11          Three, and I'm sure this is going
12 to be pervasive throughout this deposition,
13 but so the record is clear from the outset, I
14 am a litigator.  I'm in this case.  I made an
15 appearance on behalf of Johnson & Johnson,
16 and my positions, mainly, throughout this
17 deposition, I imagine, will be based upon
18 attorney-client privilege and work product
19 protected communications with my client.
20          I will endeavor to respond to the
21 best I can to those non-privileged matters
22 and non-protected matters, but to the extent
23 that you are asking for J&J's position
24 throughout the deposition, it will be
25 predicated in large part upon communications

Page 12

1              E. HAAS
2  with my client.
3           Now with that said, I believe your
4  question is what is the position of Johnson &
5  Johnson with respect to the enforceability of
6  the Funding Agreement that was entered into
7  in 2021.  And in that regard, Mr. Jonas, I
8  would direct you to the Termination and
9  Substitution Agreement dated April 4, 2023,
10 and, in particular, recital K, which sets
11 forth succinctly what is the position of
12 Johnson & Johnson with respect to the
13 enforceability of that agreement.
14          But in general, and without waiver
15 of any privileges or protections, I would say
16 that it is the position of Johnson & Johnson
17 that the Funding Agreement, after January 30,
18 2023, was void and unenforceable due to a
19 frustration of purpose, lack of
20 consideration, and mutual mistake.
21     Q.   And what is the position of
22 Johnson & Johnson concerning the purpose and
23 effect of the 2023 Termination and
24 Substitution Agreement and Support Agreement?
25          MR. STARNER:  Same instruction.

Page 13

```
1                E. HAAS
2    You can answer if you can.
3    A.   I can't.  I don't understand your
4  question, Mr. Jonas.
5    Q.   You are unable to answer my
6  question with respect to what Johnson &
7  Johnson's position is concerning the purpose
8  and effect of the 2023 Termination and
9  Substitution Agreement and Support Agreement?
10   A.   Mr. Jonas, you commenced this
11 deposition by instructing me to ask you
12 questions when questions are unclear.  Your
13 question is unclear.
14        I think the Termination and
15 Substitution Agreement on its face is clear.
16 It's unequivocal, it says what it says.
17   Q.   Okay.  And what is the position of
18 Johnson & Johnson concerning efforts and
19 proposals made to resolve LTL's talc
20 liability and the responses thereto?
21        MR. STARNER:  Objection.
22   A.   I find that to be an entirely
23 vague and undiscernable question.  If you
24 would like to try again, I'll try my best to
25 answer.
```

Page 14

```
1                E. HAAS
2    Q.   No, that's fine.  If you can't
3  answer that, that's -- we will just -- that
4  will be the record.
5    A.   Well, the record will be that I
6  asked you for clarification and you have
7  refused to provide it twice now.
8    Q.   I understand that, Mr. Haas.  I'll
9  ask the questions.  You do your best to
10 answer.  If you can --
11   A.   I will do my best --
12   Q.   Sir?
13   A.   -- conversation where it is
14 required.  Your questions were vague and
15 ambiguous.
16   Q.   Mr. Haas, respectfully, the court
17 reporter can only take down the words when
18 one of us is speaking.  So I'll -- when you
19 are speaking, I'll respect that.  I'll allow
20 you to speak.  Same for your counsel.  When
21 I'm speaking, I simply ask that you let me
22 finish my comment.  But we will move on.
23   A.   Well, I'm not -- since you stopped
24 speaking, you can let me clarify, once again.
25        To the extent your questions are
```

Page 15

```
1                E. HAAS
2  vague and ambiguous pursuant to your very
3  objection, Mr -- your instruction, Mr. Jonas.
4  I have asked for clarification.  So let the
5  record reflect that you have refused, twice
6  now, to provide the clarification that you
7  said you would.
8    Q.   And sir, if you do not understand
9  what LTL's counsel has said that you are
10 going to testify to at trial, let the record
11 reflect that and we will move on.
12   A.   I already stated, Mr. Jonas, that
13 you have neither shown me that letter that
14 you are referring to nor have I seen what I
15 believe you are referencing to.  So I have
16 noted the lack of foundation from your
17 question from the outset.
18        If you would like to put up the
19 letter so I can see the letter, number one,
20 I'm happy to look at it.  In general terms,
21 though, I find your questions to be vague and
22 ambiguous.
23   Q.   Are you finished?  Are you
24 finished, sir?
25   A.   Oh, I am finished.
```

Page 16

```
1                E. HAAS
2    Q.   Thanks.  Mr. Haas, does Johnson &
3  Johnson have an estimate for its total talc
4  liabilities?
5    A.   How are you defining "talc
6  liabilities"?
7    Q.   Sir, how do you define the word
8  "liability," sir?
9    A.   I define it very differently in
10 many different contexts.
11   Q.   In the context of a financial
12 statement, how do you use the word
13 "liabilities"?
14   A.   It could be defined very
15 differently depending upon the type of
16 financial statements, what the purpose of the
17 financial statement, and what the purpose of
18 the liability is.
19   Q.   Do you have any role, either in
20 review or comment, on any of the financial
21 statements which Johnson & Johnson files with
22 the Securities and Exchange Commission?
23   A.   Yes, I do.
24   Q.   And does Johnson & Johnson include
25 detailed information with respect to what on
```

Page 25

1            E. HAAS
2  was.
3     Q.   No, you didn't, sir.
4     A.   I just told you what the basis for
5  my conclusion as to that they were a
6  majority.
7     Q.   Okay. But just to confirm, in the
8  example I just gave you, you do not know what
9  the denominator is as a specific number,
10 correct?
11    A.   No, that's not correct, Mr. Jonas.
12 You sum up the representations of the
13 claimants that your clients purport to
14 represent and that added to the number of
15 claimants that the AHC purport to represent,
16 and that is the currently known denominator
17 based upon representations made.
18         To the extent your clients want to
19 come forward with more clarity with respect
20 to who they represent, we welcome those --
21 that information. In fact, we've sought that
22 information and you have been resisting that
23 information.
24    Q.   So what is your understanding of
25 that number?

Page 26

1            E. HAAS
2     A.   I just told you.
3         MR. STARNER: Objection. Asked
4    and answered.
5     A.   I answered it twice, Mr. Jonas.
6     Q.   So I'm asking you what your
7  understanding is of the specific number that
8  represents the denominator?
9     A.   Well, sitting here today, I'm not
10 going to speculate on or attempt to recall
11 the specific numbers, but you can go back and
12 look at the representations yourself.
13         Mr. Jonas, hold on one second. My
14 computer just phased out and I lost your Zoom
15 so just give me one moment. I'll see if I
16 can recover it because I can't see you.
17        MR. STARNER: We can still see
18   you, Erik. I don't know if you can --
19        THE WITNESS: Yeah, I know. I'm
20   just trying to figure out -- all
21   right. I got you back.
22        Okay. Go ahead.
23 BY MR. JONAS:
24    Q.   Okay. All right. I want to, just
25 for a moment, talk about the Amended and

Page 27

1            E. HAAS
2  Restated Funding Agreement dated October 12,
3  '21, that's 2021.
4         What was Johnson & Johnson's total
5  exposure or liability under that Funding
6  Agreement?
7         MR. STARNER: Objection. Vague.
8    And number two, I think it directly
9    calls for privileged information. So
10   that information -- that knowledge
11   would be based on his role as
12   litigation counsel to J&J.
13 BY MR. JONAS:
14    A.   So once again, Mr. Jonas, this is
15 going to be a line of questioning that
16 invades the attorney-client privilege and
17 work product protection. I am a litigator on
18 behalf of Johnson & Johnson in this matter.
19 My understanding and view of the
20 interpretation of these agreements are based
21 upon attorney-client privilege and work
22 product protected information.
23         With that said, what is in the
24 public domain already regarding the exposure
25 of Johnson & Johnson under the Funding

Page 28

1            E. HAAS
2  Agreement and related agreements is limited
3  to the talc liabilities, or the talc-related
4  liabilities, as the term is defined in that
5  agreement.
6     Q.   I will do my best, Mr. Haas, to
7  respect the alleged privileged and common
8  interest which has been asserted, you've made
9  reference to it and your counsel has made
10 reference to it a number of times. So I will
11 try to focus just on some facts as best we
12 can and we will see where we go.
13        After the January 30, 2023, Third
14 Circuit Court of Appeals decision, did
15 Johnson & Johnson first raise the
16 unenforceability or void -- voidable issue
17 with LTL or did LTL first raise that with
18 Johnson & Johnson?
19        MR. STARNER: Just objection.
20   It's not an asserted common
21   interest. It's been recognized by the
22   Court. So, indeed, there is a common
23   interest.
24        To the extent you are asking for
25   his testimony based on his knowledge

Page 29

1  E. HAAS
2  as litigation counsel based on
3  privileged communications, the
4  communications he may have had with a
5  counterparty that had a common
6  interest, we would object.
7      I do think this calls for
8  privileged communications.
9  BY MR. JONAS:
10     A.   Again, Mr. Jonas, I will endeavor
11 to respond to the extent I can without a
12 waiver of any privilege or protection.
13 Unquestionably, I raised the issue
14 immediately upon the issuance of the Third
15 Circuit decision. I'm not going to delve
16 into communications between Johnson & Johnson
17 and LTL in that regard.
18     Q.   Okay.  So I -- just to confirm, I
19 think there was a lot of verbiage there
20 between you and your counsel.
21     I just want to make sure that the
22 answer to my question was that Johnson &
23 Johnson first raised the unenforceability and
24 void voidable issue of the Funding Agreement
25 with LTL; is that correct?

Page 30

1       E. HAAS
2       MR. STARNER:  Objection.
3     A.   Subject to the same objections
4  and, again, ensuring that there is no waiver
5  and without waiver of any attorney-client
6  privilege or work product protection, Johnson
7  & Johnson raised it first.
8       THE COURT REPORTER:  I'm sorry,
9     I lost the last sentence.
10    A.   Johnson & Johnson raised it first.
11    Q.   And in that regard, did Johnson &
12 Johnson tell LTL that the first Funding
13 Agreement was unenforceable?
14       MR. STARNER:  Objection --
15    A.   Again, Mr. Jonas --
16       MR. STARNER:  -- the contents of
17    the communications which I think is
18    going to invade the privilege.
19       Subject to that, Mr. Haas, you
20    can answer if you can.
21 BY MR. JONAS:
22    A.   Again, we are not going to delve
23 into communications between Johnson & Johnson
24 and LTL, which is subject to the recognized
25 common interest agreement that the Court

Page 31

1       E. HAAS
2  already ordered applied in this case.
3       And as I previously stated from
4  the outset, I think it was in response to
5  your first question in this matter, that I
6  would refer to you, which is in the public
7  domain, the Termination and Substitution
8  Agreement, recital K sets forth the position
9  in this regard very succinctly.
10    Q.   What is Johnson & Johnson's view
11 of the purpose of LTL's second bankruptcy, if
12 you know?
13       MR. STARNER:  Objection.  Same
14    instruction.  Same objection with
15    respect to any kind of privileged
16    communications if your knowledge is
17    based on your own role as litigation
18    counsel.
19       But subject to that, if you can
20    answer.
21 BY MR. JONAS:
22    A.   So, again, I will answer based
23 upon what information is in the public domain
24 and has been clearly recited throughout these
25 depositions.  But the intent and the purpose

Page 32

1       E. HAAS
2  of the proceedings that LTL has brought in
3  the bankruptcy case is that they have filed;
4  has been for and with the intent to achieve
5  an equitable and efficient resolutions of all
6  claims, all talc related claims, which only
7  may be achieved through the bankruptcy
8  facility.
9     Q.   Mr. Haas, on a formal basis, how
10 was the decision to terminate the first
11 Funding Agreement made at Johnson & Johnson?
12       MR. STARNER:  Objection.  I
13    think this calls for privileged
14    information.  Lack of foundation.
15    Vague.
16       But you can go ahead and answer
17    subject to that, Mr. Haas.
18 BY MR. JONAS:
19    A.   Yeah, once again, all my
20 communications with my clients, as litigation
21 counsel in this matter are subject to the
22 attorney-client privilege and work product
23 protection.  We are not delving into those
24 communications.
25    Q.   Was there a board vote at Johnson

Page 69

1            E. HAAS
2  BY MR. JONAS:
3      Q.   My question was, did you have any
4  role in leading up to the earnings call,
5  whether by preparation or otherwise?
6           MR. STARNER:  Objection.  Asked
7      and answered.  Also object as it calls
8      for privileged communications.
9      A.   Any participation I would have had
10 would be subject to the attorney-client and
11 work product privilege.
12     Q.   Are you aware that J&J
13 participates in the Cowen Health Care
14 Conference or conferences?
15     A.   Not particularly, no.
16     Q.   Okay.  So I take it you don't have
17 any role in connection with J&J's
18 participation with the Cowen Health Care
19 Conferences?
20     A.   J&J participates in a lot of
21 healthcare conferences, Mr. Jonas.  Sitting
22 here today, I do not recall that particular
23 conference.  Again, to the extent that I did
24 provide any input in connection with any such
25 conference, it would have been under the

Page 70

1            E. HAAS
2  attorney-client privilege and work product
3  protection.
4           MR. JONAS:  All right.  Let's
5      pull up tab 68, please, Deane, which
6      we can mark as Haas 6.
7           (Whereupon, Haas Exhibit 6, Form
8      10-Q for period ended April 2, 2023
9      was marked for identification as of
10     this date by the Reporter.)
11 BY MR. JONAS:
12     Q.   Mr. Haas, do you play any role in
13 connection with Johnson & Johnson's public
14 securities filings?
15          MR. STARNER:  And, sorry, not to
16     interrupt, but can we put the two
17     exhibits we just used in the chat?  I
18     don't see 5 or 6 in there, please.
19     Sorry.
20          MR. JONAS:  No worries.  No
21     worries.
22 BY MR. JONAS:
23     A.   Do I claim --
24     Q.   Hold on.  Hold on.  Hold on.  I
25 just want to make sure --

Page 71

1            E. HAAS
2           MR. JONAS:  Are those in the
3      chat now?
4           DOCUMENT TECHNICIAN:  One
5      moment.
6           MR. JONAS:  Okay.
7           DOCUMENT TECHNICIAN:  Thank you.
8      Those are available now.
9           MR. JONAS:  Thanks.  Great.
10 BY MR. JONAS:
11     Q.   Do you recall my question,
12 Mr. Haas?
13     A.   Yes.  Your question is whether I
14 play any role with respect to Johnson &
15 Johnson securities filings and it's a broad
16 question, but my role would be with respect
17 to any litigation impact or consequence with
18 respect to the financial statements, which,
19 again, would be subject to attorney-client
20 privilege work product review.
21     Q.   Okay.  Let me ask you.
22          MR. JONAS:  Let's turn to page
23     52.  Yeah, page 52.
24     Q.   And so the record is clear, we are
25 looking at the form 10-K filed by Johnson &

Page 72

1            E. HAAS
2  Johnson.  It was filed on April 28, 2023, for
3  the quarter period ended April 2, 2023.  And
4  now I'd like to look at page -- and let me
5  just see if we've got the right page.
6           MR. STARNER:  You said 10-K.
7      It's a 10-Q, right?
8           MR. JONAS:  I apologize if I
9      said that.  I meant to say 10-Q.
10          And let's -- I think it's
11     actually -- Deane, let's roll forward
12     two pages where it says 54 of 93.
13     There we go.
14 BY MR. JONAS:
15     Q.   Mr. Haas, we are looking at a page
16 that is under the category "Product
17 Liability," and the first entry under this
18 little chart here says, "Body powders
19 containing talc, primarily JOHNSON'S Baby
20 Powder," and it lists the number of
21 plaintiffs at 40,330.
22          Do you see that?
23     A.   I do.
24     Q.   Now, you believe there are more
25 claims today, talc claims against Johnson &

Page 73

```
 1                E. HAAS
 2   Johnson than 40,330, correct?
 3       A.   Those are the filed claims,
 4   Mr. Jonas.
 5       Q.   Okay.  And do you know why Johnson
 6   & Johnson only lists file claims?
 7       A.   Because that's what's called for
 8   by the disclosure.
 9       Q.   Okay.  And do you believe there's
10   any difference in the weight of filed versus
11   unfiled claims?
12            MR. STARNER:  Objection.
13       A.   I have no idea what you mean by
14   that.
15       Q.   Well, you've said their --
16   obviously, we are looking at a page that
17   shows the number of filed claims as required
18   by this disclosure, correct?
19       A.   That shows the number of filed
20   claims, correct.
21       Q.   Okay.  And you believe there are
22   additional claims, talc claims, correct?
23       A.   I -- there have been
24   representations as to the additional claims
25   that are unfiled, correct.
```

Page 74

```
 1                E. HAAS
 2       Q.   Okay.  And you don't know the
 3   total number of the additional unfiled
 4   claims, correct?
 5            MR. STARNER:  Objection.
 6       A.   I know the number of claims that
 7   have been represented as we have been through
 8   before.  The lawyers in this case have made
 9   representations as to the number of claims
10   that they have.  If you are asking me whether
11   or not this is somehow a concession that the
12   unfiled claims don't have the same import as
13   the filed claims, I reject that proposition.
14            If you are talking about the
15   context of the bankruptcy proceeding that we
16   are in, they are very -- according to the
17   bankruptcy proceeding, or this bankruptcy
18   case, is to attain a final resolution of all
19   claims whether filed or unfiled, whether
20   current or future.
21            So I reject the -- what I think is
22   your inference by listing filed claims and
23   somehow suggest a less significance in the
24   context of the bankruptcy proceeding to the
25   unfiled claims.
```

Page 75

```
 1                E. HAAS
 2       Q.   Do you think -- outside of a
 3   bankruptcy proceeding, do you think there is
 4   a consequence to filed and unfiled claims?
 5            MR. STARNER:  Objection.
 6       A.   That is absolutely, vague,
 7   ambiguous, and lacks --
 8            MR. STARNER:  Just for the -- if
 9   I may.
10            Just objection.
11            You are asking this witness, who
12   is the head of litigation at J&J, what
13   his views are about, you know, the
14   weight or consequence of various types
15   of claims, we object as that is to the
16   extent it calls for any kind of
17   privileged information and
18   instruction.
19   BY MR. JONAS:
20       A.   In addition to that, I think the
21   question is just incredibly vague and
22   ambiguous and speculative.  If there is a
23   particular context, then I may be able to
24   answer the question.  But it has to be
25   grounded in some circumstance.  Otherwise,
```

Page 76

```
 1                E. HAAS
 2   it's unconceivably broad.
 3       Q.   Well, let me ask you, does Johnson
 4   & Johnson keep track of unfiled cases, talc
 5   cases?  Strike that.  Let me try it again.
 6            Does Johnson & Johnson keep track
 7   of unfiled talc claims?
 8            MR. STARNER:  Objection.  Vague.
 9            And also object to the extent it calls
10            for any kind of privileged
11            communications or work product.
12       A.   Is your question whether we are
13   tracking unfiled claims in connection with
14   this case?
15       Q.   Sure, we will start with that.
16       A.   Well, to the extent that's a
17   question then I -- it's certainly within the
18   purview of attorney-client privilege and work
19   product protection.
20       Q.   And you are not going to answer
21   it?
22       A.   I'm not going to answer it in
23   terms of questions that are directed to me
24   for the purposes of what my role is in this
25   case.  There are many people involved in this
```