



# $8.9 B J&J Talc Resolution: Questions And Answers

Posted on April 13th, 2023



We've no doubt you've heard about the $8.9 billion deal in the works for Johnson & Johnson talc-related cancer and mesothelioma victims. We also know that you likely have a lot of questions.

This agreement is tentative and still has quite a bit left to hammer out, but we do believe, based upon many conversations with the mediators and experts involved, that it is the beginning of the end of this decade-long fight.

Here are the answers we know so far:

**Q: Is $8.9 billion a low amount?**

A: An $8.9 billion resolution is among the highest amount ever negotiated for a mass tort litigation. It is more than 400% higher than J&J's initial bankruptcy plan. We hope this will bring some amount of peace and financial relief to our clients, in addition to allowing them to receive payments much quicker than if we were to continue the litigation process. We have been working with renowned mediators for months. We value their expert opinions. The total amount agreed upon ($8.9 billion with interest accruing to a total payout of approximately $12.08 billion) meets or exceeds their recommendations. Their opinions have been strongly considered.

**Q: Am I getting any money?**

A: If you are a current talc claimant, yes, you are part of this resolution. In addition, Johnson & Johnson has agreed to pay small settlements to clients with other gynecological cancers, many who were told in the past that their cases would not be compensable.

**Q: How much money will I be getting?**

A: It is too early in the process to provide a dollar amount. Unlike class action settlements where everyone's damages are the same, not everyone will receive the same amount in a mass tort litigation because individual claims and damages differ. To that end, a payment matrix is being developed based upon factors including but not limited to the type of cancer you or your loved one has or had, the age at diagnosis, the stage at diagnosis, and the medical outcome of the cancer. These factors will be used to standardize the dollar amounts you will be awarded. As of today, that matrix is not available, but you will receive it as soon as it becomes available.

**Q: How long until I receive money for my claim?**

A: While we cannot predict the future, J&J has committed to providing funding within one year of the finalization of the agreement. As soon as the agreement is approved, J&J will begin receiving and paying claims. We have negotiated as such that they will start funding the trust within 30 days of plan approval. They have committed that all current claims be paid within a year.

**Q: I heard claimants will receive payments over 25 years. Is that true?**

A: No, that is not true. Current claims will be paid all at once, as they always are in these types of cases. The trust will be established for approximately 25 years to compensate people who have not yet been diagnosed. This means that future victims will not have to fight a decade-long court battle like today's plaintiffs have done.

**Q: Does the cancer type make a difference?**

A: Yes, the type of cancer diagnosed does make a difference. That's because the science linking talc to ovarian cancer and mesothelioma is stronger than science for other cancer.

**Q: Is this a good deal?**

A: The short answer is yes. This is one of the largest mass tort resolutions in history, and the average payout amounts will be, in many cases, considerably higher than resolutions in many other large litigations involving terrible injuries. No amount of money can make up for all that you and your loved ones have lost. We hope that this deal brings you some amount of peace and financial relief.

**Q: What happens if 75% of the plaintiffs don't agree on this resolution?**

A: If 75% of claimants do not agree, the resolution will not go into effect. In that case, we would all likely be facing *years* more of litigation. Unfortunately, many or even most of our clients do not have endless time to wait. The sooner this deal is approved, the sooner clients will receive compensation.

**Q: What happens if I decide not to agree on this resolution?**

A: Well, first consider that there are tens of thousands of cases. The United States court system is incredibly slow. There have been less than a dozen trials in the last 10 years. Even allowing for two years of covid-related delays, with that average, we would still be looking at hundreds of years for all of the cases to go through the court system. If you were to go to trial within your lifetime, you would have no guarantees in court. You could very easily walk away with nothing at all. We don't want that for any of our clients.

**Q: What happened to the $60 billion J&J put aside in their original bankruptcy?**

A: J&J was never going to pay $60 billion. They brought that amount into their Texas Two-Step bankruptcy because that was the total value of the consumer division of J&J, which directly holds their talc liabilities. It was a strategic move to convince the judge that they were operating in good faith, but it didn't work. At no point were they ever considering a $60 billion settlement. In fact, they stated they would only support a settlement for just over $2 billion — considerably less than what we were able to reach.

**Q: Why is this settlement going to be done through bankruptcy?**

A: The appellate court ruled that the original Texas Two-Step bankruptcy wasn't legal because it wasn't done correctly. J&J now has now re-filed in such a way that will likely pass judicial scrutiny. They would have done this with or without our blessing. They have said that they are filing this way to bring an end to future talc lawsuits and resolve current claims. We are holding them to that.

**Q: What if the $8.9B runs out?**

A: The resolution agreement includes the establishment of a trust to cover future J&J talc claims, as well as current claims. As a result, we do not expect the fund will "run out" of money to compensate our clients. In addition to paying all current claims, the trust will gain interest over the next 25 years and is expected to pay out approximately $12.08 billion over time in total. This allows those who, sadly, will be diagnosed with ovarian cancer and mesothelioma to be compensated quickly and not have to spend years battling in court.

**Q: Do I have to pay any taxes on money I will receive?**

A: Personal injury and wrongful death settlements are generally not taxable. While it is always wise to consult with a tax and accounting expert, this is the prevailing view.

**Q: I answered a question wrong on a previous form. Can I correct it?**

A: Absolutely! Please provide any corrected information to Ta**********@on******.com, or call us at 314-373-4609.

**Q: Was J&J ordered to remove talcum powder products from store shelves?**

A: While they were not ordered to stop selling talc-based products, J&J has been effectively forced by these lawsuits to remove their talc-based cosmetic products from store shelves. They removed it from shelves in the US last year, and will do so in the rest of the world this year. *They did it because of you and the tens of thousands of women and their families who stood with you and with us to say that enough is enough!* You have helped to save countless women worldwide from suffering. That's something for which you can be proud. As we've said in the past, no one is truly regulating these products. It takes lawsuits like this, and people like you, to save lives for generations to come.

**Q: Is the Imerys bankruptcy separate from this deal?**

A: It is likely that the money in the Imerys trust will roll into the J&J trust to reduce the cost of claims administration. This should increase the amount of money available for claimants in the J&J trust fund.

**Q: My uterine, endometrial, or mucinous cancer case was inventoried. Am I part of this agreement?**

A: Yes, at this time, we believe those diagnosed with uterine, mucinous, or endometrial cancers will be able to recover a small amount of compensation from the agreement. It will not be as sizeable an amount as ovarian cancer victims receive. We will share additional information as it becomes available.

**Q: Why is my payment so much less than what people receive when they win in court?**

A: Settlement amounts are never the same as what people tend to be awarded in court if they prevail. Trials involve considerably more risk: people can be awarded significant compensation by juries, but they are rarely paid in full. Sadly, the majority of all talc verdicts have been reduced — even negated — upon appeal. Some plaintiffs who were originally awarded large amounts have gotten nothing at all. Something to consider is that J&J has prevailed in the last six trials. That means that, unless their appeals are successful, none of the women or families involved will receive a dime — not because they didn't go through something terrible, and not because there is not strong scientific evidence linking talc to ovarian cancer, but because these cases can be very difficult to prove in court. Trials also involve big dollar amounts because the overarching goal is to force the parties to come to a settlement agreement. Without settlement, it would take literally hundreds of years for all the cases in a mass tort litigation to go to trial.

We hope we've answered some of your early questions. We are deeply encouraged and proud of the progress that has been made in this litigation. Through the years, we've seen J&J refuse to come to the table at all, and then to offer incredibly small amounts, and now we've finally negotiated a resolution that mediators and experts support.

Most importantly, we've changed the way this corporation does business. No one was holding them accountable until all of us, together, forced them to pull talc from shelves. You have been part of saving countless lives for generations to come. For that, we should all be proud.