**In the Matter Of:**

*IN RE LTL Management LLC Bankruptcy*

*RICHARD DICKINSON*

*May 31, 2023*



## Page 1

```
 1   UNITED STATES BANKRUPTCY COURT
     DISTRICT OF NEW JERSEY
 2   CASE NO. 23-12825 (MBK)
     CHAPTER 11
 3   ---------------------------------------x
     IN RE:
 4
 5   LTL MANAGEMENT LLC BANKRUPTCY,
 6                        Debtor,
 7   ---------------------------------------x
 8
 9        VIDEOTAPED DEPOSITION of RICHARD DICKINSON,
10   taken by the Committee, held at 7 Times Square New York,
11   New York 10036, on May 31, 2023, at 1:09 p.m., before a
12   Notary Public of the State of New York.
13
     *********************************************
14
15
16   CONFIDENTIAL***
17
```

## Page 2

```
 1   A P P E A R A N C E S:
 2   BROWN RUDNICK
            Attorneys for TCC
 3          7 Times Square
            New York, New York 10036
 4
     BY:    LYDELL BENSON, ESQ.
 5          wlbenson@brownrudnick.com
            JEFF JONAS, ESQ.
 6          ALEX KASNETZ, ESQ. via Zoom
            JASNOOR HUNDAL, Summer Associate
 7
     JONES DAY
 8          Attorneys for DEBTOR LTL MANAGEMENT
            250 Vesey Street
 9          New York, New York 10281
10   BY:    JAMES M. JONES, ESQ. via Zoom
            jjones@jonesday.com
11          SANDON X. FERNANDES, Summer Associate via Zoom
12
13   THE RUCKDESCHEL LAW FIRM, LLC
            Attorneys for PAUL CROUCH
14          8357 Main Street
            Ellicott City, Maryland 21043
15
     BY:    JONATHAN RUCKDESCHEL, ESQ. via Zoom
16          ruck@rucklawfirm.com
17
     MOTLEY RICE
18          Attorneys for TCC
            210 Lake Drive East, Suite 101
19          Cherry Hill, New Jersey 08002
20   BY:    DANIEL R. LAPINSKI, ESQ. via Zoom
            dlapinski@motleyrice.com
21
22   WOMBLE BOND DICKINSON LLP
            Attorneys for AD HOC COMMITTE OF STATES
23          100 Light Street, 26th Floor
            Baltimore Maryland 21202
24
     BY:    LISA TANCREDI, ESQ.
25          Lisa.tancredi@wbd-us.com
```

## Page 3

```
 1   A P P E A R A N C E S    C O N T'D
 2   PAUL HASTINGS LLP
            Attorneys for AD HOC COMMITTEE OF SUPPORTING
 3          COUNSEL
            515 South Flower Street, 25th Floor
 4          Los Angeles California 90071
 5   BY:    WILL C. FARMER, ESQ.
            Willfarmer@paulhastings.com
 6
     OTTERBOURG P.C.
 7          Attorneys for TCC
            230 Park Avenue
 8          New York, New York 10169
 9   BY:    MICHAEL MAIZEL, ESQ.
            mmaizel@otterburg.com
10          GEORGE ALCHAS, Summer Associate
11   SIMPSON THACHER & BARTLETT LLP
            Attorneys for TRAVELERS CASUALTY & SURETY
12          COMPANY
            425 Lexington Avenue
13          New York, New York 10017
14   BY:    BONNIE JARRETT, ESQ.
            bonnie.jarrett@stblaw.com
15
16   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
            Attorneys for LTL Management
17          One Manhattan West
            New York, New York 10001
18
     BY:    ANDREW M. KARP, ESQ.
19          andrew.karp@skadden.com
20   DEPARTMENT OF JUSTICE
21   BY:    LINDA RICHENDERFER, ESQ.
            linda.richenderfer@usdoj.gov
22          LAUREN BIELSKIE, ESQ.
23   ALSO PRESENT:
     Caylob Suarez-Exhibit Tech (Lexitas)
24   Dmitry Zvonkov- Videographer (Lexitas)
     Will Scheff- Consultant (FTI Consulting)
25   John Kim (LTL)
```

## Page 4

```
 1                     INDEX
 2   WITNESS           EXAMINATION BY           PAGE
     Richard Dickinson    Lydell Benson            6
 3   Richard Dickinson    Jonathan Ruckdeschel   106
     Richard Dickinson    Lisa Tancredi          113
 4   Richard Dickinson    James Jones            118
 5
 6                     EXHIBITS
     DICKINSON         DESCRIPTION              PAGE
 7   1                 LinkedIn Page of Richard   14
                       Dickinson
 8   2                 LTL 0030612-13             30
 9   3                 Monthly Operating Report For LTL  38
                       3/31/23
10   4                 Monthly Operating Report For LTL  49
                       10/31/21
11   5                 LTL 0002300-20             56
12   6                 Declaration of John K. Kim in  64
                       Support of First Day Pleadings,
13                     4/4/23
     7                 Ltlmgmt-00000233-59        74
14
     8                 Chapter 11 Plan of         78
15                     Reorganization of LTL Management
                       LLC 5/15/23
16   9                 Ltlmgmt-00002668-79        87
17   10                Voluntary Petition For LTL I   88
                       10/14/21
18   11                Voluntary Petition For LTL Ii  90
                       4/4/23
19   12                Ltlmgmt-00002628-40        93
20   13                Ltlmgmt-00013464-65        95
21   14                Ltlmgmt-00002626-27        97
22   16                Johnson & Johnson's 8-K 4/4/23  102
23
        (Exhibits retained by Reporter.)
```

Page 65

1  Q.    Mr. Dickinson, do you recognize this?
2  A.    Generally recall it, yes.
3  Q.    And what is this?
4  A.    Termination and substitution agreement.
5          MR. BENSON:  And Caylob if you can turn
6     to page four of this document.
7          MR. JONES:  Let me just make sure the
8     record is clear.  Have we separately marked the
9     declaration and/or separately marked this
10    agreement?  I'm just trying to make sure I know
11    what to refer to.
12         MR. BENSON:  We can mark this entire
13    document as Dickinson Exhibit 6.
14         MR. JONES:  Thank you.
15         MR. BENSON:  Caylob if you can go back
16    to Annex D, the Termination and Substitution
17    Agreement, if you just scroll a few pages back
18    to that, I can direct you to where I want.
19    Keep going.  Right there.  Perfect.  Thank you.
20 BY MR. BENSON:
21 Q.    Mr. Dickinson, do you see this?
22 A.    I do.
23 Q.    And it looks like Robert Wuesthoff signed this?
24 A.    It does.
25 Q.    He's the LTL president, right?

Page 66

1  A.    Yes.
2  Q.    To your knowledge, was Mr. Wuesthoff involved
3  in preparing this document?
4  A.    It's a better question for Mr. Wuesthoff, but
5  not to my knowledge.
6  Q.    To your knowledge, was any LTL officer involved
7  with the creation of this document?
8  A.    Not for the creation, but we certainly -- I --
9  speaking for myself, I read it.  And materials within it
10 that are relevant that are in our -- either our board
11 minutes, the resolutions or the materials we went over
12 in the board minutes, you know, I certainly, you know,
13 have reviewed in detail.
14 Q.    When did you read this for the first time?
15 A.    When I was -- when it was filed or shortly
16 after.
17 Q.    So it's your testimony that your involvement
18 with this document was reading it and you read it
19 shortly after it was filed?
20 A.    Please don't mischaracterize.  Anything that I
21 believe in this document and any relevant, either
22 resolutions or what we discussed as a board or the
23 materials that we went through, we went through prior to
24 Mr. Kim submitting this.  There's nothing in here that
25 was a surprise to me, if that's where you're getting at.

Page 67

1  Q.    Now who negotiated the terms of this document
2  on behalf of the debtor?
3          MR. JONES:  Object to foundation.
4  A.    It's a better question of declaration of
5  Mr. Kim, I relied on Mr. Kim, you know, as far as the
6  specifics to writing it.  But nothing in here, once
7  again, was a surprise.  And I'm going to refer back to
8  anything that the board decided on has been discussed in
9  the board minutes, resolutions or materials we used.
10 Q.    Okay.  I've noted to ask Mr. Kim about this,
11 and I noted that this was not a surprise to you.
12       But my question is, do you know who negotiated
13 this agreement on behalf of LTL, the debtor in this
14 case?
15 A.    What agreement are you referring to?
16 Q.    The termination and substitution agreement that
17 we're look being at Mr. Dickinson?
18 A.    I thought this was the -- oh, this, no, I don't
19 know who negotiated it.
20 Q.    Before terminating --
21 A.    Certainly reviewed the document.
22 Q.    Okay.  Go it.  Before terminating the first
23 funding agreement, did LTL's board or anyone on the
24 board's behalf attempt to negotiate with Johnson &
25 Johnson in terms of possibly maintaining Johnson &

Page 68

1  Johnson's liability on the second funding agreement?
2          MR. JONES:  Johnson & Johnson's -- what
3     were the last words.
4          (Whereupon, the record was read by the
5     reporter.)
6          MR. BENSON:  I can rephrase it, no
7     worries.
8  Q.    As far as you know, Mr. Dickinson, did LTL
9  attempt to negotiate with Johnson & Johnson the
10 possibility of retaining Johnson & Johnson as a payor
11 under second funding agreement?
12         MR. JONES:  Object to the form.
13 A.    It's a better question for legal
14 representatives, not me.
15 Q.    Noted.  But I want to know what you know.
16 Mr. Dickinson, to the best of your knowledge, what you
17 know, do you know whether or not LTL's board attempted
18 to negotiate with Johnson & Johnson about staying on as
19 a payor after the termination of the first funding
20 agreement?  Do you know or not?
21         MR. JONES:  Object to form.  You may
22    answer, Mr. Dickinson.
23 A.    Well, I'm part of the board and we didn't
24 negotiate specifically as a board with Johnson &
25 Johnson.

Page 69

1  Q.    Do you know if anyone negotiated on behalf of
2  the board?
3  A.    It's a better question for Mr. Kim.  I do not
4  know.  I don't believe so.
5  Q.    Before LTL terminated the first funding
6  agreement, did it concern you that under the second
7  funding agreement, Johnson & Johnson would no longer be
8  listed as a payor?
9        MR. JONES:  Object to form.
10 A.    I had no concern with regard to the second --
11 termination of the first funding agreement and the
12 creation of the second funding agreement.  The second
13 funding agreement met all of our objectives to reach
14 while in bankruptcy a fair and equitable resolution as
15 represented by the significant $8.89 billion plan
16 settlement.
17 Q.    Let's take a step back, you said "all of our
18 objectives".  When you say "our", who are you referring
19 to?
20 A.    LTL's board.
21 Q.    Okay.  And when you refer to "all of our
22 objectives", what objectives are you referring to?
23 A.    Very simple to a reach a full and final
24 resolution for all talc claimants current and into the
25 future.

Page 70

1  Q.    So just those two objectives?
2  A.    And to mitigate the, you know, substantial risk
3  that was brought forward by the third circuit's ruling
4  that the enforceability on the agreement one, was
5  unenforceable.
6  Q.    Okay.  Any other objectives?
7  A.    I think to ensure that the planned support
8  agreement put in place would, you know, have the funds
9  necessary to settle, to ensure that that occurred in a
10 timely manner.
11 Q.    Okay.  Do you know if any of LTL's creditors
12 were notified before the termination of the first
13 funding agreement?
14 A.    It's a better question for Mr. Kim and the
15 legal team.
16 Q.    Okay.  I've noted that.  For purposes of this
17 deposition, I'm asking you if you know, do you know
18 Richard Dickinson, do you know, whether LTL's creditors
19 were notified before the first funding agreement was
20 terminated?
21 A.    It's a better question for Mr. Kim and if I
22 gave it to you, it would be incomplete and I want to be
23 respectful to you Mr. Benson giving you best possible
24 answer.  So I am going to refer you to Mr. Kim.
25 Q.    Does that mean you don't know if the creditors

Page 71

1  were notified?
2  A.    Mr. Benson, I think I've answered that question
3  that it's a better question for Mr. Kim and the legal
4  team.
5  Q.    Before terminating the first funding agreement,
6  and refiling for bankruptcy, what alternatives did the
7  board actively hear about?
8        MR. JONES:  Objection.  Mr. Dickinson
9     was examine in most recent PI preliminary
10    injunction deposition on the board minutes and
11    presentations in the run up to the second
12    filing and examined -- and within those
13    whatever options, discussion were had, are
14    reflected.  This is repetitive.
15 A.    I confer with that.  We addressed that in the
16 deposition we had several weeks ago.  And I defer once
17 again to the board minutes, the resolutions, the why and
18 the what and the materials that were presented.
19       MR. BENSON:  Okay.  Caylob, if you
20    could scroll four or five pages you should see
21    a page that says funding agreement.
22 Q.    Mr. Dickinson do you see this?
23 A.    I do.
24 Q.    Have you seen this before?
25 A.    I have.

Page 72

1  Q.    And what is your understanding of this
2  document?
3        MR. JONES:  Objection to the form of
4     the question.  But you can answer to the extent
5     you understand it.
6  A.    It's a funding agreement, you know, with
7  Johnson & Johnson and Holdco and the support that
8  Johnson & Johnson would give, that's the support
9  agreement, if Holdco is not able to satisfy its
10 obligations to LTL while in bankruptcy.
11       MR. BENSON:  Caylob, can could you
12    scroll to the page, it will be 13 of 18.
13 Q.    Do you see this Mr. Dickinson?
14 A.    I do.
15 Q.    Glance at this page let me know -- is it
16 correct that according to this page, Johnson & Johnson
17 the umbrella company is no longer listed as a payor?
18 A.    That is true.
19 Q.    Is it also accurate that JJCI is no longer
20 listed as a payor?
21 A.    Mr. Benson, I think you can read this as well
22 as I can, that it says, Johnson & Johnson Holdco.
23 Q.    All right.  Do you know what the value of
24 Holdco's assets were as of the date of this filing
25 roughly?