```
              IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF NEW JERSEY

IN RE:                              .   Case No. 23-12825(MBK)
                                    .
LTL MANAGEMENT LLC,                 .
                                    .   U.S. Courthouse
          Debtor.                   .   402 East State Street
                                    .   Trenton, NJ 08608
. . . . . . . . . . . . . . . . . . .
                                    .
LTL MANAGEMENT LLC,                 .   Adv. No. 23-01092(MBK)
                                    .
          Plaintiff,                .
                                    .
     v.                             .
                                    .
THOSE PARTIES LISTED ON             .
APPENDIX A TO COMPLAINT AND         .
JOHN AND JANE DOES 1-1000,          .
                                    .
          Defendants.               .   June 13, 2023
. . . . . . . . . . . . . . . . . . .   10:00 a.m.
```

TRANSCRIPT OF

DEBTOR'S MOTION FOR ENTRY OF AN ORDER SEALING THE EXHIBITS TO
THE SUPPLEMENTAL DECLARATION OF JOHN K. KIM REGARDING PLAN
SUPPORT AGREEMENTS [397].  UNITED STATES TRUSTEE'S MOTION TO
COMPEL COMPLIANCE WITH FED. R. BANKR. P. 2019 [467]. AD HOC
COMMITTEE OF SUPPORTING COUNSEL'S MOTION TO FILE UNDER SEAL AND
REDACT CERTAIN INFORMATION IN VERIFIED STATEMENT OF PAUL
HASTINGS LLP, COLE SCHOTZ P.C., AND PARKINS & RUBIO LLP
PURSUANT TO BANKRUPTCY RULE 2019 [471]. DEBTOR'S MOTION FOR AN
ORDER (I) SCHEDULING HEARING ON APPROVAL OF DISCLOSURE
STATEMENT; (II) ESTABLISHING DISCLOSURE STATEMENT OBJECTION
DEADLINE; AND (III) GRANTING RELATED RELIEF [240]

**BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE**

Audio Operator:                     Kiya Martin

Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

TRANSCRIPT OF (Continued)

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING IT TO ENTER INTO AN EXPENSE REIMBURSEMENT AGREEMENT WITH AD HOC COMMITTEE OF SUPPORTING COUNSEL [575]THE OFFICIAL COMMITTEE OF TALC CLAIMANTS' MOTION TO TERMINATE THE DEBTOR'S EXCLUSIVE PERIOD PURSUANT TO 11 U.S.C. § 1121(D)(1) [702] DEBTOR'S MOTION FOR A BRIDGE ORDER CONFIRMING THE AUTOMATIC STAY APPLIES TO CERTAIN ACTIONS ASSERTED AGAINST AFFILIATES OR TEMPORARILY EXTENDING THE STAY AND PRELIMINARY INJUNCTION TO SUCH ACTIONS PENDING A FINAL HEARING ON THE REQUESTED RELIEF [ADV. DKT. 147] DEBTOR'S MOTION (I) TO EXTEND AND MODIFY THE PRELIMINARY INJUNCTION ORDER AND (II) FOR CONFIRMATION THAT SUCCESSOR LIABILITY ACTIONS ARE SUBJECT TO THE AUTOMATIC STAY [ADV. DKT. 163]

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Jones Day<br>By: GREGORY M. GORDON, ESQ.<br>2727 North Harwood Street, Suite 500<br>Dallas, TX  75201 |
| For Various Talc Claimants: | Levy Konigsberg, LLP<br>By: MOSHE MAIMON, ESQ.<br>101 Grovers Mill Road, Suite 105<br>Lawrence Township, NJ  08648 |
| For Catherine Forbes: | Cohen, Placitella & Roth, P.C.<br>By: CHRISTOPHER M. PLACITELLA, ESQ.<br>2001 Market St, Suite 2900<br>Philadelphia, PA  19103 |
| Proposed for TCC: | Otterbourg, P.C.<br>By: ADAM SILVERSTEIN, ESQ.<br>230 Park Avenue<br>New York, NY 10169 |
| US Trustee: | Office of United States Trustee<br>By: LAUREN BIELSKIE, ESQ.<br>Office of The United States Trustee<br>One Newark Center<br>1085 Raymond Boulevard<br>Suite 2100<br>Newark, NJ 07102 |
| For Talc claimant: | Maune Raichle Hartley Frency & MUdd<br>By: CLAY THOMPSON, ESQ. |
| For Brandi Carl: | Golomb Spirt Grunfeld<br>By: RICHARD GOLOMB, ESQ.<br>1835 Market Street<br>Suite 2900, Philadelphia, PA 19103 |
| For Ad Hoc Committee of Supporting Counsel: | Paul Hastings LLP<br>By: KRIS HANSEN, ESQ.<br>200 Park Avenue<br>New York, NY  10166 |
| For Ad Hoc Committee of Certain Talc Claimants and Ad Hoc Committee of Creditors: | Brown Rudnick<br>By: DAVID J. MOLTON, ESQ.<br>7 Times Square<br>New York, NY  10036 |

```
APPEARANCES CONTINUED:
APPEARING VIA ZOOM:

For Eagles claimants:      Kazan McClain Satterley & Greenwood
                           By:  JOSEPH SATTERLEY, ESQ.
                                (Via Zoom)
                           55 Harrison St. Suite 400
                           Oakland, CA   94607

For Paul Crouch,           Ruckdeschel Law Firm, LLC
individually and on        By:  JONATHAN RUCKDESCHEL, ESQ.
behalf of Estate of        8357 Main Street
Cynthia Lorraine Crouch:   Ellicott City, MD 21043
```

- - - -

1 each of the three instances. Next slide, please.

2 So first of all, we think the Court was correct when
3 it concluded that our predecessor had assumed all liabilities,
4 including contingent and future product liability claims.
5 Notwithstanding some language in the indemnity itself. And you
6 may remember the language at issue was language that talked
7 about liabilities included in or allocated -- I forget the
8 exact words, on the books or records.

9 And that was really supported in four different
10 respects. One by the language of the 1979 agreement itself.
11 The circumstances and course of performance between the parties
12 since 1979. Case law that was very much on point involving
13 factual situations, highly similar. And then the
14 indemnification provisions in the merger support agreement
15 itself. And I'm talking about the divisional merger support
16 agreement. Next slide, please.

17 So there are many slides that we provided and there
18 was a significant amount of evidence in the record on this,
19 Your Honor. But I mean the point is, that the, this was at a
20 point in time, Your Honor may recall, when J&J was basically
21 transferring the entirety of business operations to
22 subsidiaries. It did it with its baby powder business. And in
23 connection with that, the subsidiary to which the operations
24 were transferred agreed to assume all the liabilities. And just
25 here we've highlighted some of the very, very broad language

1  that was reflected in there.
2           And it was a forever indemnification, it was assuming
3  all debt, all indebtedness, all liabilities of every kind, of
4  every description.  Next slide, please.
5           We had meeting minutes from Board of Directors
6  meetings that said that in furtherance of J&J's longstanding
7  policy of decentralization when they were moving all of these
8  assets out, the 79 agreement was intended to transfer all
9  assets to subsidiaries who in turn would assume the
10 liabilities.
11          And the evidence was, and I think this supported your
12 finding as well, that since the 79 transaction and at all times
13 prior to the 2021 restructuring, all the costs associated with
14 the talc litigation had been borne by all JJCI or its
15 predecessors, and that included defense costs. It included
16 settlements, it included verdicts, whether they had punitive
17 damage aspects to them or not.  It included everything.  Next
18 slide.
19          And then Your Honor probably recalls, there were two
20 cases that we cited.  One was a Third Circuit case, the Bouton
21 case, the other was a Eastern District of Pennsylvania case,
22 the Bippus case, very similar facts to our facts where there
23 are arguments being made that, well the liabilities at issue
24 doesn't, wasn't covered because in the first case it wasn't
25 reflected or reserved against in the financial statements.  And

1 a similar effort, a similar argument was made in the <u>Bippus</u>
2 case about liabilities and obligations reflected on the balance
3 sheet.  And notwithstanding that, the Court said no, the
4 language is broad enough to pick up liabilities that weren't
5 specifically enumerated in the financial records.  Next slide,
6 please.

7         And then of course there was the, as Your Honor
8 knows, the indemnity that was contained in the divisional
9 merger support agreement as well.  So there were four bases on
10 which the Court could make the finding that it did.  I don't
11 know why the Third Circuit raised this issue.  And as I recall
12 kind of highlighted the books and records language.  But to us
13 the facts were clear on this point.  The law was supportive on
14 this point.  And the Court's finding was accurate and in our
15 view does not need to be revisited.  Next slide.

16         So the second issue raised by the Third Circuit is
17 the question of the coverage of punitive damages.  And again I
18 think we can kind of start where I started before with respect
19 to the first issue, which is if the indemnity obligations were
20 broad, there was nothing that suggested they were limiting in
21 any way.  Again the parties' course of conduct was fully
22 consistent with a conclusion that punitive damages were
23 intended to be covered because they were.  I mean they were
24 allocated to and borne by Old JJCI or its predecessors.
25         The other thing I think that's important to remember

1  is that I suppose a policy argument could be advanced, and
2  maybe this is what the Third Circuit had in mind, that it's not
3  appropriate for there to be an indemnity for punitive damages
4  because the wrongdoer shouldn't be able to pass that liability
5  onto another entity.
6          But I think what's important here, even if you
7  believe that that would have some applicability and it would
8  overcome the documents and the intent, here they're all part of
9  the same corporate enterprise.  And so by moving this to, or
10 having a subsidiary with the business cover the obligation,
11 still impacts the ultimate owner.  So ultimately impacts the
12 equity value of J&J. So to me that policy argument wouldn't
13 apply in any event.
14         And the only arguments I think that have ever been
15 advanced to suggest that punitive damages couldn't be
16 indemnified are cases involving either insurance or public
17 entities, and those just have no application here.
18         So again we think the, we think the conclusion here
19 should clearly be that punitive damages are covered.  Next
20 slide, please.
21         And you know, just to take a look at a couple of
22 cases, they're not entirely on point.  But we have this Cozzi
23 case as well as the Lateo (phonetic) case.  And these were
24 situations where the courts were wrestling somewhat with policy
25 issues like what I was referring to.  And in both cases the

1  courts found that no, that wasn't enough to overcome what is
2  clearly indicated by the language that was used by the parties.
3  And in our case it's not only the language, it's the multiple
4  years of course of performance as well.  Next slide, please.
5      On the Shower to Shower, again it's not clear to me
6  why the Third Circuit raised an issue with this, because we did
7  put in evidence on this what we had, in terms of going back
8  over a long period of time and showing Your Honor the documents
9  that we did have.  But this maybe a slide that we showed before
10 and I'm not going to spend a lot of time on it.  But you know,
11 ultimately the Shower to Shower products, you know, we kind of
12 worked our way through the time line of how they ultimately,
13 the responsibility for liabilities associated with those
14 products ended up with Old JJCI, you know, through an entity
15 that was called Personal Products Company.  And that started
16 from a transfer that came from J&J where the assets and
17 liabilities of Shower to Shower were transferred to that
18 Personal Products Company.
19     If you go to the next slide, you may recall that we
20 showed some documents like this. There was an internal letter
21 that said that Personal Products Company will take full
22 responsibility for Shower to Shower on January 1, 1978.  And if
23 you go to the next slide, similar, this was in a 10K from 1979
24 referring to Personal Products Company and the products it
25 sold.  And one of them of course was Shower to Shower brand

1  that unequivocally, Your Honor.  We are here for all of the top
2  claimants and we will be working our tail off.  We have been
3  through the first case, through this case.  That's not going to
4  end.
5           Nothing further, Your Honor.
6           THE COURT:  Thank you, Counsel, and welcome again.
7           Anyone else?
8                    (No verbal response.)
9           THE COURT:  All right.  Mr. Prieto?
10          MR. PRIETO:  I think I'm good, Your Honor.
11          THE COURT:  All right.  All right.  I think other
12 than the uncontested matters, we're done.  Correct?
13          UNIDENTIFIED MALE SPEAKER:  Yes.
14          THE COURT:  As far as items on the agenda.  Then let
15 me go through with rulings.  I'll go backwards.
16          We'll start with the reimbursement requests for the
17 Ad Hoc Committee.  This court does not look to reverse itself
18 on its analysis as part of the appropriateness of 503(b), or
19 more importantly, the use of 363 in authorizing the debtor in
20 possession to seek to enter into a reimbursement agreement with
21 professionals for the Ad Hoc Committee as it did in the prior
22 case.  The same analysis as far as the legal analysis would
23 come into play.  There are differences here, no doubt, but this
24 court is persuaded that the role of the Ad Hoc Committee in
25 this case, in the present case, is important to assist the

debtor in trying to facilitate the -- an agreement with talc claimants, an ultimate agreement with the plan to -- to identify issues of concern to the talc claimant community, and to work to support in this case the debtor's efforts, but also the interests of the bankruptcy estate.  The committee lends a voice to a group of claimants or potentially thousands of claimants who at this juncture, hold a differing view from the direction of this case.  That doesn't mean that views don't change.  Attorney views change, client views change as cases progress.  There is nobody who I ever view as should be locked into a case and I don't expect Mr. Hansen, the Ad Hoc Committee or the underlying claimant council or the underlying claimants be locked in to any position as this case unfolds, to the extent this case of bolts beyond the motion to dismiss.  But there is no reason for this court not to defer to the business judgment of the debtor as recognized by the courts and <u>Mallinckrodt</u> and <u>Purdue</u> and others.

     I won't disagree with the analysis of Judge Silverstein and in the <u>Boy Scout</u> case.  We have different facts, a different fact pattern here.  There is no -- there's nothing to suggest to this court that reimbursement by the debtor for the fees and expenses of the Ad Hoc group will diminish in any way any recovery by talc -- by claimants in this case.  I hear much to the opposite about how well healed the debtor is and all the affiliates.  So it's -- it is -- it's

1  just nonsensical to believe that the money spent on the
2  professionals will have any meaningful prejudicial impact at
3  all, on the talc claimants.
4         As to potential conflicts, I expect the US Trustee to
5  investigate and can take action in the other wonderful case I'm
6  lucky to have, Whittaker, Clark & Daniels, if it's appropriate
7  with the with the with the Cole Schotz firm or -- or any other
8  potential conflict.  I will require that compensation be
9  consistent with the interim order for professionals in this
10 case, and be subject to a section 330 review, so that there is
11 a standard for review -- a reasonableness standard.  So,
12 counsel can, to the extent appropriate, submit a form of order.
13        With respect to the committee's motion seeking to
14 terminate exclusivity, I am very much guided by -- I think it
15 was Judge Gerber in Adelphi who looked at this -- the critical
16 issue, the critical factor to be whether terminating
17 exclusivity will actually move a case forward; what is the
18 benefit to the overall structure of the case.  In candor, I'm
19 not there yet.  I think I need more information.
20        What I hear on both sides is potential litigation,
21 substantial issues to be resolved on any plan, and doubling it
22 at this juncture may not be prudent, but I'm not prepared to
23 say it's not the right pathway.  I'm just not there yet.  And
24 I'm going to defer and carry this as was suggested until after
25 the motion to dismiss.  I think the motion to dismiss is a