UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone:  (973) 645-3014
Facsimile:  (973) 645-5993
E-mail:      jeffrey.m.sponder@usdoj.gov
             lauren.bielskie@usdoj.gov

<div align="center">

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

</div>

|  |  |  |
|---|---|---|
| _____ | : | Case No. 23-12825 (MBK) |
| In re: | : | Chapter 11 |
|  | : |  |
| LTL Management LLC,[1] | : | Judge: Hon. Michael B. Kaplan, Chief Judge |
|  | : |  |
| Debtor. | : | Hearing Date: June 27, 2023 at 9:00 a.m. |
| _____ | : |  |

<div align="center">

**REPLY OF THE UNITED STATES TRUSTEE TO (I) DEBTOR'S OMNIBUS OBJECTION TO MOTIONS TO DISMISS CHAPTER 11 CASE AND (II) OMNIBUS OBJECTION OF THE AD HOC COMMITTEE OF SUPPORTING COUNSEL TO MOTIONS TO DISMISS**

</div>

Andrew R. Vara, United States Trustee for Regions 3 & 9 ("U.S. Trustee"), by and

through counsel, and in furtherance of his duties and responsibilities under 28 U.S.C.

§§ 586(a)(3) and (5), respectfully submits this Reply[2] to the following objections to, among other

motions, the *Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C.*

*§ 1112(b)* (the "Motion") (Docket No. 379) filed in the above-captioned chapter 11 case of LTL

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] The U.S. Trustee incorporates by reference the facts, background, and legal argument contained in the Motion and supporting Certification.

<div align="center">1</div>

Management, LLC ("LTL"):  **(i)** *Debtor's Omnibus Objection to Motions to Dismiss Chapter 11 Case* (the "LTL Obj.") (Docket No. 614); and **(ii)** *Omnibus Objection of the Ad Hoc Committee of Supporting Counsel to Motions to Dismiss* (the "AHCSC Obj.") (Docket No. 613).  In support of this Reply and in further support of the Motion, the U.S. Trustee respectfully states as follows:[3]

## PRELIMINARY STATEMENT

"[T]wo of the basic purposes of Chapter 11 a[re] (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy creditors.'"  *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004) (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999)).  To carry out those basic purposes, the Third Circuit requires that each chapter 11 case be filed in good faith, which in turn requires this Court to "patrol[]" "the borderline between fulfillment and perversion; between accomplishing the objectives of rehabilitation and reorganization, and the use of these statutory provisions to destroy and undermine the legitimate rights and interests of those intended to benefit by this statutory policy."  *Id.* (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir. 1999)).

In LTL's prior case, the Third Circuit essentially determined that LTL crossed that borderline into "perversion," making the following findings—every one of which applies equally to LTL's current case:

- "[f]inancial distress must not only be apparent, but it must be *immediate* enough to justify a filing";

- "[r]isks associated with *premature filing* may be particularly relevant in the context of mass tort bankruptcy";

---

[3] Capitalized terms used herein as defined terms and not otherwise defined shall have those meanings ascribed to them in the Motion and supporting Certification.

- "testing the nature and *immediacy* of a debtor's financial troubles . . . [is] necessary because bankruptcy *significantly disrupts creditors' existing claims against the debtor*";

- "courts must always weigh *not just the scope of liabilities the debtor faces*, but also *the capacity it has to meet them*";

- "[the] focus [is] on [LTL's] assets, liabilities, and, critically, *the funding backstop it has in place to pay those liabilities*";

- there was *no "support in the record* to bear th[is] Court's assertion that the 'talc liabilities' 'far exceed [LTL's] capacity to satisfy [them]";

- "on its filing, LTL *did not have any likely need in the present or near-term, or even in the long-term*, to exhaust its funding rights to pay talc liabilities";

- "[f]rom these facts . . . we can infer [] that *LTL, at the time of its filing, was highly solvent with access to cash to meet comfortably the liabilities as they came due for the foreseeable future*";

- "[t]his all comports with the theme LTL proclaimed in this case from day one: it *can pay current and future talc claimants in full*";

- LTL "has *a funding backstop . . . that it can draw on to pay liabilities without any disruption to its business or threat to its financial viability*";

- "if time shows, *with the progression of litigation outside of bankruptcy*, that cash available under the Agreement cannot adequately address talc liability[,] [p]erhaps at that time LTL could show it belonged in bankruptcy*;

- "[t]he '*attenuated possibility*' that talc litigation may require [LTL] to file for bankruptcy in the future *does not establish its good faith as of its petition date*";

- "[a]t best the filing was *premature*";

- "while LTL faces substantial future talc liability*, its funding backstop plainly mitigates any financial distress foreseen on its petition date*";

- LTL's "backstop *provides ample financial support* to a debtor who [] seeks shelter in *a system designed to protect those without it*";

- "J&J's belief that this bankruptcy creates the best of all possible worlds for it and the talc claimants is *not enough, no matter how sincerely held*";

3

- the financial distress requirement is a "safeguard [that] ensures that claimants' pre-bankruptcy remedies—here, the *chance to prove to a jury of their peers injuries claimed to be caused by a consumer product*—are disrupted only where necessary";

- LTL "*was in no financial distress* when it sought Chapter 11 protection" because it had a "*safety net shielding all liability then foreseen*"; and

- "[*n*]*o 'reasonable justification'* validates" the fact that LTL was not in financial distress, "[a]nd *we cannot currently see how* [*LTL's*] *lack of financial distress could be overcome*."

*See In re LTL Mgmt., LLC*, 64 F.4th 84, 102-11 (3d Cir. 2023) (emphasis added).

LTL has misinterpreted the Third Circuit's decision as providing some kind of "guidance" (*see* Kim Decl. ⁋⁋ 9, 48), or as thwarting some charitable intention on the part of LTL and J&J to get money to creditors if only the Third Circuit would stop interfering (*see* LTL Obj. at 43, referring to J&J's "generosity" and the Third Circuit "defeating" J&J and LTL's "purpose"). To the contrary: the Third Circuit's decision was a stinging rebuke of LTL's initial attempt to invoke the protections of chapter 11 notwithstanding its ability to pay all talc claims foreseeable in the near term. The Third Circuit's decision is replete with warnings against premature filing, not instructions about how to do it right next time. It establishes a "financial distress" requirement that LTL still has not met—or has hamstrung itself to appear to have met— and likely will not be able to meet legitimately for quite some time, if ever.

Nevertheless, a scant 131 minutes after this Court dismissed LTL's prior case at the Third Circuit's direction, LTL filed its current chapter 11 case. The U.S. Trustee, and others, moved to dismiss for cause under 11 U.S.C. § 1112(b), with the sole identified "cause" being LTL's lack of good faith in filing this case. As a result, the Motion requires this Court to determine whether, unlike its prior case, and despite the mere minutes that separate both cases, LTL filed its current case in good faith. Despite LTL's attempt to shift the burden under the Motion to the U.S.

4

Trustee and the other movants, under Third Circuit precedent the burden rests with LTL to prove that it filed its chapter 11 case in good faith.  LTL has not met, and cannot meet, that burden.

The Third Circuit's good faith analysis requires this Court to "determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *LTL*, 64 F.4th at 100.  The Third Circuit held that LTL's prior case was not filed in good faith, putting it on the "patently abusive" end of the scale.  The Third Circuit's decision in the prior case binds this Court regarding all aspects of LTL's current case that have not changed materially since its first filing.  Although LTL attempts to raise the same arguments again—including (but not limited to) that LTL is faced with a surge of talc and mesothelioma claims, the costs of litigating those claims will be considerable, and LTL prefers bankruptcy to multidistrict litigation—these arguments were all presented in LTL's prior case, and none of them mattered to the Third Circuit's determination that LTL did not file in good faith.  As a result, the only issue before this Court now is whether the changes to LTL's situation since the Third Circuit's decision are sufficient to move its current case to the "clearly acceptable" end of the scale.  But, as addressed in the Motion, even with these changes LTL cannot demonstrate good faith because: **(i)** LTL is still not in financial distress, for the exact same reasons the Third Circuit held that it was not in financial distress in its prior case; and **(ii)** even if somehow this Court were to find otherwise, LTL artificially manufactured that "financial distress" through its own corporate transactions. None of the arguments LTL or the Ad Hoc Committee of Supporting Counsel (the "AHCSC") raise in opposition to the Motion controvert these facts.

Because LTL clearly cannot prove its good faith in filing this case, it instead focuses its arguments on the "unusual circumstances" it claims should prevent this Court from dismissing the case under section 1112(b)(2).  But, if the Court finds that this case was not filed in good

faith—and, in light of the Third Circuit's findings on financial distress in LTL's prior case, it clearly was not—then this Court will have no choice but to grant the Motion and dismiss the case because the requirements of section 1112(b)(2) cannot be satisfied when the "cause" found under section 1112(b)(1) is that the filing lacks good faith.  Section 1112(b)(2) requires not only the existence of "unusual circumstances" but also, among other things, that "there is a reasonable justification for the act or omission" and "the act or omission may be cured within a reasonable period of time."  Where the cause for dismissal is failure to file in good faith, there can never be a "reasonable justification" or "cure."  No matter how many "unusual circumstances" may exist, it is irrelevant; section 1112(b)(2) is a multi-prong test and, as the Third Circuit already found, there is no "reasonable justification" to file a case where there is a lack of financial distress.  The lack of financial distress is a gating issue and cannot be "cured."

For the following reasons, the arguments raised by LTL and the AHCSC in opposition to the Motion all lack merit, and LTL's current chapter 11 case, like its first, should be dismissed.

## <u>ARGUMENT</u>

I.     **As in all chapter 11 cases in this Circuit, unless and until the Third Circuit sitting en banc or the Supreme Court decide otherwise, LTL bears the burden of proving that it filed its case in good faith.**

LTL argues that the U.S. Trustee and other movants seeking to dismiss LTL's most recent chapter 11 case bear the burden to prove that LTL did not file in good faith.  *See* LTL Obj. at 22-25.  It alleges that a 2005 amendment to 11 U.S.C. § 1112(b)(1) abrogated pre-2005 Third Circuit jurisprudence regarding the applicable burden of proof for determining whether a debtor filed its chapter 11 case in good faith.  *Id*. at 23.  Whatever the potential merits of that argument may be—and the U.S. Trustee can discern none—they have no bearing on the matter before this Court, because the Third Circuit has never acknowledged this supposed abrogation.

Post-2005 Third Circuit panels, including the one that dismissed LTL's prior case,[4]

continue to place the burden on the debtor to prove that it filed its case in good faith.  *See, e.g.*,

*LTL*, 64 F.4th at 100; *In re 15375 Mem'l Corp. v. Bepco, Ltd. P'ship*, 589 F.3d 605, 618 (3d Cir.

2009).  As the Third Circuit has never acknowledged any abrogation of its long-standing

requirement that debtors bear the burden of proving that they filed in good faith, those panels

had—and future panels will have—no choice but to continue to place the burden of proof on the

debtor unless and until the Third Circuit sitting en banc or the Supreme Court rule otherwise.

*See First Fid. Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P)*, 59 F.3d 423, 431 (3d

Cir. 1995) ("As a panel of this court, we lack the power to overrule a decision of a previous

panel[.]"); *see also* I.O.P. 9.1 ("It is the tradition of this court that the holding of a panel in a

precedential opinion is binding on subsequent panels.  Thus, no subsequent panel overrules the

holding in a precedential opinion of a previous panel.  Court en banc consideration is required to

do so.").

District courts within this circuit have also continued after 2005 to place the burden on

the debtor to prove good faith.  *See, e.g.*, *Stingfree Techs. Co. v. Americ Invs. Cap. Co. (In re

Stingfree Techs. Co.)*, 427 B.R. 337, 352 (E.D. Pa. 2010); *Bepco, L.P. v. 15375 Mem'l Corp. (In

re 15375 Mem'l Corp.)*, 400 B.R. 420, 426 (D. Del. 2009), *aff'd*, 589 F.3d 605 (3d Cir. 2009).

Indeed, under the doctrine of vertical *stare decisis* they cannot do otherwise.  *See Hernandez v.

Johnson & Johnson Consumer Inc.*, No. 19-15679, 2023 WL 2634496, at *3 (D.N.J. Mar. 24,

2023) (holding that New Jersey district courts are "duty-bound to follow precedent set forth by

---

[4] Contrary to LTL's suggestion in footnote 28 of its objection, although LTL chose not to address the issue, the applicable burden of proof was indeed pressed by the TCC and Arnold & Itkin LLP ("A&I") in their opening and reply briefs and by the U.S. Trustee in his amicus brief, and was passed upon by the Third Circuit when it directed that LTL's prior case be dismissed for lack of good faith.  *See* 3d Cir. Case No. 22-2003, Dkt. 45 at 12 (U.S. Trustee's amicus brief), Dkt. 46 at 19 (TCC's opening brief), Dkt. 54 at 17 (A&I's opening brief), Dkt. 131 at 12 & 17 (A&I's reply brief), Dkt. 132 at 22 (TCC's reply brief), Dkt. 150 at 35 (3d Cir. opinion).

the Third Circuit"); *see also Planned Parenthood of Se. Pa. v. Casey*, 947 F.2d 682, 691-92 (3d

Cir. 1991), *aff'd in part, reversed in part*, 505 U.S. 833 (1992) (holding that a lower court is

bound by a higher court's "choice of legal standard or test and by the result it reaches under that

standard or test," and that "[o]ur system of precedent or *stare decisis* is thus based on adherence

to both the reasoning and result of a case, and not just the result alone").

Similarly, although LTL would prefer to apply out-of-circuit precedent, "this court is not

governed by cases in other jurisdictions and is actually *bound* by Third Circuit precedent."

*Bailey v. Navient Solutions, LLC (In re Bailey)*, No. 19-15531-ABA, Adv. No. 19-1159-ABA,

2021 WL 4314217, at *10 (Bankr. D.N.J. Sept. 22, 2021) (emphasis in original).  Consistent

with controlling precedent, this Court correctly imposed the burden of proof on LTL in its prior

case (*In re LTL Management, LLC*, 637 B.R. 396, 405 (Bankr. D.N.J. 2022), *rev'd on other

grounds*, 64 F.4th 84 (3d Cir. 2023)) and must do so again in this case.  Indeed, LTL has failed to

cite a single bankruptcy court that flouted Third Circuit precedent on this issue; to the contrary,

numerous post-2005 bankruptcy courts within this circuit have agreed with this Court that the

burden of proving good faith continues to rest with the debtor.  *See, e.g.*, *In re Team Sys. Int'l

LLC*, 640 B.R. 296, 311 (Bankr. D. Del. 2022); *In re Rent-A-Wreck of Am., Inc.*, 580 B.R. 364,

375 (Bankr. D. Del. 2018); *U.S. Trustee v. Stone Fox Capital LLC (In re Stone Fox Capital

LLC)*, 572 B.R. 582, 589 (Bankr. W.D. Pa. 2017); *In re JER/Jameson Mezz Borrower II, LLC*,

461 B.R. 293, 298 (Bankr. D. Del. 2011).

LTL's argument that language inserted into section 1112(b)(1) in 2005 and then removed

in 2010 somehow impliedly nullified Third Circuit precedent lacks merit.  The phrase in

question—"if the movant establishes cause"—was removed from the statute.  Congress' intent

behind statutory amendments is best determined by the language of the statute after the

amendment, not floor statements by individual members of Congress such as those relied on by LTL. *See, e.g.*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 456-57 (2002) ("Floor statements . . . cannot amend the clear and unambiguous language of a statute."); *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 306 (2017) ("What Congress ultimately agrees on is the text that it enacts, not the preferences expressed by certain legislators.").  Thus, Congress must be presumed to have taken that language out of section 1112(b)(1) because it didn't want it in there.

The 2005 amendment did not expressly abrogate precedent that was based on prior versions of section 1112(b).  Further, the Third Circuit has never held that the 2005 amendment impliedly abrogated its precedent regarding any aspect of its section 1112(b) jurisprudence, much less its long-standing requirement that the debtor bears the burden to prove it filed its bankruptcy case in good faith.  As a result, unless and until the Third Circuit sitting en banc or the Supreme Court rule that the 2005 amendment abrogated pre-2005 jurisprudence or otherwise establish that the burden of proving good faith rests elsewhere, LTL bears the burden of proving that this case—unlike the one dismissed 131 minutes before this case was filed—was filed in good faith.  As discussed below, LTL has not met, and cannot meet, that burden.

**II.    LTL is either not in financial distress or is in artificially engineered financial distress and thus has not met, and cannot meet, its burden to demonstrate that it filed its current case in good faith.**

In the Motion, the U.S. Trustee argued in the alternative that either: **(i)** LTL is still not in financial distress, for the exact same reasons the Third Circuit held that it was not in financial distress in its prior case; or **(ii)** LTL artificially manufactured "financial distress" through its own corporate transactions.  *See* Motion at 11-13.  In either event, LTL did not file this case in good faith, and it should be dismissed.  For the following reasons, the counter arguments raised in

LTL's objection are meritless, and LTL has not met, and cannot meet, its burden to prove that it

filed in good faith.

A.    **LTL is not in financial distress because it still has a parental "backstop"
sufficient to fund any talc-related obligations it could have anticipated on its
petition date to incur in the near term.**

This Court is not only bound by the *result* of the Third Circuit's decision in LTL's prior

case; it must "adhere[] to *both the reasoning and result*" of that decision, "and not just the result

alone." *Planned Parenthood of Se. Pa. v. Casey*, 947 F.2d at 691-92 (emphasis added).

In LTL's prior case, the Third Circuit held that "a valid bankruptcy purpose assumes a

debtor in financial distress." *LTL*, 64 F.4th at 101 (internal quotation marks omitted).  The Third

Circuit concluded that LTL "was in no financial distress when it sought Chapter 11 protection"

(*id*. at 111), and so had not filed in good faith, because as of its petition date LTL was **(1)** "highly

solvent with access to cash to meet comfortably its liabilities as they came due for the

foreseeable future" (*id*. at 108) as the result of **(2)** a "funding backstop" (*id*. at 109) **(3)** provided

by its "parent" New JCCI (*id*. at 111) that was available **(4)** "outside of bankruptcy" (*id*. at 106)

and would **(5)** "pay current and future talc claimants in full" (*id*. at 109) and **(6)** "exceeded any

reasonable projections available on the record" (*id*.), which **(7)** "for [all of J&J's] products

liability litigation, including for talc," was "$2.4 billion for the next two years" (*id*. at 108).  The

Third Circuit further held that LTL's prior case was "premature" (*id*. at 109) because LTL had

not "faced any serious financial and/or managerial difficulties calling for the need to reorganize

during its short life outside of bankruptcy" (*id*.).  The Third Circuit stated that, "*with the

progression of litigation outside of bankruptcy*, [if] cash available under the Funding Agreement

cannot adequately address talc liability[,] [p]erhaps at that time LTL could show it belonged in

bankruptcy." *Id*. (emphasis added).

The Third Circuit's reasons for dismissing LTL's first-filed case apply with full force to its second-filed (by mere minutes) case. This Court's good faith analysis must focus on LTL's financial state on the petition date of its current case, not its potential future litigation costs.[5] *LTL*, 64 F.4th at 109-10. Just as in its prior case, LTL was solvent[6] on the petition date, and it had a "funding backstop" provided by its "parent" (now Holdco, *see* Kim Decl. ¶ 27)), even if it no longer had the same "[]grandparent[] safety net" it had before. *LTL*, 64 F.4th at 111.

LTL's new funding agreement "obligates Holdco to provide funding to [LTL] to pay for costs and expenses [LTL] incur[s] in the normal course of its business" and "requires Holdco to fund amounts necessary [] to satisfy [LTL's] talc-related liabilities," and Holdco will provide this funding both outside of, and during, any chapter 11 bankruptcy case. Kim Decl. ¶ 80; *see also* LTL Obj. at 18-19. J&J's participation has been moved to the background and is only available in a bankruptcy case. Kim Decl. ¶ 82. Despite these changes, LTL still has money available to it through its parental backstop with Holdco sufficient "to fund [its] talc liabilities and related costs outside bankruptcy." Kim Decl. ¶ 84. And, at the time it filed its current case LTL had still not engaged in any litigation outside of bankruptcy, because its "short life outside of bankruptcy" was only 131 minutes longer than it had been before it filed its prior case.

---

[5] The "huge spike" in claims during its prior case referenced by LTL (*see* LTL Obj. at 11 & 32) is a red herring that should not divert this Court from the Third Circuit's recognition of LTL's ability to settle or otherwise dispense with these claims outside of bankruptcy. *LTL*, 64 F.4th at 107 (holding that this Court's "ballooned [] conclusion" regarding LTL's litigation costs "ignore[d] the possibility of meaningful settlement, as well as successful defense and dismissal, of claims" outside of bankruptcy).

[6] LTL argues that it is in financial distress even though it is not insolvent. LTL Obj. at 26-28. Although it is true that the Third Circuit stated, in *dicta*, that a debtor need not be insolvent to file in good faith, it nevertheless held that "we cannot ignore that a debtor's balance-sheet insolvency or insufficient cash flows to pay liabilities (or the future likelihood of these issues occurring) are likely always relevant." *LTL*, 64 F.4th at 102. And, in its discussion regarding insolvency, it cited *SGL Carbon* and *Integrated Telecom*—two cases in which it reversed lower court decisions and ruled that the solvent debtors in those cases were not in financial distress and so had not filed in good faith. *See Integrated Telecom*, 384 F.3d at 124 (holding that "highly solvent" company had not filed in good faith notwithstanding "the collapse of [its] business model" and "[t]he failure of [its] business"); *SGL Carbon*, 200 F.3 at 166 ("Courts, therefore, have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11.").

11

LTL touts in its objection that its current filing is backed by four times the "funding commitment" as its prior case—a curious position given the prior case was dismissed due to LTL's access to ample funding. LTL Obj. at 2. In addition, LTL argues that it is in financial distress even though "it should be able to meet its obligations." LTL Obj. at 4. It makes this argument despite having been found to lack financial distress in its prior case precisely because it could meet its obligations. *LTL*, 64 F.4th at 109 (taking LTL "at [its] word" that "it can pay current and future talc claimants in full"). LTL also argues that in this case, as in its dismissed prior case, "the financing available to [LTL] just prior to its chapter 11 filing was sufficient to satisfy the talc claims." LTL Obj. at 5; *see also id*. at 17 (stating that the new funding agreement "***retain[s] the same level of funding available to talc claimants***" as in its prior case) (emphasis in original) (alteration added). LTL further argues that its agreement with Holdco "remains largely unchanged" from the parental backstop provided by New JJCI in its prior case, and Holdco's value "is still sufficient to pay talc claimants." LTL Obj. at 18.

Contrary to LTL's apparent understanding, the Third Circuit's reasoning was not based solely on the fact that J&J was directly involved, nor that the "backstop" could be as much as $61 billion. LTL may not have been as flush on the petition date of its current case as it was the last time it tried to file a chapter 11 case, but it still had access to more funds than it could have anticipated to need in the near term.

Many of the other circumstances LTL relies on to support its "financial distress" argument are the kind of "back-of-the-envelope forecasts of hypothetical worst-case scenarios" LTL pitched to this Court in its first case that were flatly rejected by the Third Circuit. *LTL*, 64 F.4th at 108; *see, e.g.*, LTL Obj. at 34 (stating that LTL's "narrower" solvency "does not consider billions in escalating legal fees and expenses that would be necessary to defend the tens

to hundreds of thousands of talc claims in the tort system in the ensuing decades"); *id.* at 35

(referring to "the increased possibility of more exorbitant verdicts as the trial courts ramp up

trials against [LTL]," and "[o]ne plaintiff verdict could singlehandedly wipe out any existing

liquidity at [LTL] and Holdco"); *id.* at 36 ("All indications . . . suggest that [LTL's] future

defense costs in the tort system would accelerate and far surpass its historical costs"); *id.*

(referring to "the possibility that the MDL will unleash tens of thousands of talc claims to their

home jurisdictions . . . and the burgeoning possibility of consolidated trials"); *id.* at 38 (referring

to "potentially crippling defense costs, settlements and possible <u>Ingham</u>-like verdicts"); *id.* at 40

("more runaway verdicts or burdensome settlements [are] possible at any time").[7]  This

speculative parade of horribles has no bearing on the issue of whether LTL was in "immediate"

financial distress when it filed its petition in this case (a mere 131 minutes after its prior case was

dismissed).  *LTL*, 64 F.4th at 102.

In light of the foregoing, even with the changes to LTL's funding, its current filing is still

closer to the "patently abusive" than the "clearly acceptable" end of the spectrum for the same

reasons the Third Circuit held in its prior case.  *Id.* at 100.  LTL "seeks shelter in a system

designed to protect those without" (*id.* at 111) even though it still has access to a parental

backstop it could rely on to help fund whatever immediate expenses existed as of the petition

date in its current case.  As a result, LTL has still not established that it is in financial distress,

and thus it has not met, and cannot meet, its burden to prove it filed in good faith and this case

must be dismissed.

---

[7] The bankruptcy court in the chapter 11 cases of a 3M Corporation affiliate—which relied heavily on the Third Circuit's decision in LTL's prior case to find that the debtors' cases did not have a valid bankruptcy purpose because they "were not prompted by concerns over financial distress or impending insolvency"—recently held that the cases were "a litigation management tactic and not a rehabilitative effort" because they "were initiated to manage the MDL process," and dismissed the cases for lack of good faith.  *See In re Aearo Techs. LLC*, Nos. 22-02890-JJG-11 through 22-02896-JJG-11, 2023 WL 3938436, at **20, 22 (Bankr. S.D. Ind. June 9, 2023).

**B.    In the alternative, even if LTL successfully engineered financial distress by its pre-dismissal corporate transactions, it still cannot prove that its current case was filed in good faith.**

The Motion argued in the alternative that, if LTL's corporate transactions did in fact manufacture financial distress, then its current case was still not filed in good faith, and should be dismissed, because: **(i)** LTL acted in bad faith when it terminated the 2021 Funding Agreement; **(ii)** LTL's current case does not serve a valid bankruptcy purpose because it is really designed to benefit J&J, not LTL; **(iii)** LTL's current case was filed as a litigation tactic; and **(iv)** LTL's actions preparatory to filing its current case were taken during its prior case without authorization of this Court and without regard to its fiduciary duties.  Motion at 14-19.  Nothing that LTL raises in its opposition to the Motion controverts these facts or demonstrates LTL's good faith in filing.

LTL admits that due to its replacement of the 2021 Funding Agreement with the less lucrative 2023 Funding Agreement "there can be no dispute that the extent of [its] solvency has narrowed since October 14, 2021."  LTL Obj. at 33.  It also admits that unlike in its prior case "J&J's support [is] available only in reorganization."  LTL Obj. at 43.  Nevertheless, LTL insists that "Holdco's obligations . . . as of the Petition Date were fundamentally the same obligations as New JCCI's obligations at the commencement of" LTL's prior case."  LTL Obj. at 42.  If LTL, with its Holdco backstop, truly has "the financial resources it needs to address its talc liability" (LTL Obj. at 43), then LTL is not in financial distress and its case should be dismissed as not having been filed in good faith.  LTL can't have it both ways—it is either financially healthy, in which case filing for chapter 11 is not in good faith, or it shot itself in the foot just so it could limp into chapter 11—which would be, if anything, evidence of "worse" faith than it showed when it filed the prior case.

14

In addition, LTL all but admits that its post-Third Circuit corporate transactions were done to benefit J&J, not LTL. *See* LTL Obj. at 46 (the Third Circuit's decision "deprived J&J of the material consideration it offered for [its] backstop commitment under the 2021 Funding Agreement"); *id*. at 50 (the Third Circuit's decision "deprived J&J of the consideration for which it entered into the agreement, and destroyed all expected value of the agreement to J&J and [LTL]"). The Third Circuit's "frustration of [J&J's] purpose" caused J&J to go back to the drawing board—but only to draw up a new arrangement to effectuate J&J's ultimate "purpose": to use LTL as a pawn to rid J&J and its affiliates of talc liability. To the extent J&J and LTL "share[] a common purpose" (LTL Obj. at 52), J&J obviously decides what that purpose will be.

The only argument LTL provides regarding its "valid bankruptcy purpose" is that it sought "to use the tools of chapter 11" to resolve its talc liabilities "through a trust established pursuant to a confirmed plan of reorganization." LTL Obj. at 57; *see also id*. at 58 ("Using chapter 11 to comprehensively address present and future tort liabilities is, in fact, a well-established purpose for a filing."). The Third Circuit has held that the desire to use "bankruptcy tools" is not itself a "valid bankruptcy purpose," and so cannot carry a debtor's burden to prove that its case was filed in good faith: "Just as a desire to take advantage of the protections of the Code cannot establish *bad* faith as a matter of law, that desire cannot establish *good* faith as a matter of law." *Integrated Telecom*, 384 F.3d at 128 (emphasis in original). The question is not whether LTL *can* confirm a plan with a section 524(g) trust, but "whether it is *entitled* to employ the 'considerable powers' of Chapter 11" to try to do so. *Primestone Inv. Partners L.P. v. Vornado PS, L.L.C.* (*In re Primestone Inv. Partners L.P.*), 272 B.R. 554, 558 (D. Del. 2002) (emphasis added); *see also Cedar Shore Resort, Inc. v. Mueller* (*In re Cedar Shore Resort, Inc.*), 235 F.3d 375, 381 (8th Cir. 2000) ("[A]ny debtor who files bankruptcy in bad faith should not be

15

permitted to enjoy the protections of Chapter 11 even though [it] might be capable of effectuating a reorganization.").

LTL also argues that its current case was not filed as an abusive litigation tactic.  LTL Obj. at 61-62.  Of course, LTL's very existence is a litigation tactic—it was "created to file for bankruptcy" (*LTL*, 64 F.4th at 110), and its chapter 11 cases were "aimed to beat back talc litigation in trial courts" (*id*. n.19).  Indeed, LTL all but admits that its bankruptcy filings are intended to address "Ingham-like verdicts."  LTL Obj. at 38.  Although the Third Circuit did not reach the issue, it did provide a very clear indicator of its position:  "[A] filing to change the forum of litigation where there is no financial distress raises, as it did in *SGL Carbon*, the specter of 'abuse which must be guarded against to protect the integrity of the bankruptcy system.'" *LTL*, 64 F.4th at 110 n.19 (quoting *SGL Carbon*, 200 F.3d at 169).

Termination of the 2021 Funding Agreement and replacement with the 2023 Funding Agreement was formulated while LTL's prior bankruptcy case was pending.  LTL Obj. at 57. LTL states that "[t]he replacement of [LTL's] funding support was not effectuated until the interval between dismissal of the 2021 Chapter 11 Case and commencement of this Chapter 11 Case" (*id*.), but that was only a 131-minute period.  Realistically, the negotiations and drafting occurred sometime between the Third Circuit's January 30, 2023, decision and the April 4, 2023, dismissal of LTL's prior case—which means they were done while LTL was a debtor in possession under this Court's jurisdiction.  As a result, termination of the old funding agreement and replacement with LTL's new funding agreement should have been presented to this Court for its approval—which would have provided all parties in interest with notice and an opportunity to be heard.

For the foregoing reasons, LTL cannot prove its current case was filed in good faith even

if it did manufacture financial distress through its corporate transactions, and its case should be

dismissed for cause under section 1112(b)(1).

**III.    Section 1112(b)(2) cannot be used to obviate the need for this Court to first make a finding regarding "cause" under section 1112(b)(1) and is not applicable when the "cause" found is the failure to file in good faith.**

According to the Third Circuit, once there is a finding of "cause" under section

1112(b)(1), the opposing party bears the burden of proving all the elements of section 1112(b)(2)

to prevent the case from being converted or dismissed.  *See In re Dr. R.C. Samanta Roy Inst. of*

*Sci. Tech. Inc.*, 465 F. App'x 93, 97-98 (3d Cir. 2011) (affirming dismissal where debtors failed

to meet their "burden of demonstrating that there was 'a reasonable justification for [their] . . .

omission . . . that [would] be cured in a reasonable period of time'") (quoting 11 U.S.C.

§ 1112(b)(2)(B)(i) & (ii)) (alterations in original).

The District of New Jersey agrees.  *See In re Tarquinio*, No. 17-cv-01917, 2017 WL

5707538 at *6 (D.N.J. Nov. 27, 2017) (affirming conversion to chapter 7 and holding that, once

cause is found, the opposing party bears the burden to make the section 1112(b)(2) showing).

Other district courts within the Third Circuit agree that the findings referenced in section

1112(b)(2) become relevant only after cause is found under section 1112(b)(1).  *See, e.g.*,

*Mumma v. Vara (In re Mann Realty Assocs., Inc.)*, No. 1:18-CV-683, 2019 WL 4780937, at *6

(M.D. Pa. Sept. 30, 2019) (finding that section 1112(b)(2) comes into play "[a]fter cause is

established," and affirming conversion where debtor did not satisfy the "reasonable justification"

and "cure[]" requirements of section 1112(b)(2)); *Grasso v. Madison Capital Co.*, No. 13-4308,

2014 WL 1281123, at *2 n.9 & *6 n.44 (E.D. Pa. Mar. 31, 2014) (same); *Alston v. DeAngelis (In*

*re Alston)*, No. 13-cv-1855, 2013 WL 6210249, at *4 (E.D. Pa. Nov. 27, 2013) (same).[8]

---

[8] In addition, many appellate decisions throughout the nation have held that the findings referenced in section
1112(b)(2) only come into play after the bankruptcy court makes a finding of cause under section 1112(b)(1).  *See,*

Thus, it is a "well-settled" "legal principle[] governing the application of § 1112(b)" that

section 1112(b)(2) is only considered "[o]nce cause is found" under section 1112(b)(1).  *See In*

*re 1121 Pier Village LLC*, 635 B.R. 127, 137 (Bankr. E.D. Pa. 2022).

Although colloquially referred to as the "unusual circumstances" test, section 1112(b)(2)

actually requires the objecting party to show every one of six separate components to avoid

conversion or dismissal upon a finding of cause:

(1) "unusual circumstances" exist; [and]

(2) conversion or dismissal "is not in the best interests of creditors and the
estate"; [and]

(3) there is a reasonable likelihood of confirmation of a plan within any time
period mandated by the Code or[] otherwise within a reasonable time;
[and]

(4) the grounds for dismissal for "cause" do not include those set forth in
§ 1112(b)(4)(A); [and]

(5) there is a reasonable justification for the act or omission of the debtor; and

(6) the act or omission may be cured within a reasonable period of time.

*See In re Korn*, 523 B.R. 435, 465 (Bankr. E.D. Pa. 2014) (alterations added); *see also Andover*

*Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 176

&177 n.5 (B.A.P. 1st 2016) (holding that, because "Section 1112(b)(2) is written in the

conjunctive," "[t]he debtor has the burden of establishing that all of the factual elements of

---

*e.g.*, *La Trinidad Elderly LP SE v. Loíza Ponce Holdings LLC (In re La Trinidad Elderly LP SE)*, 627 B.R. 779, 798
(B.A.P. 1st Cir. 2021) (holding that section 1112(b)(2) comes into play "[a]fter a finding of cause"); *Layman v.
Tenn. St. Bank*, No. 2:19-CV-233, 2021 WL 6425951, at *7 (E.D. Tenn, Feb, 2, 2021) (holding that, "[a]fter a court
determines that a petition should be dismissed [under section 1112(b)(1)], the party objecting to dismissal must
establish" all of the section 1112(b)(2) elements); *L&R Dev. & Inv. Corp. v. Román-Ramos (In re L&R Dev. & Inv.
Corp.)*, No. PR 19-044, 2020 WL 1862377, at *5 (B.A.P. 1st Cir. Apr. 12, 2020) (holding that section 1112(b)(2)
"applies" "if the bankruptcy court finds cause"); *Green v. Howard Family Trust Dated August 21, 1998 (In re
Green)*, BAP Nos. NV-15-1349-KiLDo & NV-15-1360-KiLDo, Bk. No. 14-15981-abl, 2016 WL 6699311, at **10-
11 (B.A.P. 9th Cir. Nov. 9, 2016) (holding that section 1112(b)(2) comes into play "once the bankruptcy court
determines that cause exists"); *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 63 (B.A.P. 6th Cir. 2013) (holding
that section 1112(b)(2) comes into play "[o]nce a party demonstrates that cause exists").

§ 1112(b)(2) exist"). Failure to prove any one of these components will result in conversion or

dismissal of the case without the need to address the rest of the components. *See, e.g.*, *Green*,

2016 WL 6699311, at *11 ("[E]ven if Debtors could confirm a plan within a reasonable time,

they have not shown how the 'cause' established to convert their case—bad faith—was either

reasonably justified or curable."); *Korn*, 523 B.R. at 469 ("Without a reasonable justification for

the Debtor's inadequate performance as DIP, the case must be dismissed."); *In re Triumph*

*Christian Center, Inc.*, 493 B.R. 479, 496-97 (Bankr. S.D. Tex. 2013) (finding bad faith and

dismissing case because, "even if th[e] Court found that there were 'unusual circumstances'

establishing that dismissal of th[e] case would not be in the best interests of the Debtor's

creditors, the Debtor has not proven the additional elements required under section 1112(b)(2)").

Where, as here, the "cause" found under section 1112(b)(1) is the failure to file a chapter

11 petition in good faith, section 1112(b)(2) is never applicable because the failure to file in good

faith can never be justified or cured—making prongs 5 and 6 impossible to satisfy.[9] *See, e.g.*,

*Layman v. Tenn. St. Bank*, No. 2:19-cv-233, 2021 WL 6425951, at *2 & *8 (E.D. Tenn. Feb. 2,

2021) (affirming dismissal for filing in bad faith, and holding that debtor's "actions cannot be

cured"); *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 576 (D. Conn. 2016) (affirming dismissal

for filing in bad faith, and holding that debtor had not shown "a 'reasonable justification' for the

debtor's filing bankruptcy on the eve of trial, let alone how that act could be 'cured'"); *Green*,

2016 WL 6699311, at *11 ("[F]iling a petition in bad faith could never be reasonably justified or

curable, no matter what plan Debtors could now propose."); *ECV Dev., LLC v. Emerald Bay*

---

[9] LTL's interpretation of section 1112(b)(2) is backwards. LTL Obj. at 63-64. If LTL is "found to lack financial
distress," it would be found to have not filed in good faith pursuant to the Third Circuit's decision in its prior case—
which would *require* this case to be dismissed because the section 1112(b)(2) showings could never be made since
such a filing can never be justified or cured.

*Fin., Inc. (In re ECV Dev., LLC)*, Nos. SC-06-1453-PaMkB & 06-02001, 2007 WL 7540960, at

*7 n.17 (B.A.P. 9th Cir. June 15, 2007) ("[W]e take it as axiomatic that there cannot be a

reasonable justification for a bad faith filing.").[10]

The Third Circuit held that LTL's lack of good faith in filing its prior case could not be

justified or cured. *See LTL*, 64 F.4th at 110 ("Our ground for dismissal is LTL's lack of financial

distress. No 'reasonable justification' validates that missing requirement in this case. And we

cannot currently see how its lack of financial distress could be overcome."). This holds just as

true in the current case.

Note that it is not the filing of LTL's *case* that must be justified under section

1112(b)(2)(B)(i). Instead, it would be LTL's *failure to file in good faith* as found under section

1112(b)(1) that would have to be justified. *See* 11 U.S.C. § 1112(b)(2)(B)(i) ("the grounds for

converting or dismissing the case [*i.e.*, the cause found under section 1112(b)(1)]) include an act

or omission . . . (i) for which there exists a reasonable justification"). Essentially, this Court

would have to find that the filing of a petition without justification was justified. And that would

be nonsensical.

Contrary to LTL's and the AHCSC's assertion, confirmation of a plan would neither

justify nor cure LTL's failure to file its current case in good faith. LTL Obj. at 62-68; AHCSC

Obj. at 21, ¶ 53. As the Third Circuit emphasized in dismissing LTL's prior case, the good faith

analysis must focus on LTL's lack of financial distress as of the date it filed its chapter 11

petition, not on subsequent events. *See LTL*, 64 F.4th at 109 ("The 'attenuated possibility' that

---

[10] *See also In re Hinesley Family Ltd. P'ship No. 1*, 460 B.R. 547, 553 (Bankr. D. Mont. 2011) (holding that, where cause under section 1112(b)(1) is filing petition in bad faith, "then section 1112(b)(2) would not apply because, by determining that the debtor filed the case in bad faith, the court would foreclose a reasonable justification for the filing"); *In re Forest Hill Funeral Home & Memorial Park-East, LLC*, 364 B.R. 808, 824 (Bankr. E.D. Okla. 2007) (holding that debtor had not met its section 1112(b)(2) burden, and dismissing case for bad faith, where "the conduct of [the debtor's principals] which is at the foundation of the Court's decision is subject to neither reasonable justification nor timely cure").

talc litigation may require it to file for bankruptcy in the future does not establish its *good faith as of its petition date*.") (emphasis added); *id*. at 110 ("[W]hile LTL faces substantial future talc liability, its funding backstop plainly mitigates *any financial distress foreseen on its petition date*.") (emphasis added).

Filing, or even confirming, a plan cannot "cure" a case that never should have been filed to begin with; the only "cure" for such a case is dismissal. *Cf. SGL Carbon*, 200 F.3d at 159 n.8 (noting that "[i]n bad faith cases involving the filing of a petition that is an abuse of the bankruptcy process," dismissal is the only available remedy because "[t]he proponent of an abusive petition does not belong in bankruptcy"). Indeed, in *SGL Carbon*, the debtor filed a plan, yet the Third Circuit nevertheless directed the case to be dismissed as not having been filed in good faith. *Id.* at 157, 167 & 169-70. The same thing happened in *15375 Memorial Corp.*, where the Third Circuit held that the mere filing of a liquidation plan did not evince good faith and affirmed the dismissal of the case for lack of good faith. 589 F.3d at 624, 626. And in *Integrated Telecom*—where a plan was actually successfully *confirmed* (384 F.3d at 116, 129-30)—the Third Circuit still reversed and directed that the case be dismissed as having not been filed in good faith.

In any event, even if confirming a plan could somehow "cure" a filing that was not made in good faith, there can certainly never be a "reasonable justification" for such a filing, and thus all of the section 1112(b)(2) criteria cannot be met. *See In re Baroni*, 2021 WL 243322, at *6 (C.D. Cal. Jan. 25, 2021), *aff'd*, 36 F.4th 958 (9th Cir. 2022) (affirming dismissal because "it is insufficient for a debtor to prove that the grounds for cause will be cured immediately; she must additionally provide a reasonable justification for the cause"). LTL's belief that bankruptcy court is the better forum in which to address its talc liability, no matter how fervently that belief

may be held, cannot justify a filing that was not made in good faith. *LTL*, 64 F.4th at 111

("J&J's belief that this bankruptcy creates the best of all possible worlds for it and the talc

claimants is not enough, no matter how sincerely held.").

As the "reasonable justification" and "cure[]" components of section 1112(b)(2) can

never be met when a chapter 11 petition is not filed in good faith, LTL's and the AHCSC's

arguments regarding "unusual circumstances," "best interests of creditors," and "reasonable

likelihood a plan will be confirmed" are all irrelevant.[11]  Because section 1112(b)(2) is written in

the conjunctive, LTL's inability to satisfy the "reasonable justification" and "cure" prongs is

dispositive; the other section 1112(b)(2) components alone, even if proven, cannot serve to

override a section 1112(b)(1) finding of lack of good faith when  the justification and cure

components cannot be met.  The evidence LTL offers in this regard is just a diversion, meant to

distract from the immense hurdle LTL must overcome to somehow show financial distress.

Moreover, none of the cases cited by the AHCSC support the applicability of section

1112(b)(2) where the "cause" found under section 1112(b)(1) is the failure to file in good faith.

Indeed, three of the cases it cites are of limited utility in any case, much less this case, because

they interpreted superseded versions of section 1112(b).  AHCSC Obj. at 19-21, ¶¶ 48, 50 & 53.

For example, in *Camden Ordinance Mfg. Co. of Arkansas, Inc. v. U.S. Trustee (In re Camden*

*Ordinance Mfg. Co. of Arkansas, Inc.)*, 245 B.R. 794, 802 (E.D. Pa. 2000), the court was

interpreting the pre-2005 version of section 1112(b), which did not include the "unusual

circumstances" concept added by the Bankruptcy Abuse Prevention and Consumer Protection

Act of 2005.  In that case the court found cause and converted the case to chapter 7 as requested

---

[11] In the interest of completeness, the U.S. Trustee submits that LTL and the AHCSC have also failed to satisfy the
other components of section 1112(b)(2) because they have yet to provide any proof that "unusual circumstances"
exist, that not dismissing the case would be in the "best interest of creditors," or that there is a "reasonable
likelihood a plan will be confirmed."

by the U.S. Trustee and creditors rather than dismissing the case as the debtor preferred.  245

B.R. at 797, 802.  Allowing the case to remain in chapter 11 was not on the table, and the

creditors preferred that the debtor be liquidated in chapter 7 rather than have the case dismissed.

*Id.* at 799 ("[T]he only outstanding issue was whether the case should be dismissed or

converted."); *id.* at 800 "[A]ll creditors present at the . . . hearing[,] in addition to the UST,

favored conversion over dismissal.").

Similarly, the courts in *In re Sherwood*, No. 04-50584, 2008 WL 2074098 (Bankr. W.D.

Mo. May 14, 2008), and *In re Melendez Concrete Inc.*, No. 11-09-12334, 2009 WL 2997920

(Bankr. D.N.M. Sept. 15, 2009), were interpreting the version of section 1112(b)(1) in existence

between 2005 and 2010, which read as follows:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of
> this section, and section 1104(a)(3), on request of a party in interest, and after
> notice and a hearing, *absent unusual circumstances specifically identified by
> the court that establish that the requested conversion or dismissal is not in the
> best interests of creditors and the estate,* the court shall convert a case under
> this chapter to a case under chapter 7 or dismiss a case under this chapter,
> whichever is in the best interests of creditors and the estate, if the movant
> establishes cause.

11 U.S.C. § 1112(b)(1) (superseded) (emphasis added).

In other words, before the 2010 amendment that deleted the highlighted language,

"unusual circumstances . . . that establish that the requested conversion or dismissal is not in the

best interests of creditors and the estate" was relevant in determining whether cause existed

under section 1112(b)(1).  After the 2010 amendments, however, the "unusual circumstances"

concept was relegated to section 1112(b)(2), which only comes into play after cause has been

found and does not factor into the determination of whether cause exists in the first place.

In *Sherwood*, the court found that the debtor did not show cause to dismiss its own case,

and further found that the "unusual circumstances" that were referenced at that time in section

1112(b)(1) were not present.  *Sherwood*, 2008 WL 2074098, at **2-3.

In *Melendez Concrete*, the court found that the debtor's failure to file timely monthly

operating reports, disclose claims against insiders, and other failings constituted "cause" for

purposes of the pre-2010 version of section 1112(b)(1).  *Melendez Concrete*, 2009 WL 2997920,

at *6.  It did not, however, find that the debtor filed in bad faith.  *Id*. at *4.  The court then

considered the "absent unusual circumstances" language that was at that time part of section

1112(b)(1) and determined that the requisite unusual circumstances were present.  *Id*. at **6-7.

To the extent *Camden Ordinance*, *Sherwood*, and *Melendez Concrete* have any continued

utility, it is with regard to certain of the factors a debtor is required to prove under section

1112(b)(2), which is where the concepts addressed in those cases now reside.

Although the remaining cases cited by the AHCSC interpreted the current version of

section 1112(b), those courts actually found cause and proceeded to either convert or dismiss the

case.  *See 1121 Pier Village*, 635 B.R. at 137 (finding cause under section 1112(b)(1) but not

analyzing section 1112(b)(2) "because the Debtors do not argue and have made no showing that

'unusual circumstances' exist under § 1112(b)(2)"); *Korn*, 523 B.R. at 469 (finding cause under

section 1112(b)(1) and converting case to chapter 7 because the case was not unusual and the

grounds constituting cause were "inexcusable" so there was no "reasonable justification" for

them).  Indeed, the language in *1121 Pier Village* quoted by the AHCSC dealt with the decision

whether to convert or dismiss the case, not whether the case should remain in chapter 11.

AHCSC Obj. at 19, ¶ 47; *see also 1121 Pier Village*, 635 B.R. at 140 ("With these principles in

mind, I turn to the choice between dismissal and conversion.").  In no case cited by the AHCSC

did the court use section 1112(b)(2) to override its finding of cause under section 1112(b)(1).

In light of the foregoing, section 1112(b)(2) does not provide a means by which to avoid

either the hard decision of whether "cause" exists under section 1112(b)(1), or the result required

if that cause is found.  Here, the only cause pled in the Motion is lack of good faith.  If this Court

finds that LTL's case was filed in good faith, it will deny the Motion and section 1112(b)(2) will

not be a consideration.  But, if this Court finds that LTL did not file in good faith, section

1112(b)(2) cannot be satisfied because the failure to file in good faith can never be justified or

cured—two prongs of a multipart test—and this Court must dismiss the case.

## **<u>CONCLUSION</u>**

Based on the foregoing and for the reasons set forth in the Motion, the U.S. Trustee

respectfully requests that the Court grant the Motion and dismiss the case.

<div style="margin-left:40%">

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

</div>

Dated: June 22, 2023

<div style="margin-left:40%">

By: */s/ Jeffrey M. Sponder*
Jeffrey M. Sponder
Trial Attorney
Lauren Bielskie
Trial Attorney
Department of Justice
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, NJ 07102

-and-

Linda Richenderfer
Trial Attorney
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
linda.richenderfer@usdoj.gov

</div>