**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**WOMBLE BOND DICKINSON (US) LLP**
Ericka F. Johnson (NJ #032162007)
Lisa Bittle Tancredi (admitted *pro hac vice*)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Email: ericka.johnson@wbd-us.com
Email: lisa.tancredi@wbd-us.com

*Counsel for Ad Hoc Committee of States*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>Debtor.[1] | Case No.: 23-12825 (MBK)<br><br>Chapter: 11<br><br>Hon. Michael B. Kaplan |

**THE AD HOC COMMITTEE OF STATES HOLDING CONSUMER PROTECTION CLAIMS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS CHAPTER 11 CASE**

The Ad Hoc Committee of States Holding Consumer Protection Claims (the "Ad Hoc Committee"), by its undersigned counsel Womble Bond Dickinson (US) LLP, hereby replies in support of its motion (the "Motion"), pursuant to section §1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), to dismiss the above-captioned case (the "Chapter 11 Case"), stating the following:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

1

# I.
# PRELIMINARY STATEMENT

1. On April 28, 2023, the Ad Hoc Committee filed the Motion. *See* Docket No. 350. Several other case constituents have also filed motions to dismiss (collectively with the Motion, the "Motions to Dismiss"). *See* Docket Nos. 286 (Official Committee of Talc Claimants "TCC"), 333 (Suzanne Ratcliffe), 335 (Ad Hoc Group of Mesothelioma Claimants), 346 (Paul Crouch), 358 (Maune Raichle), 379 (UST), 384 (Arnold & Itkin), and 480 (Mississippi and New Mexico). On May 26, 2023, LTL Management LLC ("LTL" or the "Debtor") filed its Omnibus Objection (the "Opposition") to the various motions to dismiss. *See* Docket No. 614. The Opposition does not support denial of the Motions to Dismiss.

2. The law does not allow a company that is not in financial distress to prejudice its creditors and ignore the requirement of financial distress in the name of convenience and efficiency. The United States Court of Appeals for the Third Circuit (the "Third Circuit") mandated that the Debtor's first bankruptcy case be dismissed because the Debtor was not in financial distress. LTL is still not in financial distress. In a misguided attempt to manufacture just enough financial distress to satisfy the Third Circuit, the Debtor allowed its most valuable asset – its funding arrangement with Johnson & Johnson ("J&J") – to be terminated and replaced with a new arrangement that provides for less funding. Unbelievably, the Debtor asks this Court to believe that this new agreement allows it to maintain solvency, which prevents creditors from utilizing constructive fraudulent transfer avoidance actions to unwind the corporate transactions leading to the bankruptcy case, while demonstrating the type of financial distress required to remain in bankruptcy. The Court should refuse to entertain this gamesmanship. Other than impairments wrought by J&J, the Debtor's financial condition is unchanged from the first bankruptcy case. Notwithstanding LTL's arguments to the contrary, the claimant pool remains the same. Assertions from plaintiff firms that they

represent thousands of new claimants that LTL asserts were not known during the first bankruptcy case does not mean that there are additional claims. Rather, it means that either previously future claimants became current claimants or firms are accepting claims that they previously would not have accepted because such claims would not have been considered compensable claims under existing scientific knowledge. Nonetheless, every claim in the current bankruptcy case was a claim in the prior bankruptcy case.

3. Generally, each of the Motions to Dismiss assert that the Debtor's bankruptcy case should be dismissed as a bad faith filing. LTL asserts that the purpose of the filing is to resolve talc claims fairly and equitably, but LTL's desire to resolve mass tort claims is an insufficient justification for imposing its second bankruptcy filing, which is nothing more than a litigation tactic to pressure claimants into settling for unfavorable amounts. The counsel supporting LTL are trading on a promise of immediate funds over potentially higher recoveries in the future based on the misleading promise that claimants will receive "compensation" during their lifetimes. However, under the current funding arrangements, certain of the funding does not occur until entry of a final, non-appealable order, which may not occur for years to come.

4. Further, there is no reasonable probability of confirmation of a plan because LTL's plan [Docket No. 525] (the "Plan") is patently unconfirmable. Among other things, it would violate the absolute priority rule and the best interest of the creditors test. Moreover, the Plan asserts a single class of creditors that includes both governmental claims and talc claimants but then provides for disparate treatment within the same class in violation of the Bankruptcy Code. Accordingly, the Debtor being in bankruptcy serves no valid bankruptcy purpose.

5. Cause exists to dismiss this bankruptcy case pursuant to Bankruptcy Code section 1112(b). LTL has acted in bad faith. It is not in financial distress. The nature of the purported

"support" for the Plan has been misstated. The Plan is patently not confirmable under the Bankruptcy Code and is inconsistent with the plan term sheets signed by certain supporting counsel (the "Plan Term Sheet"). The Debtor's machinations before the Bankruptcy Court are antithetical to the integrity of the bankruptcy process. LTL filed the second Chapter 11 Case not for any valid bankruptcy purpose, but instead to gain a litigation advantage over its creditors, to artificially cap its liability (and non-Debtor J&J's liability), and to create delay while its parent companies move the value of consumer products assets out of the reach of creditors through the transfer of the assets to other affiliates. For these and other reasons, the Bankruptcy Court should dismiss the Chapter 11 Case.

## II.
## REPLY

A. <u>The Burden Rests with the Debtor to Demonstrate Good Faith</u>

6. "'[T]he burden is on the bankruptcy petitioner to establish that its petition has been filed in good faith.'" *Santa Fe Minerals, Inc. v. Bepco, L.P. (In re 15375 Mem'l Corp.)*, 589 F.3d 605, 618 (3d Cir. 2009) (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004)); *see also In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 298 (Bankr. D. Del. 2011) ("[T]he burden is on the Debtors to establish that they filed their petitions in good faith . . . .").

7. In its Opposition, the Debtor argues that existing law in this jurisdiction has been modified by the 2005 amendment to Bankruptcy Code section 1112(b) where section 1112(b)(1) stated that a bankruptcy court shall dismiss or convert a case "if the movant establishes cause." *See* 11 U.S.C. § 1112(b)(1) (West) (2005). However, in 2010, Congress further amended this section and the language providing for the movant to establish cause was stricken. *See* 11 U.S.C. § 1112(b)(1) (West) (2010) (". . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the

4

estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.").

8. Courts "must presume that a legislature says in a statute what it means and means in a statute what it says there." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010). The statute as it is in effect today does not place the burden on the movant to demonstrate lack of good faith. It is silent on burden and the statute should continue to be interpreted by the courts in this jurisdiction as it has been for many years by placing the burden on the debtor who is seeking the extraordinary relief offered by the Bankruptcy Code. *See*, *e.g.*, *Scaffidi v. DeSoto*, No. 06-cv-03786 (FSH), 2007 WL 2156358, at *3 (D.N.J. July 25, 2007) ("Normally the party who moves for dismissal "for cause" has the burden of proof, but if that party moves for dismissal of a petition made in bad faith, then the debtor has the burden of showing that the filing was made in good faith."); *In re Rent-A-Wreck of Am., Inc.*, 596 B.R. 112, 117 (D. Del. 2019) ("When a motion to dismiss a bankruptcy case is filed, the burden is on the petitioner to establish by a preponderance of the evidence that good faith exists.").

9. Once good faith is placed at issue as it has been in this case, demonstrating good faith is the burden of the debtor. *In re LTL Mgmt., LLC*, 64 F.4th 84, 100 (3d. Cir. 2023). The Debtor cannot satisfy its burden in this case, and the Chapter 11 Case should be dismissed.

B.    <u>LTL Is Not in Financial Distress</u>

10. A Chapter 11 debtor may not enjoy the rights and privileges of bankruptcy unless it has filed its bankruptcy petition in good faith. *LTL*, 64 F.4th at 103 (good faith is necessary in light of bankruptcy's disruption of creditors' claims against the debtor). "[A] good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons ... available only to those debtors and creditors with 'clean hands.'" *Little Creek Dev. Co. v.*

5

*Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072 (5th Cir. 1986).

11. In short, a debtor must <u>need</u> to use the tools afforded under Chapter 11, not merely <u>want</u> to use them. *See In re SGL Carbon Corp.*, 200 F.3d 154, 166 (3d Cir. 1999). "The theme is clear: absent financial distress, there is no reason for Chapter 11 and no valid bankruptcy purpose." *LTL,* 64 F.4th at 101. "[A]bsent financial distress, the debtor's desire to benefit from certain Code provisions . . . could not justify its presence in bankruptcy". *Id.* (citing *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (Integrated Telecom Express, Inc.),* 384 F.3d 108, 126-129 (3d Cir. 2004)).

12. LTL clearly wants to use the tools provided by the Bankruptcy Code to force its chosen resolution to clear itself and J&J of talc liabilities; however, to protect the integrity of the bankruptcy process, LTL must also financially <u>need</u> to use them. *SGL Carbon Corp.*, 200 F.3d at 166. Here, LTL does not need the tools provided by the Bankruptcy Code.

13. The Debtor has unequivocally taken the position that the funding currently available to it is sufficient to meet all of its talc liability. LTL has stated it has enough funds to pay all talc claimants. Specifically, Mr. Kim testified on April 18, 2022, that "at the end of the day, we believe that we have sufficient funds to meet the liability except for the – so we believe we're not insolvent . . ." *See* Exhibit 3 attached to the Declaration of Ericka F. Johnson filed with the Motion [Docket No. 350] ("<u>Ex. 3, April 18, 2023 Hearing Tr.</u>") at 180:20-22.

14. LTL has argued that the evidence that will be presented at the hearing will show that circumstances have changed since its first bankruptcy filing such that as of April 4, 2023, it was facing financial distress. *See* Opposition § C. However, the only facts that have changed are

the diminishment of the available funding and the removal of J&J as a direct funding source, which are both changes purposely manufactured by LTL and J&J.

15. LTL nonetheless argues that there has been a "huge spike" in the number of talc claims since its initial chapter 11 petition. *See* Opposition § C.1. In reality, there has been no change. Either (a) future claims (that always existed) have become current claims[2] or (b) the claims are illusory because talc claims that are not compensable in the tort system are now being accepted by plaintiff firms (and LTL) for purposes of padding the alleged support for LTL's proposed plan.

16. Accordingly, the only "change" in financial circumstances of LTL were the modifications that were made to reduce the funding for satisfying talc liabilities. These changes are a direct result of LTL and J&J's machinations to artificially create financial distress, which was an abuse of the duties LTL, as a debtor in possession, owed to its creditors. A debtor may be denied relief under the Bankruptcy Code where it has "abused the provisions, purpose, or spirit of bankruptcy law." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (affirming dismissal of chapter 7 case for bad faith where debtor accrued substantial debt just prior to filing). Although a debtor may adhere to the letter of the law, its case may be dismissed where it fails to comply with the spirit of the law. *Matter of Northwest Place, Ltd.*, 73 B.R. 978, 982 (Bankr. N.D. Ga. 1987) (dismissing Chapter 11 case).

17. LTL has defied the letter and spirit of the Bankruptcy Code and the Third Circuit's ruling in dismissing the first bankruptcy filing, and its second bankruptcy filing should likewise be dismissed. The jurisdiction of the bankruptcy court should not be "improperly manufactured" as J&J and LTL have done in this case through the divisional merger in 2021 followed by the

---

[2] Allegedly, the tortious activity that resulted in the potential talc liability ceased and therefore, there was not any ongoing activity from which the claims pool would continue to increase.

manipulation of the intercompany funding arrangements in 2023. *Bestwall LLC v. Official Comm. of Asbestos Claimants (In re Bestwall LLC)*, __F.4th __, No. 22-1127, 2023 WL 4066848, at *18 (4th Cir. June 20, 2023) (J. King, dissenting) ("any jurisdiction that the bankruptcy court was vested with under 28 U.S.C. § 1334(b) was improperly manufactured by the parties before it . . .")."). The Bankruptcy Code should not be "'manipulated by solvent, blue-chip companies faced with mass tort liability' that, '[t]hrough dubious readings of the Bankruptcy Code that Congress never intended . . . have invented elaborate loopholes enabling them to pick and choose among the debt-discharging benefits of bankruptcy without having to subject themselves to its creditor-protecting burdens.'" *Id.* (internal citation omitted). Accordingly, the Chapter 11 Case should be dismissed.

C. <u>The Bankruptcy Filing Was an Improper Litigation Tactic</u>

18. LTL filed the bankruptcy case to avoid the tort system in order to gain litigation advantage over its adversaries. Bankruptcy is not the only avenue through which talc liabilities may be resolved, but LTL has unilaterally decided that bankruptcy provides it with the best tools to control the (a) limits and scope of its liability, (b) litigation schedule, (c) manner in which liability is established, and (d) venue. This creates one-sided leverage and improperly pressures claimants to settle. LTL artificially constructed bankruptcy court jurisdiction through their pre-filing divisional merger and intercompany contractual arrangements to create litigation advantages that are afforded to LTL through its improper bankruptcy filing.

19. "[F]iling a Chapter 11 petition merely to obtain tactical litigation advantages is not within the legitimate scope of the bankruptcy laws[. Therefore], courts have typically dismissed Chapter 11 petitions under these circumstances." *See SGL Carbon Corp.*, 200 F.3d at 165; *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 608–09 (3d Cir. 2009) ("[T]he Debtors'

8

bankruptcy petitions . . . were used primarily as a litigation tactic to protect the Debtors [from] pending litigations. Thus, we . . . [dismiss] the bankruptcy petitions for lack of good faith."). "As a general rule where . . . the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." *In re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988) (quoted by *SGL Carbon Corp.*, 200 F.3d at 165).

20. The use of bankruptcy as a litigation tactic can also be demonstrated through the manner in which the Plan Support Agreements were negotiated. LTL did not participate in any of the negotiations. Negotiations were handled only by J&J and select plaintiff firms. Neither J&J nor LTL have engaged all of the case constituents. Instead, J&J negotiated with one group to artificially cap liability and then allocated amounts to various constituents without their input or any analysis into actual liability. For example, the Plan Support Agreement and the accompanying term sheet propose to cap liability to governmental entities at $400 million. This number is not based on any calculation of statutory penalties and it was not negotiated with any governmental entities nor any other party with knowledge of the claims. LTL has then used the bankruptcy process to try to force its resolution on non-consenting parties. This demonstrates an improper use of the bankruptcy process as a litigation tactic and on this basis alone, the Chapter 11 Case should be dismissed.

D.     The Potential for a Successful Reorganization Does Not Cure Bad Faith

21. Bankruptcy Code section 1112(b)(1) mandates dismissal (or conversion) upon a showing of cause. *See* 11 U.S.C. § 1112(b)(1) (" . . . the court shall convert a case . . . or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . ."). The exceptions to mandatory dismissal pursuant to Bankruptcy Code section 1112(b)(2) are

9

inapplicable because a bad faith filing cannot be cured through the filing of a plan. *See Green v. Howard Family Trust (In re Green)*, 2016 WL 6699311, at *11 (B.A.P. 9th Cir. Nov. 9, 2016) ("filing a petition in bad faith could never be justified or curable, no matter what plan Debtors could now propose.").

22. The Third Circuit recognized that LTL's lack of financial distress could not be overcome to invoke the exceptions under Bankruptcy Code section 1112(b)(2) because "no 'reasonable justification' validates [the missing requirement of financial distress]". *See LTL*, 64 F.4th at 110.

E.  The Debtor Cannot Show a Likelihood of Success

23. If the Court, notwithstanding the Debtor's lack of financial distress, seeks to invoke the exception under Bankruptcy Code section 1112(b)(2), the Debtor must establish unusual circumstances justifying retaining the case as in the best interests of creditors and a reasonable likelihood that a plan will be confirmed on a timely basis. *See* 11 U.S.C. § 1112(b)(2). The Debtor cannot satisfy either requirement. First, there are no unusual circumstances here and it is not in the best interests of the creditors for the case to remain in bankruptcy. It is a mass tort case like any other mass tort case and for the reasons set forth herein, retaining the Chapter 11 Case is not in the best interests of creditors.

24. Second, the Debtor cannot confirm a plan on a timely basis. A plan may not discriminate unfairly against a rejecting class. 11 U.S.C. § 1129(b)(1). The prohibition against unfair discrimination ensures that a dissenting class "will receive relative value equal to the value given to all other similarly situated classes." *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006) (quoting *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986)). To avoid the requirements of Bankruptcy Code section 1129, LTL has instead classified

governmental units into the same class as other talc claims. *See* Plan Article III. The Plan purports to pay all such claims 100%; however, the Plan also provides for disparate treatment of claims within the same class, which results in disparate recoveries. *See* Plan Ex. C (compare (i) cash contributions to governmental claims is $400 million less the amount of Talc Personal Injury Trust Expenses (as defined in the Plan) paid by the Reorganized Debtor (as defined in the Plan) under section 4.6 of the Plan with (ii) cash contributions to Talc Personal Injury Tort Claims (as defined in the Plan) of $10.28 billion). There is no analysis in the disclosure statement to support the Debtor's assertion that $400 million will pay all governmental unit claims in full. The potential claims of governmental units far exceed $400 million and no determination or estimation of their values has been made by this Court. Accordingly, the Plan has provided disparate treatment to claims within the same class in violation of Bankruptcy Code section 1123(a)(4). Specifically, LTL has allocated only $400 million as the capped amount available to pay all governmental unit claims while providing the remaining $8.5 billion (present value) to all other talc related claims. This does not provide for similar treatment of claims within the same class. Accordingly, LTL did not resolve its plan confirmation issues by grouping all claims into one class.

25. The plan would also fail to satisfy the best interest of creditors test of section 1129(a)(7). Reinstatement of the J&J funding agreement through an avoidance action pursued by a chapter 7 trustee would augment the value available to creditors by more than $50 billion over the $8.9 billion contemplated by the plan. The third-party releases contemplated by the Debtor present yet another obstacle to confirmation.

26. The defects in the plan roughly described in the Plan Support Agreements cannot be overcome by creditor voting results. Indeed, such a plan should not even be solicited under applicable law. A disclosure statement describing a plan that cannot be confirmed must be denied,

11

regardless of the extent of disclosure it contains. *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012). The purpose behind this rule is common sense: courts will not permit a bankruptcy estate to incur the costs of soliciting votes for a plan that — even if unanimously accepted by creditors — could never be confirmed. *See, e.g., In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) ("If, on the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation.").

F.	Equity Demands Dismissal because Value Is Not Being Maximized

27.	Bankruptcy courts "'are essentially courts of equity, and their proceedings inherently proceedings in equity.'" *Pepper v. Litton*, 308 U.S. 295, 304 (1939) (internal citations omitted). The good faith analysis is grounded in the "equitable nature of bankruptcy" and the "purposes underlying Chapter 11." *SGL Carbon Corp.*, 200 F.3d at 161-62. The Bankruptcy Code is not, however, an exercise in the "unadulterated pursuit of the debtor's interest." *Bartenwerfer v. Buckley*, 214 L. Ed. 2d 434, 143 S. Ct. 665, 675 (2023). The Bankruptcy Code balances multiple, competing interests. *Id*.

28.	Maximization of the estate for the benefit of creditors is a foundational policy. *Toibb v. Radloff*, 501 U.S. 157, 163, 111 S.Ct. 2197, 2201, 115 L.Ed.2d 145 (1991) (Chapter 11 "embodies the general Code policy of maximizing the value of the bankruptcy estate"). The policy of maximization of value for the benefit of creditors is expressed in provisions throughout the Bankruptcy Code. *See, e.g.*, 11 U.S.C. §§ 541(a) (expansive description of property of the bankruptcy estate); 542 and 543 (turnover); 544 – 550 (avoidance actions); 552 (restricting post-petition effect of security interest); 554 (abandonment of burdensome property); 1104 (appointment of a trustee for mismanagement of estate); 1112 (conversion or dismissal for

substantial and continuing loss to or diminution of estate and absence of likely rehabilitation); 1129 (confirmation requirements).

29. Maximization of value available to creditors has also grounded Supreme Court bankruptcy decisions for decades. *See Merit Management Group, LP v. FTI Consulting, Inc.*, ___ U.S. ___, 138 S.Ct. 883, 887-88 (2018) (trustee's avoidance powers maximize funds available for creditors); *Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 453 (1999) (interpreting the absolute priority rule in a manner that reconciles the twin policies of "preserving going concerns and maximizing property available to satisfy creditors"); *Toibb*, 501 U.S. at 163, 111 S.Ct. at 2201, (ruling that Chapter 11 is available to individual debtors, as well as business debtors with ongoing operations); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353, 105 S.Ct. 1986, 1993, 85 L.Ed.2d 372 (1985) (noting that it would be difficult for a trustee to maximize the value of the estate if former management controlled the attorney client privilege and used the privilege to shield transactions).

30. LTL deliberately attempted to make itself financially distressed – which is the exact opposite of furthering the bankruptcy policy and purpose of maximizing value for creditors. Viewed through the lens of this important policy, LTL's voluntary impairment does not gain it entrance to the sanctuary of the Bankruptcy Code and its extraordinary remedies. The Court should exercise its equitable powers "to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper*, 308 U.S. at 305.

### III.
### ADOPTION OF REPLY IN SUPPORT OF MOTION TO DISMISS FILED BY OFFICIAL COMMITTEE OF TALC CLAIMANTS

31. The Ad Hoc Committee adopts and incorporates by reference the Reply in Support of the Motion to Dismiss filed (or to be filed) by the Official Committee of Talc Claimants.

### IV.
### CONCLUSION

32. On the heels of dismissal of its first bankruptcy case, LTL filed a second case after orchestrating transactions to manufacture financial distress and garner perceived support for a plan capping funding at $8.9 billion, more than $50 billion less than what was available in LTL's first bankruptcy case. The Bankruptcy Code balances the many protections and advantages afforded an honest, but unfortunate debtor against the significant disruptions, attendant disadvantages, and hardship faced by creditors. By seeking the Bankruptcy Code's protections when it does not qualify for it, LTL seeks to upset that balance, and if the Court permits it to do so, the Court is denying creditors their due. That is why bankruptcy relief is limited and not available to all entities. To find otherwise is inequitable. The Bankruptcy Code is not an all-purpose tool for resolving mass tort liability, and it should not be used to provide litigation advantages or to artificially cap the liability of financially viable entities. LTL's artificial and voluntary impairment for the purpose of using the Bankruptcy Code to do exactly this is an abuse of the process and should not be condoned. For the

reasons set forth herein, and such other reasons that may be raised at a hearing on this Motion, the Debtor's Chapter 11 Case should be dismissed.

| | |
|---|---|
| Dated: June 22, 2023 | **WOMBLE BOND DICKINSON (US) LLP**<br><br>*/s/ Ericka F. Johnson*<br>Ericka F. Johnson (NJ #032162007)<br>Lisa Bittle Tancredi (admitted *pro hac vice*)<br>1313 N. Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Email: ericka.johnson@wbd-us.com<br>Email: lisa.tancredi@wbd-us.com<br><br>*Counsel for Ad Hoc Committee of States* |

WBD (US) 62474378v5