**GIBBONS P.C.**
Robert K. Malone, Esq.
David N. Crapo, Esq.
Kyle P. McEvilly, Esq.
One Gateway Center
Newark, New Jersey  07102
(973) 596-4500
rmalone@gibbonslaw.com
dcrapo@gibbonslaw.com
kmcevilly@gibbonslaw.com

*Attorneys for the States of
New Mexico and Mississippi*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge:  Michael B. Kaplan |

**THE STATE OF NEW MEXICO AND THE STATE OF MISSISSIPPI'S: (I) MEMORANDUM OF LAW IN REPLY TO DEBTOR'S OMNIBUS OPPOSITION TO MOTIONS TO DISMISS DEBTOR'S SECOND BANKRUPTCY PETITION; (II) JOINDER IN REPLIES TO DEBTOR'S OPPOSITION BY CERTAIN OTHER PARTIES; AND (III) STATEMENT IN LIEU OF OPENING ARGUMENT**

The States of New Mexico and Mississippi (collectively, "**States**"), by and through their counsel, Gibbons P.C., hereby submit this Memorandum of Law constituting: (i) their reply to the omnibus opposition ("**Opposition**") [Dkt. No. 614] of the debtor and debtor in possession herein, LTL Management LLC ("**LTL**" or "**Debtor**"), to motions to dismiss ("**Dismissal Motions**") its second bankruptcy petition filed by certain other interested parties (the "**Movants**") [Dkt. Nos. 286, 335, 346, 350, 352, 358, 379, 384, 473, 480]; (ii) their joinder in replies to the Opposition

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

3082600.1 117532-107747

filed by the Movants; and (iii) their statement in lieu of an opening statement at the hearing on the aforesaid motions to dismiss ("**Reply**"), and, in support thereof, respectfully represent as follows:[2]

## PRELIMINARY STATEMENT

LTL invites this Court, in defiance of statute, established caselaw, the appellate court's order, and any principles of equity, to welcome bankruptcy petitions filed in bad faith, by ignoring—even eliminating—the well-established requirement that they be filed in good faith. Conceding the flaws in its petition, LTL argues that it can cure any defects tainting such petition, including, apparently, its bad faith. For example, LTL points to its filed plan of reorganization ("**Plan**") and supporting disclosure statement ("**Disclosure Statement**") [Dkt. No. 525, 526], as well as its alleged progress towards reorganization, as bases for such a cure. However, LTL's reliance on its purported progress in reorganization defies applicable law. Bad faith simply cannot be cured, and a bankruptcy petition tainted with bad faith must be dismissed.

LTL also ignores the negative impact of the States' Eleventh Amendment sovereign immunity on this case, merely making oblique reference to it in the Opposition. However, to the extent LTL's successful reorganization depends on injunctive relief, LTL and the Court will have to address it. The States' sovereign immunity deprives this Court of jurisdiction to bind the States to that very injunctive relief upon which LTL will rely for its reorganization. This Court must address the impact of sovereign immunity on this case now, and not at a hearing on the confirmation of a patently unconfirmable plan.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Motion of the State of New Mexico and the State of Mississippi to Dismiss the Second Bankruptcy Petition of LTL Management LLC for Cause, Pursuant to Section 1112(B) of the United States Bankruptcy Code (11 U.S.C. §§ 101, ET SEQ.), and Joinder in Motions to Dismiss Filed by Certain Other Parties* (the "**Motion to Dismiss**") [Dkt. No. 480].

2

**BACKGROUND FACTS**

In support of their Reply, the States adopt and incorporate herein by reference the factual statements contained in their Motion to Dismiss [Dkt. No. 480] and the pleadings in support of the respective replies to the Opposition filed by the Movants.

As the States noted in their Motion to Dismiss [Dkt No. 480, ¶8], as of the Petition Date, the only "claims" the States assert against LTL are the "claims" manufactured by LTL by way of the divisional merger, a/k/a "Texas Two-Step." The States, on the other hand, assert no claims against LTL directly—only against non-debtors J&J and Holdings. The only "dealings" the States have had with LTL are in connection with its bankruptcy filings. Established only in 2021, LTL could not have engaged in the violations of the States' consumer protection statutes the States seek to enforce in their respective state court actions. In sum, J&J and Holdings remain the alleged "bad actors" against whom the States seek relief.

LTL filed the Plan and Disclosure Statement on May 10, 2023. At section 4.4 of the Disclosure Statement, LTL acknowledges the existence of the States' pre-petition consumer protection actions. Dkt. No. 526, pp. 27-28. The Plan proposes to subject the States to a channeling injunction. Claims by governmental entities like the States deemed to be related to talc claims are characterized under the plan as Governmental Action Claims. Dkt. No. 525, § 1.1.64, p. 8. The Plan provides for those claims to be paid out of a Talc Personal Injury Governmental Actions Claims Sub-Trust to be established pursuant to the Plan ("**Sub-Trust**"). *Id*., §§ 1.1.127 and 1.1.128 at p. 19 and 4.1, p. 27. The Sub-Trust will assume all liability for, *inter alia*, Government Action Claims. *Id*., §§ 4.8.1, p. 29 and 4.8.4, p. 30.

The Trust Distribution Procedures, attached as Exhibit M to the Plan, sets for the LTL Trust Distribution Procedures (the "**TDP**") for the "so-called" Talc Personal Injury Claims, which

3

include "so-called" Governmental Action Claims. Notwithstanding that the States have no claim against LTL, the TDP proposes to treat the States' consumer protection claims against J&J and Holdings as claims against LTL to be resolved as part of LTL's reorganization. Dkt. No. 525-13, Exh. M, p. 1, Art 8, pp. 36-38. Indeed, as "Governmental Holders," the States are *required* to participate in the TDP, unless the States and LTL reach an agreement on the amount of the States' claims. *Id*., § 8.1, p. 36.

Absent a pre-confirmation agreement on the amounts of their consumer protection claims, which, it is reiterated, are against J&J and Holdings, the TDP would require the States to participate in a settlement offer and negotiation process and, if that is unsuccessful, mediation. *Id*., §§ 8.2 and 8.3, pp. 37-36. If mediation fails, the TDP provides that the States can elect to go to binding arbitration or litigation—both of which would be governed by the TDP. *Id*., § 8.3, p. 37. Because neither of the States and LTL are parties to a contract requiring binding arbitration of the States' product liability claims against J&J and Holdings, the litigation would be the only option for the States. Notwithstanding that they initiated and have prosecuted their consumer protection claims against J&J and Holdings in the courts of their respective states, the TDP would now require those claims to be litigated in federal court. *Id*., at §8.5, p. 38. Additionally, notwithstanding any provisions under the respective state consumer protection statutes and/or any case law developed by either of these States, the TDP precludes any award to the States of punitive or exemplary damages despite the egregious conduct at hand. *Id*.

It has been widely reported by both J&J and various media outlets, that one component of the Plan is a limited fund of $400 million to address the governmental claims of all states Attorneys General.[3] April 18th Transcript at 199:15-18 (and the referenced PowerPoint slide); 336:9-25.

---

[3] The Debtor only refers to State AG Claims, though the $**400** million would necessarily include foreign governmental and local municipality claims.

Dkt. No. 286-4. Apparently, the $400 million is intended as a cap on such claims. *Id*. at 336:20-22; Dkt. No. 286-4. The Plan provides broad releases to non-debtors like J&J and Holdings, against whom the States hold their consumer products claims. Dkt. No. 525, §§ 1.1.81 (definition of "LTL Corporate Parties"), p. 10; 1.1.98 (definition of "Protected Party"), p. 12; 1.1.102 (definition of "Released Parties"), p. 14; and 11.3.2 ("Releases by Holders of Claims"), p. 65. The Plan proposes that, like the holders of Talc Personal Injury Claims, holders of Governmental Action Claims (presumably including the States) will be subject to the Plan's Channeling Injunction. *Id*., §11.4.1 (providing for channeling injunction), p. 66; and Exh. M, p. 1 (including Governmental Action Claims in the definition of Personal Injury Claims). Under the circumstances, it is LTL's intent to channel all Governmental Action Claims (including those of the States) into a $400 million fund for satisfaction of their claims.

## LEGAL ARGUMENT

In support of the Motion, the States adopt and incorporate herein the legal arguments contained in the pleadings in support of their respective replies to the Opposition filed by the Movants and join those replies.

A. **This Court Must Dismiss This Case If a Finding of Bad Faith is Made; It Cannot Remain Pending**.

LTL contends that it can remedy any defects related to the filing of its petition in this case. Therefore, Court has requested briefing on whether this case may continue following a finding of bad faith. According to applicable law and pure logic, the answer is no.

Section 1112(b)(1) of the Bankruptcy Code expressly *mandates* the dismissal or conversion of a bankruptcy case upon the showing of cause. *In re Hinesley Family Ltd. Partnership No. 1*, 460 B.R. 547, 552 (Bankr. D. Mont. 2011). LTL's protestations to the contrary notwithstanding, the bad faith tainting the petition in this case provides cause to dismiss it. *See*, *e.g.*, *Marshall v.*

5

*Marshall* (*In re Marshall*), 721 F.3d 1032, 1047 (9th Cir. 2013); *In re Four Wells Ltd.*, 2016 WL 1445393, at *11 (6th Cir. B.A.P. March 1, 2016) (noting that it is well settled in the Sixth Circuit that a debtor's bad faith constitutes cause for dismissal under § 11219b)(1) (citing *In re Trident Assocs. Ltd.*, 52 F.3d 127, 130 (6th Cir. 1995))); *In re Charfoos*, 979 F.2d 390, 392 (6th Cir. 1992).

A bankruptcy case may escape dismissal or conversion upon a filing of bad faith only if the bankruptcy court "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" *and* the debtor or any other party in interest meets the additional requirements set forth in 11 U.S.C. § 1121(b)(2) (emphasis added). Those requirements are:

A. a reasonable likelihood that a plan will be confirmed on a timely basis; and

B. cause for dismissing or converting a case includes the act or omission of the debtor—

   i. for which there exists a reasonable justification for the act or omission; and

   ii. that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2)(A), (B). It is LTL's burden to demonstrate that it meets those requirements. *Four Wells*, 2016 WL 1445393, at *16 ("[t]he debtor as the burden to establish that all the factual elements of § 1112(b)(2) exist"); *In re Fugitive Recovery Investigations, Inc.*, 2011 WL 2847431, at *3 (Bankr. D.P.R. July 13, 2011) (same).

LTL's attempt to demonstrate the existence of "unusual circumstances" in this case fails. Mass tort bankruptcy cases, although not common, have become more regular occurrences. One need only look to the opioid cases and the institutional child abuse cases to realize how regularly such cases are filed. Rapidly increasing judgments and new theories of recovery like those referenced by LTL are nothing new in the American legal system and have generated reams of commentary. Indeed, bankruptcy professionals have become quite skillful in addressing mass tort

6

claims. In sum, the "unusual circumstances" referenced by LTL can no longer be deemed "unusual."

Of even more importance, LTL cannot demonstrate compliance with any of the other requirements identified in section 1112(b)(2) of the Bankruptcy Code necessary to avoid dismissal or conversion of this case in which cause, in the form of bad faith, has been shown. Because it violates the States' sovereign immunity, the Plan is patently unconfirmable, and LTL's need for third-party releases and a channeling injunction precludes it from even proposing a confirmable plan let alone confirming one within a reasonable amount of time. It is, moreover, only logical that LTL's bad faith in filing its petition forecloses any reasonable justification for the filing. *See*, *e.g.*, *In re ECV Development, LLC*, 2007 WL 7540960, at *7 (9th Cir. B.A.P. June 15, 2007) (". . . we take it as axiomatic that there cannot be a reasonable justification for a bad faith filing"); *In re Green*, 2016 WL 6699311, at *11 (Bankr. D. Nev. Nov. 9, 2016) (expressly upholding the bankruptcy court's finding that "filing a petition in bad faith could never be justified . . . , no matter what plan [the debtor] could now propose"); *Hinesely Family*, *id*. (a bad faith filing cannot be reasonably justified and, therefore, renders §1112(b)(2) inapplicable); *In re Incredible Auto Sales, LLC*, 2007 WL 1100276, at *5 (Bankr. D. Mont. April 10, 2007) (same); *In re Forest Hill Funeral Home & Memorial Park—East, LLC*, 364 B.R. 808, 823 (Bankr. E.D. Okla. 2007) (finding that the conduct of the debtor's principals evidencing the bad faith of the bankruptcy filing was not reasonably justified). Because LTL's bad faith has already occurred in connection with the filing of its petition, it cannot be undone or cured, not even by the proposal of a plan proposing to pay creditors in full. *Green, id*. (expressly upholding the bankruptcy court's finding that "filing a petition in bad faith could never be . . . cured no matter what plan [the debtor] could now propose"); *Layman v. Tennessee State Bank*, 2021 WL 6425951, at *8 (E.D. Tenn. Feb. 2, 2021) (conduct

supporting a finding of a bad faith filing could not be cured); *Forest Hill Funeral Home, id.* (finding that the conduct of the debtor's principals evidencing the bad faith of the bankruptcy filing was not subject to timely cure). The manipulated "financial distress" cannot simply be ignored. The mechanism to create that "financial distress" was one of, if not the single largest, fraudulent conveyances in history. This simple transaction in and of itself is a clear *indicia* of LTL's bad faith in seeking relief under Chapter 11 before this Court. Accordingly, this Chapter 11 case must be dismissed; it cannot remain pending to afford the Debtor any more time to "work things out."

B. **This Court May Not Ignore or Delay Consideration of the Impact on the States' Eleventh Amendment Sovereign Immunity Occasioned by the Filing of the Petition in This Case and the Proposal of the Plan**.

The States' reasoning in their Motion to Dismiss amply demonstrates how this case, and particularly the Plan, occasion an affront to their Eleventh Amendment sovereign immunity. The Plan and the TDP confirm LTL's inability to propose a plan of reorganization that does not violate the States' sovereign immunity. For that reason, the States' Eleventh Amendment sovereign immunity is the "elephant in the room" precluding a finding of good faith in this case.

LTL clearly hopes this Court will ignore the States' Eleventh Amendment sovereign immunity. Indeed, the phrase, sovereign immunity, does not even appear in the Opposition; nor is the Eleventh Amendment to the Constitution referenced. The States' defense of their sovereign immunity in their Motion to Dismiss receives two insignificant references. The first is a general statement that most issues raised in the Dismissal Motions (implicitly including the States' sovereign immunity) are confirmation-related issues. The second is a footnote identifying, *inter alia*, the States' Motion to Dismiss and the pages therein on which the sovereign immunity argument is made. Dkt. No. 614, p. 60 n.74. The States' Eleventh Amendment sovereign

8

immunity cannot be simply ignored; nor can the consideration of its impact on this case be delayed as LTL wishes.

Justice Thomas' concurrence in the Supreme Court's June 15, 2023 opinion in *Lac du Flambeau Bank of Lake Superior Chippewa Indians, et al. v. Coughlin ("Coughlin")*, 2023 WL 4002952, at * 9-17 (June 15, 2023), forecloses either ignoring the States' Eleventh Amendment sovereign immunity or delaying the consideration of it until the hearing on the confirmation of the Plan. There, he reaffirms that, "the 50 States possess a *unique* form of immunity that applies of its own force in the courts of sister States, . . . *as well as those of the federal government* (emphasis added)." *Coughlin*, Slip Op. p. 1 (Thomas, J., concurring) (*citing Franchise Tax Bd. Of Cal. v. Hyatt*, 139 S.Ct. 1485, 1493-99 (2019)). "This immunity stems from the Constitution itself and belongs only to the 50 states through their ratification of the Constitution or admission to the Union on an equal footing with the original states." *Coughlin, id*., Slip Op. pp. 1-2 (*citing Alden v. Maine*, 527 U.S. 706, 713 (1999)).

Justice Thomas' reaffirmation of the crucial nature of Eleventh Amendment sovereign immunity underscores the limited scope of Congress's authority to waive the *Eleventh Amendment* sovereign immunity of the States enunciated in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) and its progeny. In *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356 (2006) ("*Katz*"), for example, the Supreme Court concluded that "[s]tates agreed in the plan of the [Constitutional] Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies'" (*id*. at 377) but that "[t]he scope of this consent was limited." *Id*. at 378. In other words, the *Katz* Court expressly did not "mean to suggest that every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause,

properly impinge on state sovereign immunity." *Id*. at 378 n.15.[4] That being the case, this Court simply must address, and may not ignore, consideration of the affront to the States' Eleventh Amendment sovereign immunity occasioned by LTL's bad faith in filing the petition in this case in order to propose a Plan channeling the resolution of the States' claims against non-debtors J&J and Holdings to a fund that is capped for all 50 states and other governmental entities at $400 million, all of which patently violate the States' Eleventh Amendment sovereign immunity.

Nor may the Court delay consideration of the States' Eleventh Amendment sovereign immunity until the hearing on the confirmation of the Plan. In that regard, the case law establishing the parameters for the review of confirmation issues at a hearing on the adequacy of a disclosure statement is instructive. Generally, confirmation-related issues may not be addressed at the disclosure hearing, but must abide the confirmation hearing. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-55 (3d Cir. 2012). However, if an objection goes to the confirmability of the plan of reorganization, it may be addressed at the disclosure hearing to avoid wasting time and effort in a futile attempt to confirm a patently unconfirmable plan. *Id*.; *In re Surma*, 504 B.R. 770, 773, 776-77 (Bankr. D.N.J. 2014).

Analogous considerations demonstrate why a determination whether LTL's affronts to the States' Eleventh Amendment sovereign immunity compel the dismissal of this must be made now and not later. If, as the States have demonstrated in this Reply and in their Motion to Dismiss, this case was filed in bad faith, it must be dismissed. The reasoning in *Green* and *Hinesley* Family— as well as basic logic—make abundantly clear that bad faith cannot be justified, it cannot be cured.

---

[4] *Coughlin* does not modify or qualify this analysis. There, the Court expressly addressed only the *common law* sovereign immunity enjoyed by Native American Tribes and did not address the Eleventh Amendment sovereign immunity the States enjoyed. *Coughlin*, 2023 WL 4002952, at *3. More to the point, *Coughlin* does not address or discuss, let alone modify or overturn, the Court's earlier opinions determining the limited scope of the waiver of Eleventh Amendment sovereign immunity in bankruptcy actions *Katz* and *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004).

Nothing in the plan solicitation and confirmation process could wipe away the taint of bad faith, even in the face of the Plan which purports to pay claims in full. *Green*, 2016 WL 6699311, at *11. Allowing this case to proceed only to have it dismissed for having been filed in bad faith at the confirmation hearing would be absurd. Substantial effort and expense would have been expended for a case that should have been dismissed at the outset. The consumer protection enforcement actions brought by the States against *non-debtors* J&J and Holdings, which have been pending for several years, would be further—and needlessly—delayed. Consequently, this Court must not delay and must consider the States' contention that this case was filed in bad case to avoid such a colossal absurdity.

## CONCLUSION

As demonstrated herein and in the States' Motion to Dismiss, this case was filed in bad faith. That bad faith cannot be cured or justified and, for that reason, this case must be dismissed. Because bad faith cannot be cured or justified, this Court must consider the affront on the States' Eleventh Amendment sovereign occasioned by LTL's filing of this case and proposal of the Plan containing provisions that violate the States Eleventh Amendment sovereign immunity. Accordingly, the States reiterate their request in their Motion to Dismiss that this case be dismissed for having been filed in bad faith.

## NOTICE

Notice of this Reply was effectuated by serving copies of the within Reply upon the following: (i) Jones Day, 2727 N. Harwood Street, Dallas, TX 75201 (<u>Attn</u>: Gregory M. Gordon, Esq., Dan B. Prieto, Esq., and Amanda S. Rush); (ii) Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, 12th Floor, New York, NY 10110 and 90 Washington Valley Road, Bedminster, NJ 07921 (<u>Attn</u>: Paul R. DeFilippo, Esq. and James N. Lawlor, Esq.); (iii) the Office of the United

States Trustee for Region, One Newark Center, Suite 2100, Newark, NJ 07102 (Attn: Jeffrey M. Sponder, Esq. and Lauren Bielskie, Esq.); (iv) Genova Burns LLC, 110 Allen Road, Suite 304, Basking Ridge, NJ 07920 (Attn: Daniel M. Stolz, Esq., Donald W. Clark, Esq., and Gregory S. Kinoian, Esq.); (v) Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: David J. Molton, Esq. and Michael S. Winograd, Esq.); and (vi) all parties having formally requested notice in these proceedings via the Court's CM/ECF System, and all other creditors via first class mail, postage pre-paid.

Dated: June 22, 2023
Newark, New Jersey

**GIBBONS P.C.**

By: /s/ *Robert K. Malone*
Robert K. Malone, Esq.
David N. Crapo, Esq.
Kyle P. McEvilly, Esq.
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
rmalone@gibbonslaw.com
dcrapo@gibbonslaw.com
kmcevilly@gibbonslaw.com

*Attorneys for the States of
New Mexico and Mississippi*