MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
Clayton L. Thompson, Esq.
cthompson@mrhfmlaw.com
Suzanne M. Ratcliffe, Esq.
sratcliffe@mrhfmlaw.com
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922

*Counsel for Mesothelioma Plaintiff Katherine Tollefson
and Certain Mesothelioma Plaintiffs*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| LTL MANAGEMENT LLC, | ) | |
| | ) | BK Case: 23-12825-MBK |
| Debtor. | ) | |

## MRHFM'S EVIDENTIARY OBJECTIONS TO DECLARATIONS SUBMITTED BY DEBTOR LTL MANAGEMENT FOR HEARING ON MOTIONS TO DISMISS

Pursuant to paragraph seven (7) of the Evidentiary Stipulation for Hearing (Dkt. 852), MRHFM objects to the Debtor's submitted Declarations because their contents are irrelevant to the ultimate issue in the case. This Court is to "start, and stay, with good faith," focusing primarily on whether LTL was in financial distress at the time it filed its petition. The Third Circuit already held that J&J's alleged "belief" that bankruptcy is the "best of all possible worlds"—expected to be repeatedly espoused in some form by several of LTL's witnesses—is ***irrelevant*** to any good faith analysis, and therefore, any dismissal decision. *See LTL Mgmt., LLC*, 64 F.4th 84, 93, 111 (3d Cir. 2023).

In addition, MRHFM lodges the following specific objections to the Declarations

submitted by the Debtor:

### 1.   Robert Wuesthoff

| Statement Objected To | Objection |
|---|---|
| **Paragraph 7**: The liability for those claims had been allocated to LTL in the 2021 Corporate Restructuring that immediately preceded the filing on October 14, 2021, of LTL's initial chapter 11 case (the "2021 Chapter 11 Case"). | Hearsay. FRE 703. Mr. Wuesthoff doesn't have personal knowledge about the liabilities nor does he have basis to claim that all liabilities reside with LTL Management, as opposed to J&J. |
| **9.** The Board's considerations concerning and its determination to file the 2021 Chapter 11 Case in an effort to resolve talc-related claims efficiently and equitably for all stakeholders were detailed in the Declaration of John K. Kim in Support of First Day Pleadings filed in the 2021 Chapter 11 Case (the "2021 First Day Declaration") and in his and my testimony elicited during the February 14–18, 2022 hearing on motions to dismiss that case. 2021 First Day Decl. [No. 21-30589, Dkt. 5 ¶¶ 31–45, 58–60], Transcript of Trial Day Two[No. 21-30589, Dkt. 1494 153:14–157:6] (Kim Testimony); Transcript of Trial Day One[No. 21-30589, Dkt. 1481 165:9–169:11, 183:13–17] (Wuesthoff testimony).<br><br>**10.**The motions to dismiss the 2021 Chapter 11 Case challenged LTL's 2021 Chapter 11 Case as having been made in bad faith. Claimants argued that LTL was an undercapitalized shell, the 2021 Corporate Restructuring harmed claimants, and the bankruptcy filing was | FRE 401 / Relevance. Statements about the subjective belief of the debtor as to what is "equitable" or "efficient" are irrelevant to the ultimate issue in the case, which is LTL's financial distress. MRHFM and its clients wholly reject the laughable notion that J&J has spent as much time and money as it has to do something that is best *for somebody else* instead of its shareholders. The Court should recognize J&J's empty platitudes for what they are—meaningless and, more importantly, irrelevant.<br><br>Moreover, the issue of whether LTL was (and is) in financial distress has been decided by the Court of Appeals. Mr. Wuesthoff's contentions about same are both improper argument, not facts at all, and barred because of *direct, binding precedent that cuts against his statements*. |

| Statement Objected To | Objection |
|---|---|
| a litigation tactic. At the same time, they asserted, in direct contradiction to their undercapitalization argument, that LTL was "wickedly solvent" and not in financial distress. *See Transcript* of Trial Day Three [No. 21-30589, Dkt. 1581 183:23]. | |
| **18.** The Board understood that the Third Circuit had ruled that LTL was not in financial distress as a consequence of the 2021 Funding Agreement entered into among LTL, Johnson & Johnson Consumer Inc. ("New JJCI"), and J&J. This ruling was unforeseen. The 2021 Funding Agreement had been entered into with the primary purpose of financially supporting and otherwise facilitating LTL's reorganization through chapter 11 proceedings. That the 2021 Funding Agreement actually defeated LTL's efforts to reorganize through chapter 11 proceedings frustrated that primary purpose and, the Board learned from counsel, that frustration imposed the material risk that the 2021 Funding Agreement was void or voidable. LTL's counsel informed me that J&J had taken the position that the 2021 Funding Agreement was void or voidable. | Because of this Court's incorrect ruling on the confidentiality of communications between and among LTL, J&J, and their lawyers, the parameters of this paragraph were not fully discoverable during discovery, and Mr. Wuesthoff should not be permitted to partially disclose the shadowy contours of what is quite obviously a cat's paw's fraudulent disposal of the 2021 Funding Agreement.<br><br>Lacks foundation. |
| **19.** Without an enforceable funding agreement or suitable replacement funding, the Board understood that LTL's ability to meet even short-term litigation costs in the tort system would be materially impaired. The Board understood this because it was fully familiar with the historical cost to defend and resolve talc claims in the tort system | FRE 401 / relevance.<br><br>Lacks foundation. Improper expert testimony re: legal conclusions. |

| Statement Objected To | Objection |
|---|---|
| as set forth in Mr. Kim's First Day Declaration in and his and my in-court testimony in the 2021 Chapter 11 Case referenced in paragraph 9 above and in Mr. Kim's First Day Declaration filed in the 2023 Chapter 11 Case. See 2021 First Day Decl. [No. 21-30589, Dkt. 5 ¶¶ 31–45] (the "2021 First Day Declaration"); Transcript of Trial Day Two[No. 21-30589, Dkt. 1494 104:8–111:24] (Kim Testimony); Transcript of Trial Day One[No. 21-30589, Dkt. 1481 179:2–180:24] (Wuesthoff testimony); Decl. of John K. Kim in Support of First Day Pleadings [No. 23-12825, Dkt. 4 ¶¶ 7, 35–45, 78–87]. Nonetheless, the Board meetings leading up to the filing of the 2023 Chapter 11 Case included reminders of the both the order of magnitude and much of the detail of those costs. | |
| **25.**LTL's and Holdco's combined cash position could support defense costs upon a return to the tort system for only a limited period of time. And given Holdco's uncertain dividend stream, the ability to fund future tort system spend would require asset sales at LTL or Holdco, which sales themselves could be challenging given Holdco's minority position in certain of its investments and its illiquidity. Further, the sales would only serve to reduce further income-generating holdings. Immediately upon return to the tort system, LTL and Holdco would encounter unavoidable and material liquidity pressure. | Irrelevant to the ultimate issue in the case, which is LTL's financial distress. LTL's officers have admitted that LTL has the same ability to pay current and future claims as it did in LTL1; it is therefore not in financial distress, and this case must be dismissed. |
| **27.**Holdco's portfolio of assets and equity interests is the product of Holdco's own | Relevance. Irrelevant to the ultimate issue in the case, which is LTL's financial |

| Statement Objected To | Objection |
|---|---|
| independent business judgments, the LTL Board has had no involvement in those judgments. And the LTL Board had no involvement in the separation from Holdco of certain assets involving the consumer business, which separation was announced years before and occurred before the Third Circuit Panel Opinion was rendered. | distress. LTL's officers have admitted that LTL has the same ability to pay current and future claims as it did in LTL1; it is therefore not in financial distress, and this case must be dismissed.<br><br>Insofar as the declarant asserts anything about HoldCo, he lacks personal knowledge to make any factual assertions.<br><br>If this statement is relevant at all, it is to show the absolute failure of LTL's board to fulfil its fiduciary duties, by throwing away its most valuable asset in order to "secure" a riskier, less valuable funding agreement. |
| **35.**As the Resolutions also reflect, the Board authorized LTL's entry into the 2023 Funding Arrangements to eliminate the material risk that the 2021 Funding Agreement had been rendered void or voidable and to assure that LTL had funding sufficient to satisfy the financial terms set out in the Plan Support Agreements. The Board believed that the terms of these agreements—the funding they secure and the resolution they support—benefitted all stakeholders, including claimants, current and future.<br><br>**37.** The Board's determination to authorize the 2023 Chapter 11 Case was based on the Board's unanimous conclusion that this filing provided the only means through which to efficiently and equitably resolve all talc claims, current and future, and that the filing was | As the Third Circuit has said, the subjective belief (or what LTL says is its stated subjective belief) about what "benefits" all stakeholders, including claimants, is not ultimately relevant here. Objection. Relevance.<br><br>Best evidence rule & hearsay. Any assertion that "tens of thousands of current claimants," through counsel, support a new bankruptcy filing must be shown via documents or through testimony from those claimants, not through double hearsay assertions of Mr. Wuesthoff. |

| Statement Objected To | Objection |
|---|---|
| in the best interest of all stakeholders, including the holders of those claims. That the filing has the support of counsel for tens of thousands of current claimants only reinforces that determination. | |

### 2.   Richard Dickinson

| Statement Objected To | Objection |
|---|---|
| **Paragraph 6**. LTL's business purpose, at formation and throughout its existence, has been to manage and to efficiently and equitably resolve all pending and future talc-related claims formerly asserted against Johnson and Johnson Consumer Inc. ("Old JJCI") and J&J in the tort system. The liability for those claims had been allocated to LTL in the 2021 Corporate Restructuring that immediately preceded the filing on October 14, 2021, of the LTL's initial chapter 11 case (the "2021 Chapter 11 Case"). | Hearsay. FRE 703. Mr. Dickinson doesn't have personal knowledge about the liabilities nor does he have basis to claim that all liabilities reside with LTL Management, as opposed to J&J. <br><br> FRE 401 / Relevance. Statements about the subjective belief of the debtor as to what is "equitable" or "efficient" are irrelevant to the ultimate  issue in the case, which is LTL's financial distress. MRHFM and its clients wholly reject the laughable notion that J&J has spent as much time and money as it has to do something that is best *for somebody else* instead of its shareholders. The Court should recognize J&J's empty platitudes for what they are—meaningless and, more importantly, irrelevant. |
| **9**. The factual statements set forth in paragraphs 11 through 37 of Mr. Wuesthoff's declaration concerning the Board's decisionto authorize the filing of LTL's second chapter 11 case on April 4, 2023 (the "2023 Chapter 11 Case") and related matters are true and accurate. I adopt the factual statements set forth in these paragraphs as my own testimony | Hearsay. Mr. Dickinson is effectively being used to launder the hearsay statements of Mr. Wuesthoff, violating the rule against hearsay. <br><br> FRE 401: relevance. |

| and incorporate them by reference as if restated here. | |
| --- | --- |
| **10**. The Board's determinations were its own. No representative of J&J participated in our meetings, and we received no contacts from representatives of J&J concerning our considerations or decisions. We made our determinations exercising our best business judgment and aware and in discharge of our fiduciary duties. | FRE 401 / Relevance. Irrelevant to the ultimate issue in the case, which is LTL's financial distress. |

### 3. *John Kim*

| Statement Objected To | Objection |
| --- | --- |
| **Paragraph 8.** LTL believes that these products, manufactured and sold by its predecessors, did not contain asbestos, were safe, and did not cause any of the harm alleged. Nonetheless, the oppressive and relentless costs of defending the meritless claims, the long latency period associated with the cancers alleged to be caused by the products, which latency period insures that claims will persist for decades to come, and the volatile and, at times, extremely large verdicts that had been rendered made the continued defense of the litigation in the tort system untenable. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **17**. While Old JJCI prevailed in most of the ovarian cancer claims brought to trial, securing unanimous defense verdicts in six of the eight cases tried in the year before the 2021 Petition Date, the cost of the litigation and risk of intermittent but extreme verdicts rendered continuing litigation for the next 50 years or more unsustainable and inequitable. The inequity stems from the fact that nearly all | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |

| Statement Objected To | Objection |
|---|---|
| ovarian cancer claimants in the tort system received nothing for their claims while very few (and counsel for those very few) received outsized, lottery like payments. The scatter of the verdicts in ovarian cases, for those cases that actually got to trial, shows the extreme variance in outcomes." | |
| **20**. While Old JJCI did settle certain talc lawsuits before the 2021 Petition Date, individual or even inventory settlements held no reasonable hope for resolving the litigation, much less resolving it equitably for all. Nor did the pendency of an MDL proceeding involving ovarian cancer claimants somehow make this practicable. This MDL cannot resolve all claims or assure equivalent treatment of claims with similar characteristics. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **21.** First, the products at issue are consumer products, and unlike MDL's involving prescription drugs or medical devices, the ability to identify actual users of the products or trace the dates of their claimed use is virtually impossible. Second, the MDL does not include mesothelioma claimants. Third, the *Daubert* rulings in the MDL did not address scientific evidence of causation of cancers other than ovarian cancers and, therefore, did not bar any evidence of other cancers. Fourth, any effort to resolve large groups of ovarian cancer claims pending in the MDL would result in claimant opt-outs, preventing a complete and final resolution of the litigation. Fifth and more broadly, neither consolidated pretrial proceedings in an MDL nor any other tort system proceedings can resolve future claims of unknown individuals who contract illnesses over long latency periods. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |

| Statement Objected To | Objection |
|---|---|
| Resolution of future claims is a feature unique to chapter 11 proceedings. Final resolution that treats all claimants equitably cannot be achieved in the MDL, in any MDL, or otherwise in the tort system. | |
| **36.** The Board also was informed that a crush of new filings likely would accompany a return to the tort system upon the dismissal of the 2021 Chapter 11 Case. That crush would include an increasing risk that going-forward talc trials would include multiple-plaintiff consolidated trials, which, in my experience, pose enhanced verdict risk and volatility. The reasons that consolidated trials enhance risk include (i) the possibility for juror confusion; (ii) information overload; (iii) the admission of evidence that would not be admissible in single-plaintiff cases; (iv) obfuscation of idiosyncratic issues of causation and use; and (v) uniform verdict forms that do not contemplate consideration of unique facts. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **43.** LTL's and Holdco's combined cash position could support defense costs upon a return to the tort system for only a limited period of time—certainly less than one year. And given Holdco's uncertain dividend stream, future tort system spend would require asset sales at LTL or Holdco, which sales themselves could be challenging given Holdco's minority position in certain of its investments and its illiquidity. And any asset sales also would reduce further income-generating holdings. Consequently, immediately upon return to the tort system, LTL and Holdco would encounter unavoidable and material liquidity pressure | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |

| Statement Objected To | Objection |
|---|---|
| **57.** Counsel for certain claimants also have critiqued the determination of the LTL Board to authorize the filing of the 2023 Chapter 11 Case within hours of this Court's dismissal of the 2021 Chapter 11 Case. But that determination reasonably and appropriately forestalled the all but certain avalanche of new case filings pent up over the pendency of the 2021 Chapter 11 case | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **58.** Based on information we now have, it appears that the number of current claims may have increased from approximately 40,000 current claims as of the filing of the 2021 Chapter 11 Case to as many 100,000 current claims now. These include new claims that have been filed in the tort system. Although the Court effectively tolled any applicable statute of limitations so that plaintiffs would not be required to file any new cases during the pendency of the 2023 Chapter 11 Case, 179 new mesothelioma cases alone have been filed since the Court limited the scope of the preliminary injunction, which is an almost 40% increase in the number of mesothelioma claims pending at the time the 2021 Chapter 11 Case was filed. | FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **59.** Resolution of these claims through a confirmed plan of reorganization consistent with the terms of the Plan Support Agreements is in the best interests of all stakeholders, including all claimants, current and future. It avoids the unnecessary cost, delay, and uncertainty of tort system claim resolution and the wildly variable outcomes that system generates: most claimants recover nothing while a fraction recover outlandish awards. Claimants with similar claims receive | FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |

| Statement Objected To | Objection |
|---|---|
| wildly divergent recoveries, ranging from zero to hundreds of millions of dollars. Given the substantial and rapidly increasing cost to defend and resolve the talc litigation, LTL will likely not have the resources to provide equivalent treatment of claims in the future. | |
| **60.** Resolution of all claims, current and future, through an appropriately funded bankruptcy trust, is the efficient and equitable alternative—and serves an unquestionably valid bankruptcy purpose. It is the alternative the LTL Board chose to pursue a second time and counsel for the substantial majority of claimants now support. | FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |

### 4. *James Murdica*

| Statement Objected To | Objection |
|---|---|
| **Paragraph 10.** [B]ased on my discussions with various plaintiff law firms and the disclosures made by plaintiff law firms in these proceedings, I understand there are approximately 100,000 current talc claims outstanding, which includes both filed and unfiled claims | FRE 401: relevance. FRE 703: hearsay. Mr. Murdica doesn't have personal knowledge about the number of current talc claims outstanding. |
| **11.** The proposed settlement was not consummated, but it was an early recognition that a global resolution of the talc litigation would need to be effectuated in a bankruptcy in order to be successful. | FRE 401: relevance. FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. Mr. Murdica's non-expert, conclusory, and self-serving opinion concerning an alleged "early recognition that a global resolution of the talc litigation would need to be effectuated in a bankruptcy in order to be successful" lacks a proper foundation. Aside from the witness not being qualified as an |

| Statement Objected To | Objection |
|---|---|
| | expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress) an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts.<br><br>FRE 1002: best evidence rule. The referenced "proposed settlement [that] was not consummated" speaks for itself. |
| **13.** In connection with seeking to resolve the talc claims against LTL and J&J, it became readily apparent to me that it would be impossible to achieve a global resolution of present and future talc claims in the tort system—whether in an MDL proceeding or otherwise—and certainly not with any real efficiency and equity. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation. Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress) an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |

| Statement Objected To | Objection |
|---|---|
| **14.** [T]he tort system does not provide any viable mechanism for resolving the claims of future claimants with latent injuries. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **17.** [B]ecause talc is a non-prescription consumer product, there is no record or proof of use as there typically is in other mass tort cases involving prescription drugs or medical devices. Therefore, there is no way to identify the pool of potential future talc claimants. | FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |

| Statement Objected To | Objection |
|---|---|
| **18.** [T]here was simply no way to resolve the future claims held by currently unidentifiable plaintiffs that may manifest an injury many years after use of talc-based JOHNSON'S® Baby Powder or Shower to Shower… | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **19.** [E]ven though a number of ovarian and gynecological cancer claims are pending in the MDL in New Jersey District Court, there was no realistic path to a global resolution of all talc claims in that MDL. MDLs—like the tort system in general—do not provide any mechanism to resolve future personal injury claims held by unidentifiable individuals. Moreover, the MDL does not include mesothelioma claims, rendering it impossible to resolve even all current talc claims in the MDL. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting |

| Statement Objected To | Objection |
|---|---|
| | foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **20.** Here, where there are tens of thousands of talc claims, even a small percentage of holdout plaintiffs would leave hundreds or thousands of claims to still be resolved. | FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **24.** [E]ven if it were feasible to achieve a global resolution of the talc cases filed in the MDL proceeding (which it is not), such resolution would not resolve all of the many talc-related litigations and claims pending in various state courts throughout the country. | FRE 401: relevance.

FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting |

| Statement Objected To | Objection |
|---|---|
| | foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **25.** [T]here are a number of additional complexities that made the prospect of settlement in the tort system untenable. Based on my extensive discussions with plaintiffs' law firms handling talc claims, there is a large number of unfiled talc claims that would not be addressed as part of any settlement in the tort system. | FRE 401: relevance.<br><br>FRE 703: hearsay. Mr. Murdica's "extensive discussions with [unnamed, unidentified] plaintiffs' law firms handling [unspecified] talc claims" are hearsay.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **30.** [T]he MDL process lacks the necessary tools to resolve mass torts like the talc litigation which involves latent diseases and a large, diffuse population of unknown future claimants. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an |

| Statement Objected To | Objection |
|---|---|
| | expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress) an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **31.** Based on my experience trying to resolve the talc litigation in the tort system, only the bankruptcy court provides a forum capable of finally resolving all current and future talc claims of all disease types, including all unknown, future claims. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress) an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **34.** While the bankruptcy court in *Aearo* granted a motion to dismiss that chapter 11 petition, the underlying personal injury claims at issue in that case did not involve a latent disease of the type at issue here which can only be resolved in bankruptcy and thereby preserve value | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, |

| Statement Objected To | Objection |
|---|---|
| for the benefit of the debtor's estate and creditors. | and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **36.** Plaintiffs' lead counsel in the MDL has likewise recognized that a global resolution of talc claims can only happen in bankruptcy. Specifically, Andrew Birchfield, of the Beasley Allen Law Firm, which is one of the lead counsel in the MDL, previously proposed a global resolution of all current and future ovarian talc claims through the *Imerys* bankruptcy, with a channeling injunction. | FRE 401: relevance. |
| **39.** One of the chief impediments to reaching a resolution has been the inherent conflicts that many of the plaintiff law firms have vis-a-vis their clients. Among other things, objectors from MDL leadership have acknowledged that they (and other similarly situated law firms) have an economic disincentive to resolve their clients' talc claims in bankruptcy because they stand to recover from the MDL common benefit fund in the tort system but would not in bankruptcy. Plaintiff law firms are also fundamentally conflicted to the extent they are seeking aberrant, one-off, large verdicts | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self- |

| Statement Objected To | Objection |
|---|---|
| notwithstanding that most plaintiffs recover nothing in the tort system. | serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **41.** Mr. Watts acknowledged to me that the dismissal of the bankruptcy case would have a negative impact on the parties' ability to negotiate and consummate a global settlement of the talc litigation. He acknowledged that a final, global resolution of the talc liability including all present and future claims was only feasible through a bankruptcy. | FRE 401: relevance.<br><br>FRE 703: hearsay. |
| **42.** This was a sentiment shared by other claimant constituencies. Indeed, in addition to Mr. Watts and the other law firms representing nearly 60,000 claimants that ultimately entered into the PSAs, the TCC also continued to negotiate for a resolution of the talc litigation in bankruptcy even after the Third Circuit issued its opinion dismissing the case. Specifically, as noted above, counsel to the TCC, David Molton of the law firm Brown Rudnick LLP, made a proposal on March 24, 2023 to settle all present and future ovarian cancer claims which could only be implemented in a bankruptcy. | FRE 401: relevance.<br><br>FRE 703: hearsay.<br><br>FRE 1002: best evidence rule.  The referenced proposal speaks for itself. |
| **43.** My negotiations with Mr. Watts and others ultimately culminated in an agreement with plaintiff law firms representing nearly 60,000 claimants regarding terms for a plan of reorganization, that, if confirmed and consummated, would fully resolve all current and future talc claims. The agreement was memorialized in a series | FRE 401: relevance.<br><br>FRE 703: hearsay.<br><br>FRE 1002: best evidence rule.  The referenced PSAs speak for themselves. |

| Statement Objected To | Objection |
|---|---|
| of PSAs, the terms of which, at this point, are supported by counsel representing nearly 60,000 claimants. A number of additional law firms have indicated to me they support the proposed plan and will recommend the proposed plan to their clients even though they have not executed a PSA. | |
| **45.** [C]ontrary to the objecting parties' efforts to mischaracterize the broad support for the Debtor's proposed plan, the supporting law firms represent a significant number of filed claims (which I understand to be on the order of approximately 16,000 claims) and also a significant number of mesothelioma claimants (Watts Guerra LLP alone represents approximately 500 mesothelioma claimants). | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts.<br><br>FRE 703: hearsay.<br><br>FRE 1002: best evidence rule.  The referenced deposition testimony of Mikal Watts speaks for itself. |
| **48.** A number of aspects of the proposed deal were based on prior negotiations that I had with other plaintiff law firms and lawyers representing talc claimants, | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion |

| Statement Objected To | Objection |
|---|---|
| including with Andrew Birchfield, of the Beasley Allen Law Firm, which acts as one of the lead counsel in the pending MDL. Specifically, in or around August 2020, Mr. Birchfield proposed to settle all current and future ovarian cancer talc claims in the *Imerys* bankruptcy for a total amount of $3.25 billion. That is less than half the amount of what LTL is proposing to pay to resolve all current and future ovarian cancer talc claims. Mr. Birchfield and other plaintiff law firms representing talc claimants in the MDL also previously proposed a payment matrix that specified how talc claims would be paid, which I largely incorporated into the terms attached to the PSA, and which also provided the basis for the terms in the proposed plan. | testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts.

FRE 703: hearsay.

FRE 1002: best evidence rule.  The referenced PSA and term sheet speaks for themselves. |
| **56.** The plaintiff law firms that have executed PSAs have committed to support the proposed plan consistent with the terms therein, and to recommend the proposed plan to their clients. | FRE 401: relevance.

FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self- |

| Statement Objected To | Objection |
|---|---|
| | serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts.<br><br>FRE 703: hearsay.<br><br>FRE 1002: best evidence rule.  The referenced PSA and term sheet speaks for themselves. |
| **57.** In my experience, and based on my prior dealings with them, when these plaintiff law firms have agreed to recommend a settlement to their clients, they have consistently lived up to their commitments and their clients have agreed to the proposed settlement being recommended | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts.<br><br>FRE 703: hearsay. |
| **58.** My confidence that the talc claimants represented by the plaintiff law firms that executed PSAs (and other claimants represented by plaintiff law firms that have indicated they also support the | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, |

| Statement Objected To | Objection |
|---|---|
| proposed plan but have not executed PSAs) will support the proposed plan is further supported by logic and common sense based on the proposed treatment of talc claims under the proposed plan, which will provide compensation to claimants, most of whom would otherwise be stuck litigating in the tort system for years, with no guarantee that they will every recover a dime. | conclusory, and self-serving opinion lacks a proper foundation. Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress) an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **59.** While the proposed plan and related documentation continue to be refined, the material terms have been resolved and agreed to by plaintiff law firms representing the majority of talc claimants. The PSAs represent significant progress towards a consensual resolution of current and future talc claims in a manner that is equitable and in the best interests of all parties, including current and future talc claimants. Based on the support of the plaintiff law firms representing the majority of claimants as expressed in the PSAs, I believe that there is a reasonable likelihood that the proposed plan would be confirmed. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation. Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress) an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts.<br><br>FRE 703: hearsay. |

| Statement Objected To | Objection |
|---|---|
| | FRE 1002: best evidence rule.  The referenced PSA and term sheet speaks for themselves. |
| **61.** The settlement with the insurers provides certainty as to the amount of lien-related private payor claims of the insurers against individuals asserting all non-mesothelioma talc personal injury claims who retained counsel before June 1, 2023. | FRE 401: relevance.

FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **67.** [A]ny contention that certain talc claims may have more merit than others is a red herring, and none of the talc claims are supported by the relevant science. | FRE 401: relevance.

FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those |

| Statement Objected To | Objection |
|---|---|
| | facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **68.** The proposed treatment and recovery of talc claims under the proposed plan is particularly equitable and reasonable when compared with the high likelihood that many, if not most, of the claims would not recover anything in the tort system. | FRE 401: relevance

FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |
| **69.** In the past decade, only 46 cases out of the approximately 40,000 pending talc cases have gone to trial. Only 39 of those 46 cases have gone to verdict, and J&J prevailed in 30 of those 39 verdicts (17 defense verdicts, 6 mistrials, 7 reversals on appeal). Plaintiffs prevailed in only 3 out of the 39 verdicts in the those talc cases. The remaining 6 cases were either resolved or are pending on appeal. | FRE 401: relevance. |
| **70.** [S]ince 2018, plaintiffs have not won a single ovarian trial. | FRE 401: relevance. |

| Statement Objected To | Objection |
|---|---|
| **71.** Mr. Birchfield has asserted the proposed settlement amount of $8.9 billion is "woefully inadequate," but the talc claimants represented by Mr. Birchfield and the Beasley Allen Law Firm have not benefited from the tort system. In this way, Beasley Allen's clients are representative of other talc claimants and reflect the likelihood that most talc claimants will not recover anything in the tort system even when they eventually are able to have their case tried. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.  Mr. Murdica's non-expert, conclusory, and self-serving opinion lacks a proper foundation.  Aside from the witness not being qualified as an expert, and his opinion lacking foundation and reliability, treating the witness as an expert would effectively render a party that has admitted ultimate facts in the case (i.e., lack of financial distress)  an (unqualified, unhelpful) expert on unnecessary opinions that counter those facts. Admitting [the witness'] self-serving opinions would turn the rules of evidence on their head, putting foundationless, hearsay-strewn opinion testimony ahead of actual facts. |

5.  *Mikal Watts*

| Statement Objected To | Objection |
|---|---|
| **Paragraph 7.** I began to evaluate talc litigation against Johnson & Johnson and its affiliates in and around 2016, when I was preparing to serve as trial counsel in connection with a talc matter brought by one of my colleagues in St. Louis, Missouri. Today, my law firm represents approximately 17,000 individuals who claim to suffer from mesothelioma, epithelial ovarian cancer, and other forms of gynecologic cancer as a result of their use of Johnson & Johnson talc products. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **10.** It is not in my law firm's interest to represent talc claims that lack merit in the | FRE 401: relevance. |

| | |
|---|---|
| tort system—particularly given that we primarily operate on a contingency fee basis. Indeed, as I have learned over a long career of complex mass tort litigation, pursuing mass tort claims is an expensive and time-consuming endeavor, sometimes costing millions of dollars through trial. | |
| **11-23** | FRE 401: relevance.   Mr. Watts' intake criteria are irrelevant to the ultimate issue in the case, which is LTL's financial distress. |
| **24.** As experienced counsel in mass tort litigation, the constituent members of the AHC of Supporting Counsel and I appreciate and have witnessed first-hand the delay and inconsistency inherent in attempting to take thousands of such lawsuits to trial—including in connection with multi-district litigations like the one now pending in federal court in New Jersey. Many clients of the AHC of Supporting Counsel have already waited years to recover. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **25.** On behalf of my clients, at or around the time the 2021 Chapter 11 Case was dismissed, I began discussions with Jim Murdica of Barnes & Thornburg LLP, counsel for Johnson & Johnson, regarding a potential settlement of the outstanding talc claims to be efficiently administered through bankruptcy. | FRE 401: relevance.<br><br>FRE 703: hearsay. |
| **26.** Specifically, together with other members of the AHC of Supporting Counsel, I conferred with Mr. Murdica and others to assess whether it would be possible to reach a fair and equitable resolution of my clients' claims in | FRE 401: relevance.<br><br>FRE 703: hearsay. |

| | |
|---|---|
| connection with a broader global settlement. | |
| **28.** When I signed the PSA, a copy of which is annexed hereto as Exhibit B, I committed to recommend to my clients the terms of a plan consistent with the PSA. I understand that seventeen (17) law firms representing more than 58,000 claimants have signed PSAs on similar terms and that none has been terminated. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **29.** Consistent with the PSA, the AHC of Supporting Counsel has since worked to negotiate and finalize a plan of reorganization that would fund at least $8.9 billion net present value to a trust for the benefit of all talc-related claims. If confirmed, such a plan would constitute the largest settlement in any asbestos bankruptcy case and one of the largest settlements of personal injury claims in U.S. history. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **30.** Through this process, the parties also reached material terms on a settlement that I believe would not only compensate my firm's clients fairly given the harm they have suffered, but would do so on a timeline that will, contrary to the prospect of a decades-long litigation in the tort system, result in the swift payment to all talc claimants. | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony. |
| **31.** To that end, during my discussions with Mr. Murdica, I insisted on terms that would require the Debtor to file a proposed plan by May 14, 2023, or as soon thereafter as was feasible. Consistent with its commitments in this regard, the Debtor submitted a proposed plan on May 15, 2023 with terms that | FRE 401: relevance.<br><br>FRE 701: foundation/lacks personal knowledge/improper lay witness opinion testimony.<br><br>FRE 703: hearsay. |

| were largely consistent with what we negotiated. | |
| --- | --- |

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD, LLC**

_____

Clayton L. Thompson, Esq.
**MAUNE RAICHLE HARTLEY
FRENCH & MUDD, LLC**
150 W. 30th Street, Suite 201
New York, NY 10001
(800) 358-5922
cthompson@mrhmflaw.com