| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo, Esq.<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq.<br>Amanda Rush, Esq.<br>2727 N. Harwood Street<br>Dallas, Texas 75201<br>Telephone: (214) 220-3939<br>Facsimile: (214) 969-5100<br>gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>asrush@jonesday.com<br>(Admitted *pro hac vice*)<br><br>*ATTORNEYS FOR DEBTOR* | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>                Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC,<br><br>                Plaintiff,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1 1000,<br><br>                Defendants. | Adv. No.: 23-01092 (MBK)<br><br>**Hearing Date and Time**:<br>June 27, 2023 at 9:00 a.m. |

### DEBTOR'S OBJECTION TO PAUL CROUCH'S MOTION TO PRECLUDE DEBTOR'S PROFFERED EXPERT TESTIMONY OF CHARLES H. MULLIN AND GREGORY K. BELL

LTL Management LLC, the debtor in the above-captioned case ("LTL" or the

"Debtor"), files this objection (the "Objection") to the *Motion to Preclude Debtor's Proffered*

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1537258609

*Expert Testimony of Charles H. Mullin and Gregory K. Bell* [Dkt. 875; Adv. Dkt. 191] (the "Motion") filed by Paul Crouch (the "Movant"); and *MRHFM's Plaintiffs' Joinder to Paul Crouch's Motion to Preclude Testimony of Charles H. Mullin and Gregory K. Bell and Objection to Proffered Expert Testimony of Dr. Mullin* [Dkt. 903] filed by Maune Raichle Hartley French & Mudd LLC.  In support of this Objection, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

The Motion seeks to preclude – before the hearing – certain opinions from LTL's expert economists, Dr. Mullin and Dr. Bell, who have provided expert reports on LTL's talc litigation costs and LTL's financial distress, respectively.  The Motion challenges only whether these experts' opinions fit the facts and would help the Court as factfinder; it does not contest the experts' qualifications, nor the reliability of their methodologies.

As a threshold matter, the Motion should be denied without prejudice because it makes no sense to consider these matters pretrial in a bench proceeding, where the Court acts as factfinder.  Instead, the Court should follow its usual practice of assessing the admissibility of expert opinions in the full context of the experts' testimony on direct and cross-examination.

If the Court does consider the Motion now, it should be denied.  The expert opinions of economists Dr. Mullin and Dr. Bell are highly relevant to the contested issues of the Debtor's financial distress on the date of its bankruptcy filing and its valid reorganizational purpose, among others.  They fit the facts of the case.  And they would be helpful to the Court's understanding of the questions in dispute.  Accordingly, they are admissible under Federal Rule of Evidence 702 and Daubert.

Nothing in the scattershot arguments Movant makes provides a reason to hold otherwise:

<u>First</u>, Movant argues that Dr. Mullin should not be allowed to compare the costs and inefficiencies of litigating talc claims in the tort system with the efficiency and finality of resolving the claims in bankruptcy.  But that comparison is relevant and fits, both because it brings into sharper focus the costs of litigating talc claims in the tort system, and because it bears directly on Debtor's valid reorganizational purpose and on other allegations made in the motions to dismiss that the Debtor will defend at the hearing.

<u>Second</u>, Movant argues that the expert opinions are, in Movant's erroneous view, fatally in conflict with the testimony of Debtor's officers that LTL was not insolvent when it filed for bankruptcy.  But this argument fails because Movant has mistakenly conflated financial distress with insolvency, when they are not the same thing.  A solvent debtor that is in financial distress can avail itself of bankruptcy, as the Third Circuit recognizes.

<u>Third</u>, Movant argues that the Court should exclude the expert opinions that include in LTL's talc litigation costs the amounts by which LTL has indemnified Johnson & Johnson ("<u>J&J</u>") and other corporate affiliates.  Movant disagrees with LTL's position on its indemnity obligations.  But that disagreement about the underlying assumptions of the experts' opinions is a matter for cross-examination, not for pretrial exclusion of the testimony.

<u>Fourth</u>, Movant argues that Dr. Bell should not be allowed to give his opinion on how Johnson & Johnson Holdco (NA) Inc.'s ("<u>Holdco</u>") circumstances affect the Debtor's financial distress.  But Dr. Bell's focus is properly on the Debtor's condition as affected by its Holdco source of funding.  Again conflating financial distress with insolvency, Movant also disagrees with the expert's conclusion of financial distress based on maximum litigation liabilities and minimum funding numbers.  But Movant's disagreement with the experts'

conclusions, and with whether these conclusions follow from the underlying facts and data that the experts have considered, is a matter for cross-examination, not exclusion.

<u>Finally</u>, Movant argues that Dr. Bell's and Dr. Mullin's opinions must be excluded as speculative because they are derived from a series of hypothetical scenarios that demonstrate the range of LTL's costs for talc litigation and the factors that impact LTL's access to funding. But Movant does not suggest that this analysis is based on any unreliable economic methodology. Movant merely disagrees with the conclusions that the experts draw from their economic scenario analysis – again a matter for cross-examination. Movant has provided no reason to preclude this testimony on the key contested issue of LTL's financial distress and the factors that demonstrate LTL's condition on April 4, 2023.

None of Movant's arguments for precluding expert testimony can withstand scrutiny. For these reasons, and the others set forth below, the Motion should be denied.

## **OBJECTION**

**I.   BECAUSE THE COURT CAN DECIDE THE ADMISSIBILITY OF EXPERT TESTIMONY AT THE HEARING, IT NEED NOT CONSIDER THIS PREHEARING MOTION TO EXCLUDE.**

1. As this Court recognized in the Debtor's prior chapter 11 case (the "<u>2021 Chapter 11 Case</u>"), pretrial motions to exclude expert testimony serve no useful purpose when the Court, acting as the factfinder, can consider such challenges in the full context of the expert's direct and cross-examination at the hearing on the motions to dismiss. <u>See</u> Feb. 10, 2022 Hr'g Tr., <u>In re LTL Mgmt LLC</u>, No. 21-30589 (MBK), Dkt. 1464 (Bankr. D.N.J.) (the "<u>Transcript</u>"), 3-4.

2. This Court quoted Judge Walrath's <u>In re Tropicana</u> decision: "[t]he trial is a bench trial, not before a jury, and therefore exclusion of testimony on <u>Daubert</u> grounds now, before the Court has had the chance to evaluate the direct (and cross) examination of the expert

witness, is not the best way to assess the reliability of the expert's opinion." In re Tropicana Ent., LLC, 613 B.R. 587, 594 (Bankr. D. Del. 2020); see also Tr. 4. Rather, such issues as the "fit" of expert testimony "'will best be served and 'resolved at trial rather than now.'" Tr. 4 (quoting In re Tropicana, 613 B.R. at 594-95).

3. In a bench trial, the Court can simply exclude from consideration any evidence it deems inadmissible, usually obviating the need for motions in limine:

> [T]his is a bench trial, making any motion in limine asinine on its face. Motions in limine are intended to prevent allegedly prejudicial evidence from being so much as whispered before a jury prior to obtaining the Court's permission to broach the topic. In a bench trial, such procedures are unnecessary, as the Court can and does readily exclude from its consideration inappropriate evidence of whatever ilk.

Cramer v. Sabine Transp. Co., 141 F. Supp. 2d 727, 733 (S.D. Tex. 2001); see also Tr. 3.

4. The Third Circuit also recognizes that, in a bench trial, courts have leeway "whether or when" to ask for special briefing and may "conditionally admit the expert testimony subject to a later Rule 702 determination." UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 833 (3d Cir. 2020) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999)). So long as the court makes a Rule 702 assessment, "'the judge who becomes the factfinder as well as the gatekeeper must be given great deference by this Court[ ] and ... should not be required to waste judicial time.'" Id. (quoting In re Unisys Sav. Plan Litig., 173 F.3d 145, 155-58 (3d Cir. 1999)).

5. Here, the Court should follow its usual practice and deny the Motion without prejudice to consider any expert challenges raised at the hearing on the motions to dismiss.

## II. THE CHALLENGED TESTIMONY OF LTL'S EXPERTS IS IN ANY EVENT PROPERLY ADMISSIBLE.

### A. Expert Testimony Is Admissible under Rule 702 and Daubert When It Fits the Facts, Making the Expert Opinion Relevant and Helpful to the Court.

6. Federal Rule of Evidence 702 governs the admissibility of expert testimony, providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

7. To admit expert testimony, "a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." UGI, 949 F.3d at 832 (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993)).

8. The Motion here challenges LTL's experts' opinion only on "fit," the third Daubert ground, under which the court asks whether the expert opinion "'will help the trier of fact to understand the evidence or to determine a fact in issue.'" UGI, 949 F.3d at 835 (citing

Fed. R. Evid. 702(a) and Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 81 (3d Cir. 2017)). "This condition goes primarily to relevance." Daubert, 509 U.S. at 591.

9. Here, all of the challenged expert opinions meet the Daubert "fit" standard because those opinions are relevant to help the Court understand the evidence of LTL's good faith bankruptcy filing, including, among other things, the facts of LTL's financial distress and of its valid reorganizational purpose in bankruptcy.

**B.  Dr. Mullin's Opinions Comparing the Economic Efficiency of Bankruptcy in Resolving Tort Claims with the Inefficiency and Uncertainties of Litigating Such Claims Are Relevant and Helpful.**

10. Movant challenges portions of Dr. Mullin's opinion that explain how bankruptcy can facilitate an efficient and equitable resolution of talc claims, offering economic advantages over litigating such claims outside of bankruptcy. That expert opinion is highly relevant to the Debtor's good faith here and therefore is admissible.[2]

11. As LTL explains in detail in its omnibus objection to the motions to dismiss, LTL commenced this case to equitably and efficiently resolve current and future talc claims through confirmation of a claimant-supported chapter 11 plan of reorganization and the establishment of a trust that will provide timely compensation to current claimants while protecting the right of future claimants to receive equivalent recoveries.[3]

12. Movant and others representing a minority of talc claimants, however, contend that LTL acted in bad faith and was not in financial distress. Some have also argued that

---

[2]  Movant has challenged (1) Expert Report of Gregory K. Bell, Ph.D., dated June 7, 2023, marked as Ex. 66 for the hearing, (2) Expert Report of Charles H. Mullin, Ph.D., dated June 7, 2023, marked as Ex. 64 for the hearing, and (3) Rebuttal Expert Report of Charles H. Mullin, Ph.D., dated June 14, 2023, marked as Ex. 65 for the hearing. On June 20, 2023, Dr. Bell filed a supplemental report, marked as Ex. 67 for the hearing, which the Motion references in a footnote.

[3]  See Debtor's Omnibus Obj. to Mots. to Dismiss Chapter 11 Case [Dkt. 614] (the "Omnibus Objection"), 1-2.

-7-

LTL's bankruptcy filing lacked a valid reorganizational purpose or was done to hinder litigation. This Court will decide these contested factual matters after considering the record developed at the hearing.

13. LTL's costs of defending talc claims in tort litigation outside of bankruptcy, on which Dr. Mullin opines, are highly relevant to LTL's financial distress. Both the Third Circuit and this Court have noted the relevance of this factor. See In re LTL Mgmt., 64 F.4th 84, 100 (3d Cir. 2023) ("Whether financial distress exists depends on the underlying basic facts, such as the debtor's ability to pay its current debts, and inferred facts, such as projections of how much pending and future liabilities (like litigation) could cost in the future."); In re LTL Mgmt., LLC, No. 23-12825 (MBK), 2023 WL 3136666, at *8 (Bankr. D.N.J. Apr. 27, 2023) (considering how the "increased volume of claims" and "increased floor of debt" impact the financial distress of the Debtor).

14. Dr. Mullin also compares the inefficiencies and uncertainties of ongoing talc litigation with the efficiencies and finality of resolving talc claims in bankruptcy – for example, bankruptcy's superior capability to provide for future claimants under a section 524(g) trust. Dr. Mullin's comparative opinions, like his other expert opinions evaluating the cost to LTL of continued litigation in the tort system, are highly relevant to the contested matters here. They will help the Court understand the costs, inefficiencies, and uncertainties of tort litigation of talc claims – including in multidistrict litigation – by contrasting them with the economic value, efficiencies, and finality of a bankruptcy resolution.

15. Not only do Dr. Mullin's comparative opinions bear directly on the question of financial distress, but they also go to other disputed questions, such as LTL's valid reorganizational purpose; whether LTL can confirm a plan; whether LTL commenced this

-8-

bankruptcy as an abusive litigation tactic; and whether any acts or omissions by LTL were reasonably justified, considering that a resolution in bankruptcy is optimal. Omnibus Obj. 58-60, 61-62, 65-68.

16. If there were any doubt, relevancy is confirmed by the fact that the parties who filed motions to dismiss the above-captioned case and related joinders offered their own expert opinions on multidistrict litigation as a vehicle for litigation of talc claims.[4]

### C. The Expert Economist Opinions on LTL's Financial Distress Are Relevant, Fit the Facts, and Are Not Inconsistent with the Testimony of LTL's Officers.

17. Movant next argues that Dr. Bell and Dr. Mullin cannot conclude that LTL was in financial distress at the time of its bankruptcy filing, when LTL's officers have testified that the company was able to meet its liabilities as they came due and had the same ability to fund its talc liabilities under the restructured funding agreements put in place in 2023 as under the original funding agreements. But Movant conflates financial distress with insolvency. They are not the same thing.

18. Insolvency is not the standard for a debtor to file for bankruptcy. As the Third Circuit has held, the debtor need only be in financial distress. "To say, for example, that a debtor must be in financial distress is not to say it must necessarily be insolvent. [T]he Code conspicuously does not contain any particular insolvency requirement." LTL Mgmt., 64 F.4th at

---

[4] Arguing against Dr. Mullin's comparative opinions, the Motion also discusses at length the historical attempts to manage asbestos litigation, selectively quoting from some of the related caselaw. All of that is beside the point. None of the cases Movant cites provides a reason to exclude Dr. Mullin's challenged opinions. And if Movant means to suggest that the Third Circuit has rejected asbestos bankruptcy in general or the legitimacy of section 524(g) trusts in particular, Movant is mistaken. See e.g., LTL Mgmt., 64 F.4th at 98 (recognizing that section 524(g) allows a debtor "to establish, in a plan of reorganization, a trust for the benefit of current and future claimants against which an injunction channels all asbestos litigation."); In re Fed.-Mogul Glob. Inc., 684 F.3d 355, 362 (3d Cir. 2012) ("[O]bservers have noted the trusts' effectiveness in remedying some of the intractable pathologies of asbestos litigation, especially given the continued lack of a viable alternative providing a just and comprehensive resolution.").

102. See also, e.g., In re Mid-Valley, Inc., 305 B.R. 425, 429-31 (Bankr.W.D. Pa. 2004) ("fact of solvency does not require a finding that the bankruptcy filing was in bad faith").

19. The Third Circuit has confirmed that financial distress takes into account all relevant facts and circumstances. LTL Mgmt., 64 F.4th at 100 ("Whether financial distress exists depends on the underlying basic facts . . . and inferred facts"). The court did not attempt to "predict all forms of financial difficulties that may in some cases justify a debtor's presence in Chapter 11." Id. at 102. Instead, "[w]hat we can do, case-by-case, is consider all relevant facts in light of the purposes of the Code." Id.[5]

20. Applying the Third Circuit standard here, the Court should consider all relevant facts in making a determination of financial distress. The challenged expert opinions are highly relevant to that determination. Dr. Mullin has opined on the extent of LTL's talc liabilities, and Dr. Bell has concluded that LTL was in financial distress on April 4, 2023, taking into account, among other factors, Dr. Mullin's opinions, LTL's operating cash flows, and Holdco's circumstances negatively impacting LTL's ability to obtain timely and sufficient funding under the 2023 Funding Agreement. There is no difficulty with the "fit" of these opinions to the facts of this case. Nor are they inconsistent with the testimony of LTL's officers. Indeed, Dr. Bell agrees that LTL is currently solvent from a balance sheet perspective, but he goes on to conclude, based on his detailed economic analysis of numerous factors, that LTL was nonetheless in financial distress on the date of its bankruptcy filing.

21. Movant makes another erroneous argument: that the Court cannot consider the opinion of LTL's experts because LTL did not make a written analysis of its financial distress before its bankruptcy filing. But the Bankruptcy Code imposes no such

---

[5] For a full discussion of the financial-distress standard, see Omnibus Objection, 2, 28-42.

pre-filing requirement on a debtor in financial distress. After Movant and others filed motions to dismiss alleging that LTL had acted in bad faith, LTL provided expert economic opinions analyzing the factual bases for LTL's financial distress.

22. And indeed, this Court anticipated just such a development of the record in its April 27 Preliminary Injunction Order, which expected a more detailed factual record on the issue of financial distress, including the impact of such changes as an "increased volume of [talc] claims" and an "increased floor for the Debtor's talc liability." See In re LTL Mgmt., LLC, 2023 WL 3136666, at *8. It is hardly surprising, and certainly not improper, that the Debtor has provided that detailed factual record, including the opinions of expert economists.

**D.    Expert Opinion on the Net Present Value of LTL's Talc Liability and Requirements to Resolve Talc Claims, Including Indemnification Obligation, Is Relevant and Fits the Facts; Movant's Disagreement with the Experts' Underlying Assumptions Is Not a Reason to Exclude Expert Testimony.**

23. Movant disagrees with the Debtor on whether LTL is required to indemnify J&J and other corporate affiliates for talc liabilities. But that disagreement is not a reason to exclude the expert testimony on this subject. Rather, such disagreements about underlying assumptions are matters for cross-examination.

24. To begin with, LTL is right about its indemnity obligations, and Movant is wrong. LTL is obligated to indemnify J&J for its post-1979 liability, and it is therefore appropriate for the expert testimony to relate to the total liability of LTL, J&J, and their corporate affiliates, rather than only LTL's liability. LTL extensively discussed its indemnity obligations in prior briefing. See *Debtor's Mot. (I) to Extend and Modify the Prelim. Inj. Order and (II) for Confirmation That Successor Liability Actions Are Subject to the Automatic Stay* [Adv. Pro. No. 23-1092, Dkt. 163], 32-41. LTL's obligation to indemnify J&J is clear based on (1) the provisions of the 1979 Agreement; (2) the circumstances and course of performance

-11-

between J&J and Johnson & Johnson Consumer Inc.; and (3) the indemnification provisions in the merger support agreement entered into in connection with the 2021 Corporate Restructuring. Id.

25. Furthermore, disagreement about underlying assumptions that an expert makes is no reason to preclude expert testimony. See Wesco Ins. Co. v. Ridge Tool Co., 2022 WL 17253780, at *6 (D.N.J. July 29, 2022) ("[A]n expert may base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury.") (internal citations omitted); Kemly v. Werner Co., 151 F. Supp. 3d 496, 503-4 (D.N.J. 2015) (expert opinion admissible as "the burden of exploring the facts and assumptions underlying the testimony of an expert witness" is placed "on opposing counsel during cross-examination"); Ford v. Cnty. of Hudson, 2014 WL 2039987, at *5 (D.N.J. May 16, 2014) ("Without question, much of the material [the expert] reviewed contains disputed facts, but that is material for cross-examination, not exclusion of his testimony."); Heller v. Aftab, 2008 WL 1138937, at *1 (D.N.J. Oct. 15, 2008) (ruling that the expert testimony should not be precluded, and the expert's "conclusion may be attacked on cross-examination for reasons related to the arguments . . . regarding his assumptions and methods").

26. Movant can cross examine the experts on how they calculated the total talc liability. But the points Movant makes do not go to admissibility and are not a valid reason to exclude the expert testimony.

### E. LTL's Economic Experts Properly Considered How Holdco's Circumstances Impact LTL's Own Cash Flows and Therefore LTL's Financial Distress.

27. Movant also seeks to exclude Dr. Bell's analysis and conclusion that LTL was in financial distress on April 4, 2023 because Dr. Bell used certain circumstances of Holdco's, including its material valuation and operating cash flows, as inputs, together with

LTL's own operating cash flows, to determine negative impacts on LTL's ability to obtain timely and sufficient funding under the 2023 Funding Agreement. Based on this analysis, Dr. Bell concluded that LTL was in financial distress as of April 4, 2023.

28. To the extent that Movant mischaracterizes Dr. Bell's analysis as determining Holdco's financial distress, not LTL's, Movant has misunderstood Dr. Bell's report. Dr. Bell focused on the financial distress of the Debtor, LTL, just as the Third Circuit has instructed. See In re LTL Mgmt., 64 F.4th at 105-106 (court must "understand the makeup of LTL's financial rights and obligations that, in turn, dictate its financial condition."). Id. at 105. And so expert testimony evaluating LTL's rights and obligations is relevant, fits the case, and is helpful to the Court's understanding, just as Rule 702 and Daubert require.

29. Movant also seeks to exclude Dr. Bell's analysis because Movant disagrees with Dr. Bell's conclusion of financial distress. Movant argues that the minimum value from forced liquidation of Holdco exceeds LTL's maximum total liability, in Movant's view precluding Dr. Bell's conclusion. But here again, Movant has improperly conflated insolvency and financial distress, contrary to Third Circuit precedent. See LTL Mgmt., 64 F.4th at 102 (financial distress considers all relevant facts in light of the purposes of the Bankruptcy Code, which "does not contain any particular insolvency requirement."). In any event, Dr. Bell's expert opinions are relevant and admissible. Movant is free to cross examine Dr. Bell and then make legal arguments.

30. To the extent that Movant merely disagrees with Dr. Bell's analysis, taken together with Dr. Mullin's, or with Dr. Bell's conclusion of LTL's financial distress, that is a matter for cross-examination of these experts, not before-the-fact exclusion of their opinions.

### F. Movant's Disagreement with Dr. Bell's Conclusion on LTL's Financial Distress Is Not a Reason to Exclude His Opinions

31. Movant's final argument for exclusion depends on two assertions—both of them wrong. First, Movant repeats its assertion that the minimum value available to LTL under the funding agreement exceeds the maximum cost of LTL's talc liabilities in the tort system, arguing that the percentage of Dr. Bell's hypothetical scenarios in which LTL had sufficient means to meet its tort-system obligations precludes Dr. Bell's conclusion of financial distress. Here again, Movant mistakenly equates financial distress with insolvency. But whatever their merit, Movant's points are at best subjects for cross-examination. They do not justify exclusion of Dr. Bell's expert opinions.

32. Second, Movant criticizes Dr. Mullin and Dr. Bell for using hypothetical scenarios to evaluate LTL's talc liability and to assess circumstances that impact LTL's funding, calling the scenarios "speculative." But the expert reports thoroughly explain the range of scenarios presented, what they cover, and how the experts use them. Movant has not challenged these scenarios as improper methodologies for economic experts to rely on. Nor has Movant shown that the scenarios would not be helpful to this Court's understanding of "all relevant facts" on financial distress, "in light of the purposes of the Code," as the Third Circuit instructs. See LTL Mgmt., 64 F.4th at 102 (declining to "predict all forms of financial difficulties that may in some cases justify a debtor's presence in Chapter 11"). At bottom, Movant merely disagrees with Dr. Bell's conclusion—based in part on these scenarios—of LTL's financial distress on April 4, 2023. That disagreement is a matter for Movant's cross-examination; it is not grounds for exclusion of relevant expert opinion.

### CONCLUSION

For all of the foregoing reasons, the Motion should be denied.

| | |
|---|---|
| Dated: June 26, 2023 | **WOLLMUTH MAHER & DEUTSCH LLP** |
| | */s/ Paul R. DeFilippo* |
| | Paul R. DeFilippo, Esq. |
| | James N. Lawlor, Esq. |
| | Joseph F. Pacelli, Esq. (admitted *pro hac vice*) |
| | 500 Fifth Avenue |
| | New York, New York 10110 |
| | Telephone: (212) 382-3300 |
| | Facsimile: (212) 382-0050 |
| | pdefilippo@wmd-law.com |
| | jlawlor@wmd-law.com |
| | jpacelli@wmd-law.com |
| | |
| | **JONES DAY** |
| | Gregory M. Gordon, Esq. |
| | Brad B. Erens, Esq. |
| | Dan B. Prieto, Esq. |
| | Amanda Rush, Esq. |
| | 2727 N. Harwood Street |
| | Dallas, Texas 75201 |
| | Telephone: (214) 220-3939 |
| | Facsimile: (214) 969-5100 |
| | gmgordon@jonesday.com |
| | bberens@jonesday.com |
| | dbprieto@jonesday.com |
| | asrush@jonesday.com |
| | (Admitted *pro hac vice*) |
| | |
| | *ATTORNEYS FOR DEBTOR* |

NAI-1537258609v9