**WHITE & CASE**

June 26, 2023

Honorable Michael B. Kaplan
U.S. Bankruptcy Court for the District of New Jersey
Clarkson S. Fisher U.S. Courthouse
402 East State Street, Courtroom #8
Trenton, New Jersey 08608

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

whitecase.com

**Re:    In re LTL Management LLC, No. 23-12825 (MBK)**

Dear Judge Kaplan:

We are counsel to Johnson & Johnson ("J&J") and Johnson & Johnson Holdco (NA) Inc. ("Holdco") (collectively, the "J&J Parties"), and we write in response to the letter submitted by the Official Committee of Talc Claimants (the "TCC") today regarding the TCC's purported objections to the *Declaration of James Murdica* (the "Declaration") that will serve as Mr. Murdica's direct testimony for the motion to dismiss trial. While the J&J Parties will be prepared to address the TCC's specific objections with the Court tomorrow as necessary, we write to provide a general response to the TCC's unfounded objections.

As the Court will recall from the Preliminary Injunction hearing that took place this April, Mr. Murdica serves as "settlement counsel" to J&J in connection with seeking resolution of tort claims against J&J, including the talc claims filed against J&J and its affiliates. He also played a central role negotiating the Plan Support Agreements ("PSAs") in these proceedings. *See* Decl. ¶¶ 6, 7, 11-13, 37-60. On June 22, 2023, Mr. Murdica submitted his Declaration as his direct testimony pursuant to the *Joint Evidentiary Stipulation for Hearing on the Motions to Dismiss Debtor's Bankruptcy Case* [Dkt. No. 852]. The TCC's objections to his testimony—submitted on the literal eve of trial (four days after the Declaration was provided to the TCC) and absent any attempt to meet-and-confer—are without merit.

*First,* Mr. Murdica's testimony regarding his personal experience seeking to negotiate the resolution of talc claims filed against J&J and its affiliates in the tort system and in these bankruptcy proceedings is well within his purview as a fact witness pursuant to Rule 602 of the Federal Rules of Evidence ("FRE"). He is also permitted to share his views regarding the relative ability to resolve all current and future talc claims in those forums pursuant to FRE 701. As outside counsel to J&J since 2004, Mr. Murdica has engaged in significant efforts to resolve mass tort actions including the talc litigation in the tort system, and has also been at the center of negotiating a comprehensive resolution of the talc litigation in these bankruptcy proceedings including with respect to the negotiation of the PSAs. Decl. ¶¶ 6, 7, 11-13, 26, 37-60. Mr. Murdica clearly identifies this extensive personal experience as the basis for his testimony. Indeed, he explains in the Declaration that "in *[his] efforts* to resolve the talc liability in the tort system, there was simply no way to resolve the future claims held by currently unidentifiable plaintiffs," and "*based on [his] experience* trying to resolve the talc litigation in the tort system, only the bankruptcy court provides

WHITE & CASE

Hon. Michael B. Kaplan
June 26, 2023

a forum capable of finally resolving all current and future talc claims." Decl. ¶¶ 12, 18, 31. (emphasis added). Accordingly, his testimony about the potential resolution of the talc litigation in different forums is specifically within his personal knowledge and not speculative. *See* Fed. R. Evid. 602; *Heyman v. CitiMortgage, Inc.*, No. 14-1680-KM-MAH, 2019 U.S. Dist. LEXIS 128238, at *39 (D.N.J. June 27, 2019) ("Personal knowledge for purposes of Federal Rule of Evidence 602 may consist of what the witness thinks he knows from personal perception, and only requires that the witness who testifies to a fact . . . actually observed the fact.").

Mr. Murdica may also properly offer his views based on his personal knowledge and perception as lay opinion under FRE 701. It is well established that a "lay witness in a federal court proceeding is permitted under Fed. R. Evid. 701 to offer an opinion based on relevant historical or narrative facts that the witness has perceived." *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980) (recognizing that courts favor the admission of opinion testimony from fact witnesses provided it is well founded on personal knowledge and susceptible to specific cross-examination). Lay witnesses are permitted to offer opinions where the factual predicate of the testimony is within the witness's perception. Here, the clear factual predicate of Mr. Murdica's testimony and opinions about the tort system and bankruptcy court is well within his own experience seeking to negotiate the resolution of talc claims in both forums, and thus his testimony is wholly appropriate. *See Eisenberg v. Gagnon,* 766 F.2d 770, 781 (3d Cir. 1985) (allowing lawyer who specialized in business litigation and securities law to offer lay opinion testimony about what information should have been included in a private offering memorandum based on his personal knowledge of the documents); *United States v. DeMuro*, 677 F.3d 550, 561-62 (3d Cir. 2012) (allowing IRS enrolled agent with tax expertise to offer lay opinion testimony about tax consequences based on his experience in reading IRS account statements and the application of simple mathematical concepts).

*Second*, Mr. Murdica's testimony regarding his prior efforts to settle talc claims is also proper. FRE 408 prohibits the admission of evidence of settlement negotiations only in the limited circumstances where it is offered "to prove or disprove the validity or amount of a disputed claim," or "to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a); *Palmer v. Enhanced Recovery Co. LLC*, No. 16-3559, 2017 U.S. Dist. LEXIS 18338 at *14 (E.D. Pa. Feb. 9, 2017) (recognizing that introduction of settlement negotiations into evidence is only prohibited by FRE 408 if the negotiations are introduced for a particular purpose "such as showing the amount of a claim, or to prove wrongdoing or liability."). Neither is at play here. The law is also clear that evidence of settlement negotiations may be admitted for other purposes, such as demonstrating the intent of parties to enter into an agreement. *West Palm Beach Hotel, LLC v. Atlanta Underground, LLC*, 626 Fed. Appx. 37, 43 n.5 (3d Cir. 2015) (evidence of settlement negotiations were properly admitted into evidence where they were brought in to show the good faith of the seller). Here, Mr. Murdica's testimony regarding his prior negotiations with plaintiff law firms to settle talc claims is not offered for any prohibited purpose, but rather to provide relevant context for the Debtor's proposed plan and also demonstrate that bankruptcy court is the only forum that can provide a global resolution of the talc litigation. Decl. ¶ 35; *see also id*. ¶ 42. It is also telling that the subject of Mr. Murdica's testimony was covered in detail in multiple depositions, where there was extensive testimony regarding these same topics. Indeed, Mr. Murdica refers to various



Hon. Michael B. Kaplan
June 26, 2023

admissions made by Mr. Birchfield in his deposition regarding the very settlement discussions which the TCC belatedly seeks to preclude.  Decl. ¶¶ 36, 48, 51.

*Third,* the Declaration does not include any inadmissible hearsay.  The TCC protests that Mr. Murdica's testimony regarding the plaintiff law firms that have indicated support for the Debtor's proposed plan (Decl. ¶ 43) and prior acknowledgements that a global resolution is only available in bankruptcy (Decl. ¶ 41) are hearsay.  However, these portions of the Declaration do not include out-of-court statements offered to prove the truth of the matter.  Fed. R. Evid. 801(c).  Rather, the testimony reflects Mr. Murdica's understanding and state of mind with respect to the support for the Debtor's plan and the unique resolution of the talc litigation only available in bankruptcy.  *See United States v. Greenspan*, 923 F.3d 138, 148 (3d Cir. 2019) ("A statement is not hearsay unless a party offers [it] in evidence to prove the truth of the matter asserted.").  Moreover, much of the testimony to which the TCC now objects is testimony that counsel for the TCC itself elicited from Mr. Murdica during his deposition.  *See, e.g.,* Murdica Dep. Tr., May 30, 2023, at 34:10-36:13.

*Fourth,* the TCC's other scattershot objections are equally without merit.  The TCC objects to many portions of Mr. Murdica's testimony as "argumentative," but there is no basis to preclude Mr. Murdica from testifying regarding highly relevant topics based on his personal knowledge just because the TCC may not like his testimony.  *See Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir. 1980) (noting that FRE 403 "does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case.").  Similarly, the TCC's invocation of FRE 1002 and the best-evidence rule is not a basis to preclude Mr. Muridca's testimony.  *See United States v. Miller,* 248 Fed. Appx. 426, 429 (3d Cir. 2007) (recognizing that a witness may testify as to the existence of a written document without triggering Rule 1002's mandate to produce original documents).

The J&J Parties respectfully ask this Court to overrule the TCC's objections to the Declaration and decline to enter an order striking Mr. Murdica's testimony.

Respectfully submitted,

*/s/ Gregory Starner*

**Gregory Starner**
**T** +212-819-8839
**E** gstarner@whitecase.com