**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan |

**DEBTOR'S RESPONSE TO PAUL CROUCH OBJECTION**
**TO PROFFERED TESTIMONY OF CHARLES MULLIN, PH.D.**

LTL Management LLC, the debtor in the above-captioned case ("LTL" or

the "Debtor"), files this response (the "Response") to the *Objection to Proffered Expert

Testimony of Charles Mullin, Ph.D.* [Dkt. 890] (the "Objection") filed by Paul Crouch ("Crouch"

or "Objector"). In support of this Response, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## **PRELIMINARY STATEMENT**

Crouch's Objection seeks to preclude the testimony of LTL's expert economist, Dr. Mullin, who has provided reports and will testify on LTL's talc litigation costs. The Objection challenges whether Dr. Mullin's expert opinions satisfy the Daubert standard, although it does not contest Dr. Mullin's expert qualifications. Last week, Crouch filed a motion to preclude much of the same expert testimony, making many of the same arguments.[2] In his newly-filed Objection, Crouch adopts and incorporates by reference the arguments in his previous motion. The Debtor filed its objection to Crouch's motion on Monday, June 26, and the Debtor likewise adopts and incorporates by reference all of its objection.[3]

As a threshold matter, the Debtor respectfully submits that the Court should follow its usual practice of assessing the admissibility of expert opinions in the full context of the expert's testimony on direct and cross-examination.

Further, Crouch's Objection should be overruled for the same reasons that Crouch's motion should be denied. Dr. Mullin's expert opinions as an economist are highly relevant to the contested issues of the Debtor's good faith, its financial distress on the date of its bankruptcy filing, and its valid reorganizational purpose, among others. They fit the facts of the case. And they would be helpful to the Court's understanding of the questions in dispute. Accordingly, they are admissible under Federal Rule of Evidence 702 and Daubert.

The Objection offers a hodgepodge of old and new arguments, but all should be rejected for the same reasons: Crouch's criticisms of Dr. Mullin's factual premises, assumptions,

---

[2] See *Mot. to Preclude Debtor's Proffered Expert Testimony of Charles H. Mullin and Gregory K. Bell* [Dkt. 875; Adv. Proc. No. 23-1092, Adv. Dkt. 191]. Maune Raichle Hartley French & Mudd LLC later joined Crouch's motion. See *MRHFM's Pls.' Joinder to Paul Crouch's Mot. to Preclude Testimony of Charles H. Mullin and Gregory K. Bell and Obj. to Proffered Expert Testimony of Dr. Mullin* [Dkt. 903].

[3] See *Debtor's Obj. to Paul Crouch's Mot. to Preclude Debtor's Proffered Expert Testimony of Charles H. Mullin and Gregory K. Bell* [Dkt. 916; Adv. Proc. No. 23-1092, Adv. Dkt 195] (the "Debtor's Objection").

and conclusions are matters for cross-examination.  None presents any fundamental analytical disconnect that would make the testimony excludable.  Expert opinion is admissible under Rule 702 if it is based on "good grounds."  See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" admissible evidence.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596, (1993).

For these reasons, and the others set forth below, the Objection should be overruled.

**REPLY**

**I.    THE COURT SHOULD CONSIDER THE ADMISSIBILITY OF EXPERT TESTIMONY IN THE CONTEXT OF THE EXPERT'S DIRECT AND CROSS-EXAMINATION AT THE HEARING.**

1.    As LTL has explained more fully in Debtor's Objection at 4-5, when the Court acts as the factfinder in a bench proceeding, challenges to expert testimony are best resolved by evaluation of the "direct (and cross) examination of the expert witness."  See In re Tropicana Entm't., LLC, 613 B.R. 587, 594 (Bankr. D. Del. 2020); Feb. 10, 2022 Hr'g Tr., In re LTL Mgmt LLC, No. 21-30589 (MBK) (Bankr. D.N.J.), Dkt. 1464, 3-4.  Such an approach conserves judicial resources; here, it also preserves the limited hearing time for witnesses.

2.    The Third Circuit also recognizes that, in a bench trial, courts may "conditionally admit the expert testimony subject to a later Rule 702 determination."  UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 833 (3d Cir. 2020); see also In re Unisys Sav. Plan Litig., 173 F.3d 145, 155-58 (3d Cir. 1999) (Court "should not be required to waste judicial time.").

3.  Consequently, the Court should follow its usual practice and consider any expert challenges at the hearing on the motions to dismiss, in the full context of the expert's testimony on direct and cross-examination.

## II. THE CHALLENGED TESTIMONY OF LTL'S EXPERT IS IN ANY EVENT PROPERLY ADMISSIBLE.

### A. Under Rule 702 and Daubert, Expert Testimony Does Not Become Excludable as "Ipse Dixit" Merely Because an Objector Criticizes the Expert's Conclusions or the Underlying Facts or Assumptions.

4.  To admit expert testimony, "a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." UGI, 949 F.3d at 832 (quoting Daubert). See also Fed. R. Evid. 702.

5.  Under Federal Rule of Evidence 703, an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed"; the underlying facts or data need not themselves be admissible "if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.

6.  The arguments in the Objection suffer from a fundamental flaw: They fail to distinguish between the usual situation, in which the facts, assumptions, and the conclusions that an expert witness has drawn from them are matters for cross-examination, and the relatively rare one where the facts and assumptions underlying expert testimony are so disconnected from the expert's conclusion as to be excludable. Gen. Elec. Co. v. Joiner, cited by the Objector, held that evidence "connected to existing data only by the ipse dixit of the expert" — his say-so alone — results in "too great an analytical gap between the data and the opinion proffered." Gen. Elec.

-4-

NAI-1537275117

Co. v. Joiner, 522 U.S. 136, 144 (1997) (emphasis added). But Joiner reaffirmed that "[t]rained experts commonly extrapolate from existing data," id. (emphasis added), and the Supreme Court had no quarrel with that common practice. Daubert itself recognized that cross-examination is the usual way to test expert evidence in the adversary system. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" evidence. Daubert, 509 U.S. at 596.

7. The Third Circuit likewise has held that the "grounds for the expert's opinion merely have to be good, they do not have to be perfect." In re Paoli R.R. Yard PCB Litig., 35 F.3d at 744–45 ("[A] judge should find an expert opinion reliable under Rule 702 if it is based on 'good grounds,' i.e., if it is based on the methods and procedures of science."). See also, e.g., Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination."); Walker v. Gordon, 46 Fed. Appx. 691, 695–96 (3d Cir. 2002) ("An expert is . . . permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also . . . a proper subject for cross-examination.").

8. Thus, disagreement about underlying assumptions that an expert makes is no reason to preclude expert testimony. See, e.g., Wesco Ins. Co. v. Ridge Tool Co., 2022 WL 17253780, at *6 (D.N.J. July 29, 2022) ("[A]n expert may base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury.") (internal citations omitted); Kemly v. Werner Co., 151 F. Supp. 3d 496, 503-4 (D.N.J. 2015) (expert opinion admissible as "the burden of exploring the facts and assumptions underlying the

NAI-1537275117

testimony of an expert witness" is placed "on opposing counsel during cross-examination"); Ford v. Cnty. of Hudson, 2014 WL 2039987, at *5 (D.N.J. May 16, 2014) ("Without question, much of the material [the expert] reviewed contains disputed facts, but that is material for cross-examination, not exclusion of his testimony."); Heller v. Aftab, 2008 WL 1138937, at *1 (D.N.J. Oct. 15, 2008) (ruling that the expert testimony should not be precluded, and the expert's "conclusion may be attacked on cross-examination for reasons related to the arguments . . . regarding his assumptions and methods").

9. Here, Dr. Mullin's expert opinions[4] meet the Daubert standard because those opinions are reliable, based on sufficient foundation, and relevant to help the Court understand the evidence of LTL's good faith bankruptcy filing, including, among other things, the facts of LTL's financial distress and of its valid reorganizational purpose in bankruptcy. Objector's challenges — that one factor or another could have been assessed in another way, or in different detail — are matters for cross-examination, not exclusion.

**B.  Objector's Unfounded Attacks on Dr. Mullin's Use of Facts, Assumptions, and Economic Scenarios Are Matters for Cross-Examination, Not Exclusion.**

10. As Debtor's Objection explained at 7-9, LTL's costs of defending talc claims in tort litigation outside of bankruptcy, on which Dr. Mullin opines, are highly relevant to LTL's financial distress. Both the Third Circuit and this Court have noted the relevance of this factor. See In re LTL Mgmt., 64 F.4th 84, 100 (3d Cir. 2023) (Financial distress "depends on the underlying basic facts, such as the debtor's ability to pay its current debts, and inferred facts, such as projections of how much pending and future liabilities (like litigation) could cost in the future."); In re LTL Mgmt., LLC, 2023 WL 3136666, at *8 (Bankr. D.N.J. Apr. 27, 2023)

---

[4] See (1) Expert Report of Charles H. Mullin, Ph.D., dated June 7, 2023, marked as Ex. 64 for the hearing, and (2) Rebuttal Expert Report of Charles H. Mullin, Ph.D., dated June 14, 2023, marked as Ex. 65 for the hearing.

(considering how the "increased volume of claims" and "increased floor of debt" impact the financial distress of the Debtor).

11. Seeking to exclude this highly relevant testimony from Dr. Mullin (whose expert qualifications as an economist Objector does not challenge), Objector mounts a series of unfounded attacks — all of them at best matters for cross-examination, not exclusion.

12. Objector begins by contesting Dr. Mullin's use of alternate scenarios and economic models to evaluate LTL's costs of a return to litigation in the tort system. For example, Dr. Mullin uses a scenario based on LTL's original historical practice of litigation without settlements, as well as a scenario based on LTL's later practice of litigation combined with some settlements. Dr. Mullin also takes into account such relevant factors as the historical experience of other companies defending mass tort claims. Dr. Mullin can testify in much greater detail about how he conducted his comprehensive scenario analysis and valuation, which are also described in detail in his reports.

13. This is an entirely appropriate approach for an economist to take. Indeed, Dr. Mullin's use of future valuation scenarios informed by LTL's own prior tort history (and to some degree by comparability analysis from other torts) is the approach most commonly employed by mass tort estimation practitioners. The model Dr. Mullin used to calculate his valuation range — grounded in history, not speculation — is part of the widely-accepted practice of forecasting future uncertain outcomes based on historical precedents.

14. Objector argues that Dr. Mullin's use of this range of scenarios was somehow without foundation in the facts or speculative, suggesting that Dr. Mullin should instead have asked LTL what it would have done as a going-forward litigation strategy, and then calculated costs of litigation based only on the answer he received to that question.

NAI-1537275117

15. But Objector's suggestion would not have been a superior approach and was certainly not the only acceptable one. As LTL's own litigation history over time demonstrates, companies can and do change their litigation strategies based on changed circumstances, trends, and outcomes. There is no foundation problem here. Objector may cross-examine Dr. Mullin about the details of his methods and assumptions.

16. Objector next criticizes what Objector perceives as inconsistencies between Dr. Mullin's report in this case and the report Dr. Mullin prepared for the Imerys bankruptcy, where Dr. Mullin considered, among other things, Imerys's own claims history, unique defenses available to Imerys, and other facts of that case. Objector in particular criticizes Dr. Mullin for using, as a calculated input to his forecasting scenarios here, payment rates from the Lanier Master Settlement Agreement, an actual historical settlement of LTL's — as contrasted with his critique of another expert's employment of an assumption made in the face of different available information and historical experience for Imerys. Objector is free to cross-examine Dr. Mullin on the two reports and ask him what accounts for any differences. To be admissible under Daubert, there need only be "good grounds" for an expert opinion; that standard is met here. Daubert, 509 U.S. at 590.

17. Objector also criticizes Dr. Mullin for how he considered certain developments in talc litigation that were adverse to talc claimants, including appellate decisions in New York, New Jersey, and other states, as well as litigation involving Dr. Moline. Objector views these developments as so unfortunate for talc claimants like himself, that Dr. Mullin should have discounted his evaluation based on them. Dr. Mullin acknowledged these developments at his deposition and can explain in his testimony why he treated them as he did. This, too, is a matter for cross-examination.

NAI-1537275117

    **C.**    **Dr. Mullin's Opinions Comparing the Economic Efficiency of Bankruptcy in Resolving Tort Claims with the Inefficiency and Uncertainties of Litigating Such Claims Are Relevant and Helpful, Not Speculative, and Reliably Grounded In the Facts of this Case.**

18. Testimony comparing the costs and inefficiency of tort litigation with the efficiencies of resolution of talc claims in bankruptcy goes to the question of LTL's good faith and whether LTL's chapter 11 case is in the best interests of claimants and the estate.

19. Concerning Dr. Mullin's comparative opinions, the Objection reiterates many of the arguments Crouch made in his motion to preclude. For a full response, the Debtor respectfully refers the Court to Debtor's Objection at 7-9. The Debtor presents an abbreviated version of its argument below and also responds to the additional points in Crouch's Objection.

20. Objector challenges Dr. Mullin's opinions that explain how bankruptcy can facilitate an efficient and equitable resolution of talc claims, offering economic advantages over litigating such claims outside of bankruptcy. That expert opinion is highly relevant to the Debtor's good faith and whether dismissal is in the best interests of claimants and the estate, and therefore is admissible.

21. To begin with, LTL's costs of defending talc claims in tort litigation outside of bankruptcy, on which Dr. Mullin opines, are highly relevant to LTL's financial distress. Both the Third Circuit and this Court have noted the relevance of this factor. See In re LTL Mgmt., 64 F.4th at 100 ("Whether financial distress exists depends on the underlying basic facts, such as the debtor's ability to pay its current debts, and inferred facts, such as projections of how much pending and future liabilities (like litigation) could cost in the future."); In re LTL Mgmt., 2023 WL 3136666, at *8 (considering how the "increased volume of claims" and "increased floor of debt" impact the financial distress of the Debtor).

NAI-1537275117

22. Dr. Mullin's comparative opinions, like his other expert opinions evaluating the cost to LTL of continued litigation in the tort system, will help the Court understand the costs, inefficiencies, and uncertainties of tort litigation of talc claims — including in multidistrict litigation — by contrasting them with the economic value, efficiencies, and finality of a bankruptcy resolution.

23. Not only do Dr. Mullin's comparative opinions bear directly on the question of financial distress, but they also go to other disputed questions, such as LTL's valid reorganizational purpose; whether LTL can confirm a plan; whether LTL commenced this bankruptcy as an abusive litigation tactic; and whether any acts or omissions by LTL were reasonably justified, considering that a resolution in bankruptcy is optimal.

24. If there were any doubt, relevancy is confirmed by the fact that the parties who filed motions to dismiss the above-captioned case and related joinders offered their own expert opinions on multidistrict litigation as a vehicle for litigation of talc claims. Dr. Mullin's comparative opinions sharpen the focus on the Debtor's litigation costs and are relevant.

25. Objector newly asserts that Dr. Mullin's comparative opinion is speculative or not tied to the facts of the case. Objector here relies on what Objector characterizes as an "admission" at Dr. Mullin's deposition that "he had not performed any analysis of the actual proposed plan in this case." But that is an incomplete and inaccurate characterization of Dr. Mullin's deposition testimony at the cited pages. Dr. Mullin testified that he had reviewed the LTL plan, after its filing, to confirm that the trust that had actually been proposed was consistent with the expectations he would have for such a bankruptcy trust, and therefore that his opinions were in alignment with what was actually happening. See June 23, 2023 Mullin Dep. at 217.1-219.6.

NAI-1537275117

26. The Objection also takes Dr. Mullin to task for not analyzing the proposed plan here in the exact way that he did for the plan in Imerys, at a different stage of that case, on its own facts, and for a different purpose. As Dr. Mullin explained at his deposition, in Imerys he reviewed the proposed plan "leading up towards the confirmation hearing." See June 23, 2023 Mullin Dep. 217.8-13. Again, Objector can cross-examine Dr. Mullin to explore the similarities or differences between this case and the Imerys bankruptcy, and between Dr. Mullin's expert opinions in the two cases.

27. That is not a reason to exclude Dr. Mullin's opinions, which provide a comprehensive and helpful analysis of the costs of litigating talc claims in the tort system, including Dr. Mullin's comparison between tort litigation and resolution of mass tort claims in bankruptcy, a subject which, the reports show, Dr. Mullin has extensively studied.

## CONCLUSION

For all of the reasons set forth above and in the Debtor's Objection, the Debtor respectfully requests that the Court overrule the Objection.

Dated: June 28, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

-12-