**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| | **Objection Deadline:** August 8, 2023 |
| | **Hearing Date and Time:** August 22, 2023 at 10:00 a.m. |

**DEBTOR'S MOTION FOR ENTRY OF ORDER (A) APPROVING FORM
AND MANNER OF NOTICE OF HEARING ON DISCLOSURE STATEMENT;
(B) APPROVING DISCLOSURE STATEMENT; (C) ESTABLISHING SOLICITATION
AND TABULATION PROCEDURES; (D) SCHEDULING A HEARING ON
CONFIRMATION OF AMENDED CHAPTER 11 PLAN AND APPROVING FORM
AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF**

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is
501 George Street, New Brunswick, New Jersey 08933.

# TABLE OF CONTENTS

**Page**

JURISDICTION AND VENUE ............................................................................ 4

BACKGROUND ............................................................................................... 4

BASIS FOR RELIEF REQUESTED ................................................................. 7

I.       Approval of Disclosure Statement Hearing Notice ............................... 7

II.      Approval of the Disclosure Statement As Containing Adequate Information ............... 10

III.     Approval of Solicitation and Tabulation Procedures ..................................... 13

    A.       The Voting Record Date ........................................................... 14

    B.       Proposed Solicitation Packages ................................................ 14

        a.       Mailing Addresses and Undeliverable Addresses.................................. 17

        b.       Request to Make Non-Substantive Modifications ................................. 18

    C.       Forms of Ballots........................................................................ 19

    D.       Notice of Non-Voting Status .................................................... 20

    E.       Contract/Lease Notice............................................................... 21

    F.       Distribution of Solicitation Packages to Firms and Voting by Firms ............ 21

    G.       Voting Deadline for Receipt of Ballots ..................................... 24

    H.       Procedures for Vote Tabulation ................................................ 26

        a.       Allowance of Talc Personal Injury Solely for Voting Purposes in the Amount of $1.00 in the Aggregate Per Claimant.............................. 26

        b.       Other Procedures for Vote Tabulation ................................... 28

IV.      Approval of Confirmation Procedures ............................................... 31

    A.       Confirmation Hearing Notice .................................................. 31

    B.       Confirmation Hearing .............................................................. 32

    C.       Publication Notice and Supplemental Notice Plan ................... 32

    D.       The Confirmation Objection Procedures .................................. 34

    E.       Voting Certification, Other Supporting Declarations and Memorandum of Law in Support of Confirmation.............................. 35

NAI-1531064832

The above-captioned debtor (the "Debtor") files this motion (the "Motion") for entry of an order, substantially in the form submitted herewith (the "Solicitation Procedures Order"), pursuant to sections 105(a), 502, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3016-1, 3018-1, 9013-1, and 9013-2 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Bankruptcy Rules"), granting related relief and approving:[2]

I.      The form and manner of notice (the "Disclosure Statement Notice") of the hearing on approval of the Debtor's disclosure statement (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") for the *Amended Chapter 11 Plan of Reorganization of LTL Management LLC*, dated June 26, 2023 (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");

II.     The Debtor requests that the Court approve the Debtor's Disclosure Statement for the Plan as providing "adequate information" in accordance with section 1125 of the Bankruptcy Code. For the reasons described below, the Debtor submits that such approval is warranted and appropriate;

III.    The Disclosure Statement for purposes of solicitation of votes on the Plan;

IV.     The Debtor's Solicitation and Tabulation Procedures for the Plan, including

     a.      The proposed Voting Record Date;

     b.      The contents of the proposed Solicitation Packages;

     c.      The forms of Ballots to be used for voting on the Plan;

     d.      The form and process for distributing the Debtor's proposed Notice of Non-Voting Status with respect to the Plan;

     e.      The form and process for distributing the Debtor's proposed Contract/Lease Notice with respect to executory contracts and leases to be assumed or rejected under the Plan;

---

[2]      Capitalized terms used herein but not otherwise defined have the meanings given to them in the Plan.

     f.     The manner of distribution of Solicitation Packages to law firms representing holders of Talc Personal Injury Claims and the procedures for potential voting by such firms;

     g.     The Voting Deadline for receipt of Ballots with respect to the Plan; and

     h.     Various proposed procedures for tabulation of votes on the Plan.

V.     The Debtor's proposed procedures with respect to the hearing on confirmation of the Plan, including

     a.     The Debtor's proposed Confirmation Hearing Notice;

     b.     The proposed date for the Confirmation Hearing;

     c.     The Debtor's proposed Publication Notice and Supplemental Notice Plan with respect to notice of the Confirmation Hearing;

     d.     The Debtor's proposed procedures for any objections to confirmation of the Plan to be heard at the Confirmation Hearing; and

     e.     The Debtor's proposed procedures and deadlines for filing the results of the vote on the Plan and memoranda of law and declarations and other pleadings in support of confirmation.

For the convenience of the Court and parties in interest, the following is a summary timeline identifying the Debtor's proposed key dates and deadlines:

| EVENT | DATE[3] |
|---|---|
| Deadline for Law Firms Representing Talc Personal Injury Claims to Return Certified Plan Solicitation Directive and Client List | August 15, 2023 |
| Voting Record Date | Date of entry of the order approving this Motion |
| Deadline to Mail Solicitation Packages and Related Notices | August 31, 2023 (the "Solicitation Date"), which is anticipated to be 7 business days after entry of the order approving the Disclosure Statement, or as soon as reasonably practicable thereafter |
| Date of Publication of Confirmation Hearing Notice | On the Solicitation Date (or as soon thereafter as reasonably practicable) |

---

[3]     All times in this table are prevailing Eastern Time.  Capitalized terms used in this table but not otherwise defined have the meanings given to them below or in the Plan, as applicable.

- 2 -

| Event | Date[3] |
|---|---|
| Deadline to File Plan Supplement | October 20, 2023 |
| Voting Deadline<br><br>Confirmation Objection Deadline | October 30, 2023, at 4:00 p.m. |
| Deadline to File Voting Certification | November 13, 2023, at 4:00 p.m. |
| Deadline for the Debtor to File Memorandum of Law, any Reply and Declarations in Support of Plan Confirmation, and Form of Confirmation Order | November 13, 2023, at 4:00 p.m. |
| Confirmation Hearing | November 20, 2023, subject to the Court's availability |

In addition, for the Court's further reference, the Debtor provides a list below of the various exhibits and documents cited throughout this Motion:

*Exhibit 1-1*    Disclosure Statement Hearing Notice

*Exhibit 1-2*    Disclosure Statement Hearing Notice (Publication Version)

*Exhibit 2*    Solicitation Procedures

*Exhibit 3-1*    Class 4 Direct Ballot

*Exhibit 3-2*    Class 4 Master Ballot

*Exhibit 3-3*    Class 4 Indirect Ballot

*Exhibit 3-4*    Class 6 Ballot

*Exhibit 4*    Notice of Non-Voting Status

*Exhibit 5*    Contract/Lease Notice

*Exhibit 6-1*    Direct Talc Personal Injury Claim Solicitation Notice

*Exhibit 6-2*    Certified Plan Solicitation Directive

*Exhibit 7-1*    Confirmation Hearing Notice

*Exhibit 7-2*    Publication Notice (for Confirmation Hearing)

*Exhibit 7-3*    Debtor Letter in Support of the Plan (to be filed no later than one week prior to the deadline to object to this Motion and included as Exhibit 7-3 to the Solicitation Procedures Order)

*Exhibit 7-4*    Supplemental Notice Plan

*Exhibit 7-5*    Ad Hoc Committee of Supporting Counsel Letter in Support of the Plan (to be filed no later than one week prior to the deadline to object to this Motion and included as Exhibit 7-5 to the Solicitation Procedures Order).

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey*, dated September 18, 2012 (Simandle, C.J.) (the "Standing Order of Reference").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The statutory predicates for the relief requested herein are sections 105(a), 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008, and Local Rules 3016-1, 3018-1, 9013-1, and 9013-2.

## BACKGROUND

3.      On April 4, 2023 (the "Petition Date"), the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtor, a North Carolina limited liability company, is a defendant in thousands of lawsuits asserting personal injuries allegedly caused by exposure to talc-containing products.  It is the direct parent of Royalty A&M LLC, a North Carolina limited liability company, which manages a portfolio of royalty revenue streams, including some based on third party sales of certain products, and will seek opportunities to acquire or finance additional royalty revenue streams.

5.      The Debtor has reached agreement on the material terms of a plan of reorganization with thousands of talc claimants.  That agreement has been memorialized in a

NAI-1531064832

series of plan support agreements.  The Debtor has commenced this chapter 11 case (the

"Chapter 11 Case") to pursue confirmation of a plan of reorganization that contains the terms

agreed to in the plan support agreements.  A comprehensive description of the Debtor, its history,

its assets and liabilities and the events leading to the commencement of the Chapter 11 Case can

be found in the declaration of John K. Kim [Dkt. 4] (the "First Day Declaration"), which was

filed on the Petition Date and is incorporated herein by reference.

6.      On April 14, 2023, the United States Trustee for the District of New Jersey

(the "U.S. Trustee") filed the *Notice of Appointment of Official Committee of Talc Claimants*

[Dkt. 162] (the "Talc Committee") in the Chapter 11 Case.

7.      On May 5, 2023, the Debtor filed its schedules of assets and liabilities, schedules

of executory contracts and unexpired leases, and statement of financial affairs [Dkts. 450, 451]

(collectively and as may be modified, amended, or supplemented from time to time, the

"Schedules").

8.      On May 18, 2023, the Court entered an order appointing Randi S. Ellis as the

legal representative for those with future Talc Personal Injury Demands pursuant to sections

105(a), 524(g)(4)(B)(i), and 1109(b) of the Bankruptcy Code (the "FCR").  *Order Appointing

Randi S. Ellis as Legal Representative for Future Talc Claimants* [Dkt. 551].

9.      On June 26, 2023, the Debtor filed the Plan [Dkt. 912], which amended the plan

previously filed on May 15, 2023 [Dkt. 525].  The Debtor filed the Disclosure Statement

contemporaneously with this Motion.  The Debtor believes that confirmation of the Plan will

fairly and equitably address the Debtor's current and future talc-related personal injury liabilities.

10.     As described in more detail in the Disclosure Statement and the Plan, the primary

feature of the Plan is to provide a mechanism to channel Talc Personal Injury Claims to a trust

NAI-1531064832

pursuant to sections 524(g) and 105(a) of the Bankruptcy Code.[4]  Specifically, under the terms of

the Plan, all Talc Personal Injury Claims will be permanently channeled by the permanent

injunctions provided for in section 11.4 of the Plan (the "Channeling Injunction") to a trust (the

"Talc Personal Injury Trust") established under sections 524(g) and 105(a) of the Bankruptcy

Code.  The Talc Personal Injury Trust will be comprised of three sub-trusts—the Talc Personal

Injury Governmental Action Sub-Trust, the Talc Personal Injury TPP Lien Claims Sub-Trust,

and the Talc Personal Injury Tort Claims Sub-Trust.  The Talc Personal Injury Governmental

Action Sub-Trust will assume all Governmental Action Claims, the Talc Personal Injury TPP

Lien Claims Sub-Trust will assume all TPP Lien Claims, and the Talc Personal Injury Tort

Claims Sub-Trust will assume all Talc Personal Injury Claims other than Governmental Action

Claims and TPP Lien Claims.

11.     On the Effective Date of the Plan, the Talc Personal Injury Trust will receive

certain of the Talc Personal Injury Trust Assets, which include $3.0 billion in cash, a note in the

amount of $400 million, various insurance assets, the Imerys Indemnification Rights, and certain

books and records and rights with respect to the defense of Talc Personal Injury Claims.  The

Reorganized Debtor will also deliver additional Cash Contributions, totaling $8.68 billion, to the

Talc Personal Injury Trust on multiple anniversaries of the Effective Date, through the twenty-

fifth (25th) anniversary of the Effective Date.  The Talc Personal Injury Trusts Assets will be

used to resolve Talc Personal Injury Claims in accordance with the Talc Personal Injury Trust

Documents.  Specifically, the Plan provides for the Talc Personal Injury Trust to resolve Talc

Personal Injury Claims in accordance with the Trust Distribution Procedures attached as Exhibit

---

[4]     The description of the Plan set forth herein is intended only as a summary.  Nothing in this summary description modifies the Plan, and reference should only be made to the Plan itself for the precise terms thereof, which terms control in the event of any inconsistency between the summary included herein and the Plan.

NAI-1531064832

M to the Plan.  It is contemplated that the Trust Distribution Procedures will establish a

methodology for resolution of Talc Personal Injury Claims, establish the process by which Talc

Personal Injury Claims will be reviewed by the Talc Personal Injury Trust, and specify liquidated

values for compensable claims based on the disease underlying the claim.

12.     In accordance with section 1126 of the Bankruptcy Code, there are six Classes of

Claims and Equity Interests under the Plan:

- Class 1 (Priority Non-Tax Claims)

- Class 2 (Secured Claims)

- Class 3 (Unsecured Claims)

- Class 4 (Talc Personal Injury Claims)

- Class 5 (Intercompany Claims)

- Class 6 (Equity Interests of the Debtor)

Holders of Claims in Class 4 and Holders of Interests in Class 6 are Impaired and, thus, entitled

to vote to accept or reject the Plan.  Classes 1, 2, 3, and 5 (collectively, the "Non-Voting

Classes") are not entitled to vote on the Plan because they are Unimpaired and are therefore

presumed to accept the Plan.

13.     Based on the foregoing (and as discussed in greater detail herein), the Debtor is

proposing to solicit votes to accept or reject the Plan from Holders of Claims in Class 4 and Holders

of Interests in Class 6.

## BASIS FOR RELIEF REQUESTED

**I.     Approval of Disclosure Statement Hearing Notice**

14.     Bankruptcy Rule 3017(a) provides as follows:

> [A]fter a disclosure statement is filed in accordance with
> [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at least

NAI-1531064832

> 28 days' notice to the debtor, creditors, equity security holders and
> other parties in interest as provided in [Bankruptcy] Rule 2002 to
> consider the disclosure statement and any objections or
> modifications thereto. The plan and the disclosure statement shall
> be mailed with the notice of the hearing only to the debtor, any
> trustee or committee appointed under the [Bankruptcy] Code, the
> Securities and Exchange Commission, and any party in interest who
> requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).  In addition, Bankruptcy Rule 2002(b) requires 28 days' notice by mail

to all creditors and indenture trustees of the time set for filing objections to, and the hearing to

consider approval of, a disclosure statement.   See Fed. R. Bankr. P. 2002(b).   Similarly,

Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in

the manner and the form directed by the Bankruptcy Court.  See Fed. R. Bankr. P. 2002(d).

15.   Contemporaneous with the filing of this Motion, the Debtor is serving copies of a

notice in the form attached as Exhibit 1-1 to the Solicitation Procedures Order and incorporated

herein by reference (the "Disclosure Statement Notice") by first class mail to the following

parties:

(a)   all persons or entities that have filed proofs of claim or interest in the Debtor's

case that have not been previously withdrawn or previously disallowed by order

of this Court and have been docketed on or before the date of the Disclosure

Statement Notice;[5]

(b)   all persons or entities listed in the Debtor's respective Schedules as holding

liquidated, noncontingent, undisputed claims;

(c)   all persons or entities listed in the Debtor's list of equity security holders;

---

[5]   To the extent that any proof of claim filed in this case identifies an attorney for the claimant, the Debtor is
sending the Disclosure Statement Notice only to the attorney and not to the represented claimant, unless the
claimant's mailing information is also provided, in which case, both the claimant and the attorney will be
served with the Disclosure Statement Notice.

NAI-1531064832

(d)      all known attorneys representing holders of Talc Personal Injury Claims; and

(e)      any other known holders of claims against, or interests in, the Debtor.

Among other things, the Disclosure Statement Notice identifies (i) the date, time and place of the

hearing to consider approval of the Disclosure Statement (the "Disclosure Statement Hearing");

(ii) the deadline to object to the adequacy of the Disclosure Statement; and (iii) the procedures

for asserting objections to the approval of the Disclosure Statement.

16.      The Debtor is also serving a copy of the Disclosure Statement Hearing Notice,

together with the Disclosure Statement and Plan, on (a) the U.S. Trustee, (b) the Securities and

Exchange Commission (the "SEC"), (c) counsel to the Talc Committee, (d) counsel to the FCR,

(e) counsel to the ad hoc committee of supporting talc claimants (the "AHC of Supporting

Counsel"), (f) the Talc Firms,[6] in accordance with the Service Procedures Order, and (g) those

parties that have requested notice pursuant to Bankruptcy Rule 2002 (the "2002 List").

17.      In addition to mailing the Disclosure Statement Notice by first class mail, the

Debtor will publish the Disclosure Statement Notice online at https://dm.epiq11.com/ltl (the

"Document Website") and, subject to non-material modifications made for print publication

substantially in the form attached hereto as Exhibit 1-2, in *The Wall Street Journal* and *The*

*Globe and Mail*.  The Debtor believes that such publication of the Disclosure Statement Notice

will provide sufficient notice to persons who do not otherwise receive notice by mail.  In

addition, the Debtor will provide copies of the Disclosure Statement and the Plan to any

additional party in interest that makes a request for such documents in the manner specified in

---

[6]      "Talc Firms" shall have the meaning given to it in the *Order (I) Authorizing the Debtor to File a List of Top Law Firm with Talc Claims Against the Debtor in Lieu of the List of 20 Largest Unsecured Creditors; (II) Approving Certain Notice Procedures for Talc Claimants; and (III) Approving the Form and Manner of Notice of Commencement of this Case* [Dkt. 231] (the "Service Procedures Order").

NAI-1531064832

the Disclosure Statement Notice and Bankruptcy Rule 3017(a).  The Debtor also is making these

documents available on the Document Website.

18.      The Debtor submits that the foregoing procedures provide adequate notice of the

Disclosure Statement Hearing and, accordingly, the Debtor requests that the Court approve such

notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the

Bankruptcy Rules and the Local Rules.

**II.      Approval of the Disclosure Statement as Containing Adequate Information**

19.      The Debtor requests that the Court approve the Disclosure Statement for the Plan

as providing "adequate information" in accordance with section 1125 of the Bankruptcy Code.

For the reasons described below, the Debtor submits that such approval is warranted and

appropriate.

20.      Under section 1125 of the Bankruptcy Code, a debtor must provide its creditors and

interest holders with "adequate information" regarding the debtor's proposed plan:

> "[A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor to
> the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan . . . . [I]n determining whether a disclosure statement
> provides adequate information, the court shall consider the
> complexity of the case, the benefit of additional information to
> creditors and other parties in interest, and the cost of providing
> additional information . . . .

11 U.S.C. § 1125(a)(1).

21.      The primary purpose of a disclosure statement is to provide all material

information that creditors and interest holders affected by a proposed plan need to make an

informed decision on whether to vote to accept or reject a plan.  See, e.g., Century Glove, Inc. v.

- 10 -

First Am. Bank of N.Y., 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a

minimum amount of information to the creditor asked for its vote."); In re Phx. Petroleum Co.,

278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is

to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to

make an informed judgment about the proposed plan and determine whether to vote in favor of

or against that plan."); In re Congoleum Corp., 636 B.R. 362, 382 (Bankr. D.N.J. 2022) (noting

that "[t]he reorganization process is dependent on the proper notification to creditors and other

interested parties of all important steps in the proceeding so that they may take such steps as

necessary to safeguard their interests."); In re Bridgepoint Nurseries, Inc., 190 B.R. 215, 223

(Bankr. D.N.J. 1996) ("[D]isclosure statements are intended to facilitate the negotiation process

and to be a flexible tool to enable the various creditors and the debtor to work out a mutually

agreeable arrangement.").

      22.     A court has broad discretion in determining what constitutes "adequate

information" for the purpose of section 1125 of the Bankruptcy Code.  See, e.g., Oneida Motor

Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative

history of § 1125 we discern that adequate information will be determined by the facts and

circumstances of each case."); In re Lisanti Foods, Inc., 329 B.R. 491, 507 (D. N.J. 2005)

("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy

of a disclosure statement.") (citing In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa.

1995)).  Congress intended that courts exercise their grant of discretion to tailor disclosures made

in connection with a chapter 11 plan while recognizing the broad range of businesses in which

debtors engage and the circumstances accompanying chapter 11 cases.  See H.R. Rep. No. 595,

at 408-09 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6185-86.  Accordingly, a court's

NAI-1531064832

determination of the adequacy of information in a disclosure statement must occur on a case-by-case basis, focusing on the unique facts and circumstances of each case.  See S. Rep. No. 95-989, at 121 (1978), as reprinted in 1978 U.S.C.C.A.N, 5787, 5907 (stating that "the information required will necessarily be governed by the circumstances of the case.").

23.     Here, the Debtor's Disclosure Statement contains ample information that is sufficient for holders of Class 4 Talc Personal Injury Claims and holders of Class 6 Equity Interests of the Debtors, the only voting classes under the Plan, to make an informed decision about the Plan, as well as ample information for other stakeholders to consider the Plan, including, among other things, the following types of pertinent information:

a.  Preliminary Statement:  Article I of the Disclosure Statement includes (i) a statement regarding the purpose and effect of the Plan, (ii) an overview of the treatment of Claims and Interests under the Plan, and (iii) an overview of the voting and Plan confirmation process;

b.  Overview of the Plan:  Article II of the Disclosure Statement contains a (i) detailed summary of the classification and treatment of Claims and Interests under the Plan, (ii) description of the Channeling Injunction, and (iii) detailed description of assets that will be contributed to the Talc Personal Injury Trust;

c.  History of the Debtor:  Article III of the Disclosure Statement includes a discussion of the Debtor's corporate history, existing organizational structure, and the 2021 Corporate Restructuring, along with a description of the Debtor's assets;

d.  Events Leading to the Filing of the Chapter 11 Case:  Articles IV and V of the Disclosure Statement contain (i) an overview of the Debtor's asbestos personal injury litigation and related litigation, (ii) a description of certain events leading to the commencement of the 2021 Chapter 11 Case, (iii) a description of certain key events that took place during the course of the 2021 Chapter 11 Case, and (iv) a brief description of certain events leading to the commencement of this Chapter 11 Case;

e.  Events During the Chapter 11 Case:  Article VI of the Disclosure Statement discusses certain key events that have taken place during the course of this Chapter 11 Case;

- 12 -

f.  <u>Means for Implementation of the Plan</u>:  Articles VII, VIII, and XI of the Disclosure Statement (i) describe the means by which the Plan will be implemented including, among other things, distributions under the Plan, (ii) provide a summary of the Trust Distribution Procedures, which will govern the operation and administration of the Talc Personal Injury Trust, and (iii) set forth the statutory requirements for confirmation and consummation of the Plan;

g.  <u>Risk Factors</u>:  Article IX of the Disclosure Statement discusses certain risk factors that may affect the Plan;

h.  <u>Summary of Release, Injunction and Exculpation Provisions</u>:  In accordance with Bankruptcy Rule 3016(c), Article 7.10 of the Disclosure Statement describes in specific and conspicuous language certain releases, the channeling injunction and related injunctions that are essential components of the Plan; and

i.  <u>Certain Federal Income Tax Consequences of the Plan</u>:  Article XII of the Disclosure Statement discusses certain U.S. federal income tax law consequences of the Plan.

24.    The Disclosure Statement contains the information set forth above in a manner that provides holders of claims and interests with "adequate information" within the meaning of section 1125 of the Bankruptcy Code and otherwise complies with section 1125 of the Bankruptcy Code.

## III.    <u>Approval of Solicitation and Tabulation Procedures</u>

25.    The Debtor seeks approval of procedures for the solicitation and tabulation of votes on the Plan from holders of Claims and Interests entitled to vote on the Plan, including those procedures substantially in the form attached to the Solicitation Procedures Order as Exhibit 2 (the "<u>Solicitation Procedures</u>"), as set forth below.[7]

---

[7]    The description of the solicitation and tabulation procedures, including the Solicitation Procedures, set forth herein is intended only as a summary.  Nothing in this summary description modifies such procedures, and reference should only be made to those procedures themselves, including in the Solicitation Procedures Order and the Solicitation Procedures attached thereto as <u>Exhibit 2</u>, for the precise terms thereof, which terms control in the event of any inconsistency between the summary included herein and such procedures.

- 13 -

### A.      The Voting Record Date

26.      Bankruptcy Rule 3017(d) provides that the "date [an] order approving the disclosure statement is entered or another date fixed by the court," is the record date for determining which "holders of stock, bonds, debentures, notes, and other securities" are entitled to receive the materials specified in Bankruptcy Rule 3017(d), including ballots for voting on a plan.  See Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.[8]

27.      The Debtor proposes the Court establish the date that an order approving this Motion is docketed as the voting record date (the "Voting Record Date").  See Bankruptcy Rule 3017(d).  The Debtor proposes that the transferee of a Claim will receive a Solicitation Package and cast a ballot on account of such transferred Claim only if all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed prior to the Voting Record Date.

### B.      Proposed Solicitation Packages

28.      Bankruptcy Rule 3017(d) specifies the materials that must be provided to holders of claims and interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a chapter 11 plan:

> Upon approval of a disclosure statement—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor-in-possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,

---

[8]      Bankruptcy Rule 3018(a) provides that "an equity security holder or creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3018(a).

- 14 -

(1)     the plan or a court-approved summary of the plan;

(2)     the disclosure statement approved by the court;

(3)     notice of the time within which acceptances and rejections of the plan may be filed; and

(4)     any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

29.     Consistent with such requirements, the Debtor, acting through its claims, noticing,

balloting and solicitation agent in the Chapter 11 Case, Epiq Corporate Restructuring, LLC

(the "Solicitation Agent"), proposes to solicit acceptances of the Plan by disseminating the

materials set forth below (collectively, the "Solicitation Package") on or before the Solicitation

Date.[9]  The Solicitation Package will consist of:

**a.**     a cover letter describing (i) the contents of the Solicitation Package, (ii) the contents of any enclosed USB flash drive and instructions for use of the USB flash drive, and (iii) information about how to obtain access to, free of charge, the Plan, the Disclosure Statement, the order approving the Disclosure Statement, together with the exhibits thereto, and any other documents mentioned in the Solicitation Package;

**b.**     notice of the hearing to consider confirmation of the Plan (the "Confirmation Hearing Notice" and the "Confirmation Hearing," respectively), substantially in the form attached to the Solicitation Procedures Order as Exhibit 7-1;

**c.**     copies (in electronic format) of the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Court prior to entry of the Solicitation Procedures Order);

**d.**     the Solicitation Procedures Order, excluding any exhibits thereto (in electronic format);

**e.**     solely for holders of Talc Personal Injury Claims, as applicable, and Equity Interests of the Debtor, an appropriate Ballot and voting instructions for the same;

---

[9]     If a holder of a Talc Personal Injury Claim contacts the Solicitation Agent before the Voting Deadline and requests a Solicitation Package, the Solicitation Agent will provide such claimant with a Solicitation Package within five Business Days of such request or as soon as practicable.

    **f.**    solely for holders of Talc Personal Injury Claims, as applicable, and Equity Interests of the Debtor, a pre-addressed, postage prepaid return envelope for completed Ballots;

    **g.**    any letters from (i) the Debtor, which letter will be filed no later than one week prior to the deadline to object to this Motion and included as <u>Exhibit 7-3</u> to the Solicitation Procedures Order; (ii) the AHC of Supporting Counsel, which letter will be filed no later than one week prior to the deadline to object to this Motion and included as <u>Exhibit 7-5</u> to the Solicitation Procedures Order; and (iii) certain other constituencies who may recommend acceptance of the Plan setting forth their recommendations with respect to the Plan; and

    **h.**    any other materials ordered by the Court to be included as part of the Solicitation Package.

30.    The Debtor will distribute Solicitation Packages to (a) the U.S. Trustee, (b) the SEC, (c) counsel to the Talc Committee, (d) counsel to the FCR, (e) the 2002 List, (f) holders of Talc Personal Injury Claims, subject to the procedures described below for holders of Talc Personal Injury Claims that are represented by counsel, (g) counsel to an ad hoc committee of state attorney generals, (h) counsel to the AHC of Supporting Counsel, and (i) any other known holders of Impaired Claims against or Equity Interests in, the Debtor (the "<u>Solicitation Parties</u>"). The Debtor will distribute a copy of the Confirmation Hearing Notice and Notice of Non-Voting Status (defined herein) to holders of Administrative Claims, Priority Tax Claims and Claims in the Non-Voting Classes.  The Notice of Non-Voting Status will indicate where any party receiving such notice may obtain additional materials, free of charge, with respect to Confirmation Hearing, including the Plan and the Disclosure Statement.

31.    The Debtor requests that it be authorized to distribute the Plan, the Disclosure Statement, and the Solicitation Procedures Order to Holders of Claims entitled to vote on the Plan in an electronic form (including a USB flash drive).  Electronic distribution of solicitation materials is common in large chapter 11 cases in general and mass tort cases in particular.  <u>See</u>, <u>e.g.</u>, <u>In re Imerys Talc America, Inc.</u>, No. 19-10289 (LSS) (Bankr. D. Del. Jan. 27, 2021) [Dkt. 2863] (permitting disclosure statement to be transmitted via USB flash drive); <u>In re Melinta</u>

Therapeutics, Inc., No. 19-12748 (LSS) (Bankr. D. Del. Feb. 25, 2020) [Dkt. 342] (permitting

disclosure statement to be transmitted via USB flash drive); In re Insys Therapeutics, Inc.,

No. 19-11292 (KG) (Bankr. D. Del. Dec. 4, 2019) [Dkt. 952] (permitting disclosure statement to

be transmitted in electronic format, including via USB flash drive); In re Claire's Stores, Inc.,

No. 18-10584 (MFW) (Bankr. D. Del. Jul. 26, 2018) [Dkt. 679] (permitting disclosure statement

to be transmitted via USB flash drive); In re Reichhold Holdings US, Inc., No. 14-12237 (MFW)

(Bankr. D. Del. Nov. 19, 2015) [Dkt. 1252] (permitting disclosure statement to be transmitted in

electronic format); In re The Diocese of Camden, N.J., 20-21257 (JNP) (Bankr. D. N.J. Apr. 6,

2022) [Dkt. 1447] (permitting disclosure statement to be transmitted in electronic format,

including via USB flash drive); In re Duro Dyne Nat'l Corp., No. 18-27963 (MBK) (Bankr. D.

N.J. Nov. 20, 2018) [Dkt. 287] (permitting disclosure statement to be transmitted via USB flash

drive).  Moreover, the Confirmation Hearing Notice will state that any party that receives the

Plan, the Disclosure Statement and the Solicitation Procedures Order in electronic format, but

would prefer paper format, may contact the Solicitation Agent and request paper copies of the

materials previously received in electronic format.  The Disclosure Statement, Plan and related

exhibits will also be available free of charge on the Document Website.

### a.    *Mailing Addresses and Undeliverable Addresses*

32.    With respect to known Holders of Claims or Interests other than holders of Talc

Personal Injury Claims that are not Indirect Talc Personal Injury Claims ("Direct Talc Personal

Injury Claims"),[10] Solicitation Packages, Notices of Non-Voting Status and Confirmation

Hearing Notices, as applicable, will be mailed to known Holders of Claims at the following

addresses:  (a) for persons or entities that have filed proofs of claim, at the address provided on

---

[10]    The mailing of Solicitation Packages to Holders of Direct Talc Personal Injury Claims will follow the
procedures set forth in section III.F of this Motion and section IV of the Solicitation Procedures.

NAI-1531064832

the face of the filed proof of claim; (b) for persons or entities listed on the Schedules (and who

have not filed a proof of claim), at the most current address contained in the Debtor's books and

records; and (c) for a claim transferee, at the address set forth in a valid notice of transfer or the

address provided in the requests for notice filed in accordance with Bankruptcy Rule 2002.

33.     If a Solicitation Package, Notice of Non-Voting Status or Confirmation Hearing

Notice is returned as undeliverable at least 7 business days before the Voting Deadline, the

Debtor proposes that the Solicitation Agent utilize its customary practice for handling re-mails

and employ reasonable efforts to resend such mailing only once (provided that the United States

Post Office has included a forwarding address).  To the extent that any notices sent by the Debtor

or its agents to date in connection with the Chapter 11 Case have been returned as undeliverable

(with no forwarding address), the Debtor and its agents request that neither they nor the

Solicitation Agent be required to send the Solicitation Package, the Notice of Non-Voting Status

or the Confirmation Hearing Notice, as applicable, to such parties, unless the Solicitation Agent

is provided with an accurate address for such Person or Entity before the Solicitation Date.

### b.     *Request to Make Non-Substantive Modifications*

34.     The Debtor requests authorization to make non-substantive changes to the

Solicitation Packages (including the Plan, Disclosure Statement and Ballots), the Confirmation

Hearing Notice, the Notice of Non-Voting Status, the Solicitation Procedures contained herein

and all related documents, without further order of the Bankruptcy Court, including, without

limitation, filling in any missing dates or other missing information, changes to correct

typographical and grammatical errors and to make conforming changes among the Disclosure

Statement, the Plan, any other materials in the Solicitation Package, the Confirmation Hearing

Notice, the Notice of Non-Voting Status and/or related documents prior to distribution of such

materials.

- 18 -

### C.    Forms of Ballots

35.    Bankruptcy Rule 3017(d) requires the Debtor to mail a form of ballot, which substantially conforms to Official Form No. 14, to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtor proposes to distribute (a) a ballot to holders of Direct Talc Personal Injury Claims voting directly on the Plan (a "Direct Ballot"), (b) a master ballot to be used by attorneys to record votes such attorney has solicited from its clients that are holders of Direct Talc Personal Injury Claims (a "Master Ballot"), (c) a ballot to holders of Indirect Talc Personal Injury Claims (an "Indirect Ballot"), and (d) a ballot to holders of Equity Interests of the Debtor (a "Class 6 Ballot" and, together with the Direct Ballot, the Master Ballot, and the Indirect Ballot, the "Ballots"), substantially in the forms attached to the Solicitation Procedures Order as Exhibits 3-1, 3-2, 3-3, and 3-4, respectively. The forms of the Ballots are based on Official Form No. 14, but have been modified to address the particular aspects of the Chapter 11 Case.

36.    The Ballots will be distributed to holders of Talc Personal Injury Claims or such holder's attorney in accordance with the Solicitation Procedures and holders of Equity Interests of the Debtor. The forms of Ballots are similar in material respects to those used in other mass tort chapter 11 cases. Moreover, the Ballots proposed for use in this case contain appropriate certifications to be made concerning the authority of counsel to solicit, collect, record and submit or procedurally cast the votes of holders of Talc Personal Injury Claims and the validity of the Talc Personal Injury Claims. Accordingly, the Debtor submits that the proposed forms of Ballots substantially comply with Bankruptcy Rule 3017(d) while taking into account the particular circumstances of the Chapter 11 Case and should be approved.

37.    The Debtor proposes the ability to submit Ballots via electronic, online transmissions, solely through a customized online balloting portal (the "Voting Portal") on the

- 19 -

Document Website.  The encrypted ballot data and audit trail created by such electronic

submission will become part of the record of any Ballot submitted through the Voting Portal and

the creditor's electronic signature will be deemed to be immediately legally valid and effective.

Ballots may also be returned to the Solicitation Agent by first class mail, overnight delivery or

hand courier.  All Ballots must be returned by October 30, 2023 (the "<u>Voting Deadline</u>").

  **D.**  **Notice of Non-Voting Status**

  38.  Under the Bankruptcy Code, holders of claims and interests are not entitled to

vote if (a) their contractual rights are unimpaired by the proposed plan, in which case they are

conclusively presumed to accept the proposed plan; or (b) they will receive no property under the

plan, in which case they are deemed to reject the proposed plan.  11 U.S.C. § 1126(f)-(g).

  39.  Bankruptcy Rule 3017(d) permits a bankruptcy court to order that a debtor's plan

and disclosure statement need not be mailed to unimpaired classes.  In lieu thereof, a bankruptcy

court may order that "notice that the class is designated in the plan as unimpaired and notice of

the name and address of the person from whom the plan or summary of the plan and disclosure

statement may be obtained upon request," as well as "notice of the time fixed for filing

objections to and the hearing on confirmation" be mailed to such classes.  Fed. R. Bankr. P.

3017(d).

  40.  Classes 1, 2, 3, and 5 under the Plan are unimpaired and thus presumed to accept

the Plan in accordance with section 1126(f) of the Bankruptcy Code.  <u>See</u> 11 U.S.C. § 1126(f).

The Debtor proposes to send to Holders of Claims in the Non-Voting Classes the Confirmation

Hearing Notice and a notice of such Holders' non-voting status (the "<u>Notice of Non-Voting

Status</u>"), substantially in the form attached to the Solicitation Procedures Order as <u>Exhibit 4</u>,

which (a) identifies the treatment of the classes designated under the Plan; (b) sets forth the

- 20 -

manner in which a copy of the Plan and Disclosure Statement may be obtained; and (c) provides

procedures for the filing and service of objections to confirmation of the Plan.

41.     The Debtor also intends to send the Notice of Non-Voting Status to each holder of

an Administrative Claim or a Priority Tax Claim, which claims are unclassified and Unimpaired

under the Plan (collectively, the "Unclassified Claims").

### E.     Contract/Lease Notice

42.     Parties to certain of the Debtor's Executory Contracts and Unexpired Leases may

not have scheduled Claims, or may maintain Claims based upon filed Proofs of Claim pending

the disposition of their Executory Contracts or Unexpired Leases by assumption or rejection.

To ensure that such parties nevertheless receive notice of the Confirmation Hearing, they will

receive notice substantially in the form attached to the Solicitation Procedures Order as Exhibit 5

(the "Contract/Lease Notice") that gives (a) notice of the filing of the Plan, (b) notice that such

party has been identified as a party to an Executory Contract or Unexpired Lease, (c) instructions

regarding the Confirmation Hearing and how to obtain a copy of the Solicitation Package (other

than a Ballot) free of charge, and (d) detailed directions for filing objections to confirmation of

the Plan.

### F.     Distribution of Solicitation Packages to Firms and Voting by Firms

43.     By July 18, 2023, or as soon as reasonably practicable thereafter, the Solicitation

Agent shall distribute (a) a notice to attorneys representing holders of Direct Talc Personal Injury

Claims of the process for soliciting, collecting, recording and submitting or procedurally casting

votes on the Plan (the "Direct Talc Personal Injury Claim Solicitation Notice") and (b) a certified

plan solicitation directive to be used by such attorneys to indicate how such holders' votes

should be solicited (the "Certified Plan Solicitation Directive"), substantially in the forms

attached to the Solicitation Procedures Order as Exhibits 6-1 and 6-2, respectively, by first-class

- 21 -

mail to all known attorneys representing holders of Direct Talc Personal Injury Claims, as listed

on the Schedules or known to the Solicitation Agent (collectively, the "Firms").[11]

44.    The Direct Talc Personal Injury Claim Solicitation Notice (a) notified the Firms

of the options proposed for soliciting votes on the Plan in respect of Direct Talc Personal Injury

Claims and (b) requested that each Firm complete and return the Certified Plan Solicitation

Directive to the Solicitation Agent on or before August 22, 2023.

45.    The Certified Plan Solicitation Directive permits each Firm to direct the

Solicitation Agent with regard to the solicitation of votes on the Plan from individuals, estates, or

entities who or which hold Direct Talc Personal Injury Claims (collectively, the "Clients")

according to one of the following procedures:

    a.    Master Ballot Solicitation Method.  A Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Master Ballot on which the Firm will record the votes of each of its Clients on the Plan if the Firm certifies, *inter alia*, that it will: (i) solicit, collect and record the votes of its Clients through customary and accepted practices or will obtain authority to procedurally cast each Clients' vote; (ii) comply with the voting procedures set forth in the Solicitation Procedures Order and the Master Ballot; and (iii) only submit votes that reflect the informed decision of its Clients.  If a Firm elects this procedure, the Firm must either (i) provide a Solicitation Package to each Client, or (ii) request that the Solicitation Agent serve Solicitation Packages (without a Ballot) on its Clients.

    b.    Direct Solicitation Method.  If a Firm chooses not to solicit, collect, record and submit the vote of any of its Clients, such Firm may direct the Solicitation Agent to solicit votes on the Plan directly from its Clients.

    c.    Indirect Solicitation Method.  If a Firm prefers to solicit the votes of its Clients but chooses to have the Clients cast their votes on the Plan by submitting separate ballots, the attorney may direct the Solicitation Agent to deliver the Solicitation Packages (including appropriate Ballots) to the Firm, which will, in turn, deliver the Solicitation Packages (including appropriate Ballots) to its Clients.  If the Firm selects this method: (i) the Solicitation Agent will cause the requested number of Solicitation

---

[11]    Inclusion on a Client List (as defined below) or submission of a Ballot by or on behalf of a Client (as defined below) or asserted holder of a Direct Talc Personal Injury Claim is not and does not equate to submission of a claim pursuant to the Talc Personal Injury Trust Documents to be resolved by the Talc Personal Injury Trust contemplated by the Plan.

- 22 -

Packages, including appropriate Ballots, to be served on the Firm; (ii) the Firm must deliver the Solicitation Packages to the Clients within 3 Business Days after receipt; and (iii) the Firm must file an affidavit of service with the Court, and send a copy of such affidavit to the Solicitation Agent, within 3 Business Days of such service. The Firms will not be required to list the names and addresses of the Clients served on the affidavit of service. The affidavit of service only needs to state that service was completed, the date(s) that service was completed, and that the attorney has provided the Solicitation Agent with the required list of Clients, as described in the Solicitation Procedures.

d.   <u>Hybrid Solicitation Method</u>. If a Firm elects the Master Ballot Solicitation Method for only certain of its Clients (collectively, the "<u>Master Ballot Clients</u>") and makes all the certifications described in subsection (a) above with respect to the Master Ballot Clients, the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Master Ballot on which the Firm must record the votes of each of its Master Ballot Clients on the Plan and otherwise comply with the requirements of the Master Ballot Solicitation Method for the Master Ballot Clients. If a Firm elects this procedure, the Firm must either (i) provide a Solicitation Package to each Master Ballot Client, or (ii) request that the Solicitation Agent serve Solicitation Packages (without a Ballot) on its Master Ballot Clients. With respect to such Firm's other Clients that are not Master Ballot Clients (collectively, the "<u>Individual Ballot Clients</u>"), the Firm must elect the procedure under either the Direct Solicitation Method (subsection (b) above) or the Indirect Solicitation Method (subsection (c) above).

46.   The Solicitation Agent will serve the Solicitation Packages in accordance with the instructions set forth on the Certified Plan Solicitation Directives. If a Firm fails to return the Certified Plan Solicitation Directive by August 22, 2023, the Firm will be deemed to have directed the Solicitation Agent to solicit votes on the Plan from its Clients, as identified in the Schedules or the Debtor's or the Solicitation Agent's records, according to the Indirect Solicitation Method described above. The Debtor will reimburse Firms for actual postage paid for transmitting Solicitation Packages.

47.   The Certified Plan Solicitation Directive also required that each Firm submit to the Solicitation Agent a list (the "<u>Client List</u>") that contains the name and last four digits of the Social Security Number, to the extent that such Client has a Social Security Number, and if no Social Security Number is available, the month, date, and year of birth for each Client, and, if the

- 23 -

Firm is requesting that the Solicitation Agent directly or indirectly serve a Solicitation Package

on the Client, the personal, home address of each Client. To the extent Client Lists were not

submitted with the Certified Plan Solicitation Directives by the deadline set forth above, the

Solicitation Agent will distribute Solicitation Packages for the affected Clients as soon as

practicable after the receipt of such lists. If a Firm is retained by additional Clients following the

submission of its Certified Plan Solicitation Directive, the Firm must submit a supplement to its

Certified Plan Solicitation Directive, which the Firm shall be deemed to have certified consistent

with its original Client List. In the event that a Firm no longer represents a Client after

submitting its Certified Plan Solicitation Directive, the Firm must provide written notice to the

Solicitation Agent that the Firm no longer represents such Client and include the Client's address

so that the Solicitation Agent can solicit the Client's vote using the Direct Solicitation Method.

The noticing of holders of Direct Talc Personal Injury Claims through their counsel and voting

on a plan of reorganization through such counsel are both conventional practices in mass tort

chapter 11 cases. See, e.g., In re PG&E Corp., No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17,

2020) [Dkt. 6340] (permitting noticing to claimants through their counsel); In re Boy Scouts of

Am., No. 20-10343 (LSS) (Bankr. D. Del. Sept. 30, 2021) [Dkt. 6438] (same); In re Imerys Talc

Am., Inc. [Dkt. 2863] (same); In re Oakfabco, Inc., No. 15-27062 (JBS) (Bankr. N.D. Ill. Jan. 15,

2019) [Dkt. 771] (same); Duro Dyne [Dkt. 287] (same); In re Yarway Corp., No. 13-11025

(BLS) (Bankr. D. Del. Jan. 27, 2015) [Dkt. 756] (same).

### G.    Voting Deadline for Receipt of Ballots

48.    Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure

statement, the court shall fix a time within which the holders of claims and interests may accept

or reject the plan." The Debtor will use reasonable efforts to distribute, or cause to be

distributed, the Solicitation Packages by first-class mail no later than August 31, 2023, or as soon

- 24 -

as reasonably practicable thereafter.  Based on this schedule, the Debtor requests that the Court

set October 30, 2023 as the deadline by which the Solicitation Agent must actually receive

completed Ballots from holders of Talc Personal Injury Claims and Equity Interests of the

Debtor entitled to vote on the Plan or their counsel.  The Solicitation Procedures provide that, to

be counted, completed Ballots must be returned to and actually received by the Solicitation

Agent on or before the Voting Deadline by (a) mail, (b) overnight delivery, (c) hand delivery, or

(d) via online transmission through a customized electronic Ballot by utilizing the Voting Portal

on the Solicitation Agent's website.

49.    Instructions for casting an electronic Ballot can be found on the Voting Portal

section of the Document Website.  The encrypted ballot data and audit trail created by such

electronic submission will become part of the record of any electronic Ballot submitted in this

manner and the electronic signature will be deemed to be an original signature that is legally

valid and effective.  Any Ballot submitted by facsimile transmission or other electronic means

except through the Voting Portal on the Solicitation Agent's website will not be counted.  As the

Debtor will serve the Solicitation Packages on or before the Solicitation Date, or as soon as

reasonably practicable thereafter, the proposed Voting Deadline provides holders of Talc

Personal Injury Claims entitled to vote on the Plan or their counsel sufficient time (at least

approximately 60 days) within which to review the Solicitation Package, to cast votes on the

Plan, and to deliver those votes to the Solicitation Agent.[12]

---

[12]    See, e.g., Insys Therapeutics [Dkt. 952] (mass tort case approving 28 day solicitation period); Oakfabco
[Dkt. 771] (asbestos-related case approving 42 day solicitation period); Duro Dyne [Dkt. 287]
(asbestos-related case approving 62 day solicitation period); Yarway Corp. [Dkt. 756] (asbestos-related
case approving 46 day solicitation period); In re Specialty Prods. Holding Corp., No. 10-11780 (PJW)
(Bankr. D. Del. Oct. 21, 2014) [Dkt. 5112] (asbestos-related case approving 35 day solicitation period);
Diocese of Camden [Dkt. 1447] (mass tort case approving 33 day solicitation period).

NAI-1531064832

**H.      Procedures for Vote Tabulation**

50.      Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted
> by creditors, other than any entity designated under subsection (e)
> of this section, that hold at least two-thirds in amount and more than
> one-half in number of the allowed claims of such class held by
> creditors, other than any entity designated under subsection (e) of
> this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).  In addition, section 524(g) of the Bankruptcy Code requires that:

> [A]s part of the process of seeking confirmation of such plan [the
> court must determine that] a separate class or classes of claimants
> whose claims are to be addressed by a trust described in
> [section 524(g)(2)(B)(i)]    is established and votes by at least
> 75 percent of those voting, in favor of the plan.

11 U.S.C. § 524(g)(2)(B)(ii)(IV).  Further, Bankruptcy Rule 3018(a) provides that the "court

after notice and hearing may temporarily allow the claim or interest in an amount which the court

deems proper for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).

> **a.       *Allowance of Talc Personal Injury Solely for Voting Purposes in the
> Amount of $1.00 in the Aggregate Per Claimant***

51.      Pursuant to Bankruptcy Rule 3018(a), the Debtor proposes to allow Direct Talc

Personal Injury Claims for the limited purpose of voting on the Plan in the amount of $1.00 in

the aggregate per claimant.  That value will not be binding on the Debtor, the Talc Personal

Injury Trust, the holder of the Direct Talc Personal Injury Claim, or any other party for any

purpose other than voting to accept or reject the Plan.

52.      Indirect Talc Personal Injury Claims are a subset of Talc Personal Injury Claims

in Class 4.  Because the nature and amount of the Indirect Talc Personal Injury Claims are

unknown, the proposed Solicitation Procedures and Solicitation Procedures Order would

similarly allow any Indirect Talc Personal Injury Claims for which (i) a Proof of Claim is timely

filed by the applicable Claims Bar Date or (ii) deemed timely filed by an order of the Court

- 26 -

before the Voting Deadline for voting purposes in the amount of $1.00 in the aggregate per

claimant.  The Solicitation Procedures and the Solicitation Procedures Order would disallow

Indirect Talc Personal Injury Claims that are not listed in the Debtor's Schedules or are listed as

contingent, unliquidated, disputed, in the amount of $0.00, or unknown unless a Proof of Claim

is timely filed by the applicable Claims Bar Date.

53.    Generally, only holders of claims allowed under section 502 of the Bankruptcy

Code are entitled to vote to accept or reject a plan of reorganization.  See 11 U.S.C. § 1126(a)

("The holder of a claim or interest allowed under section 502 of this title may accept or reject a

plan.").  Claims that are (a) listed on the Schedules as contingent, unliquidated, or disputed,

(b) specified in Proofs of Claim in an unliquidated or zero dollar amount or as contingent or

disputed, or (c) the subject of pending objections are not allowed claims under section 502(a) of

the Bankruptcy Code.  However, Bankruptcy Rule 3018(a) provides that the "court after notice

and hearing may temporarily allow [any] claim or interest in an amount which the court deems

proper for the purpose of accepting or rejecting a plan."

54.    The Talc Personal Injury Claims are contingent, unliquidated and disputed.  The

proposed allowance of Talc Personal Injury Claims solely for voting purposes addresses this

issue in a way that adequately considers the particular circumstances of the Chapter 11 Case,

reflects an appropriate scheme for voting on the Plan, and is consistent with similar chapter 11

cases.

55.    Moreover, the allowance of Talc Personal Injury Claims in the amount of $1.00 in

the aggregate per claimant eliminates the need to make any individual or class determination,

whether by estimation or otherwise, regarding Talc Personal Injury Claims, a process that can be

time-consuming and difficult.  In addition, the Debtor will also be tabulating votes from holders

- 27 -

of Talc Personal Injury Claims by headcount for purposes of section 524(g) of the Bankruptcy

Code.  See 11 U.S.C. § 524(g)(2)(B)(ii)(IV).

56.     Courts presiding over numerous other mass tort bankruptcy cases have allowed

mass tort claims in the amount of $1.00 solely for voting on plans of reorganization in the

manner proposed by the Debtor.  See, e.g., In re Boy Scouts of Am. [Dkt. 6438]; In re

Mallinckrodt PLC, No. 20-12522 (JTD) (Bankr. D. Del. June 17, 2021) [Dkt. 2911]; In re Imerys

Talc Am., Inc. [Dkt. 2863]; In re United Gilsonite Laboratories, No. 11-02032 (RNO), (Bankr.

M.D. Pa. Sept. 30, 2014) [Dkt. 2014]; In re PG&E Corp. [Dkt. 6340]; In re TK Holdings Inc.,

No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018) [Dkt. 1639]; In re USA Gymnastics, No. 18-

09108 (RLM) (Bankr. S.D. Ind. Oct. 26, 2021) [Dkt. 1659]; In re the Budd Company, No. 14-

11873 (JBS) (Bankr. N.D. Ill. May 6, 2016) [Dkt. 1811]; In re Johns-Manville Corp., 843 F.2d

636, 646-48 (2d Cir. 1987).

### b.     *Other Procedures for Vote Tabulation*

57.     The Solicitation Agent will tabulate the votes to accept or reject the Plan based on

the Ballots actually received by the Solicitation Agent by the Voting Deadline.  The Solicitation

Procedures specify certain circumstances in which a vote reflected on a Ballot will not be

counted.  Those circumstances include Ballots where:

   a.  The Ballot is submitted by or on behalf of a claimant that is not entitled to
       vote pursuant to the Solicitation Procedures;

   b.  The Ballot is not actually received by the Solicitation Agent in the manner
       set forth in the Solicitation Procedures by the Voting Deadline, unless the
       Debtor shall have granted an extension of the Voting Deadline with
       respect to such Ballot or this Court shall have granted such an extension;

   c.  The Ballot is returned to the Solicitation Agent indicating acceptance or
       rejection of the Plan but is unsigned, provided, however, for the avoidance
       of doubt, a Ballot that is properly submitted electronically via the Voting
       Portal on the Solicitation Agent's website shall be deemed to contain an
       original signature;

- 28 -

d.  The Ballot is illegible or contains insufficient information to permit the identification of each claimant whose vote is reflected on the Ballot;

e.  The Ballot is transmitted to the Solicitation Agent by facsimile or other electronic means other than by online transmission through the Voting Portal on the Solicitation Agent's website;

f.  The Ballot is submitted in an inappropriate form for such Claim;

g.  The Ballot is returned to the Solicitation Agent: (i) indicating neither acceptance nor rejection of the Plan; (ii) indicating both acceptance and rejection of the Plan; or (iii) indicating partial rejection and partial acceptance of the Plan; or

h.  The Ballot is not completed, including, without limitation, (i) a Master Ballot on which the attorney fails to make the required certifications, (ii) a Master Ballot that fails to include the required Exhibit, (iii) solely with respect to the vote of a holder of a Direct Talc Personal Injury Claim whose information is not provided, a Ballot submitted by or on behalf of the holder of a Direct Talc Personal Injury Claim that does not (a) provide the last four digits of the claimant's Social Security Number or indicate that the claimant does not have a Social Security Number and (b) provide, for claimants who do not have a Social Security Number, the claimant's month, date, and year of birth, or (iv) a Ballot submitted by or on behalf of a holder of a Direct Talc Personal Injury Claim or an Interest Holder that does not include the required certifications.

58.    The Solicitation Procedures further provide general voting procedures and

standard assumptions the Solicitation Agent will use in tabulating the Ballots—set forth in more

detail in section VI of the Solicitation Procedures—including the following:

a.  The Solicitation Agent has the discretion, but not the obligation, to contact voters to cure any defects in the Ballots;

b.  A voter that submits a valid Ballot may withdraw his, her, or its vote in accordance with the procedure set forth in the Solicitation Procedures; provided, however, that the Debtor will not be obligated to recognize any withdrawal, revocation, or change of any vote received after the Voting Deadline;

c.  If the Solicitation Agent receives more than one Ballot from different holders purporting to hold the same Claim or Interest, in the absence of contrary information establishing which holder held such Claim or Interest

- 29 -

as of the Voting Deadline, the latest-dated otherwise valid Ballot that is received before the Voting Deadline will be the Ballot that is counted;

d. If the Solicitation Agent receives a Ballot from the holder of a Claim or Interest **and** someone purporting to be his, her, or its attorney or agent, the Ballot received from the holder of the Claim or Interest will be the Ballot that is counted, regardless of when it is received so long as it is received before the Voting Deadline, and the vote of the purported attorney or agent will not be counted.  For the avoidance of doubt, any Ballot received directly from the holder of a Talc Personal Injury Claim shall supersede any Master Ballot returned on account of a Talc Personal Injury Claim and shall be the vote that is counted;

e. If the Solicitation Agent receives more than one Ballot from the same holder of a Claim or Interest for the same Claim or Interest, in the absence of contrary information establishing which Ballot is valid as of the Voting Deadline, the latest-dated otherwise valid Ballot that is received before the Voting Deadline will be the Ballot that is counted.  If multiple Ballots (other than Master Ballots, which are addressed below) are received from a Firm or agent with respect to the same Claim or Interest (but not from the holder thereof), in the absence of contrary information establishing which Ballot is valid as of the Voting Deadline, the latest-dated otherwise valid Ballot that is received before the Voting Deadline (or such later date as agreed by the Debtor) will be the Ballot that is counted; and

f. If the same holder of a Direct Talc Personal Injury Claim appears on more than one Master Ballot, the Solicitation Agent will attempt to coordinate with the respective Firms to cure the discrepancy.  However, if the Firms are unsuccessful in curing the discrepancy, the vote for the holder appearing on more than one Master Ballot will be counted only once and only if such votes are consistent with respect to acceptance or rejection of the Plan.  In the event that such votes are not consistent, none of the votes will be counted.

59.    In addition, the Solicitation Procedures provide that the Solicitation Agent will date stamp all Ballots when received (Ballots received on the day of the Voting Deadline will be date and time-stamped) and will retain originals of all Ballots for a period of two years after the closing of the Chapter 11 Case, unless otherwise ordered by the Bankruptcy Court.

60.    The Debtor submits that the above procedures are reasonable under the circumstances of this Chapter 11 Case.  Accordingly, these aspects of the Solicitation Procedures should be approved together with all other aspects of the Solicitation Procedures.  The proposed

- 30 -

Solicitation Procedures, forms of Ballots, and proposed notice procedures, taken together, afford

claimants with a full and fair opportunity to accept or reject the Plan.  The proposed Solicitation

Procedures provide for an orderly and logical method for soliciting and tabulating the Ballots

received from holders of Talc Personal Injury Claims and are consistent with the voting

procedures adopted for claims in other mass tort chapter 11 cases. Accordingly, the Debtor

requests that the Court approve the Solicitation Procedures.

IV.    **Approval of Confirmation Procedures**

61.    The Debtor seeks approval of the following procedures related to confirmation of

the Plan (the "Confirmation Procedures").

A.    **Confirmation Hearing Notice**

62.    Bankruptcy Rule 3017(d) requires a plan proponent to send to all creditors and

interest holders a notice regarding the deadlines for voting on the plan.  Bankruptcy Rule 2002(b)

requires at least 28 days' notice by mail to all creditors and indenture trustees of the time set for

(a) filing objections to confirmation of a chapter 11 plan and (b) the hearing to consider

confirmation of a chapter 11 plan.[13]  The Confirmation Hearing Notice will be included as part

of the Solicitation Packages and will denote the date and time fixed for (a) submitting votes on

the Plan, (b) filing objections to confirmation of the Plan, and (c) the Confirmation Hearing.  As

noted above, the Solicitation Packages will include the Disclosure Statement, the Plan, and

additional documents relevant to the Plan and the confirmation process, and will be mailed on or

before August 31, 2023, or as soon as reasonably practicable thereafter.  Thus, parties will have

well in excess of the required 28 days' notice of the proposed Confirmation Hearing date and

---

[13]    Bankruptcy Rule 2002(b) provides that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 28 days' notice by mail of the time fixed . . . for filing objections and the hearing to consider confirmation of a . . . chapter 11 . . . plan."

- 31 -

Confirmation Objection Deadline (as defined below) required by Bankruptcy Rule 2002(b).

Accordingly, the Confirmation Hearing Notice should be considered adequate and sufficient

notice under Bankruptcy Rules 2002 and 3017(d).

### B.    Confirmation Hearing

63.    Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure

statement, the court shall fix a time within which the holders of claims and interests may accept

or reject the plan and may fix a date for the hearing on confirmation."  Fed R. Bankr. P. 3017(c).

In accordance with Bankruptcy Rule 3017(c), and in light of the Debtor's proposed solicitation

schedule outlined below, the Debtor proposes November 20, 2023, or the nearest date thereafter

that is convenient for the Court, be fixed by the Court as the hearing on confirmation of the Plan

(the "Confirmation Hearing").  Such date will provide the Debtor sufficient time to solicit votes

on the Plan in accordance with the schedule described herein and to notify the required parties of

the Confirmation Hearing date and the opportunity to submit objections to the Plan, if any,

before the Confirmation Hearing.  The Confirmation Hearing may be continued from time to

time without further notice other than an adjournment announced in open court or a notice of

adjournment filed with the Court and served on the entities who have filed objections to the Plan,

without further notice to other parties in interest.

### C.    Publication Notice and Supplemental Notice Plan

64.    The Debtor further seeks permission pursuant to Bankruptcy Rule 2002(l) to

supplement the foregoing notice procedures by publishing notice of the Debtor's solicitation of

votes on the Plan and the Confirmation Hearing (the "Publication Notice"), substantially in the

form attached to the Solicitation Procedures Order as Exhibit 7-2.  Bankruptcy Rule 2002(l)

permits the Court to order "notice by publication if it finds that notice by mail is impracticable or

that it is desirable to supplement the notice."  Bankruptcy Rule 9008 further provides that the

court may "determine the form and manner" of publication notice.  To supplement the

Confirmation Hearing Notice, the Debtor plans to cause the Publication Notice to be published in

*The Wall Street Journal* and *The Globe and Mail* on or around August 31, 2023, again well

before 28 days before the Confirmation Objection Deadline.

65.    In addition to the above, the Debtor proposes to disseminate notice of the

foregoing through various media sources pursuant to a supplemental notice plan (the

"Supplemental Notice Plan") that has been developed by its proposed plan noticing consultant

and expert, Signal Interactive Media, as set forth in the *Declaration of Shannon R. Wheatman,*

*Ph.D. in Support of Supplemental Notice Plan* attached to the Solicitation Procedures Order as

Exhibit 7-4.  The Supplemental Notice Plan will be multi-faceted, and will consist of radio,

newspapers, consumer magazines, television advertising, internet banner advertising, paid

internet search listings, and a social media campaign.  The Supplemental Notice Plan is being

used in conjunction with the Publication Notice to ensure the broadest, yet most-targeted and

efficient, publication noticing program practicable, and is consistent with other noticing plans

that have been approved by courts in other chapter 11 cases involving large numbers of

claimants.  See In re Kaiser Gypsum Co., No. 16-31602 (JCW) (Bankr. W.D.N.C. Oct. 23,

2019), Dkts. 1267, 1875 (approving notice plan for unknown asbestos claimants that included

publishing notice in numerous consumer print publications, along with banner advertisements on

major online advertising networks and social media platforms); In re Garlock Sealing Techs.

LLC, No. 10-31607 (Bankr. W.D.N.C. Apr. 10, 2015), Dkts. 4387, 4542 (approving notice plan

for unknown asbestos claimants that utilized printed publication notices in multiple consumer

and legal publications and television advertisements, both tailored to reach the specific unknown

claimants at hand); In re the Flintkote Co., No. 04-11300 (MFW) (Bankr. D. Del. Feb. 17, 2015),

- 33 -

Dkts. 8710, 8768 (approving notice plan that included banner advertisement on popular internet

sites, a nationwide distribution of a press release utilizing the internet, newspapers, radio and

television and outreach to associations and unions that unknown claimants are likely to be

members of); Specialty Prods., Dkts. 5057-10, 5112 (approving notice plan that included a

general publication notice in national newspapers and on the internet, a national press release and

targeted mail outreach to relevant interested parties).

66.    The content of the Publication Notice and the broad scope of its distribution,

together with the Supplemental Notice Plan, provide adequate notice of the Confirmation

Hearing, the Confirmation Objection Deadline, and the Voting Deadline to all unknown potential

claimants.  The Publication Notice and the Supplemental Notice Plan, coupled with the mailed

Confirmation Hearing Notice, will provide as wide a distribution of notice of the Plan, the

Confirmation Hearing, and related deadlines as is reasonable and practicable under the

circumstances of the Chapter 11 Case for both known and unknown claimants.

### D.    The Confirmation Objection Procedures

67.    Bankruptcy Rule 3020(b)(1) provides that "[a]n objection to confirmation of the

plan shall be filed and served . . . within a time fixed by the court."  In addition, Bankruptcy Rule

2002(b) provides that a plan proponent must provide at least 28 days' notice of the deadline for

filing such objections.  In accordance with the Confirmation Hearing, the Debtor proposes that

any objection to confirmation of the Plan must (a) be in writing; (b) conform to the Bankruptcy

Rules and the Local Rules; (c) state the name, address, telephone number and email address of

the objecting party and the amount and nature of the Claim or Interest of such entity, if any;

(d) state with particularity the basis and nature of any objection to the Plan, including any

evidentiary support thereof, and, if practicable, a proposed modification to the Plan that would

resolve such objection; and (e) be filed, contemporaneously with a proof of service, with this

- 34 -

Court and served upon the parties at the addresses listed in the Confirmation Hearing Notice by

no later than October 30, 2023 (the "Confirmation Objection Deadline"), which is 60 days after

the Debtor expects to complete mailing of the Solicitation Packages and provides ample time for

parties in interest to consider and vote upon, or respond to, the Plan.  In addition, the Debtor

proposes that the deadline to file the Plan Supplement be no later than 10 days prior to the

Voting Deadline.

68.     The Debtor requests that objections to confirmation of the Plan that are not timely

filed and served in accordance with the provisions in the Solicitation Procedures Order not be

considered by this Court and be denied and overruled unless otherwise ordered by this Court.

**E.     Voting Certification, Other Supporting Declarations and Memorandum of
         Law in Support of Confirmation**

69.     The Debtor also proposes that it be authorized to file (a)  the declaration certifying

the voting amount and number of claims in Class 4 and interests in Class 6 voting to accept or

reject the Plan (the "Voting Certification")[14] by no later than 4:00 p.m. (prevailing Eastern time)

on November 13, 2023, and (b) a consolidated memorandum of law and reply in support of

confirmation (including any declarations in support thereof) by no later than 4:00 p.m.

(prevailing Eastern time) on November 13, 2023 (the "Confirmation Reply Deadline").[15]  The

Debtor submits that the issues raised in any objections to confirmation of the Plan, and any

proposed resolutions to such issues, will more efficiently and effectively be considered by this

Court and parties in interest if the Debtor is permitted to file a consolidated reply to any such

---

[14]     The Voting Certification will include a list of holders of Claims in Class 4 who opted out of the releases contained in the Plan, as well as those holders of Claims in Class 4 whose solicitation packages were returned as undeliverable, or who were not served with a solicitation package.

[15]     The Debtor proposes that any other party in interest that wishes to file a reply to any objection to confirmation of the Plan do so by the Confirmation Reply Deadline.

objections that will set forth responses to any issues raised and, if appropriate, proposed

modifications to the Plan to address such issues.

## WAIVER OF MEMORANDUM OF LAW

70.     The Debtor respectfully requests that the Court waive the requirement to file a

separate memorandum of law pursuant to Local Bankruptcy Rule 9013-1(a)(3) because the legal

basis upon which the Debtor relies on is incorporated herein and the Motion does not raise any

novel issues of law.

## NOTICE

71.     Consistent with the *Order Establishing Case Management and Administrative

Procedures* [Dkt. 554] (the "Case Management Order") notice of this Motion has been provided

to (a) the U.S. Trustee; (b) counsel to the Talc Committee; (c) counsel to the Debtor's non-debtor

affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson; (d) the FCR and her

counsel; (e) counsel to the AHC of Supporting Counsel; (f)  the other parties on the Master Service

List established by the Case Management Order; and (g) the Talc Firms, in accordance with the

Service Procedures Order.  In light of the nature of the relief requested herein, the Debtor

respectfully submits that no other or further notice need be provided.

## NO PRIOR REQUEST

72.     No prior request for the relief sought in this Motion has been made to this or any

other court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court (a) enter the

Solicitation Procedures Order; and (b) grant such other and further relief to the Debtor as the

Court may deem proper.

Dated: July 11, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

NAI-1531064832