**<u>Exhibit 2</u>**

**Solicitation Procedures**

NAI-1531325514

**SOLICITATION AND TABULATION PROCEDURES FOR
PLAN OF REORGANIZATION OF LTL MANAGEMENT LLC**

The following procedures (the "**Solicitation Procedures**") are adopted with respect to (a) the distribution of Solicitation Packages for the Plan and (b) the return and tabulation of Ballots to be used in voting on the Plan.

The Solicitation Procedures set out in this document are supplemented by the instructions accompanying the Ballots included in the Solicitation Packages that will be sent to (or can be obtained by) those persons entitled to vote on the Plan. Reference should be made to those instructions as well as to the contents of this document; however, in the case of a conflict, the terms of these Solicitation Procedures control.

## I.    DEFINITIONS[1]

1.      "**2021 Corporate Restructuring**" means, the internal corporate restructuring of Old JJCI that was completed on October 12, 2021, by which Old JJCI ceased to exist and the Debtor and Holdco were formed.

2.      "**Affiliate**" means, with respect to any specified entity: (a) an "affiliate," as defined in section 101(2) of the Bankruptcy Code, of such specified entity; or (b) any other Person that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by or is under common control with the specified entity. As used in clause (b) of the prior sentence, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the specified entity (whether through the ownership of equity, by contract or otherwise).

3.      "**AHC of Supporting Counsel**" means the Ad Hoc Committee of Supporting Counsel formed to advance the common interests of the law firms representing certain holders of Talc Personal Injury Claims that have entered into plan support agreements with the Debtor, J&J and Holdco.

4.      "**Ancillary Indemnity Claims**" means a Claim for contribution, reimbursement, subrogation, or indemnity (as those terms are defined by applicable non-bankruptcy law of the relevant jurisdiction), whether contractual or implied by law, and any other derivative Claim, whether in the nature of or sounding in contract, tort, warranty, or other theory of law, that is not an Indirect Talc Personal Injury Claim.

5.      "**Ballot**" means any Indirect Ballot, Direct Ballot, Master Ballot, or Class 6 Ballot.

6.      "**Bankruptcy Code**" means title 11 of the United States Code, as in effect on the Petition Date or thereafter amended with retroactive applicability to the Chapter 11 Case.

---

[1]    The preceding capitalized terms are defined below. Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

7.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case.

8.      "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code and any local rules of the Bankruptcy Court, as in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case.

9.      "**Business Day**" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, NY are authorized or required by law or executive order to close.

10.      "**Certified Plan Solicitation Directive**" means the certified plan solicitation directive to be used by attorneys representing individuals asserting Direct Talc Personal Injury Claims to indicate how such individuals' votes should be solicited, substantially in the form attached to the Solicitation Procedures Order as Exhibit 6-2.

11.      "**Chapter 11 Case**" means the chapter 11 case of the Debtor pending in the Bankruptcy Court.

12.      "**Claim**" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code as it pertains to "claims" against the Debtor.

13.      "**Claims Bar Date**" means any deadline for filing a Proof of Claim that may be specifically fixed by an order of the Bankruptcy Court with respect to certain Claims.

14.      "**Class**" means a category of holders of Claims or Interests described in Article III of the Plan.

15.      "**Class 6 Ballot**" means a ballot submitted by holders of Interests in Class 6, substantially in the form attached to the Solicitation Procedures Order as Exhibit 3-4.

16.      "**Client**" means clients that hold Direct Talc Personal Injury Claims and are represented by a Firm.

17.      "**Client List**" a list of Clients that a Firm is required to submit, and supplement if the Firm is retained by any new Clients, to the Solicitation Agent in order to complete its Certified Plan Solicitation Directive, so that the Client List is received by the Solicitation Agent at the same time as the Firm's Certified Plan Solicitation Directive, and as an Exhibit to the Master Ballot, so that the Exhibit is received not later than the Voting Deadline.

18.      "**Clerk**" means the clerk of the Bankruptcy Court.

19.      "**Confirmation Date**" means the date on which the District Court enters the Confirmation Order on its docket.

NAI-1531325514

**20.**     "**Confirmation Hearing**" means, collectively, the hearing or hearings held by the Bankruptcy Court or the District Court on Confirmation of the Plan, as such hearing or hearings may be continued from time to time.

**21.**     "**Confirmation Hearing Notice**" means the notice included in the Solicitation Packages notifying parties, among other things, of the date and time fixed for the Confirmation Hearing, the deadline by which parties entitled to vote must submit Ballots to accept or reject the Plan, and the opportunity to submit objections to the Plan, substantially in the form attached to the Solicitation Procedures Order as Exhibit 7-1.

**22.**     "**Confirmation Objection Deadline**" means the date established by the Bankruptcy Court as the deadline to file and serve objections to confirmation of the Plan.

**23.**     "**Confirmation Order**" means the order of the Bankruptcy Court and the District Court acting jointly or the order of the District Court affirming an order entered separately by the Bankruptcy Court, in either case which order confirms the Plan pursuant to section 1129 of the Bankruptcy Code.

**24.**     "**Contract/Lease Notice**" means the form of notice to be provided to counterparties to the Debtor's Executory Contracts and Unexpired Leases, substantially in the form attached to the Solicitation Procedures Order as Exhibit 5.

**25.**     "**Debtor**" means LTL Management LLC.

**26.**     "**Direct Ballot**" means a ballot submitted by an individual holder of a Direct Talc Personal Injury Claim, substantially in the form attached to the Solicitation Procedures Order as Exhibit 3-1.[2]

**27.**     "**Direct Talc Personal Injury Claim**" means a Talc Personal Injury Claim other than an Indirect Talc Personal Injury Claim.

**28.**     "**Direct Talc Personal Injury Claim Solicitation Notice**" means the notice to be provided to attorneys representing holders of Direct Talc Personal Injury Claims of the process for voting on the Plan.

**29.**     "**Disclosure Statement**" means the *Disclosure Statement for Amended Chapter 11 Plan of Reorganization of LTL Management LLC*, dated July 11, 2023 including all exhibits and schedules thereto and references therein that relate to the Plan, approved by order of the Bankruptcy Court as containing adequate information, and distributed in accordance with such order of approval, as such disclosure statement and supplemental disclosure documents may be amended, modified, or supplemented from time to time.

**30.**     "**Docket**" means the docket in the Chapter 11 Case maintained by the Clerk.

---

[2]     Submission of a Direct Ballot does not constitute the submission of a claim to the Talc Personal Injury Trust. Submission of claims for resolution to the Talc Personal Injury Trust must be made in accordance with the Talc Personal Injury Trust Documents.

31.    "**E-Ballot**" means a Ballot that is properly completed through the Solicitation Agent's electronic balloting platform, the Voting Portal.

32.    "**Effective Date**" means the Business Day upon which all of the conditions precedent to the occurrence of the Effective Date contained in <u>Section 8.2</u> of the Plan have been satisfied or waived pursuant to <u>Section 8.3</u>.

33.    "**Executory Contract**" means any executory contract as to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

34.    "**Exhibit**" means the exhibit to the Master Ballot which contains a list of Clients whose votes are reflected on the Master Ballot and from whom the Firm submitting the Master Ballot has solicited, collected, and recorded votes.

35.    "**Equity Interests of the Debtor**" means the Interests issued by the Debtor.

36.    "**FCR**" means Randi S. Ellis (or any Bankruptcy Court-appointed successor), in her capacity as the legal representative for any and all persons who may assert Talc Personal Injury Demands in the future, but who are currently unknown.  "FCR" stands for Future Claimants' Representative.

37.    "**Firm**" means an attorney representing a holder of a Direct Talc Personal Injury Claim, as listed on the Schedules or known to the Solicitation Agent.

38.    "**Gynecologic Cancer**" means ovarian, fallopian tube, primary peritoneal, uterine and cervical cancers.

39.    "**Holdco**" means Johnson & Johnson Holdco (NA) Inc., a New Jersey corporation that was formerly named Johnson & Johnson Consumer Inc.

40.    "**Impaired**" means a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

41.    "**Indirect Ballot**" means a ballot submitted by a holder of an Indirect Talc Personal Injury Claim, substantially in the form attached to the Solicitation Procedures Order as <u>Exhibit 3-3</u>.

42.    "**Indirect Talc Personal Injury Claim**" means (a) a Talc Personal Injury Claim for contribution, reimbursement, subrogation, or indemnity (as those terms are defined by applicable non-bankruptcy law of the relevant jurisdiction), whether contractual or implied by law, and any other derivative Talc Personal Injury Claim, whether in the nature of or sounding in contract, tort, warranty, or other theory of law, in respect of (i) the payment, whether pursuant to a settlement, judgment, or verdict, of any claim for or otherwise relating to death, injury, or damages that is asserted by or on behalf of an injured individual, the estate, legal counsel, relative, assignee, or other representative of any injured individual, or an individual who claims injury or damages as a result of the injury or death of another individual or (ii) the payment of medical or other expenses of, or the provision of medical treatment, medical equipment, or other services or goods to, an injured individual, but, for the avoidance of doubt, not a Claim for contribution, reimbursement, subrogation, or indemnity, or any other derivative Claim, in respect

NAI-1531325514

of legal fees or expenses incurred by the holder of such Talc Personal Injury Claim in connection with such payment, (b) a Talc Personal Injury Claim of any Imerys/Cyprus Party for contribution, reimbursement, subrogation, or indemnity under any Imerys/Cyprus Agreement or otherwise, or (c) a Governmental Action Claim.  For the avoidance of doubt, an Indirect Talc Personal Injury Claim shall not include (i) any claim for or otherwise relating to death, injury, or damages caused by talc or a product or material containing talc that is asserted by or on behalf of any injured individual, the estate, legal counsel, relative, assignee, or other representative of any injured individual, or an individual who claims injury or damages as a result of the injury or death of another individual caused by talc or a product or material containing talc regardless of whether such claim is seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative, or any other costs or damages, or any legal, equitable or other relief whatsoever, including pursuant to a settlement, judgment, or verdict or (ii) any claim against any Imerys/Cyprus Party based on, arising out of, or in any way relating to the Imerys/Cyprus Related Rights.  By way of illustration and not limitation of claims contemplated by the foregoing clause (i), an Indirect Talc Personal Injury Claim shall not include any claim for loss of consortium, loss of companionship, services and society, or wrongful death.

43.    "**Individual Ballot Clients**" means Clients other than Master Ballot Clients represented by a Firm that elects the Hybrid Solicitation Method.

44.    "**Interest**" means the rights of any holder of the equity of the Debtor and the rights of any Person to purchase or demand the issuance of any equity of the Debtor, including: (a) redemption, conversion, exchange, voting, participation, and distribution rights; (b) liquidation preferences; and (c) any option and warrant rights.

45.    "**Interest Holder**" means a holder of Equity Interests of the Debtor in Class 6.

46.    "**J&J**" means Johnson & Johnson, a New Jersey corporation.

47.    "**J&J Talc Products**" mean all products formulated, manufactured, distributed, and/or sold by the Debtor and/or any LTL Corporate Party containing talcum powder.

48.    "**LTL Corporate Parties**" means J&J and all of its current and former Affiliates other than the Debtor, including all Persons listed on Schedule 2 of the Plan, each of which are or were Affiliates of J&J.

49.    "**Master Ballot**" means a ballot submitted by a Firm representing one or more holders of Direct Talc Personal Injury Claims, substantially in the form attached to the Solicitation Procedures Order as Exhibit 3-2.

50.    "**Master Ballot Clients**" means Clients represented by a Firm that elects the Master Ballot Solicitation Method or the Hybrid Solicitation Method from whom the Firm will solicit, collect, record and submit votes on the Plan, which votes will be reflected on the Exhibit to the Master Ballot submitted by the Firm.

51.    "**Mesothelioma**" means malignant mesothelioma (pleural (except well-differentiated papillary mesothelioma), peritoneal, pericardial or testicular).

NAI-1531325514

52.    "**Non-Talc Claim**" means any Claim that is not a Talc Personal Injury Claim.

53.    "**Notice of Non-Voting Status**" means the form of notice to be provided to holders of Unclassified Claims, holders of Unimpaired Claims and Equity Interests in Classes 1, 2, 3 and 5, substantially in the form attached to the Solicitation Procedures Order as Exhibit 4.

54.    "**Old JJCI**" means the former Texas limited liability company named Chenango Zero LLC (successor-by-merger to Johnson & Johnson Consumer Inc., a New Jersey corporation, and predecessor to the Debtor and Holdco), which ceased to exist as of the completion of the 2021 Corporate Restructuring (including all former names and historical forms).

55.    "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit, or other entity.

56.    "**Petition Date**" means April 4, 2023.

57.    "**Plan**" means the *Amended Chapter 11 Plan of Reorganization of LTL Management LLC*, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code.

58.    "**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed by the Debtor at least fourteen (14) days prior to the deadline for objecting to Confirmation of the Plan, as the same may be amended, modified, or supplemented before the Effective Date, including the following:  (a) the Amended Articles of Organization of the Reorganized Debtor (Exhibit A to the Plan), (b) the Amended Operating Agreement of the Reorganized Debtor (Exhibit B to the Plan), (c) the Cooperation Agreement (Exhibit E to the Plan), (d) a list or description of Governmental Claims (Exhibit F to the Plan), (e) a list or description of Retained Rights of Action (Exhibit G to the Plan), (f) a list of Talc Insurance Policies (Exhibit H to the Plan), (g) a list of Talc Insurance Settlement Agreements (Exhibit I to the Plan), (h) the Talc Personal Injury Trust Agreement (Exhibit J to the Plan), (i) the Talc PI Note (Exhibit K to the Plan), (j) the Talc PI Pledge Agreement (Exhibit L to the Plan), (k) the list of Executory Contracts and Unexpired Leases to be rejected by the Debtor (Exhibit N to the Plan), and (l) the list of officers and manager of the Reorganized Debtor (Exhibit O to the Plan); provided, however, that the Plan Document listed in clause (k) will be revised as needed to take into account any additional Executory Contracts and Unexpired Leases to be rejected in accordance with Article V of the Plan.  The Plan Supplement will be served only on those parties that have requested notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002 and any party in interest who requests in writing a copy from counsel for the Debtor.  Once the Plan Supplement is filed, a copy will also be available for review on the Claims Agent's website free of charge at https://dm.epiq11.com/case/ltl/dockets.

59.    "**Proof of Claim**" means any proof of claim filed with the Bankruptcy Court or the Claims Agent pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002 that asserts a Claim against the Debtor.

60.     "**Publication Notice**" means a published notice of the date and time fixed for the Confirmation Hearing, the deadline by which parties entitled to vote must submit Ballots to accept or reject the Plan, and the opportunity to submit objections to the Plan, substantially in the form attached to the Solicitation Procedures Order as <u>Exhibit 7-2</u>.

61.     "**Reorganized Debtor**" means the Debtor on and after the Effective Date.

62.     "**Rule 3018 Motion**" means any motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of a Claim, for voting purposes only, in a different amount than proposed in the Solicitation Procedures.

63.     "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs of the Debtor as filed on the Docket in accordance with section 521 of the Bankruptcy Code, as such schedules and statements may be amended or supplemented from time to time.

64.     "**Settling Third Party Payor**" means (a) any Third-Party Payor that is designated, with the consent of the Debtor, J&J, and the AHC of Supporting Counsel, in the Confirmation Order as a Settling Third-Party Payor and (b) any Third-Party Payor that is designated as a Settling Third-Party Payor by the Talc Personal Injury Trust on or after the Effective Date.

65.     "**Solicitation Agent**" means Epiq Corporate Restructuring, LLC, or any other firm that may be retained by the Debtor to act as the solicitation and tabulation agent with respect to the Plan.

66.     "**Solicitation Date**" means the date established by the Bankruptcy Court as the deadline by which the Solicitation Agent must cause the Solicitation Packages to be distributed to the parties entitled to vote to accept or reject the Plan, as more specifically provided herein.

67.     "**Solicitation Package**" means, and will consist of, all of the following:

  a.  a cover letter describing (i) the contents of the Solicitation Package, (ii) the contents of any enclosed USB flash drive and instructions for use of the USB flash drive, and (iii) information about how to obtain access to, free of charge, the Plan, the Disclosure Statement, the order approving the Disclosure Statement, together with the exhibits thereto, and any other documents mentioned in the Solicitation Package;

  b.  the Confirmation Hearing Notice;

  c.  copies (in electronic format) of the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Bankruptcy Court prior to entry of the Solicitation Procedures Order);

  d.  the Solicitation Procedures Order, excluding any exhibits thereto (in electronic format);

e.      solely for holders of Talc Personal Injury Claims, as applicable, and equity interests of the Debtor, an appropriate Ballot and voting instructions for the same;

f.      solely for holders of Talc Personal Injury Claims, as applicable, and equity interests of the Debtor, a pre-addressed, postage prepaid return envelope for completed Ballots;

g.      any letters from (i) the Debtor, which letter will be filed no later than one week prior to the deadline to object to the Solicitation Procedures Motion and included as Exhibit 7-3 to the Solicitation Procedures Order; (ii) the AHC of Supporting Counsel, which letter will be filed no later than one week prior to the deadline to object to the Solicitation Procedures Motion and included as Exhibit 7-5 to the Solicitation Procedures Order; and (iii) certain other constituencies who may recommend acceptance of the Plan setting forth their recommendations with respect to the Plan; and

h.      any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

68.     "**Solicitation Procedures Motion**" means the motion of the Debtor requesting entry of the Solicitation Procedures Order, filed on July 11, 2023.

69.     "**Solicitation Procedures Order**" means the order of the Bankruptcy Court approving the relief sought in the Solicitation Procedures Motion, including approving the Disclosure Statement and Solicitation Procedures set forth herein.

70.     "**Specified Insured Individual**" means a holder of a Talc Personal Injury Claim for or otherwise relating to death, injury, or damages (excluding death, injury, or damages involving mesothelioma) asserted by or on behalf of an injured individual or the estate, legal counsel, relative, assignee, or other representative of an injured individual, provided such injured individual or the estate, legal counsel, relative, assignee, or other representative of such injured individual retained counsel to pursue such Talc Personal Injury Claim prior to June 1, 2023.

71.     "**Supplemental Notice Plan**" means the supplement to the Publication Notice comprised of various media sources, including, among other things, trade publications, consumer magazines, television advertising, internet banner advertising, paid internet search listings, and a social media campaign, developed by the Debtor's proposed plan noticing consultant and expert, Signal Interactive Media, as set forth in the *Declaration of Shannon R. Wheatman, Ph.D in Support of Supplemental Notice Plan* attached to the Solicitation Procedures Order as <u>Exhibit 7-4</u>.

72.     "**Talc Personal Injury Claim**" means any claim or Talc Personal Injury Demand against the Debtor, Old JJCI, or any other Protected Party, whether known or unknown, including with respect to any manner of alleged bodily injury, death, sickness, disease, emotional distress, fear of cancer, medical monitoring, or any other alleged personal injuries (whether physical, emotional, or otherwise), directly or indirectly arising out of or in any way relating to the presence of or exposure to talc or talc-containing products based on the alleged pre-Effective

Date acts or omissions of the Debtor, Old JJCI, or any other Person for whose conduct the Debtor has, or is alleged to have, liability, whether by assumption of such liability from such other Person, by agreement to indemnify, defend, or hold harmless such other Person from and against such liability, or otherwise, including any such claims and Talc Personal Injury Demands directly or indirectly arising out of or in any way relating to:  (a) any talc or talc-containing products previously mined, processed, manufactured, designed, marketed, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, and/or in any other way made available by the Debtor or any other Person; (b) any talc or talc-containing materials present at any premises owned, leased, occupied, or operated by any Person; or (c) any talc in any way connected to the Debtor alleged to contain asbestos or other constituent.  Talc Personal Injury Claims include all such claims and Talc Personal Injury Demands, whether:  (i) in tort, contract, warranty, restitution, conspiracy, guarantee, or any other theory of law, equity or admiralty, whether brought, threatened, or pursued in any United States court or other court anywhere in the world, including Canada; (ii) liquidated or unliquidated, fixed or contingent, direct or indirect, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity, or otherwise (including under piercing the corporate veil, agency, alter ego, successor liability, fraudulent conveyance, conspiracy, enterprise liability, market share, joint venture, or any other legal or equitable theory); (iii) seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative, or any other costs, fees, injunctive, or similar relief, or any other measure of damages; (iv) seeking any legal, equitable, or other relief of any kind whatsoever, including, for the avoidance of doubt, any claims and Talc Personal Injury Demands arising out of or in any way relating to the presence of or exposure to talc or talc-containing products assertable against the Debtor or any other Protected Party; or (v) held by Persons residing within the United States or in a foreign jurisdiction, including Canada.  Talc Personal Injury Claims also include any such claims that have been resolved or are subject to resolution pursuant to any agreement, or any such claims that are based on a judgment or verdict.  Talc Personal Injury Claims do not include any claim or demand by any present or former employee of a predecessor or Affiliate of the Debtor for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer.  For the avoidance of doubt, Talc Personal Injury Claims include:  (A) all claims, demands, debts, obligations, or liabilities for compensatory damages (such as, without limitation, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages; (B) PI/Stay Order Claims; (C) Indirect Talc Personal Injury Claims; and (D) Canadian Claims. Notwithstanding the foregoing, Talc Personal Injury Claims do not include any claim that a Settling Talc Insurance Company may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Talc Insurance Company to assert any such claim against its reinsurers and/or retrocessionaires in their capacities as such.  For the avoidance of doubt, Talc Personal Injury Claims do not include any claim against any Imerys/Cyprus Party based on, arising out of, or in any way relating to the Imerys/Cyprus Related Rights. Notwithstanding the foregoing, Talc Personal Injury Claims shall not include Ancillary Indemnity Claims.

NAI-1531325514

73.     "__Talc Personal Injury Demand__" means a demand for payment, present or future, against the Debtor or any other Protected Party that:  (a) falls within the meaning of "demand" in section 524(g) of the Bankruptcy Code; (b) is in respect of an injury that manifests after the Effective Date; and (c) would have otherwise been a Claim that is a Talc Personal Injury Claim if such injury had manifested on or before the Effective Date.  For the avoidance of doubt, Talc Personal Injury Demands do not include any demand for payment against any Imerys/Cyprus Party based on, arising out of, or in any way relating to the Imerys/Cyprus Related Rights.

74.     "__Talc Personal Injury Governmental Action Claims Sub-Trust__" means the sub-trust of the Talc Personal Injury Trust established pursuant to the Talc Personal Injury Trust Agreement to resolve and satisfy Governmental Action Claims.

75.     "__Talc Personal Injury Tort Claims Sub-Trust__" means the sub-trust of the Talc Personal Injury Trust established pursuant to the Talc Personal Injury Trust Agreement to resolve and satisfy Talc Personal Injury Claims other than Governmental Action Claims and TPP Lien Claims, which sub-trust is a "qualified settlement fund" within the meaning of Treasury Regulations issued under Section 468B of the Internal Revenue Code.

76.     "__Talc Personal Injury TPP Lien Claims Sub-Trust__" means the sub-trust of the Talc Personal Injury Trust established pursuant to the Talc Personal Injury Trust Agreement to resolve and satisfy TPP Lien Claims.

77.     "__Talc Personal Injury Trust__" means the LTL Talc Personal Injury Trust established pursuant to the Talc Personal Injury Trust Agreement and comprised of the Talc Personal Injury Governmental Action Claims Sub-Trust, the Talc Personal Injury TPP Lien Claims Sub-Trust, and the Talc Personal Injury Tort Claims Sub-Trust.

78.     "__Talc Personal Injury Trust Agreement__" means that certain trust agreement, substantially in the form attached to the Plan as Exhibit J.

79.     "__TCC__" means the official committee of talc claimants appointed in the Chapter 11 Case, as such committee is reconstituted from time to time.

80.     "__Third Party Payor__" means a health insurer, an employer-sponsored health plan, a union health and welfare fund, any governmental agency or healthcare insurance program (including (a) the United States Department of Health and Human Services, on its own behalf and on behalf of its component agencies, which are the Centers for Medicare & Medicaid Services and the Indian Health Service on behalf of its federally-operated programs, (b) the Defense Health Agency on its own behalf and on behalf the TRICARE Program, and (c) the United States Department of Veterans Affairs), or any other provider of healthcare benefits, including any third-party administrator or agent on behalf thereof, in each case in its capacity as such.

81.     "__TPP Lien Claims__" means (a) any and all Indirect Talc Personal Injury Claims held by Settling Third-Party Payors in respect of the Specified Insured Individuals and (b) any and all claims of Settling Third-Party Payors against (i) Specified Insured Individuals that hold

Talc Personal Injury Claims or (ii) payments to such Specified Insured Individuals by the Talc Personal Injury Trust.

82.     "**Unclassified  Claims**" means Administrative Claims or Priority Tax Claims, which claims are unclassified and Unimpaired under the Plan.

83.     "**Unexpired Lease**" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

84.     "**Unimpaired**" means a Claim or a Class of Claims, that is not Impaired under the Plan.

85.     "**United States Trustee**" means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the District of New Jersey.

86.     "**Voting Deadline**" means the date established by the Bankruptcy Court as the deadline for the return of Ballots for voting on the Plan, which may be extended by the Debtors or the Bankruptcy Court upon notice to parties in interest and in accordance with these Solicitation Procedures.

87.     "**Voting Portal**" means the customized online balloting portal available on the Solicitation Agent's website at https://dm.epiq11.com/ltl.

88.     "**Voting Record Date**" means [_____, 2023], which is the record date for purposes of determining which holders of Claims or Interests are entitled to vote on the Plan.

## II.     DISTRIBUTION OF SOLICITATION PACKAGES

This Section II explains the manner in which Solicitation Packages will be distributed to parties entitled to vote on the Plan and other interested parties.

1.     **Talc Personal Injury Claims.**   The Solicitation Agent will cause Solicitation Packages to be served with respect to Talc Personal Injury Claims as of the Voting Record Date in the manner described in this Section IV below.  If a holder of a Talc Personal Injury Claim contacts the Solicitation Agent before the Voting Deadline and requests a Solicitation Package, the Solicitation Agent will provide such claimant with a Solicitation Package within five Business Days of such request or as soon as practicable.

2.     **Holders of Equity Interests of the Debtor.**   The Solicitation Agent will cause Solicitation Packages to be served with respect to Equity Interests of the Debtor in Class 6 on the holders of such Equity Interests as of the Voting Record Date.

3.     **Other Parties.**   The Solicitation Agent will cause a Solicitation Package (without a Ballot) to be served for informational purposes upon (a) the Office of the United States Trustee for the District of New Jersey, (b) the Securities and Exchange Commission, (c) counsel to the TCC, (d) counsel to the FCR, (e) those parties that have requested notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002, (f) counsel to the Ad Hoc Committee of States Holding Consumer Protection Claims; and (g) counsel to the AHC of Supporting Counsel.

-11-

The Debtor may, in its discretion, distribute or cause the Solicitation Agent to distribute Solicitation Packages to other parties not specified in this Section II.

**4.      Transferred Claims.**    With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, shall be entitled to cast a Ballot on account of such Claim only if:  (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files by the Voting Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.  In instances where a Claim has been the subject of one or more partial transfers, each holder of a portion of said Claim shall be deemed to hold one Claim for numerosity purposes with respect to the Plan.

**5.      Exception for Undeliverables.**    Notwithstanding any provision in this Section II to the contrary, neither the Debtor nor the Solicitation Agent will be required to mail a Solicitation Package to any Person or entity from which the notice of the Solicitation Procedures Motion or other mailed notice in the Chapter 11 Case was returned as undeliverable by the postal service, unless the Solicitation Agent is provided with an accurate address for such person or entity before the Solicitation Date.

**6.      Requests for Paper Copies.**  Copies of the materials contained in the Solicitation Packages (excluding the Confirmation Hearing Notice and the Ballots, which will be provided in paper copy) may be provided in paper copy or on USB drive at the Debtor's discretion and shall be made available free of charge on the Document Website; provided, however, that any party may request to receive paper copies of such materials from the Solicitation Agent at no cost to such party.

**7.      Solicitation Agent's Contact Information.**  Any holder of a Claim that receives incomplete materials or would like to request additional materials may contact the Solicitation Agent by emailing LTLVote@epiqglobal.com or calling (888) 431-4056 (Toll-Free U.S. & Canada) or +1 (503) 822-6762 (International)

## III.    NOTICE OF NON-VOTING STATUS

The Debtor will distribute a copy of the Confirmation Hearing Notice and Notice of Non-Voting Status to holders of Unimpaired Claims in Classes 1, 2, 3, and 5.  The Debtor will also distribute a copy of the Notice of Non-Voting Status to holders of Unclassified Claims.  The Debtor will distribute a copy of the Contract/Lease Notice to counterparties to the Debtor's Executory Contracts and Unexpired Leases.

## IV.    SPECIAL PROCEDURES RELATING TO TALC PERSONAL INJURY CLAIMS

**1.      Required Certifications.**  No vote in favor of or against the Plan by or on behalf of a holder of a Talc Personal Injury Claim shall be counted by the Solicitation Agent unless the Ballot reflecting such vote is timely submitted to the Solicitation Agent with the written

certifications contained on the Ballot, <u>provided</u> that a Ballot that is properly submitted electronically via the Voting Portal shall be deemed to contain an original signature.

a.   **Certification for Direct Ballots.**  Direct Ballots voted by, or on behalf of, a holder of a Direct Talc Personal Injury Claim will contain certain certifications, under penalty of perjury pursuant to 28 U.S.C. § 1746, that, *inter alia*, the person signing the Direct Ballot (or on whose behalf the Direct Ballot is signed) (A) has received the documents included in the Solicitation Package, (B) is the holder of a Direct Talc Personal Injury Claim in Class 4, (C) has a diagnosis of Mesothelioma or Gynecologic Cancer supported by medical records or similar documentation regarding the person who has or had such disease, (D)(1) if asserting a diagnosis of Gynecologic Cancer, (i) consistently used J&J Talc Products in the perineal area for a minimum of four consecutive years; and (ii) was newly diagnosed with a Gynecologic Cancer at least ten years following first use of J&J Talc Products; or (2) if asserting a diagnosis of Mesothelioma, (i) consistently used J&J Talc Products for a minimum of four consecutive years; (ii) was newly diagnosed with Mesothelioma at least ten years following first use of J&J Talc Products; (iii) has not and will not allege that exposure to asbestos or alleged asbestos contamination in any product other than one or more J&J Talc Products or other talcum powder product(s) caused or contributed to his/her Mesothelioma; and (4) has not sought compensation for, will not seek compensation for, and has not previously been compensated for alleged exposure to asbestos from any source other than through one or more J&J Talc Products or other talcum powder product(s), and (E) has full power and authority to vote the Direct Ballot on behalf of, or in his, her or their capacity as, the claimant.  If the Ballot is being submitted on behalf of the claimant, an informed decision on such vote has been obtained from the claimant.[3]

b.   **Certification for Master Ballots.**  Master Ballots will contain certain certifications, under penalty of perjury pursuant to 28 U.S.C. § 1746,  to be completed by the attorney preparing and signing the Master Ballot pursuant to which such attorney will certify that, *inter alia*, (A) the attorney signing the Master Ballot has received the documents included in the Solicitation Package, (B) the attorney has complied with the procedures and requirements set forth herein for completing and submitting a Master Ballot and the Exhibit to the Master Ballot, (C) each vote recorded on the Exhibit to the Master Ballot reflects the informed decision of a Direct Talc Personal Injury Claim client of the attorney, (D) the attorney either has provided or has requested that the Solicitation Agent serve the Solicitation Package to each of its Direct Talc Personal Injury Claim clients, (E) the attorney has a reasonable belief that each holder of a Direct Talc Personal Injury Claim listed on the Exhibit

---

[3]   The holder of a Direct Talc Personal Injury Claim and/or such holder's attorney should **<u>NOT</u>** submit any documentation—medical or otherwise, with the Ballot.

-13-

accompanying this Master Ballot, as of the Voting Record Date, has a Direct Talc Personal Injury Claim in Class 4, (F) the attorney has a reasonable belief that the holder of each Direct Talc Personal Injury Claim identified on the Exhibit has a diagnosis of Mesothelioma or Gynecologic Cancer, which the attorney reasonably believes is supported by medical records or similar documentation regarding the person who has or had such disease, and (G) the attorney has a reasonable belief that the holder of each Direct Talc Personal Injury Claim identified on the Exhibit: (1) if asserting a diagnosis of Gynecologic Cancer, (i) consistently used J&J Talc Products in the perineal area for a minimum of four consecutive years; and (ii) was newly diagnosed with a Gynecologic Cancer at least ten years following first use of J&J Talc Products; or (2) if asserting a diagnosis of Mesothelioma, (i) consistently used J&J Talc Products for a minimum of four consecutive years; (ii) was newly diagnosed with Mesothelioma at least ten years following first use of J&J Talc Products; (iii) has not alleged and will not allege that exposure to asbestos or alleged asbestos contamination in any product other than one or more J&J Talc Products or other talcum powder product(s) caused or contributed to his/her Mesothelioma; and (iv) has not sought compensation for, will not seek compensation for, and has not previously been compensated for alleged exposure to asbestos from any source other than through one or more J&J Talc Products or other talcum powder product(s).  If the attorney is unable to make any of the above certifications with respect to a Client, the attorney may not record a vote for such Client and **must** timely send the information relating to the name, address, and email (if known) of such Client or holder of a Claim to the Solicitation Agent, and the Solicitation Agent shall exercise reasonable efforts to distribute a Solicitation Package to such Client as soon as reasonably practicable.

c.    **Certification for Indirect Ballots.**  Indirect Ballots voted by, or on behalf of, a holder of an Indirect Talc Personal Injury Claim will contain certain certifications, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the person signing the Indirect Ballot, *inter alia*, (A) has received the documents included in the Solicitation Package, (B) is the holder of an Indirect Talc Personal Injury Claim in Class 4, and (C) has full power and authority to vote the Indirect Ballot on behalf of, or in his, her or their capacity as, the claimant.

d.    **Certification for Class 6 Ballot.**  Class 6 Ballots voted by, or on behalf of, a holder of holders of Interests in Class 6 will contain certain certifications, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the person signing the Class 6 Ballot, *inter alia*, (A) has received the documents included in the Solicitation Package, (B) is the holder of an Equity Interest of the Debtor in Class 6, and (C) has full power and authority to vote the Class 6 Ballot on behalf of, or in his, her, their, or its capacity as, the Interest Holder.

2.      **To Attorneys Representing Holders of Direct Talc Personal Injury Claims**:

a.      Mailing of Direct Talc Personal Injury Claim Solicitation Notices and Certified Plan Solicitation Directives and Initial Distribution of Solicitation Packages:

(1)      Contemporaneously with the filing of the Solicitation Procedures Motion, the Solicitation Agent served a Direct Talc Personal Injury Claim Solicitation Notice and a Certified Plan Solicitation Directive on all known Firms.

(2)      The Certified Plan Solicitation Directive must be returned by each Firm to the Solicitation Agent, (a) by first class mail to LTL Management LLC, c/o Epiq Ballot Processing Center, P.O. Box 4422, Beaverton, OR 97076-4422, (b) by overnight courier, or hand delivery to LTL Management LLC, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005, or (c) by email to LTLVote@epiqglobal.com.

(3)      Each Firm must return a completed Certified Plan Solicitation Directive so it is actually received by the Solicitation Agent no later than August 15, 2023.

(4)      Pursuant to the Certified Plan Solicitation Directive, each Firm will direct the Solicitation Agent to solicit votes on the Plan from his or her Clients according to one of the following procedures, subject to the certifications described in the Certified Plan Solicitation Directive and summarized herein:

(a)      **Master Ballot Solicitation Method.**   A Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Master Ballot on which the Firm will record the votes of each of its Clients on the Plan (and any other applicable voting elections).  If the Firm elects the Master Ballot Solicitation Method, the Firm may also request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on its Clients.  If it is the Firm's customary and accepted practice to collect and record authorizations or instructions from its Clients by mail, email, telephone, text or other standard communication methods, including any digital communications, the Firm shall be authorized to follow such customary practices to collect and record the votes of its Clients.

(b)      **Direct Solicitation Method.**   If a Firm chooses not to solicit, collect, record and submit the votes of its Clients, or

if a Firm prefers to have each of its Clients submit a Direct Ballot, such Firm may direct the Solicitation Agent to solicit votes on the Plan directly from its Clients.

(c)    **Indirect Solicitation Method.**    If a Firm prefers to solicit the votes of its Clients but chooses to have the Clients cast their votes on the Plan by submitting Direct Ballots, the attorney may direct the Solicitation Agent to deliver customized Ballots for the Firm to provide to its Clients.  If the Firm selects this method:  (1) the Solicitation Agent will cause the requested number of Solicitation Packages, including a customized Ballot for each Client, to be served on the Firm; (2) the Firm must deliver the Solicitation Packages to the Clients within three Business Days after receipt; and (3) the Firm must file an affidavit of service with the Bankruptcy Court, and send a copy of such affidavit to the Solicitation Agent, within three Business Days of such service.  Firms may transmit Solicitation Packages to their Clients through each Firm's customary practices by mail, email, telephone, text or other standard communication methods, including any digital communications.

(d)    **Hybrid Solicitation Method.**    If a Firm chooses the Master Ballot Solicitation Method for only certain of its Clients (collectively, the "Master Ballot Clients"), with respect to the Master Ballot Clients, the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Master Ballot on which the Firm must record the votes with respect to the Plan for the Master Ballot Clients.   The Firm may also request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without a Ballot) on the Master Ballot Clients.   With respect to such Firm's Individual Ballot Clients, the Firm must elect to follow either the Direct  Solicitation  Method  (subsection  (b)  above)  or the  Indirect  Solicitation  Method (subsection (c) above). With respect to the Master Ballot Solicitation Method, if it is the Firm's customary and accepted practice to collect and record authorizations or instructions from its Clients by mail, email, telephone, text or other standard communication methods, including any digital communications, the Firm shall be authorized to follow such customary practices to collect and record the votes of its Clients.  With respect to the Master Ballot Solicitation Method and the Indirect Solicitation Method, Firms may transmit Solicitation Packages to their Clients through each

-16-

Firm's customary practices by mail, email, telephone, text or other standard communication methods, including any digital communications.

(5)     If a Firm fails to timely return a Certified Plan Solicitation Directive to the Solicitation Agent, or otherwise fails to select a solicitation method, the Firm will be deemed to have directed the Solicitation Agent to solicit votes on the Plan from the Clients, as identified in the Schedules or in the Debtor's or the Solicitation Agent's records, according to the Indirect Solicitation Method described in subsection (4)(c) above, unless otherwise agreed to among the Debtor, the Solicitation Agent, and the Firm.  The Solicitation Packages sent to a Firm under this subsection (5) will include customized Ballots in sealed packages for the Firm to address, add postage and deliver to its Clients, <u>provided</u> that if such Firm submits a Certified Plan Solicitation Directive and Client List including addresses of its Clients to the Solicitation Agent prior to the Solicitation Date, the Solicitation Agent will use reasonable efforts to provide pre-addressed Solicitation Packages with customized Ballots to the Firm to transmit to its Clients through the Firm's customary practices.

(6)     If a Firm fails to timely return a Certified Plan Solicitation Directive to the Solicitation Agent, the Firm must still submit a list of Clients in the form and manner required by the Certified Plan Solicitation Directive; <u>provided</u> that such Firm may not change the method according to which the Solicitation Agent will solicit votes from the Firm's Clients under subsection (5) unless otherwise agreed to among the Debtor, the Solicitation Agent, and the Firm. If such a Firm has not submitted a Certified Plan Solicitation Directive to the Solicitation Agent prior to filing the affidavit of service required under subsection (4)(c), the Firm must deliver a certified list of Clients to the Solicitation Agent with the affidavit of service required under subsection (4)(c) above.

(7)     If a Firm receives a Client List from the Solicitation Agent that includes, or receives a Solicitation Package that the Solicitation Agent prepared for: (i) a holder of a Claim that the Firm does not represent, (ii) a Client for whom the Firm selects the "no solicitation" option on the Certified Plan Solicitation Directive, or (iii) one or more holders of a Claim that the Firm no longer represents; the Firm **must** notify the Solicitation Agent and send the information relating to the name, address, and email (if known) of such Client or holder of a Claim to the Solicitation Agent.  The Solicitation Agent will exercise reasonable efforts to deliver Solicitation Packages to any such holder of a Claim as soon as

-17-

reasonably practicable after receiving notice and contact information for such holder of a Claim from the relevant Firm.

(8)     If a Firm certifies that it does not represent any Clients, such Firm may direct the Solicitation Agent to omit such Firm from the Debtor's solicitation of votes on the Plan and may request that it be removed from the service list in the Chapter 11 Case.

(9)     If a Firm is retained by additional Clients following the submission of its Certified Plan Solicitation Directive, the Firm must send the Solicitation Agent an additional Client List in the same form and manner as the Client List submitted with the Firm's Certified Plan Solicitation Directive, including the name of each Client, the last four digits of the Social Security Number for each of the Clients who has a Social Security Number, and the month, date, and year of birth for each Client who does not have a Social Security Number, to the Solicitation Agent and indicating the solicitation method that the Solicitation Agent should use to solicit votes from the additional Clients, which the Firm shall be deemed to have certified consistent with its original Client List, provided that a Firm may not change the solicitation method selected in the Firm's initial Certified Plan Solicitation Directive or applicable under subsection (5) above unless otherwise agreed among the Firm, the Debtor, and the Solicitation Agent.

(10)    The solicitation method used to solicit votes from one or more Clients represented by a Firm may be changed only if such change is agreed to among the Firm, the Debtor, and the Solicitation Agent.

(11)    Lists of Clients:

(a)     The Solicitation Agent will email each known Firm a Client List in the format required to complete the Certified Plan Solicitation Directive containing the names of the Firm's known Clients based on the Schedules, the Debtor's records, and the Solicitation Agent's records.  It is recommended that Firms use the Excel file provided by the Solicitation Agent to submit their Client List in connection with the Certified Plan Solicitation Directive.

(b)     To facilitate the solicitation of votes on the Plan from the holders of Direct Talc Personal Injury Claims, each Firm must submit a Client List to the Solicitation Agent, which lists are subject to the following requirements:

-18-

(i)    The Client List must be in Excel or a comparable electronic format.  Firms may contact the Solicitation Agent, at LTLVote@epiqglobal.com or at (888) 431-4056 (Toll-Free U.S. & Canada) or +1 (503) 822-6762 (International) with any technical questions or to arrange for special delivery of the Client List.

(ii)    The Client List must contain the name, the last four digits of the Social Security Number for each of the Clients who has a Social Security Number, and the month, date, and year of birth for each Client who does not have a Social Security Number.  When the Firm is returning its Client List as the Exhibit (as defined below) to a Master Ballot, such Client List must indicate whether each Client voted to accept / in favor of or to reject / against the Plan (and any other applicable voting elections).   If the Firm is requesting that the Solicitation Agent directly serve Solicitation Packages on some or all of its Clients, the Client List submitted for such Clients must also include an address for each of those Clients.  If a Firm selects the Hybrid Solicitation Method described above, the attorney must instruct the Solicitation Agent on how to solicit votes from each Client on the Firm's Client List.

(c)    Firms are required to submit  the Client List (via email) and the Certified Plan Solicitation Directive (via mail or email) so that each is received by the Solicitation Agent by August 15, 2023.

(i)    Firms must send their  Client Lists to the Solicitation Agent by email to LTLVote@epiqglobal.com.

(ii)    The Solicitation Agent will not publicly disclose or share any Client Lists with any other party absent an order from a court of competent jurisdiction.

b.    Distribution of Solicitation Packages Pursuant to Certified Plan Solicitation Directives:

(1)    The Solicitation Agent will serve the Solicitation Packages in accordance with the instructions set forth on the Certified Plan Solicitation Directives.  If a Certified Plan Solicitation Directive instructs the Solicitation Agent to serve the Solicitation Packages

directly on the Firm's Clients but fails to return the Client List or fails to provide an address for each of its Clients, service will not begin until the Solicitation Agent receives the list of Clients as set forth above.

(2)     A Firm electing to solicit, collect, record and submit his or her Clients' Direct Talc Personal Injury Claims on a Master Ballot may, via the Certified Plan Solicitation Directive, request that the Solicitation Agent serve non-voting Solicitation Packages on such Firm's Clients for informational purposes only.

(3)     If a Firm chooses to transmit the Solicitation Packages to its Clients directly:

(a)     The Firm must serve the Solicitation Packages on its Clients within three Business Days after receipt of such Solicitation Packages and, within three Business Days thereafter, file an affidavit of service with the Bankruptcy Court and provide a copy of such affidavit to the Solicitation Agent.   Except as provided in this Section IV.2.a.(6), the affidavit of service does not need to list the names and addresses of the Clients served, but should state that service was completed and the date(s) service was completed.

(b)     The Debtor will reimburse such Firm for the actual postage incurred by the Firm in transmitting such Solicitation Packages by regular, first-class mail.   Firms seeking reimbursement must submit reasonable evidence of postage expenses incurred in order to obtain such reimbursement.

(c)     Firms may transmit the Solicitation Packages to their Clients by mail, email, telephone, text or other standard communication methods, including any digital communications if it is the Firm's customary and accepted practice.

(d)     Nothing herein prevents the Firms from including a cover letter or other communication from the Firm to its Clients with the Solicitation Packages provided that if a Firm elects for the Solicitation Agent to deliver Solicitation Packages to its Clients, the Firm must indicate on its Certified Plan Solicitation Directive whether a cover letter will be included in the Solicitation Package sent to each Clients.

-20-

**3.      Completion and Return of Master Ballots by Attorneys for Holders of Talc Personal Injury Claims.**

Firms who represent holders of Direct Talc Personal Injury Claims will be permitted to cast Ballots for such holders, but only to the extent such Firms solicit, collect, record, and submit the votes of their Clients, so certify in the manner set forth in <u>Section IV.1.b</u> herein and on the Master Ballots respecting such Direct Talc Personal Injury Claims, and submit a list of Clients in connection with a completed Certified Plan Solicitation Directive.   Each Firm soliciting, collecting, recording and submitting votes on the Plan of holders of Direct Talc Personal Injury Claims must complete a Master Ballot, which will set forth the votes cast by such Clients (and indicate any other applicable voting elections), and include a list of Clients as the Exhibit to the Master Ballot.   The following procedures will govern the completion and return of a Master Ballot:

a.      Summarizing Votes on the Master Ballot:

(1)      The Master Ballot will contain the following options for voting, one of which must be marked by the Firm:

(a)      "All _____ (indicate number) claimants listed on the exhibit accompanying this Master Ballot ACCEPT / vote in favor of the Plan."

(b)      "All _____ (indicate number) claimants listed on the exhibit accompanying this Master Ballot REJECT / vote against the Plan."

(c)      "_____ (indicate number) claimants listed on the exhibit accompanying this Master Ballot ACCEPT / vote in favor of the Plan, while _____ (indicate number) claimants listed on the exhibit accompanying this Master Ballot REJECT / vote against the Plan."

b.      Exhibit to the Master Ballot:

(1)      The Solicitation Agent will email each Firm that elects the Master Ballot Solicitation Method the Exhibit required to complete a Master Ballot on behalf of the Firm's Clients.

(2)      Each Firm must prepare a summary sheet in the form attached to the Master Ballot.   This summary sheet will become the Exhibit to the Master Ballot and will list each holder of a Direct Talc Personal Injury Claim represented by such attorney and from whom the Firm will solicit, collect, record and submit votes on the Plan by first and last name, the last four digits of the Social Security Number for each of the Clients who has a Social Security Number, the month, date, and year of birth for each Client who does not have a Social Security Number, whether such holder

votes to ACCEPT / in favor of or to REJECT / against the Plan, and, if such holder votes to reject the Plan, whether such holder opts out of the releases contained in <u>Section 11.3.2</u> of the Plan.

(3)     Exhibits to Master Ballots may only be submitted in Excel or comparable application on a USB flash drive or through the Voting Portal—they may not be printed out and submitted in hard copy format.  Votes provided on any Exhibit submitted in a format other than Excel or comparable application shall not be counted.  The Exhibit must be submitted together with the Master Ballot, and the completed Master Ballot and Exhibit must be returned to the Solicitation Agent in accordance with <u>Section V</u> of these Solicitation Procedures.

(4)     If a Firm is retained by additional Clients following the submission of its Certified Plan Solicitation Directive, the Firm must send the Solicitation Agent an additional Client List in the same form and manner as the Client List submitted with the Firm's Certified Plan Solicitation Directive, including the name of each Client and the last four digits of the Social Security Number for each of the Clients who has a Social Security Number, and the month, date, and year of birth for each Client who does not have a Social Security Number, which the Firm shall be deemed to have certified consistent with its original Client List.  In the event that a Firm no longer represents a Client after submitting its Certified Plan Solicitation Directive, the Firm must provide written notice to the Solicitation Agent that the Firm no longer represents such Client and send the Solicitation Agent information relating to the name, address, and email (if known) of such Client or holder of a Claim.

    4.     **To Holders of Indirect Talc Personal Injury Claims:**  The Solicitation Agent will cause a Solicitation Package, including an Indirect Ballot, to be served upon each known holder of an Indirect Talc Personal Injury Claim that has not been withdrawn or disallowed or expunged by an order of the Bankruptcy Court entered on or before the Solicitation Date. Notwithstanding the forgoing, a Ballot cast on account of an Indirect Talc Personal Injury Claim that is not listed in the Schedules or is listed as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and for which a Proof of Claim was not (i) timely filed by the applicable Claims Bar Date or (ii) deemed timely filed by an order of the Court before the Voting Deadline shall not be counted for voting purposes with respect to the Plan unless the Debtor consents otherwise in writing.

    5.     If a holder of a Talc Personal Injury Claim contacts the Solicitation Agent before the Voting Deadline and requests a Solicitation Package, the Solicitation Agent will provide such claimant with a Solicitation Package within five Business Days of such request or as soon as practicable.

## V.    RETURN OF BALLOTS

**1.    Claimants Entitled to Vote.**    Holders of Talc Personal Injury Claims in Class 4 and Equity Interests in Class 6 are entitled to vote.

**2.    Authority to Complete and Execute Ballots.**    If a Ballot is signed by a trustee, executor, guardian, attorney-in-fact, officer of a corporation, or any other Person acting in a fiduciary or representative capacity, such person must indicate such capacity when signing.  An attorney executing a Master Ballot or Direct Ballot must certify that each vote reflects the informed decision of the Client.  With respect to all Ballots, each such signatory must certify by executing the Ballot that he or she has such authority and must provide evidence of such authority upon request of the Solicitation Agent.

**3.    Place to Send Completed Ballots.**    If being submitted by electronic or online transmission, all Ballots, including Exhibits to Master Ballots, should be returned through the Voting Portal on the Solicitation Agent's website at https://dm.epiq11.com/ltl.  Otherwise, all Ballots should be returned:

    a.    If by first class mail to:

| |
|---|
| LTL Management LLC, |
| c/o Epiq Ballot Processing Center, |
| P.O. Box 4422, |
| Beaverton, OR 97076-4422 |

    b.    By overnight courier or hand delivery to:

| |
|---|
| LTL Management LLC, |
| c/o Epiq Ballot Processing, |
| 10300 SW Allen Boulevard, |
| Beaverton, OR 97005 |

**4.    Deadline for Receiving Completed Ballots.**    To be counted as a vote to accept or reject the Plan, each Ballot (including the required Exhibit with respect to Master Ballots) must be properly executed, completed, and delivered by (1) electronic Voting Portal on the Solicitation Agent's website, (2) first class mail, (3) overnight courier, or (4) hand delivery so that it is **actually received**, in each case, by the Solicitation Agent no later than 4:00 p.m. (prevailing Eastern Time) on the Voting Deadline.   If any Ballot is received by the Solicitation Agent after such date and time, the vote(s) recorded on that Ballot may not be counted for purposes of voting on the Plan.  The holder of a Claim may choose the method of delivery of its Ballot to the Solicitation Agent at its own risk.  Delivery of the Ballot shall be deemed made only when the Ballot is actually received by the Solicitation Agent.

**5.    Ballots Submitted by Electronic Transmission.**    The Solicitation Agent will accept online transmission of Ballots through the Voting Portal on the Solicitation Agent's website.  A Ballot that is properly submitted electronically via the Voting Portal on the Solicitation Agent's website shall be deemed to contain an original signature.  The Solicitation Agent will **not** accept Ballots submitted by other forms of electronic transmission or facsimile.   Any Ballots so

submitted will **not** be counted for purposes of voting on the Plan.  Only one Ballot may be submitted on account of each Claim.  Holders of Claims that submit a Ballot via the Voting Portal should not also submit a paper Ballot.  Regardless of the method of voting, the last Ballot actually received by the Solicitation Agent before the Voting Deadline shall be deemed to be the effective vote except as otherwise provided in this <u>Section VI.2.e</u>.  Delivery of a Ballot to the Solicitation Agent by facsimile or electronic means other than through the Voting Portal shall not be valid.

      **6.**     **Retention of Ballots by Solicitation Agent.**    The Solicitation Agent will date-stamp all Ballots when received.   Ballots received on the day of the Voting Deadline will be date and time-stamped.   In addition, the Solicitation Agent will retain originals of all Ballots for a period of two years after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court.

## VI.     TABULATION OF BALLOTS

      **1.**     **Ballots Excluded.**  A vote cast on a Ballot will **not** be counted if any of the following applies to such Ballot:

    a.     The holder submitting the Ballot or on whose behalf a vote is cast is not entitled to vote, pursuant to <u>Section V.1</u> hereof.

    b.     The Ballot is not **actually received** by the Solicitation Agent in the manner set forth in <u>Section V.3</u> hereof by the Voting Deadline, unless the Debtor has granted an extension of the Voting Deadline with respect to such Ballot, or the Bankruptcy Court has granted an extension.

    c.     The Ballot is returned to the Solicitation Agent indicating acceptance or rejection of the Plan but is unsigned, <u>provided</u>, <u>however</u>, for the avoidance of doubt, a Ballot that is properly submitted electronically via the Voting Portal shall be deemed to contain an original signature.

    d.     The Ballot is illegible or contains insufficient information to permit the identification of each claimant whose vote is reflected on the Ballot.

    e.     The Ballot is transmitted to the Solicitation Agent by facsimile or other electronic means other than by online transmission through the Voting Portal on the Solicitation Agent's website, as set forth in more detail in <u>Section V.5</u> hereof.

    f.     The Ballot is submitted in a form that is not the appropriate Ballot for such Claim or Interest.

    g.     The Ballot is not completed, including, without limitation, (i) a Master Ballot on which the attorney fails to make the required certifications, (ii) a Master Ballot that fails to include the required Exhibit, (iii) solely with respect to the vote of a holder of a Direct Talc Personal Injury Claim whose information is not provided, a Ballot submitted by or on behalf of the holder of a Direct Talc Personal Injury Claim that does not (a) provide

the last four digits of the claimant's Social Security Number or indicate that the claimant does not have a Social Security Number and (b) provide, for claimants who do not have a Social Security Number, the claimant's month, date, and year of birth or (iv) a Ballot submitted by or on behalf of a holder of a Direct Talc Personal Injury Claim or an Interest Holder that does not include the required certifications.

h.      The Ballot is completed, but the claimant or interest holder did not note whether the claimant or interest holder accepted or rejected the Plan, or the claimant or interest holder voted to both accept and reject the Plan; or

i.      The Ballot attempts to partially accept and partially reject the Plan.

**2.      General Solicitation Procedures and Standard Assumptions.**   In addition to all other provisions of these Solicitation Procedures, the following procedures for voting and standard assumptions will be used in tabulating Ballots:

a.      A claimant or interest holder may not split his, her, or its vote. Accordingly, (i) each claimant and interest holder will have a single vote, (ii) the full amount of all such claimant's Claim or interest holder's Interest (calculated in accordance with these procedures) will be deemed to have been voted either to accept or reject the Plan, and (iii) any individual vote cast on a Ballot that partially rejects and partially accepts the Plan will not be counted.

b.      The Solicitation Agent will have the discretion, but will not be obligated, to contact voters to cure any defects in the Ballots.  Neither the Debtors, nor any other person or entity, shall be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots except as provided herein nor shall any of them incur any liability for failure to provide such notification.

c.      Before the Voting Deadline (or such later date as agreed by the Debtor) a voter that submits a valid Ballot may withdraw his, her, their, or its vote by delivering a written notice of withdrawal to the Solicitation Agent.   To be valid, the notice of withdrawal must be signed by the party who signed the Ballot, <u>provided</u> that the withdrawal or change of a vote that is cast on a Master Ballot will only be effective with respect to claimants who have made an informed decision regarding such withdrawal or change.   The Debtor reserves the right to contest any withdrawals or changes.

d.      If the Solicitation Agent receives more than one Ballot from different holders purporting to hold the same Claim or Interest, in the absence of contrary information establishing which claimant held such Claim or Interest as of the Voting Deadline, the latest-dated otherwise valid Ballot that is received before the Voting Deadline (or such later date as agreed by the Debtor) will be the Ballot that is counted.

NAI-1531325514

e.      If the Solicitation Agent receives more than one Ballot from the holder of
a Claim or Interest **and** someone purporting to be his, her, or its attorney
or agent, the Ballot received from the holder of the Claim or Interest will
be the Ballot that is counted, regardless of when it is received so long as it
is received before the Voting Deadline (or such later date as agreed by the
Debtor), and the vote of the purported attorney or agent will not be
counted.  For the avoidance of doubt, any Ballot received directly from the
holder of a Talc Personal Injury Claim in accordance with the procedures
set forth in <u>Section IV</u> shall supersede any Master Ballot returned on
account of a Talc Personal Injury Claim and shall be the vote that is
counted.

f.      There will be a rebuttable presumption that any claimant or interest holder
who submits a properly completed superseding Ballot or withdrawal of a
Ballot on or before the Voting Deadline has sufficient cause, within the
meaning of Bankruptcy Rule 3018(a), to change or withdraw such
claimant's acceptance or rejection of the Plan.

g.      A Ballot that is completed, but on which the claimant or interest holder did
not note whether to accept or reject the Plan, or on which the claimant or
interest holder has voted both to accept and reject the Plan, will not be
counted as a vote to accept or reject the Plan.

h.      If the Solicitation Agent receives more than one Ballot from a holder of a
Claim or Interest for the same Claim or Interest, in the absence of contrary
information establishing which claimant held such Claim or Interest as of
the Voting Deadline, the latest-dated otherwise valid Ballot that is
received before the Voting Deadline (or such later date as agreed by the
Debtor) will be the Ballot that is counted as a vote to accept or reject the
Plan.  If the Solicitation Agent receives more than one Ballot from a Firm
or agent with respect to the same Claim or Interest (but not from the
holder thereof), the latest-dated otherwise valid Ballot that is received
before the Voting Deadline (or such later date as agreed by the Debtor) will
be the Ballot that is counted as a vote to accept or reject the Plan.

i.      If the same holder of a Direct Talc Personal Injury Claim appears on more
than one Master Ballot, the Solicitation Agent will attempt to coordinate
with the respective Firms to cure the discrepancy.  However, if the Firms
are unsuccessful in curing the discrepancy, the vote of the holder
appearing on more than one Master Ballot will be counted only once and
only if such votes are consistent with respect to acceptance or rejection of
the Plan; in the event that the votes are not consistent, none of the votes
will be counted.

j.      The Debtor will not be obligated to recognize any withdrawal, revocation
or change of any vote received after the Voting Deadline (or such later

NAI-1531325514

date as agreed by the Debtor with the consent of the Debtor, with such consent not to be unreasonably withheld).

k.      The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot pursuant to these Solicitation Procedures.

## VII.    CALCULATION OF VOTES WITH RESPECT TO TALC PERSONAL INJURY CLAIMS

**1.**      Except as set forth in paragraph 2 below, each holder of a Talc Personal Injury Claim will have a single vote in the amount, for voting purposes only, of $1.00 per claimant. The allowance of Talc Personal Injury Claims in the amount of $1.00 is solely for voting purposes and will not be binding upon the holder, the Debtor, the Talc Personal Injury Trust, the Firms, or any other party for any purpose other than voting on the Plan.

**2.**      Notwithstanding anything to the contrary herein, if a Non-Talc Claim or an Indirect Talc Personal Injury Claim is not listed in the Schedules or is listed as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a Proof of Claim was not (i) timely filed by the applicable Claims Bar Date or (ii) deemed timely filed by an order of the Court before the Voting Deadline, unless the Debtor has consented in writing, such Claim shall be disallowed for voting purposes with respect to the Plan.

**3.**      Pursuant to Bankruptcy Rule 3018, the entry of an order by the Bankruptcy Court approving these Solicitation Procedures conclusively establishes the allowed amount for voting purposes for each Talc Personal Injury Claim.

## VIII.   CONFIRMATION NOTICES

The Solicitation Packages will include the Confirmation Hearing Notice.   In addition to the mailed Confirmation Hearing Notice, the Debtor will cause notice of the Confirmation Hearing to be published through the Publication Notice and the Supplemental Notice Plan.   The Supplemental Notice Plan will start on or about the date of entry of the Solicitation Procedures Order and end on or about the Voting Deadline.

## IX.    AMENDMENTS TO THE PLAN AND THE SOLICITATION PROCEDURES

The Debtor expressly reserves the right to make non-substantive or immaterial changes to the Disclosure Statement, the Solicitation Procedures, the Solicitation Procedures Order, the Plan, the Ballots, the Confirmation Hearing Notice, and related documents without further order of the Bankruptcy Court, including, without limitation, changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

-27-