# JONES DAY

2727 NORTH HARWOOD STREET • DALLAS, TEXAS  75201.1515

TELEPHONE: +1.214.220.3939 • JONESDAY.COM

Direct Number:  214.969.3759
gmgordon@jonesday.com

July 20, 2023

**VIA ECF**

Honorable Michael B. Kaplan
United States Bankruptcy Court for the District of New Jersey
402 East State Street Courtroom #8
Trenton, New Jersey 08608

Re:  *In re LTL Management LLC*, Bankr. Case No. 23-12825 (MBK)

Dear Chief Judge Kaplan:

We write on behalf of LTL Management LLC (the "Debtor") in response to the July 19, 2023 letter to Your Honor from Genova Burns LLC, counsel to the Official Committee of Talc Claimants (the "TCC"), concerning the Certified Plan Solicitation Directive (the "Directive").[1]

The TCC letter is simply another in an ongoing series of threats (in this case, sanctions) and groundless attacks intended to impede the Debtor's efforts to move forward promptly with a reorganization plan supported by plaintiffs' firms representing the substantial majority of claimants in this case.

First, the Debtor's request (not "demand," as the TCC alleges) that Firms return the Directive prior to the Disclosure Statement Hearing, the hearing on the Solicitation Motion, and the entry of a court order approving the Directive is wholly consistent with the practice followed in many recent chapter 11 mass tort cases, including cases in which firms representing the TCC have been involved.  See, e.g., In re Boy Scouts of Am., No. 20-10343 (LSS) (Bankr. D. Del. Sept. 30, 2021) [Dkt. 6438] (directive return date request of April 23, 2021 and hearing on solicitation motion originally scheduled for April 29, 2021; firms were permitted to update their directive for a five day period after solicitation procedures order was entered); In re Purdue Pharma L.P., No. 19-23649 (RDD) (Bankr. S.D.N.Y. June 30, 2021) [Dkt. 2988] (directive return date request of April 27, 2021 and hearing on solicitation motion scheduled for May 26, 2021); In re PG&E Corp., No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [Dkt. 6340] (directive return date request of March 3, 2020 and hearing on solicitation motion scheduled for March 10, 2020).

Second, this request will avoid delay.  In order to prepare to solicit a plan in a mass tort case, a debtor needs to know how Firms want voting to work with respect to their Clients.  The

---

[1]  Capitalized terms used herein but not otherwise defined have the meanings given to them in Debtor's solicitation motion [Dkt. 1011] (the "Solicitation Motion").

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Honorable Michael B. Kaplan
July 20, 2023
Page 2

Debtor and the Solicitation Agent may also need to resolve conflicting Directive responses from Firms purporting to represent the same Clients. These processes and issues can take time. Deferring the process until after the Disclosure Statement Hearing will only cause delay and result in a shortened period of time for solicitation.

Third, the Firms do not have to respond to the Directive request. The Debtor has discussed the Directive with counsel to the Ad Hoc Committee of Supporting Counsel, and it is the Debtor's understanding that counsel to the Ad Hoc Committee of Supporting Counsel will work to facilitate a timely response. If other Firms decline to respond (which is their prerogative) and the Plan goes forward, those Firms will have less time to work through voting procedures with the Debtor and their Clients' solicitation period will be shortened.

Fourth, if the TCC truly believed the Debtor's actions constituted a "serious violation" of the "letter and spirit of long settled Bankruptcy Law," it could have reached out to the Debtor prior to the dissemination of the Directive. The Solicitation Motion and the Directive were filed on July 11, over a week ago, and those documents clearly stated that the Directive would be served by July 18, 2023. See Solicitation Mot. at ¶ 43.

Fifth, service of the Directive is not a "thinly veiled attempt to solicit votes or advantage for [the Debtor's] plan." The Directive was sent to Firms, not claimants, and made clear that it was not a solicitation of votes.

Lastly, in addition to demanding that the Debtor withdraw the Directive, the TCC makes two immediate disclosure demands. As to the first, that the Debtor disclose the list of recipients of the Directive, the Debtor will shortly file (as it always intended) a certificate of service listing the Firms that were served with the Directive. As to the second, that the Debtor disclose other actions it has taken with respect to the Directive, there are none. The Debtor served the Solicitation Motion and related materials in precisely the manner it described in the Solicitation Motion.

The TCC's accusations and threats regarding the Directive have no basis. The Debtor has violated no "Bankruptcy Law," settled or otherwise, and, in its view, no chambers conference is necessary. Nonetheless, the Debtor is available at the Court's convenience should the Court have questions or wish to hear from the parties on this issue.

Respectfully,

/s/ *Gregory M. Gordon*
Gregory M. Gordon