Levy Konigsberg, LLP
605 Third Avenue, 33rd Floor
New York, New York 10158
(212) 605-6200
*Counsel for Paul Crouch, Individually and as*
*Executor and as Executor Ad Prosequendum of*
*the Estate of Cynthia Lorraine Crouch*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-ap-1092-MBK |
| LTL MANAGEMENT LLC, | ) | |
| | ) | Lead BK Case: 23-12825-MBK |
| Debtor. | ) | |

## SUBMISSION OF PAUL CROUCH, INDIVIDUALY AND AS
## EXECUTOR *AD PROSEQUENDUM* OF THE ESTATE OF CYNTHIA CROUCH
## REGARDING DISMISSAL ORDER OF THE PETITION

Paul Crouch, individually and as executor *as prosequendum* of the Estate of Cynthia Lorraine Crouch, supports and joins in the Proposed Order of Dismissal submitted by the TCC and respectfully files this submission regarding the Order dismissing the petition in this case and states as follows:

1.      Given J&J's demonstrated and irrefutable penchant for filing bad faith bankruptcy proceedings and then demanding claims against non-debtors be stayed, it is critical that its innocent victims like Mr. Crouch be protected from further abuse of the bankruptcy system.

2.      In a recently aired documentary film "Shaken: Baby Powder on Trial", J&J/LTL's counsel (Allison Brown) was asked this very question:

*"[Pamela Brown]: If Johnson & Johnson loses on this second bankruptcy filing, will it just continue to go down this route?*

*[Allison Brown]: So, I don't want to get ahead of ourselves. Our singular focus right now is getting this plan finalized. And what will never change is our resolve to find a way to reach finality in this litigation that has really not served anybody."*

1

3.      Tellingly, J&J's chosen representative chose not to answer the question.  It might be hard to believe that one of the wealthiest companies in the world would try to wrongfully and unconstitutionally access the bankruptcy court system for a ***third*** time after having been told "NO" in both of its first two attempts.  Then again, it's hard to believe that J&J had the temerity to attempt this twice.

4.      Conspicuously absent from its public filings or press statements, and from its statements to this Court, are any enforceable assurances that J&J isn't going to try to again have its liabilities tied up in another bad faith, manufactured bankruptcy proceeding, involving LTL or some other entity that J&J creates for purposes of avoiding its own independent liability.

5.      Indeed, when viewed together with Ms. Brown's public statement about J&J's "resolve" to achieve a final solution to its talc problem (even in the face of the dismissal of its second bad faith bankruptcy), J&J and the debtor's dogged resistance to the request that LTL be barred from re-filing for bankruptcy for just 180 days, telegraphs a more sinister scheme by J&J.  Put simply, LTL1 gave J&J an undeserved reprieve from its responsibility in the civil justice for 18 months. With the exception of one case (*Valadez*), J&J's abuse of the bankruptcy system allowed it to avoid trials for at least an additional 5 months by filing LTL2.  Cleary J&J intends to continue to manipulate the bankruptcy courts for its personal benefit until and unless it is specifically barred from so doing.

6.      Putting aside J&J's self-serving press statements, the facts are clear: juries in 8 consecutive mesothelioma cases have determined that there was asbestos in Johnson's Baby Powder which caused the respective plaintiffs to develop mesothelioma[1]. Some of these juries have determined that J&J's conduct was so egregious that it needed to be punished with punitive

---

[1]      In this regard, the *Valadez* verdict is tremendously instructive. After hearing all of the **evidence** – as opposed to the unsupported *ipsi dixit* of its attorneys in arguing against the motion to lift the stay that allowed the trial to proceed – the jury **1)** found for Mr. Valadez against J&J, **2)** found for LTL against Mr. Valadez, **3)** found for the retailers against Mr. Valadez, and **4)** allocated 100% of the responsibility for his mesothelioma to J&J for its INDEPENDENT LIABILITY. In short, there was never a legitimate basis to delay Mr. Valadez's trial – either by way of the lack of good faith of the Debtor's filing (as found by the Third Circuit and this Court) or by the factual finding of the *Valadez* jury that the liability here was not of the puppet Debtor, but of the non-debtor puppet master.

damages[2]. J&J obviously does not like these results, and clearly is desperate to avoid the judgment of more state court juries. However, first the Third Circuit and now this Court have unequivocally told J&J that it does not have an "exit ramp" into the bankruptcy system.

7.      Despite this, J&J has, in large part, already succeeded.  It successfully ground to a halt the court cases of thousands of cancer victims for nearly 2 years.  This delay is incentive enough for it to manufacture another abusive pretext for another bad faith bankruptcy filing. Whether or not this Court is intrigued by J&J's desire to manipulate the Code into a final solution for asbestos product liability claims (for companies that are not financially distressed by those claims), part of this Court's gatekeeping role is to prevent such abuse.

8.  The fact that LTL freely *admits* that the entire bankruptcy scheme is dependent upon its half-trillion-dollar non-debtor master (J&J) receiving permanent injunctive relief for its own independent (non-derivative) liability, does not magically transform this abuse of the bankruptcy system into a proper "reorganization" of a good faith debtor[3]. Put differently, telling someone you are going to steal their car or punch them in the face doesn't make it legal. And once they do it twice, victims are deserving of protection by the courts against more abuse.

9.      Accordingly, a **minimum** bar of 18 months should be imposed.

---

[2]      As repeatedly argued by Mr. Crouch, J&J's accounting shenanigans do not create an entitlement to indemnification from LTL for J&J's own independent (non-derivative) liability.  *See e.g.* Crouch Objection to Preliminary Injunction and Supplemental Objection (Adv. Proc. Dock. 57 and 62). In fact, the Third Circuit rejected any suggestion that the alleged 1979 indemnity agreement automatically applied to non-debtor J&J's post 1979 conduct. *See LTL Mgmt., LLC*, 64 F.4th 84, 108 n.16 (3d Cir. 2023) ("For example, it is not obvious LTL must indemnify J&J for the latter's independent, post-1979 conduct."). The governing New Jersey law requires specific and explicit language for an indemnity contract to extend to the independent tortious conduct of the alleged indemnitee. *See e.g., Cozzi v. Owens-Corning Fiber Glass Corp.*, 164 A.2d 69 (N.J. Super.  1960); *Mantilla v. NC Mall Assoc.*, 770 A.2d 1144 (NJ 2001).  Moreover, New Jersey law does not allow indemnification of conduct that is wanton and reckless. *Johnson & Johnson v. Aetna*, 667 A.2d 1087 (N.J. Super. 1995); *Tyranowski v. Lodi Bd. Of Educ.*, 643 A.2d 1057 (N.J. Super 1994). The 1979 Agreement contains no such language.

[3]      In the words of former U.S. Trustee Hugh M. Leonard describing the legacy of this Bankruptcy Court: "I've always been fascinated… by the fact that somebody got into trouble and there's a way out – for those who deserve it by the way, not for characters who just did it to abuse the system." Let us never forget, that the Debtor – LTL – is **not** a "somebody" and **never** "got into trouble". Rather, it was non-debtor J&J that dumped its own "trouble" (i.e. talc liability) into its made-for-bankruptcy stooge subsidiary, expressly "to abuse the system."

10.      Separately, until all appeals are exhausted, the TCC – one of the successful movants against whom J&J threatens an appeal - should continue in existence[4], and there is no reason to leave those successful movants unrepresented.

11.      Finally, concerning the appeal (if it is taken), J&J/LTL should not be heard to argue for a stay of the Dismissal Order. In ruling as it did, this Court expressed that it was "constrained" by the standard articulated in Circuit's decision in LTL1[5]. Furthermore, with regard to its analysis of LTL's lack of financial distress, this Court followed that standard. J&J cannot argue to the Circuit that it was wrong; J&J had to opportunity to challenge that ruling and conspicuously avoided seeking *certiorari* to the United States Supreme Court in LTL1 after loudly and publicly claiming that it would do so. Accordingly, the **only** chance for success on appeal that J&J/LTL has, is to argue that this Court deviated from the Circuit's articulated standard. That means that, in order to stay the Dismissal Order, this Court would have to find that it will likely be reversed by the Circuit for deviating from the standard it believed the Circuit articulated.

12.      In short, J&J/LTL has no likelihood of success on appeal.

13.      The other considerations for a stay also weigh heavily against J&J/LTL. While there is no prejudice to J&J/LTL, the continued halt of litigation irreparably harms the sick and dying victims of J&J's defective products. Similarly, when it comes to the balance of the equities, there is simply no comparing the Seventh Amendment and Due Process rights of J&J's victims as measured against the non-existent right to "global resolution" of J&J's non-debtor's talc liability.

14.      Finally, in addition to delaying, impairing and sometimes destroying the Seventh Amendment rights of its victims, these proceedings violate the 14th Amendment property rights of the victims and the rights of the States to govern conduct within their borders and to provide state court forums for citizens seeking redress.  J&J's fraudulent bankruptcy proceedings work an improper end-around of the limitations on removal of state court actions to federal court and the entire MDL system established by Congress.  All of this is wrong.  J&J/LTL has now *twice* filed bad faith bankruptcy petitions to effectuate their improper scheme. They should not be allowed to continue.

---

[4] This is completely consistent with this Court's Dismissal Order in LTL1, and Mr. Crouch joins in the arguments advanced by the TCC in support of this issue.

[5] As a matter of jurisprudence, the District Court – if an appeal were taken there – would likewise be so "constrained".

4

Respectfully submitted:

Dated: August 7, 2023

*/s/ Moshe Maimon*
Moshe Maimon (I.D. 042691986)
LEVY KONIGSBERG, LLP
605 Third Avenue, 33rd FL
New York, NY 10158
Tel: (212) 605-6200
Fax: (212) 605-6290
Email: mmaimon@levylaw.com
Attorneys for Talc Claimant
Paul Crouch, Individually and as Executor
and as Executor Ad Prosequendum of the
Estate of Cynthia Lorraine Crouch
and
JONATHAN RUCKDESCHEL
The Ruckdeschel Law Firm, LLC
8357 Main Street
Ellicott City, Maryland 21043
Email: ruck@rucklawfirm.com
Attorneys for Talc Claimant
Paul Crouch, Individually and as Executor
and as Executor Ad Prosequendum of the
Estate of Cynthia Lorraine Crouch
*Admitted Pro Hac Vice