**brown**rudnick

David J. Molton
Ph : (212) 209-4822
dmolton@brownrudnick.com

August 7, 2023

The Honorable Michael B. Kaplan
U.S. Bankruptcy Judge
U.S. Bankruptcy Court for the
  District of New Jersey
402 East State Street
Trenton, New Jersey  08608
chambers_of_mbk@njb.uscourts.gov

**Re:  In re LTL Management LLC, No. 23-12825 (MBK)**

Dear Judge Kaplan:

Attached for your consideration is a Proposed Dismissal Order (the "TCC Proposed Order") that has been consented to by each of the Motion to Dismiss Movants, except the Office of U.S. Trustee (the "U.S. Trustee"), which has advised it will submit a separate letter. The Debtor has indicated that it objects to certain provisions in the TCC Proposed Order. On behalf of the TCC, we address below what we understand to be the significant points of contention. We reserve the right to supplement this letter in the event the Debtor raises additional points of contention.

**180-Day Injunction Against Refiling (¶ 1)**. The circumstances here warrant an injunction barring refiling for a period of 180 days. The Court has authority to enjoin refiling for a period of time under Section 105(a) of the Bankruptcy Code (the "Code") and the "broad 'equitable powers'" and "general authority" of bankruptcy courts. *In re Ross*, 858 F.3d 779, 784 (3d Cir. 2017) (citation omitted). Indeed, the Third Circuit has noted a pattern of congressional enactments establishing a policy against refiling. *Id.* (citing § 727(a)(8) and § 1328(f), "which limit the availability of two discharges to the same petitioner" and § 362, "which diminishes the effect of the automatic stay for repeat-filers"). In *Ross*, the Third Circuit declined to approve an indefinite ban, but pointed to 180 days as a congressionally endorsed period. *Id.* at 786. Courts in this Circuit have dismissed chapter 11 petitions with prejudice where, for example, cases are "filed in bad faith and for no legitimate bankruptcy purpose." *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 297 (Bankr. D. Del. 2011). In cases of serial filers, the prohibition against refiling has been even more severe, including periods well beyond six months. *See In re Casse*, 198 F.3d 327, 336–39 (2d Cir.1999) (surveying cases).

Here, the Third Circuit ordered that LTL 1.0 be dismissed because it was filed in bad faith and did not serve "a valid bankruptcy purpose." *In re LTL Management, LLC*, 64 F.4th 84, 110 (3d Cir. 2023). Following corporate machinations, LTL refiled just two hours and eleven minutes after this Court's dismissal order was entered. Even with its second case now dismissed for bad faith, LTL refuses to rule out a third attempt to provide J&J with the benefits of bankruptcy without having to bear any of its burdens. Moreover, the Court's findings of fact leave no doubt that LTL will not experience the requisite financial distress for the foreseeable future. These are precisely the circumstances that warrant a 180-day bar on refiling.



Hon. Michael B. Kaplan
August 7, 2023
Page 2

**Fee Allowance Process (¶ 5)**. The Debtor has proposed replacing the formal fee allowance procedures currently in place with an informal process similar to the one used in LTL 1.0. But under that informal process, the Debtor's professionals were paid in full immediately, while the TCC professionals did not receive payment until weeks into LTL's second bankruptcy case and, at times, at a discount. As explained at the August 2 hearing, there was delay in reaching consensual resolution for several of the TCC's professionals, with at least one professional (FTI) still waiting to be paid. 8/2/23 Hr'g Tr. 65:16-25. On the other hand, the Court's *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* (the "<u>Compensation Procedures Order</u>") (Dkt. 562) establishes a fee procedure that promotes finality for the Debtor's estate and the professionals in an expedient and fair manner. In addition, at the August 2 hearing, the U.S. Trustee stated that it would "strongly object" to any informal fee application process. 8/2/23 Hr'g Tr. 65:6-66:2. Importantly, by adhering to the fee process typical to Chapter 11 cases, any dispute that arises can be resolved by the Court expeditiously if necessary. The TCC respectfully submits that the existing formal procedures for final fee applications set forth in the Compensation Procedures Order should remain in effect.

**Substantial Contribution Claims (¶ 7)**. The Debtor seeks to bar the filing of substantial contribution claims. There is no basis for any such bar. The Code expressly provides for, and courts widely recognize, substantial contribution claims. 11 U.S.C. § 503(b). Whether any such claim satisfies the applicable standards under the Code or other applicable law must be determined by the Court on a case-by-case basis. The Court does not have authority to strip the rights of parties to assert substantial contribution claims or to grant the Debtor what amounts to a unilateral discharge of any liability on account of such claims. Moreover, the TCC respectfully submits that a provision setting forth a process (including the right to object) for submitting substantial contribution claims, if any, is both reasonable and proper and should be included.

**Continued Existence of the TCC (¶ 8)**. As in LTL 1.0, the Debtor consents to the provision in the LTL Proposed Order continuing this bankruptcy case for administrative purposes. But, reversing course from LTL 1.0, it now objects to allowing the TCC to continue to exist for administrative and fee resolution purposes or for purposes of any appeal (or related motion to stay), despite that this provision was approved by the Court and included in its dismissal order in LTL 1.0. This provision is of vital importance under the circumstances and, contrary to the Debtor's position, well within the Court's power to authorize (as it did in LTL 1.0).[1]

At the August 2 hearing, the Debtor stated to this Court that there is no "basis in the Bankruptcy Code" for the TCC to continue post-dismissal. 8/2/23 Hr'g Tr. 58:24-25, 62:4-7. The Debtor is wrong. The Debtor's erroneous statement is particularly striking given that the order in LTL 1.0 explicitly established the TCC's continued existence following dismissal. LTL 1.0 Dkt. 3938. In any event, courts have the authority to allow official committees to continue post-dismissal under both Sections 105(a) and 349(b) of the Code.

---

[1] The Debtor also seeks inclusion of a requirement that the pending P.I. and FCR appeals "be withdrawn" due to mootness. That request is premature and misdirected. The appropriate step for the Debtor would be to ask the District Court (where the appeals are pending) to stay those appeals pending resolution of the dismissal appeal. *See Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976).



Hon. Michael B. Kaplan
August 7, 2023
Page 3

*First*, courts have relied on Section 105(a) of the Code for the authority to allow committees to continue post-dismissal, including over objections. "The Bankruptcy Code provides for the appointment and duties of committees under §§ 1102 and 1103 but does not provide for the dissolution of committees." *In re Wedgestone Fin.*, 152 BR 786, 787 (Bankr. D. Mass. 1993) (finding, over objection of debtor, that committee existed post-confirmation for purposes of commencing adversary proceeding). But bankruptcy courts often exercise authority under Section 105(a) to address circumstances where the Code is silent. *See e.g., In re Wonder Corp. of Am.*, 72 B.R. 580, 583 & n.3 (Bankr. D. Conn. 1987), *aff'd*, 82 B.R. 186 (D. Conn. 1988) ("Although the Code does not specifically provide for the employment of counsel by a creditors' committee elected pursuant to Code § 705(a) . . . this court authorized such employment in this case in accordance with Code § 105(a)."). The relevant inquiry under Section 105(a) is whether there is an explicit bar in the Code to the exercise of the authority at issue. *In re Ross*, 858 F.3d at 785 ("What mattered to the Court was that there was '[n]othing in the text' of the Code that prohibited the bankruptcy court's order.").

Thus, for example, in *In re Lyons Transp. Lines, Inc.*, 162 B.R. 460, 461 (Bankr. W.D. Pa. 1994), the court allowed the committee to continue post-conversion to Chapter 7 in recognition of the committee's "considerable expertise" in the debtor's industry and its ability to assist the Chapter 7 trustee with liquidation. 162 B.R. at 461. The court held that, "[i]n order to facilitate administration of the case, . . . *it was appropriate to exercise our authority under § 105(a) to keep the Chapter 11 Committee intact and allow [its counsel] to continue to provide services*." *Id*. at 463 (emphasis added).

The court in *Lyons* then addressed the issue of whether it had the authority under Section 105(a) to approve payment of counsel's fees from the estate. 162 B.R. at 463. The court expressly held that it did have that authority. *Id*. "In the present case," the court explained, "we directed that the Chapter 11 Committee would remain intact and that the Trustee could utilize the services of [law firm] SMG. SMG continued to provide services post-conversion and continued to bear responsibility for the course of the case." *Id*. The court went on to explain that "the input of SMG in this case was necessary and [ ] the services provided by SMG were of a clear benefit to the Trustee and the estate." *Id*. As a result, the court held, "SMG is entitled to compensation from the bankruptcy estate" for its post-conversion work. *Id*.

While a short line of cases holds that committees *generally* are deemed dissolved upon conversion, they and other cases (like *Lyons*) still make clear dissolution is not mandatory. For example, although the court in the most recent of that line of cases, *In re Constellation Enterprises LLC*, declined to allow the committee to continue post-conversion under the existing facts there, it expressly acknowledged that, in *Lyons*, "a chapter 11 creditors' committee survived conversion to chapter 7 . . . *by express order of the Bankruptcy Court pursuant to § 105(a)*." 587 B.R. 275, 281–83 (D. Del. 2018). Far from disputing the authority to order continuation, the *Constellation* court simply distinguished *Lyons* on the facts:

> [t]he *Lyons* court ultimately determined that the particular facts of the case . . . warranted the continuance of the committee post-conversion. The *Lyons* court determined it had authority under § 105(a)



Hon. Michael B. Kaplan
August 7, 2023
Page 4

> to keep the committee intact . . . .  Clearly, the *Lyons* decision is *sui generis*, and must be distinguished from the case at bar, where there is no bankruptcy court order continuing the committee's existence and no assertion of issues so complex that a court or trustee would require post-conversion assistance from industry experts familiar with the case.

*Id*. at 283.  In *In re SPM Mfg. Corp.*, the First Circuit tacitly approved the prosecution of an appeal by the committee following conversion to Chapter 7.  984 F.2d 1305 (1st Cir. 1993).  In that case, the First Circuit issued a detailed opinion in favor of the committee (as Appellant) and not once raised any issue as to the committee's standing to bring the appeal.  *See id*. at 1310-18.  The Supreme Court has done the same in the context of an appeal following a structured Chapter 11 dismissal, where the committee participated throughout the appeal as Respondent.  *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 453, 454 (2017).  While the issue of standing had not been raised in those cases, the cases are still informative given that a federal appellate court's "'continuing obligation to assure that we have jurisdiction requires that we raise [the] issue[ ] of standing . . . *sua sponte*.'"  *Wayne Land and Min. Group, LLC v. Delaware Riv. Basin Comm'n*, 959 F3d 569, 574 (3d Cir 2020) (citation omitted; brackets in original).[2]

These cases conclusively dispel the Debtor's self-serving argument that this Court is somehow precluded from allowing the TCC to finish the appellate process that the Debtor has represented will soon start.  This Court's own dismissal order in LTL 1.0 — and LTL's lack of any objection to it — further underscore the disingenuousness of LTL's new change of position.

*Second*, and in addition, "a bankruptcy court has the ability under 11 U.S.C. § 349 to retain jurisdiction over the administration of the estate in its dismissal order, if it finds cause to do so."  *Iannini v. Winnecour*, 487 B.R. 434, 439 (W.D. Pa. 2012) (citations omitted).  In *Iannini*, the district court addressed the issue of whether the bankruptcy court could "hear the claim for attorney's fees after the bankruptcy case had been dismissed."  *Id*. at 438.  The court noted that "a bankruptcy court, *in the normal course*, has no jurisdiction to hear such post-dismissal disputes."  *Id*. at 439 (emphasis added).  But, the court held, a bankruptcy court may hear such post-dismissal disputes by "explicitly retaining jurisdiction."  *Id*. at 439 (citations omitted).  Similarly, in *In re Westgate Nursing Homes, Inc.*, the court explained that the "[t]he basic purpose of [Section 349(b)] is to undo the bankruptcy case, *as far as practicable*" and, thus, "*[u]nless the court ... orders otherwise*,' dismissal under § 349(b) returns the Debtor to its pre-bankruptcy status and the estate ceases to exist."  518 B.R. 250, 255-56 (Bankr. W.D.N.Y. 2014) (emphasis added; citations omitted; ellipses in original).  Here, under the terms of both proposed orders, the Court would retain jurisdiction over administrative matters post-dismissal.  Such retention of

---

[2] Somewhat analogously, the fact that courts have approved the continued existence of committees for specific purposes — including to participate in appeals — following Chapter 11 plan confirmation further demonstrates courts' ability to order the continued existence of a committee after the committee otherwise would ordinarily have been deemed dissolved.  *See, e.g., In re Neenah Enterprises, Inc.*, 2010 WL 3493037, at *25 (Bankr. D. Del. July 6, 2010); *In re Wedgestone Fin.*, 152 B.R. at 787.



Hon. Michael B. Kaplan
August 7, 2023
Page 5

jurisdiction serves to keep the estate in existence and thus provide the foundation for a committee to continue to exist post-dismissal for the limited purposes noted above.

There can be no serious question that the Court's exercise of its authority here is warranted (if not compelled) to avoid irreparable inequity and prejudice to creditors. Since its appointment on November 8, 2021, the TCC continuously has represented unsecured creditors in this case (the talc claimants) pursuant to its fiduciary duty. It has played — and continues to play — a central and critical role in every aspect of this novel and landmark case, from the development of the factual record and conduct of trials and motion practice on the law to the prosecution (and now defense) of appeals. Removing the TCC and its counsel at this late point would levy a grave disservice to the appellate process and the full group of unsecured creditors (*i.e.*, the talc claimants), all of whose interests would no longer be protected.

The fact that other co-appellees may exist is beside the point. The TCC is the sole fiduciary charged with representing *all* talc claimants in this bankruptcy case. Other potential appellees will represent only some of the creditors represented by the TCC and will be charged with safeguarding only those specific creditors' specific interests. Moreover, there is no guarantee that other appellees will participate through the final stage of the appeal. Indeed, were J&J to settle with the limited subset of unsecured creditors represented by the other appellees, there would be no creditor left to defend the appeal at all. And while additional creditors — assuming they have the resources to do so — may seek to form their own *ad hoc* committees, unlike the TCC, none will have standing in the current appellate process or a fiduciary duty to represent *all* unsecured creditors in it. That prejudice would be even more pronounced here given the expected participation in the appeal of the Ad Hoc Committee of Supporting Counsel, funded by J&J, which would further skew the appellate landscape, as well as the Debtor's outright refusal to even entertain substantial contribution motions.

It is easy to see why the Debtor would like the TCC (and its counsel) removed from the equation in the Debtor's appellate efforts to revive its second bad faith case. But doing so would deprive creditors of adequate representation on appeal and deprive the judicial system of vigorous adversarial presentation in support of this Court's dismissal order. The Court should not countenance such tactical maneuvering, which would disserve both creditors and the judiciary. The severe and irreparable prejudice that would befall creditors upon the dissolution of the TCC more than warrants the exercise of the Court's authority to allow the TCC (with assistance of its counsel) to continue for the limited purpose of litigating the appeal of this Court's decision. That is particularly so given the unique circumstances of this case. Just as it did in LTL 1.0, the Court should again provide for the continued existence of the TCC (and its continued representation by its chosen and approved counsel) again for the limited purposes set forth above.

Respectfully,

David J. Molton

cc: All counsel of record