## JONES DAY

2727 NORTH HARWOOD STREET • DALLAS, TEXAS 75201.1515

TELEPHONE: +1.214.220.3939 • JONESDAY.COM

Direct Number: 2149693759
gmgordon@jonesday.com

August 7, 2023

**VIA ECF**

Honorable Michael B. Kaplan
United States Bankruptcy Court for the District of New Jersey
402 East State Street Courtroom #8
Trenton, New Jersey 08608

    Re:    In re LTL Management LLC, No. 23-12825 (MBK)

Dear Chief Judge Kaplan:

We write on behalf of LTL Management LLC (the "Debtor") to address the proposed form of order dismissing the Debtor's chapter 11 case (the "TCC Proposed Order") submitted by the Official Committee of Talc Claimants (the "TCC").[1] For the reasons explained below, the Debtor objects to provisions in the TCC Proposed Order that seek to (i) bar the Debtor from commencing a chapter 11 case for 180 days, (ii) continue the existence of the TCC and require reimbursement of its fees and expenses notwithstanding dismissal of the Debtor's case and (iii) impose final fee procedures that are unnecessary, costly and administratively burdensome. The Debtor respectfully requests that the Court instead enter the Debtor's proposed form of order (the "Debtor Proposed Order"), which accompanies this letter.

**Bar on Refiling**

The TCC Proposed Order proposes to bar the Debtor, its affiliates and any successors and assigns from filing any petition seeking relief under chapter 11 of the Bankruptcy Code for a period of 180 days. See TCC Proposed Order ¶ 1. The TCC has not established cause for this extraordinary relief and none exists.

Courts have barred a debtor from refiling a chapter 11 case only where there has been egregious, bad faith conduct, typically by a real estate debtor that filed multiple chapter 11 cases to frustrate foreclosure proceedings. See, e.g., In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 201 (Bankr. D.P.R. 2014) (barring single-asset real estate debtor from refiling where debtor moved for voluntary dismissal in lieu of conversion after dismissal/conversion hearing, all of the debtor's assets were encumbered by secured loans leaving no equity for unsecured creditors and the debtor had admitted to making a number of post-petition transfers and payments to insiders); In re Anvil Holdings LP, 595 B.R. 622, 626-28 (Bankr. W.D.N.Y. 2019) (barring the refiling of

---

[1] Capitalized terms used herein but not otherwise defined have the meanings given to them in the TCC Proposed Order.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Honorable Michael B. Kaplan
August 7, 2023
Page 2

real estate holding company whose significant misrepresentations and actions during the case were so egregious the court requested the U.S. Trustee to consider investigating the debtor for violations of Title 18 of the United States Code); B-3 Props., LLC v. Lasco, 517 B.R. 889, 899 (N.D. Ind. 2014) (affirming bar of refiling chapter 11 in the case of a single-asset real estate debtor who on two separate occasions filed for chapter 11 on the eve of a foreclosure, and failed to comply with court orders); but see In re Midwest Props. of Shawano, LLC, 442 B.R. 278, 285-88 (Bankr. D. Del. 2010) (declining to enter general bar to refiling even though debtors had refiled chapter 11 cases following dismissal for cause and the court found that the circumstances had not changed from the prior cases).

      Here, there has been no egregious or bad faith conduct by the Debtor that would warrant a prohibition against refiling for any period of time.  As the record demonstrates and the Court found, the "impetus" for the second case "was a proposal by law firms representing nearly 60,000 talc claimants for a bankruptcy resolution of the Debtor's talc liability."  See Memo. Op. [Dkt. 1127] (the "Dismissal Opinion"), 8.  Indeed, this Court recognized the Debtor's good faith in pursuing an equitable and efficient resolution of current and future talc claims.  See Dismissal Op., 37-38 (urging "the parties to build upon the remarkable progress that has been achieved . . . .  The foundation for a fair, efficient, and expeditious settlement has been laid by the dogged efforts of the AHC, Debtor and other parties.").  And the Third Circuit similarly acknowledged that management acted "consistent with their fiduciary duties" in exploring ways to mitigate exposure to talc litigation and noted "J&J's belief that . . . bankruptcy creates the best of all possible worlds for it and the talc claimants."  See In re LTL Mgmt., LLC, 64 F.4th 84, 95, 111 (3d Cir. 2023).[2]

      No cause exists to bar the Debtor from refiling for chapter 11 relief and this Court should not effectively prejudge the propriety of or justification for a future filing.

**Continued Existence of the TCC**

      The TCC Proposed Order provides that, following dismissal of the Debtor's chapter 11 case, the TCC will continue to exist to "pursue or defend any Appeals," and the Debtor will be required to pay the fees and expenses of the TCC's professionals.  TCC Proposed Order ¶ 8.  There is no statutory basis, however, for this provision.  "An official committee of unsecured creditors is created when appointed by the Trustee under § 1102 of the Bankruptcy Code, and it exists only under the framework of chapter 11."  Official Comm. of Unsecured Creditors v.

---

[2]     To the extent the TCC bases its proposed refiling bar on the Texas divisional merger that gave rise to the Debtor or the Debtor's efforts to seek a preliminary injunction, those purported justifications for this extraordinary relief should be rejected based on the Court's own findings in the Dismissal Opinion (see, e.g., Dismissal Opinion, 26 n.15) and the Fourth Circuit's denial today of petitions for rehearing en banc of its ruling affirming the preliminary injunction issued in the case of Bestwall LLC.  See Order, In re Bestwall LLC, No. 22-1127 (4th Cir. Aug. 7, 2023), Dkt. 82.

JONES DAY

Honorable Michael B. Kaplan
August 7, 2023
Page 3

Constellation Enters. LLC (In re Constellation), 587 B.R. 275, 281 (D. Del. 2018).  Thus, "[w]hen the statutory basis of the case is changed, either through dismissal or . . . conversion, the statute under which the Committee was created no longer applies and the committee is automatically dissolved."  Official Comm. of Unsecured Creditors v. Belgravia Paper Co. (In re Great N. Paper, Inc.), 299 B.R. 1, 5 (D. Me. 2003) (quoting Butler v. Butler (In re Butler), 94 B.R. 433, 436 (Bankr. N.D. Tex. 1989)); see also Constellation, 587 B.R. at 281 ("The Court agrees that the legal entity that was the Committee automatically dissolved and ceased to exist as of the conversion of the chapter 11 cases to chapter 7.").³

      In Butler, for example, the debtors questioned the standing of the official committee to object to the discharge of a debt following dismissal of the chapter 11 cases.  94 B.R. at 435.  The committee responded by arguing that, because informal committees could exist prior to a bankruptcy, an official committee could continue after dismissal.  Id. at 436.  The court disagreed, finding that "[o]nce the Chapter 11 proceedings of [the debtors] were dismissed, the Committee was no longer an official committee appointed by the United States Trustee but, rather, was a group of creditors who wished to pursue actions for their own benefit and, presumably, on behalf of other creditors as well."  Id.

      Similarly, in Constellation, the U.S. Trustee moved to dismiss an appeal by an official committee from a conversion order that followed the court's denial of a structured dismissal, arguing that "a creditors' committee is an artificial entity created by statute; . . . [a]s no statutory authority provides for the continued ability of the Committee to maintain litigation following its dissolution, the appeal must be dismissed."  587 B.R. at 280.  The court agreed, finding that caselaw supported the termination of a committee upon dismissal or conversion.  Id. at 282.  And the court reached this result notwithstanding the pending appeals and the fact that no other movant existed to pursue the appeals.

      Further, there is no need for the TCC to participate in any appeal of the Dismissal Order given there are nine other parties who filed motions to dismiss and have standing to be heard in an appeal.  On top of that, claimants could seek to participate in any appeal as interested parties pursuant to Fed. R. Bankr. P. 8013(g), or to be substituted for the disbanded committee under

---

³    See also In re Cascade Acceptance Corp., 2011 WL 1253845, *1 (Bankr. N.D. Ca. 2011) ("Once [a] case is dismissed or converted to Chapter 7, the provisions of Chapter 11 relating to committees and their powers no longer apply and the committee is dissolved."); In re MS55, Inc., 2005 WL 5780233, *6 (D. Co. 2005) ("Conversion of a Chapter 11 case to a Chapter 7 case, and ensuing termination of Chapter 11 order for relief, results in dissolution of any committee appointed under 11 U.S.C. § 1102 . . . Conversion of proceedings from Chapter 11 to Chapter 7 has the same effect on a creditors' committee as dismissal of the proceedings"); Creditors' Committee v. Parks Jaggers Aerospace Co. (In re Parks Jaggers Aerospace Co.), 129 B.R. 265, 267 (M.D. Fla. 1991) ("Case law, however, demonstrates that once a Chapter 11 proceeding is terminated through a dismissal or a conversion to a Chapter 7 action, a creditors' committee is dissolved.").

JONES DAY

Honorable Michael B. Kaplan
August 7, 2023
Page 4

Fed. R. App. P. 43(b).  And, if the Third Circuit accepts a direct appeal of the Dismissal Order, the claimants could seek to participate under Fed. R. App. P. 27 or 29(a).[4]

Relatedly, there is no justification for requiring the Debtor to reimburse any fees or expenses of the TCC's professionals for services performed after entry of an order dismissing this chapter 11 case.  Cascade Acceptance, 2011 WL 1253845, at *1 ("Because the committee is automatically dissolved upon conversion, an attorney for a creditors' committee is not entitled to compensation from the bankruptcy estate for post-conversion services to the former committee."); Parks Jaggers Aerospace, 129 B.R. at 267 ("A committee is not entitled to compensation for work performed after termination.").[5]

**Final Fee Process**

The TCC Proposed Order provides for a "formal" fee process that would require all retained professionals in the chapter 11 case to file fee applications for the periods through the Dismissal Date and through the Appeal Exhaustion Date.[6]  TCC Proposed Order ¶¶ 5-6.  Counsel for the TCC argues a formal process is required because of unidentified "issues" encountered during the fee process ordered by the Prior Dismissal Order.  See Aug. 2, 2023 Hr'g Tr., 63:17-22.  In point of fact, however, there were no such issues and the prior fee process ran smoothly.

In particular, the various TCC retained professionals submitted their Final Statements (as defined in the Prior Dismissal Order) to the Debtor on May 17, 2023.[7]  On May 23, 2023, the Court entered the order authorizing the Debtor to satisfy its obligations pursuant to the Prior

---

[4] The Court's order dismissing the Debtor's prior chapter 11 case, see No. 21-30589, Dkt. 3938 (the "Prior Dismissal Order"), provided for the continued existence of the TCC.  But that was with the Debtor's agreement and had no material effect due to the Debtor's prompt refiling.  Absent the Debtor's consent, there is no basis for the TCC's continued existence.

[5] Similarly, in accordance with 28 U.S.C. § 1930, any quarterly fees owed to the United States Trustee must be calculated through (and only through) the dismissal date, and in no event should any post-dismissal quarterly fee be owed on account of post dismissal disbursements.  See 8 U.S.C. § 1930(a)(6)(A) ("[A] quarterly fee shall be paid to the United States trustee . . . in each case under chapter 11 of title 11 . . . for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first.") (emphasis added).

[6] The TCC Proposed Order also permits parties to file motions for the allowance of substantial contribution claims.  TCC Proposed Order ¶ 7.  For the reasons argued at the August 2 hearing, the Debtor contests that any party who pursued dismissal of this (and the Debtor's prior) chapter 11 case is entitled to substantial contribution under the Third Circuit's standard for the allowance of such claims.  See Lebron v. Mechem Fin. Inc., 27 F.3d 937, 943-44 (3d Cir. 1994) (requiring that services "'**directly and materially contributed' to the reorganization**.") (emphasis added); see also In re Granite Partners, L.P., 213 B.R. 440, 446 (Bankr. S.D.N.Y. 1997) ("Compensable services foster and enhance—rather than retard and interrupt—the progress of reorganization.") (citing In re Best Prods. Co., 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994).  Accordingly, the Debtor proposes that the order make clear the Debtor is not responsible for substantial contribution claims.

[7] Pursuant to the Prior Dismissal Order, the Debtor had 21 days to review the Final Statements and raise any informal objections.  Prior Dismissal Order ¶ 5(c).

JONES DAY

Honorable Michael B. Kaplan
August 7, 2023
Page 5

Dismissal Order.  By June 20, 2023, the Debtor had paid all but four professionals retained in the prior case.  See Dkt. 1094.  The Debtor raised informal objections to the compensation requests of those four professionals.  The parties then promptly resolved the objections and the Debtor paid three of the four professionals' compensation requests.[8]  Upon resolution of the Debtor's objection to the final professional's compensation request, which the Debtor anticipates will be reached shortly, that professional likewise will be promptly paid.  It is noteworthy (and contrary to suggestions that this informal process created "issues") that no professional, despite an ability to do so (see Prior Dismissal Order ¶ 5(d), which permitted professionals to file a response to any objection with the Court if the objection was not resolved within 14 days), has asked this Court to intervene and resolve any dispute.

      The Debtor submits that the Debtor's proposed fee process provides for the expeditious payment of professionals, affords adequate protections, including Court involvement if needed, alleviates unnecessary administrative burden on this Court and the parties and avoids delay and unnecessary cost.

      For all the reasons set forth above, the Debtor respectfully requests that the Court enter the Debtor Proposed Order.  The Debtor is available at the Court's convenience to address any questions the Court may have regarding this matter.

Respectfully,

*/s/ Gregory M. Gordon*
Gregory M. Gordon

Enclosure

cc with enclosure:  Counsel of Record (via ECF)

---

[8] See Dkt. 1094 (payment to Brown Rudnick LLP on June 29).  The Debtor resolved its objections to other professionals' fees and expenses in July and subsequently paid those amounts the same month, which payments will be reflected in the monthly operating report for July.