# brownrudnick

David J. Molton
Ph : (212) 209-4822
dmolton@brownrudnick.com

August 9, 2023

The Honorable Michael B. Kaplan
U.S. Bankruptcy Judge
U.S. Bankruptcy Court for the
  District of New Jersey
402 East State Street
Trenton, New Jersey  08608
chambers_of_mbk@njb.uscourts.gov

### Re:  In re LTL Management LLC, No. 23-12825 (MBK)

Dear Judge Kaplan:

      This Court should strike LTL's improper "supplemental" filing concerning the TCC continuation issue, which is a flagrantly unauthorized (and misguided) second reply.  Having had their two bankruptcy cases dismissed for bad faith, LTL's — or J&J's — disdain for rules that do not suit it is well documented.  It remains unacceptable.

      At the August 2 Hearing, the Court expressly requested "submissions" to address any provision in dispute in the proposed dismissal orders, which the Court anticipated would include "the TCC continuation."  8/2/23 Tr. 70:2-9.  The Court made clear that it did not want anything more than those limited submissions and that, "[i]f I have an issue, I'll call the parties to have -- and we can have a telephone conference."  *Id*. 70:10-17.  The Court initially set a deadline for the submissions of close of business on Friday, August 4.  *Id*. 70:2-9.  At LTL's request, that deadline was pushed back to Monday, August 7, and, after discussion about a specific time, the Court set the deadline at 9:00 pm.  *Id*.  The specific deadline was explicitly requested and set to avoid gamesmanship in filing, especially given that it was clear there would be no reply briefing.

      Yet Monday at 9:00 pm came and went without any filing by LTL.  All other parties complied with the deadline.  But not LTL.  It took nearly an extra hour (three seconds shy of 49 minutes to be exact) for LTL to file, while it presumably reviewed the other submissions and tailored its own submission accordingly.  Without so much as an acknowledgement of its tardiness, LTL did what the Court's order was specifically meant to preclude.  On those grounds alone, LTL's first submission should have been stricken as untimely.  *See Brown v. City of Phila.*, 541 F. Supp. 3d 605, 612 (E.D. Pa. 2021) (striking brief and other submissions filed after court-ordered deadline where counsel "never sought leave to file an untimely response," "never asked for an extension," filed "without any acknowledgment of their tardiness," and in "disregard [of] this Court's November 13 Order").

      But it gets worse.  Despite the Court's explicit direction that it would accept only limited, five-page submissions on August 7 and "[i]f I have an issue, I'll call the parties to have -- and we can have a telephone conference" (*id*. 70:2-17), and despite LTL already improperly having turned its initial submission into a pseudo-reply brief, LTL waited two additional days and then



Hon. Michael B. Kaplan
August 9, 2023
Page 2

improperly — and without any request, much less leave — filed yet another reply brief. Dkt. 1189. With a ruling on the orders imminent, the TCC has now scrambled to turn around a response in very short order. But fairness and the Federal Rules dictate it should not have to. LTL's "supplemental" brief should be stricken in its entirety. *See Miller v. Campbell Soup Co. - Retirement & Pension Plan Admin. Comm.*, 2022 WL 1093652, at *1 (D.N.J. Apr. 12, 2022) (declining to consider sur-reply filed without leave); *In re Samson Resources Corp.*, 2021 WL 1174534, at *4 (D. Del. Mar. 29, 2021) (abiding by deadlines is critical and even "parties proceeding *pro se* still must abide by applicable deadlines").

Moreover, LTL's efforts to backfill the holes in its initial submission fall short. In its initial submission, LTL relied principally on *Constellation*. Dkt. 1174 at 2-3. But, as the TCC's submission made clear, the Court in *Constellation* acknowledged the authority under Section 105(a) relied on by the *Lyons* court to allow a committee to continue and simply distinguished that case on the facts. TCC Ltr. (Dkt. 1171) at 3-4.

In its new submission, LTL contrives an argument that Section 105(a) cannot provide authority for the TCC's continued existence because it cannot override "'explicit mandates' and 'express terms' of the Bankruptcy Code." Dkt. 1189 at 1. But, as the TCC's submission made clear, there is no explicit conflict here. TCC Ltr. at 3. On the contrary, as courts have noted, "'[t]he Bankruptcy Code provides for the appointment and duties of committees under §§ 1102 and 1103 but does not provide for the dissolution of committees." TCC Ltr. at 3 (quoting *In re Wedgestone Fin.*, 152 BR 786, 787 (Bankr. D. Mass. 1993) (finding, over objection of debtor, that committee existed post-confirmation for purposes of commencing adversary proceeding)). Section 105 is thus used to fill in the gaps. TCC Ltr. at 3 (discussing authority). The relevant inquiry under Section 105(a) is whether there is anything "in the Bankruptcy Code's express terms" that bars the exercise of the court's authority. *In re Ross*, 858 F.3d 779, 781 (3d Cir. 2017). LTL does not dispute this. Dkt. 1189 at 1. Yet here, nothing in the express terms of Section 103(g) bars the provision allowing the TCC to continue. Section 103(g) simply provides that Sections 1102 (relating to formation of unsecured creditors' committees) and 1103 (powers and duties of committees) "apply only in a case under such chapter [11]." 11 U.S.C. § 103(g). The import of this provision is that Sections 1102 and 1103 do not apply in Chapter 7 cases, Chapter 13 cases, or in other cases besides Chapter 11. Section 103(g) says nothing about whether a creditors' committee properly formed in a Chapter 11 case can continue post-dismissal for certain limited purposes, including while the estate and the Court's jurisdiction over it continue to exist for administrative purposes. LTL's contrived argument is flawed on its face.

At bottom, LTL cannot escape the express finding by the *Lyons* court of authority under Section 105(a), as well the tacit acknowledgement of that authority by the Supreme Court of the United States, the First Circuit, and the District of Delaware, all as discussed in LTL's submission. TCC Ltr. at 3-4 (discussing cases). Instead, ignoring those cases and their import, LTL simply asserts that *Lyons* is somehow distinguishable because "no party objected to the extension of the existence of the committee at the time the bankruptcy court *sua sponte* raised the issue." Dkt. 1189 at 2. Nonsense. *First*, either there is a statutory basis for continued existence or there is not. If there is not, then neither a debtor's consent (as was provided in LTL 1.0) nor lack of objection can create it. According to the *Lyons* court, which specifically analyzed the issue, there is a basis.



Hon. Michael B. Kaplan
August 9, 2023
Page 3

TCC Ltr. at 3 (discussing *Lyons*).  And implicit in the decisions and orders of the other courts discussed in the TCC's submission (and listed above), including this Court's order in LTL 1.0, is the existence of a basis.  LTL may not like the reality in which it finds itself, but twist and turn as it may, it cannot change it.

*Second*, and purely as a matter of credibility, LTL is wrong on the facts in *Lyons*.  There is no discussion anywhere in the opinion, one way or the other, as to whether any party objected to the court's order allowing the committee to continue.  *See generally Lyons*, 162 B.R. 460.  Nor did the court raise the issue *sua sponte*, as LTL misleadingly suggests.  Instead, the opinion is quite clear that "SWC," a defendant against whom the estate had potential claims, "filed a motion to delete and otherwise void the paragraph of the January 24, 1991 Order which allowed the continued existence of the Chapter 11 Committee and the services of SMG."  *Id*. at 462.

Separately, LTL acknowledges that Section 349 serves to keep the estate in existence (Dkt. 1189 at 2), but fails to rebut the TCC's demonstration that this indisputably provides a second, independent basis of authority to allow the TCC to continue (TCC Ltr. at 4).  Ultimately, LTL offers little more than *ipse dixit*, pronouncing, "respectfully," that this Court lacks the authority to allow the TCC to continue.  Dkt. 1189 at 2.  Respectfully, as demonstrated in the TCC's submission and above, it most certainly does *not* lack that authority.  TCC Ltr. at 2-5.

                                                      Respectfully,

                                                      David J. Molton

cc:  All counsel of record