| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br><br>*Local Counsel to the Official Committee of Talc Claimants*<br><br>*-and-*<br><br>*Local Counsel for the Ad Hoc Committee of Certain Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Jeffrey L. Jonas, Esq.<br>Michael S. Winograd, Esq.<br>Eric R. Goodman, Esq.<br>dmolton@brownrudnick.com<br>jjonas@brownrudnick.com<br>mwinograd@brownrudnick.com<br>egoodman@brownrudnick.com<br>Seven Times Square<br>New York, NY  10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Sunni P. Beville, Esq.<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>*Co-Counsel for the*<br>*Official Committee of Talc Claimants*<br><br>*-and-*<br><br>*Co-Counsel for the Ad Hoc Committee of Certain Talc Claimants* |
| **OTTERBOURG P.C.**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY  10169<br>Tel: (212) 661-9100<br>Fax: (212) 682-6104<br><br>*Co-Counsel for the Official Committee of Talc Claimants*<br><br>*-and-*<br><br>*Co-Counsel for the*<br>*Ad Hoc Committee of Certain Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC  20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br><br>*Special Counsel for the Official Committee of Talc Claimants*<br><br>*-and-*<br><br>*Ad Hoc Committee of Certain Talc Claimants* |

| | |
|---|---|
| In re:<br>LTL MANAGEMENT, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

**DECLARATION OF P. LEIGH O'DELL IN SUPPORT OF
MOTION FOR PAYMENT OF SUBSTANTIAL CONTRIBUTION
FOR THE PERIODS APRIL 4, 2023 TO APRIL 14, 2023 OR, IN THE ALTERNATIVE,
AUTHORIZATION OF RETENTION OF THE TCC PROFESSIONALS' EFFECTIVE
AS OF THE PETITION DATE**

P. LEIGH O'DELL, being of full age and having been duly sworn according to law, hereby declares as follows:

1. I am a Principal of the law firm of Beasley Allen, Crow, Methvin, Portis & Miles, P.C., and a member of the firm's mass torts section. Unless otherwise stated, I am familiar with the facts set forth herein.

2. Pursuant to the *Order Appointing Lead Counsel and Plaintiffs' Steering Committee* entered by the United States District Court for the District of New Jersey in the *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Multi-District Litigation* (MDL No. 2738) (the "MDL"), I currently serve as Plaintiffs' Co-Lead Counsel in the MDL.

3. Upon the filing by LTL Management LLC ("LTL") of its first chapter 11 petition in North Carolina on October 14, 2021, Case No. 21-30589 ("LTL 1.0"), my client, Alishia Landrum, was selected by the Bankruptcy Administrator to serve as a member of the Official Committee of Talc Claimants (the "Original TCC") and was elected by the Original TCC to be its co-chair.

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2

4. After LTL 1.0 was transferred to the District of New Jersey, Alishia Landrum continued to serve as co-chair of the Original TCC, until the Office of the United States Trustee (the "U.S. Trustee") split the Original TCC into two Committees. Thereafter, Ms. Landrum served as a member and was elected co-chair of TCC I, the then official committee representing ovarian cancer claimants and third-party payors.

5. At all times, I was the member representative participating with, and on behalf of, Ms. Landrum as a member and co-chair of the official committees in LTL 1.0.

6. Following this Court's determination that the two TCC Committees would be recombined, Alishia Landrum again assumed the role of member and co-chair of the combined Original TCC. I continued to act as Ms. Landrum's member representative with respect to LTL 1.0.

7. On April 4, 2023, pursuant to a directive from the Third Circuit Court of Appeals, this Court dismissed LTL 1.0. Less than two hours and eleven minutes later (and contrary to its statement it would be filing a writ of certiorari with the U.S. Supreme Court), the Debtor filed a second voluntary chapter 11 petition with this Court ("LTL 2.0").

8. Immediately following the filing of LTL 2.0, LTL filed a series of pleadings seeking immediate and extensive relief. Among the pleadings filed on April 4, 2023 (the "Petition Date") were:

- A 24-page Voluntary Petition for Non-Individuals Filing for Bankruptcy [ECF No. 1];
- A 10-page Debtor Statement Regarding Refiling of the Chapter 11 case [ECF No. 3];
- A 43-page Declaration of John Kim in Support of the First Day Pleadings, together with 83 pages of exhibits [ECF No. 4];
- A 10-page Motion and proposed Order suspending standard notice [ECF No. 5];

3

- A 4-page Application for Designation as a Complex Chapter 11 Case [ECF No. 6];

- A 36-page Adversary Complaint, together with 1,412 pages of exhibits, seeking immediate injunctive relief and reinstatement of the stay [Adv. Pro. No. 23-01092, ECF No. 2];

- A 24-page Motion Seeking the Entry of an Order Allowing the Debtor to File a List of the 20 Largest Unsecured Creditors, Approving Notice Procedures for Talc Claimants and Approving a Form and Manner of Notice of Commencement of the Case [ECF No. 10];

- A 57-page Motion for an Order Authorizing the Debtor to Retain a Claims and Noticing Agent [ECF No. 11];

- A 23-page Motion for the Entry of an Order for the Debtor to Act as a Foreign Representative [ECF No. 12];

- A 17-page Motion for the entry of an Order Approving the Continued Use of its Bank Accounts and Business Forms [ECF No. 13];

- A 10-page Motion Seeking an Extension of Time to File Missing Schedules [ECF No. 14]; and

- A 6-page Application for Expedited Consideration of First Day Matters [ECF No. 15].

9. On April 5, 2023, this Court entered an Order granting the Application for Expedited Consideration of First Day Matters, scheduling a hearing for April 11, 2023 at 10:00 a.m. (ET).

10. Also on April 5, 2023, this Court entered an *Ex Parte Temporary Restraining Order and Declaratory Judgment* ("TRO") issuing a preliminary injunction that required all cases against J&J and other Protected Parties to immediately cease. The Court scheduled a hearing on continuation of the preliminary injunction for April 18, 2023 at 10:00 a.m. (ET), less than two weeks from the date of entry of the TRO.

11. In light of the unprecedented second filing and the need to timely respond to the Debtor's flurry of filings, the nine members of the Original TCC in LTL 1.0—whose counsel had not signed Plan Support Agreements (see next paragraph)—deemed it vital to form an ad hoc

4

committee to protect the broad interests of talc claimants until an official committee was appointed. Ms. Landrum was one of the nine members of the ad hoc committee, and I continued to act as her member representative for purposes of the ad hoc committee.

12. The ad hoc committee consisted of nine of the eleven members of the Original TCC. The two members who were not invited to participate in this ad hoc committee were represented by counsel who had signed nondisclosure agreements with LTL while they were serving on the Original TCC and had signed Plan Support Agreements, purportedly binding them to recommend to their clients that they support the Debtor's proposed reorganization plan in LTL 2.0.

13. In light of their extensive familiarity with the Debtor, the Debtor's professionals and the case issues, the ad hoc committee determined to retain the law firms of Brown Rudnick, Otterbourg, Massey & Gail, and Genova Burns to continue their representation of the interests of talc claimants (the "TCC Counsel"). The ad hoc committee also retained FTI Consulting (including Compass Lexecon), also a former professional of the Original TCC, to serve as financial advisor and to provide litigation support (the "TCC Financial Advisors" and, together with the TCC Counsel, the "TCC Professionals").

14. From the outset of LTL 2.0, the Debtor expressed its intention to move as quickly as possible through the Chapter 11 process. In order to appropriately represent and protect the interests of the creditors of LTL, the ad hoc committee and its professionals needed to "hit the ground running" and perform a large volume of work in a very short period of time. None of this work could await the official appointment of the TCC.

15. While the U.S. Trustee acted more swiftly than is ordinarily possible in a large and complex Chapter 11 case, the Committee was not appointed until late in the day on Friday, April 14th (the "Committee Appointment Date"). However, it was and is my understanding that the

5

circumstances surrounding the filing of LTL 2.0 were highly atypical. As a result, it was the members of the ad hoc committees' judgment that creditors who were otherwise unrepresented at the outset of LTL 2.0 would therefore greatly benefit from having experienced bankruptcy counsel work to protect their interests until an official committee was formally appointed. Given the time span between the Petition Date and the Committee Appointment Date, it was necessary for the ad hoc committee members to overcome any different self-interests that may have manifested themselves when the Original TCC was split in LTL 1.0, and for the professionals representing the ad hoc committee to work intensively and feverishly to respond to the numerous and voluminous pleadings filed by the Debtor at the commencement of the second Chapter 11 case—especially in light of the preliminary injunction hearing scheduled just two weeks after the Petition Date.

16. The ad hoc committee's professionals filed extensive pleadings raising significant and important objections to much of the relief that was requested by the Debtor, and they also prepared an informational brief in response to the Debtor's *Statement Regarding Refiling of Chapter 11 Case*. On April 11th, the Court conducted a long and complicated hearing, at which professionals for the ad hoc committee played an important role.

17. In light of the impending April 18 hearing on the continuation of the preliminary injunction, preparation could not await the formal appointment of the official committee. The ad hoc committee and its professionals assumed the lead responsibility for laying the groundwork for this upcoming contested hearing, which required significant time and effort. While the evidentiary hearing itself occurred after the TCC's formal appointment, much of the preparation work was performed before the official committee had been appointed. Once appointed, the TCC was able

to rely on the preparatory work already in place as a result of the ad hoc committee's and its professionals' efforts.

18. As a result of those efforts, the Court declined to continue the TRO and instead granted a much more limited injunction, allowing cases to be commenced and to proceed up to the point of trial. This form and scope of the injunction remained in place through the dismissal of the case by the Court.

19. During the period of April 4, 2023 to April 14, 2023, the ad hoc committee and its professionals also communicated with a large number of creditors and claimants and their counsel, to answer questions and provide guidance on the anticipated course of LTL's second bankruptcy case.

20. After the TCC was formed in LTL 2.0, Alishia Landrum was again appointed a member and became co-chair of the TCC. I have acted as Ms. Landrum's member representative in LTL 2.0 as I did in LTL 1.0.

21. Shortly after its appointment on April 14, 2023, the TCC approved the retention of the TCC Professionals to serve on behalf of the TCC. The TCC Professionals' retentions were later approved by Order of this Court effective as of April 14, 2023. ECF Nos. 754 (Genova Burns), 755 (Brown Rudnick), 774 (FTI) 776 (Otterbourg), 777 (Massey & Gail). It was the TCC's belief that the retention of the TCC Professionals would ensure a smooth transition between the ad hoc committee's and TCC's efforts.

22. As the member representative for the co-chair of the TCC in both LTL bankruptcy cases, I have personal knowledge of the work that was done between April 4, 2023 and April 14, 2023, and it is my belief that that work and the expense related thereto was critical and necessary,

7

as described herein, and provided substantial benefit and contribution to this bankruptcy case, the creditors of the Debtor and this bankruptcy estate.

23. I hereby swear that the foregoing statements made by me are true to the best of my knowledge, information and belief and I am aware that any willfully false statement could subject me to penalty.

*/s/ P. Leigh O'Dell*
P. LEIGH O'DELL

Dated: August 17, 2023