| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 533-0777<br>Fax: (973) 533-1112<br>*Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Michael S. Winograd, Esq.<br>Susan Sieger-Grimm, Esq.<br>Kenneth J. Aulet, Esq.<br>dmolton@brownrudnick.com<br>mwinograd@brownrudnick.com<br>ssieger-grimm@brownrudnick.com<br>kaulet@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br>And-<br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the Official Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Jennifer S. Feeney, Esq.<br>Michael R. Maizel, Esq.<br>mcyganowski@otterbourg.com<br>jfeeney@otterbourg.com<br>mmaizel@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Co-Counsel for the Official Committee of Talc Claimants* |
| In re:<br><br>LTL MANAGEMENT, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**OMNIBUS RESPONSE OF OFFICIAL COMMITTEE OF TALC CLAIMANTS TO THE OBJECTIONS TO MEMBER REPRESENTATIVE EXPENSE REIMBURSEMENT FOR EXPENSES INCURRED BETWEEN APRIL AND JULY OF 2023**

The Official Committee of Talc Claimants (the "TCC"), by and through its above-captioned counsel, hereby submits the following omnibus response to the objections by LTL Management, LLC (the "Debtor" or "LTL") [Dkt. No. 1477] (the "Debtor's Objection") and the Office of the United States Trustee [Dkt. No. 1493] (the "UST Objection"):

1. Initially, it should be noted that there is no statutory or case authority prohibiting reimbursement of the type of expenses sought in the TCC's application (the "Application"). [Dkt. No. 1391]

2. It should also be noted that none of the expenses sought are for legal services, but for reasonable travel-related expenses of that attorney <u>serving in their capacity as a representative of the committee member</u>. Courts overseeing similar cases have authorized reimbursement for such expenses incurred by the members of the respective committees. *See In re Bestwall, LLC*, Case No. 17-31795 [Dkt. No. 132] (In *In re Bestwall, LLC*, the North Carolina Court entered an order establishing procedures for interim compensation and reimbursement of expenses under similar circumstances.). *See also In re Aearo Technologies LLC*, Case No. 22-02890 [Dkt. No. 541].

3. The Debtor points out that the dismissal order from LTL's second bankruptcy case ("LTL II") [Dkt. No. 1211] preserves the effectiveness of the "Compensation Procedures Order" [Dkt. No. 562]. Paragraph 6 of the Compensation Procedures Order provides that:

> "(e)ach member of the Committee shall be permitted to submit statements of expenses (excluding expenses of third-party **counsel** of individual Committee members, the reimbursement of which, if any, is not addressed by this Order) and supporting vouchers to the Committee's counsel, which counsel will collect and submit the Committee members' requests for reimbursement in accordance with the Compensation Procedures. The Future Claimants' Representative also shall be permitted to submit statements of expenses and supporting vouchers to his or her counsel, which counsel will submit for reimbursement in accordance with the Compensation Procedures." (emphasis added).

4. The LTL II dismissal order does not prohibit reasonable expenses incurred by a **personal representative** attending a hearing on the committee member's behalf when that member is too ill to attend themselves or does not readily possess relevant and sufficiently detailed knowledge of the underlying case posture or science of talc liability when that knowledge is relevant to the broad relief sought by the Debtor (which relief was often sought on short notice).

5. Notwithstanding LTL's implication that these expenses would not have been authorized in LTL's first bankruptcy case ("LTL I") except by consent order, that consent order was reached after the Debtor's objections to the TCC's motion to authorize these types of expenses were not sustained by the Court. [Dkt. No. 3783]

6. The identical basis supporting the Court's authorization in LTL I exists now in LTL II. In fact, the urgency for the need for such member expenses only increased due to the progression of the members' collective health concerns and the Debtor's attempt to expedite the plan process in response to pending motions to dismiss the case.

7. For the reasons within, and supported by 11 U.S.C. § 105, this Court can and should use its discretion to authorize the reimbursement of the expenses detailed in the Application.

*Member Representatives "Not Retained"*

8. J&J, through LTL, alleges that the member representative expenses are not compensable under 503(b)(3)(F). *See* Debtor's Objection, paragraph 2 ("[The bankruptcy code] does not permit allowance of compensation for **services rendered by an attorney** for an individual committee member acting for that individual committee member." (citing 11 U.S.C. § 503(b)(4))) (emphasis added).

9. This is a fundamental flaw in J&J's cold and calculated characterization of the members' relationship with their representatives. Plaintiffs represented by the TCC (including members of the TCC) died during the months of delay caused by J&J's flippant shell game. J&J (and LTL) were aware that many of the Members were too ill to undertake some of the physical activity, primarily travel and participation in in-person meetings, involved in serving on a committee.

10. However, physical disability and inability to travel must not serve as a basis to refuse participation (whether remotely, or in person via a representative) to a willing and eligible committee member. To hold otherwise renders the UST's job of finding suitable committee members an impossibility the more catastrophic the harm caused by the debtor for whom the UST must pick a committee.

11. LTL's insinuation that the members abdicated their responsibilities is also specious because it presumes the members (and the rest of the constituents) of the TCC do not have the right to benefit from the experiential case knowledge possessed by their individual attorneys now serving as their personal representative. For example, the factual findings and conclusions of law made in various jurisdictions on the underlying talc liability cases are all relevant to the claims of the TCC members and their constituents against LTL's bankruptcy estate. This includes knowledge about past judgments, appeals, reversals, medical findings, and similar knowledge gained through experience handling multiple TCC members' cases.

12. While such information is highly relevant to each of the TCC constituents (as it serves their interest in pursuing their claim in the bankruptcy case) it is not readily obtainable from an individual member. Instead, the TCC professionals relied on the encyclopedic knowledge of the member representatives to properly characterize the status of talc product liability so that the TCC professionals could best represent the TCC.

13. The TCC, its professionals, and all constituents served by the TCC benefited immeasurably from the member representative's involvement, especially when the members could not attend or timely impart the knowledge of the interests at play in their pending talc liability cases. That involvement resulted in the members incurring moderate and reasonable expenses related to their representative's travel and (in-person) participation. To allege that the Members simply delegated their duties at the expense of other creditors is cold, misleading, and unwarranted.

### *Duplication of Efforts and Excessive Expenses*

14. Beyond a bald assertion of duplication of efforts, the Debtor cites no examples of any member representative's expenses resulting from the duplication of efforts with retained professionals.

4

15. The Debtor's allegation that certain accommodations or travel was excessive fails to consider that the TCC and the member representatives were often forced to make arrangements on very little notice reducing the possibility of more cost-effective alternatives. Individual examples of excessive expenses can easily be addressed by line item. Certainly, one or two examples do not serve to deny the entirety of the underlying Application.

16. Finally, LTL takes issue with Member Representatives' appearance in-person at various hearings. For the reasons detailed herein, such a position is equal parts heartless and specious. The Court is well aware that much substantive participation in any hearing occurs "off the record" in the hallways of the courthouse. A member who is only able to view a hearing virtually will lose the benefit of being at the hearing in person. Furthermore, as detailed above, the collective knowledge the various member representatives were able to impart to the TCC professionals in real time at the hearings, trials, and conferences, helped to ensure the TCC professionals were able to represent the TCC's interests with the most accurate and current information available.

17. J&J caused the crippling symptoms suffered by the respective members. Those symptoms prohibited the members from appearing in person at various hearings. Nonetheless, the members had every right and reason to participate as fulsomely as possible. In order to do so, the members were forced to incur expenses and costs by having their representative serve as their eyes and ears at ground zero.

18. J&J's quibbling (through LTL) over $90,000 in reasonable expenses incurred by the members through the member representatives is a transparent swipe at J&J's victims who have twice successfully moved to dismiss this case. Without batting an eye, J&J has gladly reimbursed the tens of millions of dollars of fees generated by its army of lawyers which helped to administer this failed case. This was an expenses J&J invited, and it is an expenses J&J should reimburse.

*Conclusion*

19. Based upon the pleadings filed by the TCC, the TCC respectfully submits that there is cause to grant the TCC's Application in full.

Respectfully submitted,

**GENOVA BURNS LLC**

Dated: October 13, 2023

By: */s/ Daniel M. Stolz*
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: 973-467-2700
Fax: 973-467-8126
Email: dstolz@genovaburns.com
Email: dclarke@genovaburns.com

*Local Counsel to the Official Committee of Talc Claimants*