# WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE

NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

November 3, 2023

**Via ECF**
The Honorable Michael B. Kaplan
United States Bankruptcy Court, District of New Jersey
Clarkson S. Fisher US Courthouse
402 East State Street, Courtroom #8
Trenton, NJ 08608

      Re:    **LTL Management LLC, Case No. 23-12825 (MBK)**

Dear Chief Judge Kaplan:

      This firm is co-counsel for LTL Management LLC (the "Debtor") in the above-referenced matter and submits this response to the two (2) submissions by the TCC on October 27, 2023 [Dkt. 1544; 1545] for fees and expenses of certain professionals retained by the TCC, as well as certain committee members' representatives. Although the Debtor and most professionals have consensually resolved disputed fee amounts following the October 18, 2023 hearing, no agreement has been reached regarding the excessive amounts sought in the (i) Final Fee Application of Houlihan Lokey [Dkt. 1347]; (ii) Final Fee Application and post-dismissal Monthly Fee Statements of Massey & Gail [Dkts. 1341, 1382, and 1526]; (iii) Substantial Contribution Motion [Dkt. 1241]; and (iv) Reimbursement Motion [Dkt. 1391]. For the reasons set forth below, the Debtor requests that the Court (i) deny Houlihan Lokey's request for a $2,000,000.00 discretionary bonus; (ii) award Massey & Gail (A) final fees in the reduced amount of $1,396,783.78,[1] and (B) post-dismissal fees in the reduced amounts of $2,346.00 and $12,995.00 for the periods August 12 through 31, 2023, and September 1 through September 30, 2023, respectively; (iii) deny the Substantial Contribution Motion in its entirety; and (iv) deny the Reimbursement Motion in its entirety.

**Houlihan Lokey**

      At the October 18, 2023 hearing, Houlihan admitted it is seeking a "bonus" based on the same services for which it already received a monthly fee, e.g., Oct. 18, 2023 Hr'g Tr. 16:18-20, an admission that requires the Court to review the award under the law governing professional bonuses in bankruptcy cases. In argument and the supplemental letter with respect to Houlihan [Dkt. 1544] (the "Houlihan Letter"), the TCC attempts to cloak the "discretionary" bonus in the

---

[1] The reduced amount requested by the Debtor is comprised of the total fees requested by Massey & Gail less: $145,755.50 (duplicative substantial contribution amounts included in the fee application); $401,978 (work conducted outside the scope of retention); $117,428 (multiple attendees); $20,562.50 (post-dismissal substantive work); and $55,039.22 (33% reduction related to top heavy, block billed, lumped or vague time entries or entries by transient timekeepers). While many entries are objectionable on several bases, the Debtor has not counted any fee entry twice.

1

protective garb of an exercise of "business judgment" as a reward for "dismissal of the case." See, e.g., id. at 22:7-9. However, the business judgment rule is not applicable here. Decisions made by fully informed disinterested fiduciaries (such as directors of a corporation) who owe fiduciary duties to that entity regarding how that entity should conduct its business are often protected by the business judgment rule. However, even if the TCC could prove that the requisite procedural steps for application of the business judgment rule were met, the TCC and its members do not owe fiduciary duties to the Debtor, the entity whose assets it proposes to spend for Houlihan's bonus. In re Rickel & Assocs., 272 B.R. 74, 99 (Bankr. S.D.N.Y. 2002) ("The Committee and its members owed a fiduciary duty to the class they represented, but not to the individual creditors within the class or to the estate."). Accordingly, the business judgment rule has no application to the TCC's proposed use of the Debtor's assets.[2] It is also irrelevant when the Court has retained the independent authority to review and approve any bonus.

Further, Houlihan and the TCC improperly negotiated the amount of the bonus as a method to compensate Houlihan not just for work in LTL II, but for work already performed and paid for **in LTL I**, the prior chapter 11 case. As stated by Houlihan's representative:

> We asked for $2.3 million . . . [and] thought 50 percent of our disclosed deferred fee plus the amount of money that we had given in fee concessions **between the two cases**, roughly $850,000, was fair. The [TCC] came back and wanted to be more conservative, and they cut us back to $2 million . . . The reason why LTL1 is relevant . . . is that we were struck in LTL2, with a blitzkrieg . . . We provided over $850,000 of fee concessions between the two cases.

Oct. 18, 2023 Hr'g Tr. at 15:4-9, 21:5-8 (emphasis added). No legal support is given or exists for structuring a bonus in a second case based on work the applicant claims to have done in a prior case, and it runs counter to the Court's order governing dismissal in the prior case. In fact, Paragraph 5 of the April 4, 2023 dismissal Order set forth the requirements for submission and payment of all final LTL I professional fees, and required those fees to be submitted by a deadline and then resolved and paid. Professionals that calculated their compensation in the new case based in part on LTL I services are clearly violating the Court's earlier Order. See LTL Management LLC, Case No. 21-30589 (MBK) [Dkt. 3938].

The Houlihan Letter also suggests some form of estoppel or reliance bars the Debtor's challenge to the bonus, asserting that "[t]his Court approved the inclusion . . . and Houlihan Lokey relied on that fee arrangement in undertaking the engagement." Houlihan Letter at 2. Paragraph

---

[2] The inappropriate reliance on the business judgment rule is further underscored by the fact that no case has been cited by the TCC, and none has been discovered, where the business judgment rule has been applied to support the award of bonuses to retained professionals by a committee. The rule applies when the appropriate process has been undertaken by entity fiduciaries in making decisions as to matters affecting the entity and to which the fiduciaries owe a duty. See, e.g., Ehrenhaus v. Baker, 216 N.C. App. 59, 82 (N.C. Ct. App. 2011). The TCC never explains how the principle applies to fee awards that are subject to the reasonableness standard of the Bankruptcy Code and must be paid by the Debtor, nor does the record contain any evidence that the procedural requisites for its application were employed. Indeed, it is extremely unlikely that the TCC, all of whose members are adverse to the Debtor and owe it no fiduciary duties, would not be disqualified from application of the rule to them because of their status as creditors personally interested in the outcome. See Madvig v. Gaither, 461 F. Supp. 2d 398, 409 (W.D.N.C. 2006); In re ES2 Sports & Leisure, LLC, 544 B.R. 833, 846 (Bankr. M.D.N.C. 2015).

2

4 of Houlihan's retention Order [Dkt. 899], however, expressly negates reliance as the Court retained the authority to weigh the merits of a bonus request, including the right to deny it entirely.

Further, the TCC argues that even though Houlihan chose to be retained on a fixed fee basis, the bonus is justified based on imputed hourly rates borrowed from another law firm applicant. Houlihan Letter at 2 ("[F]or comparison purposes, Houlihan Lokey has assigned billing rates commensurate with the Paul Hastings billing rates."). The random comparison is at odds with the retention order providing for a fixed fee. When a professional has already been sufficiently compensated by its negotiated fee and the discretionary fee would result in an excessive award, the request must be denied. See In re Northwest Airlines Corp., 400 B.R. 393, 401 (Bankr. S.D.N.Y. 2009). This is so even if "comparably skilled financial advisors received 'substantially larger fees' in this case and in similar cases." Id. at 402.

Even if fee comparisons could be used to justify a bonus, a more apt comparison is Houlihan's fees in the prior case. Here, Houlihan seeks compensation comparable to what it received in LTL I, while spending roughly **half the hours** and using existing work product for which it was already paid. Houlihan is looking for a windfall, not a bonus. The TCC's argument also ignores that Houlihan's time was excessive given that it provided little material value (e.g., six timekeepers attending the nine hearings for which Houlihan was present) [Dkt. 1496, Ex. A].

Finally, Houlihan's calculation for its request is at odds with the terms of its own retention. Houlihan's retention states it will credit 50% of the monthly fees received by it against the discretionary fee enhancement. See Houlihan Retention Application at ¶8, n.1 [Dkt. 538]. The fee request simply demands the full amount of the bonus and omits any credit. Should the Court consider such an award, Houlihan should be required to resubmit its request in conformity with the terms of its fee agreement.

The Court put Houlihan on notice that the payment of the discretionary bonus was neither a right nor guaranteed. Having failed to meet the legal standards for such a bonus, Houlihan's and the TCC's post hoc submissions and arguments are not a legitimate substitute. Houlihan's request for a discretionary bonus should, therefore, be denied.

**Massey & Gail**

**Final Fee Application**. In a second letter dated October 27, 2023 (the "Massey Letter") [Dkt. 1545], Massey & Gail argues it should be compensated for appellate services as (1) its special counsel application expressly identifies Mr. Massey's appellate experience, (2) Massey offered appellate related services in the prior chapter 11 case, and (3) Massey was included on some appellate related correspondence. Massey Letter at 2-3. Massey also submits a new affidavit from retained appellate counsel that recites Massey's alleged beneficial services in LTL I, although little effort is made to explain why those services should be considered in this case. As set forth below, the arguments should be rejected.

First, the standard practice of touting counsel's experience is clearly distinguishable from a retention order expressly retaining counsel for a specific purpose. Notwithstanding the curriculum vitae references in the application, the Order authorizing retention of Massey [Dkt. 777] does not authorize appeal-related services. The Order's silence is in stark contrast to the simultaneous retention order of MoloLamken, which authorizes appellate services. Consequently,

neither the Court nor parties in interest were on notice that Massey was serving as duplicate appellate counsel in LTL II.

Second, Massey's retention application here is independent of its services in the prior case. Indeed, the circumstances of the two cases were far different. Unlike in LTL I, in LTL II a request for appellate services, however unnecessary, was made at the outset; hence, the immediate retention of MoloLamken as appellate counsel. The simultaneous failure to disclose that Massey was performing the same function cannot be cured by inferences that are allegedly to be drawn from an earlier proceeding, particularly one involving a different sequence of events.

Third, the TCC fails to explain how receiving correspondence unilaterally expands the scope of retention. Other non-appellate counsel were also included in correspondence; presumably they could begin to bill for such services. See Massey Letter, Ex. A. Such a low standard would also allow any special counsel to engage in another role regardless of a formal order stating otherwise or effectively allow special counsel to morph into general counsel.

Following the hearing, the TCC introduced a new supporting declaration from retained appellate counsel touting Massey's contributions in LTL I. See id., Ex. B. In his declaration, Mr. Lamken argues that the "active participation of Massey & Gail was essential to achieving a favorable result for the TCC in the appeal in **LTL 1.0**" and "[i]t would have been extraordinarily difficult for MoloLamken to effectively familiarize itself with the record and the issues on the accelerated timeline ordered by the Third Circuit without the assistance of Massey & Gail." See id., Ex. B ¶ 8 (emphasis added). As noted above, the TCC leaves unexplained how the events of LTL I mitigate the failure of Massey to be retained to provide appellate services in LTL II. If anything, the TCC should have addressed Massey's role upfront if it had the intention of allegedly duplicating MoloLamken's role in this case. Had it been disclosed, parties would have had the opportunity to challenge the necessity and reasonableness, given that the TCC's appellate specialists at MoloLamken were actively monitoring filings and participating in the underlying motion to dismiss from the start. That Massey may have contributed to MoloLamken's efforts in LTL I does not make those same contributions necessary or remotely reasonable in LTL II.

Mr. Lamken also asserts that the costs incurred by Debtor's main bankruptcy and appellate counsel in LTI I dwarfed the combined costs of MoloLamken and Massey as if this is relevant to the scope of formal representation. See id., Ex. B ¶ 13. The comparison again erroneously focuses on the prior case; regardless, the comparison is inapposite. Jones Day served as general bankruptcy counsel, not special counsel, and Hogan Lovells was expressly retained as appellate counsel. Massey was not retained as general counsel and was not retained to provide assistance to MoloLamken in the appellate process.

Lastly, Massey offers no material rebuttal to the Court's and Debtor's concerns that the firm provided appellate services that did not benefit the estate, such as the writ of mandamus, regardless of whether such services are within the scope of retention. Accordingly, the Court should reduce the allowed fees of the Massey firm to $1,396,783.78, as requested by the Debtor.

**Post-Dismissal Fees**. Massey's fee statements are almost exclusively for appellate work. The Debtor is, however, already compensating MoloLamken for those services. For the reasons set forth above, and in prior submissions, Massey is not entitled to compensation for such post-dismissal work.

4

**Substantial Contribution Motion**

The Debtor has previously addressed the legal insufficiency of the TCC's fee demands for services rendered prior to committee formation, and the Court has already noted that the bulk of the services provided no benefit. See, e.g., Oct. 18, 2023 Hr'g Tr. 62:6-10. We note, however, that the motion seeks fees calculated by adding the amounts for services rendered by 5 professionals, including $106,920.50 attributable to FTI Consulting. FTI previously resolved its claim for substantial contribution pursuant to the Court's final fee award [Dkt. 1540].[3] Thus, to the extent the Court is inclined to grant any amount, it should not include an amount attributable to FTI.

**Reimbursement Motion**

Counsel representing individual TCC members seek $90,341.19 in reimbursement for costs and expenses. No agreement was reached to entitle members' attorneys to recover from the Debtor, the expenses are extravagant and, as the U.S. Trustee has noted, the members themselves could have attended hearings through Zoom. Although the TCC claims the members will agree to some still-unspecified reductions to make them slightly more palatable, see Houlihan Letter at 3, the proposal does not overcome a critical defect—there is no legal basis for reimbursement. Finally, the Court has been given no evidence that allows it to conclude that even reduced amounts are reasonable or comply with applicable guidelines.

## CONCLUSION

For the reasons set forth above, at the October 18, 2023 hearing, and in the Debtor's objections, the Debtor requests that the Court (i) deny Houlihan Lokey's request for a $2,000,000.00 discretionary bonus; (ii) award Massey & Gail (A) final fees in the reduced amount of $1,396,783.78, and (B) post-dismissal fees in the reduced amounts of $2,346.00 and $12,995.00 for the periods August 12 through 31, 2023, and September 1 through September 30, 2023, respectively; (iii) deny the Substantial Contribution Motion in its entirety; and (iv) deny the Reimbursement Motion in its entirety.

Thank you for your attention to this matter.

Respectfully submitted,

*/s/ Paul R. DeFilippo*

Paul R. DeFilippo

cc:   All counsel of record (via ECF)

---

[3] MoloLamken and Miller Thomson LLP made fee application requests that included a substantial contribution theory, but such requests were not part of the motion and were resolved in the orders granting their fee applications.