

1000 Maine Ave. SW  
Suite 450  
Washington, D.C. 20024

Jonathan S. Massey  
jmassey@masseygail.com  
(202) 650-5452

November 6, 2023

Honorable Michael B. Kaplan  
U.S. Bankruptcy Judge  
U.S. Bankruptcy Court for the  
  District of New Jersey  
402 East State Street  
Trenton, New Jersey  08608  
chambers_of_mbk@njb.uscourts.gov

                Re:  *In re LTL Management LLC*, No. 23-12825 (MBK)

Dear Judge Kaplan:

      Massey & Gail LLP serves as co-counsel to the Official Committee of Talc Claimants (the "TCC") in the above-referenced proceeding, and I write regarding the Debtor's continued objection to our fees.  The U.S. Trustee has not joined in the Debtor's objection.

      We respectfully request that the Court enter the proposed order submitted at Dkt. No. 1545-3, which reflects a 5% discount for my firm's fees for the period between April 14, 2023 and August 31, 2023.  Five percent is the amount accepted by the Debtor for most of the other TCC firms, and it was the average reduction agreed to by the Fee Examiner in LTL 1.0.

      We are disappointed that the Debtor has refused our offer to consensually resolve our fees on the same terms it resolved the fees of other TCC firms.  The relevant language in Massey & Gail's retention application in LTL 2.0 was identical to that in LTL 1.0.  The Debtor and its counsel were fully aware that our firm had been actively involved in all facets of appellate practice in LTL 1.0, both before and after the retention of MoloLamken, and it had no reasonable basis for believing LTL 2.0 would be any different.  We are compelled to respond to a number of inaccuracies in LTL's letter of November 3 (Dkt. No. 1567):

      1.  The Debtor describes our position as resting on the fact that my firm's "special counsel application expressly identifies Mr. Massey's appellate experience."  Dkt. No. 1567, at 3.  That description is misleading.

      The retention application of Massey & Gail in LTL 2.0 – and of all the TCC firms – contains a special section addressing the respective roles of the law firms and the division of labor among them.  This section is not focused on "touting counsel's experience."  Dkt. No. 1567, at 3.  It is focused on outlining the work that each law firm will do.  It was inserted at the specific request of the Office of the U.S. Trustee (and hence the U.S. Trustee's decision not to join in the Debtor's objection is particularly probative).  In that section, our retention application states that "Massey & Gail serves as special counsel, providing unparalleled mass tort and other complex case experience *before trial and appellate courts, including the Supreme Court*." Dkt. 402, ¶ 6(c) (emphasis added).  This is not a "curriculum vitae reference[.]"  Dkt. No. 1567, at 3.  It is an explanation of the role my firm will play in LTL 2.0.  Notably, the Debtor's latest letter fails to

November 6, 2023
Page | 2

acknowledge this language, and the Debtor's initial objection to our appellate fees in this case similarly omitted the italicized language referring to "*appellate courts, including the Supreme Court.*" Dkt. No. 1454, ¶ 2.

Nowhere does the Massey & Gail retention application in LTL 2.0 exclude appellate services. Indeed, the LTL 2.0 retention application expressly states that "Massey & Gail is well-versed in the issues presented by the Debtor's current bankruptcy proceeding, having represented the Official Committee of Talc Claimants in the Debtor's prior Chapter 11 bankruptcy proceeding before this Court, *as well as in the Committee's appeal to the Third Circuit Court of Appeals*." Dkt. 402, ¶ 4 (emphasis added). Moreover, the retention language in LTL 2.0 expressly includes proceedings outside bankruptcy court. Dkt. 402, ¶ 6(e) ("Provide such other services to the Committee as may be necessary in this Case *or any related proceedings*.") (emphasis added).

2. LTL does not deny that the fee applications detailed Massey & Gail's extensive role in the LTL 1.0 appeal. LTL does not deny that in LTL 1.0 my firm participated extensively in the briefing process, assembly of the joint appendix, coordination with co-appellants, and preparations for oral argument. "Jonathan Massey was one of two TCC attorneys [along with Mr. Lamken] at counsel table for the argument." Dkt. No. 3392-1, ¶ 2 (Case No. 21-30589-MBK).

LTL nonetheless argues that "Massey's retention application here is independent of its services in the prior case." Dkt. No. 1567, at 4. But Massey & Gail's LTL 1.0 and LTL 2.0 retention agreements have the same language regarding the division of labor among TCC counsel and the description of the services to be performed by my firm. On the basis of the experience in the first bankruptcy, in which my firm played a prominent appellate role, LTL could not have reasonably believed that my firm's LTL 2.0 retention excluded appellate services.

LTL suggests that the circumstances of the two cases were different because "[u]nlike in LTL I, in LTL II a request for appellate services, however unnecessary, was made at the outset." Dkt. No. 1567, at 4. But the parties did not how and when this Court might rule on issues that came before it. If and when appellate issues arose, LTL had no reasonable basis for assuming that MoloLamken would be the *only* firm working on appellate issues in LTL 2.0. To the contrary: it knew that my firm had continued to play a significant role in the LTL 1.0 appeal, even after MoloLamken's retention as appellate counsel. Notably, LTL paid Massey & Gail's fees in full at the conclusion of LTL 1.0 and did not request any deduction for the time period after MoloLamken's retention as appellate counsel. Nor did the Fee Examiner or the UST raise any issues in this regard.

3. LTL does not deny that its own counsel sent me (or copied me on) numerous emails relating to appellate work, clearly demonstrating their understanding that my retention extended to appellate work. For example, its counsel sent emails to me (and only to me) about arranging a transcript of oral argument in the Third Circuit, Dkt. No. 1545-1, Ex. D; about a deferred appendix in the Third Circuit, *id.*, Ex. J; about a statement regarding oral argument in the Third Circuit, *id.*, Ex. K; and about a Third Circuit briefing schedule. *Id.*, Ex. L. LTL's counsel included me on emails on the same address line as Mr. Katyal. *Id.*, Exs. G, H. LTL's counsel have continued to email me regarding appellate issues during the LTL 2.0 appeal. *Id.*, Exs. A, B.

November 6, 2023
Page | 3

      Our argument is not, as LTL contends, that "receiving correspondence unilaterally expands the scope of retention." Dkt. No. 1567, at 4. Again, that is a mischaracterization. Rather, the point is that LTL's longstanding course of conduct demonstrates its long-held understanding that Massey & Gail would perform appellate work.

      4. LTL's November 3 letter asks that my firm's fees be reduced to reflect the writ of mandamus. Dkt. No. 1567, at 4. There is no need for a further reduction, on top of the 5% discount already reflected in the proposed order we have submitted to the Court. The TCC collectively decided to file the mandamus petition, and the TCC collectively has reduced its fee applications by over $1 million. That reduction more than compensates for the fees associated with the mandamus petition, and there is no reason that Massey & Gail's fees should be reduced further on that basis.

      LTL's latest letter raises other issues, such as allegedly vague fee entries (Dkt. No. 1567, at 1 n.1), to which the TCC has already responded. Dkt. No. 1514, at 19-21. LTL's letter ignores that response, which explains that LTL's objections have no basis. In any event, the 5% reduction already reflected in the proposed order submitted to the Court addresses these concerns.

      Finally, it appears that LTL seeks to have this Court rule on an objection filed by the Debtor on November 2 (Dkt. No. 1566) regarding my firm's September 2023 fee application. LTL's letter of November 3 refers to my firm's fees from "September 1 through September 30, 2023." Dkt. No. 1567, at 1. Any request to rule on the Debtor's November 2 objection, to which my firm has not yet responded, would be premature. I would hope that, after this Court rules on the Debtor's prior objections that were the subject of the hearing on October 18, LTL and my firm would be able to resolve consensually any issues regarding my firm's remaining fee applications.

      Respectfully submitted,

      MASSEY & GAIL LLP

      Jonathan S. Massey

cc:    All counsel of record