**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |

**DEBTOR'S REPLY IN SUPPORT OF MOTION PURSUANT TO BANKRUPTCY RULES 9023 AND 9024 FOR AMENDMENT OR RECONSIDERATION OF THE ORDER AWARDING A DISCRETIONARY BONUS TO HOULIHAN LOKEY**

The above-captioned debtor (the "Debtor") files this reply and the supplemental declaration of James N. Lawlor (the "Suppl. Counsel Decl."), attached hereto, in support of the *Debtor's Motion Pursuant to Bankruptcy Rules 9023 and 9024 for Amendment or Reconsideration of the Order Awarding a Discretionary Bonus to Houlihan Lokey* [Dkt. 1597]

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

(the "Motion")[2] and in response to the objection filed by the Committee [Dkt. 1612] (the "Objection").

## REPLY

1. After five filings by the Committee and Houlihan,[3] the actual calculation that resulted in the amount of the "net" Discretionary Fee remains a mystery. By contrast, as far as mathematical equations go, the Engagement Agreement attached as Exhibit A to the Declaration of Saul E. Burian in support of the Houlihan Retention Application [Dkt. 538] (the "Engagement Agreement") is simple and clear. First, the Committee determines whether to award a Discretionary Fee and how much. Engagement Agreement at ¶ 3(iii). Second, court approval is sought as to such Discretionary Fee, wherein parties in interest may object. Id. Third, if the Discretionary Fee is to be paid, then it is subject to a credit of 50% of the monthly fees received by Houlihan during the case. Id.

2. Instead of disclosing what is simply routine math mandated by the Engagement Agreement, Houlihan and the Committee continue to obfuscate how the fee was calculated by claiming that the fee is already a "net" amount – using the word no less than thirty-one (31) times in the Objection as if it is a talisman that protects the award from application of the terms of the Engagement Agreement. The Court should ignore such self-serving, conclusory statements and correct what is an obvious error, as Houlihan's and the Committee's arguments

---

[2] Capitalized terms used herein but not otherwise defined have the meanings given to them in the Motion.

[3] Those filings are the: (i) *Final Fee Application for Allowance of Fees and Reimbursement of Expenses to Houlihan Lokey Capital, Inc. as Investment Banker to the Official Committee of Talc Claimants for the Period from April 14, 2023 through August 11, 2023* [Dkt. 1347], (ii) *Amended Joint Omnibus Reply of the TCC Professionals, the TCC Committee and the Ad Hoc Committee of Certain Talc Claimants in Support of (I) the Final Applications for Allowance of Fees and Reimbursement of Expenses for the Period of April 4, 2023 Through August 11, 2023 Filed by the TCC Professionals and (II) the TCC Committee and Ad Hoc Committee of Talc Claimants' Substantial Contribution Motion* [Dkt. 1514] ("Committee Omnibus Fee Reply"), (iii) Committee's October 27, 2023 Letter to Honorable Michael B. Kaplan [Dkt. 1544], (iv) TCC Response Letter, and (v) Objection.

cannot be reconciled with the first step in the calculation required by the Engagement Agreement.

3. Specifically, while Houlihan and the Committee have repeatedly stated that the Committee authorized a net Discretionary Fee of $2,000,000, they never expressly state that the Committee reached that figure only after the agreed-upon fee was reduced by 50% of the monthly fees already paid. In fact, the filings all make clear that Houlihan and the Committee ignored the requirements of the Engagement Agreement and substituted a different definition of "net" in lieu of express contractual terms.

4. For example, in the Committee Omnibus Fee Reply, the Committee and Houlihan acknowledge that the "net" Discretionary Fee was calculated as the result of negotiations that at no point included a discussion of a credit for fees previously paid. Instead, the negotiations began with Houlihan asking for a "**net** Discretionary Fee of $2.3 million" that "was **calculated** as approximately $850,000 in fee concessions across both cases, plus 50% of the $3.0 million Deferred Fee that would have been payable had a plan of reorganization been consummated with respect to the Debtor." Committee Omnibus Fee Reply at 33 (emphasis added). This calculation fails to include the monthly fee statement credit. Thereafter, the Committee and Houlihan reached a reduced figure of $2 million – also without reference to any monthly fee statement credit. If the foregoing is how "[t]he TCC, and Houlihan clearly identified the 'net' nature of the Discretionary Fee" in its original application for fees (Objection at ¶ 5), then the Committee's calculation of the "**net** Discretionary Fee" never included the contractually required 50% credit for monthly fees.[4] For whatever reason, the Committee and Houlihan chose to ignore the 50%

---

[4] Notably, if the negotiated $2,000,000 fee was intended to somehow reflect the monthly fee credit, it would have absurdly constituted an amount nearly 15% **greater** than Houlihan's original request of a net $2,300,000, which did not include such a credit.

-3-

credit when reaching an agreed number. Allowing the award to stand without applying the credit, as Houlihan and the Committee argue, impermissibly renders the Court-approved contractual credit superfluous. In re Tri Harbor Holdings Corp., 2021 WL 4877265, at *38 (Bankr. D.N.J. Oct. 5, 2021) ("It is hornbook law that a court should not interpret a contractual provision in a manner that renders it meaningless or superfluous; yet, that is what Plaintiffs would have the Court do here. Instead, this Court will read those terms in a way that gives meaning to all of them . . . .") (citing Fitts v. Chase Manhattan Mortg. Corp., 2006 WL 3432296, at *4 (N.J. App. Div. Nov. 30, 2006)); In re RTW Retailwinds, Inc, 2020 WL 7330061, at *3 (Bankr. D.N.J. Dec. 8, 2020) ("[U]nder New York law . . . a reading of a contract should not render any portion meaningless.") (citation omitted).

5.  The material error here is the result of the Committee's and Houlihan's failure to include the credit for 50% of monthly fees in the calculation of the Discretionary Fee. Indeed, Houlihan has been retained in other Chapter 11 cases where a portion of its fees were subject to a credit of 50% of its monthly fees. In many such cases, it provided to the Court and parties in interest the actual calculation of that credit. See Supp. Counsel Decl., Ex. A ¶¶ 11(a), 27(b), Ex. D (final application of Houlihan in In re Mark IV Industries, Inc., Case No. 09-12795 (Bankr. S.D.N.Y.) wherein Houlihan sought approval of a $6.8 million transaction fee and the final calculation included that 50% of certain monthly fees were credited);[5] see also Supp. Counsel Decl., Ex. B at Ex. D (final application of Houlihan in In re Briggs & Stratton Corporation, Case

---

[5] Similar to Houlihan's Final Fee Application [Dkt. 1347] in this case, Mr. Burian signed the final fee application in Mark IV and was the only Houlihan managing director working on that matter.

No. 20-43597 (Bankr. E.D. Mo.), which included a schedule of the sale transaction fee detail, listing a credit for 50% of certain monthly fees).[6]

6. In sharp contrast to the above cases, Houlihan provided the Court no credit calculation in its application. Moreover, the Committee and Houlihan have presented no evidence that a calculation was considered or even provided to the Committee, or that the Committee approved inclusion of a credit for monthly fees as a component of the final Discretionary Fee.[7] Rather, as noted above, Houlihan and the Committee admit the credit was not included in the calculation of the net Discretionary Fee. Committee Omnibus Fee Reply at 33. This fact is corroborated by Mr. Burian in Exhibit A to the Objection. Objection at Ex. A ("The TCC was focused on how much more we are getting, not on a gross calculation.").

7. Alternatively, if the Discretionary Fee awarded by the Court included a credit for monthly fees, the negotiated fee would be nearly $700,000 larger to represent a net number under the Engagement Agreement.[8] As the Committee and Houlihan made no disclosure of such a critical fact – that the Committee was agreeing to a bonus of nearly $2.7 million – then the Court approved the Discretionary Fee without being provided a material fact. Such a material omission would constitute an obvious factual error permitting reconsideration. In fact, Exhibit A

---

[6] The Debtor requests that the Court take judicial notice of these filings pursuant to Fed. R. Evid. 201, applicable through Fed. R. Bankr. P. 9017, solely for the proposition that Houlihan included line items for credits related to monthly fee statements when seeking compensation for fees in those cases.

[7] For example, the Committee has not provided a declaration from a Committee member stating that the Committee was provided a calculation itemizing the requested Discretionary Fee less credits for monthly fees. Based on statements made by Mr. Burian and in filings by the Committee, it appears no such calculation was provided to the Committee.

[8] Indeed, there is no corresponding debit, based on the stated calculation, that would result in an increase of nearly $700,000 to offset the credit for 50% of monthly fees. Committee Omnibus Fee Reply at 33 ("When requesting TCC approval of the Discretionary Fee, Houlihan Lokey initially requested the TCC approve a net Discretionary Fee of $2.3 million, which was calculated as approximately $850,000 in fee concessions across both cases, plus 50% of the $3.0 million Deferred Fee that would have been payable had a plan of reorganization been consummated with respect to the Debtor.").

to the Objection implies that Houlihan deliberately avoided disclosing the actual amount of the full fee – and the calculation reducing it – to the Committee when the fee was approved.

8. Permitting Houlihan to receive the full Discretionary Fee subverts the express terms of its engagement and the Order approving its retention by disregarding the application of the credit **after** a Discretionary Fee was awarded. See Engagement Agreement at ¶ 3(iii) ("In the event that a Discretionary Fee is paid, 50% of the Monthly Fees received by Houlihan Lokey and approved by the final order of the Bankruptcy Court shall be credited against the Discretionary fee . . . to which Houlihan Lokey becomes entitled hereunder."). Therefore, grounds exist for the Court to grant relief pursuant to Rule 60(b) to correct a material omission and/or pursuant to Rule 59(e) to prevent manifest injustice and order a $681,854.84 credit be applied against the $1,750,000 Discretionary Fee awarded. Absent such relief, the Debtor is being deprived of the benefit of the express terms of Houlihan's retention while Houlihan receives a windfall to which it is not contractually entitled.

## CONCLUSION

For all of the reasons set forth above, the Debtor respectfully requests that the Court overrule the Objection and (i) grant Debtor's Motion for Reconsideration of this Court's November 14, 2023 Order, (ii) modify its Order Awarding Fees to Houlihan Lokey, and (iii) grant such further relief to the Debtor as the Court may deem proper.

Dated:  December 15, 2023              **WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*