# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – x
            :
  In re          :  Chapter 11
            :
MARK IV INDUSTRIES, INC., et al.,  :  Case No. 09-12795 (SMB)
            :
            :  (Jointly Administered)
    Debtors.      :
– – – – – – – – – – – – – – – – – – – – – – – – – – – x

### FINAL APPLICATION OF
### HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.
### AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE
### DEBTORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES
### RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR THE
### PERIOD OF
### APRIL 30, 2009 THROUGH NOVEMBER 13, 2009

| | |
|---|---|
| Name of Applicant: | Houlihan Lokey Howard & Zukin Capital, Inc. |
| Authorized to Provide Professional Services to: | Mark IV Industries, Inc., et al. |
| Date of Retention: | May 27, 2009, nunc pro tunc to April 30, 2009 |

**Application Period**

| | |
|---|---|
| Application Period for which Compensation and Reimbursement is Sought: | April 30, 2009 through November 13, 2009 |
| Total Fees and Expenses: | $7,898,511.95 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $25,566.04 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                          :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| MARK IV INDUSTRIES, INC., et al., | : | Case No. 09-12795 (SMB) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FINAL APPLICATION OF**
**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.**
**AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE**
**DEBTORS AND DEBTORS IN POSSESSION FOR ALLOWANCE OF**
**COMPENSATION FOR SERVICES RENDERED AND FOR**
**REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD OF**
**APRIL 30, 2009 THROUGH NOVEMBER 13, 2009**

Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), investment

banker and financial advisor to Mark IV Industries, Inc. and certain of its U.S. subsidiaries and

affiliates, debtors and debtors-in-possession (collectively with Mark IV Industries, Inc., the

"Debtors," and the Debtors, together with Mark IV Industries, Inc.'s non-debtor affiliates and

subsidiaries shall be referred to herein as "Mark IV" or the "Company") [1], hereby submits this

---

[1] The following U.S. subsidiaries and affiliates (along with the last four digits of each of their federal taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Mark IV (3979) and have requested joint administration therewith: Aerospace Sub, Inc. (7835); Armtek International Holding Company, Inc. (3145); Automatic Signal/Eagle Signal Corp. (0078); Dayco Products, LLC (8206); F-P Displays, Inc. (3765); F-P Technologies Holding Corp. (5274); Former Fuel Systems, Inc. (6178); Luminator Holding L.P. (8463); Luminator Service Inc. (3077); Mark IV Holdings, LLC (9139); Mark IV Invesco, LLC (0896); Mark IV IVHS Holding Corp. (1674); Mark IV Pay Agent, Inc. (6834); Mark IV Transportation Technologies Holding Corp. (1626); NRD, LLC (8658); Seebreeze Wireless Holdings, L.P. (4388); and Woods Liquidating Corp. (3977) (collectively with Mark IV, the "Debtors," and together with Mark IV's non-Debtor foreign affiliates, the "Company").

Final Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the period April 30, 2009 through November 13, 2009 (the "Application").  In support of this Application, Houlihan Lokey respectfully represents as follows:

1.        This Application is made pursuant to (i) sections 328(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"); (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"); (iii) the final Order approving interim compensation procedures for professionals entered by the Court on May 27, 2009 ("Interim Compensation Order," and collectively with the Local Rules, the "Guidelines"); and (iv) this Court's Order, dated May 27, 2009 authorizing the Debtors to retain and employ Houlihan Lokey pursuant to section 328(a) and 1103 of the Bankruptcy Code as investment banker and financial advisor to the Debtors in these Chapter 11 cases (the "Retention Order").

## Introduction

2.        Mark IV is a leading manufacturer of highly-engineered systems and components for transportation infrastructure, vehicles, and equipment that target the automotive and industrial as well as transportation technologies business segments.  Since the later part of 2008, the Company has been operating in a difficult domestic and foreign automotive and heavy duty market.  Other factors, such as the recent unprecedented global financial crisis, also adversely impacted Mark IV's global operations.  In response to these challenges, Mark IV developed a restructuring plan and in only seven months, the Company, with the help of its first tier management team and professionals, consummated a fully consensual plan of reorganization that

maximized value and caused minimal disruption to the Company's operations.  In the approximate 10 months starting January 1, 2009 (pre-petition) through the Final Period (November 13, 2009), Houlihan Lokey, working closely with Company counsel, Skadden, Arps, Slate, Meagher & Flom LLP, and the Company's restructuring advisors, Zolfo Cooper (i) analyzed the Company's business plan, liquidity and projected cash flow; (ii) assisted the Debtors in evaluating restructuring and other strategic alternatives; (iii) conducted negotiations with and facilitated due diligence for interested parties; (iv) assisted the Debtors in preparing for chapter 11 proceedings; (v) assisted the Debtors in securing $90 million in Debtor-In-Possession Financing ("DIP Financing"); (vi) developed preliminary assessments of value of the Company; (vii) developed teasers, information memorandums, management presentations, and various other financial and strategic update presentations used by the Debtors to conduct meetings with interested buyers regarding select assets and businesses; (viii) advised and provided regular updates to the Company's Board of Directors and creditor constituencies; (ix) engaged in several months of negotiations with the Company's pre-petition first lien lenders and the unsecured creditors committee along with their respective financial and legal advisors, that culminated in the restructuring plan as contained in the First Amended Joint Plan of Reorganization of Mark IV Industries, Inc. and its Affiliated Debtors and Debtors-in-Possession (the "Plan"), which was ultimately confirmed by this Court on September 23, 2009; and (x) successfully negotiated and facilitated an exit financing package for the Company consisting of a $50 million asset-based revolving credit facility (the "Exit Revolver") and $145 million in term loans (the "Exit Term Loans," and the Exit Term Loans, together with the Exit Revolver, shall be referred to herein as the "Exit Facility").  Despite working under difficult circumstances, Houlihan Lokey assisted the Debtors in successfully confirming the Plan, which included the following: (i) addressing several

objections to the Plan and (ii) analyzing several proposed term sheets containing the framework

of a proposed exit financing, each of which required substantial time and effort, in addition to

administering to the Debtors' needs during the chapter 11 process and ultimately confirming the

Plan.

By this Application, Houlihan Lokey requests final allowance and approval of fees

outlined in the Retention Order, including: (i) compensation in the amount of $1,400,000.00 in

aggregate monthly fees; plus (ii) a reorganization fee of $6,498,511.98 (the "Net Transaction

Fee")[2]; and (iii) reimbursement of actual, reasonable and necessary expenses in the amount of

$25,566.04 for the period effective nunc pro tunc to April 30, 2009 through November 13, 2009

(the "Application Period").  Of the $7,898,511.95 in total compensation sought, $6,738,511.95

remains unpaid; and of the $25,566.04 in total reimbursement of actual, reasonable and

necessary expenses sought, $0.00 remains unpaid.  A detailed summary of the total fees sought is

found in Exhibit D.  A detailed summary of the reimbursable expenses is found in Exhibit E.

## Background

3.     On April 30, 2009 (the "Petition Date"), the Debtors commenced chapter 11

bankruptcy cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court"). The Debtors were authorized to

continue to manage and operate their businesses as debtors-in-possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

---

[2] The Net Transaction Fee reflects a transaction fee of $6.8 million (reduced from $8.0 million following negotiations with creditor constituencies in connection with the commencement of the cases), net of applicable monthly credits.

4.      No trustee or examiner was requested or appointed in the Chapter 11 Cases. On

May 8, 2009, the United States Trustee for the Southern District of New York (the "U.S.

Trustee") appointed an official committee of unsecured creditors in these cases (the "Creditors'

Committee").

5.      First founded in 1970, the Debtors and their non-Debtor affiliates are a leading

manufacturer of highly-engineered systems and components for transportation infrastructure,

vehicles and equipment. The Company's systems and components are generally designed and

targeted for two segments of the transportation market – (a) automotive and industrial and (b)

transportation technologies – and include such products  as radio frequency identification

technology, information display, power transmission, air admission and cooling, and other

technologies. The Company operates in 16 countries around the world, generating 29% of its

fiscal year 2009 sales in North America with the balance in Europe (63%) and other geographic

regions (8%). The Debtors believe that the Company is a market leader in most markets that it

serves.

6.      Additional information about the Debtors' business operations and the events

leading up to the Petition Date can be found in the Affidavit of Mark G. Barberio in Support of

First-Day Applications and Motions [Docket No. 32].

7.      On September 23, 2009, the Court entered an order (the "Confirmation Order")

confirming the Plan, which went effective on November 13, 2009 (the "Effective Date").

### Retention of Houlihan Lokey

8.      On April 30, 2009, the Debtors filed an application with this Court (the

"Retention Application") requesting authorization to employ and retain Houlihan Lokey as

investment banker and financial advisor pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code.  As noted in the Debtors' retention application, Houlihan Lokey had been performing services for Mark IV on a pre-petition basis beginning on January 1, 2009.

9.    On May 27, 2009, this Court authorized the Debtors to retain and employ Houlihan Lokey as investment banker and financial advisor to the Debtors in the Chapter 11 Cases, nunc pro tunc to April 30, 2009, pursuant to the terms of the engagement letter executed on January 1, 2009 (the "Engagement Letter") and the amendment to the Engagement Letter dated February 20, 2009 (the "Letter Agreement," and together with the Engagement Letter, the "Engagement Agreement"), as modified by the Retention Order [Docket No. 167].  A copy of the Engagement Agreement is attached as Exhibit B.

10.    Pursuant to the Retention Order, Houlihan Lokey was authorized to perform the following services for the Debtors as described in the Engagement Agreement (as defined in the Retention Order), to the extent Houlihan Lokey deemed necessary, appropriate and feasible and as requested by the Debtors:

(a)    Assisting the Company in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and to consummate any Transaction(s) (as defined in the Engagement Agreement), including, if appropriate, advising the Company in the preparation of an offering memorandum;

(b)    Assisting the Company in soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders and equity investors;

(c)    Assisting the Company with the development, structuring, negotiation and implementation of any Transaction(s);

(d)    Advising and attending meetings of the Company's Board of Directors, creditors groups, official constituencies and other interested parties;

(e)    Providing such other financial advisory and investment banking services reasonably necessary to accomplish the foregoing; and

(f)     Advising and representing the Debtors in connection with all merger and
acquisition activities, and advising and representing each such entity in
connection with each material asset or stock sale.

**Terms and Conditions of Compensation of Houlihan Lokey**

11.     As described more fully in the Engagement Agreement and pursuant to the

Houlihan Lokey Retention Order, Houlihan Lokey will be entitled to receive, as compensation

for its services:

(a)     Monthly Fees: In addition to the other fees provided for in the
Engagement Agreement, a monthly, non-refundable cash fee of $200,000
("Monthly Fee").  Fifty (50%) of the Monthly Fees owing to and actually
received by Houlihan Lokey shall be credited against the Transaction Fee,
commencing with the ninth such Monthly Fee so received.

(b)     Transaction Fee: In addition to the foregoing Monthly Fees, upon the close
of a Transaction, Houlihan Lokey shall earn a fee in the amount of
$6,800,000, payable in cash on the date of confirmation of a plan of
reorganization under chapter 11 of the Bankruptcy Code pursuant to an
order of the bankruptcy court.

(c)     In the event of a sale or disposition of substantially all of the Debtors'
businesses, Houlihan Lokey shall be paid a merger and acquisitions fee
equal to and in lieu of the Transaction Fee (subject to offset in accordance
with the terms of the Engagement Agreement). Following such sale or
disposition, if requested by Mark IV, Houlihan Lokey shall continue to
advise Mark IV following the closing of such sale to assist with the
distribution of proceeds and confirmation of a plan, but shall only be
entitled to receive Monthly Fees (without credits) during such period.

(d)     On the closing of each sale or disposition other than a sale or disposition
of substantially all of the Debtors' businesses, Houlihan Lokey shall
receive 2.0% of the gross proceeds (including any assumed or avoided
liabilities) of each transaction, provided that 50% of each such fee in
excess of $400,000 shall be credited against the Transaction Fee.

(e)     All of the fees described in subparagraphs 11(c) and 11(d) above
(collectively, the "M&A Fees") shall be paid directly out of the proceeds
of each transaction, as a cost of each such transaction, free and clear of
any pre or post-petition liens, claims or interests in the assets sold or the
proceeds received.

(f)     <u>Additional Services:</u> In the event that the Company requests that Houlihan Lokey provide investment banking and/or financial advisory services beyond the services described in clauses (a) through (g) of paragraph 11 above, Houlihan Lokey will enter into a separate agreement with the Company relating to the type of transaction involved and containing customary terms and conditions.

(g)     <u>Expenses:</u> In addition to all of the other fees and expenses described in the Engagement Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services under the Engagement Agreement.

12.     As noted by the Debtors in the Retention Application, Houlihan Lokey's fee structure under the Engagement Agreement appropriately reflects the nature and scope of the services to be provided by Houlihan Lokey and the fee structures typically utilized by Houlihan Lokey and other leading investment banks that do not bill their clients on an hourly basis.

**<u>Summary of Services Provided by Houlihan Lokey</u>**

13.     The Debtors selected Houlihan Lokey as their investment banker and financial advisor because of its extensive and diverse experience, knowledge and reputation in the restructuring field, its understanding of the issues involved in complex Chapter 11 cases, and because the Debtors believe that Houlihan Lokey is well-qualified to provide the investment banking and financial advisory services necessary with respect to the restructuring.  Houlihan Lokey has served as financial advisor in many large Chapter 11 cases.

14.     During the Application Period, although a number of professionals have worked on this engagement, the following professionals have performed substantial services to the Debtors in these Chapter 11 Cases during the Application Period (biographies of such professionals are annexed hereto as Exhibit F):

Saul E. Burian – Managing Director
Gavin Kagan – Director
Steven Hughes – Director
Michael Hsieh – Senior Vice President
Surbhi Gupta – Associate
Matthew Bowersox – Associate
Neel Chary – Financial Analyst
Joseph (Jack) Rosenberg – Financial Analyst
Lauren Warsavsky – Financial Analyst
Ross Solomon – Summer Financial Analyst

15.     Pursuant to the Retention Order, "…All Houlihan Lokey financial restructuring personnel employed in domestic U.S. offices of Houlihan Lokey who provide services to or on behalf of the Debtors as authorized hereby shall keep contemporaneous records of the work performed by them in hourly increments.  All other Houlihan Lokey personnel who provide services to or on behalf of the Debtors as authorized hereby shall keep detailed descriptions of the work performed by them and Houlihan Lokey shall prepare a weekly summary of such detailed descriptions and provide same to the United States Trustee."

16.     During the Application Period, Houlihan Lokey's work on behalf of the Debtors has involved seven (7) general project categories[3], including:

(a)     Diligence and review of Debtors' business plan;

(b)     Discussions, meetings, and analyses performed in connection with the DIP Financing;

(c)     Analysis of financial statements and financial and operational performance of the Debtors and non-Debtors in order to evaluate and value the Debtors and non-Debtors' business;

(d)     Discussions, meetings, and analyses performed in connection with strategic alternatives, including the marketing and sale process for select assets

---

[3] While specific work could qualify under more than one of these categories, Houlihan Lokey has assigned each of its various tasks/services to the most representative category.

(e)     Assisting the Debtors to secure exit financing

(f)     Presentations, correspondence, meetings, and discussions with the Board of Directors of Mark IV Industries, Inc. and other various Parties-In-Interest; and

(g)     Case administration

Set forth below are descriptions of the type of work conducted within each of the seven (7) categories. A detailed breakdown of the specific tasks performed by the professionals and the number of hours spent by each professional are set forth in Exhibit G.

17.     **Diligence and review of Debtors' business plan.**  During the Application Period, Houlihan Lokey has undertaken numerous tasks essential to the progress of the case and has spent significant time performing due diligence on Mark IV's core operations.  Immediately following its engagement pre-petition, Houlihan Lokey assisted the Company in developing a comprehensive five-year business plan, which was built on a "bottoms-up" basis by division. The business plan served as a foundation for developing strategic alternatives, which included exploring the potential for a successful sale process and various financing options, as well as pursuing negotiations with holders of the pre-petition First Lien Debt, Second Lien Debt, and the Creditors' Committee (collectively "Parties-in-Interest").  In addition, the business plan aided in evaluating the Company's operating performance relative to the industry and its competitors.

Houlihan Lokey coordinated due diligence meetings and fulfilled information requests for Parties-in-Interest, third-party potential acquirers of the Debtors' assets, and potential financing sources.  Additionally, Houlihan Lokey regularly updated the Parties-in-Interest and other groups on major trends and business developments.  Post-petition, Houlihan Lokey continued to conduct due diligence regarding the Debtors' operating performance and projected business plan by attending meetings, both in-person and via telephone, with the Debtors,

Debtors' Chief Restructuring Officer and Debtors' legal advisors. Houlihan Lokey met with

various senior operational executives across each of the Company's divisions, including but not

limited to operational management, financial operations personnel and accounting personnel.

Additionally, Houlihan Lokey constructed, and continuously updated, detailed models that

projected earnings, balance sheet adjustments, and projected cash flows subsequent to the entry

of the Confirmation Order. These analyses were utilized in developing a new capital structure for

the Debtors and measuring the Debtors' projected availability and liquidity upon exiting

bankruptcy.

18.     **Discussions, meetings, and analyses performed in connection with the DIP**

**Financing.**  Commencing in March 2009, Houlihan Lokey prepared a financing memorandum

and related management presentations in preparation for contacting a number of financial

institutions, private equity firms, and hedge funds regarding DIP financing.  These entities

included those that have historically been active providers of DIP financing, including large

owners of interests in the Debtors' pre-petition First Lien Debt, including JPMorgan Chase

Bank, N.A. ("JPM").  Holders of First Lien Debt include many (if not most) of the sophisticated

lenders that would participate in a complex, multi-jurisdictional, debtor-in-possession financing

in an industry as challenged as the automotive industry.  In addition to the above, Houlihan

Lokey contacted a number of parties outside of the First Lien Debt to gauge their interest in

providing a subordinated or priming non-consensual post-petition financing.  Additional factors

also made it difficult to obtain DIP financing. Any entity not previously a significant lender to

the Debtors would be required to do extensive diligence before it would consider providing such

financing. Given the short time-frame to obtain the financing and the requisite consent of

existing lenders for consensual priming in the Bankruptcy Court, among other considerations, the

Debtors concluded that the holders of First Lien Debt would be the most likely providers of DIP financing.

In light of the complexity of these Chapter 11 Cases, Houlihan Lokey commenced vigorous arms length and good faith negotiations with JPM and its financial advisor, Alvarez & Marsal, Inc. ("A&M"), to source, price and obtain commitments with respect to a post-petition financing.   Houlihan Lokey organized and participated in numerous calls and meetings with these parties.  Given that many lenders were reluctant to increase their exposure in the automotive industry or participate in this credit, and that the First Lien Debt was widely held without any single holder owning in excess of 8% (as of April 30, 2009), combined with the Debtors' existing complex capital structure and the need for liquidity in foreign jurisdictions, the DIP financing underwent several iterations.  Houlihan Lokey assisted the Debtors in obtaining a multi-jurisdictional $90.0 million DIP financing consisting of a $35.0 million U.S. Term Loan, $25.0 million Canadian Term Loan and a $30.0 million Italian Term Loan.  Houlihan Lokey also engaged in extensive negotiations with the DIP Financing lenders with respect to the terms and conditions of the final credit agreement of the financing. As part of these negotiations, Houlihan Lokey (i) performed financial analyses to determine appropriate covenant levels; (ii) negotiated terms and conditions of financial covenants; (iii) reviewed multiple drafts of the credit documents; and (iv) assisted the Debtors in obtaining ratings for the financing from Moody's Investor Services and Standard & Poor's.

19.     **Analysis of financial statements and financial and operational performance of the Debtors and non-Debtors in order to evaluate and value the Debtors' and non-Debtors' businesses.**   Throughout the Application Period, Houlihan Lokey performed a substantial and prolonged review of the Debtors' financial projections, actual financial results,

and operational performance.  During the Application Period, Houlihan Lokey reviewed the

Debtors' cash forecast, monthly reporting packages and monthly performance versus budget.

Houlihan Lokey maintained daily contact with the Debtors to evaluate and advise the Debtors on

matters including, among other things, current financial and operational performance.  Based on

information provided by management, Houlihan Lokey prepared a preliminary valuation report,

which was originally presented to Mark IV's Board of Directors on April 13, 2009, prior to filing

for Chapter 11.  The report included, but was not solely limited to, a valuation of Mark IV's

consolidated operations as a going concern and a valuation of the various business units using a

sum-of-parts methodology.  The preliminary valuation report employed discounted cash flow,

comparable company and comparable transaction analyses, a review of current company and

industry performance as well as the Company's debt capacity.  In conjunction with the Plan,

Houlihan Lokey finalized its valuation report and used the assumptions described in the

valuation analysis attached as Appendix D to the Disclosure Statement (the "Valuation

Analysis").  Specifically, the Valuation Analysis was developed for purposes of (a) estimating

the value available for distribution to creditors under the Plan; and (b) evaluating whether the

Plan met the "best interests test" under section 1129(a)(7) of the Bankruptcy Code.

20.     **Discussions, meetings, and analyses performed in connection with strategic**
**alternatives, including the marketing and sale process for select assets.**  As part of the

engagement, Houlihan Lokey explored a range of strategic alternatives, including potential asset

sales and acquisitions. Houlihan Lokey developed teasers, information memorandums,

management presentations, and various other financial and strategic update presentations

("Marketing Materials") used by the Debtors to conduct meetings with interested buyers of select

assets and businesses.  In preparing the Marketing Materials, Houlihan Lokey reviewed and

analyzed historical and projected financial trends regarding the Company's performance and held several meetings with management. Houlihan Lokey reviewed progress on new business initiatives that were integral to the Company's performance and emergence from bankruptcy. Both historic and projected financial materials were organized and presented to interested buyers.

During the process, Houlihan Lokey contacted several potential strategic and financial buyers and distributed confidentiality agreements to gauge interest in a potential sale of certain assets. These efforts generated several proposals and led to numerous meetings and conference calls. Houlihan Lokey facilitated due diligence requests for parties, and in conjunction with management, provided additional due diligence documents and supporting analysis to address such requests. Houlihan Lokey expended considerable time analyzing and comparing competing proposals.

21. **Assisting the Debtors to secure exit financing.** During the exit process, Houlihan Lokey worked with the Debtors, JPM, and the Creditors' Committee pre and post-petition to arrive at an exit capital structure that would restructure the balance sheet and provide the Company with necessary liquidity. Houlihan Lokey, along with the Parties-in-Interest, completed various analyses regarding creditor recoveries and after much negotiation and several iterations, the Debtors concluded that holders of First Lien Debt will receive Restructured Debt Term Loans (as defined in the Plan) of up to $228.0 million and 88% of the equity interests in the parent company of reorganized Mark IV (prior to dilution as further described in the Plan).

In addition, Houlihan Lokey spent considerable time sourcing new money financing and contacted over 20 parties and distributed confidentiality agreements to gauge their interest in

providing exit financing.  Houlihan Lokey prepared financing materials as well as organized and

participated in numerous meetings with potential lenders.  These efforts generated several

proposals and led to further negotiations.  Houlihan Lokey facilitated due diligence requests for

parties, and in conjunction with management, provided additional due diligence documents and

supporting analyses to address such requests.  Houlihan Lokey expended considerable time

analyzing and comparing competing proposals and then negotiating the most favorable terms for

the Debtors.

In an effort to assemble a suitable lending syndicate, on September 14, 2009, the Debtors,

along with Houlihan Lokey and JPM, held lender presentation meetings in New York to present

the Debtors' exit financing to potential lenders.  Houlihan Lokey assisted the Debtors in

obtaining a multi-jurisdictional Exit Facility of $195.0 million from a group of pre-petition

lenders led by JPM. The Exit Facility consists of a $50.0 million asset-based Exit Revolver

($45.0 million in the U.S. and $5.0 million in Canada) and $145 million in Exit Term Loans

($55.0 million in the U.S., $20.0 million in Canada, and $70.0 million in Luxembourg).

Houlihan Lokey engaged in extensive negotiations with the Exit Facility lenders with respect to

the terms and conditions of the final credit agreement of this financing. As part of these

negotiations, Houlihan Lokey (i) reviewed multiple drafts of the credit documents; and (ii)

assisted the Debtors in obtaining ratings for the Exit Facility from Moody's Investor Services

and Standard & Poor's.

22.     **Presentations, correspondence, meetings, and discussions with the Board of
Directors of Mark IV Industries, Inc. and other various Parties-In-Interest.**   Houlihan

Lokey engaged in extensive correspondence and preparation for meetings with the Debtors,

Board of Directors, holders of First Lien Debt, the Creditors' Committee, and various other

parties in these Chapter 11 Cases. Houlihan Lokey expended significant time and effort (both in-person and via telephonic conference call) meeting the due diligence requests of the aforementioned parties and their advisors.  Houlihan Lokey conducted numerous meetings via conference call to provide updates and respond to follow-up diligence requests.  In addition, Houlihan Lokey prepared numerous presentations regarding its diligence and financing efforts, including discussion and analysis of the business plan, valuation analyses, and regular updates to the Board of Directors.

23.    **Case administration.** This category includes services related to the general administration of these Chapter 11 Cases. Specifically, Houlihan Lokey devoted time to services in connection with (i) reviewing the Court's docket; (ii) reviewing the Debtors' filed monthly operating reports; (iii) drafting fee applications; and (iv) attending to other miscellaneous issues relating to case administration that do not fall into any of the other categories listed above.  In addition, Houlihan Lokey worked closely with the Debtors and Debtors' counsel to draft documentation related to the Plan and Disclosure Statement.

24.    During these Chapter 11 Cases, Houlihan Lokey coordinated the services it performed at the Debtors' request with services of other advisors and counsel, as appropriate, in an effort to avoid unnecessary duplication of effort.

25.    Houlihan Lokey's efforts, together with those of the Company, Skadden, Arps, Slate, Meagher and Flom LLP and Zolfo Cooper culminated in confirmation of the Plan that received overwhelming support from all classes entitled to vote under the Plan.

26.    In accordance with the Retention Order, Houlihan Lokey is generally excused from maintaining time records in accordance with Local Rule 2016.  Houlihan Lokey was

authorized to maintain item time records in hourly increments in connection with services

rendered from and after May 27, 2009. A table detailing the category of services, the

professionals providing such services and time spent by each professional for the period May 27,

2009 to November 13, 2009 is set forth below. Additional detail is provided in Exhibit G.

| KEY |
| --- |
| A = Diligence, Financial Analysis and Review of Business Plan |
| B = DIP/Exit Financings |
| C = Communications, Correspondence, and Meetings with Parties-in-Interest and their Advisors |
| D = General Analyses/Presentations |
| E = Disclosure Statement and Plan Documents |
| F = Case Administration/Other |

| | May 27, 2009 - November 13, 2009 Allocation | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Name | A | B | C | D | E | F | Total |
| Saul Burian | 13.0 | 21.0 | 47.0 | 7.0 | 14.0 | 3.0 | 105.0 |
| Gavin Kagan | 39.0 | 27.0 | 122.0 | 13.5 | 11.0 | 7.0 | 219.5 |
| Surbhi Gupta | 24.0 | 227.0 | 97.5 | 260.0 | 70.0 | 42.0 | 720.5 |
| Neel Chary | 68.0 | 273.0 | 118.5 | 380.0 | 96.5 | 56.0 | 992.0 |
| Ross Solomon | 34.0 | 16.0 | 31.0 | 28.0 | 6.0 | 2.0 | 117.0 |
| Lauren Warsavsky | 4.0 | 34.0 | 24.0 | 14.0 | 0.0 | 3.0 | 79.0 |
| Total | 182.0 | 598.0 | 440.0 | 702.5 | 197.5 | 113.0 | 2,233.0 |

## **Relief Requested**

27.     By this Application, Houlihan Lokey seeks final allowance of compensation and

reimbursement of expenses for the Application Period as follows:

(a)     Compensation of $7,898,511.95, in respect of fees accrued during the
Application Period, consisting of (i) $1,400,000.00 in aggregate monthly fees for the
period beginning April 30, 2009 through November 13, 2009. Of this amount,
$1,160,000.00 has been paid to date, therefore $6,738,511.95 remains due and payable.
A detailed summary of the Monthly and Transaction Fees due and paid during the
Application Period is attached hereto as Exhibit D.

(b)     As detailed in the Engagement Agreement, Houlihan Lokey is
contractually entitled to the Net Transaction Fee of $6,498,511.95 inclusive of applicable
credits for monthly fees. Payment of the Net Transaction Fee of $6,498,511.95 was
earned upon confirmation of the Plan and is unpaid as of this Application. A detailed
calculation of the Net Transaction Fees earned during the Application Period is attached
hereto as Exhibit D.

(c)    Reimbursement of reasonable, actual, and necessary expenses in the amount of $25,566.04 incurred in connection with Houlihan Lokey's services (of which $0.00 remains unpaid).  A detailed summary and itemization of these expenses is attached hereto as Exhibit E.

## AUTHORITY FOR REQUESTED RELIEF

28.    By its Retention Order, the court specifically provided that (a) "in accordance with sections 328(a) and 1103 of the Bankruptcy Code, each of the Debtors is authorized to employ and retain Houlihan Lokey as investment banker and financial advisor in accordance with the terms and conditions set forth in the Application, the Engagement Agreement…" and (b) "Houlihan Lokey shall be compensated and reimbursed in accordance with the  terms of the Engagement Agreement…including without limitation the Monthly Fees, the Transaction Fee…shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code" provided however that "the Office of the United States Trustee for Region 2…shall retain the right to object to the compensation to be paid to Houlihan Lokey…based on the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court shall consider any such objection only by the United States Trustee under section 330 of the Bankruptcy Code."

29.    Section 330 of the Bankruptcy Code provides for the award of compensation to professionals.  11 U.S.C. § 330.  Section 330, by its terms, is "subject to" the provisions of section 328 of the Bankruptcy Code.  *Id*.  Section 328(a) permits a debtor, with the Court's approval, to employ a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Accordingly, section 328(a) permits the compensation of professionals, including

investment bankers and financial advisers, on flexible terms that reflect the nature of their

services and prevailing market conditions for those services.

30.     Courts consistently find that the purpose of section 328 is to permit the pre-

approval of compensation arrangements as a method of insuring that the most competent

professionals would be available to provide services in bankruptcy cases.  See e.g., In the Matter

of National Gypsum Company, 123 F.3d 861 (5th Cir. 1997); In re Westbrooks, 202 B.R. 520,

521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements "comport with the Bankruptcy

Code's goal of attracting highly qualified professionals to the bankruptcy forum"); In re Olympia

Holdings Corp., 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994). As the Court explained in National

Gypsum:

> If the most competent professionals are to be available for
> complicated capital restructuring and the development of
> successful corporate reorganization, they must know what they
> will receive for their expertise and commitment. Courts must
> protect those agreements and expectations, once found to be
> acceptable.

National Gypsum Co., 123 F.3d 863 (5th Cir. 1997).

31.     Once the terms of a professional's retention have been approved under section

328(a), the agreed-upon compensation cannot be altered unless the agreed terms "prove to have

been improvident in light of developments not capable of being anticipated at the time of the

fixing of such terms and conditions." 11 U.S.C. §328(a); In re Smart World Techs., No. 08-172-

bk, 2009 WL 23341, at *3 (2d Cir. Jan. 6, 2009) ("Where the court pre-approves the terms and

conditions of the retention under section 328(a), its power to amend those terms is severely

constrained"); In re Reimers, 972 F.2d 1127, 1128 (9th Cir. 1992) (compensation agreement

approved under section 328(a) must be enforced in the absence of unforeseeable circumstances,

and is not subject to a "reasonableness" review under section 330); In the Matter of National

Gypsum Company, 123 F.3d at 863 (same).

32.     As discussed above, Houlihan Lokey, among many other things, (i) assisted the

Debtors in the consummation of a fully consensual plan of reorganization that maximized value

and caused minimal disruption to the Company's operations (ii) analyzed the Debtors' operations

and business plan; (iii) provided advice to the Debtors and the Board of Directors regarding these

Chapter 11 Cases and all restructuring and financing alternatives; (iv) conducted extensive

discussions in negotiating and confirming the Plan before the Court; (v) actively marketed

selected assets to potential third party investors; and (vi) negotiated, arranged and provided input

with issues relating the Company's financing during and after the Chapter 11 Cases.  The

professional services and related expenses that are the subject of this Application were rendered

and incurred in connection with these Chapter 11 Cases, and in discharge of Houlihan Lokey's

professional responsibilities as investment banker and financial advisor for the Debtors in these

Chapter 11 Cases.  Houlihan Lokey's services have been substantial, necessary, and beneficial to

the Debtors, the Board of Directors, and other parties-in-interest.  Houlihan Lokey believes that

the fees and expenses requested by this Application are reasonable, similar to the compensation

charged by comparably skilled practitioners in cases other than those in bankruptcy, and

necessary given the variety and complexity of the issues involved in these cases and the need to

act or respond on an expedited basis to those issues.  Houlihan Lokey respectfully submits that

(i) its professional services were necessary and appropriate and substantially benefited the

Debtors' estates, (ii) the compensation requested in this Application is in accordance with the

terms of the Engagement Agreement as approved by the Retention Order pursuant to section

328(a) of the Bankruptcy Code, and (iii) no unforeseeable developments have arisen during these

cases that would render the approval of Houlihan Lokey' fees to have been "improvident" within

the meaning of section 328(a) of the Bankruptcy Code.

WHEREFORE, Houlihan Lokey requests the Court enter an Order (i) allowing final

compensation in the amount of $7,898,511.95 (consisting of (1) $1,400,000.00 in aggregate

monthly fees, including holdbacks and (2) a Net Transaction Fee in the amount of

$6,498,511.95) and reimbursement of actual, reasonable and necessary expenses in the amount

of $25,566.04 for the period April 30, 2009 through November 13, 2009 , and (ii) authorizing

and directing the Debtors to pay to Houlihan Lokey all amounts requested pursuant to this

Application.

Dated: November 24, 2009

By:    _____

      Saul E. Burian
      Managing Director


      245 Park Avenue, 20th Floor
      New York, New York  10167
      Telephone:    (212) 497-4100
      Facsimile:    (212) 661-1070

**EXHIBIT A**

**Saul E. Burian Certification**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
   In re                                :     Chapter 11
                                                      :
MARK IV INDUSTRIES, INC., <u>et al.</u>,              :     Case No. 09-12795 (SMB)
                                                      :
                                                      :     (Jointly Administered)
        Debtors.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x


## <u>CERTIFICATION OF SAUL E. BURIAN</u>

I, Saul E. Burian, hereby certify that:

      1.     I am a managing director with the applicant firm, Houlihan Lokey Howard &

Zukin Capital ( "<u>Houlihan Lokey</u>"), with responsibility for the jointly administered Chapter 11

cases of Mark IV Industries, Inc. and certain of its U.S. affiliates (collectively, the "<u>Debtors</u>"), in

respect of compliance with the Amended Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April

19, 1995 (the "<u>Local Guidelines</u>"), the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330,

adopted January 30, 1996 (the "<u>UST Guidelines</u>") and the final Order establishing procedures for

interim compensation and reimbursement of expenses of professionals entered by the Court on

May 27, 2009, pursuant to sections 105(a) and 331 of the Bankruptcy Code (the "<u>Interim</u>

<u>Compensation Order</u>," and collectively with the Local Guidelines and UST Guidelines, the

"<u>Guidelines</u>").

      2.     This certification is made in respect of Houlihan Lokey's application, dated

November 24, 2009 (the "<u>Application</u>"), for final compensation and reimbursement of expenses

for the period commencing April 30, 2009 through and including November 13, 2009 (the

"Compensation Period") in accordance with the Guidelines.

3.    In respect of section B.1 of the Local Guidelines, I certify that:

(a)    I have read the Application;

(b)    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Guidelines;

(c)    the Application respectfully requests that this Court enter an Order awarding Houlihan Lokey $7,898,511.95 as compensation for services rendered during the Compensation Period and $25,566.04 as reimbursement of reasonable actual and necessary expenses incurred in connection with such services;

(d)    the fees and disbursement requested in the Application are billed in accordance with practices customarily employed by Houlihan Lokey and generally accepted by Houlihan Lokey's clients; and

(e)    in providing a reimbursable service, Houlihan Lokey does not make a profit on that service, whether the service is performed by Houlihan Lokey in-house or through a third party.

4.    In respect of section B.2 of the Local Guidelines and as required by the Retention

Order, I certify that Houlihan Lokey has complied with these provisions requiring it to provide

the Debtors, the Office of the United States Trustee for the Southern District of New York and

the Official Committee of Unsecured Creditors (the "Creditors' Committee"), on a monthly

basis, with a statement of Houlihan Lokey's fees and disbursements accrued during the previous

month.

5.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the

United States Trustee for the Southern District of New York and the Creditors' Committee are

each being provided a copy of the Application.

Dated:  New York, New York
       November 24, 2009

Respectfully submitted,


HOULIHAN LOKEY HOWARD & ZUKIN
CAPITAL
Investment Bankers and Financial Advisors to the
Debtors and Debtors in Possession


By: _____
    Saul E. Burian
    Managing Director

245 Park Avenue, 20th Floor
New York, New York  10167
Telephone:       (212) 497-4245
Facsimile:       (212) 661-1070

**EXHIBIT B**

**Copy of the Engagement Agreement**



## HOULIHAN LOKEY

*Confidential*

January 1, 2009

Mark Barberio
Chief Financial Officer
Mark IV Industries, Inc.
501 John James Audubon Parkway
Amherst, NY 14226

Dear Mr. Barberio:

This letter agreement (this "Agreement") confirms the terms under which Mark IV Industries, Inc. ("Mark IV"), and each of its direct and indirect subsidiaries, and any entity formed by, or at the direction of, Mark IV (collectively, the "Company") has engaged Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), as its exclusive financial advisor to provide financial advisory and investment banking services in connection with a financial restructuring or reorganization of the Company's existing first and second lien credit facilities agented by JPMorgan and under which amounts are outstanding as of the date hereof (the "Existing Facilities") and with respect to such other financial matters as to which the Company and Houlihan Lokey may agree in writing during the term of this Agreement. Notwithstanding the foregoing, Houlihan Lokey acknowledges that Sun Capital Partners Management V, LLC shall continue to serve as an advisor to Mark IV Global Holding Corp. and its subsidiaries (including the Company) pursuant to the Management Services Agreement, dated as of December 1, 2007 and as amended from time to time, by and between Mark IV Global Holding Corp. and Sun Capital Partners Management V, LLC (the "Services Agreement").

1.   **Services**. In connection with each potential Transaction (as defined below), Houlihan Lokey will assist and advise the Company with the analysis, evaluation, pursuit and effectuation of any such Transaction. Houlihan Lokey's services will consist of, if appropriate and if requested by the Company and only relating to a potential Transaction, (i) assisting the Company in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and to consummate any Transaction(s), including, if appropriate, advising the Company in the preparation of an offering memorandum; (ii) soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders and equity investors (collectively, "Investors"); (iii) assisting the Company with the development, structuring, negotiation and implementation of any Transaction(s), including participating as a representative of the Company in negotiations with creditors and other parties involved in any Transaction(s); (iv) advising and attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company and Houlihan Lokey determine to be necessary or desirable; and (v) providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Company.

Mark Barberio
Mark IV Industries, Inc.
Page 2

At the Company's request, and as appropriate, Houlihan Lokey will assist, pursuant to Section 3(iii) below, the Company in efforts to raise up to $25 million in unsecured debt financing in Europe ("European Debt Financing Transaction")

2.      **Exclusive Agency.** The Company agrees that none of it, its controlling equity holders or direct or indirect subsidiaries, or its management will initiate any discussions regarding a Transaction during the term of this Agreement, except with prior consultation with Houlihan Lokey; provided, however that this sentence shall not restrict the Company's ability to have any discussions with Sun Capital Partners Management V, LLC contemplated by the Services Agreement. In the event the Company, its controlling equity holders or other affiliates, or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations. Houlihan Lokey shall not obtain any ownership right or title to any of the Company's proprietary information because such information is incorporated in an information memorandum or report prepared by Houlihan Lokey and any such proprietary information furnished to Houlihan Lokey shall be considered "Evaluation Material" as defined in the Confidentiality Agreement (defined herein). To the extent a confidential information memorandum is prepared as part of any of the services provided by Houlihan Lokey hereunder, such memorandum shall be the sole and exclusive property of the Company; provided that it is understood and agreed that any use by the Company following any termination or expiration of this Agreement shall not impact the Company's obligations to pay a Transaction Fee to Houlihan Lokey as provided in the second paragraph of Section 4 hereunder.

3.      **Fees.** In consideration of Houlihan Lokey's acceptance of this engagement and performance of services pursuant to this Agreement, the Company shall pay the following:

(i) *Monthly Fees*: In addition to the other fees provided for herein, on the Effective Date and on the first day of each month thereafter during the term of this Agreement, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $200,000 ("Monthly Fee"). Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. If this Agreement is terminated before the end of three (3) months from the Effective Date, the Company hereby agrees to pay to Houlihan Lokey, on the effective date of such termination, any excess of the amount of Monthly Fees for three (3) months over the Monthly Fees actually paid to Houlihan Lokey hereunder;

(ii) *Transaction Fee*: In addition to the other fees provided for herein, upon the earlier to occur of: (I) in the case of an out-of-court Transaction (as defined below), the date the Transaction (including via the execution of any necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors) is consummated; and (II) in the case of an in-court Transaction, the date of confirmation of a plan of reorganization under Chapter 11 of the Bankruptcy Code pursuant to an order of the applicable bankruptcy court, Houlihan Lokey shall earn, and the Company shall pay to Houlihan Lokey upon consummation of such Transaction, a cash fee ("Transaction Fee") of $8,000,000;

(iii) *European Debt Financing Fee*: At the request of the Company, Houlihan Lokey will analyze the feasibility of assisting the Company with a European Debt Financing Transaction and will advise the Company of its findings. If the parties agree that a European Debt Financing Transaction is feasible and the Company requests that Houlihan Lokey proceed with such transaction, the Company shall pay Houlihan Lokey (A) an additional non-refundable retainer fee of $75,000 upon such request and (B) upon the consummation of a European Debt Financing Transaction, a fee that is equal to the greater of (i) $1,000,000 and (ii) 4% of the

Mark Barberio
Mark IV Industries, Inc.
Page 3

    gross proceeds of any indebtedness raised or committed (the "European Debt Financing Fee"); and

(iv) *Additional Services*:  In the event that the Company requests that Houlihan Lokey provide investment banking and/or financial advisory services beyond the services described in clauses (i) through (iv) of Section 1 of this Agreement (e.g., providing a fairness opinion, advising on a sale transaction or raising additional capital beyond the European Debt Financing Transaction), the Company and Houlihan Lokey will enter into an appropriate form of agreement relating to the type of transaction involved and containing customary terms and conditions, including fees customarily payable to nationally recognized investment banks performing such roles in connection with comparable transactions. The Company acknowledges that this Agreement is neither an express nor an implied commitment by Houlihan Lokey to act in any such capacity, which commitment shall only be set forth in a separate agreement.

  All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. No payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4.  **Term and Termination.**  This Agreement may be terminated at any time by either party upon thirty days' prior written notice to the other party.  The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 through 3 and (ii) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement.

  In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Company of any owed but unpaid Monthly Fees and Transaction Fee described in this Agreement: (i) so long as a Transaction is consummated during the term of this Agreement, or within 24 months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if an agreement in principle to consummate a Transaction is executed by the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated at any time following such execution with the counterparty named in such agreement, or with any affiliate, employee or investor in such counterparty, or any affiliate of any of the foregoing; provided, however, that no Transaction Fee shall be owed or payable pursuant to this paragraph in the event this Agreement is terminated by Houlihan Lokey.

5.  **Transaction.**  As used in this Agreement, the term "Transaction" shall mean any transaction or series of transactions that constitute a recapitalization or restructuring of the Company's Existing Facilities, including accrued and/or accreted interest thereon, which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a plan of reorganization (or other transaction) under the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations that have the effect of changing the interest rate, face amount or maturity of the outstanding debt under the Existing Facilities, any repurchase by the Company, exchange, conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment agreed to by the Company to the terms, conditions, or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the Existing Facilities (such modification or amendment shall include, without limitation, any forbearance for at least 12 months with respect to any payment obligation) or any combination of the foregoing transactions.

Mark Barberio
Mark IV Industries, Inc.
Page 4

6.    **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the firm. Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company.

7.    **Expenses.** In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey. Such expenses shall not exceed $100,000 in the aggregate without the prior written consent of the Company.

8.    **Invoicing and Payment.** All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

9.    **Information.** The Company will provide Houlihan Lokey with access to management and other representatives of the Company, as reasonably requested by Houlihan Lokey. The Company will furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder, all of which will be, to the Company's best knowledge, accurate and complete, in all material respects, at the time furnished. The Company further represents and warrants that any financial projections delivered to Houlihan Lokey have been or will be reasonably prepared in good faith on bases reflecting the estimates and judgments of the future financial results and condition of the Company believed by management to be reasonable at the time delivered to Houlihan Lokey. The Company will promptly notify Houlihan Lokey in writing if it becomes aware of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Houlihan Lokey, or any materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company or any other potential party to any Transaction or otherwise reviewed by Houlihan Lokey. The Company understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Company acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any real property or fixed assets or liabilities of the Company or any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Company. Any advice (whether written or oral) rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to

Mark Barberio
Mark IV Industries, Inc.
Page 5

any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey (which consent shall not be unreasonably withheld, delayed or conditioned) unless any and all references to Houlihan Lokey on such materials are deleted. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent (which consent shall not be unreasonably withheld, delayed or conditioned).

10.    **Limitations on Services as Advisor.**  Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed-upon, in writing, by the parties hereto. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational administrative, cash management, or similar activities. Houlihan Lokey is providing the Company with Houlihan Lokey's services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency, fiduciary, or third party beneficiary relationship between Houlihan Lokey, on the one hand, and the Company and/or its creditors or any other person, on the other hand. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Company in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose except as contemplated by this Agreement. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Company's decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion.

11.    **Bankruptcy Court Approval.**  In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder. The Company shall submit Houlihan Lokey's employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its best efforts to cause such application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Houlihan Lokey's retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Houlihan Lokey in all respects. If the order authorizing the employment of

Mark Barberio
Mark IV Industries, Inc.
Page 6

Houlihan Lokey is not obtained, or is later reversed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey. Nothing in this Section 11 shall affect the Company's right to terminate this Agreement in accordance with Section 3, whereupon, if such termination occurs prior to the Company becoming a debtor under Chapter 11 of the Bankruptcy Code, the provisions of this Section 11 shall not apply.

12.     **Additional Services.**  To the extent Houlihan Lokey is requested by the Company to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by Houlihan Lokey and the Company in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

13.     **Post-Termination Services.**  If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable related out-of-pocket costs and expenses, including, among other things, the reasonable legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

14.     **Credit.**  After the announcement or closing of any Transaction, with the prior written approval of the Company, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith. Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor to the Company with respect to such Transaction.

15.     **Choice of Law; Jury Trial Waiver; Jurisdiction.**  THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK. EACH OF HOULIHAN LOKEY AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS; PROVIDED THAT SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE

Mark Barberio
Mark IV Industries, Inc.
Page 7

INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON-CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT.    THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY AT 501 JOHN JAMES AUDUBON PARKWAY, AMHERST, NY 14226.

16.    **Indemnification and Standard of Care.**  As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees (i) to indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement and (ii) to reimburse each Indemnified Party for all reasonable out of pocket expenses (including, without limitation, the reasonable fees and reasonable out of pocket expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to this Agreement, or such engagement, Transaction or actions.  However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement to the extent of any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct, bad faith, fraud or gross negligence of such Indemnified Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative fault of the Company, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations.  Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to this Agreement, except in the event of the willful misconduct, bad faith, fraud or gross negligence of an Indemnified Party.  The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

Mark Barberio
Mark IV Industries, Inc.
Page 8

The Company further agrees that neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company related to or arising out of this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement, except to the extent of losses, claims, damages or liabilities incurred by the Company which are finally judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct, bad faith, fraud or gross negligence of such Indemnified Party. The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Company or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

The Company shall cause any new company that may be formed by the Company or the Company's subsidiaries, for any purpose, to agree to all of the obligations in this Section to Houlihan Lokey in accordance with the foregoing provisions.  Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey.

17.    **Miscellaneous.**  This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets.  If appropriate, in connection with performing its services for the Company hereunder Houlihan Lokey may utilize the services of one or more of its affiliates, in which case the references herein to Houlihan Lokey shall include such affiliates, provided, however, that the fees and other obligations described herein comprise all compensation and other obligations to be paid to Houlihan Lokey and its affiliates, and neither Houlihan Lokey, nor any affiliate of Houlihan Lokey, shall charge any separate or additional fees, or seek the payment of any additional obligations, for services rendered pursuant hereto.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

The Company understands and acknowledges that Houlihan Lokey and its affiliates, including ORIX USA Corporation and its subsidiaries and affiliates (collectively, the "Houlihan Lokey Group"), engage in providing investment banking, securities trading, financing, and financial advisory services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Company or any other

Mark Barberio
Mark IV Industries, Inc.
Page 9

party that may be involved in the matters contemplated by this Agreement or have other relationships
with the Company. With respect to any such securities, financial instruments and/or investments, all
rights in respect of such securities, financial instruments and investments, including any voting rights,
will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group
may in the past have had, and may currently or in the future have, financial advisory or other investment
banking relationships with parties other than the Company, including parties that may have interests with
respect to the Company, a Transaction or other parties involved in a Transaction, from which conflicting
interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities
and relationships may acquire information about the Company, a Transaction or such other parties, the
Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose
such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the
Company or to use such information on the Company's behalf.

This Agreement is the complete and exclusive statement of the entire understanding of the parties
regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding
the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be
waived, except in a writing duly executed by the parties hereto. The Company and Houlihan Lokey
acknowledge that the confidentiality agreement (the "Confidentiality Agreement") entered into between
them on November 14, 2008, remains in full force and effect in accordance with its terms.

The obligations of each entity or company comprising the Company hereunder (including, without
limitation, the obligations set forth in Section 16 hereof) are joint and several, and any consent, direction,
approval, demand, notice or the like given by Mark IV shall be deemed given by all entities or companies
comprising the Company and, as such, shall be binding on the Company.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or
enforceability of any other provision of this Agreement, which shall remain in full force and effect
pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the
federal law of the United States requires all financial institutions to obtain, verify and record information
that identifies each person with whom they do business as a condition to doing business with that person.
Accordingly, the Company will provide Houlihan Lokey upon request certain identifying information
necessary to verify the Company's identity, such as a government-issued identification number (e.g., a
U.S. taxpayer identification number), certified articles of incorporation, a government-issued business
license, partnership agreement or trust instrument.

This Agreement may be executed in any number of counterparts, each of which will be deemed an
original and all of which will constitute one and the same instrument. Such counterparts may be delivered
by one party to the other by facsimile or other electronic transmission, and such counterparts shall be
valid for all purposes.

Mark IV has all requisite power and authority to enter into this Agreement on behalf of itself and each of
its direct and indirect subsidiaries and to perform the Company's obligations hereunder. This Agreement
has been duly and validly authorized by all necessary action on the part of Mark IV and each other entity
comprising the Company and has been duly executed and delivered by Mark IV and each other entity
comprising the Company and constitutes a legal, valid and binding agreement of Mark IV and each other
entity comprising the Company, enforceable in accordance with its terms. This Agreement has been
reviewed by the signatories hereto and their counsel. There shall be no construction of any provision
against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive
any statute or rule of law to such effect.

Mark Barberio
Mark IV Industries, Inc.
Page 10

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. The Company understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Company confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

Mark Barberio
Mark IV Industries, Inc.
Page 11

If the foregoing correctly sets forth our Agreement, please sign and return to us the enclosed duplicate hereof along with a check (or wire transfer confirmation) for $200,000 on account of the initial Monthly Fee.

All of us at Houlihan Lokey thank you for choosing us to advise the Company, and look forward to working with you on this engagement.

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.

By: _____
David R. Hilty
Managing Director

Accepted and agreed to as of the Effective Date:

MARK IV INDUSTRIES, INC., on behalf of itself, its direct and indirect subsidiaries and its controlled affiliates

By: _____
Mark Barberio
Vice President & Chief Financial Officer



## HOULIHAN LOKEY

*__Confidential__*

February 20, 2009

Mark Barberio
Chief Financial Officer
Mark IV Industries, Inc.
501 John James Audubon Parkway
Amherst, NY 14226

Dear Mr. Barberio:

Reference is hereby made to that certain engagement letter agreement (the "Agreement") by and among Mark IV Industries, Inc. ("Mark IV"), and each of its direct and indirect subsidiaries, and any entity formed by, or at the direction of, Mark IV (collectively, the "Company") and Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), dated January 1, 2009 pursuant to which Houlihan Lokey was engaged to act as the Company's exclusive financial advisor to provide certain financial advisory and investment banking services. Capitalized terms used herein without definition shall have the meanings assigned to such terms as set forth in the Agreement.

Houlihan Lokey hereby agrees to (i) reduce by $1,000,000 the amount of the Transaction Fee payable by the Company under the Agreement and (ii) offset against the Transaction Fee 50% of the Monthly Fees owing to and actually received by Houlihan Lokey commencing with the ninth such Monthly Fee so received (for the avoidance of doubt, the Transaction Fee shall not be offset by any portion of the first eight Monthly Fees paid to Houlihan Lokey).

Except as expressly modified by this letter, each of our respective rights and obligations under the Agreement shall remain unmodified and in full force and effect.

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.

By: _____
   Andrew B. Miller
   Senior Managing Director

**EXHIBIT C**

**Copy of the Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re                                         :          Chapter 11
                                              :
MARK IV INDUSTRIES, INC., et al.,             :          Case No. 09-12795 (SMB)
                                              :
                              Debtors.        :          (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF**
**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS**
**INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS AND**
<u>**DEBTORS IN POSSESSION NUNC PRO TUNC TO THE PETITION DATE**</u>

Upon the application (the "<u>Application</u>")[1] of Mark IV Industries, Inc. ("<u>Mark IV</u>")

and certain of its U.S. subsidiaries and affiliates, debtors and debtors-in-possession (collectively

with Mark IV, the "<u>Debtors</u>"), for entry of an order pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code, Bankruptcy Rules 2014(a), and Local Rule 2014-1 authorizing the Debtors to

employ and retain Houlihan Lokey Howard & Zukin Capital, Inc. ("<u>Houlihan Lokey</u>") as

investment banker and financial advisor to the Debtors <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date on the

terms set forth in the engagement letter executed on January 1, 2009, a copy of which is attached

hereto as <u>Exhibit A</u> (the "<u>Engagement Letter</u>"), and that certain letter agreement dated February

20, 2009, a copy of which is attached hereto as <u>Exhibit B</u> (the "<u>Letter Agreement</u>" and, together

with the Engagement Letter, the "<u>Engagement Agreement</u>"), by and between Houlihan Lokey

and the Debtors, as supplemented by the Application; and upon consideration of the Burian

Affidavit and the Barberio Affidavit in support of the Application; and due and sufficient notice

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
      Application.

of the Application having been given under the particular circumstances; and it appearing that no

other or further notice need be provided; and it appearing that Houlihan Lokey neither holds nor

represents any interest adverse to the Debtors' estates; and it appearing that Houlihan Lokey is a

"disinterested person," as that term is defined in Bankruptcy Code section 101(14); and  upon the

record of the hearing on the Application reflecting expansion of the services to be rendered by

Houlihan Lokey to the Debtors and other modifications to the terms of the Houlihan Lokey

retention in response to comments by, and in settlement of potential objection of, certain secured

and unsecured creditor constituencies; and it appearing that the relief requested by the

Application, as modified herein, is in the best interests of the Debtors, their estates, their

creditors, and other parties in interest; and after due deliberation and sufficient cause appearing

therefor, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1. The Application is GRANTED as modified in this Order.

2. In accordance with sections 328(a) and 1103 of the Bankruptcy Code,

each of the Debtors is authorized to employ and retain Houlihan Lokey as investment banker and

financial advisor in accordance with the terms and conditions set forth in the Application, the

Engagement Agreement and this Order, effective nunc pro tunc to the Petition Date.

3. The provisions of the Engagement Agreement are approved as modified

herein.

4. The Engagement Agreement is hereby modified such that:

(a) Houlihan Lokey shall not receive the European Debt Financing
Fee.

(b) The Transaction Fee shall be reduced from $7,000,000 to
$6,800,000 (subject to offset in accordance with the terms of the Engagement
Agreement).

(c)      The Tail Period referred to in the Engagement Agreement is hereby reduced from 24 months to 12 months after the date of expiration or termination of the Engagement Agreement; provided that the Tail Period shall terminate upon the consummation of a plan of reorganization.

5.      In addition to the services described in the Engagement Agreement, the Debtors are hereby authorized to, and hereby do, employ and retain Houlihan Lokey in connection with all merger and acquisition activities of the Debtors, and Houlihan Lokey shall advise and represent each such entity in connection with each material asset or stock sale, subject to the following:

(a)      In the event of a sale or disposition of substantially all of the Debtors' businesses, Houlihan Lokey shall be paid a merger and acquisitions fee equal to and in lieu of the Transaction Fee (subject to offset in accordance with the terms of the Engagement Agreement).  Following such sale or disposition, if requested by Mark IV, Houlihan Lokey shall continue to advise Mark IV following the closing of such sale to assist with the distribution of proceeds and confirmation of a plan, but shall only be entitled to receive Monthly Fees (without credits) during such period.

(b)      On the closing of each sale or disposition other than a sale or disposition of substantially all of the Debtors' businesses, Houlihan Lokey shall receive 2.0% of the gross proceeds (including any assumed or avoided liabilities) of each transaction, provided that 50% of each such fee in excess of $400,000 shall be credited against the Transaction Fee.

(c)      All of the fees described in subparagraphs 5(a) and 5(b) above (collectively, the "M&A Fees") shall be paid directly out of the proceeds of each transaction, as a cost of each such transaction, free and clear of any pre or post-petition liens, claims or interests in the assets sold or the proceeds received.

(d)      Houlihan Lokey shall not be entitled to any minimum fee, additional retainers or monthly fees in respect of the services described in this paragraph 5, except as provided above.

6.      Houlihan Lokey shall be compensated and reimbursed in accordance with the terms of the Engagement Agreement (as modified by this Order) and this Order, and all compensation and reimbursement of expenses to be paid to Houlihan Lokey, including without limitation the Monthly Fees, the Transaction Fee and the M&A Fees shall be subject to the

standard of review provided in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review, including under section 330 of the Bankruptcy Code.

7.      Notwithstanding the preceding paragraph, all Monthly Fees, the Transaction Fee and the M&A Fees, and reimbursement of expenses to be paid to Houlihan Lokey, shall be subject to prior approval of this Court pursuant to the standard of review described above, and the Office of the United States Trustee for Region 2 (the "United States Trustee") shall retain the right to object to the compensation to be paid to Houlihan Lokey pursuant to the Engagement Agreement based on the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court shall consider any such objection only by the United States Trustee under section 330 of the Bankruptcy Code.

8.      Houlihan Lokey shall file fee applications for monthly, interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court; provided, however, that (except as provided in the previous paragraph) Houlihan Lokey shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and that Houlihan Lokey's fees and expenses shall not be evaluated under the standard set forth in Bankruptcy Code section 330 and shall not constitute a "bonus" under applicable law.

9.      The Debtors are authorized to pay Houlihan Lokey's fees and to reimburse Houlihan Lokey for its costs and expenses as provided in the Engagement Agreement (as modified by this Order) in accordance with the monthly, interim and final fee application process approved by this Court.

10.     All Houlihan Lokey financial restructuring personnel employed in domestic U.S. offices of Houlihan Lokey who provide services to or on behalf of the Debtors as authorized hereby shall keep contemporaneous records of the work performed by them in hourly increments.

11.     All other Houlihan Lokey personnel who provide services to or on behalf of the Debtors as authorized hereby shall keep detailed descriptions of the work performed by them and Houlihan Lokey shall prepare a weekly summary of such detailed descriptions and provide same to the United States Trustee.

12.     To the extent the United States Trustee has any objection to the scope, completeness or adequacy of the time records or summaries thereof described in the preceding paragraph, the United States Trustee shall notify Houlihan Lokey within thirty (30) days of receipt thereof or the United States Trustee shall be deemed to have waived any such objection.

13.     Upon submission of the foregoing time records to the United States Trustee, Houlihan Lokey shall also provide the United States Trustee with schedules of the Houlihan Lokey personnel who provided services to or on behalf of the Debtors identifying which individuals are financial restructuring personnel employed in domestic U.S. offices of Houlihan Lokey, and which are not; provided, however, that Houlihan Lokey shall not be required to maintain either time records or summaries of work performed by Houlihan Lokey personnel for services rendered to or on behalf of the Debtors through and including the date on which this Order is entered.

14.     In the event Houlihan Lokey seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Houlihan Lokey's own application and such invoices

5

and time records shall be subject to the United States Trustee's guidelines for compensation and

reimbursement of expenses and the approval of the Bankruptcy Court under the standards of

sections 330 and 331 of the Bankruptcy Code.

15.     The Debtors will be bound by the indemnification, contribution and

exculpation provisions of the Engagement Agreement and will indemnify and hold harmless

Houlihan Lokey and its affiliates, and its and their respective directors, officers, members, agents,

employees and controlling persons, and each of their respective successors and assigns

(collectively, the "Indemnified Persons"), pursuant to the indemnification, exculpation and

contribution provisions of the Engagement Agreement and during the pendency of these Chapter

11 cases, subject to the following conditions:

(a)     All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Engagement Agreement shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the party of that or any other Indemnified Person.

(b)     In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Agreement if the Debtors, their estates, or the official committee of unsecured creditors assert a claim for, and the Court determines by final order that such claim arose out of, such Indemnified Person's bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

(c)     In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be annexed to Houlihan Lokey's own interim and final fee applications, and such

invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 1103 of the Bankruptcy Code.

16.    To the extent this Order is inconsistent with the Engagement Agreement or the Application, this Order shall govern.

17.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

18.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, or 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.    This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
          May 27, 2009

          ___/s/____STUART M. BERNSTEIN_
                   UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT D**

**Detailed Summary of Monthly and Transaction Fees**

| Summary of Transaction and Monthly Fees, Amounts Paid and Amounts Due | | | | | | |
|---|---|---|---|---|---|---|
| **Billing Period** | **Monthly Fees** | **Less: 20% Holdback** | **Fees Billed** | **Less: Amount Paid** | **Holdback Amount Paid** | **Total Fees Owed** |
| **Monthly Fees** | | | | | | |
| April 30, 2009 - May 26, 2009 | $200,000.00 | $0.00 | $200,000.00 | $200,000.00 | $0.00 | $0.00 |
| May 27, 2009 - June 30, 2009 | 200,000.00 | (40,000.00) | 200,000.00 | 160,000.00 | 0.00 | 40,000.00 |
| July 1, 2009 - July 31, 2009 | 200,000.00 | (40,000.00) | 200,000.00 | 160,000.00 | 0.00 | 40,000.00 |
| August 1, 2009 - August 31, 2009 | 200,000.00 | (40,000.00) | 200,000.00 | 160,000.00 | 0.00 | 40,000.00 |
| September 1, 2009 - September 30, 2009 | 200,000.00 | (40,000.00) | 200,000.00 | 160,000.00 | 0.00 | 40,000.00 |
| October 1, 2009 - October 31, 2009 | 200,000.00 | (40,000.00) | 200,000.00 | 160,000.00 | 0.00 | 40,000.00 |
| November 1, 2009 - November 13, 2009 | 200,000.00 | (40,000.00) | 200,000.00 | 160,000.00 | 0.00 | 40,000.00 |
| **Subtotal Aggregate Monthly Fees** | **$1,400,000.00** | **($240,000.00)** | **$1,400,000.00** | **$1,160,000.00** | **$0.00** | **$240,000.00** |
| **Transaction Fee** | | | | | | |
| Gross Transaction Fee | $6,800,000.00 | | | | | |
| Less: 50% Monthly Fees Credited (September Onward) | ($300,000.00) | | | | | |
| Less: Credit of Applicable Expenses | ($1,488.05) | | | | | |
| **Net Transaction Fee** | **$6,498,511.95** | **$0.00** | **$6,498,511.95** | **$0.00** | **$0.00** | **$6,498,511.95** |
| **Total Final Period Fees** | **$7,898,511.95** | **($240,000.00)** | **$7,898,511.95** | **$1,160,000.00** | **$0.00** | **$6,738,511.95** |

**EXHIBIT E**

**Itemized Summary of Expenses**

| Summary of Expenses | | | |
|---|---|---|---|
| **Billing Period** | **Expenses Billed** | **Expenses Paid** | **Expenses Owed** |
| April 30, 2009 - May 31, 2009 | $3,652.89 | $3,652.89 | $0.00 |
| June 1, 2009 - June 30, 2009 | 3,392.33 | 3,392.33 | 0.00 |
| July 1, 2009 - July 31, 2009 | 2,726.55 | 2,726.55 | 0.00 |
| August 1, 2009 - August 31, 2009 | 1,187.72 | 1,187.72 | 0.00 |
| September 1, 2009 - September 30, 2009 | 2,053.87 | 2,053.87 | 0.00 |
| October 1, 2009 - October 31, 2009 | 9,637.37 | 9,637.37 | 0.00 |
| November 1, 2009 - November 13, 2009 | 2,915.31 | 4,403.36 | (1,488.05) |
| **Total Final Application Period** | **$25,566.04** | **$27,054.09** | **($1,488.05)** |

Presented herein is a summary of reimbursable expenses incurred by Houlihan Lokey on behalf of the Debtors and as is consistent with the Retention Order and Engagement Agreement. Houlihan Lokey's policy is to pass along to its clients its expenses incurred on behalf of such clients, without markup or interest charges.  Such expenses include the following: airfare, taxi or other airport transportation, hotel charges, travel and working meals, computer research, messenger charges, overnight delivery (when necessary), internal and external photocopying expenses, postage, telecopy expenses, long-distance telephone charges, and other travel-related expenses.  To assist the Court in reviewing Houlihan Lokey's request for reimbursement of the expenses incurred in connection with its representation of the Debtors, Houlihan Lokey's billing procedures and the general categories of expenses for which it seeks reimbursement by this Application are described below:

A. **Airfare:**  (first class and coach fares) Airfare includes necessary travel expenses associated with airplane travel when there is a need for in-person meetings, management interviews, due diligence and working sessions.

During the Application Period, Houlihan Lokey billed the Debtors for $4,294.25 in total expenses related to Airfare.

B. **Lodging:**  Lodging includes expenses associated with hotel stays and related expenses incurred when out-of-town meetings were required or for necessary overnight stays in connection with working sessions.

During the Application Period, Houlihan Lokey billed the Debtors for $1,561.31 in total expenses related to Lodging.

C. **Other Transportation:**  Other Transportation includes train ticket expenses, cab fare or other airport transportation, and parking and rental car charges.

1

<u>During the Application Period, Houlihan Lokey billed the Debtors for $3,659.43 in total
expenses related to Other Transportation.</u>

D.    **Travel/Working Meals:**  Houlihan Lokey charged for overtime meals and other meals
consumed during meetings with individuals regarding the Chapter 11 cases in order to
expedite or facilitate working sessions or for necessary meals during travel.

<u>During the Application Period, Houlihan Lokey billed the Debtors for $10,766.23 in total
expenses related to Travel/Working Meals.</u>

E.    **Telephone/Fax:**  Expenses include all telephone/fax usage related to the case.

<u>During the Application Period, Houlihan Lokey billed the Debtors for $2,558.08 in total
expenses related to Telephone/Fax.</u>

F.    **Research and Information Services:**  Expenses associated with research on database
systems or document retrieval relating to this case.  These expenses include disclosure
document charges for comparable public companies' 10Q and 10K reports filed with the
SEC that were used to perform valuation analysis.  Database charges are incurred using
Factiva and Thomson Financial systems in order to obtain news and analyst reports for
the comparable companies.  Dow Jones and Bloomberg services are used to obtain
current and historical security pricing and news wires.  Houlihan Lokey believes these
expenses to be required in order to complete standard financial and valuation analysis.

<u>During the Application Period, Houlihan Lokey billed the Debtors for $1,364.14 in total
expenses related to Research and Information Services.</u>

G.    **Delivery, Mail & Federal Express:**  Houlihan Lokey utilized Federal Express and other
overnight delivery services when documents had to be distributed the next day.

<u>During the Application Period, Houlihan Lokey billed the Debtors for $279.57 in total
expenses related to Delivery, Mail & Federal Express.</u>

H.    **Office Expense:**  Includes photocopy charges, color copy charges, binding materials, etc.

During the Application Period, Houlihan Lokey billed the Debtors for $1,083.03 in total

expenses related to Office Expense.

**EXHIBIT F**

**Professional Biographies**

## Professional Biographies

**Saul E. Burian -** *Managing Director*

Mr. Burian is a Managing Director in the Financial Restructuring Group in Houlihan Lokey's New York office. He specializes in advising public and private companies and creditor groups in complex financial restructurings, and distressed mergers and acquisitions. He also specializes in raising capital for troubled businesses. He often represents debtors and creditor constituencies in "prenegotiated" and other bankruptcy proceedings, and is especially proud of his work crafting creative solutions and forging the consensus necessary to avoid in-court proceedings.

Before joining Houlihan Lokey, Mr. Burian was a partner in the New York law firm Kramer Levin Naftalis & Frankel, where he specialized in creditors' rights and bankruptcy. During his 12 years at Kramer Levin, he represented a broad spectrum of clients that were often the primary "at-risk" constituency in the relevant in- and out-of-court restructurings and bankruptcies, including bank lenders, debtors, creditors committees and secondary purchasers of distressed paper.

Mr. Burian is a national director of the Turnaround Management Association, and he is a board member of Yeshiva College of Yeshiva University and of S/A/R Academy of Riverdale. He lectures frequently for the American Bankruptcy Institute and the National Conference of Bankruptcy Judges.

Mr. Burian received his B.A. with honors in economics at Yeshiva University and his J.D. from Columbia University School of Law, where he was a Harlan Fiske Stone Scholar. He is registered with FINRA as a General Securities Representative (Series 7 and 63).

**Gavin Kagan –** *Director*

Mr. Kagan is a Director in Houlihan Lokey's New York office. He has over 10 years of investment banking experience, including corporate restructurings, mergers & acquisitions, and the issuance of both public and private debt and equity securities.

Before joining Houlihan Lokey, Mr. Kagan worked for UBS Securities LLC in New York in the Leveraged Finance and Restructuring Groups. His prior experience includes providing restructuring advice to major parties-in-interest in a broad range of transactions, including Cablecom, Cornerstone Propane, Dana, Delphi, NTL Communications (*Institutional Investor*'s Deal of the Year – 2002), Petroleum Geo Services, Stelco, Telewest Communications (*IFR Magazine's* Restructuring Deal of the Year – 2003), Telesystem International Wireless, and Trump Hotels and Casino Resorts. Earlier, he was an associate with Houlihan Lokey's Financial Restructuring Group.

Mr. Kagan earned a B.B.S. in finance, with honors, from the University of Cape Town and an M.B.A. from the University of Southern California's Marshall School of Business. He is also a Certified Financial Analyst and a member of the Association for Investment Management and Research and the New York Society of Financial Analysts. He is registered with FINRA as a General Securities Representative (Series 7 and 63).

**<u>Steven Hughes</u>** – *Director*

Mr. Hughes is a Director in Houlihan Lokey's Chicago office, where he heads the firm's North American automotive and truck supplier coverage effort, advising clients on transactions in the transportation industry. His recent assignments include DaimlerChrysler, J.L. French Automotive Castings, Bridgestone Corporation, Noble International and Eagle Picher, as well as work on behalf of equity holders and creditors in General Motors, Delphi Corporation, Tower Automotive, Meridian Automotive Systems and Remy. His other transaction experience includes metals, chemicals and other industrial mergers and acquisitions, as well as financial restructurings, fairness opinions, and private placements of debt and equity.

Before joining Houlihan Lokey, Mr. Hughes worked with BT Alex. Brown (now Deutsche Bank), where he was involved primarily in raising capital in the high-yield-bond and syndicated leveraged loan markets for industrial clients.

Mr. Hughes holds a bachelor's degree in business from the University of Iowa and graduated with honors from the University of Chicago Graduate School of Business, receiving an M.B.A. in finance and accounting. He is registered with FINRA as a General Securities Representative (Series 7 and 63).

**<u>Michael Hsieh</u>** - *Senior Vice President*

Mr. Hsieh was a Senior Vice President in Houlihan Lokey's New York office, where he was a member of the Financial Restructuring Group. He executed a wide range of transactions, including financial restructurings, recapitalizations and exchange offers, both in and out of Chapter 11, on company-side and creditor-side transactions. His industry experience includes automotive, steel, industrial manufacturing, oil and gas, mining, retail, gaming and consumer products.

Before joining Houlihan Lokey, Mr. Hsieh was a member of the financial restructuring group at both Piper Jaffray & Co. and CIBC World Markets Corp. He was also a member of CIBC's leveraged finance group, where he was involved in leveraged buyouts, high-yield-bond, senior and mezzanine debt underwritings, debt and equity private placements, and private equity investments. Earlier, he was a member of the mergers & acquisitions group at Dean Witter Reynolds.

Mr. Hsieh graduated from the University of Illinois with a B.S. in finance. He is registered with FINRA (formerly the NASD) as a General Securities Representative (Series 7 and 63).

**Surbhi Gupta** – *Associate*

Ms. Gupta is an Associate in the Financial Restructuring Group in Houlihan Lokey's New York office. She worked at the firm's London office before transferring to New York.

Before joining Houlihan Lokey, Ms. Gupta completed a summer internship at the U.S. Treasury.

Ms. Gupta received her B.A. in economics from Swarthmore College and her M.Sc. in accounting and finance from the London School of Economics and Political Science. She is registered with FINRA as a General Securities Representative (Series 7 and 63).

**Matthew Bowersox** – *Associate*

Mr. Bowersox is an Associate in Houlihan Lokey's Chicago office. As a member of the Industrials Group, he works on a wide range of M&A and financing transactions in the plastics and packaging, metals and diversified industrial sectors. He also began his career in this group, working on M&A and restructuring transactions as a financial analyst.

Before rejoining Houlihan Lokey, Mr. Bowersox was an associate at Sentinel Capital Partners, a $750 million, New York–based private equity firm, where he structured and executed middle-market private equity investments in various industries, including healthcare services, niche manufacturing, food and restaurants.

Mr. Bowersox received a B.B.A. in finance with honors from the University of Iowa, where he was a Hawkinson Institute of Business Finance scholar. He is registered with FINRA as a General Securities Representative (Series 7 and 63).

**Neel Chary -** *Financial Analyst*

Mr. Chary is a Financial Analyst in the Financial Restructuring Group in Houlihan Lokey's New York office.

Before joining Houlihan Lokey, Mr. Chary worked as an analyst in the Global Industries Group at Bear, Stearns & Co. Inc.

Mr. Chary graduated from the Martin J. Whitman School of Management at Syracuse University where he earned a B.S. in finance and a B.A. in economics.  He is registered with FINRA as a General Securities Representative (Series 7 & 63).

**Joseph (Jack) Rosenberg -** *Financial Analyst*

Mr. Rosenberg is a Financial Analyst in Houlihan Lokey's Chicago office. As a member of the Industrials Group, he focuses on buyside and sellside M&A transactions.

Before joining Houlihan Lokey as a summer analyst in 2007, he completed audit and tax internships with RSM McGladrey.

Mr. Rosenberg graduated with honors from the University of Illinois, earning dual B.S. degrees in accountancy and finance. He is registered with FINRA as a General Securities Representative (Series 7 and 63).

**Lauren Warsavsky -** *Financial Analyst*

Ms. Warsavsky is a Financial Analyst in the Financial Restructuring Group in Houlihan Lokey's New York office.

Before joining Houlihan Lokey, Ms. Warsavsky worked in the investment banking division at Lehman Brothers.

Ms. Warsavsky graduated *magna cum laude* with a B.S. in economics from the Wharton School of the University of Pennsylvania. She is registered with FINRA as a General Securities Representative (Series 7 and 63).

**Ross Solomon –** *Summer Financial Analyst*

Ms. Solomon was a Summer Financial Analyst in the Financial Restructuring Group in Houlihan Lokey's New York office.

Mr. Solomon is currently a Bachelors of Science degree candidate at the Wharton School of the University of Pennsylvania.

**EXHIBIT G**

**Estimated Hours by Category**

## KEY

A = Diligence, Financial Analysis and Review of Business Plan
B = DIP/Exit Financings
C = Communications, Correspondence, and Meetings with Parties-in-Interest and their Advisors
D = General Analyses/Presentations
E = Disclosure Statement and Plan Documents
F = Case Administration/Other

### May 27, 2009 - June 30, 2009 Allocation

| Name | A | B | C | D | E | F | Total |
|------|-----|-----|-----|-----|-----|-----|-------|
| Saul Burian | 4.0 | 2.0 | 8.0 | 0.0 | 2.0 | 0.0 | **16.0** |
| Gavin Kagan | 9.0 | 2.0 | 10.0 | 0.5 | 2.0 | 5.0 | **28.5** |
| Surbhi Gupta | 22.0 | 1.5 | 33.0 | 47.5 | 15.5 | 4.0 | **123.5** |
| Neel Chary | 32.0 | 7.0 | 41.5 | 53.0 | 14.5 | 11.0 | **159.0** |
| Ross Solomon | 15.0 | 9.0 | 14.0 | 22.0 | 3.0 | 1.0 | **64.0** |
| **Total** | **82.0** | **21.5** | **106.5** | **123.0** | **37.0** | **21.0** | **391.0** |

### July 1, 2009 - July 31, 2009 Allocation

| Name | A | B | C | D | E | F | Total |
|------|-----|-----|-----|-----|-----|-----|-------|
| Saul Burian | 7.0 | 0.0 | 9.0 | 0.0 | 4.0 | 0.0 | **20.0** |
| Gavin Kagan | 12.0 | 1.0 | 13.0 | 1.0 | 6.0 | 2.0 | **35.0** |
| Surbhi Gupta | 0.0 | 13.5 | 7.5 | 36.5 | 45.5 | 4.5 | **107.5** |
| Neel Chary | 11.0 | 33.0 | 21.0 | 40.0 | 66.0 | 7.0 | **178.0** |
| Ross Solomon | 19.0 | 7.0 | 17.0 | 6.0 | 3.0 | 1.0 | **53.0** |
| **Total** | **49.0** | **54.5** | **67.5** | **83.5** | **124.5** | **14.5** | **393.5** |

### August 1, 2009 - August 31, 2009 Allocation

| Name | A | B | C | D | E | F | Total |
|------|-----|-----|-----|-----|-----|-----|-------|
| Saul Burian | 2.0 | 10.0 | 7.0 | 0.0 | 0.0 | 0.0 | **19.0** |
| Gavin Kagan | 11.0 | 9.0 | 18.0 | 0.0 | 3.0 | 0.0 | **41.0** |
| Surbhi Gupta | 2.0 | 63.5 | 21.0 | 60.5 | 0.0 | 1.0 | **148.0** |
| Neel Chary | 20.0 | 61.0 | 31.0 | 72.0 | 1.0 | 7.0 | **192.0** |
| Lauren Warsavsky | 4.0 | 0.0 | 6.0 | 3.0 | 0.0 | 1.0 | **14.0** |
| **Total** | **39.0** | **143.5** | **83.0** | **135.5** | **4.0** | **9.0** | **414.0** |

### September 1, 2009 - September 30, 2009 Allocation

| Name | A | B | C | D | E | F | Total |
|------|-----|-----|-----|-----|-----|-----|-------|
| Saul Burian | 0.0 | 8.0 | 8.0 | 0.0 | 7.0 | 0.0 | **23.0** |
| Gavin Kagan | 6.0 | 14.0 | 28.0 | 3.0 | 0.0 | 0.0 | **51.0** |
| Surbhi Gupta | 0.0 | 96.0 | 20.5 | 11.5 | 7.0 | 3.0 | **138.0** |
| Neel Chary | 5.0 | 134.0 | 13.0 | 30.0 | 14.0 | 5.0 | **201.0** |
| Lauren Warsavsky | 0.0 | 29.0 | 10.0 | 0.0 | 0.0 | 1.0 | **40.0** |
| **Total** | **11.0** | **281.0** | **79.5** | **44.5** | **28.0** | **9.0** | **453.0** |

### October 1, 2009 - October 31, 2009 Allocation

| Name | A | B | C | D | E | F | Total |
|------|-----|-----|-----|-----|-----|-----|-------|
| Saul Burian | 0.0 | 1.0 | 5.0 | 6.0 | 0.0 | 3.0 | **15.0** |
| Gavin Kagan | 0.0 | 1.0 | 37.0 | 8.0 | 0.0 | 0.0 | **46.0** |
| Surbhi Gupta | 0.0 | 36.0 | 7.5 | 57.5 | 2.0 | 18.0 | **121.0** |
| Neel Chary | 0.0 | 33.0 | 7.0 | 121.0 | 0.0 | 16.0 | **177.0** |
| Lauren Warsavsky | 0.0 | 3.0 | 6.0 | 11.0 | 0.0 | 1.0 | **21.0** |
| **Total** | **0.0** | **74.0** | **62.5** | **203.5** | **2.0** | **38.0** | **380.0** |

| Name | A | B | C | D | E | F | Total |
|---|---|---|---|---|---|---|---|
| | | | November 1, 2009 - November 13, 2009 Allocation | | | | |
| Saul Burian | 0.0 | 0.0 | 10.0 | 1.0 | 1.0 | 0.0 | **12.0** |
| Gavin Kagan | 1.0 | 0.0 | 16.0 | 1.0 | 0.0 | 0.0 | **18.0** |
| Surbhi Gupta | 0.0 | 16.5 | 8.0 | 46.5 | 0.0 | 11.5 | **82.5** |
| Neel Chary | 0.0 | 5.0 | 5.0 | 64.0 | 1.0 | 10.0 | **85.0** |
| Lauren Warsavsky | 0.0 | 2.0 | 2.0 | 0.0 | 0.0 | 0.0 | **4.0** |
| **Total** | **1.0** | **23.5** | **41.0** | **112.5** | **2.0** | **21.5** | **201.5** |