# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| -------------------------------------------------------- | x | |
| | : | |
| **In re** | : | **Chapter 11** |
| | : | |
| **BRIGGS & STRATTON** | : | **Case No. 20–43597-399** |
| **CORPORATION, et al.,** | | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| -------------------------------------------------------- | x | **Obj. Deadline: January 13, 2021 at 4:00 p.m. (CT)** |

**FIRST INTERIM APPLICATION OF HOULIHAN LOKEY CAPITAL, INC., AS
INVESTMENT BANKER TO BRIGGS & STRATTON CORPORATION, ET AL.,
FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES
RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY
EXPENSES INCURRED FOR THE PERIOD FROM
<u>JULY 20, 2020 THROUGH OCTOBER 31, 2020</u>**

| | |
|---|---|
| <u>Name of Applicant:</u> | Houlihan Lokey Capital, Inc. |
| <u>Authorized to Provide Professional Services to:</u> | Briggs & Stratton Corporation, et al. |
| <u>Date of Retention:</u> | July 20, 2020 |
| <u>Period for which compensation and reimbursement are sought:</u> | July 20, 2020 through October 31, 2020 |
| <u>Amount of compensation sought as actual, reasonable, and necessary:</u> | $19,439,332.85 |
| <u>Amount of expense reimbursement sought as actual, reasonable, and necessary:</u> | $1,814.75 |
| <u>Amount of compensation and expenses paid to date:</u> | $15,593,594.13 (including the application of the $3,636.90 outstanding retainer balance) |
| <u>Net amount sought as actual, reasonable and necessary:</u> | $3,847,553.47 |

This is a(n):__ monthly _X_ interim ___ final application

Case 20-43597    Doc 1492    Filed 12/18/20    Entered 12/18/20 18:19:03    Main Document
Pg 2 of 22

## Summary of Fee Statements for Compensation Periods:

| | | Requested | | Approved | | Holdback Requested |
|---|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees (80%) | Expenses (100%) | Fees (20%) |
| 9/8/20 | July 20, 2020 – August 31, 2020 | $2,850,000.00 | $814.23 | $2,280,000.00[1] | $814.23 | $570,000.00 |
| 11/12/20 | September 1, 2020 – September 30, 2020 | $16,389,332.85[2] | $476.81 | $13,151,779.38[3] | $476.81 | $3,237,553.47[4] |
| 11/25/20 | October 1, 2020 – October 31, 2020 | $200,000.00 | $523.71 | $160,000.00 | $523.71 | $40,000.00 |
| **Total** | | **$19,439,332.85** | **$1,814.75** | **$15,591,779.38** | **$1,814.75** | **$3,847,553.47** |

[1] $3,636.90 of fees were applied to the remaining amount of Houlihan Lokey's $10,000.00 pre-petition expense retainer

[2] Includes the Sale Transaction Fee, the amount of which has been updated since the submission of the September Monthly Fee Statement. See **Exhibit D** for additional detail.

[3] Reflects 80% of the fees requested in the September Monthly Fee Statement

[4] Reflects 20% of the fees requested in the September Monthly Fee Statement, less the adjustment to the amount of the Sale Transaction Fee

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

--------------------------------------------------------- x
                                                          :
**In re**                                                 :    **Chapter 11**
                                                          :
**BRIGGS & STRATTON**                                     :    **Case No. 20–43597-399**
**CORPORATION,** *et al.,*
                                                          :
        **Debtors.**                                      :    **(Jointly Administered)**
                                                          :
--------------------------------------------------------- x    Obj. Deadline: January 13, 2021 at 4:00 p.m. (CT)


**FIRST INTERIM APPLICATION OF HOULIHAN LOKEY CAPITAL, INC., AS
INVESTMENT BANKER TO BRIGGS & STRATTON CORPORATION, ET AL., FOR
ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FOR THE PERIOD FROM
JULY 20, 2020 THROUGH OCTOBER 31, 2020**

TO:    THE HONORABLE BARRY S. SCHERMER
       UNITED STATES BANKRUPTCY JUDGE:

       In accordance with the Final Order of the United States Bankruptcy Court for the Eastern

District of Missouri (the "Court") authorizing the retention of Houlihan Lokey Capital, Inc.

("Houlihan Lokey"), dated August 19, 2020 [Docket No. 507] (the "Retention Order"), Houlihan

Lokey Capital, Inc., investment banker to the Briggs & Stratton Corporation, et. al., the above-

captioned debtors and debtors-in-possession (collectively, the "Debtors") in these chapter 11 cases

(the "Chapter 11 Cases"), hereby submits its first interim fee application (the "Application"),

pursuant to Sections 328(a) and 1103 of title 11 of the United States Code (the "Bankruptcy

Code"), Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Local Rule 2016-2 of the Local Bankruptcy Rules for the Eastern District of Missouri

(the "Local Bankruptcy Rules"), for the interim allowance of compensation for the professional

services performed by Houlihan Lokey for and on behalf of the Debtors for the period

3

commencing July 20, 2020 through and including October 31, 2020 (the "First Interim Fee Period"), and for reimbursement of its actual and necessary expenses incurred during the First Interim Fee Period. In support of the Application, Houlihan Lokey respectfully represents as follows:

## JURISDICTION

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## BACKGROUND

3.      On July 20, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for Chapter 11 relief in the United States Bankruptcy Court for the Eastern District of Missouri, thereby commencing the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      On July 20, 2020, the Debtors filed an application for an order approving the employment and retention of Houlihan Lokey as investment banker for the Debtors [Docket No. 45] (the "Retention Application"). On July 20, 2020, the Court entered an order approving the Retention Application on a provisional basis until the entry of a final order.

6.      On August 5, 2020, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee" in these Chapter 11 Cases.

7.      On  August  19,  2020,  the  Court  entered  the  Retention  Order,  approving  the

4

Retention Application.

8.      The terms and conditions of Houlihan Lokey's engagement in this case, which are
embodied in the Retention Application and Retention Order and approved by the Court, are based
upon the terms and conditions set forth in that certain engagement agreement, dated as of April 4,
2020 and as amended on May 5, 2020, and as further amended on June 25, 2020 (the "Engagement
Agreement").

9.      In addition, the Engagement Agreement and Retention Order entitle Houlihan
Lokey to receive reimbursement of all actual and reasonable out-of-pocket expenses pursuant to
the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, Local Guidelines and
applicable order of this Court.

10.     As detailed in the Retention Application, the terms of the Engagement Agreement
are comparable to the terms Houlihan Lokey and other investment bankers have agreed upon in
similar engagements, both in and outside of bankruptcy.

11.     By this Application, Houlihan Lokey requests compensation for the services
rendered and reimbursement of actual and necessary expenses incurred by Houlihan Lokey as
investment banker to the Debtors during the First Interim Fee Period.

12.     Under the Retention Order, Houlihan Lokey is compensated on a flat monthly and
transactional, as opposed to hourly, fee basis, reflecting a typical fee structure for Houlihan Lokey
and other leading investment banking firms. Additionally, paragraph 5 of the Retention Order
indicates that "Houlihan Lokey shall be excused from submitting time records in support of its fee
applications."

13.     After approximately three months operating in chapter 11, the Debtors successfully
sold substantially all of their assets and equity interests as a result of the sale process run by
Houlihan Lokey. The Court entered an order on September 15, 2020 approving the sale [Docket

Case 20-43597    Doc 1492    Filed 12/18/20    Entered 12/18/20 18:19:63    Main Document
Pg 6 of 22

No. 898], and the sale closed just six days later on September 21, 2020.

## PRELIMINARY STATEMENT

14.     These Chapter 11 Cases require consideration of complex issues. Houlihan Lokey

was engaged by the Debtors to act as their investment banker, to provide, primarily, the following

professional services:

a)     Assisting the Debtors in the development and distribution of selected information, documents and other materials in an effort to create an interest in and to consummate any Transaction(s)[1], including, if appropriate, advising the Debtors in the preparation of an offering memorandum;

b)     Soliciting and assisting the Debtors in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders and/or other counterparties;

c)     Assisting the Debtors with the development, structuring, negotiation, and implementation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s) and evaluation of any forward-looking impact of any Transaction(s);

d)     Providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

e)     Advising, attending, and presenting with Debtors' counsel in meetings of the Debtors' Board of Directors, creditor groups, official constituencies, and other interested parties, as the Debtors and Houlihan Lokey determine to be necessary or desirable;

f)     Reviewing the financial condition, liquidity, operations, competitive environment, prospects and related matters of the Debtors, including the impact of COVID-19;

g)     Analyzing the Debtors' current operational strategy and capital structure, including assessment of covenants and potential cross defaults under existing obligations;

h)     Providing strategic advice with regard to various alternatives being considered by the Debtors; and

i)     Providing such other investment banking services as may be required by additional issues and developments.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Engagement Agreement

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

15.      This Application has been prepared in accordance with the local United States Trustee Guidelines for Fees and Disbursements for Professionals set forth by the U.S. Bankruptcy Court in the Eastern District of Missouri (the "Local Guidelines"), and the Local Bankruptcy Rules. Pursuant to the Local Guidelines, a certification of Reid Snellenbarger regarding compliance with the same is attached as **Exhibit A** hereto.

16.      Houlihan Lokey seeks interim allowance of fees for professional services rendered during the First Interim Fee Period in the aggregate amount of $19,439,332.85 (the "First Interim Fees") and reimbursement of expenses incurred in connection with the rendition of those services in the aggregate amount of $1,814.75 (the "First Interim Expenses").

17.      There is no agreement or understanding between Houlihan Lokey and any other person, other than members of Houlihan Lokey, for the sharing of compensation to be received for services rendered in these Chapter 11 Cases.

18.      The fees charged by Houlihan Lokey in these Chapter 11 Cases are billed in accordance with the procedures set forth in the Retention Application, in effect during the First Interim Fee Period.

19.      Houlihan Lokey's fees for the services rendered by its professionals are reasonable based on the customary compensation charged by comparably skilled investment bankers.

20.      Annexed hereto as **Exhibit B** is a schedule setting forth all professionals employed by Houlihan Lokey who have performed services in these Chapter 11 Cases during the First Interim Fee Period.

21.      Annexed hereto as **Exhibit C** is a schedule specifying the categories of expenses for which Houlihan Lokey is seeking reimbursement and the total amount for each such expense

7

Case 20-43597   Doc 1492   Filed 12/18/20   Entered 12/18/20 18:19:09   Main Document
Pg 8 of 22

category.

22.     Since the commencement of these Chapter 11 Cases, Houlihan Lokey has provided the appropriate notice parties with a Monthly Fee Statement for each month for which compensation was sought pursuant to the Local Bankruptcy Rules established in these Chapter 11 Cases. During the First Interim Fee Period, Houlihan Lokey provided the appropriate notice parties with the following monthly fee statements:

a)      For July 20, 2020 through August 31, 2020, (x) fees of $2,850,000.00, comprised of (i) a DIP Financing Fee of $2,650,000 and (ii) a Monthly Fee of $200,000, and (y) expenses of $814.23 (the "First Fee Statement");

b)      For September 1, 2020 through September 30, 2020, (x) fees of $16,389,332.85, comprised of (i) a Sale Transaction Fee of $16,189,332.85[1] as further detailed in **Exhibit D** and (ii) a Monthly Fee of $200,000, and (y) expenses of $476.81 (the "Second Fee Statement"); and

c)      For October 1, 2020 through October 31, 2020, (x) fees of $200,000.00 and (y) expenses of $523.71 (the "Third Fee Statement" and together with the First Fee Statement and Second Fee Statement, the "Monthly Fee Statements").

23.     In total, Houlihan Lokey has submitted Monthly Fee Statements during the First Interim Fee Period for fees of $19,439,332.85[1] and expenses of $1,814.75. As of the date of this Application, no notice party has objected to Houlihan Lokey's Monthly Fee Statements for the First Interim Fee Period. Houlihan Lokey hereby seeks allowance of fees incurred for the First Interim Fee Period in the amount of $19,439,332.85 and the reimbursement of actual and necessary expenses incurred for the First Interim Fee Period in the amount of $1,814.75.

---

[1] Reflects the updated amount of the Sale Transaction Fee, which is $50,391.38 less than the amount submitted in the September Fee Statement. See **Exhibit D** for additional detail.

Case 20-43597 Doc 1492 Filed 12/18/20 Entered 12/18/20 18:19:09 Main Document

24.     In accordance with the Local Bankruptcy Rules and Local Guidelines, Houlihan Lokey sought payment for 80% of its fees and 100% of its expenses incurred, pursuant to each Monthly Fee Statement filed with the Court. To date, with respect to the Monthly Fee Statements, Houlihan Lokey has received $15,593,594.13[1]. In the event any further payments are received prior to the hearing on this Application on account of the Monthly Fee Statements that are the subject of this Application, Houlihan Lokey will reduce the amount requested for payment herein accordingly.

25.     In total, therefore, pursuant to this Application, Houlihan Lokey respectfully requests that the Court enter an order awarding Houlihan Lokey, on an interim basis, fees in an aggregate amount of $19,439,332.85 and the reimbursement of actual and necessary expenses in the aggregate amount of $1,814.75. Houlihan Lokey requests payment, on an interim basis, of the net amount outstanding of $3,847,553.47, which represents the total amount of fees and expenses less the amount paid to date. This amount, together with the amount paid to date, is 100% of the requested fees and expenses incurred by Houlihan Lokey during the First Interim Fee Period.

26.     To the extent that time or disbursement charges for services rendered or expenses incurred relate to the First Interim Fee Period, but were not processed prior to the preparation of this Application, Houlihan Lokey reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

## SUMMARY OF FINANCIAL SERVICES RENDERED

27.     Since Houlihan Lokey was first engaged on April 4, 2020, Houlihan Lokey has worked diligently on the matters for which it was engaged and, as a result, is uniquely situated to advise the Debtors. The Debtors chose Houlihan Lokey to act as their investment banker because,

---

[1] Amount includes the application of the $3,636.90 outstanding balance of the pre-petition expense retainer

*inter alia*, Houlihan Lokey has substantial experience providing financial restructuring and lawn and garden industry investment banking services and other relevant expertise.

28.     Houlihan Lokey respectfully submits that its services throughout the First Interim Fee Period warrant this Court's approval of its requested fees and expenses, including the payment of the 20% "hold-back" of the First Interim Fees.

29.     During the First Interim Fee Period, Houlihan Lokey's work on behalf of the Debtors culminated in the Section 363 sale of substantially all of the Debtors' assets to an affiliate of KPS Capital Partners, LP ("KPS") for approximately $870 million, including $491 million of cash, the assumption of approximately $315 million of liabilities, the exclusion of approximately $64 million of assets that may be monetized by the Debtors or used to satisfy outstanding liabilities and the retention of nearly all of the Debtors' employees. The total consideration represents a premium value based on the estimated Adjusted EBITDA of the Debtors and their non-debtor subsidiaries of $6 million in FY20 and $35 million in FY21. Notably, Houlihan Lokey and the Debtors also negotiated a global settlement among the Debtors, the Committee, the Pension Benefit Guaranty Corporation, KPS and the lenders under the pre-petition revolving credit agreement (the "Global Settlement"), which satisfied a key condition to closing the Sale Transaction, increased recoveries to unsecured creditors through concessions from numerous parties and addressed issues raised by the Debtors' largest creditors, resulting in essentially a fully-consensual sale hearing and paving the way for a consensual chapter 11 plan. Additional information regarding Houlihan Lokey's work during the pre-petition period and the First Interim Fee Period is available in the declarations of William Peluchiwski [Docket Nos. 459 and 630], Reid Snellenbarger [Docket No. 53-1] and Jeffrey Lewis [Docket No. 36].

30.     During the First Interim Fee Period, Houlihan Lokey's work on behalf of the Debtors has been divided into six separate categories of work, as follows:

a)        Due Diligence, Analysis and Review

b)        Asset Sale Discussions, Sale Process Outreach and Related Matters

c)        Correspondence with Debtors and Debtors' Advisors

d)        Court Hearings, Meetings and Discussions with Parties-in-Interest

e)        Correspondence with Creditors and Creditors' Advisors

f)        Administrative

**A.**     **Due Diligence, Analysis and Review.** Houlihan Lokey has expended considerable time and effort supporting and coordinating the due diligence performed by parties-in-interest. This included a review of operations, assets, employees and other matters, as well as corresponding liabilities, responding to due diligence information requests received from interested parties, analyzing and synthesizing information provided by the Debtors and managing a virtual data room. During the First Interim Fee Period, Houlihan Lokey worked with management to provide brand-level financial and operational information to potential buyers to facilitate the submission of bids for specific brands in addition to bids for the entire business.

**B.**     **Asset Sale Discussions, Sale Process Outreach and Related Matters.** Houlihan Lokey continued discussions with potential buyers regarding the stalking horse stock and asset purchase agreement effective as of July 19, 2020 and amended as of September 18, 2020 (the "SAPA"), bid procedures and the overbid process to facilitate the submission of qualified bids. During the First Interim Fee Period, Houlihan Lokey solicited approximately 200 parties and distributed a summary of key financial and operational terms of the SAPA as well as a summary of requirements and key dates in the bid procedures. Houlihan Lokey prepared and provided to the stalking horse bidder the Estimated Closing Statement (as defined in the SAPA) for the purposes of calculating the purchase price adjustment related to working capital pursuant to the SAPA, created an analysis of certain of the Debtors' joint venture interests in support of right-of-first-refusal

11

requirements under the SAPA, analyzed post-petition bids received, facilitated meetings with management and other personnel of the Debtors and assisted with transaction documentation and transaction closing preparations.

   **C. Correspondence with Debtors and Debtors' Advisors.** Houlihan Lokey engaged in extensive correspondence and calls with the Debtors' management, board, counsel, and the Debtors' other advisors in these Chapter 11 Cases, as well as significant preparations related to such communications. In addition, Houlihan Lokey provided periodic situational updates to the Debtors. During these updates, Houlihan Lokey reported on the status of the sale process, feedback from parties-in-interest, and the status of diligence and other process-related issues. Houlihan Lokey spent considerable time exploring and evaluating various potential outcomes and strategies for the sale process along with the Debtors' other advisors. Following the closing of the sale transaction, Houlihan Lokey prepared an analysis of the recoveries to unsecured creditors pursuant to a Plan of Reorganization that was included in the Debtors' disclosure statement [Docket No. 1067]; Houlihan Lokey updated this analysis for inclusion in the amended disclosure statement [Docket No. 1212].

   **D. Court Hearings, Meetings and Discussions with Parties-in-Interest.** Houlihan Lokey virtually attended court hearings and depositions and provided expert testimony in the Debtors' Chapter 11 Cases in addition to engaging in correspondence and preparation for meetings and calls with various parties-in-interest in these Chapter 11 Cases.

   **E. Correspondence with Creditors and Creditors' Advisors.** Houlihan Lokey engaged in extensive correspondence and calls with the Debtors' creditors, including the ad hoc group of senior secured noteholders (the "Ad Hoc Group"), the Committee and the lenders under the Debtors' debtor-in-possession financing facility and each of these creditors' advisors. Houlihan Lokey continued to support diligence requests and conduct analyses to facilitate the submission of an alternative transaction proposal from the Ad Hoc Group. For example, Houlihan

Lokey prepared an illustrative analysis that estimated the financial profile and funding requirements for the assets for which bids were not received and around which a potential investor could have sponsored a Plan of Reorganization. Houlihan Lokey also engaged in discussions with the Committee regarding topics including: the structure of the sale and overbid process; discussion of the Debtors' business, investment merits/risks and broader industry dynamics; the bids received; recoveries to unsecured creditors; and other such matters pertaining to the Debtors' business. In addition, Houlihan Lokey prepared key analyses to support the negotiation of the Global Settlement.

   **F.**  **Administrative**. Houlihan Lokey expended time on administrative matters including, but not limited to, preparing the Retention Application, disclosing relationships with parties-in-interest and tracking expenses. Houlihan Lokey has also coordinated any such services performed at the Debtors' request with services of any other advisors and counsel, as appropriate, in an effort to avoid duplication of efforts.

<u>**STATEMENT OF HOULIHAN LOKEY**</u>

31.  The professional services and related expenses that are the subject of this Application were rendered and incurred in connection with this case, and in discharge of Houlihan Lokey's professional responsibilities as investment banker for the Debtors in these Chapter 11 Cases. Houlihan Lokey's services have been substantial, necessary and beneficial to the Debtors in these Chapter 11 Cases Houlihan Lokey believes that the fees and expenses requested by this Application are reasonable and necessary given the variety and complexity of the issues involved in this case, the need to act or respond on an expedited basis to those issues and are contemplated by the Bankruptcy Code and this Court's Retention Order.

<u>**ACTUAL AND NECESSARY EXPENSES OF HOULIHAN LOKEY**</u>

32.  As set forth in <u>**Exhibit C**</u> hereto, Houlihan Lokey has disbursed $1,814.75 as expenses incurred in providing professional services during the First Interim Fee Period. Houlihan

Lokey's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. These expenses are routinely billed to and paid by Houlihan Lokey's clients, who recognize the efficiency of having a few professionals working long hours, with increased disbursements, as opposed to larger and less efficient teams.

33.    Each of these categories of expenses does not exceed the maximum rate set by the Local Guidelines. These charges are intended to cover Houlihan Lokey's direct operating costs, which costs are not incorporated into Houlihan Lokey's monthly fee. Only clients who actually use services of the types set forth in **Exhibit C** are separately charged for such services.

34.    Houlihan Lokey has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were absolutely necessary, reasonable and justified under the circumstances to enable Houlihan Lokey to serve the needs of the Debtors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

35.    Section 328 of the Bankruptcy Code provides for interim compensation of professionals subject to the substantive standards of 11 U.S.C. § 330 to govern the Court's award of such compensation. See 11 U.S.C. § 328. Section 330 provides that a court may award a professional employed under 11 U.S.C § 328 "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." See 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . , the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)      the time spent on such services;

(B)      the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3)

36.      Here, Houlihan Lokey respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for, beneficial to, and in the best interests of, the Debtors. During the First Interim Fee Period, Houlihan Lokey worked diligently to maximize the value of the Debtors' estates for the benefit of all stakeholders. The services rendered by Houlihan Lokey were consistently performed in a timely manner commensurate with the complexity, importance and nature of the issues involved.

37.      Houlihan Lokey has a national reputation for its expertise and experience in financial and bankruptcy reorganizations and restructurings, and as noted above, the compensation is reasonable based on customary compensation charged by other practitioners in non-bankruptcy cases. Based on an application of the above factors and its compliance with the Local Guidelines, Houlihan Lokey respectfully submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to the Debtors and, accordingly, that approval of the compensation sought herein is warranted.

Case 20-43597    Doc 1492    Filed 12/18/20    Entered 12/18/20 18:19:03    Main Document
Pg 16 of 22

**NOTICE**

38.     Notice of this Application has been provided in accordance with the Local Bankruptcy Rules and Local Guidelines.

**CONCLUSION**

WHEREFORE, Houlihan Lokey respectfully requests that the Court enter an order (i) awarding Houlihan Lokey the interim allowance of (a) fees for the First Interim Fee Period in the aggregate amount of $19,439,332.85 and (b) the reimbursement for actual and necessary expenses incurred by Houlihan Lokey during the First Interim Fee Period in the amount of $1,814.75; (ii) authorizing and directing the Debtors to pay Houlihan Lokey $3,847,553.47, representing all unpaid amounts for the First Interim Fee Period; and (iii) granting such other relief as is just and proper.


Dated: December 18, 2020

                                           Respectfully submitted,

                                           HOULIHAN LOKEY CAPITAL, INC

                                           */s/ Reid Snellenbarger*
                                           Reid Snellenbarger

                                           111 South Wacker Drive
                                           37th Floor
                                           Chicago, IL 60606
                                           (312) 456-4722

                                           Investment Banker to the Debtors and
                                           Debtors-in-Possession

# EXHIBIT A

## CERTIFICATION OF REID SNELLENBARGER

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| --------------------------------------------------------- | x | |
| | : | |
| **In re** | : | **Chapter 11** |
| | : | |
| **BRIGGS & STRATTON** | : | **Case No. 20–43597-399** |
| **CORPORATION,** *et al.*, | | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| --------------------------------------------------------- | x | **Obj. Deadline: January 13, 2020 at 4:00 p.m. (CT)** |

### <u>CERTIFICATION OF REID SNELLENBARGER</u>

I, Reid Snellenbarger, pursuant to 28 U.S.C. § 1746, certify as follows:

1.      I am a Managing Director of Houlihan Lokey Capital, Inc., investment banker to
the Debtors, in the above-captioned matter. I submit this Certification in connection with the
First Interim Fee Application of Houlihan Lokey as Investment Banker to the Debtors for
Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual
and Necessary Expenses Incurred for the Period of July 20, 2020 through October 31, 2020 (the
"<u>Application</u>").

2.      In accordance with 18 U.S.C. section 155 and the Rules of this Court, neither I nor
any member of my firm has entered into any agreement, written or oral, express or implied, with
the Debtors, any creditor, or any other party in interest, or any attorney of such person, for the
purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid
from the assets of the Debtors.

3.      In accordance with section 504 of the Bankruptcy Code, no agreement or
understanding exists between me, my firm or any member thereof, on the one hand, and any

other person, on the other hand, for the division of such compensation as my firm may receive

from the Court herein, nor will any division of fees prohibited by section 504 of the Bankruptcy

Code be made by me, or any member my firm.

4.     I have reviewed the requirements of Local Rules 2016-1 and 2016-2 of the United

States Bankruptcy Court for the Eastern District of Missouri and certify to the best of my

knowledge and belief that this Application complies with Local Rules 2016-1 and 2016-2.

I certify, under penalty of perjury, that the foregoing statements made by me are true

to the best of my knowledge, information, and belief.

Dated: December 18, 2020

*/s/ Reid Snellenbarger*
Reid Snellenbarger
Managing Director
Houlihan Lokey Capital, Inc.

# EXHIBIT B

## HOULIHAN LOKEY PROFESSIONALS

- William Peluchiwski – Senior Managing Director
- Reid Snellenbarger – Managing Director
- Mark Honorowski – Managing Director
- Jeffrey Lewis – Director
- Ed Chapman – Director
- Shevon Newman – Senior Vice President
- Brian Marks – Vice President
- Niclas Niemeyer – Vice President
- Dan Diorio – Associate
- Conor Colpoys – Associate
- Zachary Thomas – Analyst
- Mark O'Meara – Analyst
- Rahul Mital – Analyst

# EXHIBIT C

## EXPENSE DETAIL

| EXPENSE CATEGORY | AMOUNT |
|---|---|
| Ground Transportation | $94.00 |
| Overtime Meals | $783.96 |
| Telephone and Data | $936.79 |
| **TOTAL** | **$1,814.75** |

Case 20-43597    Doc 1492    Filed 12/18/20    Entered 12/18/20 18:19:09    Main Document
Pg 22 of 22

# EXHIBIT D

## SALE TRANSACTION FEE DETAIL

| | | Sep. Fee Stmt (Nov. 12, 2020) | Changes | Interim Fee App (Dec. 4, 2020) | Notes |
|---|---|---|---|---|---|
| 2.3(a) | **Consideration** | | | | |
| (i) | Cash Purchase Price | $ 550,000,000 | $ - | $ 550,000,000 | |
| (ii), (iii) | (+ / -) Estimated Acquired Entity Net Working Capital[1] | (1,599,569) | 2,463,251 | 863,682 | |
| (iv), (v) | (+ / -) Estimated Seller Net Working Capital[1] | (36,971,091) | (1,941,868) | (38,912,959) | |
| (vi), (vii) | (+ / -) Estimated Acquired Entity Cash Equivalents[1] | | | | |
| (viii), (ix) | (+ / -) Estimated Acquired Entity Indebtedness[1] | 30,813 | (1,212,200) | (1,181,387) | |
| (x) | (-) Specified Letters of Credit | (18,340,000) | - | (18,340,000) | |
| (xi) | (-) Pension Contribution Amount | (1,600,000) | - | (1,600,000) | |
| (xii) | (-) Estimated Severance and Vacation Amount | (250,000) | | (250,000) | |
| | Consideration Prior to Assumed Liabilities and Excluded Assets | 491,270,153 | (690,817) | 490,579,336 | |
| 1.1 | Assumed Liabilities[2] | 314,846,090 | 148,426 | 314,994,515 | |
| 1.1 | Excluded Assets[3] | 61,874,565 | 2,196,011 | 64,070,576 | Reflects Debtors' cash balance as of the Sale Transaction closing plus the Debtors' estimate of proceeds from the monetization of Excluded Assets |
| | **Aggregate Gross Consideration ("AGC")** | $ 867,990,808 | $ 1,653,621 | $ 869,644,428 | |
| | **Sale Transaction Fee** | | | | |
| | Base Fee | | | | |
| | AGC up to $550 Million [1.25%] | $ 6,875,000 | $ - | 6,875,000 | 1.25% of the AGC up to $550 million |
| | AGC > $550 Million [3.00%] | 9,539,724 | 49,609 | 9,589,333 | 3.00% of the AGC in excess of $550 million |
| | **Sale Transaction Fee (Before Credits)** | 16,414,724 | 49,609 | 16,464,333 | |
| | (-) Credits[4] | (175,000) | (100,000) | (275,000) | Reflects credit of (i) 50% of Amendment Transaction Fees and (ii) 50% of October Monthly Fee |
| | **Sale Transaction Fee** | $ 16,239,724.23 | $ (50,391.38) | $ 16,189,332.85 | |

Note: Terms above have the meaning ascribed to them in the Stalking Horse Stock and Asset Purchase Agreement, as amended

(1) The amount of the Sale Transaction Fee included in the September Monthly Fee Statement was based on the Estimated Closing Statement submitted by the Sellers prior to the closing of the Sale Transaction. The updated amount of the Sale Transaction Fee included in the First Interim Fee Application is based on the Final Closing Statement submitted by the Buyer 60 days post-closing of the Sale Transaction.

(2) Changes reflect additional Cure Costs assumed by the Buyer based on (i) modifications to existing Cure Costs and (ii) additional contracts added to list of assumed contracts

(3) Changes reflect the Exmark Settlement Agreement as described in Docket No. 1316 and the proceeds from the surrender of life insurance policies as described in Docket No. 1338

(4) Credits associated with Monthly Fees after the First Interim Fee Period will be reflected in Monthly Fee Statements submitted by Houlihan Lokey