IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF NEW JERSEY

IN RE:                             .        Case No. 23-12825(MBK)
                                   .
                                   .
LTL MANAGEMENT LLC,                .
                                   .        U.S. Courthouse
            Debtor.                .        402 East State Street
                                   .        Trenton, NJ 08608
                                   .
                                   .        December 21, 2023
. . . . . . . . . . . . . . . . .  .        11:31 a.m.


    TRANSCRIPT OF DEBTOR'S MOTION PURSUANT TO BANKRUPTCY RULES 9023
  AND 9024 FOR AMENDMENT OR RECONSIDERATION OF THE ORDER AWARDING
                 DISCRETIONARY BONUS TO HOULIHAN LOKEY
            BEFORE THE HONORABLE MICHAEL B. KAPLAN
          UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


TELEPHONIC APPEARANCES:

For the Debtor:              Jones Day
                             By:  DAN B. PRIETO, ESQ.
                             2727 North Harwood Street,
                                  Suite 500
                             Dallas, TX  75201

                             Wollmuth Maher & Deutsch LLP
                             By:  JAMES N. LAWLOR, ESQ.
                                  JOSEPH F. PACELLI, ESQ.
                             500 Fifth Avenue
                             New York, NY  10110




Audio Operator:              Kiya Martin

Proceedings recorded by electronic sound recording, transcript
           produced by transcription service.
_____

                 **J&J COURT TRANSCRIBERS, INC.**
                    **268 Evergreen Avenue**
                  **Hamilton, New Jersey 08619**
                  **E-mail:  jjcourt@jjcourt.com**

           **(609) 586-2311   Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

For Ad Hoc Committee of        Brown Rudnick
Certain Talc Claimants and     By:  SUNNI P. BEVILLE, ESQ.
Ad Hoc Committee of            One Financial Center
Creditors:                     Boston, MA  02111


                          - - -

3

 1         THE COURT:  Good morning, everyone.  Judge Kaplan.

 2  And we will address the LTL Management fee dispute this

 3  morning.  So we have the debtor's motion for reconsideration

 4  and we had opposition filed and we've had a reply.  Let me

 5  start with -- and this is all relative to the fees of Houlihan

 6  Lokey as approved by the Court in its prior fee award.

 7         Let me turn to debtor's counsel and have you start.

 8  Bring us up to date.

 9         MR. LAWLOR:  Your Honor, it's James Lawlor and Joseph

10  Pacelli from Wollmuth Maher & Deutsch on behalf of LTL.  Mr.

11  Pacelli is going to address the motion.  I also believe Dan

12  Prieto from Jones Day is on the line as well.

13         THE COURT:  All right, thank you.

14         Mr. Pacelli?

15         MR. PACELLI:  Good morning, Your Honor.  Joseph

16  Pacelli of Wollmuth Maher & Deutsch on behalf of the debtor.

17         THE COURT:  Good morning.

18         MR. PACELLI:  Sorry to take up your time for

19  something that is actually quite simple from the debtor's

20  perspective.  Simply put, there's a mistake in the award of the

21  discretionary bonus to the TCC's and Houlihan's -- due to the

22  TCC's and Houlihan's failure to adhere to the court-approved

23  mathematical formula in Houlihan's engagement agreement.

24         This issue was raised and argued mainly in letters

25  filed with the Court.  It was many of many and it appears the

1 Court overlooked it.  Perhaps the generalized claims by the

2 applicant that the request was already a, quote unquote, net

3 number mistakenly convinced the Court that the required steps

4 had been taken.  But they were not an it resulted in the

5 material and obvious mistake that Your Honor can easily correct

6 by applying the formula that this Court approved but Houlihan

7 refuses to apply and this is the type of error that Rules 59(e)

8 and 60(b) were designed to remedy.

9         The TCC and Houlihan have admitted they did not use

10 the engagement agreement formula.  For example, if you look at

11 the explanation and the TCC's amended response to the debtor's

12 objection to Houlihan's final fee application at Docket Number

13 1514, it identifies our method for calculation of the bonus but

14 that calculation does not include a credit for 50 percent of

15 monthly fees.  Specifically, the Committee stated that Houlihan

16 initially sought a $2.3 million fee, quote, which was

17 calculated as approximately the $850,000 in fee concessions

18 across both cases plus 50 percent of the $3 million deferred

19 fee that would have been payable had a plan of reorganization

20 been consummated with respect to the debtor, end quote.

21         This is the only calculation that Houlihan and the

22 TCC admit on the basis of the Committee's business judgment

23 which the debtor maintains is not the proper standard but is

24 not an issue for today but more importantly, also the basis for

25 Your Honor's mistake in ruling.  I anticipate that they will

5

1  continue to argue that the use of the word "net" means it was

2  included, but net of what?  Using the word "net" does not allow

3  Houlihan and the Committee to pretend the credit was included

4  when it was clearly wasn't based on their statements.

5        Full calculation was never disclosed by the Committee

6  which we suspect is because it wasn't followed and likely was

7  never even presented to the Committee based on Mr. Burian's

8  November 9th e-mail.  Their math just doesn't add up.  To find

9  otherwise and ignore the credit would render a material term of

10 Houlihan's engagement agreement meaningless.  There is no

11 credible argument that allows the TCC and Houlihan to disregard

12 the engagement agreement and avoid the application of the

13 credit.  Either the credit was never applied or Houlihan's

14 initial ask was nearly $3 million.  If the former is true, then

15 the credit should be applied now.  If the latter is true, then

16 this Court was misled as to the Committee's purported exercise

17 of its business judgment and approval of the bonus was

18 fundamentally flawed.

19      Your Honor should correct the defect caused by either

20 situation by applying the credit in accordance with the terms

21 of Houlihan's engagement.  Debtor respectfully requests that

22 Your Honor correct this obvious computational error by amending

23 the order under Rule 59(e) to prevent manifest injustice and/or

24 under 60(b) to correct the mistake.  Thank you, Your Honor.

25      THE COURT:  Thank you, Mr. Pacelli.

6

1          Ms. Beville, will you be arguing?

2          MS. BEVILLE:  I will be.  Thank you, Your Honor.

3          THE COURT:  Thank you.

4          MS. BEVILLE:  So, Your Honor, I would just like to

5  reiterate the position taken in our papers that this issue has

6  already been litigated.  The debtor acknowledges that the issue

7  was already briefed, it was already argued and Your Honor

8  already entered its order on these issues.  The debtor cannot

9  act now as if these issues weren't previously raised and

10 addressed.  It raised those issues and the Court entered the

11 order notwithstanding its objections.

12         The standards for reconsideration, Your Honor, are

13 very clear in the Third Circuit and they simply are not

14 satisfied here.  Under the standard articulated by the Third

15 Circuit, and I cite to 591 F.3d 666, Third Circuit decision in

16 2010, Your Honor, there is no change in controlling law, there

17 is no new evidence that has become available.  And contrary to

18 the debtor's assertion, there is no manifest injustice or clear

19 error of law.

20         The debtor is suggesting, Your Honor, that you made a

21 mistake, that you didn't understand the order that you entered

22 and that the order that you entered was approving an amount

23 that was actually to be paid to Houlihan.  It was the amount

24 actually to be received by Houlihan.  But, Your Honor, I don't

25 believe that is true.  I believe that the facts were on the

1 record and the order was entered appropriately.

2          Your Honor, this was a subject of weeks of

3 litigation, numerous submissions to the Court both before the

4 hearing, during the hearing and after the hearing with several

5 letters of submission.  The debtor did raise this issue in its

6 submissions and the TCC responded.

7          Let me just back up a little bit here.  There is a

8 technical mechanics for calculation of a discretionary fee in

9 the retention agreement.  There's no dispute about that.  The

10 TCC acknowledged that in its papers.  The TCC also noted in its

11 papers that that calculation was, in fact, done.  But as a

12 business matter, Your Honor, the TCC was not focused on a

13 headline number.  The TCC was focused on the amount actually to

14 be paid to Houlihan.

15          Under the retention agreement the TCC was charged

16 with determining what additional compensation would be paid to

17 Houlihan as a result of its efforts in the case.  So naturally,

18 as a result of that, Your Honor, the TCC's negotiations with

19 Houlihan focused on the amount of additional compensation that

20 would be paid to Houlihan.

21          Your Honor, in every pleading that we made with you

22 and the letter submission it was very clear that it was a net

23 amount that was being disclosed to the Court.  The TCC did not

24 withhold any information, Your Honor.  The pleadings and

25 submissions have always been consistent.  And while the debtor

1 at times has mocked the use of our term net discretionary fee,

2 that's the amount that was approved, Your Honor.

3         At the hearing Your Honor asked Mr. Jonas

4 specifically about the imputed hourly rates that would be

5 essentially awarded to Houlihan if the discretionary fee were

6 approved.  Your Honor, the math that was done at that hearing

7 was using the amounts actually paid to Houlihan.  As a

8 practical matter, it would have been meaningless to do that

9 math on any number other than the amount that would actually be

10 received by Houlihan.  We have always been talking about the

11 amount actually to be received by Houlihan.  And from a

12 practical standpoint, Your Honor, if we were to now take a

13 further deduction, double deduction of the monthly fees, the

14 imputed hourly rate for Houlihan would be the lowest hourly

15 rates of any professional, junior associates or otherwise in

16 these cases.

17         And, Your Honor, the debtor is very aware of this

18 issue.  This is not a mistake.  It is not a miscalculation.  It

19 is not a failure to abide by the terms of the retention

20 agreement.  The debtor raised this very issue in its letter to

21 the Court dated November 3rd at Docket Number 1567.  And, Your

22 Honor, just to be clear, I just want to read specifically from

23 that letter.  It says finally, Houlihan's calculation for its

24 request is at odds with the terms of its own retention.  That's

25 exactly that argument you're hearing today, Your Honor.  That

1 argument has been heard, has been responded to by the TCC and

2 was overruled by the Court.

3         The TCC again responded that the $1.8 million that

4 was offered at that time was net of any credits due.  And again

5 the debtor raised this issue on November 9th in an e-mail to

6 TCC's counsel.  Your Honor, that e-mail exchange was attached

7 to our objection to the motion for reconsideration at Docket

8 Number 1612.  And in that e-mail, Your Honor, the debtor again

9 raised this issue.  Does the Houlihan discretionary fee include

10 the 50 percent credit against monthly fee statement amounts or

11 will it be reduced after the amount is awarded in accordance

12 with the footnote in Houlihan's fee application to which Saul

13 Burian of Houlihan immediately and unequivocally responded that

14 the 1.75 million discretionary fee award is net of all credits.

15         Your Honor, this exchange occurred before your order

16 was entered by the Court.  The debtor never responded to that

17 e-mail.  Two weeks passed and the order awarding the

18 discretionary fee, net discretionary fee of $1.75 million was

19 awarded to Houlihan.  And it was on November 28th, Your Honor,

20 nearly a month after receiving the e-mail from TCC that the

21 debtor responds that there was a miscalculation of our

22 discretionary fee and it was filing the motion for

23 reconsideration.

24         And then, Your Honor, you saw the motion for

25 reconsideration, you saw our response.  I don't need to repeat

10

1 all of that here.  But respectfully, Your Honor, this is not a

2 motion for reconsideration.  There is nothing new here, Your

3 Honor.  There is nothing unknown that has since become known.

4 Your Honor did not make a mistake.  TCC did not withhold any

5 information.  The Court -- Your Honor rendered your decision on

6 the amount of the net discretionary fee to be paid to Houlihan.

7 The debtor must now abide by it.

8         Your Honor, the TCC respectfully requests that you

9 deny the motion for reconsideration.  I'm available to answer

10 any questions that you may have.

11         THE COURT:  All right, thank you.

12         Does anyone else wish to be heard?

13                 (No audible response)

14         Mr. Burian, you're holding your tongue?

15         MR. BURIAN:  On the advice of counsel, Your Honor.

16         THE COURT:  Smart counsel.

17         All right.

18         MR. PACELLI:  Your Honor, if I may just --

19         THE COURT:  Yes.

20         MR. PACELLI:  -- quickly just --

21         THE COURT:  Yes.

22         MR. PACELLI:  -- respond to a few points made by Ms.

23 Beville?

24         I think that this is a clear case.  There's many

25 similarities between this case and In re Energy Future Holdings

11

1 which is 575 B.R. 616.  In that case the Court granted

2 reconsideration regarding a termination fee because the

3 underlying record was confusing and incomplete and that's

4 exactly what happened here.

5       I mean if you add up the numbers in their stated Ad

6 Hoc calculation, it yields a total of $2.35 million.  Taking

7 their calculation and thinking about it as a ledger, on one

8 side you have debits and on the other side you have credits.

9 Here, the debits are 850,000 for concessions and $1.5 million

10 for the deferred fee.  Houlihan apparently only asked for 2.3.

11 This was the starting point, not some higher amount.

12       On the other side you should have the credit for

13 monthly fees of over $680,000 but the credit for monthly fees

14 is not part of their equation because if it was, there would

15 need to be an additional debit to get to the $2.3 million

16 initial ask.

17       On October 18th Mr. Burian told this Court that

18 Houlihan initially asked for 2.3 million and explained their

19 calculation.  Houlihan didn't ask for 2.3 million plus

20 $680,000.  Rather, Mr. Burian stated, quote, we asked for 2.3

21 million.  We thought 50 percent of our disclosed deferred fee

22 plus the amount of money that we had given in fee concessions

23 between the two cases, roughly $850,000 was fair, end quote.

24       And with that, the debtor respectfully requests that

25 Your Honor correct this obvious computational error by amending

12

1 the order to prevent manifest injustice or to correct the

2 mistake.  Thank you.

3         THE COURT:  All right, thank you, counsel.

4         MS. BEVILLE:  Your Honor?

5         THE COURT:  Yes, Ms. Beville?

6         MS. BEVILLE:  Could I respond?  Do you mind?  I'll

7 just take a moment.

8         THE COURT:  That's fine.

9         MS. BEVILLE:  I understand the debtor raised this

10 argument in its reply as well.  Your Honor, the testimony from

11 Saul Burian and the submissions in the TCC's reply and letter

12 submissions all went to the amount that was to be paid by

13 Houlihan.  To be clear, Your Honor, when Houlihan entered into

14 negotiations with the TCC, there was an understanding that

15 there was a headline number and that there were monthly fee

16 credits to be reduced.  But the number that was negotiated,

17 Your Honor, was the amount to be received by Houlihan.  We

18 could do the technical requirements of showing you that now,

19 but at the end of the day, Your Honor, the approval with us is

20 not to be received by Houlihan.  There was nothing incorrect

21 about the testimony provided by Houlihan, Your Honor.

22         THE COURT:  All right, thank you.

23         All right, so it appears that after about $179

24 million or so in professional fees over two cases we're down to

25 maybe the last half million in dispute.  One would hope that we

13

1  didn't need to get here.

2        In reviewing the engagement letter, Paragraph 6 of

3  the engagement letter, the proposed fee arrangement for

4  Houlihan Lokey was comprised of essentially four parts, a

5  monthly fee of $400,000 for each of the first four months, a

6  monthly fee of $175,000 for each month thereafter, a $3 million

7  deferred fee payable upon consummation of a plan against which

8  there were no offsets, no credits.  The 50 percent mechanism

9  was not going to be applied to that.  And then fourth, on top

10  of all that, a discretionary fee, an open-ended discretionary

11  fee based on the Committee's business judgment against which

12  there would be a 50 percent credit for fees that have been

13  billed if there were a discretionary fee.

14        Taken together, the potential payment to the Houlihan

15  Lokey could have amounted to the 1,363,000 and change hourly

16  fees, a $3 million deferred fee and a discretionary fee if the

17  Court were inclined to grant it and the Committee were inclined

18  to recommend it.  Substantial sums.  The Court took this into

19  account when it urged the parties after seeing the requested

20  fees to go back and see if there can be compromises made.

21        I did not view the proposed compromises as being

22  reflective of the mechanics of the engagement letter.  It did

23  not and would not surprise me, and I know Mr. Burian, that if

24  Houlihan Lokey were moving away from the potential of a $3

25  million success fee we'll call it or on consummation of a plan

14

1  and moving away from that potential recovery, that there

2  wouldn't be an adjustment as far as the amounts to be

3  discounted against the awarded hourly fees as part of any

4  negotiated resolution.

5         To be clear, I viewed the negotiated resolution, the

6  compromise to be a total sum to be paid, taking into account

7  all of the subparts.  That reflected my questioning, my

8  comparison to hourly rates and my expectations.  And in

9  fairness I did not see the initial proposal of a $2 million

10  discretionary fee to be proper reflecting the risks and the

11  status of the case.  So, I urged further compromise and it was

12  brought out at 1.8 and even against that I thought there should

13  be a further reduction down to a million 750.  That is the

14  amount that I expected to be paid on top of the hourly fees.

15  At no point did the Court consider that there would be credits

16  applied because the Court viewed the whole process as a give

17  and take, a restructuring of the initial agreement into

18  something that was more palatable.

19         The Court is not going to reconsider its award,

20  stands by its earlier decision, understands the debtor's

21  frustration but also understands that there were meaningful

22  compromises made and even calculating a discounted

23  discretionary fee and to go back into how that was calculated

24  specifically serves no purpose since the award contemplated by

25  the Court was to be the amount so received in total.

15

1          For those reasons the Court is going to deny the

2   motion for reconsideration.  I thank counsel.

3          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

6          MR. BURIAN:  Your Honor, thank you very, very much

7   and happy holidays and Happy New Year.  Just in case there's

8   further litigation, I think the Court meant to say monthly fees

9   and discretionary fee.  The billable rates were presented as

10  part of argument.

11         THE COURT:  Right.

12         MR. BURIAN:  But they were monthly fees, just to

13  clear the record.

14         THE COURT:  We should have a clear record before

15  we're back here again at another time.  But yes, I agree.

16         So, I wish everybody happy holidays, and who knows

17  when I'll see you all again.

18         UNIDENTIFIED ATTORNEY:  Happy holidays.

19         UNIDENTIFIED ATTORNEY:  Happy holidays, Your Honor.

20         THE COURT:  Happy holidays.  Take care.

21         UNIDENTIFIED ATTORNEY:  Thank you.

22         UNIDENTIFIED ATTORNEY:  Some of us you can't get away

23  from, Your Honor.

24         THE COURT:  As much as I try.

25         All right, thank you.  Take care.

16

1          UNIDENTIFIED ATTORNEY:   Thank you.

2          UNIDENTIFIED ATTORNEY:   Thank you.

3                          * * * * *

4                    **C E R T I F I C A T I O N**

5          I, MARY POLITO, court approved transcribers, certify

6   that the foregoing is a correct transcript from the official

7   electronic sound recording of the proceedings in the above-

8   entitled matter, and to the best of my ability.

9

10  /s/ Mary Polito

11  MARY POLITO

12  J&J COURT TRANSCRIBERS, INC.        DATE:   December 22, 2023

13

14

15

16

17

18

19

20

21

22

23

24

25