UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 23-2971 and 23-2972
_____

IN RE: LTL MANAGEMENT LLC,

Debtor

LTL Management LLC,

Appellant in No. 23-2971


IN RE: LTL MANAGEMENT, LLC,
Debtor

Ad Hoc Committee of Supporting Counsel,

Appellant in No. 23-2972

_____

Appeal from the United States Bankruptcy Court
for the District of New Jersey
(Bankruptcy Court No. 23-bk-12825)
Bankruptcy Judge: Honorable Michael B. Kaplan
_____

Submitted under Third Circuit L.A.R. 34.1(a)
on July 17, 2024

**<u>JUDGMENT</u>**

These cases came to be heard on the record from the United States Bankruptcy

Court and were submitted under Third Circuit L.A.R. 341(a) on July 17, 2024.

On consideration whereof,

IT IS ORDERED AND ADJUDGED by this Court that the order of the United States Bankruptcy Court entered August 11, 2023, is hereby **AFFIRMED**.

Costs will be taxed against appellants.

All of the above in accordance with the Opinion of this Court.

ATTEST:

s/ Patricia S. Dodszuweit
Clerk

Dated: July 25, 2024

**Certified as a true copy and issued in lieu of a formal mandate on** August 19, 2024

**Teste:** *Patricia A Dodszuweit*
**Clerk, U.S. Court of Appeals for the Third Circuit**

OFFICE OF THE CLERK

**PATRICIA S. DODSZUWEIT**

**CLERK**



UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106-1790

Website: www.ca3.uscourts.gov

TELEPHONE
215-597-2995

August 19, 2024

Ms. Jeanne A. Naughton
United States Bankruptcy Court for the District of New Jersey
Martin Luther King Jr. Federal Building & United States Courthouse
50 Walnut Street
Newark, NJ 07102

RE: In re: LTL Management LLC
Case Numbers: 23-2971, 23-2972
District Court Case Number: 23-bk-12825
District Court Case Numbers: 3-23-cv-10979, 3-23-cv-17597

Dear District/Bankruptcy Clerk

Enclosed herewith is the certified judgment together with copy of the opinion or certified copy of the order in the above-captioned case(s). The certified judgment or order is issued in lieu of a formal mandate and is to be treated in all respects as a mandate.

Counsel are advised of the issuance of the mandate by copy of this letter. The certified judgment or order shows costs taxed, if any.

Very truly yours,
Patricia S. Dodszuweit, Clerk


By: s/Laurie
Case Manager
267-299-4936
cc: Gregory A. Beck, Esq.
David N. Crapo, Esq.
Noel J. Francisco, Esq.
David C. Frederick, Esq.
Gregory M. Gordon, Esq.

Deepak Gupta, Esq.
Kristopher M. Hansen, Esq.
Sean Janda, Esq.
Ericka F. Johnson, Esq.
Laura D. Jones, Esq.
Peter J. Keane, Esq.
Jeffrey A. Lamken, Esq.
Robert K. Malone, Esq.
C. Kevin Marshall, Esq.
Jonathan S. Massey, Esq.
Kyle P. McEvilly, Esq.
Ariela Migdal, Esq.
Isaac M. Pachulski, Esq.
Gregory G. Rapawy,
Colin R. Robinson, Esq.
Andrew P. Skaras, Esq.
Jonathan E. Taylor, Esq.
Clay Thompson, Esq.
Alex Treiger, Esq.
James R. Zazzali, Esq.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 23-2971 and 23-2972
_____

IN RE: LTL MANAGEMENT LLC,

Debtor

LTL Management LLC,

Appellant in No. 23-2971


IN RE: LTL MANAGEMENT, LLC,
Debtor


Ad Hoc Committee of Supporting Counsel,

Appellant in No. 23-2972

_____

Appeal from the United States Bankruptcy Court
for the District of New Jersey
(Bankruptcy Court No.: 23-bk-12825)
Bankruptcy Judge: Honorable Michael B. Kaplan
_____

Submitted under Third Circuit L.A.R. 34.1(a)
on July 17, 2024

Before: RESTREPO, FREEMAN, and AMBRO, <u>Circuit Judges</u>

(Opinion Filed July 25, 2024)

OPINION[*]

**AMBRO**, <u>Circuit Judge</u>

LTL Management, LLC ("LTL") and the Ad Hoc Committee of Supporting Counsel (the "Ad Hoc Committee") appeal the Bankruptcy Court's decision dismissing LTL's bankruptcy case for want of good faith because it was not in financial distress. For the reasons below, we affirm.

## BACKGROUND

As the parties are familiar with the extensive history of this case, we provide only a summary. Johnson & Johnson sold talc-based products for decades through certain corporate subsidiaries. (Johnson & Johnson and the subsidiaries are collectively referred to hereafter as "J&J.") *In re LTL Mgmt., LLC* ("*LTL I*"), 637 B.R. 396, 400 (Bankr. D.N.J. 2022). Starting in the 2010s, plaintiffs - suffering from mesothelioma or ovarian cancer - began suing J&J on the theory those products contained asbestos and caused their disease. *Id.* at 401. (J&J vigorously disputes this.) After a substantial verdict, the number of suits filed against J&J began to grow rapidly. *Id.*; *see Ingham v. Johnson & Johnson*, 608 S.W.3d 663 (Mo. Ct. App. 2020), *cert. denied,* 141 S. Ct. 2716 (2021). But it had success defending them: J&J "settl[ed] roughly 6,800 talc-related claims for just

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

under $1 billion in total and successfully obtain[ed] dismissals without payment of [more than 1,500] actions." *In re LTL Mgmt., LLC* ("*LTL II*"), 64 F.4th 84, 94 (3d Cir. 2023).

In 2021, J&J sought to use bankruptcy to settle permanently all talc claims - including those resulting from future diagnoses resulting from the lag between asbestos exposure and cancer development. *LTL I*, 637 B.R. at 404. Through a complicated series of corporate transactions, J&J claims to have transferred all talc liability to the newly formed LTL, which received a funding agreement directly obligating J&J to cover LTL's talc liabilities and bankruptcy expenses up to roughly $61.5 billion. *Id.* at 401-04.

LTL promptly filed a Chapter 11 petition under the Bankruptcy Code, 11 U.S.C. § 101 *et seq. Id.* at 402-03. An official committee of talc claimants (the "Talc Committee"), formed as part of the Chapter 11 process, Code § 1102, moved to dismiss LTL's bankruptcy for want of good faith. *Id.* at 403. The Bankruptcy Court denied the motion, concluding that bankruptcy was better for the talc plaintiffs than the tort system, as the former offered the best chance for a prompt and equitable recovery. *Id.* at 429-30.

On appeal, we reversed. *LTL II*, 64 F.4th at 110-11. Well-established Third Circuit caselaw bars a bankruptcy absent financial distress. *Id.* at 104-05; *see NMSBPCSLDHB, L.P., v. Integrated Telecom Express, Inc.* (*In re Integrated Telecom Express, Inc.*), 384 F.3d 108 (3d Cir. 2004); *see also In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999). The evidence before the Bankruptcy Court showed that the funding agreement, "an ATM disguised as a contract," promised amounts "exceed[ing] any reasonable projections available on the record before us" of LTL's future talc liability.

3

*LTL II*, 64 F.4th at 109.  And there was no evidence of other kinds of financial distress. *Id.* (citing *SGL Carbon*, 200 F.3d at 164).

LTL amended the funding agreement hours after its case was dismissed.  *In re LTL Mgmt., LLC* ("*LTL III*"), 652 B.R. 433, 439-40 (Bankr. D.N.J. 2023).  Because the amended funding agreement was promised only by LTL's direct parent (Johnson & Johnson HoldCo (NA) Inc., referred to hereafter as "HoldCo," *id.* at 438)[1], the new funding agreement realistically provided LTL with access to around $30 billion (HoldCo's going concern value), less than half of what J&J offered under the initial funding agreement.  *Id.* at 448.  The chief legal officer of LTL admitted that it agreed to shrink the funding agreement to "resolve the concerns that led the Third Circuit to conclude that [the first LTL bankruptcy] should be dismissed," *i.e.*, to place LTL in financial distress.[2]  App. 231.  With that, LTL filed for Chapter 11 once again.  *LTL III*, 652 B.R. at 439-40.

The Talc Committee moved to dismiss LTL's bankruptcy.  The Bankruptcy Court held a four-day trial.  *Id.* at 441.  Applying our decision in *LTL II*, the Court concluded

---

[1] Johnson & Johnson offered a limited guarantee of HoldCo's obligations under the new funding agreement, which could be accessed only to fund a talc settlement trust pursuant to a bankruptcy plan.  In other words, the new funding agreement does not obligate Johnson & Johnson to support LTL outside bankruptcy.

[2] Because we conclude that LTL's bankruptcy petition fails for want of financial distress, we do not consider Appellees' arguments that LTL's decision to amend the funding agreement in a way that sacrificed more than $30 billion of promised value and limited its recourse to J&J was in bad faith.  We leave that question to the New Jersey District Court considering a complaint on that very subject.  *Love v. LLT Mgmt., LLC*, No. 3:24-cv-06320-MAS-RLS (D.N.J.).

4

that, even with the substantially reduced funding agreement, LTL was still not financially distressed and so was not eligible for bankruptcy. *Id.* at 443-49. We authorized, after a Bankruptcy Court certification, an appeal directly to us under 28 U.S.C. § 158(d)(2). Our jurisdiction is under 28 U.S.C. § 158(d)(2)(A).

## ANALYSIS

We review a bankruptcy court's order dismissing a bankruptcy case for abuse of discretion, *LTL II*, 64 F.4th at 99, which occurs if its factual findings are clearly erroneous or its legal conclusions, reviewed *de novo*, are incorrect. *Id.* A finding of fact is clearly erroneous only if, examining the record as a whole, we conclude "it is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 261 (3d Cir. 2020) (quoting *VICI Racing v. T-Mobile USA, Inc.*, 763 F.3d 273, 283 (3d Cir. 2014)). Whether a bankruptcy petition was filed in good faith is a legal question that gets a fresh review. *LTL II*, 64 F.4th at 100. In addition, we "can affirm a judgment for any reason supported by the record[.]" *Chavarriaga v. N.J. Dep't. of Corr.*, 806 F.3d 210, 223 n.8 (3d Cir. 2015).

A Chapter 11 bankruptcy case can be dismissed if it was not filed in good faith, an issue on which the debtor bears the burden of proof. *LTL II*, 64 F.4th at 100. Good faith is somewhat of a misnomer: "subjective intent" is not determinative; a key question is whether a case serves a "valid bankruptcy purpose[.]" *Id.* at 100-01 (quoting *In re 15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009)). That "'assumes a "debtor in financial distress."'" *Id.* at 101 (quoting *Integrated Telecom*, 384 F.3d at 128).

5

Before the Bankruptcy Court, LTL primarily argued that it will be unable to pay its liabilities "in both the short and long term." *LTL III*, 652 B.R. at 446. The Court was unpersuaded by LTL's theory of short-term costs, finding it was "bottomed on assumptions which are dramatically at odds with the historical run rates as to both trial costs and settlements." *Id.* at 447. As to the long term, it compared LTL's $21 billion "worst-case" estimate for lifetime talc liabilities - extending far into the future - with HoldCo's estimated $22.3 billion "forced liquidation value." *Id.* at 447. Because that value exceeded LTL's worst-case scenario, the Court did not see financial distress. *Id.* at 447-49. While LTL suggested that future verdicts could skyrocket its liabilities beyond its projections, the Bankruptcy Court did not give those unsupported hypotheticals persuasive weight. *Id.* at 448.

On appeal, LTL offers two challenges on the merits of the dismissal of its case: the Bankruptcy Court erred in its factfinding, and, even if it did not, the Court misapplied our decision in *LTL II*.[3] The Ad Hoc Committee, which agreed to support a bankruptcy plan in the second LTL bankruptcy, makes a third argument: even if LTL's filing was in bad faith, the case should not have been dismissed. Finally, LTL challenges procedurally the ability of the Bankruptcy Court to authorize the Talc Committee to litigate the appeal and require LTL to pay the Committee's expenses. None of these arguments persuades us.

---

[3] LTL also argues that *LTL II* was incorrectly decided. But it concedes that decision "is binding" on our panel. LTL Br. 37 n.7. We therefore do not reconsider it. 3d Cir. I.O.P. 9.1 (2018).

6

**Factfinding.**  LTL contests the Bankruptcy Court's findings on overall talc liability.[4]  Specifically, it claims the Court erred by concluding that liability was not greater than $21 billion, which was the high-end estimate of LTL's expert using several "assumptions that likely overstate [its] likely financial exposure."  App. 6212.  The support for LTL's assertion was that the expert's opinion did not consider blockbuster verdicts (thus underestimating LTL's overall exposure), plus the Talc Committee's implied valuation of the talc claims greatly exceeds that number.  That is not enough to persuade us that the Bankruptcy Court clearly erred.  Its conclusion "bears [a] rational relationship to . . . supportive evidentiary data" - the analysis of LTL's own expert.  *Ramsay*, 968 F.3d at 261 (quoting *VICI Racing*, 763 F.3d at 283); *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 186 (3d Cir. 2003).  LTL points to no evidence projecting the likelihood and size of those verdicts, and *LTL II* counseled strongly against authorizing mass-tort bankruptcies absent "reasonable projections" of future liability resulting in insolvency.  64 F.4th at 109.  Hence, we do not fault the Bankruptcy Court for not crediting LTL's speculation about potential massive verdicts.

**Application of *LTL II*.**  LTL contends that the Bankruptcy Court misapplied *LTL II*.  First, it claims that *LTL II* requires a finding of financial distress if a mass-tort defendant believes there is a "likely threat to exhaust available resources[.]"  LTL Br. 18

---

[4]  LTL also challenges the Bankruptcy Court's findings on LTL's short-term cash needs outside bankruptcy and HoldCo's expected dividends.  We need not address those arguments because, even if those Bankruptcy Court's findings were clearly erroneous, LTL was not in financial distress.  *See infra.*

7

(cleaned up). Put differently, it reads that opinion to bless bankruptcy filings if there is a "credible threat" (which is more than an "attenuated possibility") that mass-tort litigation will result in liabilities exceeding the firm's assets. LTL Br. 21 (internal quotation marks omitted). But the Bankruptcy Court concluded that LTL's "forced liquidation value" exceeded the "worst-case scenario" for talc liability. *LTL III*, 652 B.R. at 447. That finding suggests that any risk of funding exhaustion is, on this record, quite "attenuated." *See LTL II*, 64 F.4th at 109.

Second, LTL believes the Bankruptcy Court misread *LTL II* as providing an "insolvency standard . . . looking only to current conditions." LTL Br. 22. Not so. *LTL II*, of course, did not require insolvency before filing for bankruptcy. 64 F.4th at 102. It made clear that many "kinds of problems . . . justify Chapter 11 relief." *Id.* But LTL's two arguments for financial distress - insolvency and cash-flow difficulties that could result in liquidations at HoldCo - do not qualify (we explain why below). Moreover, it did not gesture at any other form of financial distress at LTL, such as difficulties with employees, customers and vendors wary of the firm's credit risk, challenges in the capital markets, liquidity problems, and cutbacks in spending and investment that impair the firm's value. *See id.* (citing Mark J. Roe, *Bankruptcy and Mass Tort*, 84 Colum. L. Rev. 846, 855 (1984)). And bankruptcy requires "apparent" financial distress. *Id.*

Again, we see no clear error in the Bankruptcy Court's conclusion that, in the worst-case scenario, LTL's assets exceed its liabilities. So we do not see insolvency-based financial distress on those facts. LTL emphasizes that the gap between its assets and worst-case talc liabilities is much smaller than what we examined in *LTL II*, where

8

we noted that LTL could "comfortably" satisfy its liabilities "for the foreseeable future." *LTL II*, 64 F.4th at 108.  However, the downside case presented by LTL's expert was "not an unbiased middle of the road estimate" but "intentionally skew[ed] things high" by assuming that "LTL aggressively and unsuccessfully litigates" every talc claim.  App. 2868, 6218-19.  That "assumes too much too early" about the results of future litigation. *LTL II*, 64 F.4th at 107.  On the record before us, the "attenuated" possibility of insolvency far in the future does not offer sufficient financial distress today to justify a Chapter 11 filing.  *Id.* at 109; *SGL Carbon*, 200 F.3d at 164 ("The mere possibility of a future need to file, without more," is not enough); *see In re Johns-Manville Corp.*, 36 B.R. 727, 735 (Bankr. S.D.N.Y. 1984) (noting the debtor's projection of tort liability was "the result of careful, conservative and perhaps understated projections").

    LTL's claim that HoldCo might be forced to liquidate assets to pay LTL's short-term costs under the funding agreement similarly does not demonstrate financial distress.  Even if the Bankruptcy Court erred by both rejecting LTL's high-end estimate of short-term cash needs and expecting HoldCo would receive significant cash dividends in the near future, we do not discern financial distress at LTL.  And even if HoldCo were required to liquidate assets to satisfy current obligations, the Bankruptcy Court found that such a forced liquidation would result in a recovery exceeding LTL's worst-case talc liabilities.  *LTL III*, 652 B.R. at 447.  So while such a forced liquidation might suggest financial distress at HoldCo, that is not the question - our analysis must focus on LTL. *LTL II*, 64 F.4th at 105-06.

9

No doubt that solvent companies, confronted by mass-tort litigation, can encounter significant financial distress that warrants bankruptcy.  And when future insolvency is a realistic possibility based on meaningful evidence - not just the result of a highly speculative "worst-case" scenario - a mass-tort defendant has a viable case for bankruptcy.

**Dismissal and its Procedural Effect.**  The Ad Hoc Committee makes a different argument.  It relies on Code § 1112(b)(2), which allows a court to decline to dismiss a bankruptcy case, in spite of cause to do so, if "unusual circumstances establish[] . . . that dismiss[al] . . . is not in the best interests of creditors and the estate[.]"  LTL made a similar argument in its previous bankruptcy, which we rejected because we saw no way for "its lack of financial distress [to] be overcome."  *LTL II*, 64 F.4th at 110.  The difference here, the Ad Hoc Committee claims, is that there is significant plaintiff support for this LTL bankruptcy.  The Bankruptcy Court rejected this argument: in a thoughtful review of the caselaw, it concluded that "lack of financial distress is not the type of 'bad faith' that could be subject to the § 1112(b) exception[.]"  *LTL III*, 652 B.R. at 451-54.  We agree with its analysis and conclusion.

LTL, for its part, makes a procedural challenge relating to the dismissal of its bankruptcy case.  In its order, the Bankruptcy Court authorized the Talc Committee to litigate the appeal and required LTL to pay its expenses.  (Customarily, the debtor pays the expenses of official committees.  11 U.S.C. §§ 1103(a), 330(a)(1).)  LTL reads the Bankruptcy Code to "automatically dissolve[]" the Talc Committee when its bankruptcy was dismissed.  LTL Br. 54 (quoting *Off. Comm. of Unsecured Creditors v. Constellation*

10

*Enters. LLC* (*In re Constellation Enters. LLC*), 587 B.R. 275, 281 (D. Del. 2018)). But the District Court case cited is not on point. It relied on Code § 103(g), which states that §§ 1102 and 1103 (the sections that authorize and enable official committees) "apply only in a case under . . . [C]hapter [11]" of the Code. *Constellation*, 578 B.R. at 281-82. There, the debtor's case was converted from Chapter 11 to a Chapter 7 liquidation - so there was no question that the case at issue was not "under" Chapter 11. *Id.* at 281. LTL's other cases are similarly inapposite or conclusory. And, contrary to LTL's view, this matter also continues to qualify as a "case" under Chapter 11 because it is a routine resolution of an appeal of the Bankruptcy Court's decision. Accordingly, § 103(g) does not require dissolution of the Talc Committee for this appeal.

We also believe the Bankruptcy Court's order was authorized under Code § 105(a), which enabled it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," provided that the order does not conflict with "explicit mandates" or "express terms" of the Code. *In re Ross*, 858 F.3d 779, 785 (3d Cir. 2017) (citing *Law v. Siegel*, 571 U.S. 415, 423-25) (2014)). Under § 1103(c)(5), a creditors' committee is authorized to "perform such services as are in the interest of those represented." And under § 1109(b), a committee is designated a party in interest that "may raise and may appear and be heard on any issue in [the Chapter 11] case." Given the Talc Committee's indisputable interest in litigating appeals on behalf of those it represents, the Bankruptcy Court's order authorizing its continued existence on appeal was appropriate to effect the Committee's explicit authority to provide "services as are in the interest of those represented," Code § 1103(c)(5) - here,

11

ensuring that LTL's bankruptcy is not reinstated. Otherwise, an official committee could win a dismissal for its constituents but be unable to defend that order from an appellate challenge.

*****

For these reasons, we affirm the comprehensive decision of the Bankruptcy Court dismissing LTL's second Chapter 11 petition.

12